**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br>　　　　　　*Plaintiff*,<br><br>　　　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>　　　　　*Defendants*. | Civil Action No. 2:23-cv-00103-JRG-RSP<br><br>**JURY DEMANDED** |

**PLAINTIFF HEADWATER RESEARCH LLC'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DKT. 40)**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ..................................................................................1
II.  LEGAL STANDARD ...........................................................................2
III. STATEMENT OF RELEVANT FACTS .............................................3
   A.  The Amended Complaint's Relevant Allegations Regarding
       The '733 Patent.................................................................................4
       1.  *"Control-Plane Communications"*.......................................4
       2.  *"Service Control Device Link Agent"* And *"Service
           Control Server Link Element"* ...........................................5
   B.  The Amended Complaint's Relevant Allegations Regarding
       The '192 Patent.................................................................................6
       1.  *"Secure Message Link"* ......................................................6
       2.  *"Network Element Messages Comprising Respective
           Message Content And Requests For Delivery Of The
           Respective Message Content"*..............................................6
       3.  *"Transport Services Stack"* ................................................8
   C.  The Amended Complaint's Relevant Allegations Regarding
       The '117 Patent.................................................................................8
       1.  *"Secure Internet Data Connections"*..................................8
       2.  *"A Secure Interprocess Communication Service"* .............9
       3.  *"Network Message Server"* .................................................9
IV.  ARGUMENT.......................................................................................10
   A.  Headwater Adequately Pled Infringement Of The '733
       Patent.............................................................................................12
       1.  *"Control-Plane Communications"*.....................................12
       2.  *"Service Control Device Link Agent"* And *"Service
           Control Server Link Element"* .........................................14
   B.  Headwater Adequately Pled Infringement Of The '192
       Patent.............................................................................................16
       1.  *"Secure Message Link"* ....................................................16
       2.  *"Network Element Messages Comprising Respective
           Message Content And Requests For Delivery Of The
           Respective Message Content"*.............................................17
       3.  *"Transport Services Stack"* ..............................................18
   C.  Headwater Adequately Pled Infringement Of The '117
       Patent.............................................................................................18
       1.  *"Secure Internet Data Connections"*................................18
       2.  *"A Secure Interprocess Communication Service"* ...........18
       3.  *Samsung's Infringement Through Firebase Cloud
           Messaging* ...........................................................................19
   D.  Amendment Would Be Appropriate If The Court Finds That
       The Amended Complaint Is Insufficient.........................................20
V.   CONCLUSION...................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*,
    988 F.2d 1157 (Fed. Cir. 1993) ..................................................................... 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 1, 2, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................... 2, 3, 12, 19

*Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*,
    No. 215CV1274JRGRSPLEADC, 2016 WL 4778699 (E.D. Tex.
    Aug. 19, 2016) .......................................................................................... 12

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ............................................................... 3, 12

*Bowlby v. City of Aberdeen, Miss.*,
    681 F.3d 215 (5th Cir. 2012) ....................................................................... 2

*Chapterhouse, LLC v. Shopify, Inc.*
    No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11,
    2018) ................................................................................................... 11, 12

*Disc Disease Sols. Inc. v. VGH Sols.*, Inc.,
    888 F.3d 1256 (Fed. Cir. 2018) ............................................................... 1, 3

*Dueling v. Devon Energy Corp.*,
    623 Fed. Appx. 127 (5th Cir. 2015) ........................................................... 20

*Fractus, S.A. v. TCL Corp.*,
    No. 2:20-cv-097, 2021 WL 2483155 (E.D. Tex. June 2, 2021) .................... 11

*Jones v. Robinson Prop Grp., L.P.*,
    427 F.3d 987 (5th Cir. 2005) ..................................................................... 20

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013) .................................................................... 3

*Leal v. McHugh*,
    731 F.3d 405 (5th Cir. 2013) ....................................................................... 2

*Liberty Peak Ventures, LLC v. Regions Fin. Corp.*,
    No. 2:21-CV-00417-JRG, 2022 WL 798030 (E.D. Tex. Mar. 15,
    2022) ......................................................................................................... 11

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017) .................................................................... 3

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ....................................................................... 2

*Mayeaux v. La. Health Serv. & Indem. Co.*,
    376 F.3d 420 (5th Cir. 2004) ..................................................................... 20

# TABLE OF CONTENTS (CONT.)

**PAGE**

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) ............................................................................... 2

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) ........................................................................... 3, 12

*OBD Sensor Sols. LLC v. Track What Matters, L.L.C.*,
    No. 222CV00124JRGRSP, 2023 WL 1827922 (E.D. Tex. Jan. 20,
    2023) ...................................................................................................................... 15

