**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| Plaintiff, | Case No. 2:23-cv-00103-JRG-RSP |
| v. | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

**PLAINTIFF HEADWATER RESEARCH LLC'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    OVERVIEW OF ASSERTED PATENTS ........................................................... 2

III.   DISPUTED TERMS FOR '733 PATENT ........................................................... 3

       A.    "device agents" ('733 patent, claims 1, 30) ........................................... 3

             1.    The '733 patent claims and specification provide
                   reasonable certainty to a POSITA ................................................ 5

             2.    Samsung's indefiniteness assertion is unsupported and
                   overlooks both the intrinsic and extrinsic evidence. .................... 6

       B.    "wherein the particular device agent is configured to assist in
             presenting a notification through the user interface, the notification
             based on the message content" ('733 patent, claim 19) ......................... 9

IV.    DISPUTED TERMS FOR '117 PATENT ........................................................... 10

       A.    "device messaging agents" ('117 patent, claim 1) ................................. 10

       B.    "at least one of the devices having a network stack in
             communication with the device messaging agent, wherein the
             secure connection between the network message server and that
             device is terminated within the network stack" ('117 patent, claim
             13) ........................................................................................................... 11

V.     DISPUTED TERMS FOR '192 PATENT ........................................................... 12

       A.    "software components" ('192 patent, claims 1, 15) ............................... 12

       B.    "wherein one of the message delivery triggers is the receipt of a
             transmission on the respective secure message link from the device
             link agent of the given one of the wireless end-user devices, or a
             response generated to a transmission received from that device link
             agent" ('192 patent, claim 11) .............................................................. 13

       C.    "wherein one of the message delivery triggers is the receipt of a
             particular network element message from one of the network
             elements" ('192 patent, claim 13) ......................................................... 14

VI.    CONCLUSION ................................................................................................... 15

## TABLE OF EXHIBITS AND ABBREVIATIONS

| Ex.* | Description | Abbreviation |
|------|-------------|--------------|
| 1 | U.S. Patent No. 8,406,733 (Dkt. 31-1) | '733 patent |
| 2 | U.S. Patent No. 9,198,117 (Dkt. 31-2) | '117 patent |
| 3 | U.S. Patent No. 9,615,192 (Dkt. 31-3) | '192 patent |
| 4 | Samsung's Patent Rule 4-2 Identification of Claim Constructions and Extrinsic Evidence (Mar. 28, 2024) | Samsung CC Disclosure |
| 5 | Samsung's Amended Patent Rule 4-2 Identification of Claim Constructions and Extrinsic Evidence (Apr. 29, 2024) | Samsung Am. CC Disclosure |
| 6 | Declaration of Don Turnbull, Ph.D. (Apr. 29, 2024) | Turnbull Decl. |
| 7 | Deposition Transcript of Don Turnbull, Ph.D. (May 28, 2024) | Turnbull Dep. |
| 8 | Dictionary of Computer and Internet Terms (10th ed., 2009), definition of "agent" (SAM-HW-2_00215498) | Computer Terms Dict. |
| 9 | U.S. Patent App. Pub. 2006/0218395 (Ex. 9 to Turnbull Dep.) | '395 application |
| 10 | Samsung SDS Enterprise Mobility Management Installation Guide (Jan. 2023) (HW103-00082010) | Samsung EMM Guide |
| 11 | U.S. Patent No. 9,800,708 (HW103-00082269) | '708 patent |
| 12 | U.S. Patent No. 10,506,090 (HW103-00082218) | '090 patent |
| 13 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 9,198,117, Paper 2, IPR2024-00003 (Nov. 17, 2023) | Samsung '117 IPR Petition |
| 14 | Institution Decision in *Inter Partes* Review of U.S. Patent No. 9,198,117, Paper 8, IPR2024-00003 (May 22, 2024) | '117 IPR Inst. Decision |
| 15 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 9,615,192, Paper 2, IPR2024-00010 (Nov. 17, 2023) | Samsung '192 IPR Petition |
| 16 | Institution Decision in *Inter Partes* Review of U.S. Patent No. 9,615,192, Paper 7, IPR2024-00010 (May 23, 2024) | '192 IPR Inst. Decision |
| 17 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 8,406,733, Paper 4, IPR2024-00341 (Jan. 23, 2024) | Samsung '773 IPR Petition 1 |

| Ex.* | Description | Abbreviation |
|------|-------------|--------------|
| 18 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 8,406,733, Paper 4, IPR2024-00342 (Jan. 23, 2024) | Samsung '773 IPR Petition 2 |

\* All exhibits attached to the concurrently filed declaration of James S. Tsuei.

