**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　　　　Defendants. | Case No. 2:23-cv-00103-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF HEADWATER RESEARCH LLC'S**
**REPLY CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I. DISPUTED TERMS FOR '733 PATENT ...................................................................................1

    A. "device agents" ('733 patent, claims 1, 30)..........................................................1

    B. "wherein the particular device agent is configured to assist in presenting a notification through the user interface, the notification based on the message content" ('733 patent, claim 19) ..............................................................6

II. DISPUTED TERMS FOR '117 PATENT ...................................................................................8

    A. "device messaging agents" ('117 patent, claim 1) ................................................8

III. DISPUTED TERMS FOR '192 PATENT ..................................................................................8

    A. "software components" ('192 patent, claims 1, 15) .............................................8

    B. "wherein one of the message delivery triggers is the receipt of a particular network element message from one of the network elements" ('192 patent, claim 13) ......................................................................................10

## TABLE OF EXHIBITS AND ABBREVIATIONS

| Ex.* | Description | Abbreviation |
|---|---|---|
| 1 | U.S. Patent No. 8,406,733 (Dkt. 31-1) | '733 patent |
| 2 | U.S. Patent No. 9,198,117 (Dkt. 31-2) | '117 patent |
| 3 | U.S. Patent No. 9,615,192 (Dkt. 31-3) | '192 patent |
| 4 | Samsung's Patent Rule 4-2 Identification of Claim Constructions and Extrinsic Evidence (Mar. 28, 2024) | Samsung CC Disclosure |
| 5 | Samsung's Amended Patent Rule 4-2 Identification of Claim Constructions and Extrinsic Evidence (Apr. 29, 2024) | Samsung Am. CC Disclosure |
| 6 | Declaration of Don Turnbull, Ph.D. (Apr. 29, 2024) | Turnbull Decl. |
| 7 | Deposition Transcript of Don Turnbull, Ph.D. (May 28, 2024) | Turnbull Dep. |
| 8 | Dictionary of Computer and Internet Terms (10th ed., 2009), definition of "agent" (SAM-HW-2_00215498) | Computer Terms Dict. |
| 9 | U.S. Patent App. Pub. 2006/0218395 (Ex. 9 to Turnbull Dep.) | '395 application |
| 10 | Samsung SDS Enterprise Mobility Management Installation Guide (Jan. 2023) (HW103-00082010) | Samsung EMM Guide |
| 11 | U.S. Patent No. 9,800,708 (HW103-00082269) | '708 patent |
| 12 | U.S. Patent No. 10,506,090 (HW103-00082218) | '090 patent |
| 13 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 9,198,117, Paper 2, IPR2024-00003 (Nov. 17, 2023) | Samsung '117 IPR Pet. |
| 14 | Institution Decision in *Inter Partes* Review of U.S. Patent No. 9,198,117, Paper 8, IPR2024-00003 (May 22, 2024) | '117 IPR Inst. Dec. |
| 15 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 9,615,192, Paper 2, IPR2024-00010 (Nov. 17, 2023) | Samsung '192 IPR Pet. |
| 16 | Institution Decision in *Inter Partes* Review of U.S. Patent No. 9,615,192, Paper 7, IPR2024-00010 (May 23, 2024) | '192 IPR Inst. Dec. |
| 17 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 8,406,733, Paper 4, IPR2024-00341 (Jan. 23, 2024) | Samsung '773 IPR Pet. 1 |

| Ex.* | Description | Abbreviation |
|---|---|---|
| 18 | Samsung's Petition for *Inter Partes* Review of U.S. Patent No. 8,406,733, Paper 4, IPR2024-00342 (Jan. 23, 2024) | Samsung '773 IPR Pet. 2 |
|  | Headwater's Opening Claim Construction Brief (Dkt. 94) | Op. Br. |
|  | Samsung's Responsive Claim Construction Brief (Dkt. 96) | Resp. Br. |
|  | Excerpts of the prosecution history of U.S. Patent Application No. 14/667,353 (Dkt. 96-6) | '353 FH |

\* All exhibits attached to the declaration of James S. Tsuei (Dkt. 94-1) filed with Headwater's opening claim construction brief

Up until the day the JCCS was due, Samsung asserted that 27 terms in the three asserted patents were indefinite. Now it is down to 5 terms. Samsung's remaining arguments fare no better, and it fails to show that any term is indefinite. Headwater highlights two points at the outset.

