UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendant*. | Case No. 2:23-CV-00103-JRG-RSP |

**SAMSUNG'S OBJECTIONS**
**TO CLAIM CONSTRUCTION ORDER (DKT. 118)**

## TABLE OF CONTENTS

**Page**

I.  "DEVICE AGENTS" ('733 PATENT) ..................................................................................1

II. "DEVICE MESSAGING AGENTS" ('117 PATENT) .......................................................4

Pursuant to Fed. R. Civ. P. 72, Defendants Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc. (together "Samsung") respectfully objects to the constructions in the Claim Construction Order (Dkt. 118) (the "R&R").

## I.   "DEVICE AGENTS" ('733 PATENT)

The R&R clearly erred in construing "device agent" to mean "a piece of software on the end-user device that performs certain functions for other software" for at least five reasons.

*First*, while the Court recognized the ambiguity with the term "device agent," it found it was not indefinite in contravention to the intrinsic evidence. As Samsung pointed out in its briefing, the '733 Patent does not provide any guidance to save "device agent" from indefiniteness. Claim 1 recites that a plurality of device agents are "communicatively coupled to the service control device link agent through an agent communication bus," that each device agent is "identifiable by an associated device agent identifier," and that a "particular" device agent receives message content delivered by a "service control device link agent." Dkt. No. 94-2, Claim 1. These generic operations do not inform the boundaries of a "device agent": they leave open the question of whether a "device agent" adopts the meaning of an "agent" and, if so, how the prefix "device" modifies its meaning. The patent specification is similarly not helpful. The specification uses the term "device agent" only a few times, describing its generic function or indicating that a device agent is software. *See, e.g.*, Dkt. No. 94-2 at 15:58-60 ("[T]he service processor 115 includes various components, such as device agents, that perform service policy implementation or management functions."); *id*. at 11:65-66 ("the device agent software"), 160:7-8, 162:34-35, 162:47-48. In fact, the specification introduces ambiguity to the "device agent" term by inconsistently describing some agents in the device as "device agents," but not others. *See* Dkt. 96 at 9-10. The Court's construction does not resolve this ambiguity. At best, a POSITA would glean

1

from these disclosures that a device agent performs functions related to service and management, but these abstract disclosures do not meaningfully delineate the bounds of a device agent.

***Second***, the Court's decision to not exclude applications in the construction for "device agent" contravenes the specification. As explained in Samsung's briefing, the very little guidance provided by the '733 patent regarding what the "device agent" is shows device agents are not applications. For example, Figure 16 of the '733 patent expressly shows that apps are different from "agents" that are inside a device. Dkt. 96 at 9-11; *see also* Dkt. No. 94-2 at 52:5-9 ("As shown in FIG. 16, the application interface agent 1693 is in communication with various applications, including a TCP application 1604, an IP application 1605, and a voice application 1602."). Although the Court raised the possibility that "there might be at least some overlap" between "device agents" and "apps," nowhere does the specification suggest such overlap. Dkt. 96 at 13.

***Third***, to the extent the Court found the term "device agent" not indefinite because the term "agent" has a plain and ordinary meaning (*see* Dkt. 118 at 10), this is clear error. Claim terms can be indefinite despite individual words having accepted industry meaning. *See, e.g.*, *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1-14-CV-134-LY, 2015 WL 4937464, at *7–8 (W.D. Tex. Aug. 18, 2015) (holding "intelligent agent," "software agent," and "mobile agent" indefinite); *Mantissa Corp. v. First Fin. Corp.*, No. 2022-1963, 2024 WL 607717, at *4 (Fed. Cir. Feb. 14, 2024) (holding "transaction partner" indefinite); *Infinity Computer Prod., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053, 1062 (Fed. Cir. 2021) (holding "passive link" indefinite); *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 904 (Fed. Cir. 2020) (holding "magnetic fuzz" indefinite); *Cap. Sec. Sys., Inc. v. NCR Corp.*, 725 F. App'x 952, 959 (Fed. Cir. 2018) (holding "transactional operator" indefinite). Here, the individual words do not require an interpretation that a device

agent is an agent that is "on the end-user device." For example, device agent might also mean an agent for a device (which would also be too generic to satisfy Section 112) that could include an agent not on the device but performs certain functions on behalf of said device.

