# Exhibit A

```
 1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
 2                            MARSHALL DIVISION

 3   HEADWATER RESEARCH, LLC,       (  CAUSE NO. 2:23-CV-103-JRG
                                    )
 4             Plaintiff,           (
                                    )
 5   vs.                            (
                                    )
 6   SAMSUNG ELECTRONICS CO., LTD., (
     et al.,                        )  MARSHALL, TEXAS
 7                                  (  JULY 11, 2024
               Defendants.          )  1:30 P.M.
 8   _____

 9

10
     _____
11
                            MARKMAN HEARING
12
                BEFORE THE HONORABLE ROY S. PAYNE
13                UNITED STATES MAGISTRATE JUDGE

14   _____

15

16

17

18

19

20

21

22              SHAWN McROBERTS, RMR, CRR
                   100 E. HOUSTON STREET
23                MARSHALL, TEXAS  75670
                      (903) 923-8546
24         shawn_mcroberts@txed.uscourts.gov

25
```

1  means 'device agents' can be read to include apps, and we know
2  that's not the case.  And this demonstrates why the term is
3  indefinite, because it has no meaning that would cabin it, at
4  least the way Headwater argues it, to exclude applications.
5      Now, Your Honor, I understand that negative constructions
6  are not always favored, and I see that to -- I understand why
7  that's the case.  But in this situation a dispute -- a claim
8  construction dispute has been raised because we believe the
9  claim is indefinite and we believe their interpretation
10 further renders it indefinite, and that's the only reason I'm
11 raising this to you now, Your Honor.
12          THE COURT:  You know, there can be broad terms that
13 have some overlap that still have a definite meaning, and one
14 of my problems with your request for a construction that
15 excludes applications is the lack of any definition of
16 applications.
17          MR. YANG:  Oh, okay.  Sorry, Your Honor.  I didn't
18 realize that that was an issue.
19      So 'applications', we believe, should be given its plain
20 and ordinary meaning.  Now, by that, in the context of this
21 patent and mobile devices are things that a user can download
22 from the App Store, they can interface with, and they perform
23 their own functions--right?--so a gaming app, internet browser
24 app that you download, antivirus software app that you
25 download.  And we believe it gets the normal plain and

1  unclear.  So yes, it's not a term of degree, but the term

2  itself also has boundary issues, and that's why I think the

3  same logic or the same legal principles underlying the cases

4  that you have -- the case that you had in the *Techiya* case

5  underlied this case as well.  So you have to look at the

6  specification, see what it discloses, if you're going to try

7  to save the term from indefiniteness.

8              THE COURT:  I understand that it looks like trying

9  to save a term from indefiniteness, but what it actually is is

10 trying to determine the scope of the term and -- anyway, I'm

11 reluctant to say that just because two terms are used in the

12 same specification, that they can't have any overlap.  And,

13 you know, 'applications' are a broad term.  'Device agent' is

14 also a broad term.  The fact that both terms appear means that

15 they're not identical, or at least certainly supports that

16 argument, but it doesn't mean that there can't be some overlap

17 between them.

18             MR. YANG:  Your Honor, that's an interesting point,

19 and I think, you know, perhaps a way to resolve this is this

20 may be what I think Your Honor is suggesting--a factual

21 determination ultimately--right?-you know, whether something

22 is a device agent, whether it is not an application, whether

23 there's overlap on that particular thing we're looking at that

24 makes it both.  Right?

25          So one possibility -- and I think that's a fair thing,

1          Excuse me, Your Honor, I just want to get back to -- I
2     went the wrong direction.
3          So on 'applications', we have three main problems with
4     their construction.  One, it's procedurally improper.  We went
5     into this in the briefing, but it's clearly waived.  It was
6     raised for the first time on page 13 of their response brief.
7          I think it is also legally incorrect.  And I think
8     counsel even admitted, you know, the necessity to have
9     lexicography or disclaimer, and especially when we're talking
10    about negative limitation, and there's no attempt in either
11    the argument or the briefing to meet, like, that standard.
12         And third, Your Honor, we do have a problem factually
13    with it--right?--which is we have the plain and ordinary
14    meaning of 'agent' or 'device agent'.  That's in Your Honor's
15    tentative.  It's also on this slide reflected in Doctor
16    Turnbull's declaration and dictionary definitions.  And then
17    the question is, is there lexicography or disclaimer that
18    removes something from that.  I think legally there's no case
19    for that.
20         And just ==factually we don't know what they mean by==
21    =='application'.==  ==I think for the first time there was some==
22    ==argument about applications downloaded from an app store or==
23    ==typically downloaded.==  I mean, we don't know what that means,
24    and that creates all sorts of issues that would confuse things
25    and we think are unsupported and both are broad terms.

1  'Application' is not a claim term for the '733 Patent, it's
2  not explained, defined, so I think any sort of negative
3  limitation would be unjustified.
4         And if we look at the plain and ordinary meaning of
5  'agent', there could be some overlap.  Maybe the entirety of a
6  device agent is not co-extensive with, you know, a third-party
7  application downloaded from the app store, but when we just
8  have the claim term of a device agent, there could be some
9  overlap or parts of applications or parts of applications in
10 conjunction with other software that we think makes it -- any
11 sort of negative construction inappropriate.
12            THE COURT:  Well, Mr. Wang, are you reading 'device
13 agent' to cover what is ordinarily understood as an
14 application in the way that Samsung has been describing it
15 today?
16            MR. PHILIP WANG:  I don't believe we are, Your
17 Honor.  And I think what I said is what I just
18 explained--right?--which is that there is software -- in our
19 infringement contentions we talk about the operating system,
20 software that performs these functions, and I think we put
21 'and/or applications', and that we think that that is
22 appropriate.  If there is software, it could have some overlap
23 with parts of applications or parts of functionality.
24         And to the extent there is a valid argument that they
25 have, this seems to be an argument -- a factual dispute over