# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:23-cv-00103-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF HEADWATER RESEARCH LLC'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY BASED ON THE MOTOROLA E815**

## TABLE OF CONTENTS

I. Samsung cannot show that the E815 renders obvious any asserted claims. ............................ 2

    A. Samsung fails to present evidence of how the Motorola E815 actually operated in numerous relevant respects. ................................................................................................ 2

        1. Dr. Foster relies on optional TS-23.140 portions for limitation 1[b]: "a plurality of device agents communicatively coupled to the service control device link agent through an agent communication bus, each of the plurality of device agents identifiable by an associated device agent identifier." ............................. 3

        2. Dr. Foster also relies on optional TS-23.140 portions for limitation 1[e]: "wherein the service control device link agent is configured to:] using the encryption key, obtain a decrypted agent message, the decrypted agent message comprising a particular agent identifier and message content for delivery to a particular device agent of the plurality of device agents, the particular agent identifier identifying the particular device agent, the message content from a particular server of a plurality of servers communicatively coupled to the service control server link element." ................................................................. 5

    B. Even assuming *arguendo* that the E815 used every single optional portion of the TS-23.140 specification, Samsung's E815 invalidity theory still fails. ............................. 7

II. Samsung is estopped from presenting its "E815" prior art ground, because it is merely a "Trojan horse" for the TS-23.140 ground that Samsung stipulated it would not raise. ......... 8

III. Conclusion ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-cv-01015-JRG-RSP, 2017 WL 2526231 (E.D. Tex. May 11, 2017) ............ 1, 8, 9, 10

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
   No. 16-cv-3714, 2019 WL 11828236 (C.D. Cal. Mar. 11, 2019) ............................................... 9

*Clearlamp, LLC v. LKQ Corp.*,
   No. 12-cv-2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ................................................... 9

*Gen. Access Sols., Ltd. v. Sprint Spectrum L.P.*,
   No. 2:20-cv-00007-RWS, 2020 WL 12572917 (E.D. Tex. Dec. 1, 2020) ................................. 8

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
   271 F. Supp. 3d 990 (E.D. Wis. 2017) ...................................................................................... 9

*Samsung Elecs. Co., Ltd. v. Headwater Research LLC*,
   IPR2024-00341, Paper 12 (PTAB July 26, 2024) .................................................................... 8

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
   432 F. Supp. 3d 448 (D. Del. 2020) ..................................................................................... 9, 10

Samsung, through its expert Dr. Foster, alleges that the "Motorola E815 in view of Ogawa renders obvious the asserted claims of the '733 patent." *See* Ex. 1 (Foster Rpt.) at Section 14.2 (paragraphs 283-346). However, there are two dispositive problems with Dr. Foster's invalidity analysis.

First, other than the Multimedia Messaging Service (MMS) technical specification from the 3rd Generation Partnership Project (3GPP) standards-setting body (Ex. 2, TS-23.140), he does not present any evidence of how the Motorola E815 actually operated in relevant respect. This is fatal to his invalidity theory because many of the portions of TS-23.140 on which Dr. Foster relies are explicitly *optional* portions of the specification, and Dr. Foster presents no evidence whatsoever that the E815 actually implemented these optional portions of TS-23.140. Dr. Foster also does not allege that a POSITA would have been motivated to modify the E815 to implement these optional portions of TS-23.140. Accordingly, Dr. Foster cannot show that E815 in view of Ogawa renders obvious any asserted claim, and summary judgment of no invalidity based on the E815 should be granted.

Second, Samsung has stipulated that it would not raise the prior art ground of obviousness of the asserted claims based on "TS-23.140 and Ogawa" due to the institution of IPR2024-00341. Ex. 3. Samsung is thus precluded from relying on TS-23.140 and Ogawa as an invalidity ground. But as noted above, Dr. Foster presents no evidence of how the E815 operated *other than* what is disclosed in TS-23.140. Thus, the prior art "E815" ground is nothing more than TS-23.140 and Ogawa, and summary judgment should be granted because Samsung cannot rely on this ground pursuant to its stipulation. *See Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017) ("If … Microsoft's purported system prior art relies on or is based on patents or printed publications that Microsoft would otherwise be estopped from

pursuing at trial …, then Microsoft should be estopped from presenting those patents and printed publications at trial.")

