PUBLIC VERSION

███████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

HEADWATER RESEARCH LLC,

       *Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD and
SAMSUNG ELECTRONICS AMERICA, INC.,

       *Defendants*.

Case No. 2:23-CV-00103-JRG-RSP

**SAMSUNG'S MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>OF NONINFRINGEMENT FOR THE '117 AND '192 PATENTS</u>**

PUBLIC VERSION

████████████████

## **TABLE OF CONTENTS**

I.     Introduction ........................................................................................................ 1

II.    Statement of Issues ........................................................................................... 1

III.   Statement of Undisputed Material Facts ("UMF") .......................................... 2

    A.   Headwater Accuses Functionalities Within the Possession of Non-Party
        Google and Customers of End-User Devices ........................................... 2

    B.   Samsung Had No Pre-Suit Notice of the Asserted Patents ...................... 5

IV.    Legal Standard .................................................................................................. 5

    A.   Direct Infringement ................................................................................. 5

    B.   Indirect Infringement .............................................................................. 6

V.     Argument ........................................................................................................... 7

    A.   Headwater's Infringement Theories Rely on Functionalities Within the
        Control of Google and End-Users ........................................................... 7

    B.   Samsung Does Not Directly Infringe Under Headwater's '117 FCM
        Theory or Its '117 SPP Theory .............................................................. 8

        1.   Samsung Does Not "Use" the Accused FCM System .............................. 8

        2.   Samsung Does Not "Use" the Accused SPP System .............................. 10

    C.   Samsung Does Not Directly Infringe Under Headwater's '192 FCM Theory ..... 11

    D.   Samsung Could Not Have Indirectly Infringed the '117 or '192 Patents
        Before the Filing of This Case Because It Had No Pre-Suit Knowledge
        of the Asserted Patents ............................................................................ 12

    E.   Samsung Cannot Be Liable for Post-Suit Induced Infringement of the
        '117 or '192 Patents Because There is No Genuine Issue of Material
        Fact that Samsung Did Not Have a Specific Intent to Infringe ................ 12

    F.   Samsung Cannot Be Liable for Post-Suit Contributory Infringement of
        the '117 and '192 Patents ....................................................................... 14

VI.    CONCLUSION ................................................................................................. 14

PUBLIC VERSION

███████████

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Acceleration Bay LLC v. 2K Sports, Inc.*,
    15 F.4th 1069 (Fed. Cir. 2021) ........................................................................................6, 8

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*,
    631 F.3d 1279 (Fed. Cir. 2011)................................................................... *passim*

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015)........................................................................................6, 12

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)..............................................................................13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)..................................................................................6, 12, 13

*H. Lundbeck A/S v. Lupin Ltd.*,
    87 F.4th 1361 (Fed. Cir. 2023) ..............................................................................6

*Info. Images, LLC v. PGA Tour, Inc.*,
    686 F.Supp.3d 549 (W.D. Tex. Aug. 11, 2023)....................................................10

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017)...........................................................9, 10, 11, 12

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990)..........................................................................6, 12

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
    987 F.3d 1358 (Fed. Cir. 2021)................................................................................5

**Statutes**

35 U.S.C. § 271.................................................................................................5, 6, 7, 8

**PUBLIC VERSION**

███████████████

### EXHIBIT INDEX AND NOTES

| Exhibit | Description |
|---------|-------------|
| A | Excerpts from the Expert Report of Erik de la Iglesia, dated September 26, 2024 |
| B | SAM-HW-2_00362332 |
| C | Plaintiff Headwater Research LLC's Objections and Responses to Defendants' First Set of Requests for Admission (Nos. 1-2), dated December 6, 2023 |
| D | Excerpts from Plaintiff Headwater Research LLC's Fifth (Sixth) Supplemental Objections and Responses to Defendants' First Set of Interrogatories (Nos. 1-14), dated September 24, 2024 |

\* Emphasis added unless otherwise noted.

\*\* Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\* In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

Abbreviations/Definitions

- Headwater:  Headwater Research LLC
- FCM:  Firebase Cloud Messaging
- SPP: Samsung Push Platform

PUBLIC VERSION

## I.  INTRODUCTION

Samsung respectfully moves for summary judgment for (1) no direct infringement as to U.S. Patent Nos. 9,198,117 ("the '117 Patent") and 9,615,192 ("the '192 Patent"), (2) no indirect infringement before the filing of the complaint as to the '117 and '192 Patents, (3) no induced infringement after the filing of the complaint as to the '117 and '192 Patents, and (4) no contributory infringement after the filing of the complaint as to the '117 and '192 Patents.

