**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

HEADWATER RESEARCH LLC,

       *Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD and
SAMSUNG ELECTRONICS AMERICA, INC.,

       *Defendants*.

Case No. 2:23-CV-00103-JRG-RSP

**SAMSUNG'S MOTION TO STRIKE EXPERT
<u>REPORT OF MR. STEPHEN E. DELL</u>**

██████████

## TABLE OF CONTENTS

I.   LEGAL STANDARD ................................................................................................... 2

II.   Mr. Dell's Damages Opinions Are Not Legally Proper ........................................... 3

    A.   Mr. Dell's Opinions Are Founded On An Unreliable Conjoint Analysis
By Dr. Groehn ........................................................................................................... 3

    B.   Mr. Dell Improperly Applies Dr. Groehn's Smartphone-Based Conjoint
Analysis Results to the Accused Tablets and Smartwatches ............................... 5

    C.   Mr. Dell's Opinions Rely on the Unfounded Battery Life Improvement
Calculations of Mr. De la Iglesia .......................................................................... 5

III.   Mr. Dell's Prejudicial Discussions Should Not Presented To The Jury ................. 9

    A.   Mr. Dell's Use of the Non-Comparable ████████ Is Improper .................... 9

    B.   Mr. Dell's Discussion of the Google MADA and RSAs with Samsung Are
Unrelated to His Royalty Rate and Should be Excluded .................................... 12

    C.   Mr. Dell's Copying Allegations are Baseless and Unsupported ........................ 13

IV.   CONCLUSION ...................................................................................................... 14

███████████

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Wi-LAN Inc.*,
  25 F.4th 960 (Fed. Cir. 2022) ...................................................................8

*BMC Software, Inc., v. ServiceNow, Inc.*,
  2:14-cv-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ...............................9

*Commonwealth Scientific & Industrial Research Organization v. Cisco Systems, Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015) ...................................................................3

*Daubert v. Merrill Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...........................................................................2, 3

*Ericsson, Inc. v. D-Link Systems, Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ...................................................................3

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ...................................................................3

*Garretson v. Clark*,
  111 U.S. 120 (1884) ...........................................................................3

*Lucent Technologies, Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ..................................................................11

*M2M Sols. LLC v. Motorola Sols., Inc.*,
  No. 12-cv-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016) ...............................5

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ...................................................................3

*Open Text S.A. v. Box, Inc.*,
  No. 13-CV-04910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ..........................7

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
  904 F.3d 965 (Fed. Cir. 2018) ...................................................................3

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ..................................................................11

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ..................................................................11

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)............................................................................................8

*VLSI Tech. LLC v. Intel Corp.*,
    87 F.4th 1332 (Fed. Cir. 2023) ...............................................................................3, 10, 11

## Other Authorities

Fed. R. Evid. 702 .....................................................................................................................2, 5

████████████

## **EXHIBIT INDEX AND NOTES**

| Exhibit | Description |
|---------|-------------|
| 1 | Expert Report of Stephen E. Dell, CVA, dated September 26, 2024 |
| 2 | Excerpts from the Rough Deposition of Dr. Andreas Groehn, taken Oct. 18, 2024 |
| 3 | Excerpts from the Rough Deposition of Stephen Dell, taken Oct. 21, 2024 |
| 4 | Excerpts from the Deposition of Gregory Raleigh, taken June 14, 2024 |
| 5 | SAM-HW-2  00362657 |
| 6 | Excerpts from the Deposition of David Johnson, taken Feb. 21, 2024 |
| 7 | Excerpts from the Deposition of Gregory Raleigh, taken March 7, 2024 |
| 8 | HW103-00017333 |
| 9 | Excerpts from Plaintiff Headwater Research LLC's Objections and Responses to Defendants' Third Set of Requests for Admission (Nos. 6-27) |
| 10 | Excerpts from Plaintiff Headwater Research LLC's Fifth (Sixth) Supplemental Objections and Responses to Defendants' First Set of Interrogatories (Nos. 1-14), dated September 24, 2024 |
| 11 | Excerpts from the Expert Report of Erik de la Iglesia, dated September 26, 2024 |
| 12 | Excerpts from the Deposition of Seungho Song, taken Sep. 27, 2024 |
| 13 | Plaintiff Headwater Research LLC's Objections and Responses to Defendants' First Set of Requests for Admission (Nos. 1-2) |
| 14 | Excerpts from the Rebuttal Expert Report of Erik de la Iglesia, dated October 14, 2024 |

