**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:23-CV-00103-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSITION TO HEADWATER RESEARCH LLC'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY BASED ON THE MOTOROLA E815**

**TABLE OF CONTENTS**

Page

TABLE OF ABBREVIATIONS ................................................................................................. iii

TABLE OF EXHIBITS ................................................................................................................ iv

I.     INTRODUCTION ...............................................................................................................1

II.    THERE IS SUFFICIENT EVIDENCE THAT THE E815 INVALIDATES THE
       '733 PATENT. ......................................................................................................................1

       A.     The E815 Supported Transport of Application Data. ..............................................1

       B.     The E815 Received an Application Identifier and Had a Plurality of
              Device Agents. .........................................................................................................4

       C.     The E815 Discloses an "Agent Communication Bus" ............................................6

III.   SAMSUNG IS NOT ESTOPPED FROM RAISING AN INVALIDITY
       DEFENSE BASED ON THE E815. ....................................................................................6

IV.    CONCLUSION ..................................................................................................................10

CERTIFICATE OF SERVICE ....................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Biscotti Inc. v. Microsoft Corp.*,
   No. 213CV01015JRGRSP, 2017 WL 2526231 (E.D. Tex. May 11, 2017) ..............................8

*Cimline, Inc. v. Crafco, Inc.*,
   413 F. App'x 240, 246 (Fed. Cir. 2011) ....................................................................................3

*Clearlamp, LLC v. LKQ Corp.*,
   No. 12-cv-2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ..................................................9

Fiber Sys. Int'l, Inc. v. Applied Optical Sys., Inc., No. 2:06-CV-473, 2009 WL
   3571350, at *3 (E.D. Tex. Oct. 26, 2009)..................................................................................3

*Gen. Access Sols., Ltd. v. Sprint Spectrum L.P.*,
   No. 2:20-CV-00007-RWS, 2020 WL 12572917 (E.D. Tex. Dec. 1, 2020) ...............................9

*General Access Solutions, Ltd. v. Sprint Spectrum LLC*,
   No. 2:20-CV-00007-RWS, 2021 WL 5154085, at *4 (E.D. Tex. July 21,
   2021) .....................................................................................................................................7, 9

*Intell. Ventures II LLC v. Kemper Corp.*,
   No. 6:16-CV-0081, 2016 WL 7634422 (E.D. Tex. Nov. 7, 2016)............................................7

*King Pharms., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267, 1274 (Fed. Cir. 2010).......................................................................................7

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
   344 F.3d 1205, 1221 (Fed. Cir. 2003).......................................................................................3

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
   271 F. Supp. 3d 990 (E.D. Wis. 2017)......................................................................................9

*Star Envirotech, Inc. v. Redline Detection, LLC*,
   No. SACV1201861JGBDFMX, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29,
   2015) .........................................................................................................................................7

*Tolan v. Cotton*,
   572 U.S. 650 (2014)..................................................................................................................5

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
   432 F. Supp. 3d 448 (D. Del. 2020)..........................................................................................9

*Wyers v. Master Lock Co.*,
   616 F.3d 1231, 1239 (Fed. Cir. 2010).......................................................................................3

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| Defendants or Samsung | Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. |
| Plaintiff or Headwater | Headwater Research LLC |
| '733 patent | U.S. Patent No. 8,406,733 |

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Excerpts of the Opening Expert Report of Ian Foster, Ph.D. (September 26, 2024) |
| 2 | Excerpts of SAM-HW-2_00365211 |
| 3 | Samsung's July 1, 2024 Letter, IPR2024-00341, 1044 |

I.     INTRODUCTION

The record evidence raises sufficient factual disputes as to whether the Motorola E815 phone renders obvious the asserted claims of the '733 patent to preclude summary judgment. Headwater argues that Samsung cannot show the E815 discloses certain limitations of the '733 patent because the feature of the MMS standard, TS-23.140, that Samsung relies on is optional. But Headwater ignores all evidence in the record from which a reasonable jury could find that the E815 clearly and convincingly had the feature at issue, namely the ability to transport application-specific data.

Headwater's argument that Samsung is estopped from asserting an E815-based invalidity theory also lacks merit. Headwater argues that the E815 theory is merely a "Trojan horse" for the same TS-23.140 ground that Samsung raised in the IPR. Not so. In this litigation, Samsung relies on the physical components of the E815—which were not cited during IPR—above and beyond the disclosures of TS-23.140 to demonstrate invalidity of the '733 patent. The disclosures of the E815 that Samsung uses in this litigation are unique to the operation of the E815, not found in TS-23.140, and could not have been raised for PTAB consideration. Because Samsung could not have used the E815 as prior art in the IPR, Samsung is not estopped from presenting it for its invalidity defenses in this litigation.

