**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | |
| v. | Case No. 2:23-CV-00103-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants*. | |

**SAMSUNG'S MOTION TO STRIKE EXPERT REPORTS OF**
**MR. ERIK DE LA IGLESIA**

## **TABLE OF CONTENTS**

I.    ARGUMENT .................................................................................................... 1

    A.    The Court Should Strike Mr. de la Iglesia's New Patent Infringement Theories Not Disclosed in Headwater's Infringement Contentions ..................... 1

        1.    Mr. de la Iglesia's New Theory that Google's FCM Infringes the '192 Patent Should be Stricken as Untimely Disclosed ....................... 1

        2.    Mr. de la Iglesia New '117 Patent "Transmission Trigger" Infringement Theories Should be Excluded as Untimely Disclosed .......... 3

        3.    Mr. de la Iglesia's New '733 Patent Infringement Theories With Respect to Web OTA Downloads Should Be Excluded as Untimely Disclosed ................................................................................... 4

        4.    Exclusion is the Appropriate Remedy ....................................................... 5

    B.    The Court Should Strike Mr. de la Iglesia's '117 Patent Claim 6 Infringement Theory As Conclusory and Unexplained ......................................... 6

    C.    The Court Should Strike Mr. de la Iglesia's Uncorroborated Allegation that the Asserted Patents "Solved" the Problem of Mobile Network Congestion ............... 7

    D.    The Court Should Strike Mr. de la Iglesia's Baseless and Unreliable Analysis of Purported Incremental Technical Benefits Over the Prior Art ............ 7

        1.    Mr. de la Iglesia's Methodology ................................................................ 8

        2.    Mr. de la Iglesia Methodology is Unreliable ........................................... 10

    E.    The Court Should Strike Mr. de la Iglesia's Allegation that Samsung Infringes the '117 or '192 Patents By "Making," "Offering," "Selling," or "Importing" ....................................................................................................... 11

    F.    The Court Should Strike Mr. de la Iglesia's Discussion of Commercial Contracts and Unrelated Case Proceedings ......................................................... 12

    G.    The Court Should Strike Mr. de la Iglesia's Allegations of Secondary Considerations of Non-obviousness Lacking Nexus to the Asserted Patents ....... 14

II.   CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Anascape, Ltd. v. Microsoft Corp.*,
    No. 9:60-cv-0158, 2008 WL 7180756 (E.D. Tex. May 1, 2008) ...........................................1, 5

*Astro Tech., Inc. v. Alliant Techsystems, Inc.*,
    No. CIV.A. H-03-0745, 2005 WL 6061803 (S.D. Tex. Sept. 28, 2005) ...............................13

*Barrett v. Atl. Richfield Co.*,
    95 F.3d 375 (5th Cir. 1996) ...........................................................................................5

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)...................................................................................12

*Centrak, Inc. v. Sonitor Techs., Inc.*,
    915 F.3d 1360 (Fed. Cir. 2019)....................................................................................12

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015)......................................................................................8

*Deepsouth Packing Co. v. Laitram Corp.*,
    406 U.S. 518 (1972).............................................................................................11, 12

*Fox Factory, Inc. v. SRAM, LLC*,
    944 F.3d 1366 (Fed. Cir. 2019)....................................................................................15

*Hutson v. Coviden Holding, Inc.*,
    No. 2:13-CV-895, 2015 WL 4040447 (S.D. Ohio June 30, 2015)...........................................7

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) .............................................................................7

*Lutron Elecs. Co., Inc. v. Crestron Elecs., Inc.*,
    970 F. Supp. 2d 1229 (D. Utah 2013).............................................................................15

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    254 F.R.D. 597 (N.D. Cal. 2008).................................................................................15

*Specialty Earth Scis., LLC v. Carus Corp.*,
    No. 15-CV-06133, 2020 WL 7027441 (N.D. Ill. Nov. 30, 2020) ...........................................13

*U.S. v. O'Keefe*,
    825 F.2d 314 (11th Cir. 1987) .......................................................................................7

**Statutes**

35 U.S.C. § 271(a) ...............................................................................................11, 12

**Other Authorities**

Federal Rule of Evidence 702..................................................................................................12

Local Patent Rule 3-6(b)........................................................................................................2