*Opticurrent, LLC v. Power Integrations, Inc.*,
    2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) ...................................................... 1, 2

*Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*,
    No. 218CV00412RWSRSP, 2019 WL 8137132 (E.D. Tex. Oct. 23,
    2019) ...................................................................................................................... 19

*Uniloc USA, Inc. v. Avaya Inc.*,
    2016 WL 7042236 (E.D. Tex. May 13, 2016) ............................................. 2, 11, 12

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    No. 2:21-CV-00246-JRG, 2022 WL 739521 (E.D. Tex. Jan. 14,
    2022) ...................................................................................................................... 15

*Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*,
    406 F.Supp.3d 585 (E.D. Tex. 2019) ............................................................... 20, 21

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 2

Fed. R. Civ. P. 15(a)(1)(B) .......................................................................................... 4

Fed. R. Civ. P. 15(a)(2) .............................................................................................. 22

## I.    INTRODUCTION

Samsung's Motion to Dismiss for Failure to State a Claim (Dkt. 40 or the "Motion") should be denied, as plaintiff Headwater Research LLC ("Headwater") has plausibly alleged infringement of each of the '733, '192, and '117 Patents ("Asserted Patents").

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For direct infringement, a plaintiff must give "fair notice" of the infringement claim and "the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols*., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018). A plaintiff provides fair notice when it identifies (1) "the asserted patent and claim"; (2) "the technology covered by the patent"; (3) "the infringing activity"; (4) "the accused product"; and (5) "how the accused product infringes." *Opticurrent, LLC v. Power Integrations, Inc*., 2016 WL 9275395, at *4 (E.D. Tex. Oct. 19, 2016).

Headwater's First Amended Complaint (the "Amended Complaint") (Dkt. 31) does exactly that. The Amended Complaint describes the technology of the Asserted Patents, identifies the Samsung instrumentalities accused of infringement, and attaches claim charts mapping the elements of representative claims of each patent against the accused instrumentalities. Dkt. 31, ¶¶ 62-68, 78-3, 91-98. Samsung does not dispute these facts.

Instead, Samsung contends that the Amended Complaint fails to explain "how" Samsung practices particular limitations of the Asserted Patents. Contrary to Samsung's argument, the Amended Complaint and claim charts specifically allege how Samsung's products meet each element of claim 1 of the '733 patent, claim 1 of the '192 patent, and claim 1 of the '117 patent, and do so on an element-by-element basis. *See, e.g.*, Dkts. 31-4 ('733 patent claim chart), 31-5 ('117 patent claim chart), 31-6 ('192 patent claim chart).

Nothing more is needed. Samsung, rather than accept *Iqbal* and *Twombly*, seeks to create an improperly "heightened burden at the initial pleading stage" (*Uniloc USA, Inc. v. Avaya Inc.*, 2016 WL 7042236, at *3 (E.D. Tex. May 13, 2016)). For example, Samsung argues that Headwater must "identify the specific 'encryption' they are accusing as being part of the claimed 'secure Internet data connections.'" But Samsung does not dispute that Samsung's requirements specify that the accused connections be encrypted. Nor does Samsung dispute that the required encryption secures those connections. *E.g.*, Dkt. 40, at 3-6, 8-9. As this Court has explained, "requiring infringement contentions would be superfluous if the federal rules required such an exhaustive pleading standard." *Opticurrent*, 2016 WL 9275395 at *4.

The Motion should be denied.

## II.      LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is "a purely procedural question not pertaining to patent law," and so the law of the Fifth Circuit controls. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). In the Fifth Circuit, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *see also Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013). Consistent with this high standard, "[t]his court construes facts in the light most favorable to the nonmoving party" in ruling on a motion to dismiss. *Leal*, 731 F.3d at 410

When considering a motion to dismiss, courts must proceed "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). A motion to dismiss "which cuts off a claimant at the threshold, must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Advanced*

*Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citations omitted).

A complaint must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The plaintiff does not have to plead infringement on an element-by-element basis, and it certainly does not need to prove its case at the pleading stage. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)) (internal citations omitted); *see also Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding that a plaintiff need not plead every element, but must only give the alleged infringer fair notice of infringement). "Instead, it is enough that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Bot M8 LLC*, 4 F.4th at 1352 (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (finding that the pleading requirement "'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."); *see also K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013).

## III.    STATEMENT OF RELEVANT FACTS

Headwater initiated this case on March 10, 2023, when it filed its initial Complaint for Patent Infringement. Dkt. 1. Samsung filed its first motion to dismiss for failure to state a claim on July 10, 2023. Dkt. 28. In response, and in order to avoid unnecessary motion practice, Headwater filed its Amended Complaint on July 24, 2023, pursuant to Fed. R. Civ. P. 15(a)(1)(B). Dkts. 31, 32. No schedule has been set in this case, and no discovery has been conducted to date.