## I.      INTRODUCTION

Plaintiff Headwater Research LLC submits this opening claim construction brief to address seven terms in three asserted patents: U.S. Patent Nos. 8,406,733 ("'733 patent"), 9,198,117 ("'117 patent), and 9,615,192 ("'192 patent"). Samsung does not propose any constructions and asserts that *all seven terms* are indefinite. But it falls far short of proving indefiniteness by clear and convincing evidence. At the outset, Headwater highlights two aspects of Samsung's conduct that demonstrate its improper, litigation-driven approach to claim construction.

### *Indiscriminate Indefiniteness Assertions*

 Samsung P.R. 4-2 disclosure of proposed constructions and extrinsic evidence identified 27 terms for three patents and asserted that *all 27 terms* were indefinite. Samsung CC Disclosure (Mar. 28, 2024). Samsung amended its P.R. 4-2 disclosure a month later but continued to assert indefiniteness for all 27 terms. Samsung Am. CC Disclosure (Apr. 29, 2024). It wasn't until the day the JCCC was submitted that Samsung limited itself to seven terms. *See* Dkt. 91.

Further, Samsung's P.R. 4-2 disclosure shows the lack of evidence behind its assertions. Across the 27 terms, Samsung identifies only one piece of extrinsic evidence (a few dictionary definitions of the word "agent"). Thus, the only purported "evidence" Samsung offers is a declaration by its expert, Dr. Turnbull. But even a cursory review of the declaration shows it is insufficient. The declaration is entirely conclusory and, for many terms, limited to a few sentences of vague observations. This does not—and cannot—meet Samsung's burden to prove indefiniteness by clear and convincing evidence. Further, as discussed throughout this brief, Samsung's expert repeatedly made admissions that undermine Samsung's arguments.

### *Inconsistent Positions in IPRs*

Samsung's indefiniteness assertions are also undermined by its inconsistent positions in

IPRs. Samsung filed four IPR petitions on the three asserted patents. *See* '117 Petition; '192 Petition; '773 Petition 1; '773 Petition 2. In those IPRs, Samsung and its experts had no understanding the claim language or allegedly mapping it to the prior art, including for the seven terms it now contends are indefinite. *See, e.g.*, '117 Pet. at 35-56 (applying "device messaging agent" and "terminated within the network stack" to prior art); '192 Pet. at 12 (applying "software components"); '773 Pet. at 28-30 (applying "device agents"), 59-62 (applying "configured to assist"). The Board instituted IPR on the '192 patent but denied institution on the '117 patent. And in those decisions, the Board (like Samsung) did not remotely suggest that any terms might be indefinite. '192 ID; '117 ID. Samsung's shifting-sands approach to understanding the claims should be rejected and provide further evidence the terms are not indefinite.

## II.   OVERVIEW OF ASSERTED PATENTS

The asserted '773, '117, and '192 patents are directed to systems and methods for improving how mobile devices communicate with servers over the Internet. They each claim priority to the same February 2009 patent application. They generally relate to aspects of how wireless devices send/receive messages or how network servers can efficiently transmit messages to wireless devices. All three patents largely share the same specification.

The '733 patent is directed to "Devices and methods for receiving control-plane communications from a network element over a secure service control link." '733 patent at Abstract. Control-plane communications include messages involving "supervision" and control of functionality on an end-user device. *Id.* at 37:36-47 Such communications can be used, for example, to manage a "device based network service policy implementation" on a mobile device. *Id.* at 11:21-29. The '733 patent teaches that mobile devices may receive encrypted agent messages from a "service control link element," which message the mobile device can then decode and pass

on to a "device agent" on the device that is the intended recipient of the message. *See id.* at 89:21-45. Such "secure messages" are those which "can only be decoded or observed by the agents they are intended for," which helps to secure those messages "against monitoring, eavesdropping, or compromise of the agent communication system." *Id.* at 41:62-42:21.