*Dr. Turnbull's Opinions:* Although Samsung submitted a declaration from Dr. Turnbull, it is entirely conclusory. The weakness of the declaration, as well as Dr. Turnbull's deposition admissions, show that the 7 terms he addresses are not indefinite. Indeed, Samsung withdrew 2 terms after receiving Headwater's opening brief. As to the remaining terms, Samsung's arguments are largely new and unsupported by Dr. Turnbull's opinions (or any other evidence).

*Samsung's IPRs*: Samsung now contends that 7 terms are indefinite but gave no inkling of that in four IPRs challenging the same claims. Contrary to Samsung's argument, the PTAB can (and often does) assess indefiniteness issues in the institution decision and may even decline to institute on that basis. *Samsung Electronics America, Inc. v. Prisua Engineering Corp.*, 948 F.3d 1342, 1350-53 (Fed. Cir. 2020) ("the proper course for the Board to follow, if it cannot ascertain the scope of a claim with reasonable certainty for purposes of assessing patentability, is to decline to institute the IPR or, if the indefiniteness issue affects only certain claims, to conclude that it could not reach a decision on the merits with respect to . . . those claims").

Here, the record evidence demonstrates that: (1) Samsung and its experts didn't suggest that any terms might be indefinite in four IPR petitions; and (2) the PTAB didn't suggest that any terms might be indefinite in two institution decisions. *See* Op. Br. at 2. Although not dispositive by itself, the IPR record provide additional evidence that the terms are not indefinite.

I.      DISPUTED TERMS FOR '733 PATENT

    A.      "device agents" ('733 patent, claims 1, 30)

Samsung concedes that if the term recited "agent" instead of "device agent," it would not be indefinite. *See* Resp. Br. at 8 (discussing plain meaning of "agent" in the context of '733 patent);

Turnbull Dep. at 58:16–59:11 (offering no opinion or reason for indefiniteness if the claim recited "agent"). Instead, the only ambiguity Samsung asserts is whether "device agent" means: (a) exactly the same thing as "agent" or (b) something narrower. *See* Resp. Br. at 8–9 (arguing that it is unclear "whether a 'device agent' adopts the meaning of an 'agent'"). Dr. Turnbull confirmed that this was the core of his indefiniteness argument. *See* Turnbull Dep. at 73:6–15.

But no genuine ambiguity exists. Op. Br. at 4–5. Based on the term itself, as well as the claims and specification of the '733 patent, a "device agent" is simply an agent on the device (the "end-user device" recited in claim 1). Although Samsung presents 11-pages of briefing, it never asserts that this understanding is unreasonable or inconsistent with the intrinsic evidence. Nor does Samsung assert that interpreting "device agents" to mean agents on the device would render the claims indefinite. Accordingly, no adequate showing of indefiniteness has been made. Samsung's lengthy arguments dance around these core issues and fail under the law and the facts.

### 1. "Device agents" has a plain and ordinary meaning in the context of the '733 patent

The claims and specification are fully consistent with the plain meaning of "device agents." They describe an "agent" (software that performs functions on behalf of another element) located on the end-user "device." Samsung concedes as much, noting that the '733 patent discloses a device agent that "performs functions related to service and management" on the device. Resp. Br. at 8. Samsung's primary complaint is that the claims/specification do not *redefine* "device agent" to something narrower. *See id.* at 8, 12. But that is not the test for indefiniteness. At most, it would show that "device agent" carries the full scope of its plain meaning. But the alleged breadth of a term (in isolation) is not a basis for indefiniteness. *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) (legal error to infer indefiniteness because "breadth is not indefiniteness"). The same claim scope would also apply to infringement and validity.