***Fourth***, the Court did not address Samsung's argument that a construction that "device agent" simply means an agent in a device renders "device" meaningless because the claim structure already makes plain that a "device agent" is something comprised in a device. Dkt. No. 94 at 5; *see* Dkt. No. 94-2, Claim 1 (an "end-user device" comprising "a plurality of device agents"). The prefix "device" would be rendered extraneous if all that the "device agent" term meant was an agent in a device. *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be interpreted with an eye toward giving effect to all terms in the claim."). This alone is a basis to find "device agents" indefinite, and accordingly it was error for the Court to not consider this argument.

***Fifth***, Headwater admitted, and the Court recognized, that "downloadable apps ***are not*** 'device agents' themselves, but suggested they ***might include*** 'device agents.'" Dkt. 118 at 13 (emphasis added). This highlights the indefiniteness of "device agent" because Headwater provides no reasoning for why a downloadable app could not be a device agent, but might include a device agent. By arbitrarily drawing the line around apps, Headwater merely obscures the boundary of what device agent means. Because all downloadable apps interact with a mobile device's operating system, the Court's construction that a "device agent" is "a piece of software on the end-user device that performs certain functions for other software" does not provide guidance to a person of ordinary skill in the art to determine when an app contains or does not contain a device agent.

3

For at least the foregoing reasons, Samsung respectfully request that the Court (a) modify the construction of "device agent" to be indefinite or, in the alternative (b) modify the construction of "device agent" to exclude applications.

## II.     "DEVICE MESSAGING AGENTS" ('117 PATENT)

The R&R erred in construing "device messaging agent" to mean "a piece of software on a mobile end-user device that performs certain messaging functions for other software."

*First*, similar to the arguments above regarding the '733 patent's "device agent," the '117 patent's claims merely ascribe some functions to a "device messaging agent" and leave open the question whether the term adopts the meaning of an "agent" and, if so, how its prefixes modify the meaning of that term—especially since the claim already requires the term to be "executable on . . . mobile end-user *devices*" and to receive "Internet data *messages*." Dkt. No. 94-3, Claim 1.  The specification sheds no light because it does not use that term at all.

*Second*, the Court erred by discounting Samsung's arguments that the prosecution history of the related '353 Application ascribed a meaning to "device messaging agents" inconsistent with how the '117 patent uses the term "agents." Dkt. 118 at 15.  The Court found that Samsung had presumed the term was coined and failed to consider how a POSITA would understand the term outside the context of the patent.  *Id*.  But even if there is no dispute about the meaning of "agent," by itself, no evidence of record indicates that the larger term "device messaging agent" was known or that a POSITA would assume that "messaging" is the function performed by the agent.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Given that the specification specifies that agents are involved in "service policy" or "management" functions (Dkt. 94-3 at 11:35-40, 15:58-60) and the related prosecution history eliminated those

4

defining features, a POSITA would not be reasonably certain of the scope of "device messaging agents."

For at least the foregoing reasons, Samsung respectfully request that the Court modify the construction of "device agent" to be indefinite.

Dated: September 5, 2024                                  Respectfully submitted,

By:   /s/ Jonathan B. Bright
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman (*pro hac vice* forthcoming)
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Jonathan B. Bright
GA Bar No. 256953
jbright@fr.com
Christopher O. Green
GA Bar No. 037617
cgreen@fr.com
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
Nicholas A. Gallo (*pro hac vice* forthcoming)
GA Bar No. 546590
gallo@fr.com

5

Steffen C. Lake (*pro hac vice* forthcoming)
GA Bar No. 512272
lake@fr.com
Vivian C. Keller (*pro hac vice*)
GA Bar No. 651500
keller@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Fax: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)

6

NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036
Telephone: (212) 765-5070
Fax: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP – LA**
Los Angeles, CA 90017 USA
213/443-3000 Fax: 213/443-3100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com

7

>Grant K. Schmidt
>Texas Bar No. 24084579
>gschmidt@hilgersgraben.com
>**HILGERS GRABEN PLLC**
>7859 Walnut Hill Lane, Suite 335
>Dallas, Texas 75230
>Telephone: (972) 645-3097
>
>**ATTORNEYS FOR DEFENDANTS**
>**SAMSUNG ELECTRONICS CO., LTD. AND**
>**SAMSUNG ELECTRONICS AMERICA, INC.**

8

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on September 5, 2024, with a copy of this document via the Court's CM/ECF.

*/s/Jonathan B. Bright*
Jonathan B. Bright