For both of these independent reasons, summary judgment of no invalidity based on Samsung's "E815" prior art theory should be granted.

**I.      Samsung cannot show that the E815 renders obvious any asserted claims.**

Dr. Foster's invalidity opinion (nominally with respect to the E815 rather than the TS-23.140 specification) fails for two reasons, even if Samsung were allowed to raise it despite Samsung's stipulation. First, Dr. Foster does not provide evidence that the E815 actually incorporated the optional portions of the TS-23.140 specification he relies upon to meet numerous claim limitations, or provide any allegation that it would be obvious to modify the E815 to do so. And second, even assuming for the sake of argument that the E815 incorporated every single optional portion of the TS-23.140 specification, there would *still* be at least one limitation of the challenged claims that Dr. Foster fails to show would be obvious.

**A.      Samsung fails to present evidence of how the Motorola E815 actually operated in numerous relevant respects.**

Samsung's expert on invalidity, Dr. Foster, alleges that the "Motorola E815 in view of Ogawa renders obvious the asserted claims of the '733 patent." *See* Ex. 1 at Section 14.2 (paragraphs 283-346). However, other than some cursory webpage citations indicating that the E815 was an "end-user device" that had a "modem" and "memory" (*see id.* ¶¶283, 285, 302), ***all*** of Dr. Foster's evidence for his allegations regarding the E815 with respect to the asserted independent claims is based on the MMS specification, TS-23.140. *See id.* ¶286 (providing evidence that "the E815 supported MMS"); *id.* ¶¶286-323 (other than for the limitations of an end-user device, a modem, and memory, providing *only* documents describing TS-23.140 as purported

2

evidence of the E815's operation[1]).

The problem with Dr. Foster's evidentiary showing is that even though the E815 supported MMS (*see id.* ¶286), there is no evidence that the E815 implemented **all** portions of TS-23.140 (the MMS specification), particularly the ones that TS-23.140 explicitly describes as **optional**. This is problematic for numerous limitations of claims 1 and 30, the only asserted independent claims of the '733 Patent. The representative limitations are discussed below.[2]

> 1. **Dr. Foster relies on optional TS-23.140 portions for limitation 1[b]: "a plurality of device agents communicatively coupled to the service control device link agent through an agent communication bus, each of the plurality of device agents identifiable by an associated device agent identifier."**

Regarding claim limitation 1[b], Dr. Foster alleges that the MMS User Agent would be the "service control device link agent," and that there would be "applications" (which Dr. Foster alleges to be "a plurality of device agents") communicatively coupled to the MMS User Agent in the E815 product via an agent communication bus. *See* Ex. 1 ¶¶293-298. In support of this assertion, Dr. Foster asserts that "[i]n the E815, MMS is 'used to transport data specific to applications' residing on the end-user device that are not the MMS User Agent." *Id.* ¶295 (quoting Ex. 2 at 54-55).

However, TS-23.140 makes clear that MMS does **not** require the capability of using MMS "to transport data specific to applications" as Dr. Foster implies. Indeed, the very sentence Dr. Foster relies upon from TS-23.140 makes clear that "MMS ***may*** be used to transport data specific

---

[1] Dr. Foster also relies on the Ogawa reference, but not for evidence of how the E815 operated.

[2] Claim 1 is generally representative of claim 30, except that claim 1 is a system claim and claim 30 is a method claim. *See* Dkt. No. 1-1 ('733 Patent) at Claims 1, 30; Ex. 1 ¶¶343-346 (Dr. Foster's claim 30 analysis, merely incorporating by reference his claim 1 analysis in relevant respect).

to applications." Ex. 2 at 54 (emphasis added). And in 3GPP parlance, "may" indicates an implementation that is "permissible," in contrast to the use of "shall" which indicates an implementation that is "required" or "necessary." Ex. 5 (3G TR 21.801, V4.0.0) at 36, *available at* https://www.3gpp.org/ftp/Specs/archive/21_series/21.801/21801-400.zip; *see also* Ex. 6 (de la Iglesia Rpt.) ¶469 & n.16 (discussing this document and its applicability to interpreting TS-23.140). The fact that the "may" language refers to *optional* implementations is reinforced by TS-23.140, which indicates that an MMS User Agent can provide "an indication *if* the recipient MMS User Agent supports transporting application data" (Ex. 2 at 31 (emphasis added)), and teaches what must occur if "the recipient MMS User Agent does *not* support the transport of application data" (*id.* at 55) (emphasis added).