## II.  STATEMENT OF ISSUES

1.      Whether to grant summary judgment of no direct infringement as to the '117 Patent as to Headwater's infringement theory based on Google FCM functionality.

2.      Whether to grant summary judgment of no direct infringement as to the '117 Patent as to Headwater's infringement theory based on SPP functionality.

3.      Whether to grant summary judgment of no direct infringement as to the '192 Patent as to Headwater's infringement theory based on Google FCM functionality.

4.      Whether to grant partial summary judgment of no indirect infringement of the '117 and '192 Patents before the filing of the complaint.

5.      Whether to grant partial summary judgment of no induced infringement of the '117 and '192 Patents after the filing of the complaint.

6.      Whether to grant partial summary judgment of no contributory infringement of the '117 and '192 Patents after the filing of the complaint.

**PUBLIC VERSION**

III.     **STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMF")[1]**

    **A. Headwater Accuses Functionalities Within the Possession of Non-Party Google and Customers of End-User Devices**

1.     On March 10, 2023, Headwater filed its complaint in this litigation, asserting direct and indirect infringement theories.  Dkt. 1, ¶¶ 61-68, 75-83, 90-98; *see also* Dkt. 31 (First Amended Complaint), ¶¶ 61-68, 75-83, 90-98.

2.     FCM is Google's messaging platform with push notification functionality.  Ex. A, ¶ 119.  FCM architecture is shown in the diagram below:



*Id*.

3.     ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4.     Samsung devices running the Android operating system may receive push notifications from Google's FCM push servers.  *Id.* ¶ 120.

---

[1]   For the purpose of this motion only, Samsung adopts Headwater's characterizations of the SPP and FCM functionalities.

PUBLIC VERSION

███████████

5.      ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ .

6.      SPP is a system for sending push notifications to end-user devices such as smartphones, tablets, televisions, and smart watches, developed by Samsung.  *Id.* ¶ 69.

7.      A high-level description of SPP is shown in the diagram below:



Ex. B (SAM-HW-2_00362332) at -341; *see also* Ex. A, ¶ 84.

8.      ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ .

9.      SPP is used by Samsung devices running the Tizen operating system.  *Id.* ¶ 69.

10.     ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

**PUBLIC VERSION**

███████████████

██████████████████████████████████████████

████████████████████████████

11.     While Samsung may control application servers for Samsung's own apps, Samsung does not control third-party application servers used for third-party applications.  *Id.*; *id.* ¶ 90 (recognizing application servers not controlled by Samsung).

12.     Samsung does not make, sell, offer for sale, or import into the United States any "system" comprised of either (1) Google FCM servers and end-user devices or (2) Samsung SPP servers and end-user devices.

13.     Samsung does not make, sell, offer for sale, or import into the United States Google FCM servers or Samsung SPP servers.

14.     End-user devices that can receive push notifications from Google FCM push servers include software referred to as an FCM client.  Headwater alleges that this FCM client constitutes the "device messaging agent" element of all asserted claims of the '117 Patent.  *Id.* ¶ 239.  Only customers, not Samsung, can activate devices with FCM clients, cause them to connect to FCM push servers, and enable or disable FCM clients to receive push notifications from FCM servers.

15.     End-user devices that can receive push notifications from Samsung SPP push servers include software referred to as an SPP client.  Headwater alleges that this SPP client constitutes the "device messaging agent" element of all asserted claims of the '117 Patent.  *Id.* ¶ 226.  Only customers, not Samsung, can activate devices with SPP clients, cause them to connect to SPP push servers, and enable or disable SPP clients to receive push notifications from SPP servers.

████████████████████

16.     Headwater alleges that functionality residing within Google FCM servers constitutes the "logic to determine when one of a plurality of message delivery triggers" element of all asserted claims of the '192 Patent.  *Id.* ¶¶ 1100, 1113.  Only customers, not Samsung, can cause the events that Headwater contends constitute the claimed "triggers" to occur.  *Id.*

### B.  Samsung Had No Pre-Suit Notice of the Asserted Patents

17.     Headwater gave Samsung no notice of either the '117 or '192 Patents before the filing of the complaint.  *See* Ex. C (Headwater Resp. to Samsung 1st Set of RFAs) at RFA No. 2.