\* Emphasis added unless otherwise noted.

\*\* Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\* In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

███████████████

Headwater's damages expert Mr. Stephen Dell offers a legally improper ████████ as an alleged "reasonable" royalty.  First, Mr. Dell's royalty calculation is based on the untethered results of Dr. Groehn's conjoint analysis to assign "an economic value of additional battery life to smartphone owners," despite the fact that conjoint analysis is not an accepted way to reliably determine the price of a particular feature (let alone a benefit) of a complex product in a complex market.  Even more problematic, Dr. Groehn's results are not the work of any independent expert analyzing the facts of ***this case***, rather they are the product of Dr. Groehn's work from a different case involving different patents, different technologies, and different experts—all done five months before Dr. Groehn was retained for this case.  In fact, Dr. Groehn admits that the accused technology in ***this case***—push notifications—was not the feature of interest in his conjoint survey.  Without Dr. Groehn's improper conjoint analysis conclusions,[1] Mr. Dell cannot calculate a reasonable royalty at all.

Also fundamental to his reasonable royalty calculations, Mr. Dell relies on the calculations of Mr. de la Iglesia to determine a purported percentage improvement in battery life conveyed by the asserted patents.  But Mr. de la Iglesia's calculations are similarly baseless, starting with a cherry-picked value from a single decade-old presentation, and layered with assumptions that have no basis in the facts of this case.  Such an unreliable technical opinion cannot serve as the foundation for Mr. Dell's royalty calculations.

Setting his flawed inputs aside, Mr. Dell's supposed "adjustment" methodology is arbitrary and untethered to the facts of the case.  Specifically, Mr. Dell makes two adjustments under the guise of conservatism—one based on "opt in rate" that is unsupported by the record in this case,

---

[1] Mr. Dell relies on the battery life improvement calculations of Mr. de la Iglesia to determine a purported percentage improvement in battery life conveyed by the asserted patents.  But Mr. de la Iglesia's calculations are similarly baseless as outlined in Samsung's Motion to Strike his opinions.

██████████████████

and one based on Samsung's return on invested capital (ROIC) that leads to Headwater claiming 85% of a profit split, despite acknowledging Samsung's significant investments in the accused products that have no relation to the technology claimed in the asserted patents.  Such arbitrary adjustments cannot save Mr. Dell's opinions.

Separate from his ultimate reasonable royalty calculations, Mr. Dell offers several other improper opinions that are meant only to improperly desensitize the jury to Mr. Dell's inflated damages number.  First, Mr. Dell points to the "market rates" from a non-comparable license agreement ████████████████████████████████████████ ████████████████████████████████.  Mr. Dell contends that the rates would "guid[e] Headwater's expectations" at the hypothetical negotiation, despite ███████████████ ████████████████████████████████████████████ ██████████████████.  Second, Mr. Dell discusses the Google Mobile Application Distribution Agreement ("MADA") and separate Revenue Sharing Agreements ("RSAs") with Samsung, which is not a license agreement and has nothing to do with sales of the accused products.  Third, Mr. Dell improperly suggests that Samsung "copied" ████████████████████████ ████████████████████████████████████████.  Mr. Dell should not be permitted to present such testimony, which will only serve to mislead the jury and confuse the issues, given that none have relevance to his reasonable royalty conclusions in this case.