II.    THERE IS SUFFICIENT EVIDENCE THAT THE E815 INVALIDATES THE '733 PATENT.

A.    The E815 Supported Transport of Application Data.

Headwater asserts that, because the ability to transport application-specific data was only an "optional" feature of the MMS standard, TS-23.140, Samsung cannot show that the E815 used this particular feature. According to Headwater, Samsung also cannot show, for this reason, that

1

the E815 discloses the "service control device link agent" and "a plurality of device agents" elements of limitation 1[b].

Contrary to Headwater's assertion, ample evidence exists to support a finding that the E815 included the relevant feature of MMS, namely the ability to transport application-specific data. The 3GPP member companies, which included Motorola, released TS-23.140 during the summer of 2005. *See* Dkt. 179-3 (version dated 2005-3); Ex. 2 at 223 ("[The E815] was introduced in the summer of 2005."). At the time of the development of TS-23.140, there was a "demand for transporting data between wireless applications in mobile communications," and MMS emerged as a "promising messaging system" to meet that demand. Dkt. 179-5 at 143. The prominence of the capability to transport application data via MMS is also evident in the fact that, although it was optional on the device side, it was a recommended feature on the server side. *See* Dkt. 179-3 at 21 ("The MMS Relay/Server *should* provide additional functionalities such as … transport of application data.") (emphasis added); *see also* Dkt. 179-6 at 36 (describing that, in 3GPP parlance, "should" indicates a recommended implementation). Against this backdrop, Motorola released the E815 *after* the feature-at-issue was already a part of the MMS standard, and Motorola designed the E815 to include support for MMS and allowed users to "download *applications*" and access "data service." Ex. 2 at 223 (emphasis added). There is thus sufficient evidence supporting that the E815, as a mobile device that operated with user-downloaded applications, utilized MMS to transport application data.

Headwater does not dispute that the E815 would have needed ways to transport data to a specific application. As the Mostafa prior art[1] explains, if the E815 did not have the capability to

---

[1] Dr. Foster cites the Mostafa reference to provide corroborating information about the requirements of TS-23.140. *E.g.*, Ex. 1, ¶¶ 148, 295.

2

transport application data, it would have caused a "compatibility problem." *See* Dkt. 179-5 at 148 ("Due to the compatibility problem described above, it is a risk to deliver application data, requiring specific treatment, to an MMS UA that does neither know nor understand the requirement."). In the record, the ***only*** way to accomplish this is by using the feature-at-issue in MMS, and Headwater has failed to identify any other alternative.

Additionally, at minimum, the record supports a finding that it would have been obvious for the E815 to support transport of application data. "KSR and our later cases establish that the legal determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239 (Fed. Cir. 2010). Given that the E815 allowed downloading of applications, supported access to data, supported MMS, and was released after the introduction of TS-23.140, a reasonable jury could find a motivation to modify the E815 such that it employs MMS, and any alleged optional features, to transport application data. Contrary to Headwater's assertion, whether or not Dr. Foster "allege[d] motivation to modify the E815 to do so" does not preclude a finding of obviousness. *See Cimline, Inc. v. Crafco, Inc.*, 413 F. App'x 240, 246 (Fed. Cir. 2011) ("By extension, expert reports—even credible experts reports—are not required when the underlying factual considerations are resolved by resort to common sense."); *Fiber Sys. Int'l, Inc. v. Applied Optical Sys., Inc.*, No. 2:06-CV-473, 2009 WL 3571350, at *3 (E.D. Tex. Oct. 26, 2009) (denying summary judgment of non-obviousness where the movant failed to establish that the complexity of the invention required expert testimony regarding obviousness).

To the extent there is a question about whether or not there were alternative ways in which the applications in the E815 received data, the question should be resolved by the jury. *See Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1221 (Fed. Cir. 2003)

3

(reversing summary judgment of no invalidity because, when there is an ambiguity, "the issue of exactly what the reference teaches is something that should have been resolved by the jury").

Accordingly, there is at least a factual dispute as to whether the E815 supported the transport of application data as part of its MMS capability, precluding summary judgment.

### B. The E815 Received an Application Identifier and Had a Plurality of Device Agents.

The E815 discloses an "agent identifier"—namely, the application identifier, also referred to as Applic-ID—and a "plurality of device agents."