## EXHIBIT INDEX AND NOTES

| Exhibit | Description |
|---------|-------------|
| 1 | Expert Report of Erik de la Iglesia, dated September 26, 2024 |
| 2 | Rebuttal Expert Report of Erik de la Iglesia, dated October 14, 2024 |
| 3 | Plaintiff Headwater Research LLC's Disclosure of Asserted Claims and Infringement Contentions, dated September 28, 2023 |
| 4 | Exhibit C - U.S. Patent No. 9,615,192, dated September 28, 2023 |
| 5 | U.S. Patent No. 9,615,192 chart, dated December 15, 2023 |
| 6 | Email between counsel from February to May 2024 |
| 7 | U.S. Patent No. 9,198,117 chart, dated December 15, 2023 |
| 8 | U.S. Patent No. 8,406,733 chart, dated December 15, 2023 |
| 9 | Correspondence dated November 22, 2023 |
| 10 | SAMSUNG_PRIORART2_0007087 |

* Emphasis added unless otherwise noted.

** Form objections are omitted from deposition transcript quotations unless otherwise noted.

*** In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

The Court should strike the untimely, irrelevant, and/or unreliable opinions of Headwater's technical expert Mr. de la Iglesia described below.

## I.     ARGUMENT

### A.  The Court Should Strike Mr. de la Iglesia's New Patent Infringement Theories Not Disclosed in Headwater's Infringement Contentions

Headwater's late disclosure of new infringement theories in its expert reports is unjustified and prejudicial. The Court should strike these untimely theories. *Anascape, Ltd. v. Microsoft Corp.*, No. 9:60-cv-0158, 2008 WL 7180756, at *2-4 (E.D. Tex. May 1, 2008).

#### 1.    Mr. de la Iglesia's New Theory that Google's FCM Infringes the '192 Patent Should be Stricken as Untimely Disclosed

Headwater should not be allowed to accuse Google FCM push servers with respect to the '192 patent for the first time in Mr. de la Iglesia's report. Accordingly, his FCM theory should be stricken: Ex. 1 (Op. Rpt.) ¶¶ 976-979, 1017-1042, 1067-1089, 1100-1103, 1113-1121, 1131-1139. Headwater's expert, Mr. de la Iglesia, presents two distinct theories as to what constitutes the claimed '192 patent's claimed "message link server." First, he argues Firebase Cloud Messaging ("FCM") system servers, which are owned by Google, constitute the claimed server. Ex. 1 ¶¶ 966-982. Second, he argues Samsung Push Platform ("SPP") servers, which are owned by Samsung, constitute the claimed server. *Id.* Headwater before never disclosed its FCM theory.

Headwater's initial infringement contentions, served September 28, 2023, obfuscated what was accused of infringement. The contentions' cover pleading accused ███████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████ as well as various Samsung phones, tablets, televisions, and wearables. Ex. 3 at 8-11. The contentions' '192 patent chart defined "Accused Devices" as ███████████████████████████████████████████████████████ Ex. 4 at 1. In charting the '192 patent independent claim, Headwater made no reference to FCM servers nor the

word Firebase.  Ex. 4 at 1-60.  The failure to mention FCM servers in the independent claims, given that it was well known that FCM servers are Google servers, made clear that Headwater was not accusing an FCM server as the "message link server."

After Samsung objected to the Headwater's deficient infringement contentions, Headwater served supplemental infringement contentions on December 15, 2023 without seeking leave as required by LPR 3-6(b).  For the '192 patent, those contentions again identified the "Accused Devices" as only "█████████████████████████████████████████████████."  Ex. 5 (12/15/23 192 Chart) at 1.  The new contentions included no website screenshots or evidence specific to Google's FCM for the independent claims, but added stray mentions of "█████ █████████████" and "████████████████████" with respect to independent claim limitations 1[a] and 1[b].  These new contentions continued to lack any allegation that FCM servers were the claimed "message link server," nor did they refer to Firebase or FCM for any other claim 1 limitations.  Ex. 5 at 13, 21.  If Headwater wanted to accuse FCM servers of being the "message link server," it should have said so and, at a minimum, charted FCM servers as satisfying all limitations.