The Amended Complaint provided detailed allegations responsive to and addressing issues raised by Samsung, and specifically identified and explained how Samsung's accused

instrumentalities practiced certain limitations that it had contended were not plausibly pled. As shown in the Amended Complaint and its attached charts, the Accused Instrumentalities include: (1) Samsung servers and devices used in Samsung's Knox Manage (a MDM, or multi-device management) platform, (2) Samsung devices using its proprietary Tizen operating system and Samsung's servers for providing push messages to Tizen devices, and (3) Samsung mobile devices configured to receive push messages from the Firebase Cloud Messaging (FCM) platform. *See, e.g.*, Dkt. 31 at 1, 31-4 at 1-2, 12-24; Dkt. 31-5 at 1-23; Dkt. 31-6 at 1-11.

### A.    The Amended Complaint's Relevant Allegations Regarding the '733 Patent

#### 1.    *"control-plane communications"*

For this limitation of the '733 patent, the Amended Complaint identifies Samsung's "Knox Manage servers or Knox MDM platform and devices being managed by such servers or MDM platform" and "Samsung's Tizen servers and Tizen OS devices, and Firebase messaging servers and Samsung's Android devices." Dkt. 31-4, at 12. The Amended Complaint further provides architectural diagrams of the accused instrumentalities:







Dkt. 31-4, at 6 (Firebase server/client architecture used by the Accused Instrumentalities), 8 (Samsung's Tizen server/client architecture), 12 (Samsung Knox MDM client/server architecture). The Amended Complaint then states:

> Samsung's Knox MDM platform, Knox Manage servers and Tizen servers are all examples of servers which provide control plane communications and which are service control server link elements, including because they control, manage, and apply service policies to user devices to which they are connected.

Dkt. 31-4, at 13. Thus, the Amended Complaint alleges that the servers of Samsung's accused instrumentalities are configured to support "control-plane communications" with user devices because they provide "communications which control, manage, and apply service policies to user devices." *Id.*

### 2. *"service control device link agent"* and *"service control server link element"*

The Amended Complaint identifies software on accused user devices as a "service control device link agent" and the servers that communicate with those user devices as a "service control server link element." *See, e.g.*, Dkt. 31-4, at 7 (identifying Firebase "SDK on the user's device, where the notification is displayed or the message is handled"), 9 (showing Tizen App on user device receives messages from Tizen Push Server), 11 and 13 (identifying "Knox end-user device software for secure communications with a network system" and "Knox Manage (KM) agent on

such devices"); 13 (identifying Knox and Tizen servers as "server control server link elements" because they "control, manage, and apply service policies to user devices").

**B.      The Amended Complaint's Relevant Allegations Regarding the '192 Patent**

     1.      *"secure message link"*

The Amended Complaint identifies the server-client communications link in the accused systems as a "secure message link":

"Samsung's devices operating in the Samsung Knox ecosystem, for example mobile phones and other devices enrolled in the Samsung Knox MDM platform and the Samsung Knox servers managing those phones and devices, maintains a secure message link between the server and a device link agent on a plurality of devices which comprise multiple software components and receive/process data from messages sent over the secure message link."



Dkt. 31-6, at 10-11 (red annotations added).

"[T]he communications link between Samsung's Tizen servers and Tizen OS devices, and Firebase messaging servers and Samsung's Android devices, comprises a 'service message link.' Notifications, data, and messages transmitted over these service control links from such servers to devices are encrypted, as illustrated above, and are messages."



Dkt. 31-6, at 11 (red annotations added).

     2.      *"network element messages comprising respective message content and requests for delivery of the respective message content"*

The Amended Complaint identifies the messages sent from the App Servers to the messaging servers as the claimed "network element messages." For example:

> Samsung's push messaging servers receive messages from a plurality of network elements (e.g., App Servers) which comprise content and delivery requests to devices and software components.

Dkt. 31-6, at 16.

> As another example, Samsung's [Knox servers] receive messages from a plurality of network elements (e.g., App Servers) which comprise content and delivery requests to devices and software components in the Knox ecosystem.

Dkt. 31-6, at 16. The Amended Complaint explains in detail how these messages include the "respective message content and requests for delivery of the respective message content":

> "[T]he App Servers communicating with Tizen and Firebase notification servers (each a network element) send messages such as notifications (network element messages comprising respective message content and request for delivery of the respective message content), which are routed through Samsung's Tizen and Knox servers and Google's Firebase messaging servers."

Dkt. 31-6, at 17.