The '117 patent is directed to "mobile end-user devices" which each contain "a device messaging agent that securely communicates with a network message server over a wireless network." '117 patent, at Abstract. Like with the '733 patent, the '117 patent teaches systems and methods to ensure that messages are correctly delivered to an "end-user device" and to the correct "device messaging agent" and "software process" on the device.. This is done, for example, by including in those messages "application data and an indication of a device an application on the device to which the application data should be delivered." *Id.*

The '192 patent is directed to a "message link server" that maintains "secure message links" with "device link agents on each of a plurality of wireless end-user devices." '192 patent, at Abstract. The '192 patent teaches systems and methods in which network elements send messages "targeted" to "specific software components" on end-user devices. Some messages may not have "time-critical messaging needs," in which case the message link server uses a "message buffering system" that "buffers messages targeted to each device until one of several triggers occur." *Id.* The patent further describes "software components" on the end-user devices that are authorized to receive messages "via a device link agent on that device." *Id.* at cl. 1.

## III.   DISPUTED TERMS FOR '733 PATENT

### A.    "device agents" ('733 patent, claims 1, 30)

| Headwater's Proposal | Samsung's Proposal |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

Claims 1 of 30 the '733 patent recite the term "device agents" as follows:

- Claim 1: "An end-user device comprising . . . a plurality of **device agents** communicatively coupled to the service control device link agent through an agent communication bus, each of the plurality of **device agents** identifiable by an associated device agent identifier" (all emphasis in brief added unless noted).

- Claim 30: "A method performed by an end-user device, the method comprising . . . obtaining a decrypted agent message . . . comprising a particular agent identifier and message content for delivery to a particular **device agent** of a plurality of **device agents** on the end-user device, each of the plurality of **device agents** identifiable by an associated device agent identifier and communicatively coupled to the service control device link agent through an agent communication bus"

As an initial matter, Samsung does not dispute that the term "agent" is a known term in the art and has a plain meaning. Turnbull Dep. at 54:7-10 ("Q: the term 'agent' has a plain and ordinary meaning? A. I think so, yes, especially based on the context of the body of the patent, yes."). According to Samsung's expert, agent means "software that performs certain functions behalf of another element." Turnbull Decl. ¶ 33 (citing Computer Terms Dict. ("agent: a piece of software that performs a service for someone, usually silently and automatically. For example, an agent might run on a CLIENT computer to keep the SERVER informed of its needs.")). Samsung's expert also agrees that "device" is a well-understood term. *See* Turnbull Dep. at 57:24-58:1 ("Q: would the word 'device' itself have a plain and ordinary meaning? A. I would say so.").

Samsung's entire argument is that "device agent" is indefinite, allegedly because (1) the term is "not known in the art," and (2) "it is unclear how adding the prefix 'device' affects [the term's] scope relative to the term 'agent." Turnbull Decl. ¶ 35. But Samsung's expert admitted that the word "device" modifies the word "agent." *Id.*; Turnbull Dep. at 71:1-4. He also admitted that "device agent" is narrower than "agent." *Id.* at 71:23-72:4.

These admissions resolve any purported ambiguity. A device agent is simply an "agent" on the "device" (the "end-user device" recited in the claims). The claim language and specification

of the '733 patent confirm this. Samsung's arguments are unsupported and ignore both the intrinsic and extrinsic evidence. It cannot prove indefiniteness by clear and convincing evidence.

### 1. The '733 patent claims and specification provide reasonable certainty to a POSITA.

The claim language surrounding the term "device agents" provides reasonable certainty as to claim scope. For example, claims 1 and 30 of the '733 patent recite a "end-user device" that comprises (or includes) "a plurality of device agents." This structure alone informs a POSITA that the "agents" are on the end-user device—and hence are "device agents." Nothing in the claim language is ambiguous, and a POSITA would know what an "agent" is (as Samsung's expert agreed) and what the "device" is. Claims 1 and 30 further recite that the "device agents" are "coupled to the service control device link agent through an agent communication bus" and must also receive "message content" that is delivered to it "over the agent communication bus." Claim 26, which depends on claim 1, requires at least one of the plurality of "device agents" to be "software." These limitations further inform a POSITA and describe, for example, the location, connections, and functions of the recited "device agents."