Samsung's other arguments about the plain meaning of "device agents" (Resp. Br. at 9) likewise fail. *First*, it speculates that the term might mean an "agent for a device" (i.e., an agent on the server that performs functions "on behalf of" the device). *Id.* But Samsung cites no intrinsic or extrinsic evidence, or even the opinions of its own expert. Indeed, Dr. Turnbull never proposes this interpretation of "device agents"—much less suggests that the term is ambiguous because of it. *See* Turnbull Dep. at 73:25–74:4 ("Q: you don't purport to give or propose a specific meaning or understanding of 'device agent' or multiple such meanings, right? A: No.").

Samsung's interpretation is thus unsupported, especially in the context of the '733 patent. The claims/specification consistently show device agents on the end-user device. No intrinsic (or extrinsic) evidence describes a remote agent the server as a "device agent."

*Second*, Samsung argues that "agents on the device" is duplicative of the claim language. Resp. Br. at 9. But no rule of construction requires each word of a claim to have independent or different meanings. Nor is that a proper argument for indefiniteness. To the contrary, claims often use terms with overlapping or reinforcing meanings, and this makes the claim more definite, not less so. *See Bell & Howell Doc. Mgmt. Prod. v. Altek Sys.*, 132 F.3d 701, 707, (Fed. Cir. 1997) ("defining a state of affairs with multiple terms should help, rather than hinder, understanding"— finding terms to be "mutually reinforcing definitions rather than being superfluous").

## 2. Extrinsic evidence confirms the plain meaning of "device agents"

Samsung insist that "device agents" is an unknown term in the art. Resp. Br. at 6, 13–14. But the only basis for this assertion—Dr. Turnbull's *ipse dixit* opinion—was discredited. Op. Br. 6–7. And overwhelming evidence of record, including prior art references and Samsung's own documents and patents, disproves Dr. Turnbull's assertion. Samsung devotes several pages to the evidence (Resp. Br. at 14–16) but cannot dispute two fundamental points. *First*, the evidence repeatedly uses the term "device agent"—including as the *entire title* of the '395 application cited

3

on the face of the '733 patent.[1] This demonstrates that "device agent" is a known term in the art that would be recognized by (and expected to be recognized by) POSITAs.

*Second*, the evidence describes "device agent" consistent with its plain meaning: agent on the device. Samsung vaguely asserts that the evidence uses device agent to "take on different meanings" (Resp. Br. at 5) or in "a different context in an unrelated document" (*id*. at 14). This is unexplained and wrong. All the evidence shows a device agent located on the device. Tellingly, Samsung never articulates some other plain meaning of "device agents" that the evidence allegedly supports. For example, Samsung doesn't contend that the evidence shows a "device agent" as a remote agent on the server that performs functions "on behalf of" the device.

### 3. Samsung's cited cases are inapposite and fail to support indefiniteness in this case

In one page of its brief (out of eleven), Samsung cites a dozen cases but fails to present developed arguments based on them. Resp. Br. at 6–7. The cases are inapposite, and Samsung fails to explain how they support an indefiniteness finding for the different term, claims, patent, and intrinsic and extrinsic record *in this case*. This is because they do not. Samsung cites five cases in a footnote, but *none* found indefiniteness. *Id.* at 6, n.6. The cases involved overbroad constructions that were "untenable" in light of the specification. *Id.* at 6, n.6. Here, "device" narrows the plain meaning of "agent," and that understanding is fully supported by the specification.

*Second*, Samsung cites four cases that found completely unrelated two-word phrases (such as "magnetic fuzz") to be indefinite. *Id.* at 7. They are also involved phrases that were "coined,"

---

[1] Samsung's objections to the three pieces of evidence (Resp. Br. at 13, n.7) lack merit. The '395 application is intrinsic evidence and was introduced in Dr. Turnbull's deposition as an impeachment exhibit. The '708 and '090 patents (effectively filed 2010) are close in time to the '733 patent (earliest priority Jan. 2009). The EMM Guide was published in 2023, but Dr. Turnbull testified to his belief that "device agent" was an unknown term through May 2024. Turnbull Dep. at 59:21–60:2. The EMM Guide thus undermines Dr. Turnbull's overall opinion.