In other words, TS-23.140 is *explicit* that MMS User Agents need not support the transport of application data. *Id.* at 31, 55. This understanding is even further supported by the "Mostafa" reference (Ex. 4) relied upon by Dr. Foster, which makes clear that it is possible that a "recipient MMS UA [i.e., User Agent] does not support the feature of transporting data," and that a "MMS UA may not support the new feature for various reasons," including that "the support for the new feature of transporting application data is an *optional* requirement for an implementation of MMS." Ex. 4 at 733-734 (emphasis added); *see also* Ex. 1 ¶295 n.158, ¶297 n.161 (relying on Mostafa in understanding TS-23.140). And Dr. Foster presents no evidence that the MMS User Agent within the E815 actually *did* support the transport of application data, nor does he allege any motivation to modify the E815 to do so.

4

Accordingly, Samsung cannot show that the E815 discloses limitation 1[b].[3]

      **2.    Dr. Foster also relies on optional TS-23.140 portions for limitation 1[e]: "wherein the service control device link agent is configured to:] using the encryption key, obtain a decrypted agent message, the decrypted agent message comprising a particular agent identifier and message content for delivery to a particular device agent of the plurality of device agents, the particular agent identifier identifying the particular device agent, the message content from a particular server of a plurality of servers communicatively coupled to the service control server link element."**

For the "application identifier" requirement, Dr. Foster relies on the MM1_Retrieve.RES as "an exemplary abstract message with a destination application identifier." *Id.* ¶318. However, the MMS specification is again explicit that "applic-ID"—i.e., the alleged application identifier— is "***Optional***." Ex. 2 at 72 (indicating that the presence of information element "Applic-ID" is "Optional" within the MM1_retrieve.RES) (emphasis added). Again, Dr. Foster makes no showing whatsoever that the MMS User Agent within the E815 was configured to make use of this information element, and also fails to allege that it would have been obvious to modify the E815 to do so.

Likewise, Dr. Foster alleges that "'[u]pon reception of an abstract message containing a destination application identifier ([e.g.,] MM1_retrieve.RES…),' the MMS User Agent 'route[s] the received MMS information on to the destination application that is referred to from the

---

[3] This is also fatal to Dr. Foster's analysis of limitation 1[f], because there he incorporates by reference his discussion of limitation 1[b] in asserting "[i]n the E814, MMS User Agent (i.e., 'service control device link agent') delivers application-specific data to a destination application on the end-user device using the destination application identifier that was included in the message received from the MMS Server/Relay, as discussed for limitations 1[b] and 1[d]." Ex. 1 ¶323. His limitation 1[f] analysis is unsupported because as noted above, Dr. Foster does ***not*** present any evidence that MMS User Agent delivers application-specific data to a destination ***on the E815*** (as opposed to the TS-23.140 merely contemplating such an implementation as a possibility).

destination application identifier (based on the negotiated details upon application registration process).'" Ex. 1 ¶ 318 (quoting Ex. 2 at 56). In his quotation, however, Dr. Foster selectively (if not intentionally) removed the teachings of the specification that show that this does not always happen, and instead for application forwarding, the application must reside on the device.

In particular, the MMS specification makes clear that the full quotation is as follows:

> ***Upon reception*** of an abstract message containing a destination application identifier (it can be either the MM1_notification.REQ, MM1,_retrieve.RES, or MM7_delier.REQ transactions), ***the receiving MMS User Agent*** or MMS VAS Application ***shall first check if the destination application resides on it***.

Ex. 2 at 56 (emphases added). Then, ***only if*** the destination application resides on the MMS User Agent shall the MMS User Agent route the received information to the destination application. *Id.* ("***If** the destination application resides on a receiving MMS User Agent, the MMS User Agent shall immediately route the received MMS information on to the destination application* that is referred to from the destination application identifier (based on the negotiated details upon application registration process) without presentation to the user.") (emphasis added).