18.     To the extent it ever did so previously, Headwater no longer alleges that Samsung has committed contributory infringement of the '192 Patent under § 271(c).  Ex. A, ¶¶ 1208-1211 (providing no analysis of relevant elements).  For example, Samsung does not sell or import into the United States any Google FCM servers or Samsung SPP servers.  Ex. B (SAM-HW-2_00362332) at -340

## IV.     LEGAL STANDARD

### A.  Direct Infringement

Direct infringement occurs when one "makes, uses, offers to sell, or sells any patented invention, within the United States ... during the term of the patent therefor."  35 U.S.C. § 271(a).  "Direct infringement by 'use' of a claimed system requires use of each and every element of the system."  *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021) (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*, 631 F.3d 1279, 1288 (Fed. Cir. 2011)).  "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it."  *Centillion*, 631 F.3d at 1284.

One may not be held liable under § 271(a) for making, selling, or offering for sale less than a complete invention.  *Synchronoss*, 987 F.3d at 1368 (citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000)).  "[T]o 'make' a system under § 271(a)," a defendant

PUBLIC VERSION

must "combine all of the claim elements" to make the patented system. *Centillion*, 631 F.3d at 1288; *id.* at 1287 ("Following our vicarious liability precedents, we conclude, as a matter of law, that Qwest is not vicariously liable for the actions of its customers."); *see also Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1074 (Fed. Cir. 2021) (upholding the district court's finding that "making a system under § 271(a) requires a single entity to combine all the claim elements and that, if a customer, rather than an accused infringer, performs the final step to assemble the system, then the accused infringer has not infringed.").

### B. Indirect Infringement

Indirect infringement can take the form of induced infringement or contributory infringement. 35 U.S.C. § 271(b)-(c). Both induced infringement and contributory infringement require "knowledge of the patent that is infringed." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement").

Induced infringement further requires the patentee to establish "that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). Similarly, contributory infringement "imposes a scienter requirement—that the accused infringer sells articles 'knowing the same to be especially made or especially adapted for use in an infringement of such patent.'" *H. Lundbeck A/S v. Lupin Ltd.*, 87 F.4th 1361, 1373 (Fed. Cir. 2023). Contributory infringement also requires that allegedly infringing component is "especially made or especially adapted for use in an infringement" of the asserted patent. 35 U.S.C. § 271(c).

PUBLIC VERSION

V.       **ARGUMENT**

>    A. **Headwater's Infringement Theories Rely on Functionalities Within the Control of Google and End-Users**

Claim 1 of the '117 Patent, the only asserted independent claim, is directed to a "network system comprising," among other things, (1) a "plurality of mobile-end user devices" and (2) "a network message server." Dkt. 31-2. Claim 1 of the '192 Patent, the only asserted independent claim, is directed to a "message link server." Dkt. 31-3.

Headwater's September 28, 2023 Infringement Contentions omit what Headwater contends are Samsung's infringing acts under 35 U.S.C. § 271(a). Headwater's expert, however, opines that Samsung directly infringes the '117 Patent by "by making, using, offering for sale, and selling the claimed system in the U.S." (Ex. A ¶ 1176) and directly infringes the '192 Patent by "mak[ing] and us[ing] the claimed message link server, and sell[ing] and offer[ing] for sale access to its server" (*id.* ¶ 1203). Headwater does not contend that Samsung directly infringes the '192 and '117 Patents by importation.

Headwater alleges two alternative infringement theories based on different accused functionalities: one based on Samsung Push Platform ("SPP") and the other based on third party Google's FCM. The below tables summarizes Headwater's contentions for the elements of the '192 and '117 Patents that are relevant to this motion, with third party servers not controlled by Samsung bolded and underlined.

| Table 1 ('117 Patent Theories) | | |
|---|---|---|
| **Element** | **Headwater's '117 FCM Theory** | **Headwater's '117 SPP Theory** |
| device messaging agents | Software within Samsung end-user devices. Ex. A, ¶¶ 57, 239. | Software within Samsung end-user devices. Ex. A, ¶¶ 57, 226. |
| a network message server | **<u>Google's FCM push servers.</u>** Ex. A, ¶ 272. | Samsung's SPP push servers. Ex. A, ¶ 257. |