I.      **LEGAL STANDARD**

Fed. R. Evid. 702's requires an expert's testimony be (a) based on specialized knowledge helpful to the trier of fact, (b) based on sufficient facts or data, (c) based on reliable methods, and (d) reliably applied to the facts of the case, as well as the gatekeeping task with which the Court is charged under *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  With respect to damages opinions, the Federal Circuit confirm that any "reasonable royalty must seek to measure

the value of the patented technology—it must be 'apportion[ed]' to that value—by separating out and excluding other value in economic products or practices.  *See Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018); *see also Garretson v. Clark,* 111 U.S. 120, 121 (1884); *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021); *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018); *Commonwealth Scientific & Industrial Research Organization v. Cisco Systems, Inc*., 809 F.3d 1295, 1301 (Fed. Cir. 2015); *Ericsson, Inc. v. D-Link Systems, Inc*., 773 F.3d 1201, 1226 (Fed. Cir. 2014)."  *VLSI Tech. LLC v. Intel Corp*., 87 F.4th 1332, 1345 (Fed. Cir. 2023).

## II.     MR. DELL'S DAMAGES OPINIONS ARE NOT LEGALLY PROPER

The Court should exclude the entirety of Mr. Dell's reasonable royalty opinions.  As the starting point for his damages calculations in this case, Mr. Dell relies on Dr. Groehn's conjoint analysis from another case.  Mr. Dell then relies on percentage improvement in battery life conclusions from Mr. de la Iglesia to restrict Dr. Groehn's conjoint analysis to the 2-4% range. Masked as conservatism, Mr. Dell goes on to further adjust his rates based on generic Samsung data untethered to the facts of the case, including general "opt in" rates for push notifications and Samsung's return on invested capital (ROIC).  For these reasons, the Court should exclude the entirety of Mr. Dell's reasonable royalty opinions pursuant to its gatekeeping responsibilities under *Daubert.*

### A.     Mr. Dell's Opinions Are Founded On An Unreliable Conjoint Analysis by Dr. Groehn

Dr. Groehn's conjoint analysis opinions, which are the foundational inputs to the entirety of Mr. Dell's reasonable royalty analysis, are unreliable and untethered to the facts of this case. As set forth in Samsung's separate Motion to exclude Dr. Groehn's opinions, conjoint analysis fundamentally cannot reliably establish an absolute price for a single feature that is a part of a

3

complex product in a complex market.  *See* Dkt. 181 (Mot. to Strike Groehn).  And even if it were possible, Dr. Groehn admitted his pilot and conjoint surveys were reused from *Headwater I*—a different case involving different Headwater patents and different accused features. Ex. 2 (Groehn 10/18/2024 Rough Tr.) at 27:06–09; 27:16–19; 47:12–18.  Further, it was Headwater's lawyers who instructed Dr. Groehn to reuse the *Headwater I* report to again assign a dollar value on incremental battery life improvement for use in a reasonable royalty assessment, not Mr. Dell.  Ex. 2 (Groehn 10/18/2024 Rough Tr.) at 26:16–27:05.  Indeed, Mr. Dell and Dr. Groehn admit they never spoke before Dr. Groehn conducted the pilot and conjoint survey.  All Mr. Dell did was to provide to Dr. Groehn the average selling price and number of units in this case.  Ex. 3 (Dell 10/21/2024 Rough Tr.) at 47:11–48:06.