Contrary to Headwater's argument, an application identifier (the claimed "agent identifier") was *required* to be included in incoming MMS messages for devices with capability to transport application data via MMS. Describing the feature at issue (*i.e.*, "7.1.18 Support for transporting Application Data"), TS-230.14 requires that the "application identifier of the destination application *shall* be present in an abstract message…." Dkt. 179-3 at 55 (emphasis added)); *see also id.* at 55-56 (if the recipient MMS User Agent supports transport of application data, "the MMS Relay/Server … *shall* pass on the destination application identifier …" (emphasis added)). And as Headwater admits, "shall" in 3GPP parlance indicates a required implementation. Dkt. 179 at 4; Dkt. 179-6 at 36. Thus, the MMS messages received by the device *must* include the application identifier (*i.e.*, the "agent identifier") if a device supports transport of application data, which was the case for the E815 as discussed in Section II.A above.

To make its argument, Headwater takes out of context a description of "Applic-ID" that appears in Table 12. Table 12 of TS-23.140 indicates that "Applic-ID" is optional for an exemplary message called MM1_retrieve.RES. But this Table merely discloses that "Applic-ID" is optional insofar as support for transport of application data is optional. Table 12 does not negate the fact that "Applic-ID" is required for devices that support transport of application data, like the

4

E815. No contrary reading makes sense, especially when viewed in the context of the disclosure described above (*i.e.*, that an application identifier, or Applic-ID, is required for devices supporting transport of application data). This interpretation is also consistent with the description that immediately precedes Table 12, which shows that—unlike the optional elements such as "Reply-Applic-ID" or "Aux-Applic-Info"—the "Applic-ID" element must be present in the message:

> **Applic-ID:** This information element contains the identification of the destination application. Upon reception, the recipient MMS User Agent shall provide this MM1_retrieve.RES to the specified destination application.
>
> **Reply-Applic-ID:** If present, this information indicates a "reply path". It contains the application identifier which shall be used by the recipient MMS User Agent when a reply-MM or a read-reply report is created.
>
> **Aux-Applic-Info:** If present, this information element indicates additional application/implementation specific control information (cf. 7.1.18.1)

Dkt. 179-3 at 71. To the extent any question remains as to whether a person of ordinary skill in the art would find the Applic-ID field was optional (even for a device that supports transport of application data), the jury should decide the question, and any ambiguity should be resolved in Samsung's favor at this stage. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014) ("[A]ll justifiable inferences are to be drawn in his favor" (quotation omitted)). And, as discussed above, even if the functionality is optional, it would still be obvious in light of E815 and MMS given that Applic-ID was used for application data transport. Accordingly, Headwater's motion should be denied.

Headwater's argument that Dr. Foster failed to show the presence of a "plurality of device agents" is also unavailing. Headwater argues that "Dr. Foster has not established that any applications were registered with the MMS User Agent on the E815 device" or "that there would be *any* valid destination application IDs in the E815." Dkt. 179 at 6 (emphasis in original). But the record evidence demonstrates that the E815 allowed users to "download applications" (Ex. 2 at 223) and, as Dr. Foster opines, downloaded applications may register with the MMS User Agent so that application data can be transported to the "device agents." Dkt. 179-3 at 54. Dr. Foster also explained, by reference to an exemplary "chess application" discussed in TS-230.14, how the

5

MMS User Agent would use the application identifier to direct a message to a device agent. Ex. 1, ¶ 296; Dkt. 179-3 at 55.

Accordingly, there is sufficient record based on which a jury can find that the E815 had an "agent identifier" and a "plurality of device agents."

### C. The E815 Discloses an "Agent Communication Bus"

There is sufficient evidence in the record that the E815 discloses an "agent communication bus." As Dr. Foster opined, the MMS User Agent routes a message to the destination applications such as the chess application through an "interface," which constitutes an "agent communication bus." Ex. 1, ¶¶ 296-297.

Headwater argues that this theory is deficient, relying on a statement in TS-23.140 that "Details of these applications… or how an MMS User Agent… would interface with them are outside the scope of this specification.'" Dkt. 179 at 7 (quoting Dkt. 179-3 at 54). But the asserted claims do not require these additional details that Headwater complains are missing. The claims simply recite that the "plurality of device agents" are "coupled to the service control device link agent through an agent communication bus" and do not otherwise have any limitations concerning the structure or operation of the "agent communication bus." Headwater does not appear to dispute that an interface that couples the MMS User Agent to applications exists in TS-23.140, which is all that is required to meet the "agent communication bus" limitation.