Nevertheless, for certainty, Samsung asked Headwater about the stray FCM references in the amended contentions: Was Headwater accusing Google FCM servers of infringing the '192 patent or not?  At a meet and confer in February, "████████████████████████████████ █████████████████████████████████████.'"  Ex. 6 (Feb. 19, 2024 email fr. Crisler) at 2.  Headwater promised to later provide "█████████████████████████ ██████████████████████████."  *Id.*  It never did.  On May 1, 2024, Samsung wrote Headwater to explain it understood "███████████████████████████████████ ██████████████████████████████████."  *Id.* (May 1, 2024

email fr. Prescott) at 2. ██████████████████████████████████████████

████████████████████████. *Id.* at 1. Nonetheless, Headwater's expert, Mr. de la Iglesia, now accuses Samsung of infringing the '192 patent through its alleged use of Google FCM servers. As the contentions did not accuse these servers, Mr. de la Iglesia should not be allowed to do so now.

At a minimum, Mr. de la Iglesia's new FCM theory introduces new theories for how limitations 1[c] and 1[d] (Ex. 1 (Op. Rpt.) ¶¶ 1100-1103), 1[e] (*id.* ¶¶ 1113-1123), and 1[f] (*id.* ¶¶ 1131-1139) are met because Headwater's amended infringement contentions never even ██████████████████████████████ with respect to these limitations. *See* Ex. 5 at 21-63. Nor did the contentions cite any of the publicly available Google FCM information now relied upon by Mr. de la Iglesia for these limitations. *Id.* Rather the contentions exclusively cited Samsung websites relating to Samsung's SPP and Knox functionalities. *Id.* The novelty of Mr. de la Iglesia's infringement theory is particularly striking with respect to limitation 1[e]. The 1[e] contentions mention, with respect to Samsung's ***Tizen servers and Knox servers***, "█████████

█████████████████████████████████████" constitutes an example of the claimed message delivery trigger that is "an asynchronous event with time-critical messaging needs." *Id.* at 52-53. Yet, Mr. de la Iglesia alleges ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

each constitute a claimed "trigger." Ex. 1 (Op. Rpt.) ¶ 1113. Nowhere did the contentions reference ████████████████████████████████ let alone identify them as the claimed trigger. *See* Ex. 3. Such undisclosed theories should be excluded.

        2.    **Mr. de la Iglesia New '117 Patent "Transmission Trigger" Infringement Theories Should be Excluded as Untimely Disclosed**

Mr. de la Iglesia advances a new infringement theory that the accused SPP and FCM functionalities practice the '117 patent claim 17's "transmission trigger [that] is the expiration of a periodic timer" because "███████████████████████████████████████████████████████████████████████████████████████████████████████████████." *See* Ex. 1 (Op. Rpt.) ¶ 579. Headwater's contentions provided no narrative or evidence to suggest such a theory, and instead contended that ███████████████████████████████████████████████." Ex. 7 at 126-127. A period of inactivity (e.g., because a device is off or otherwise inactive) has nothing to do with heartbeat transmissions that are sent throughout the day to keep a connection to a push messaging server alive.

> **3.    Mr. de la Iglesia's New '733 Patent Infringement Theories With Respect to Web OTA Downloads Should Be Excluded as Untimely Disclosed**

Mr. de la Iglesia advances new infringement theories for the '733 patent, claims 3 ("wherein the message content comprises information associated with a service usage"), 8 ("wherein the message content comprises information from a third party configured to provide control of a service or a billing for a service"), and 9 ("wherein the message content comprises an agent instruction, a setting value, an agent configuration, or a software update). For the first time, Headwater alleges that Samsung infringes these claims because ███████████████████████████████████████████████████████████." *See* Ex. 1 (Op. Rpt.) ¶¶ 869-872, 886-890, 891-894. Nowhere do Headwater's infringement contentions reference Web OTA downloads. *See* Ex. 8 at 78-79, 85-86.

Samsung raised the deficiency of Headwater's initial infringement contentions for these three claims on November 11, 2023, stating that Headwater's contentions "█████████████████████████████████████████████████████████████████████████████████████." Ex. 9 at 9.



For claim 3, Samsung explained that "███████████████████████████

████████████████████████████████████████████████████████

████████████████████." *Id.*  Similarly, Samsung explained, ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id*. at 10.

Headwater then supplemented its contentions on December 15, 2023.  That supplement did not

mention Web OTA downloads for any of claims 3, 7, and 9.  Ex. 8 at 78-79, 85-86.  Headwater

should not now be allowed to accuse them now, and Mr. de la Iglesia's theory based on Web OTA

downloads should be stricken:  Ex. 1 (Op. Rpt.) ¶¶ 869-872, 886-890, 891-894.