> [A]dministrator devices communicating with Knox MDM and Knox Manage servers to manage and control devices in the Knox device group are also network elements which send to the Knox servers messages that comprise message content and requests for delivery of the message content down to the managed devices. Such messages can be device commands transmitted from the administrator devices to managed devices via Knox servers (e.g., https://docs.samsungknox.com/admin/knox-manage/send-commands-to-devices.htm) or readable notifications.

Dkt. 31-6, at 17-18.

In another example, the Amended Complaint alleges that managed Knox devices are the "network elements" receiving the claimed "messages":

> [E]ach of the managed devices in a Knox MDM group can also comprise network elements sending messages and requests for delivery of message content, for example when agents on the managed device monitor and trigger alerts to be sent to administrator devices via Knox MDM servers (e.g., https://docs.samsungknox.com/admin/knox-manage/configure-alerts.htm).

Dkt. 31-6, at 17-18. For each example, the first Amended Complaint alleges, "such messages include data for, and identification of, a respective one of the authorized software components (e.g., the application to which the notification and message is delivered, whether it is the Knox Agent on the devices, the Knox Manage application on the administrator device, or the particular application on the Tizen device receiving a notification." Dkt. 31-6, at 18.

        3.    *"transport services stack"*

The Amended Complaint identifies communications software that the servers and clients use to communicate with one another as a "transport services stack":

> Samsung's Tizen and Knox products utilize communication layers comprising a transport services stack at the servers and devices to which the servers are connected. As one example, the secure control link between Knox servers and Knox-managed devices communicate through specific software residing on both Knox servers (Knox Manage software) and Knox-managed devices (e.g., Knox agent at the devices) which receives, decr[y]pts and decodes, interprets, and executes commands or messages from other elements in the system. Likewise, with Samsung's Tizen devices, specific software within both Tizen OS and Tizen's push messaging servers operate in a similar fashion.

Dkt. 31-6, at 59.

**C.    The Amended Complaint's Relevant Allegations Regarding the '117 Patent**

        1.    *"secure Internet data connections"*

The Amended Complaint identifies encrypted communications links between the servers and clients as "secure Internet data connections." Dkt. 31-5, at 23-28 (showing "Samsung's push messaging server supports a plurality of secure connections between the network message server and respective devices"), 28-31 (showing "Samsung's devices operating in the Samsung Knox ecosystem, for example mobile phones and other devices enrolled in the Samsung Knox MDM platform and the Samsung Knox servers managing those phones and devices, comprise a plurality of secure Internet data connections (between managed devices and Samsung Knox servers)"). The

Amended Complaint explains that such communications links comprise "secure Internet data connections" because they are encrypted. Dkt. 31-5, at 30-31.

### 2.   *"a secure interprocess communication service"*

For this limitation, the Amended Complaint identifies software in the accused client devices that interprets messages from servers and forwards data in those messages to a software process or application. *See* Dkt. 31-5, at 68-70 (for FCM message, showing that "Samsung devices map the identifier in the message to a corresponding software process and forward the data to the application via a secure service"), 70-76 (for push messages to Tizen devices, showing "Samsung's Tizen based devices map the identifier in the message to a corresponding software process and forward the data to the application via a secure service"), and 76-80 (showing how "Samsung's devices operating in the Samsung Knox ecosystem … comprise mapping the identifier in the message to a corresponding software process and forward the data to the application via a secure service"). The Amended Complaint further explains that "[e]ach Tizen, Android, and Knox-managed device has an operating system… in which applications and software agents on the device are able to communicate with one another through the use of a communications bus or "a secure interprocess communication service."  Dkt. 31-5, at 79. The Amended Complaint then specifically identifies that secure interprocess communication service as being provided by the Android API (on Samsung's Android-based devices) and Tizen API (on Samsung's Tizen-based devices).  *Id.*

### 3.   *"network message server"*

The Amended Complaint identifies Samsung push messaging servers as the claimed "network message server." Dkt. 31-5, at 19-23 ("Samsung's push messaging servers are network servers"). This includes Samsung push messaging servers that send messages using Firebase Cloud Messaging (FCM). For example, the Amended Complaint alleges that Samsung push messaging

servers include "Firebase messaging servers" (Dkt. 31-5, at 31) and provides a diagram showing

an example of how such servers communicate with client devices:



Dkt. 31-5, at 8 (red annotation added).

## IV.      ARGUMENT

Headwater's Amended Complaint attaches exemplary claim charts identifying, on an

element-by-element basis, infringement of one representative claim of each of the Asserted

Patents. As shown above, the claim charts provide far more detail than required at the pleading

stage. Samsung's Motion largely ignores the detailed explanations provided in the Amended

Complaint and "improperly and unfairly elevate[s] the plausibility standard to a probability

standard." *Uniloc*, 2016 WL 7042236 at *4.