The specification provides additional guidance. For example, Fig. 16 of the '733 patent (highlighted below) is a "functional diagram illustrating a device based service processor 115 and a service controller 122. This figure shows the "internal functional diagram of device" (100), within contains various elements, including "policy control agent" (1692), "service monitor agent" (1696), "application interface agent" (1693), and "policy implementation agent" (1690). Each of the identified agents are shown *internal to the device*—i.e., located on the device. The agents are not, for instance, on the illustrated "service controller" (which is external to and separate from the device) to which the "device" (100) is connected via the Internet.



**FIG. 16**

This also confirmed by Figs. 17-21, which each depict and label a plurality of such "agents" as being "**Inside Device**." The written description associated with Figs. 16-21 (among other embodiments) supports the same understanding. *See, e.g.,* '733 patent at 37:15-17 (describing Fig. 16 as showing "certain divisions and functional breakouts for device agents as an illustrative implementation"). The foregoing examples from the specification confirm to a POSITA that the term "device agents" in the claims carries its ordinary English meaning: agents on the device.

### 2. Samsung's indefiniteness assertion is unsupported and overlooks both the intrinsic and extrinsic evidence.

The crux of Samsung's indefiniteness argument is that the term "device agents" is allegedly "not known in the art." Turnbull Decl. ¶ 35. Although that is not even the test for indefiniteness, it is wrong. Samsung's expert opinion is also entirely conclusory and lacks supporting evidence. *See* Turnbull Dep. at 60:8-61:15. In making his assertion, Samsung's expert overlooked highly relevant teachings of the specification. For example, he discusses Fig. 16 and acknowledges that the depicted "agents" could be device agents. *See* Turnbull Decl. ¶ 40. But he failed to mention

anywhere in his declaration that Fig. 16 expressly discloses the agents as within a box labeled "Internal Functional Diagram of a Device." *See* Turnbull Dep. at 75:11-16.

Likewise, Samsung's expert could not defend his assertion that the term "device agents" is not known in the art. He testified that he was not aware of (and had not considered) various intrinsic and extrinsic evidence that use the term, including (1) prior art references cited on the '733 patent, (2) Samsung's own technical documents, and (3) Samsung's own patents. *Id.* at 61:16-62:5. A brief overview of this evidence (which Samsung's expert implied did not exist) confirms that Samsung's expert opinions are unreliable and wrong.

*First* is the '395 application, which is cited on the face of the '733 patent and constitutes intrinsic evidence. *See* '733 patent at p. 3 (citing US Patent Appl. Pub. 2006/0218395). The '395 application is entitled "***Device Agent***" and teaches "device agents and methods," with the "device agent" having "device agent logic" that is "configured to monitor device activities and to enforce the policies on the device activities." '395 application at [0012]. Like the '733 patent, the "device agent" of the '396 application is located on the device and performs functions related to the device. The '395 application and '733 patent are in the same field; both teach ways that a "device agent" on a wireless device (e.g., a cell phone) can be used execute logic related to the device's functionality. *See id.* at [0005] ("Device agents and methods are disclosed. In some embodiments, the method comprises monitoring, at an access device (e.g., a wireless device. Such as a mobile telephone), at least a subset of device activity."), [0006].

The '395 application is but one example in the intrinsic record that contradicts Samsung's assertion that that "device agents" is an unknown term in the art. And the failure of Samsung's expert to consider it (or any other reference cited in the '733 patent) further undermines his opinions. *See* Turnbull Dep. 61:22-62:5 ("Q: Are you aware of any prior art cited in the asserted

7

patents that use the term 'device agent'? . . . A: No, no, nothing comes to mind."), 16:25-17:7 ("Q: Did you consider any prior art references in forming your opinions on the asserted patents? A: I don't recall doing that. Q: Did you review any prior art references in offering your opinions in your declaration? A: I don't recall doing that either.").

*Second* are Samsung's documents discussing its own products and services, including the accused products in this case. For example, Samsung's public documentation for its Knox Manage system, uses "Device Agents" to refer to agents that are on devices:

| Push | DCM | Keeps the communication channel unimpeded and transfers messages between Device Agent on a device and Push server |
|------|-----|------|

| Push Proxy | DPP | Message relay between device agent and DCM |
|------------|-----|------|
| | PPP | Message relay between device agent and PS |
| | EPP | Message relay between device agent and ECM |

Samsung EMM Guide at 2 (highlighted and cropped).