4

changed the meaning of individual words, or otherwise created a clear ambiguity in claim scope that could not be resolved. Here, "device agent" is simply an agent on the device, and it uses both words in their ordinary sense. Further, Samsung and its expert have never articulated multiple meanings of "device agent" that would cause ambiguity (other than incorrectly questioning whether "device agent" means exactly the same thing as "agent"—it does not).

*Third*, Samsung relies on *Joao*, an out-of-district case finding different "agent" terms (such as "intelligent agent") to be indefinite. *Id.* at 7. That case is inapposite and clearly limited to the different terms, claims, patents, and specifications at issue in that case. Samsung doesn't mention any of that, much less show how they apply to "device agents" in the claims of the '733 patent. Because they don't. In *Joao*, the patentee asserted lexicography based on "clear definitions" of the agent terms in two books incorporated by reference in the specification. 2015 WL 4937464, at *7. The court found that the patentee's definition, while derived from one book, was "directly contradicted" by additional statements in both books. *Id.* No such intrinsic record or ambiguity exists here. Nor does *Joao* contain any other findings/reasoning that are applicable here.

### 4. Samsung's alternative construction—adding a negative limitation to "exclude applications"—is waived and unsupported

Unable to show indefiniteness, Samsung raises a new alternative construction—asking the Court to construe device agent "to exclude applications"—for the first time on page 13 its response brief. Resp. Br. at 13, 16. This is clearly waived. Samsung never identified this construction in its claim construction disclosures, Dr. Turnbull's declaration, or even the first 12 pages of its brief. A party cannot assert indefiniteness, force argument/briefing on that issue, and then suddenly pivot to a new construction (not indefiniteness).

Even if the Court were to consider Samsung's request, it is meritless. Samsung seeks to add the negative limitation of "excluding applications" to the plain meaning of device agent. But

5

courts don't import limitations into the claims—especially *negative* limitations—absent lexicography or disclaimer. And Samsung does not even contend disclaimer here. Dr. Turnbull conceded as much. Turnbull Dep. at 82:6–16 ("*A*: That phrase [disclaimer of claim scope] doesn't ring a bell in my report"). Indeed, much of Samsung's discussion of the specification is about the *lack of* lexicography or disclaimer for the "device agents" term. *See* Resp. Br. at 8.

Nor does the '733 patent's depiction in certain figures of "applications" in a separate box from "agents" support imposing a negative limitation as a matter of claim construction. Samsung knows this is legal error, which is why it doesn't argue it. Likewise, exemplary figures in other patents and applications are even further removed. *See id.* at 14–16. They cannot show that the applicant here clearly and unmistakably disclaimed claim scope for the '733 patent.

Samsung's proposal to construe device agent "to exclude applications" has other problems. The parties agree that "agent" generally means software that performs certain functions behalf of another element. This plain meaning can include applications or parts of applications. Further, Samsung never explains what it means by "applications." Thus, it is unclear what claim scope it seeks to exclude (which regardless is unsupported given the lack of disclaimer).

**B.    "wherein the particular device agent is configured to assist in presenting a notification through the user interface, the notification based on the message content" ('733 patent, claim 19)**

Samsung argues that the word "assist" is a "subjective term of degree." Resp. Br. at 17. It says: "one can argue ***any*** component of a device is configured to assist ***any other*** component of that same device." *Id.* (emphasis by Samsung). But this argument is not credible. The word "assist" is a simple verb having a universally understood meaning: e.g., *to give support or aid to; help*. "Assist" is plainly not a "subjective" claim element whose satisfaction depends on the perspective of the user, like "aesthetically pleasing," "desirable," or "unobtrusive."