Dr. Foster also does not address what happens when the destination application does ***not*** reside on the MMS User Agent, which is that the message is discarded. *Id.* ("If the destination application does not reside on the receiving MMS User Agent or on the USIM or MMS VAS Application, the MMS User Agent or MMS VAS Application shall discard the corresponding abstract message.").

As explained above, Dr. Foster has not established that any applications were registered with the MMS User Agent on the E815 device, such that there would be a plurality of device agents communicatively coupled to the MMS User Agent. Thus, he has failed to show that there would be ***any*** valid destination application IDs in the E815, such that the MMS User Agent would ***ever*** forward a message to a destination application. And he does not cure this deficiency with ***any***

6

analysis as to how it would have been obvious to modify the E815 to be configured to have a "plurality of device agents communicatively coupled to the service control device link agent through an agent communication bus, each of the plurality of device agents identifiable by an associated device agent identifier" as the claim requires. *See generally* Ex. 1 ¶¶293-298.

### B. Even assuming *arguendo* that the E815 used every single optional portion of the TS-23.140 specification, Samsung's E815 invalidity theory still fails.

Even setting aside Dr. Foster's failure to present any evidence that the E815 incorporated *optional* portions of TS-23.140, Dr. Foster still could not show that the MMS User Agent within the E815 satisfies the "agent communication bus" requirement.

Dr. Foster's sole allegation in this respect is that "TS-23.150 discloses that its multiple additional '[a]pplications' on the user device 'transport application specific data using MMS,'" and that the "interface through which MMS User Agent communicate[s] with other applications constitute[s] 'an agent communication bus.'" *Id.* ¶297 (quoting Ex. 2 at 54).

This allegation regarding how the E815 operated, which is based ***solely*** on TS-23.140, is plainly deficient because TS-23.140 itself states: "*Details of these applications… or how an MMS User Agent… would interface with them are* ***outside the scope of this specification***." Ex. 2 at 54 (emphasis added). Accordingly, TS-23.140 *cannot* support Dr. Foster's allegation that the MMS User Agent interfaced with various applications using an "agent communication bus," because the interface between the MMS User Agent and any potential applications is "outside the scope of [the TS-23.140] specification." *Id.* And again, Dr. Foster does not even ***allege*** that it would be obvious to modify the E815 to include the claimed agent communication bus.

Thus, even assuming, counterfactually, that the E815 incorporated each and every optional implementation of TS-23.140, Samsung would ***still*** not have presented evidence sufficient to meet its burden of invalidity on the '733 Patent.

## II. Samsung is estopped from presenting its "E815" prior art ground, because it is merely a "Trojan horse" for the TS-23.140 ground that Samsung stipulated it would not raise.

As noted in the preceding section, Dr. Foster does not rely on any specific implementation details of the E815 itself as satisfying the claim requirements. Instead, he simply asserts that "the E815 supported MMS" (Ex. 1 ¶286), and then relies *exclusively* on descriptions of the MMS specification, TS-23.140, as allegedly providing evidence of how the E815 operated in support of his combination with Ogawa.

However, Samsung has agreed by stipulation that if IPR was instituted, Samsung would *not* raise the TS-23.140 and Ogawa ground in this proceeding. *See* Ex. 3 (Samsung's Exhibit 1023 in IPR2024-00341, stipulating that it would not raise the prior art ground of obviousness of the asserted claims based on "TS-23.140 and Ogawa"); *Samsung Elecs. Co., Ltd. v. Headwater Research LLC*, IPR2024-00341, Paper 12 (PTAB July 26, 2024) (decision granting institution of IPR). Samsung's TS-23.140-based theory cloaked as an "E815"-based theory is thus prohibited by the decisions of this Court, which apply IPR estoppel to prohibit "system" grounds that solely rely on publications subject to the scope of the estoppel.

For example, in *Biscotti*, this Court stated that "[i]f … Microsoft's purported system prior art relies on or is based on patents or printed publications that Microsoft would otherwise be estopped from pursuing at trial …, then Microsoft should be estopped from presenting those patents and printed publications at trial." 2017 WL 2526231, at *8.