PUBLIC VERSION

| a plurality of network application servers | **Application servers, that may be controlled by third parties.** Ex. A, ¶ 342. | **Application servers, that may be controlled by third parties.** Ex. A, ¶ 322. |

| Table 2 ('192 Patent Theories) | | |
|---|---|---|
| **Element** | **Headwater's '192 FCM Theory** | **Theory Not At Issue[2]** |
| message link server | **Google's FCM push servers.** Ex. A, ¶ 976. | Samsung's SPP push servers. *See generally* Ex. A, § VI. |

**B.  Samsung Does Not Directly Infringe Under Headwater's '117 FCM Theory or Its '117 SPP Theory**

Headwater's '117 FCM and '117 SPP Theories both fail because the accused network system is not "used" by Samsung per 35 U.S.C. § 271(a).  Claim 1 of the '117 Patent recites a "network system comprising," among other things, (1) a "plurality of device messaging agents" executable on end-user devices and (2) "a network message server."  Requests from a "plurality of network application servers" initiate the sending of messages from the "network message server" to designated "device messaging agents."  Because Samsung does not make, sell, offer, or import any "system" comprised of servers and end-user devices, Headwater's '117 Patent infringement theory depends on "use" of the accused systems.  *See* UMF 12; Dkt. 185 at Section E; *see also Acceleration Bay*, 15 F.4th at 1074 (upholding the district court's finding that an accused infringer does not infringe if a customer "performs the final step to assemble the system").

**1.  Samsung Does Not "Use" the Accused FCM System**

Headwater's '117 FCM Theory fails because Samsung does not control the claimed network system. *Centillion*, 631 F.3d at 1284 ("[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit

---

[2]  Samsung does not move for summary judgment of non-infringement of this theory.

PUBLIC VERSION

from it.").  Furthermore "to use a system, a person must control (even if indirectly) and benefit from **each** claimed component."  *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (emphasis added).

Samsung does not "use" the alleged "device messaging agents," which execute on end-user devices, because it neither "controls" nor "benefits" from them.  Headwater contends that Google-supplied FCM software[3] that runs on Samsung Android-based devices constitutes the claimed "device messaging agents."  *See* UMF 14.  The accused software, however, is solely in the possession and control of customers.  Customers choose whether to activate their Samsung devices, whether to cause them to connect to any network system, and whether to enable or disable them to receive push notifications from FCM servers.  *See* UMF 14; Ex. A, ¶ 518 (acknowledging devices cannot receive push notifications when offline).  The accused push servers cannot "turn on" the alleged device messaging agents, because only users can configure their devices in a manner to connect to any network.  *See id.* ¶ 1198 (acknowledging that notifications may be disabled), ¶ 560 (alleging that end user devices initiate the connection to FCM push servers).  Samsung does not "use" the software provided in those devices as a matter of law.  *See Centillion*, 631 F.3d at 1287 ("Following our vicarious liability precedents, we conclude, as a matter of law, that Qwest is not vicariously liable for the actions of its customers. Qwest in no way directs its customers to perform nor do its customers act as its agents.").  Likewise, Mr. de la Iglesia's own analysis demonstrates that the alleged benefits accrue to Samsung *customers*—not Samsung itself.  *See* Ex. A, ¶ 1186 (alleging that "Samsung users enable push notifications"); *id.* ¶ 1226 ("[T]his is

---

[3] Mr. de la Iglesia references alternative examples of "device messaging agents" in his expert report such as an "FCM push client" (Ex. A, ¶ 249) and FCM client "message handlers" (*id.* ¶ 248).  While he briefly references "FCM-enabled application[s]" as being an example of a "device messaging agent," this allegation cannot be reconciled with the claim language, as the device messaging agent is what *forwards* application data to applications.  *Id.* ¶ 247.

PUBLIC VERSION

advantageous to the end-user, who enjoys fresh updates with minimal impacts on battery life."). Such "theories of indirect benefit amount to mere speculation or attorney argument and do not provide substantial evidence" that can support a finding of direct infringement. *Intell. Ventures I LLC*, 870 F.3d at 1331. That Samsung devices come with FCM software does not, as a matter of law, mean that Samsung "uses" the accused FCM software because "[s]upplying the software for the customer to use is not the same as using the system." *Centillion*, 631 F.3d at 1286.

The situation here is akin to the facts in *Information Images*. In that case, the district court found no direct infringement because, while PGA Tour owned and operated back-end components, it did not control the accused front-end components. *Info. Images, LLC v. PGA Tour, Inc.*, 686 F.Supp.3d 549, 567 (W.D. Tex. Aug. 11, 2023). The court found that the PGA Tour's customers—not PGA Tour—"put the accused system into service by initiating, on the front-end components, a demand for service that caused back-end components to act out their intended purpose: running a query and returning a result." *Id.* Likewise, Samsung does not control the alleged "device messaging agents" (front-end components).