The fact that Dr. Groehn simply reused his *Headwater I* conjoint analysis—only substituting in the average selling price and number of units—demonstrates the lack of rigor and unreliability of his analysis as an input to Mr. Dell's royalty in this case.  Critically, it demonstrates that Dr. Groehn's results do not apportion to the alleged patented technology at issue in this case— push notifications.  To the contrary, it is undisputed that push notifications were not in that earlier case and push notifications were not presented to the survey participants in any way.  And Mr. Dell admitted he did not adjust Dr. Groehn's results (up or down) tailor them for this case.[2]  Ex. 3 (Dell 10/21/2024 Rough Tr.) at 182:05–22.  Should the Court grant Samsung's Daubert Motion and Motion to Strike Dr. Groehn, the Court must also exclude Mr. Dell's foundational reliance on these un-apportioned numbers, including Ex. 1 (Dell Rpt.) at ¶¶ 22 (including Figure 2), 304–26,

---

[2] Mr. Dell's failure to apportion is further underscored by his admission that he actually previously valued push notification technology that provided power savings benefits in a separate case in 2013, right around the time of his March 2013 hypothetical negotiation, but failed to account for the extent to which those patents confer the same power savings benefit he fully attributes to the accused technology here.  *See* Ex. 3 (Dell 10/21/2024 Rough Tr.) at 54:2-56:14.

348–362 (including Figure 11), Attachments 3, 3A, 3.1, 3.1A, 3.2, 3.2A, 4.  *See M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-cv-33-RGA, 2016 WL 767900, at *7 (D. Del. Feb. 25, 2016) (excluding ultimate damages testimony where the underlying survey methodology was unsound).

**B.     Mr. Dell Improperly Applies Dr. Groehn's Smartphone-Based Conjoint Analysis Results to the Accused Tablets and Smartwatches**

Mr. Dell also takes Dr. Groehn's conjoint analysis results based solely on ***mobile phones*** and applies the results to the accused ***tablets*** and ***smartwatches***.  Ex. 1 (Dell Rpt.) at ¶¶ 305, 324, 357-59, Attachments 3, 3A, 3.1, 3.1A, 3.2, 3.2A, 4).  Dr. Groehn admitted that neither his pilot nor his conjoint survey asked respondents anything about the "battery life" feature for smartphones or watches.  Ex. 2 (Groehn 10/18/2024 Rough Tr.) at 93:15–94:18.  Mr. Dell cites no evidence to substantiate that Dr. Groehn's smartphone-based conjoint results apply equally to tablets and smartwatches, yet calculates a blanket reasonable royalty for both categories of products the same as smartphones.  Dr. Dell's methodology is too speculative and unreliable to survive Rule 702, and the Court should strike Mr. Dell's reasonable royalty conclusion at least as to smartwatches and tablets on this ground alone, including at Ex. 1 (Dell Rpt.) at ¶¶ 22 (including Figure 2) 305, 324, 357-59, Attachments 3, 3A, 3.1, 3.1A, 3.2, 3.2A, 4.

**C.     Mr. Dell's Opinions Rely on the Unfounded Battery Life Improvement Calculations of Mr. De la Iglesia**

Mr. Dell compounds the unreliability of his reasonable royalty calculation by relying on Mr. de la Iglesia's purported battery life improvement calculations. Ex. 1 (Dell Rep.) at ¶¶268-274 and Attachments 3-4.  Specifically, Mr. Dell uses battery life percentages, as calculated by Mr. de la Iglesia, to limit Dr. Groehn's numbers between 2-4%.  But Mr. de la Iglesia's analysis is baseless because he cherry picks a measurement for push notification battery use from a 2010 Google document (not a Samsung document), he did not verify or replicate such measurement, he makes assumptions on volume and timing of push notifications based on one survey from 2022 (where

the survey respondents were limited to those who were already opted-in and willing to receive at least some push notifications), he layers various assumptions of volume and timing of push notifications into his calculations without adequate support, and he only performs his baseless guesses of battery savings calculations for smartphones—not for the other accused products tablets and smartwatches.  Dkt. 185 (Mot. to Strike De la Iglesia).  As such, for the reasons set forth in Samsung's motion to strike Mr. de la Iglesia regarding his analysis of incremental technical benefits over the prior art, Mr. Dell's reliance on Mr. de la Iglesia's baseless and unreliable purported calculations results in likewise baseless and unreliable results.