### III. SAMSUNG IS NOT ESTOPPED FROM RAISING AN INVALIDITY DEFENSE BASED ON THE E815.

Samsung is not estopped from raising an invalidity defense based on the E815. "[R]egardless of any estoppel, defendants have considerable latitude in using prior art systems (for example, software) embodying the same patents or printed publications placed before the PTO in IPR proceedings. This ability to raise such prior art systems in a subsequent district court litigation

6

is always present." *Intell. Ventures II LLC v. Kemper Corp.*, No. 6:16-CV-0081, 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016) (quotation omitted). Headwater claims that Samsung's stipulation precludes Samsung from arguing a "TS-23.140-based theory cloaked as an 'E815'-based theory." Dkt. 179 at 8. But Headwater neglects to mention that Samsung made clear that it reserves the right to assert ***system art not eligible for PTAB consideration***, including "***Devices … supporting MMS technology***." Ex. 3 at 1, 4 (emphasis added).

The E815 could not have been raised in the IPR because it is a physical device ineligible for PTAB consideration. Samsung explicitly relies on the physical components of the E815 that were not relied on during the IPR. Samsung also relies on the availability of applications on the E815 and users' ability to download them on the device, which likewise are features not eligible for consideration in the IPR. Ex. 2 at 223. Headwater cannot reasonably dispute that the E815 could not have been raised in IPR, and thus Samsung is not estopped from presenting it in this litigation.

Courts have declined to apply estoppel where the system is not cumulative of a printed publication. In *General Access Solutions, Ltd. v. Sprint Spectrum LLC*, for example, this District held that IPR estoppel does not apply where the system "is not described by the printed publication [plaintiff] equates it to from the IPR." No. 2:20-CV-00007-RWS, 2021 WL 5154085, at *4 (E.D. Tex. July 21, 2021). Anticipation must be shown on an element by element basis. *See King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010). Thus, estoppel does not apply when "the physical machine itself discloses features claimed in the [patent at issue] that are not included in the instruction manual, and it is therefore a superior and separate reference." *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV1201861JGBDFMX, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015). Dr. Foster relies on specific hardware in the E815 that is not

7

specified in TS-23.140.  Here, Dr. Foster relies on the physical device, the Motorola E815, to show that it is an "end-user device,." as recited by the preamble of claim 1.  Ex. 1, ¶ 283.  Dr. Foster also opines that, for the "modem for enabling communication with a network system" element of limitation 1[a], the E815 was "a digital dual band phone supporting both the 800 MHz CDMA and 1900 MHz PCS bands," and for the device "to access the network systems such as CDMA, it had to be equipped with a modem, a component that modulates and demodulates signals so that data can be sent and received wirelessly."  *Id.*, ¶ 285.  Further, for the "memory configured to store an encryption key" element of limitation 1[c], Dr. Foster opined that the E815 had 40 megabytes of memory.  *Id.*, ¶ 302.  In sum, Dr. Foster's limitation-by-limitation analysis of the E815 demonstrates that the E815 is not described by and is separate from TS-230.14 and could not have been raised in IPR.

Headwater incorrectly assumes that Samsung "relies exclusively on descriptions of the MMS specification, TS-23.140."  *Id.*  As discussed above, Samsung relies on the physical device itself, the E815, as a separate piece of prior art that discloses additional limitations.  Samsung also relies on the operation of the E815, namely the ability to download applications, which is unquestionably a disclosure unique to the E815.  Ex. 2 at 223.  Moreover, as demonstrated above, the operation of the E815, and the combination of the E815 with the MMS standard, directly responds to Headwater claims that certain MMS features are optional.  Accordingly, Headwater's argument specifically demonstrates an additional reason why Samsung is not relying exclusively on the MMS specification.

Headwater's cases are also distinguishable.  In *Biscotti*, the Court did not address the applicability of estoppel in a situation where, such as here, the proposed system reference is not cumulative of the printed publication.  *See Biscotti Inc. v. Microsoft Corp.*, No.

8

213CV01015JRGRSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017). In *General Access Solutions*, the Court reserved judgment on estoppel and clarified that "[w]hen a party asserts a prior art system and relies *exclusively* on printed subject matter that it could have raised in IPR, it is not asserting a system at all." *Gen. Access Sols., Ltd. v. Sprint Spectrum L.P.*, No. 2:20-CV-00007-RWS, 2020 WL 12572917, at *3 (E.D. Tex. Dec. 1, 2020) (emphasis added). Indeed, when the plaintiff later moved for summary judgment on the same issue, the Court found IPR estoppel does not apply because, like in the instant case, the system reference was "not described by the printed publication" from the IPR. *Gen. Access Sols., Ltd.*, 2021 WL 5154085, at *4.