### 4.    Exclusion is the Appropriate Remedy

Headwater withheld the new infringement theories discussed above until Mr. de la Iglesia's

opening report, flouting P.R. 3-6's requirement to seek leave to amend its contentions.  Expert

reports are not a vehicle for bypassing this Court's rules.  *Anascape*, 2008 WL 7180756 at *4.[1]

Even if Headwater had sought leave, it cannot justify its late disclosure.  The functionality

Headwater currently contends satisfies the asserted claims is publicly known.  For example, as to

'192 patent limitation 1[e], Mr. de la Iglesia's infringement report relies on ***public*** Google Android

developer documentation describing how push notifications are handled when a device is in Doze

mode. *See* https://developer.android.com/training/monitoring-device-state/doze-standby ("If your

users must see a notification right away, use an FCM high priority message."); Ex. 1 ¶ 1121.

Likewise, the new '117 patent "transmission trigger" theory is based upon the well-known fact

---

[1] The Fifth Circuit uses a four-factor test to exclude expert testimony based on undisclosed information: (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

that end-user devices use "heartbeats" to maintain connectivity to push notification systems.  *See* Ex. 10 at 7098 (publicly available presentation cited by Op. Rpt. ¶ 1223).

Headwater's belated-disclosed theories unfairly prejudice Samsung. Samsung had no opportunity to investigate or conduct discovery on these theories, which substantially depart from Headwater's contentions.  With fact discovery closed, Samsung cannot seek discovery from third-party Google to learn more about FCM, nor can it seek admissions or interrogatory responses from Headwater about its understanding of these newly-accused features. Headwater's unjustified failure to provide notice of these new theories deprived Samsung of the ability to create a full record on the design and operation of this newly accused technology, whether these features already existed in the prior art, as well as their alternatives and value.

A continuance would not cure the prejudice of proceeding through fact discovery without notice of these new theories. As to their importance, exclusion will not prevent Headwater from advancing the theories it disclosed in its infringement contentions. If the new theories were important, Headwater could have moved to amend to explain its delay and the importance. It did not. Samsung thus respectfully requests that Mr. de la Iglesia's new theories be stricken.

**B. The Court Should Strike Mr. de la Iglesia's '117 Patent Claim 6 Infringement Theory As Conclusory and Unexplained**

The Court should strike Mr. de la Iglesia's infringement allegation for claim 6 of the '117 patent as he provides no analysis as to how its limitations are practiced by the accused products. *See* Ex. 1 (Op. Rpt.) ¶¶ 543-545.  The entirety of his "opinion" is a "see above" cite.  *Id.*  Nowhere in his report, including in his cross-referenced "evidence cited for 1[a]-1[h]," does he identify what constitutes the claimed "secure execution environment"—much explain how a "device messaging agent" executes within this environment while "at least one of the applications executes outside of the environment."  *Id.* ¶¶ 207-514.  Samsung should not be required to guess.

6

**C.  The Court Should Strike Mr. de la Iglesia's Uncorroborated Allegation that the Asserted Patents "Solved" the Problem of Mobile Network Congestion**

Mr. de la Iglesia's opinions that ████████████████████████████████████

that the Asserted Patents "solved" mobile network congestion (Ex. 1 (Op. Rpt.) ¶¶ 40, 50; Ex. 2

(Reb. Rpt.) ¶¶ 51, 61, 65) should be stricken.  An expert cannot "under the guise of giving expert

testimony . . . become the mouthpiece of the witnesses on whose statements or opinions the expert

purports to base his opinion." *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794,

808 (N.D. Ill. 2005); *see also U.S. v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987).

Disguised as mobile technology background, Mr. de la Iglesia makes the bold,

unsubstantiated claim that the Asserted Patents *solved* unspecified network issues, including issues

in Cingular's network caused by Apple's introduction of the iPhone.  Ex. 1 (Op. Rpt.) ¶ 50 ██████

████████████████████████████████████████████████████████████████████

██████████████████████████ ); Ex. 2 (Reb. Rpt.) ¶ 61 (same).  He does not present

any evidence from Apple, any wireless carrier, or anyone other than ████████████ that

discusses these supposed connectivity issues or how they were solved, much less that they were

solved using anything related to the asserted patents.  *See* Ex. 1 (Op. Rpt.) ¶¶ 40-50; Ex. 2 (Reb.