Samsung argues that *Chapterhouse, LLC v. Shopify, Inc.* controls here because the

Amended Complaint allegedly "do[es] no more than cobbling together screenshots of various

sources, which in many instances are not even linked to the claim elements they purportedly

illustrate." Dkt. 40, 4-5. Samsung is wrong.

First, *Chapterhouse* is readily distinguishable. The "fatal flaw in the *Chapterhouse* complaint was the failure to include descriptive explanations of the screenshots included in the complaint." *Fractus, S.A. v. TCL Corp.*, No. 2:20-cv-097, 2021 WL 2483155, at \*2–3 (E.D. Tex. June 2, 2021) (Gilstrap, J.). But Samsung concedes that here, the Amended Complaint includes "descriptive explanations of the screenshots" provided in the attached claim charts. Dkt. 40, 5. And "[t]he Court has recently, and more than once, cautioned litigants on their over-reliance on the *Chapterhouse* case." *Liberty Peak Ventures, LLC v. Regions Fin. Corp.*, No. 2:21-CV-00417-JRG, 2022 WL 798030, at \*2 (E.D. Tex. Mar. 15, 2022) (Gilstrap, J.).

*Liberty Peak* highlights the flaw in Samsung's argument. The *Liberty Peak* complaint "identifie[d] the accused instrumentality, "alleged that Defendants infringe one or more claims of the Asserted Patents, and "identified, along with screenshots, particular components of the accused instrumentalities that allegedly infringe the Asserted Patents." *Liberty Peak*, 2022 WL 798030, at \*2. This, the Court found, was "sufficient at this early stage to avoid dismissal." *Id.* As shown above in the Statement of Relevant Facts and explained below, the Amended Complaint provides a level of detail that far exceeds what was deemed sufficient in *Liberty Peak* and is nothing like what was deemed insufficient in *Chapterhouse*.

Second, *Chapterhouse* did *not* hold that *Twombly* and *Iqbal* are satisfied only with an *in haec verba* mapping of each specific element of a claim of a patent. Dkt. 40, at 5. ("infringement requires a showing of each element of an asserted claim"). Samsung's misguided demand for an explicit "each element" showing thus has no support in *Chapterhouse* and is contrary to governing Federal Circuit and Fifth Circuit precedent. As the Court has explained, "in most patent cases, asking the plaintiff to provide an element-by-element analysis of the accused device in the complaint does not advance the goals of the Federal Rules of Civil Procedure." *Blitzsafe Texas,*

*LLC v. Volkswagen Grp. of Am., Inc.*, No. 215CV1274JRGRSPLEADC, 2016 WL 4778699, at *4 (E.D. Tex. Aug. 19, 2016) (Payne, M.J.), *report and recommendation adopted*, No. 2:15-CV-1274-JRG-RSP, 2016 WL 4771291 (E.D. Tex. Sept. 13, 2016) (Gilstrap, J.); *Uniloc USA, Inc. v. Motorola Mobility LLC*, No. 2:16-CV-989-JRG, 2017 WL 3721064, at *3 (E.D. Tex. May 15, 2017) (Gilstrap, J.) ("Requiring Uniloc to identify precisely which of these servers … effectively require[s] Uniloc to identify the server(s) that correspond to each element of the asserted patent claims. This type of element-by-element analysis is simply not required at the Rule 12 stage."). *See also Bot M8 LLC*, 4 F.4th at 1352 ("A plaintiff is not required to plead infringement on an element-by-element basis"). Simply put, "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met," but instead simply must place the infringer on notice of what activity is accused of infringement. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Given that the Amended Complaint actually ***does*** provide an element-by-element mapping, it more than satisfies Rule 8.

Third, Samsung's own arguments show that it had no problem understanding Headwater's infringement allegations. Indeed, Samsung mostly quibbles with Headwater's ***application*** of particular limitations to the Accused Instrumentalities or with Headwater's interpretation of those limitations. *See, e.g.*, Dkt. 40, at 7 (posing straw-man type questions while ignoring the answers in the claim charts).

Samsung's limitation-specific arguments also fail for the reasons below.

## A.  Headwater Adequately Pled Infringement of the '733 Patent

Samsung argues that the Amended Complaint does not show how Samsung practices the "control-plane communications," "service control device link agent," and "service control server link element" limitations. *See* Dkt. 40, at 5-9. Each of these arguments fail.

### 1.  *"control-plane communications"*

For its arguments regarding "control-plane communications," Samsung acknowledges that the Amended Complaint specifically pleads how "Samsung's Knox MDM platform, Knox Manage servers and Tizen servers" satisfies this limitation. Dkt. 40, at 6. Samsung nevertheless asserts that because "Firebase messaging servers" are not specifically alleged in the Amended Complaint to provide "control plane communications," the infringement allegations regarding FCM "should be dismissed." *Id. Compare supra* Section III.A.1.