*Third* are Samsung's own patents, which also show that "device agent" was a term known in the art. For example, Samsung's '708 patent has a similar priority date as the '733 patent and teaches a "device agent" that is installed on a device. Fig. 1 shows a "device agent" located on computer 100. *See* '708 patent at Fig. 1, 7:32-39 (computer 100 is an example of an "electronic device" in which "device agent 110" is installed). Similarly, Samsung's '090 patent discusses its teachings using the term "device agent" in the same manner. *See* '090 patent at 7:38-53.

The above evidence contradicts Samsung's expert assertion that "device agents" is not a known term either at the priority date of the '733 patent or even today. *See* Turnbull Dep. 59:21-60:8. And it confirms that Samsung cannot prove, by clear and convincing evidence, that "device agents" would not be understood by a POSITA with reasonable certainty.

**B.** **"wherein the particular device agent is configured to assist in presenting a notification through the user interface, the notification based on the message content" ('733 patent, claim 19)**

| Headwater's Proposal | Samsung's Proposal |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

Samsung contends that this term in claim 19 of the '733 patent is indefinite because of the word "assist." According to Samsung's expert, "it is not clear how a POSITA would have determined whether a particular component 'assist[s]' in "presenting a notification." Turnbull Decl. ¶ 42. He provides no other evidence or explanation beyond this conclusory sentence. This opinion is not credible. "Assist" is an ordinary English word with a readily ascertainable meaning from general purpose dictionaries. There is no evidence that the '733 patent uses "assist" in a different or specialized way. Indeed, Samsung never articulates a different meaning or why it would be ambiguous as used in claim 19. And in his deposition, Samsung's expert essentially conceded that the term was not indefinite (Turnbull Dep. at 88:23-89:9):

> Q: So I'm trying to understand why you find it difficult to determine whether or not a component assists in a process. And my question to you is: If we're following this process of presenting a notification through the source code, for example, *why would a person of skill not be able to determine whether a component assists in that process*?
>
> A: *I think a person of skill if they had all the source code could do that*, has a higher chance of being able to figure that out based on this language in the claim and in the patent.

Thus, Samsung's expert testified that a POSITA *would be able* to determine whether a component, such as an agent, "assisted" in the process of "presenting a notification." He could not give any examples where it could not be determined with reasonable certainty. This shows that Samsung cannot prove indefiniteness by clear and convincing evidence.

## IV.      DISPUTED TERMS FOR '117 PATENT

### A.      "device messaging agents" ('117 patent, claim 1)

| Headwater's Proposal | Samsung's Proposal |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

Claim 1 of the '117 patent cites "a plurality of ***device messaging agents***, each executable on a respective one of a plurality of mobile end-user devices configured to exchange Internet data via a data connection to a wireless network." Samsung contends that "device messaging agents" is indefinite for the same reasons as "device agents" in the '733 patent. *See* Turnbull Decl. ¶ 44. To the extent Samsung makes any distinct arguments for "device messaging agents," it is that "the specification does not use such a term," and the word "messaging" in the term "does not render its meaning any more ascertainable." *Id.*

Samsung's argument fails for same reasons its argument for "device agents" fails: it ignores the structure of the claims, the teachings of the specification, and relevant intrinsic and extrinsic evidence. *See supra* § IV.A. The '117 patent shares a common specification with the '733 patent. Thus, the specification's teachings of "device agent" above would likewise inform the meaning of "device messaging agent." The addition of the modifier "messaging" makes the term more definite and further specifies that the agent is involved in messaging.

Further, the '117 patent uses the term "device messaging agent" four times in its Abstract. And notably, the structure of claim 1 provides a POSITA with reasonable certainty as to claim scope. It requires not only each "device messaging agent" be "executable" on a "mobile end-user device" (which informs a POSITA it would be located on the device), but it also requires that "device messaging agents" be "located on the device" that "receive the Internet data messages." *Id.* Each of these limitations—recited in claim 1 itself—inform a POSITA about the scope of

"device messaging agent" with reasonable certainty.