To support its argument, Samsung poses several questions: "if a given component stores

6

or processes information that is ultimately displayed through a user interface, does it necessarily 'assist' in that presentation?"; "what level of involvement is required for software to cross over from merely handling a notification to being deemed to be 'configured to assist' in its presentation?" *Id.* These hypothetical questions, however, illustrate the contrived nature of its argument. Using Samsung's approach, virtually *any* verb is indefinite—"configured to help" or "configured to cause" would likewise be indefinite, because—according to Samsung—a POSITA simply would never know with any certainty if a software component "helped" do something or "caused" something to happen. This defies common sense and ordinary logic.

Indeed, Dr. Turnbull testified that a POSITA *could* determine whether a software component "assists" in the "process of presenting a notification." Turnbull Dep. at 89:1–9. Samsung tries to explain away this testimony, saying it "merely noted that with all the source code, a POSITA had a higher chance of being able to figure out whether a component assists in that process or not." Resp. Br. at 18–19. But that is Headwater's point. The issue is not some inherent ambiguity in the claim but a lack of full information about an accused system. And there is no evidence that a POSITA with sufficient information (source code) would be unable to apply the claim.

Samsung's related argument that a "POSITA would be unable to articulate what it means for a 'device agent' to be 'configured to assist'" (Resp. Br. at 18) is misplaced and unsupported by its own expert. A POSITA would not have needed specification disclosure to know what it means for software to be "configured to assist." This is because the term has "so clear an ordinary meaning that a skilled artisan would not be looking for clarification in the specification." *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 738 (Fed. Cir. 2014). Samsung also overlooks the '733 patent at 50:42-59, which provides relevant disclosures that support assisting in presenting a notification

7

based on the UI, the notification based on the message content.

## II. DISPUTED TERMS FOR '117 PATENT

### A. "device messaging agents" ('117 patent, claim 1)

Samsung first argues that "device agent" in the '733 patent is used "in a manner inconsistent with the way" that the '117 patent's claims use "device messaging agents." Resp. Br. at 19. In the next sentence Samsung says that the '117 patent establishes that "'device messaging agent' serves a different function" than "device agent" in the '733 patent." *Id.* at 19–20. "Device messaging agents," Samsung says, "serves a different function—it functions as an intermediary that receives 'Internet data messages' from a 'network message server' and forwards them to their intended destination (a 'software process')." *Id.* Through this argument, Samsung effectively concedes that the claims themselves imbue the term "device messaging agents" with scope known to a POSITA with reasonable certainty. Its only argument is that the words "device" and "messaging" are extraneous and "made-up" (Resp. Br. at 21). This fails for the reasons explained in the opening brief and above for the "device agent" terms—there is nothing wrong with using mutually reinforcing terms in a claim.

Samsung then argues that "device messaging agents" is indefinite because the file history in a related application contains statements that allegedly "confirms the arbitrary nature of 'device messaging agent.'" Resp. Br. at 20. But the file history merely shows that the '117 specification discusses certain embodiments with a "service control device link." This further informs a POSITA about the meaning "device messaging agents," to the extent it were not already clear from the plain meaning of the words and the context in which the term appears in the claims.

## III. DISPUTED TERMS FOR '192 PATENT

### A. "software components" ('192 patent, claims 1, 15)

Samsung's indefiniteness argument for "software components" relies on a false dichotomy

8

between "software components" and "device agents." It says that the patent treats "software components" as referring to "something completely distinct from "device agents," and then appears to argue that the doctrine of claim differentiation compels concluding "software components" to mean something different from "device agents." Resp. Br. at 23. This fails.

*First*, "device agents" is not in the claims of the '192 patent. The closest term in the claims is "device link agents," which Samsung doesn't contend is indefinite. Thus, whether "device agents" in other patents is indefinite cannot show that "software components" in the '192 patent is indefinite. *Second*, Samsung's argument relies on two contrived premises: that (1) "the bounds of 'device agents' are indeterminate"; and (2) "'software components' encompasses everything that a device agent is not." Resp. Br. at 23. The first is irrelevant and, as explained for the '733 patent, incorrect. The second is unsupported by the claims, the specification, and the opinions of its own expert. Dr. Turnbull said that he *cannot tell* if "software components" and "device link agents" are intended by the '192 patent to be "different" (Dkt. 94-8, at 122:10-16), and that there is an "implied distinction" between the "software components" and "agents" (*id.* at 124:10-125:10).