This District has applied the rationale of *Biscotti* to prevent defendants from using publications for alleged "system" grounds that they would otherwise be estopped from using due to an IPR, other than to "establish[] the date on which the [prior art systems] were in public use or on sale." *See Gen. Access Sols., Ltd. v. Sprint Spectrum L.P.*, No. 2:20-cv-00007-RWS, 2020 WL 12572917, at *4 (E.D. Tex. Dec. 1, 2020). The rationale for doing so is to avoid a defendant's use

8

of "system prior art as a Trojan horse for printed subject matter" that would otherwise be impermissible. *See id.*; *see also id.* at *3 ("When a party asserts a prior art system and relies exclusively on printed subject matter that it could have raised in IPR, it is not asserting a system at all.").

Other courts have come to the same conclusion in preventing defendants from "skirt[ing]" IPR-based limitations on prior art grounds "by purporting to rely on a device without actually relying on the device itself." *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017); *see also, e.g.*, *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453-54 (D. Del. 2020) ("[M]oving from a printed publication (such as a manual describing a device) in an IPR proceeding to a physical product (such as the device described in the manual) in litigation merely swaps evidentiary proofs supporting the same 'ground' for invalidity that was raised or reasonably could have been raised during the IPR."); *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) ("While LKQ seeks to cloak its reliance upon UVHC3000 as a product, so as to avoid § 315(e)(2) estoppel, such an argument is disingenuous as it is the UVHC3000 ***datasheet*** upon which LKQ relies to invalidate the asserted claims."); *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. 16-cv-3714, 2019 WL 11828236, at *6-7 (C.D. Cal. Mar. 11, 2019) (citing *Biscotti* with approval and noting: "[T]he Court agrees with *Clearlamp*, *Milwaukee Electric* and other decisions that attempt to discern if a patent challenge is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' its prior art ground and 'skirt' estoppel.").

Applying Samsung's stipulation to estop Samsung from relying on TS-23.140 as purported evidence of how the E815 operated is particularly important here, because as noted in Section I above, there is no evidence whatsoever that the E815 ***product*** implemented the optional portions

9

of the TS-23.140 specification. Samsung's theory here is thus even more problematic than "swap[ping] evidentiary proofs" (*Wasica*, 432 F. Supp. 3d at 453-54), because Samsung cannot even make a plausible allegation that the E815 satisfied all of the claim limitations *even if* the TS-23.140 publication were considered. The only way Samsung could even *arguably* set forth an invalidity claim based on its "E815" theory would be if the jury simply focused on the disclosures of TS-23.140, including optional ones, without regard for the actual operation of the E815. Of course, that would be improper, as it would amount to consideration of precisely the TS-23.140 ground that Samsung is estopped from raising pursuant to stipulation.

In sum, it is undisputed that Samsung is estopped, pursuant to stipulation, from asserting obviousness based on the ground of TS-23.140 in view of Ogawa. Ex. 3. Samsung's attempt to raise the ground of "E815" in view of Ogawa, where TS-23.140 is the exclusive source of how the E815 allegedly operated in relevant respect, should be rejected as contrary to *Biscotti* and similar cases.

### III. Conclusion

For the foregoing reasons, summary judgment of no invalidity based on Samsung's "E815" prior art theory should be granted.

| | |
|---|---|
| Dated: October 25, 2024 | Respectfully submitted,<br><br>*/s/ Marc Fenster*<br>Marc Fenster<br>CA State Bar No. 181067<br>Reza Mirzaie<br>CA State Bar No. 246953<br>Brian Ledahl<br>CA State Bar No. 186579<br>Ben Wang<br>CA State Bar No. 228712<br>Paul Kroeger<br>CA State Bar No. 229074<br>Neil A. Rubin<br>CA State Bar No. 250761 |

Kristopher Davis
CA State Bar No. 329627
James S. Tsuei
CA State Bar No. 285530
Philip Wang
CA State Bar No. 262239
Amy Hayden
CA State Bar No. 287026
James Milkey
CA State Bar No. 281283
Jason M. Wietholter
CA State Bar No. 337139
James N. Pickens
CA State Bar No. 307474
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
headwater@raklaw.com

Andrea L. Fair
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who to have consented to electronic service are being served on October 25, 2024 with a copy of this document via the Court's CM/ECF system.

*/s/ Marc Fenster*
Marc Fenster