### 2.   Samsung Does Not "Use" the Accused SPP System

For similar reasons discussed with respect to Headwater's '117 FCM Theory, Samsung does not "use" the claimed system. Headwater contends that Samsung-supplied SPP software[4] that runs on Samsung Tizen-based devices ██████████████ constitutes the claimed "device messaging agents." *See* UMF 15. As with Headwater's FCM theory, the accused software, however, is solely in the possession and control of customers.

---

[4] Mr. de la Iglesia references alternative examples of "device messaging agents" in his expert report such as an "SPP push client" (Ex. A, ¶ 234) and SPP client "message handlers" (*id.* ¶ 233). While he briefly references "SPP-enabled application[s]" as being an example of a "device messaging agent," this allegation cannot be reconciled with the claim language, as the device messaging agent is what *forwards* application data to applications. *Id.* ¶ 232.

PUBLIC VERSION

Customers choose whether to activate their Samsung devices, whether to cause them to connect to any network system, and whether to enable or disable them to receive push notifications from SPP servers. *See* UMF 15; Ex. A, ¶¶ 516, 556, 1198. As a result, there can be no direct infringement even under Headwater's '117 SPP Theory.

### C. Samsung Does Not Directly Infringe Under Headwater's '192 FCM Theory

Headwater's '192 FCM Theory fails because the accused instrumentality under this theory is a collection of servers not made or controlled by Samsung. *See* UMF 13; Table 2. The preamble of Claim 1 of the '192 Patent recites a "message link server." This accused message link server under Headwater's '192 FCM Theory, however, is a collection of Google FCM servers entirely owned by Google. Because Samsung does not make, sell, offer, or import any Google FCM servers, Headwater's '192 Patent infringement theory depends on "use" of the accused servers. *See* Dkt. 185 at Section E.

"[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole…." *Centillion*, 631 F.3d at 1284. Furthermore "to use a system, a person must control (even if indirectly) and benefit from ***each*** claimed component." *Intell. Ventures I LLC*, 870 F.3d at 1329 (emphasis added).

Samsung does not control or benefit from each claimed component. The asserted claims of the '192 Patent recite a "message link server," which includes "logic to determine when one of a plurality of message delivery triggers for the given one of the wireless end-user devices has occurred." According to Headwater's infringement theory, Samsung has no (indirect) control over this element and receives no benefit from it. Mr. de la Iglesia identifies the following as examples of messaging delivery triggers: ███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ UMF 16; Ex. A, ¶ 1113. Because

PUBLIC VERSION

the accused "FCM push client" resides on a user device (*id.* ¶ 1017), Samsung has no control over whether this component connects or reconnects to an FCM push server nor requests delivery for "stored and undelivered messages." Only users (or software running on a user device) can perform these actions. Thus, Samsung cannot, as a matter of law, "use" the accused server as a matter of law. *Intell. Ventures I LLC*, 870 F.3d at 1329.

> **D.   Samsung Could Not Have Indirectly Infringed the '117 or '192 Patents Before the Filing of This Case Because It Had No Pre-Suit Knowledge of the Asserted Patents**

Both induced infringement and contributory infringement require "knowledge of the patent that is infringed." *Global-Tech Appliances, Inc.*, 563 U.S. at 765; *see also Commil USA, LLC*, 575 U.S. at 639 ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement").

Samsung cannot be liable for indirect infringement before the filing of this lawsuit because it had no pre-suit knowledge of any patent asserted in this litigation. Headwater does not dispute this fact. *See* UMF 17; Dkt. 172 at 1-5. Headwater's recent withdrawal of pre-suit willfulness confirms that that Headwater abandoned any theories of pre-suit knowledge or willful blindness that could support a finding of pre-suit indirect infringement. *See id.*

> **E.   Samsung Cannot Be Liable for Post-Suit Induced Infringement of the '117 or '192 Patents Because There is No Genuine Issue of Material Fact that Samsung Did Not Have a Specific Intent to Infringe**

Induced infringement requires the patentee to establish "that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *Manville Sales Corp.*, 917 F.2d at 553.