Further, Mr. de la Iglesia's incremental battery test evaluates the ***entire*** value of centralized push notifications—not the incremental value provided by Headwater's patents over known centralized push server systems.  As the named inventor (Dr. Raleigh) admits, Headwater did not invent push notifications, Ex. 4 (Raleigh 6/14/2024 Tr.) at 32:04–05, and neither Mr. de la Iglesia nor Mr. Dell attempted to limit testing to the allegedly distinguishing feature of the patent. Moreover, Mr. de la Iglesia does not even opine that improvement over the prior art is "battery," but rather cites "security."  Dkt. 185 (Mot. to Strike De la Iglesia) at n. 2 (citing Ex. 14 (Iglesia's Reb. Rpt.) ¶ 745 (emphasizing "security" as the allegedly distinguishing feature between the asserted patents and prior art central server solutions.)).  Because the Mr. de la Igelsia did not isolate the alleged incremental benefit of the patents, the testing cannot be used as a proxy for the incremental benefit over the prior art.  Mr. de la Igelsia's tests claim the benefit of much of the known prior art centralized server systems.  Mr. Dell's calculations of his purported reasonable royalty rate therefore should be excluded as primarily based on Mr. de la Iglesia's underlying, unreliable guess at any alleged amount of battery life savings attributable to the asserted patents, including at Ex. 1 ¶¶ 22 (including Figure 2), 268-74 302–03, 312-318, 334, 348–362 (including

███████████

Figure 11), Attachments 3, 3A, 3.1, 3.1A, 3.2, 3.2A, 4.

### 1.  Mr. Dell's Adjustments Are Not Tied to Facts of The Case

Mr. Dell next attempts to make his opinions seem reasonable by applying two additional adjustments: (1) an "opt-in rate" adjustment estimated at 80%; and (2) a "benefit share" split of 85% based on Samsung's return on invested capital ("ROIC").  Ex. 1 (Dell Rpt.) at ¶¶ 310-318. Neither solve the apportionment failure because neither has a nexus to the asserted patents. Moreover, his arbitrary 80% opt-in adjustment is not supported by the evidence and his ROIC adjustment has and no grounding in economic theory.  *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015) (finding cuts made by expert to the royalty base were "arbitrary," not "conservat[ism]").

Mr. Dell first offers a "opt-in rate" adjustment where he takes Dr. Groehn's numbers (███████) and applies an 80% factor to take into account that some users may opt-out of receiving push notifications (reducing Dr. Groehn's calculations to (███████).  Ex. 1 (Dell Rpt.) at ¶¶ 310-314; Figure 6.[3]  But such an adjustment is **not an apportionment to the patents at issue here.**  To the contrary, it merely removes sales to consumers who did not use push technology at all, regardless of whether such usage relates to the patented technology or not.  And Mr. Dell's arbitrarily plucks his 80% factor adjustment from general alert data and third-party data on push notifications.  Ex. 1 (Dell Rpt.) ¶ 310. Such arbitrariness cannot masquerade as expert opinion, let alone legally required apportionment, including at Ex. 1 (Dell Rpt.) at ¶¶ 310-314; Figure 6.

Mr. Dell next offers a "benefit share" factor adjustment where he further reduces these

---

[3] On top of that, Mr. Dell ignores Samsung-produced data that ███████████████ ██████████████████

figures by applying an 85% factor, based on Samsung's ROIC to purportedly account for Samsung's "expectation of the additional 'return' it would require on its investment related to the incorporation of the inventions of the Patents at Issue." Ex. 1 (Dell Rpt.) ¶ 316. Mr. Dell does not articulate why Samsung's ROIC is a proper metric to analyze the parties' relative bargaining share at the hypothetical negotiation. His decision to use Samsung's ROIC leads to an untethered analysis as his ultimately implication is that despite Samsung's significantly greater investment to implement and commercialize its products, it has a far lower benefit share at the hypothetical negotiation—only 15% compared to Headwater's 85%. *Id.*, ¶¶ 314-318. This illustrates that SEC's ROIC is an inappropriate measure to use in a benefit share analysis, and contrary to the facts of the case. As Mr. Dell admits, Samsung makes significant contributions to commercialize and sell the accused products, including "R&D, manufacturing, sales & marketing, as well as other technical contributions" apart from the technology in the asserted patents. *Id.*, ¶ 325. Mr. Dell's apportionment thus violates the Federal Circuit's instruction that opinions must be based on particular facts, not "too crude a generalization." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014).