Headwater's reliance on out-of-circuit authority is likewise misplaced. In *Milwaukee Electric* and *Wasica Finance*, the courts found that the defendants did not actually rely on the system reference. *See Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017) ("Snap-On cannot skirt [estoppel] by purporting to rely on a device without actually relying on the device itself"); *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454 (D. Del. 2020) (agreeing with the plaintiff that, in moving from a printed publication in an IPR proceeding to a physical product in litigation, the defendant "merely swaps evidentiary proofs"). In *Clearlamp*, the defendant attempted to "combine the product's datasheet, and not the product itself, with the prior art used during *inter partes* review." *Clearlamp, LLC v. LKQ Corp.*, No. 12-cv-2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016). By contrast, here, the proposed reference is the E815 device itself, with its physical components such as its modem and memory and capability to download applications. These evidentiary proofs are unique to the E815 and ineligible for PTAB consideration.

Because the E815-based invalidity theory was not and could not have been raised in the IPR, Samsung is not estopped from asserting the E815 as a prior art reference in this litigation.

9

## IV. CONCLUSION

For the foregoing reasons, the Court should deny summary judgment of no invalidity based on the Motorola E815.

Dated: November 4, 2024						Respectfully submitted,

							By:	/s/ Kevin Jang
								Ruffin B. Cordell
								TX Bar No. 04820550
								Michael J. McKeon
								DC Bar No. 459780
								mckeon@fr.com
								Jared Hartzman (*pro hac vice* forthcoming)
								DC Bar No. 1034255
								hartzman@fr.com
								**FISH & RICHARDSON P.C.**
								1000 Maine Avenue, SW, Ste 1000
								Washington, D.C. 20024
								Telephone: (202) 783-5070
								Facsimile: (202) 783-2331

								Thad C. Kodish
								GA Bar No. 427603
								tkodish@fr.com
								Benjamin K. Thompson
								GA Bar No. 633211
								bthompson@fr.com
								Jonathan B. Bright
								GA Bar No. 256953
								jbright@fr.com
								Christopher O. Green
								GA Bar No. 037617
								cgreen@fr.com
								Noah C. Graubart
								GA Bar No. 141862
								graubart@fr.com
								Sara C. Fish
								GA Bar No. 873853
								sfish@fr.com
								Nicholas A. Gallo
								GA Bar No. 546590
								gallo@fr.com
								Steffen C. Lake (*pro hac vice* forthcoming)

10

GA Bar No. 512272
lake@fr.com
Vivian C. Keller (*pro hac vice*)
GA Bar No. 651500
keller@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

       Kyle J. Fleming (*pro hac vice*)
       NY Bar No. 5855499
       kfleming@fr.com
       **FISH & RICHARDSON P.C.**
       7 Times Square, 20th Floor,
       New York, NY 10036
       Telephone: (212) 765-5070
       Facsimile: (212) 258-2291

       Melissa R. Smith
       State Bar No. 24001351
       Melissa@gillamsmithlaw.com
       **GILLAM & SMITH, LLP**
       303 South Washington Avenue
       Marshall, Texas 75670
       Telephone: (903) 934-8450
       Facsimile: (903) 934-9257

       Andrew Thompson ("Tom") Gorham
       State Bar No. 24012715
       tom@gillamsmithlaw.com
       **GILLAM & SMITH, LLP**
       102 N. College, Suite 800
       Tyler, Texas 75702
       Telephone: (903) 934-8450
       Facsimile: (903) 934-9257

       Michael E. Jones
       State Bar No. 10929400
       mikejones@potterminton.com
       Shaun W. Hassett
       State Bar No. 24074372
       shaunhassett@potterminton.com
       **POTTER MINTON, P.C.**
       102 N. College Ave., Suite 900
       Tyler, Texas 75702
       Telephone: (903) 597-8311
       Facsimile: (903) 593-0846

       Lance Lin Yang
       CA. Bar No. 260705
       Lanceyang@quinnemanuel.com
       Kevin (Gyushik) Jang
       CA Bar No. 337747
       kevinjang@quinnemanuel.com

Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.**

13

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who to have consented to electronic service are being served on November 4, 2024 with a copy of this document via the Court's CM/ECF system.

                                                             */s/ Kevin Jang*
                                                             Kevin Jang