Rpt.) ¶¶ 51-61, 65.  And Mr. de la Iglesia performed no independent investigation or verification

████████████████████████ .  Thus, the Court should not permit Mr. de la Iglesia to present this

unsupported story to the jury under the guise of expert testimony.  *Hutson v. Coviden Holding,*

*Inc.*, No. 2:13-CV-895, 2015 WL 4040447, at *4 (S.D. Ohio June 30, 2015) (excluding testimony

where expert merely "reviewed" someone else's findings and never verified them).

**D.  The Court Should Strike Mr. de la Iglesia's Baseless and Unreliable Analysis of Purported Incremental Technical Benefits Over the Prior Art**

Mr. de la Iglesia purports to quantify the "incremental improvement in battery capacity"

that the Asserted Patents provide over the prior art, concluding "██████████████████████████

███████████████████████████████████████████████████████

███████. Ex. 1 (Op. Rpt.) ¶¶ 1219-1262, 1255, 1257.  First, Mr. de la Iglesia fails "the essential requirement for reliability" because he attempts to evaluate the entire value of centralized push notifications—not the incremental value provided by Headwater's patents over known centralized push server systems.  *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).  Mr. de la Iglesia concedes that these asserted patents add narrow benefits over the existing push systems, yet he ignores this.  *See*, *e.g.*, Ex. 2 (Reb. Rpt.) ¶ 745 (emphasizing "security" as allegedly distinguishing feature over central server prior art).  Instead, he compares pulling to ***polling*** systems—a different message architecture—to inflate his results.

Second, even his pull versus poll analysis is too speculative and unreliable.  He essentially cobbles together a few statistics from unrelated documents without verifying or testing any accuracy thereof himself, fails to tailor his calculations to the relevant time period and devices, and ultimately improperly tests far more than only the limited incremental benefit allegedly provided by the asserted patents.  Instead, Mr. de la Iglesia's calculations effectively attempt to claim the benefit of known prior art centralized server systems as compared to even older prior art systems without any clear connection or limitation to only the improvement of the asserted patents.

1.    Mr. de la Iglesia's Methodology

As an initial matter, Mr. de la Iglesia contends that to provide sufficiently "██████" information to applications on a mobile device, the prior art required "███████████████████ ████████████████" between apps and their respective servers.  Ex. 1 (Op. Rpt.) ¶¶ 1229, 1221 (alleging that "████████████████████████████████████████████████████ ████████████████").  He asserts that Headwater's patents enabled ████████████████████ ██████████████████████████████████████████████████████████" thus eliminating the need for an alleged "████████" of connections.  *Id.* ¶ 1225.  However, he fails to acknowledge

8

██████████████████

in designing these calculations that centralized push notification server systems were well known in the art, and did not represent the incremental benefit of the asserted patents distinct from the art.

Mr. de la Iglesia then estimates the battery "████" of allowing multiple applications to stay sufficiently "████" under both the prior art and the "██████████" approach. He claims that the prior art approach to supplying "████" data was for each application to "████" its respective application server repeatedly to check if any new data exists and if so, request it. He then assumes, based on a single ████ presentation from *2010*, ████████████████████████████. *Id.* ¶¶ 1223, 1239 (citing SAMSUNG_PRIORART2_0007087). He then assumes that each of the Accused Products, many of which are over a decade newer and more advanced than phones in 2010, also ██████████████████████. *Id.* ¶¶ 1254, 1257.

Next, Mr. de la Iglesia switches to using survey data from *2022*. Based on this data, he speculates that the average *Samsung* user "████████████████████████████████ ██████████████████████████." *Id.* ¶ 1240 (citing SAM-HW-2_00343046). He arbitrarily states that ████████████████████████████████████████. *Id.* ¶ 1235. Mixing the push notification data from 2022 with the ████████████████ from 2010, he computes the alleged battery drain for ████████████ (*id.* ¶ 1250) and ████████████ (*id.* ¶ 1257). Mr. de la Iglesia makes no attempt to explain how either timeframe relates to Headwater's survey evidence provided by its other expert, Dr. Groehn.