But this ignores the factual allegations of the Amended Complaint. It plainly identifies accused Samsung devices as those which "use encryption protocols to secure communications between the device and the network system," and provides an FCM architectural schematic which illustrates control-plane communications from server ("FCM backend") to user devices ("SDC on device") (*see* Dkt. 31-4, at 3-7). Samsung appears to argue that a complaint must identify <u>all</u> accused devices and explain how every accused device satisfies the claims. No authority supports Samsung's manufactured pleading standard.

Next, Samsung contends that it cannot "discern what Headwater's basis is for each distinct limitation" between the "control-plane communications" and "service control server link elements" mappings, because the Amended Complaint identifies how the Accused Instrumentalities meet those limitations by pointing to the same functionality. Dkt. 40, at 7. But the Amended Complaint does not point to the same functionality—it explains that the identified servers (e.g., Knox Manage and Tizen servers) support "control-plane communications" with user devices and include "service control server links" through which those communications occur. Dkt. 31-4, at 13 ("Samsung's Knox MDM platform, Knox Manage servers and Tizen servers are all examples of servers which provide control plane communications and which are service control server link elements, including because they control, manage, and apply service policies to user

devices to which they are connected.").

Samsung's assertion that the Amended Complaint "fails to specifically identify any 'control plane communications' in the accused products" is wrong for similar reasons. Dkt. 40, at 7. Indeed, Samsung concedes that "Headwater alleges that these servers provide 'control plane communications.'" *Id.* The Amended Complaint thus provides fair notice that the identified messages for controlling user devices are "control-plane communications." *See* Dkt. Dkt. 31-4, at 13 ("Samsung's Knox MDM platform, Knox Manage servers and Tizen servers are all examples of servers which provide control plane communications and which are service control server link elements, including because they control, manage, and apply service policies to user devices to which they are connected.").

To the extent Samsung argues that "control-plane communications" requires something more than the accused communications which "control, manage, and apply service policies to user devices," this is a claim construction dispute not a pleading deficiency. *See United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:21-CV-00246-JRG, 2022 WL 739521, at *2 (E.D. Tex. Jan. 14, 2022) (Gilstrap, J.) ("the Court is unwilling to engage in, what is effectively, claim construction at this early stage"); *OBD Sensor Sols. LLC v. Track What Matters, L.L.C.*, No. 222CV00124JRGRSP, 2023 WL 1827922, at *2 (E.D. Tex. Jan. 20, 2023) (The "general rule is that courts do not engage in claim construction at the pleadings stage unless it is clear that the claims cannot plausibly be construed to cover the accused instrumentalities.").

       2.      ***"service control device link agent" and "service control server link element"***

For these limitations, Samsung first argues that the "infringement allegation against the Firebase messaging servers" is "facially deficient." Dkt. 40, at 9. In the immediately preceding sentence, however, Samsung states that the Amended Complaint "alleges that 'Firebase messaging

servers' provide a service control link,'" but that it is supposedly "silent on whether 'Firebase messaging servers comprise or constitutes a 'server [sic] control server link element.'" *Id.* These two sentences alone show that Samsung understands that the "service control server link elements" are servers in the server/client architecture. Samsung does not claim lack of comprehension with respect to Headwater's theories against the Samsung's Tizen and Knox servers, for instance – showing that its argument is simply that the Amended Complaint does not literally contain magic words explicitly tying together the "Firebase messaging servers" with the claim limitation. *See supra* Section III.A.2.

Next, Samsung says the Amended Complaint "fails to explain how [Knox and Tizen] servers transmit an 'encrypted agent message' to 'server control device link agent.'" Dkt. 40, at 8-9. The Motion concedes that the Amended Complaint identifies "encrypted agent messages" between servers and clients in the Accused Instrumentalities (*id.*), but argues that Headwater needed to describe how the Accused Instrumentalities make use of "'an encrypt[ion] key' 'shared between'" the client and server. Dkt. 40, at 8-9 (citing the specification). The Amended Complaint, according to Samsung, is "devoid of any identification or explanation as to an 'encryption key' in the accused devices that meets these requirements." Dkt. 40, at 9.

Samsung is wrong. The Amended Complaint identifies, multiple times, Samsung user devices as those having memory storing the encryption key of the claims and that such keys are shared between client and server. Samsung conveniently ignores all of those allegations. *See* Dkt. 31-4, at 24 ("Samsung Galaxy phones and tablets include memory that stores an encryption key that is shared between the agent and the network system"), 29 ("Samsung's Tizen based devices include memory that stores an encryption key that is shared between the agent and the network system"), 33 ("mobile phones and other devices enrolled in the Samsung Knox MDM platform,

include memory that stores an encryption key that is shared between the agent and the network system"). At minimum, the Amended Complaint puts Samsung on notice which components of the Accused Instrumentalities Headwater believes satisfies these limitations, including the "encryption key" limitations related to these limitations.