**B.** **"at least one of the devices having a network stack in communication with the device messaging agent, wherein the secure connection between the network message server and that device is terminated within the network stack" ('117 patent, claim 13)**

| Headwater's Proposal | Samsung's Proposal |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

Samsung's expert agrees that: (1) "network stack" is a well-understood term; (2) any pair of networking devices would have a network stack, and (3) the '117 patent describes and uses network stacks in the standard way. *See* Turnbull Decl. ¶ 46; Turnbull Dep. at 102:22-104:21. His only argument is that "a POSITA would not be reasonably certain about whether a given 'connection' 'terminates' within the network stack." *Id.* ¶ 47. And his only example of alleged uncertainty is it would be unclear whether a connection terminates "within" or "outside" the application layer of the network stack. *Id.* This fails. Although his assertion is wrong, it is also irrelevant. As Samsung's expert conceded, the claim describes a connection terminated "within the network stack"—*not* within a particular layer of the network stack (e.g., the application layer). Turnbull Dep. at 110:14-111:3 ("Q: [the claim] doesn't require that the connection be terminated within a particular layer? A: That's not what is says").

As to what claim actually requires, Samsung's expert could not articulate any ambiguity between terminating "within" the network stack versus "outside" of it. To the contrary, he testified that a POSITA would understand that a secure connection *could* be terminated within the network stack. *See* Turnbull Dep. at 117:3–14 ("Q: Do you agree that a secured connection in the context of the patent can be terminated within the network stack? A. I think that's what the patent is claiming it can do, yes. Q. Okay. Do you agree that in the abstract, a secured connection can be terminated within a network stack? A. Hypothetically in the possibilities of what you could do

with software, I guess you could."). Thus, a POSITA *would* understand claim 13's requirement that "the secure connection . . . is terminated within the network stack." There is no evidence, much less clear and convincing evidence, to the contrary.

Samsung's indefiniteness position is also contrary to its representations to the PTAB. In its IPR challenging claim 13 of the '117 patent, Samsung and its expert (Dr. Traynor) asserted that "a POSITA would have recognized or found obvious that connections between a server and a client would have been "***terminated within the network stack***" *because this was well known in the art by the Critical Date (e.g., as in an HTTPS or IPsec connection, described above*)." Samsung '117 Petition at 49-50 (emphasis in original). Samsung and its expert thus had no problem understanding this term in the IPR and even asserted it was "well known in the art." This further undermines Samsung's position before this district court that the term is suddenly indefinite.

## V.   DISPUTED TERMS FOR '192 PATENT

### A.   "software components" ('192 patent, claims 1, 15)

| Headwater's Proposal | Samsung's Proposal |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

Samsung wrongly identifies "software components" in isolation and omits the surrounding claim language that should be included in the term to be construed. For example, claims 1 and 15 of the '192 patent recite: "each of the wireless end-user devices comprising *multiple software components authorized to receive and process data from secure message link messages received via a device link agent on that device*. Thus, the claims are specifically about "software components" that are: (1) on a wireless end-user device and (2) authorized to receive/process data from secure messages received via a device link agent on the device. And Samsung provides no evidence or opinion that the longer phrase, as recited in the claims, is indefinite.

Even as to the term "software components," Samsung's expert agrees it has a plain meaning and would be understood by a POSITA. Turnbull Decl. ¶ 49. It means "some component of software" (and is further limited by the claim language). *Id.* Samsung's only argument is that it is allegedly unclear "whether 'software components' encompass 'device [link] agents'" or "whether software components' and 'device agents' must be different things." *Id.* ¶ 50.

But the claim language itself resolves any purported ambiguity. Claims 1 and 15 recite software components that "receive and process data from . . . messages received via a device link agent." This shows that "software components" and "a device link agent" are not exactly the same thing and do not perform exactly the same functions in the system. Beyond that, the terms carry their plain meaning, and there is no inconsistency in either the claims or specification. For example, that "software components" is software does not preclude "a device link agent" from being implemented in software. Samsung's expert references certain statements in the specification but none of it is inconsistent. Turnbull Decl. ¶¶ 51-52. His argument, to the extent understandable, is contrived and seeks to manufacture confusion where none exists.