Dr. Turnbull's opinion is wrong. But in any event, it does not support Samsung's assertion that "software components" would be understood by a POSITA to be "everything that a device agent is not." Samsung fails to even mention, much less address, the claim language surrounding "software components" that gives it appropriate context. *See* Resp. Br. at 24.

"Software components" has a plain meaning, and various types of software may fall within that meaning: "agents" and "applications" are but two examples. No POSITA would understand "software components" to be "everything that a device agent is not," either in general or in the context of the '192 patent. Nor does Samsung identify any lexicography or disclaimer that would support its contrived understanding. Its own citations on Resp., at 24, to Figure 16, 43:31-37, and

9

92:21-23, confirm that "agents" and "applications" are components of software in the system—which Samsung immediately admits at Resp., at 25 (conceding "specification portions suggest that 'device agents' can be implemented as 'software components'"). A POSITA reading the specification and the claims would know that "software components" and "agents"—even if not identical—can be related and overlapping concepts.

> B.     "wherein one of the message delivery triggers is the receipt of a particular network element message from one of the network elements" ('192 patent, claim 13)

Samsung argues that there "are many possibilities as to what can make a 'network element message' 'particular,'" and, to illustrate the point, poses several hypothetical questions that are untethered to the claim language. *See* Resp. Br. at 25-26. Samsung's "many possibilities" argument and hypothetical questions essentially ignore its own expert's testimony: that a POSITA would know "particular network element message" in the claims means "not any network element message, it's a particular type of one or a particular one." Turnbull Dep. at 128:12-25.

Samsung's objection appears to be to the breadth of the claim—i.e., it thinks that because there are "many possibilities" for how the limitation might be satisfied, the term is indefinite. The POSITA could, for instance, program a system to listen for 50 different network element messages, categorized into, say, 5 types, and configure the system to treat the receipt of each one as a "trigger" for the claimed "message delivery." This, Samsung appears to argue, is proof of indefiniteness. But it is well settled that "breadth is not indefiniteness." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005) (citations omitted). And, even in this extreme hypothetical case, it cannot be reasonably disputed the POSITA would understand that such network element messages are "particular" ones, as Dr. Turnbull testified, and, therefore, would likewise understand the scope of the term with reasonable certainty.

10

| | |
|---|---|
| Dated: June 20, 2024 | Respectfully submitted,<br><br>*/s/ Marc Fenster*<br>Marc Fenster<br>CA State Bar No. 181067<br>mfenster@raklaw.com<br>Reza Mirzaie<br>CA State Bar No. 246953<br>rmirzaie@raklaw.com<br>Brian Ledahl<br>CA State Bar No. 186579<br>bledahl@raklaw.com<br>Ben Wang<br>CA State Bar No. 228712<br>bwang@raklaw.com<br>Dale Chang<br>CA State Bar No. 248657<br>dchang@raklaw.com<br>Paul Kroeger<br>CA State Bar No. 229074<br>pkroeger@raklaw.com<br>nrubin@raklaw.com<br>Kristopher Davis<br>CA State Bar No. 329627<br>kdavis@raklaw.com<br>James S. Tsuei<br>CA State Bar No. 285530<br>jtsuei@raklaw.com<br>Philip Wang<br>CA State Bar No. 262239<br>pwang@raklaw.com<br>Amy Hayden<br>CA State Bar No. 287026<br>ahayden@raklaw.com<br>Jason M. Wietholter<br>CA State Bar No. 337139<br>jwietholter@raklaw.com<br><br>**RUSS AUGUST & KABAT**<br>12424 Wilshire Blvd. 12th Fl.<br>Los Angeles, CA 90025<br>Telephone: 310-826-7474<br><br>*Attorneys for Plaintiff* |

*Headwater Research LLC*

12

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who to have consented to electronic service are being served on June 20, 2024, with a copy of this document via the Court's CM/ECF system.

*/s/ James S. Tsuei*
James Tsuei