Headwater produced zero evidence to support a finding that Samsung possessed the specific intent for anyone to infringe the '117 or '192 Patents. Headwater's responses to Samsung's Interrogatory No. 12, which requested Headwater's basis for its indirect infringement

allegations, at best alludes to "user manuals" and the like that discuss push notifications. *See* Ex. D (Headwater's 6th Supp. Resp. to Samsung's 1st Set of Interrogatories), Interrogatory Nos. 11, 12. Such materials, standing alone, fall well short of the high bar needed to support a finding that Samsung intended to encourage infringement by users. *See, e.g.*, *Glob.-Tech Appliances, Inc.*, 563 U.S. at 769 ("[A] willfully blind defendant is one who takes ***deliberate actions to avoid*** confirming a high probability of wrongdoing.") (emphasis added); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) ("The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'") (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003)). Thus, for reasons similar to those discussed in Samsung's motion for summary judgment of no post-suit willfulness, Headwater's claim for indirect infringement fails. Dkt. 172 at 6-7.

In any event, Headwater's allegations that Samsung induces users of Samsung end-user devices to perform infringing actions cannot support a finding of induced infringement. To the extent any party could be said to "use" (and therefore infringe) the push notification "system" alleged to infringe the '117 Patent or the accused push notification "servers" alleged to infringe the '192 Patent (notwithstanding Samsung's arguments above), only application servers *could* meet this requirement. *See Centillion*, 631 F.3d at 1284 ("[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it."). Push notifications—by definition—are initiated (i.e. "pushed") by application servers rather than end-user devices. Yet, Headwater disclosed no allegations or evidence of Samsung encouraging owners of application servers to use the accused FCM or SPP push notification systems in its relevant interrogatory response. *See* Ex. D, Interrogatory No. 12.

**PUBLIC VERSION**

■■■■■■■■■■■

**F.   Samsung Cannot Be Liable for Post-Suit Contributory Infringement of the '117 and '192 Patents**

With respect to the '192 Patent, Headwater does not allege that Samsung committed contributory infringement in its technical expert report.  *See* UMF 18.  Samsung requests summary judgment on this issue to the extent Headwater does not willingly withdraw this claim.

With respect to the '117 patent, there are substantial non-infringing uses for the accused products.  The accused Android devices are smartphones and tablets, capable of making calls, sending texts, web browsing, and innumerable things having nothing to do with push notifications. There are substantial non-infringing uses for the FCM servers that are not controlled or designed by Samsung and accused of being the "network message server," such as network operations unrelated to push notifications.

**VI.     CONCLUSION**

Samsung respectfully asks that the Court grant Samsung's Motion for Summary Judgment as set forth above.

**PUBLIC VERSION**

Dated:  October 26, 2024                              Respectfully submitted,

                                          By:   */s/ Jonathan B. Bright*_____
                                                Ruffin B. Cordell
                                                TX Bar No. 04820550
                                                Michael J. McKeon
                                                DC Bar No. 459780
                                                mckeon@fr.com
                                                Jared Hartzman
                                                DC Bar No. 1034255
                                                hartzman@fr.com
                                                **FISH & RICHARDSON P.C.**
                                                1000 Maine Avenue, SW, Ste 1000
                                                Washington, D.C. 20024
                                                Telephone: (202) 783-5070
                                                Facsimile: (202) 783-2331

                                                Thad C. Kodish
                                                GA Bar No. 427603
                                                tkodish@fr.com
                                                Benjamin K. Thompson
                                                GA Bar No. 633211
                                                bthompson@fr.com
                                                Jonathan B. Bright
                                                GA Bar No. 256953
                                                jbright@fr.com
                                                Christopher O. Green
                                                GA Bar No. 037617
                                                cgreen@fr.com
                                                Noah C. Graubart
                                                GA Bar No. 141862
                                                graubart@fr.com
                                                Sara C. Fish
                                                GA Bar No. 873853
                                                sfish@fr.com
                                                Katherine H. Reardon
                                                NY Bar No. 5196910
                                                reardon@fr.com
                                                Nicholas A. Gallo
                                                GA Bar No. 546590
                                                gallo@fr.com
                                                Vivian C. Keller (*pro hac vice*)
                                                GA Bar No. 651500
                                                keller@fr.com
                                                **FISH & RICHARDSON P.C.**

15

**PUBLIC VERSION**

1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)
NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036

16

PUBLIC VERSION

Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111

17

Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

18

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on October 26, 2024. As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Jonathan B. Bright*
Jonathan B. Bright