Critically, neither of Mr. Dell's "adjustments" is an accepted method for apportioning the incremental value specific to a patented invention. He cites no specific evidence from the record or academic literature to support his ultimate adjustments, nor does he perform any economic analysis to validate the results of his apportionments. These apportionments, without justification, are "untethered to the facts." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973-74 (Fed. Cir. 2022) (holding expert opinion "untethered to the facts," requiring a new trial); *VirnetX*, 767 F.3d at 1332. Each of Mr. Dell's adjustments must therefore be excluded, including Ex. 1 (Dell Rpt.) at ¶¶ 310-318. *See also VirnetX, Inc.*, 767 F.3d at 1328 (explaining that a district court must exercise "its

gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury"); *BMC Software, Inc., v. ServiceNow, Inc.*, 2:14-cv-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016) (excluding damages opinion that "failed to specify, distinguish, and then separate the value of BMC's patented features from the unpatented features of ServiceNow's products").

## III.   MR. DELL'S PREJUDICIAL DISCUSSIONS SHOULD NOT PRESENTED TO THE JURY

### A.  Mr. Dell's Use of the Non-Comparable ███████ Is Improper

Mr. Dell improperly relies on a license agreement (and its subsequent amendments)



███████████████

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████

Because ████████████████ was not negotiated at arm's length and has no relevance to the patents in this case, Mr. Dell cannot rely on it in an effort to confuse the jury to further inflate or protect his unreasonable damages figures.  Indeed, in *VLSI*, the Federal Circuit recently reiterated the notion that "the law restricting use of noncomparable licenses" could bar admission of evidence regarding licenses that the patentee admits are non-comparable.  *VLSI Technology LLC v. Intel Corporation*, 87 F.4th 1332, 1349 (Fed. Cir. 2023) (noting law restricting the use of noncomparable licenses); *see also Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (reversing on this basis); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010) (same).  In addition, Mr. Dell cannot use an otherwise inadmissible data point as some sort of "check" on his rates, particularly given Mr. Dell's total failure to address how differently situated Samsung would be as potential licensee as compared to ██████ licensee. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011).  The Court, therefore, should exclude Mr. Dell's opinions involving ████████████████████, including Ex. 1 (Dell Rpt.) ¶¶ 31-35; ¶¶ 71-99; ¶¶ 163-164; ¶¶ 338-339; Attachment 17.

████████████████

**B.** **Mr. Dell's Discussion of the Google MADA and RSAs with Samsung are Unrelated to His Royalty Rate and Should be Excluded**

Mr. Dell's discussion of the MADA and RSAs is not relevant to his opinions, not relevant to the case, and is prejudicial to Samsung if presented to the jury, particularly given the lack of any nexus to this case. Mr. Dell additionally improperly opines on the MADA and separate revenue sharing agreements ("RSAs") between Samsung and Google as evidence of the established profitability of the accused features and the extent to which Samsung has made use of the accused features. Ex. 1 (Dell Rpt.) ¶¶ 225-228.[4] The MADA and RSAs are ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ any bearing on commercial success of Samsung's smartphones or other accused devices as whole devices, which is the only *Georgia-Pacific* factor for which Mr. Dell cites and discusses it.[5] ████████████████████████

████████████████████████████████████████

████████████████████████████████████████. ████████

████████████████████████████████████████

---

[4] In the event that Mr. Dell later attempts to supplement his opinions regarding the MADA, Watch Application Distribution Agreement ("WADA") and any Google-Samsung revenue share agreements, Samsung herein also moves to exclude any such supplemental opinions as likewise unrelated, irrelevant, and prejudicial to Samsung.