Finally, using those computations and adjusting for the possibility that ████████████████ ██████████████████████████████████████████████, he applies the computed battery drain to the battery capacity for various Galaxy smartphone products. (*Id.* ¶¶ 1254, 1257). This is the only time Mr. de la Iglesia attempts to consider the differences in

the hardware between the Accused Products. He never addresses any hardware differences between phones from 2010 and the Accused Products which span through the present.

2.        Mr. de la Iglesia Methodology is Unreliable

Even assuming Mr. de la Igelsia's approach properly compares the Asserted Patents to the prior art (which it does not), his methodology is unreliable for at least the following reasons.

***First***, Mr. de la Iglesia provides no analysis to indicate that the ███████████████ was correct, accurate, or reliable in 2010 or the time of the hypothetical negotiation (e.g., 2013 or 2015). He has no information on how that number was computed or to what device(s) it applies.

***Second***, Mr. de la Iglesia has no basis to assume a Samsung user receives push notifications from ██████████ based on his interpretation ████████████, or that ██████████████ ████████████████████████████████████████. As anyone who has been annoyed by a push notification knows, simply because an application ***receives*** a push notification does not mean that an application ***needs*** to be constantly receiving data ██████ ██████. Mr. de la Iglesia's assumptions to the contrary are based on rampant speculation about how Samsung's customers would use mobile devices at the time of the hypothetical negotiation.

***Third***, Mr. de la Iglesia's estimation of improved battery life cannot apply to all the Accused Products. His calculations are based only on smartphones that use cellular connectivity. *See* Ex. 1 (Op. Rpt.) ¶¶ 1254, 1257 (reproducing battery capacities for smartphones). Yet the accused products include other products with meaningful differences. The accused tablets, for example, have much larger battery capacities than phones and are more likely to be nearby a power outlet such that battery improvement is likely irrelevant. Likewise, many accused products do not support cellular connectivity (such as wearables that must be "tethered" to a smartphone or Wi-Fi only tablets). While Mr. de la Iglesia admits "████████████████████████████ ██████████████████████████████," (*id.* ¶ 1246), he fails to account for

such acknowledged differences. Thus, his assessment of alleged incremental improvement cannot apply to all accused products, as he purports to do. *See id.* ¶¶ 1219-1262, 1255, 1257.

### E. The Court Should Strike Mr. de la Iglesia's Allegation that Samsung Infringes the '117 or '192 Patents By "Making," "Offering," "Selling," or "Importing"

Mr. de la Iglesia makes vague references to Samsung directly infringing by "making, . . . offering for sale, and selling" the claimed "system" of the '117 patent or the claimed "message link server" of the '192 patent. Ex. 1 (Op. Rpt.) ¶¶ 1176-1185, 1203, 1205. Although Mr. de la Iglesia's theories are barely coherent, as he intermixes alleged evidence of each infringing act, none of them are valid under controlling law.

The '117 patent recites a "network system" comprising both "device messaging agents . . . executable on" mobile end-user devices and a "network message server." *See id.* ¶ 1175. Yet Samsung does not make, sell, nor offer to sale any such "system." Samsung sells mobile devices that can receive push notifications from servers. Samsung does not sell or offer the servers. Mr. de la Iglesia appears to offer theories that Samsung performs the requisite infringing acts because it "████████████████████ (*id.* ¶ 1178), "█████████████████████," (*id.*), and/or "████████████████" that allow Samsung devices to use FCM (*id.* ¶¶ 1182, 1185). But selling only one component of an allegedly infringing system cannot qualify as infringement under 35 U.S.C. § 271(a).[2] *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 532 (1972) ("[A] combination patent can be infringed only by combination."). Mr. de la Iglesia's "█████" theory is even less clear, but he states that "████████████ ████████████████████████████████████████████████ ████████████████" Ex. 1 (Op. Rpt.) ¶ 1178. Mr. de la Iglesia's boilerplate statement is

---

[2] Headwater only pleads infringement based on § 271(a), (b), or (c). *See* Dkt. 31 (Headwater First Amended Complaint) ¶¶ 62, 64, 76, 79, 91, 94.

demonstrably wrong, based on his own infringement theory, however, as he contends that consumer ***devices***—which are outside of Samsung's control—"█████████████████████ ███████████████████." *Id.* ¶ 555. The accused system cannot even come into existence until this step occurs, and thus, Samsung cannot be deemed to "make" it. *See, e.g., Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011) ("In order to 'make' the system under § 271(a), Qwest would need to combine all of the claim elements—this it does not do."); *see also Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1372 (Fed. Cir. 2019).