### B.    Headwater Adequately Pled Infringement of the '192 Patent

Samsung contends that the Amended Complaint fails to adequately plead how the Accused Instrumentalities practice the "secure message link," "network element messages comprising respective message content and requests for delivery of the respective message content," and "transport services stack" limitations. Dkt. 40, at 9-10. Samsung's arguments for each of these limitations are cursory and ignore the Amended Complaint's express mapping of those limitations to the Accused Instrumentalities.

#### 1.    *"secure message link"*

For this limitation, Samsung says that the Amended Complaint's identification of the "communications link," "service control links," and "service message links" between the servers and clients does not put it on notice of whether such communications links are "secure message links" of the patent. As Samsung acknowledges, however, those allegations were added to the Amended Complaint in response to Samsung's earlier arguments about "secure message link." Dkt. 40, at 9. In other words, Samsung understands that Headwater identifies the communications link between clients and servers in the Accused Instrumentalities as the "secure message link" of the claims. It cannot credibly assert otherwise. *See supra* Section III.B.1.

Samsung's refusal to fairly read the Amended Complaint is underscored by the fact that it actually identifies, by name, the "secure message links" of the Accused Instrumentalities. *See* Dkt. 31-6, at 9-10 ("Samsung's devices operating in the Samsung Knox ecosystem, for example mobile phones and other devices enrolled in the Samsung Knox MDM platform and the Samsung Knox

servers managing those phones and devices, maintains a ***secure message link*** between the server and a device link agent on a plurality of devices which comprise multiple software components and receive/process data from messages sent over the ***secure message link***"); 4-5 ("Samsung's push messaging server maintains a ***secure message link*** between the Tizen Push Server and a device link agent (e.g., Tizen App and/or Push Service) on a plurality of devices which comprise multiple software components and receive/process data from messages sent over the ***secure message link***"). Samsung cannot credibly argue that these allegations do not provide fair notice of what is being accused of infringement.

## 2. *"network element messages comprising respective message content and requests for delivery of the respective message content"*

Here, Samsung appears to concede that this limitation has been well-pled for the Knox-related Accused Instrumentalities. That alone is a complete basis to reject Samsung's motion as to this issue. Samsung instead argues that "Headwater's allegations with respect to Tizen and Firebase identify no specific network element messages, instead baldly asserting that such messages exist." Dkt. 40, at 10. This argument fails to fairly address what is actually alleged in the Amended Complaint:

> [T]he App Servers communicating with Tizen and Firebase notification servers (each a network element) send ***messages such as notifications*** (network element messages comprising respective message content and request for delivery of the respective message content), ***which are routed through Samsung's Tizen and Knox servers and Google's Firebase messaging servers***.

Dkt. 31-6, at 17. Moreover, the Amended Complaint goes on to explain that "such messages include data for, and identification of, a respective one of the authorized software components (e.g., the application to which the notification and message is delivered, whether it is the Knox Agent on the devices, the Knox Manage application on the administrator device, or the particular application on the Tizen device receiving a notification." Dkt. 31-6, at 18. Samsung is of course

free to later dispute whether messages sent between from "Tizen and Firebase notification servers" and App servers and device agents satisfy the claims, but it cannot credibly claim it is not on notice of what is accused. *See supra* Section III.B.2.

### 3. *"transport services stack"*

Samsung's only argument as to the "transport services stack" limitation is that Headwater's mapping is allegedly "vague." Dkt. 40, at 10. Samsung is incorrect. The same excerpts it quotes from the Amended Complaint identify expressly the communications software enabling the servers and clients in the Accused Instrumentalities to communicate with one another as the "transport services stack." *See* Dkt. 31-6, at 59; *supra* Section III.B.3.

### C. Headwater Adequately Pled Infringement of the '117 Patent

### 1. *"secure Internet data connections"*

Samsung's only argument regarding "secure Internet data connections" is that Headwater supposedly needed to "identify what specific 'encryption' they are accusing as being a part of the claimed 'secure Internet data connections.'" Dkt. 40, at 12. But that is not required. The Amended Complaint alleges that because the communications links between server and client in the Accused Instrumentalities are encrypted, they are "secure Internet data connections." *See supra* Section III.C.1. Nothing in the claim requires that a specific *type* of encryption be used to secure the connections. Thus, Samsung complains that Headwater has not adequately alleged satisfaction of requirements not included in the claims. Such allegations are neither required by Rule 8 nor the law of this District, Circuit, or the Federal Circuit.[1]

### 2. *"a secure interprocess communication service"*

---

[1] Of course, Samsung knows the technical details about how communications between client and server in the Accused Instrumentalities are encrypted—they are Samsung's own products and systems, after all.