**B.**   **"wherein one of the message delivery triggers is the receipt of a transmission on the respective secure message link from the device link agent of the given one of the wireless end-user devices, or a response generated to a transmission received from that device link agent" ('192 patent, claim 11)**

| Headwater's Proposal | Samsung's Proposal |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

Samsung asserts this term is indefinite for two alleged reasons: (1) a POSITA would not know whether "claim 11 refers to the same 'asynchronous event' trigger recited by claim 1 or something different," and (2) "it is unclear how a 'response generated to a transmission' would be effectively different from the transmission itself." Turnbull Decl. ¶ 54. Both reasons (to the extent

understandable) fail to establish indefiniteness.

The first reason fails because the claims provide reasonable certainty to a POSITA as to scope. Claim 1 requires a "plurality of message delivery triggers" and that, "for at least one of the message delivery triggers, the trigger is an occurrence of an asynchronous event." '192 patent, cl. 1. Claim 11, in turn, simply requires "wherein one of the message delivery triggers is the receipt of a transmission" or a "response generated to a transmission received." Thus, one of the "plurality of message delivery triggers" of claim 1 must meet the limitations of claim 11. Samsung provides no explanation why POSITA would be confused whether the "trigger" in claim 11 could be the "asynchronous event"—and the claim language itself make clear they need not be the same.

The second reason is wholly unexplained beyond a conclusory assertion that something is "unclear." *See* Turnbull Decl. ¶ 54. Regardless, it fails. A "response generated to a transmission" is on its face different from a "transmission itself," as Samsung's expert effectively conceded in deposition. Turnbull Dep. at 133:8-135:3. No reasonable ambiguity was articulated.

### C. "wherein one of the message delivery triggers is the receipt of a particular network element message from one of the network elements" ('192 patent, claim 13)

| Headwater's Proposal | Samsung's Proposal |
|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite |

Samsung contends this term is indefinite because of the word "particular." According to Samsung's expert, a POSITA would not know whether a given "network element message" is a "particular" one as recited in claim 13. Turnbull Decl. ¶ 56. But in deposition, he agreed with the common dictionary definition of "particular" as "being one unit or element among others." *See* Turnbull Dep. at 128:2-8; Merriam-Webster Dictionary (particular: "3 b: being one unit or element among others") (available online at https://www.merriam-webster.com/dictionary/particular).

Samsung's expert did not imply any other understanding in the context of the '192 patent.

And based on the normal English meaning of the word "particular," Samsung expert essentially conceded that a POSITA would understand the meaning of the claim term and it would not be indefinite (Turnbull Dep. 128:12-25):

> Q:    What would your meaning of "particular" be in normal English, if you have one?
>
> A:    I don't know. That's a good question. Maybe something that's distinguished in comparison to something else. It's -- you know, "particular" is a pretty good word I think we all have an idea of what it means certainly in context.
>
> Yeah, I think that's fine just to use it that way, especially since that's how it's referred to. "Particular network element message," I think that gives me some context that it's not any network element message, it's a particular type of one or a particular one.

Thus, Samsung's expert testified that the term "particular network element message" refers to not just any network element message but a "particular one." This shows that the term has a readily ascertainable meaning to a POSITA. There is no basis to find indefiniteness.

## VI.    CONCLUSION

Samsung contends that all seven disputed terms are indefinite. For the foregoing reasons, and because Samsung fails prove indefiniteness by clear and convincing evidence for any term, the Court should find that the terms are not indefinite.

Dated: May 30, 2024                                  Respectfully submitted,

                                                    */s/ Marc Fenster*
                                                    Marc Fenster
                                                    CA State Bar No. 181067
                                                    mfenster@raklaw.com
                                                    Reza Mirzaie
                                                    CA State Bar No. 246953
                                                    rmirzaie@raklaw.com
                                                    Brian Ledahl
                                                    CA State Bar No. 186579

bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
bwang@raklaw.com
Dale Chang
CA State Bar No. 248657
dchang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
pwang@raklaw.com
Amy Hayden
CA State Bar No. 287026
ahayden@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
jwietholter@raklaw.com

**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Fl.
Los Angeles, CA 90025
Telephone: 310-826-7474

*Attorneys for Plaintiff*
*Headwater Research LLC*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that counsel of record who to have consented to electronic service are being

served on May 30, 2024, with a copy of this document via the Court's CM/ECF system.

*/s/ Marc Fenster*
Marc Fenster