[5] In fact, Mr. Dell's discussion of the *Georgia-Pacific* commercial success factor wrongly focuses on the commercial success of Samsung's entire devices rather than any alleged success of the accused push notification features, namely SPP and FCM.



Even if the agreements were relevant to the accused functionality—which they are not—Mr. Dell provides no analysis to demonstrate their comparability to the facts of this patent case, and the agreements ultimately play no role in his reasonable royalty calculation.  Mr. Dell's only use, then, is to again wave large dollar figures in front of the jury in an effort to prejudice the jury and imply that his damages demand is reasonable.  He reveals this intention, offering the misleading statement ███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████.  This statement has nothing to do with Mr. Dell's opinions about the asserted patents and is highly prejudicial. Accordingly, his statements about the Google MADA and RSAs must be stricken, including Ex. 1 (Dell Rpt.) ¶¶ 225-228.

### C.   Mr. Dell's Copying Allegations are Baseless and Unsupported

Mr. Dell includes opinions suggesting and implying that Samsung somehow copied the ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████  The Court should strike these allegations as wholly unsupported, incorrect, irrelevant, and prejudicial.

13

████████████████

Headwater admits ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████ Mr. Dell should not be permitted to present testimony to the jury that raises any implication or inference by the jury of copying given Headwater lacks any factual basis for such a claim in this matter.

## IV.      CONCLUSION

For the foregoing reasons, the Court should exclude Mr. Dell from testifying at trial as to the unreliable and prejudicial opinions set forth in this Motion.

14

█████████████

Dated:  October 25, 2024                    Respectfully submitted,

                                           By:   */s/ Katherine H. Reardon*
                                                 Ruffin B. Cordell
                                                 TX Bar No. 04820550
                                                 Michael J. McKeon
                                                 DC Bar No. 459780
                                                 mckeon@fr.com
                                                 Jared Hartzman
                                                 DC Bar No. 1034255
                                                 hartzman@fr.com
                                                 **FISH & RICHARDSON P.C.**
                                                 1000 Maine Avenue, SW, Ste 1000
                                                 Washington, D.C. 20024
                                                 Telephone: (202) 783-5070
                                                 Facsimile: (202) 783-2331

                                                 Thad C. Kodish
                                                 GA Bar No. 427603
                                                 tkodish@fr.com
                                                 Benjamin K. Thompson
                                                 GA Bar No. 633211
                                                 bthompson@fr.com
                                                 Jonathan B. Bright
                                                 GA Bar No. 256953
                                                 jbright@fr.com
                                                 Christopher O. Green
                                                 GA Bar No. 037617
                                                 cgreen@fr.com
                                                 Noah C. Graubart
                                                 GA Bar No. 141862
                                                 graubart@fr.com
                                                 Sara C. Fish
                                                 GA Bar No. 873853
                                                 sfish@fr.com
                                                 Katherine H. Reardon
                                                 NY Bar No. 5196910
                                                 reardon@fr.com
                                                 Nicholas A. Gallo
                                                 GA Bar No. 546590
                                                 gallo@fr.com
                                                 Vivian C. Keller (*pro hac vice*)
                                                 GA Bar No. 651500
                                                 keller@fr.com
                                                 **FISH & RICHARDSON P.C.**

███████████████

1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)
NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036

16

**FILED UNDER SEAL**

Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111

17

Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

███████████████

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on October 23, 2024. The parties were unable to reach agreement as to Samsung's requested relief.

*/s/ Sara C. Fish*
 Sara C. Fish

██████████████████

███████████████████████

████████████

███████████

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on October 25, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Katherine H. Reardon*
 Katherine H. Reardon