The '192 patent recites a "message link server" comprised of various elements. Headwater points to each of Google FCM and Samsung SPP servers as the claimed "server." Ex. 1 (Op. Rpt.) ¶¶ 966, 967, 967. Again, despite Mr. de la Iglesia's vague suggestions to the contrary, Samsung does not sell the accused servers. Samsung obviously does not "make" Google servers. None of Samsung's SPP servers are ████████████████, and Headwater has never contested this fact. *See id.* ¶¶ 267, 966. Samsung thus cannot be liable for "making." *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527 (1972*)*.

### F. The Court Should Strike Mr. de la Iglesia's Discussion of Commercial Contracts and Unrelated Case Proceedings

Mr. de la Iglesia is unqualified to opine on contracts between Google and Samsung, and the opinions he offers on them are irrelevant to the issues in the case and high prejudicial. Accordingly, they should be excluded. Mr. de la Iglesia lacks the requisite "knowledge, skill, experience, training, or education'" to opine on commercial contracts. Under Rule 702 and *Daubert*, an expert is precluded from testifying if he is not "qualified as an expert by knowledge, skill, experience, training, or education." Mr. de la Iglesia interprets the rights and obligations under a complex set of contracts, the "MADA" and revenue sharing agreements, but he is not an expert on licensing, contracts, or damages-related issues. Ex. 1 (Op. Rpt.) ¶¶ 6-15. His opinions

on contractual obligations are beyond the scope of his expertise and should be excluded.  *See, e.g.*, *Specialty Earth Scis., LLC v. Carus Corp.*, No. 15-CV-06133, 2020 WL 7027441, at *4 (N.D. Ill. Nov. 30, 2020) (granting motion to exclude expert testimony, reasoning that "[j]ust because [expert] has expertise with respect to the science and technology underlying the Licensed Products does not mean that she has expertise in the marketing and sales of those products"); *Astro Tech., Inc. v. Alliant Techsystems, Inc.*, No. CIV.A. H-03-0745, 2005 WL 6061803, at *10 (S.D. Tex. Sept. 28, 2005) (excluding licensing opinions offered by expert in solid rock motor technology).

Moreover, these agreements are irrelevant to this case.  Mr. de la Iglesia improperly relies on them to show direct and indirect infringement (Ex. 1 (Op. Rpt.) ¶¶ 1183-1185, 1189, 1193-1194, 1197, 1202, 1209, 1212, 1214), lack of non-infringing alternatives (*id.* ¶¶ 1266-1277), and secondary considerations of nonobviousness.  Ex. 2 (Reb. Rpt.) ¶¶ 737-739.



As to infringement, Mr. de la Iglesia asserts that by "███████████████████████████
███████████████████████████████████████████████████████████████████
███████████."  *See, e.g.*, Ex. 1 (Op. Rpt.) ¶ 1185.  He relies on these statements to allege direct infringement of the '117 and '733 patents (e.g. *id.* ¶¶ 1185, 1212) and indirect infringement of all asserted patents (e.g. *id.* ¶¶ 1189, 1209, 1214).  Any ***rights*** conveyed by the contracts, however, are irrelevant to whether Samsung actually ***performs*** any act that constitutes direct infringement.  Moreover, the MADA ████████████████████████████████████.  And Mr. de la Iglesia does not contend otherwise.  The contracts are likewise irrelevant to indirect infringement.  Mr. de la Iglesia suggests that ████████████████████████████████████
███████████████████████████████████."  *See id.* ¶¶ 1191, 1209, 1214.  But, with respect to Google, Mr. de la Iglesia fails to explain how ██████████████████████████
██████████████████████████████████, especially when the accused



system ███ the contracts.  With respect to unidentified third parties, Mr. de la Iglesia cites no evidence establishing any possible third party direct infringers are even aware of the MADA.

As to non-infringing alternatives, Mr. de la Iglesia asserts that ████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████.” Ex. 1 (Op. Rpt.) ¶¶ 1266, 1277.  Samsung-Google contracts are irrelevant to analysis of non-infringing alternatives.  Mr. de la Iglesia does not (and is not qualified to) analyze whether Samsung or Google may have opted not to enter or renew any contractual agreements at the alleged time of the hypothetical negotiation.