Samsung contends that the Amended Complaint fails to identify "any 'secure interprocess communication service.'" Dkt. 40, at 12. This statement is belied by both the facts and by the next two sentences in Samsung's argument. *See supra* Section III.C.2; Dkt. 40, at 12 (discussing material added by Headwater to the Amended Complaint). Samsung's argument appears to be that Headwater's characterization of the Accused Instrumentalities is "self-serving" and "unilateral" and "paraphrases the claim language." But an accused infringer's factual disagreement about a patentee's application of claim language to an accused system is not a basis to move to dismiss a count or complaint under *Twombly*, much less profess ignorance about what is being accused. Moreover, Headwater's allegations are not conclusory or improper simply because they track or paraphrase claim elements. The opposite is true: a complaint "provides fair notice" and states a claim if it "tracks the language of specific claims within the asserted patent[] and provides general guidance on how the accused products infringe when they are combined with other products or components." *Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*, No. 218CV00412RWSRSP, 2019 WL 8137132, at *1 (E.D. Tex. Oct. 23, 2019) (Payne, M.J.), *report and recommendation adopted*, No. 218CV00412RWSRSP, 2019 WL 8137144 (E.D. Tex. Dec. 11, 2019) (Gilstrap, J.).

### 3.   *Samsung's Infringement through Firebase Cloud Messaging*

Finally, Samsung contends that its FCM Accused Instrumentalities have not been properly accused. Once again, Samsung points to no authority that a complaint must identify every infringing device or instrumentality of the infringer. Samsung argues that Headwater did not identify a "network message server" as part of its theory against the Accused Instrumentalities' use of FCM messaging. Dkt. 40, at 10-11. Samsung is wrong. As explained above, the Amended Complaint identifies the "Firebase messaging servers" of the Accused Instrumentalities as the claimed "network message server." *See supra* Section III.C.3.

**D.     Amendment Would Be Appropriate if the Court Finds that the Amended Complaint is Insufficient**

Samsung argues that the entirety of the Amended Complaint should be dismissed with prejudice, and Headwater should not be permitted an opportunity to amend. However, Samsung ignores well-settled law within this District. When deciding motions to dismiss, Fed. R. Civ. P. 15(a)(2) instructs the Court to "freely give leave [to amend] when justice so requires," within the discretion of the Court. *See Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F.Supp.3d 585, 593 (E.D. Tex. 2019). This Court has interpreted Federal Rule 15(a) to "envince[] a bias in favor of granting leave to amend." *Id.* (quoting *Jones v. Robinson Prop Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)). Indeed, "district courts must entertain a presumption in favor of granting parties leave to amend." *Dueling v. Devon Energy Corp*., 623 Fed. Appx. 127, 129 (5th Cir. 2015) (quoting *Mayeaux v. La. Health Serv. & Indem. Co*., 376 F.3d 420, 425 (5th Cir. 2004) (internal citation omitted) (holding the district court abused its discretion in denying plaintiffs' request for leave to amend).

As shown above, Headwater has more than satisfied its pleading requirements at this early stage of the case. However, if the Court finds that the Amended Complaint falls short of that requirement, then the appropriate remedy is not dismissal but rather an order that Headwater amend its pleading to remedy its allegations with respect to the whichever issue(s) the Court deems appropriate. *See Wapp Tech Ltd. P'ship*, 406 F.Supp.3d at 600 (granting motion to dismiss and granting plaintiffs leave to amend).

**V.      CONCLUSION**

For the reasons above, the Samsung's Motion should be denied.

Date:  August 23, 2023                          */s/ James S. Tsuei* _____
                                                           Marc Fenster
                                                           CA State Bar No. 181067

Reza Mirzaie
CA State Bar No. 246953
Brian Ledahl
CA State Bar No. 186579
Ben Wang
CA State Bar No. 228712
Paul Kroeger
CA State Bar No. 229074
Neil A. Rubin
CA State Bar No. 250761
Kristopher Davis
CA State Bar No. 329627
James S. Tsuei
CA State Bar No. 285530
Philip Wang
CA State Bar No. 262239
Amy Hayden
CA State Bar No. 287026
James Milkey
CA State Bar No. 281283
Jason M. Wietholter
CA State Bar No. 337139
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_headwater@raklaw.com

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically. I further certify that all counsel of record were served a complete and accurate copy of the document via email on this day.

Dated:  August 23, 2023                                    <u>/s/ James S. Tsuei      </u>
                                                                            James S. Tsuei