As to secondary consideration allegations, Mr. de la Iglesia cites to the Google-Samsung contracts as evidence of Samsung experiencing "██████████████████████████ ████████████████████████.” Ex. 2 (Reb. Rpt.) ¶¶ 737-739.  But he identifies no nexus between those contracts and the alleged inventions.  *See* Section G *infra*.

The foregoing is merely camouflage for Mr. de la Iglesia to wave large dollar figures and irrelevant litigation in front of the jury.  For example, Mr. de La Iglesia quotes ███████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████.  *See* Ex. 1 (Op. Rpt.) ¶¶ 1269-1274.  Moreover, Mr. de La Iglesia offers the misleading statement that "████████████████████████████████████████████████ ████████████████████.” Ex. 2 (Reb. Rpt.) ¶¶ 738-739.  Even if █████████████ ██████████████████████████████████████████████████ ██████.  Such irrelevant and highly prejudicial "opinions" should be excluded.

### G. The Court Should Strike Mr. de la Iglesia's Allegations of Secondary Considerations of Non-obviousness Lacking Nexus to the Asserted Patents

Lacking any evidence of secondary considerations of non-obviousness connected to the asserted patents, Mr. de la Iglesia relies on the success of the ***accused*** Android devices—no products developed by Headwater or ItsOn—as evidence of non-obviousness because they (allegedly) practice the Asserted Patents. Ex. 2 (Reb. Rpt.) ¶¶ 736-740.

Assuming *arguendo* that Android devices infringe, Mr. de la Iglesias's opinion that the success of the products comes from the three Asserted Patents is, on its face, unreliable. "To establish a nexus . . . an expert must be qualified to do more than state a product incorporates a claimed invention; the product is successful; therefore the invention must have caused the commercial success." *Lutron Elecs. Co., Inc. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1239 (D. Utah 2013). Mr. de la Iglesia makes no attempt to show that the Accused Products are coextensive with what is claimed to justify a presumption of secondary consideration. *See Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019). They are not. The accused Android devices are smartphones and tablets, capable of innumerable things having nothing to do with push notifications. Mr. de la Iglesia cannot simply claim that the products infringe, they are successful, "ergo [Headwater]'s inventions caused the products' success." *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 605 (N.D. Cal. 2008). Even the MADA and RSA agreements Mr. de la Iglesia cites ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 2 (Reb. Rpt.) ¶¶ 737-739. Likewise, there is no evidence that the success of the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Mr. de la Iglesia references is in any way successful because of their alleged practice of the Asserted Patents rather than, for example, the marketing strategy itself (e.g., content of marketing, timing of marketing, etc.).

## II.    CONCLUSION

For the foregoing reasons, the Court should strike the identified paragraphs of Mr. de la Iglesia's expert reports.

Dated:  October 26, 2024                    Respectfully submitted,

                                  By:    */s/ Jonathan B. Bright*
                                         Ruffin B. Cordell
                                         TX Bar No. 04820550
                                         Michael J. McKeon
                                         DC Bar No. 459780
                                         mckeon@fr.com
                                         Jared Hartzman
                                         DC Bar No. 1034255
                                         hartzman@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         1000 Maine Avenue, SW, Ste 1000
                                         Washington, D.C. 20024
                                         Telephone: (202) 783-5070
                                         Facsimile: (202) 783-2331

                                         Thad C. Kodish
                                         GA Bar No. 427603
                                         tkodish@fr.com
                                         Benjamin K. Thompson
                                         GA Bar No. 633211
                                         bthompson@fr.com
                                         Jonathan B. Bright
                                         GA Bar No. 256953
                                         jbright@fr.com
                                         Christopher O. Green
                                         GA Bar No. 037617
                                         cgreen@fr.com
                                         Noah C. Graubart
                                         GA Bar No. 141862
                                         graubart@fr.com
                                         Sara C. Fish
                                         GA Bar No. 873853
                                         sfish@fr.com
                                         Katherine H. Reardon
                                         NY Bar No. 5196910
                                         reardon@fr.com
                                         Nicholas A. Gallo
                                         GA Bar No. 546590
                                         gallo@fr.com

Vivian C. Keller (*pro hac vice*)
GA Bar No. 651500
keller@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)

NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032

18

seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on October 23, 2024. The parties were unable to reach agreement as to Samsung's requested relief.

*/s/ Jonathan B. Bright*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on October 26, 2024. As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Jonathan B. Bright*