**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | |
| v. | Case No. 2:23-CV-00103-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants*. | |

**SAMSUNG'S OPPOSITION TO HEADWATER'S MOTION FOR PARTIAL**
**<u>SUMMARY JUDGMENT ON STANDING (DKT. 174)</u>**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   RESPONSE TO ALLEGEDLY UNDISPUTED MATERIAL FACTS ........................... 2

III.  ADDITIONAL MATERIAL FACTS ...................................................................... 3

    A.    Dr. Raleigh Signed a Broad Patent Assignment with His Employer Qualcomm ... 3

    B.    The Asserted Patents Fall Within the Scope of Dr. Raleigh's Assignment to Qualcomm ................................................................................................. 4

        1.    The Invention Is Within the Scope of Qualcomm's Business ................... 4

        2.    The Asserted Patents Fall Within the One-Year Presumption of Qualcomm Ownership ................................................................ 8

        3.    Headwater Has Not Rebutted the Presumption of Qualcomm Ownership. 8

IV.   LEGAL STANDARD ........................................................................................ 10

V.    ARGUMENT ................................................................................................... 10

    A.    Headwater Does Not  Own the Asserted Patents ................................................. 10

        1.    Dr. Raleigh Filed the Relevant Application Within One Year of Leaving Qualcomm, Triggering the Presumption Qualcomm Owns the Asserted Patents ................................................................ 10

        2.    The Invention Is Within the Scope of Qualcomm's Business ................. 11

        3.    Headwater Has Failed to Rebut the Presumption of Qualcomm's Ownership ................................................................................ 12

    B.    Headwater's Arguments in its Motion Do Not Change the Result ...................... 16

        1.    Dr. Raleigh's Uncorroborated Testimony Is Insufficient to Establish Conception ................................................................................ 16

        2.    Dr. Raleigh's Provisional Patent Application Cannot Serve as Corroborating Evidence ............................................................ 17

        3.    The *Bio-Rad* Case Is Distinguishable ....................................................... 17

        4.    Qualcomm's Behavior Is Consistent with Its Ownership of the Asserted Patents ....................................................................... 18

    C.    The Court Should Dismiss for Lack of Standing ................................................ 19

VI.   CONCLUSION ................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Apator Miitors ApS v. Kamstrup A/S,*
    887 F.3d 1293 (Fed. Cir. 2018)...................................................................................14, 16

*Bio-Rad Labs., Inc. v. Int'l Trade Comm'n,*
    996 F.3d 1302 (Fed. Cir. 2021)...................................................................................17, 18

*Chen v. Bouchard,*
    347 F.3d 1299 (Fed. Cir. 2003).........................................................................................16

*Dawson v. Dawson,*
    710 F.3d 1347 (Fed. Cir. 2013).........................................................................................13

*DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.,*
    517 F.3d 1284 (Fed. Cir. 2008).........................................................................................10

*FilmTec Corp. v Hydranautics,*
    982 F.2d 1546 (Fed. Cir. 1992) .........................................................................................11

*Headwater Research LLC v. Samsung Elecs. Am., Inc.,*
    Case No. 2:22-cv-00422 (E.D. Tex.), Dkt. 399 ............................................................. *passim*

*Hybritech Inc. v. Monoclonal Antibodies, Inc.,*
    802 F.2d 1367 (Fed. Cir. 1986).....................................................................................15, 17

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001).....................................................................................10, 19

*iRobot Corp. v. SharkNinja Operating LLC,*
    2024 WL 3687981 (Fed. Cir. Aug. 7, 2024) ......................................................................13

*MHL Tek, LLC v. Nissan Motor Co.,*
    655 F.3d 1266 (Fed. Cir. 2011).....................................................................................17, 18

*Preston v. Marathon Oil Co.,*
    684 F.3d 1276 (Fed. Cir. 2012).........................................................................................14

*Price v. Symsek,*
    988 F.2d 1187 (Fed. Cir. 1993).........................................................................................15

*Singh v. Brake,*
    222 F.3d 1362 (Fed. Cir. 2000).........................................................................................13

*Spansion, Inc. v. Int'l Trade Comm'n,*
    629 F.3d 1331 (Fed. Cir. 2010).........................................................................................15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)......................................................................................................10, 17, 18

**Statutes**

35 U.S.C. § 281..............................................................................................................................10

# EXHIBIT INDEX AND NOTES[1]

| Exhibit | Description |
|---------|-------------|
| 1 | U.S. Patent 9,615,192 (Dkt. 177-1) |
| 2 | U.S. Patent 8,406,733 (Dkt. 177-2) |
| 3 | U.S. Patent 9,198,117(Dkt. 177-3) |
| 4 | QC3P_HWvSS422_0000005(Dkt. 177-4) |
| 5 | Excerpts from the Deposition of Gregory Raleigh, taken Sept. 10, 2024 (Dkt. 177-5) |
| 6 | Excerpts from the Deposition of Gregory Raleigh, taken June 14, 2024 (Dkt. 177-6) |
| 7 | Exhibit 5 from the Deposition of Gregory Raleigh, taken Sept. 10, 2024 (Dkt. 177-7) |
| 8 | HW_00104069 (Dkt. 177-8) |
| 9 | HW_00104071-72 (Dkt. 177-9) |
| 10 | Exhibit 6 from the Deposition of Gregory Raleigh, taken Sept. 10, 2024 (Dkt. 177-10) |
| 11 | Exhibit 7 from the Deposition of Gregory Raleigh, taken Sept. 10, 2024 (Dkt. 177-11) |
| 12 | QC3P_HWvSS422_0000011 (Dkt. 177-12) |
| 13 | United States provisional application no. 61/206354 (Dkt. 177-13) |
| 14 | Excerpts from Plaintiff Headwater Research LLC's Fifth (Sixth) Supplemental Objections and Responses to Defendants' First Set of Interrogatories (Nos. 1-14), dated September 24, 2024 (Dkt. 177-14) |
| 15 | Exhibit 11 from the Deposition of Gregory Raleigh, taken June 14, 2024 (Dkt. 177-15) |
| 16 | Exhibit 2 from the Deposition of Gregory Raleigh, taken March 7, 2024 (Dkt. 177-16) |
| 17 | Excerpts from the Expert Report of Erik de la Iglesia, dated September 26, 2024 (Dkt. 177-17) |
| 18 | HW_00013712-29 |

* Emphasis added unless otherwise noted.

* Form objections are omitted from deposition transcript quotations unless otherwise noted.

* In this brief, "Headwater" refers to Plaintiff and its purported predecessors, and "Samsung" refers to Defendants.

---

[1] Samsung is not refiling Exs. 1-17 since they are already on the docket.

## I.     INTRODUCTION

Despite issuing a Report and Recommendation ("R&R") finding standing in a related case, this Court should find *no* standing in this case because the facts are materially different.  *See Headwater Research LLC v. Samsung Elecs. Am., Inc.*, Case No. 2:22-cv-00422 (E.D. Tex.) (hereinafter "HW1"), Dkt. 399.[2]  Notably, while the same Qualcomm employment agreement at issue in HW1 also governs this case, the following are key differences:

- In this case, Headwater clearly claims a priority date of January 28, 2009, so there is no question that the asserted patents were filed within one year of Dr. Raleigh leaving Qualcomm.  This triggers a presumption Qualcomm owns the asserted patents.

- The corroborating evidence the Court cited in the R&R is inapplicable because Headwater admits this case does not involve any shift "from a network side solution to a device side solution."  *Compare* R&R at 12.

- Indeed, none of Headwater's cited evidence corroborates *when* Dr. Raleigh conceived the claimed invention because none of it discusses an "aggregated messaging channel," which is how Dr. Raleigh describes the asserted patents.

- Dr. Raleigh is the sole inventor in this case, so there is no issue of when he collaborated with any co-inventors.

- Since there are no co-inventors, Qualcomm is the sole owner of the asserted patents, negating Constitutional standing.

In short, because Headwater has failed to rebut the presumption that Qualcomm owns the asserted patents, this Court should deny Headwater's motion for partial summary judgment and

---

[2] While Samsung notes differences between the present litigation and HW1, Samsung fully maintains its position that Headwater lacks standing in Case No. 2:22-CV-00422-JRG-RSP, as explained in its Objections to the R&R that are pending before the Court.

instead dismiss for lack of standing.

## II.    RESPONSE TO ALLEGEDLY UNDISPUTED MATERIAL FACTS

While standing is for the Court, summary judgment is not appropriate because standing depends on the Court's fact findings and credibility determinations, as Headwater otherwise admits. *See* Dkt. 174 at 15.

SUMF No. 1:  Incomplete.  While the R&R found Headwater has standing in HW1, this case is materially different for the reasons discussed herein.  In addition, the Court has not issued a final order on standing in HW1.

SUMF No. 2:  Incomplete.  While Dr. Raleigh testified at an evidentiary hearing in HW1, this case is materially different for the reasons discussed herein.

SUMF No. 3:  Disputed.  Because Dr. Raleigh had already assigned the asserted patents to Qualcomm, he had nothing left to assign to Headwater.

SUMF No. 4:  Partially disputed.  While Samsung is not aware of Qualcomm filing any action to allege ownership of the asserted patents, it did claim ownership.  *E.g.*, Ex. 8 (HW_00104069).

SUMF No. 5:  Undisputed.

SUMF No. 6:  Undisputed.

SUMF No. 7:  Partially disputed.  While California law governs Dr. Raleigh's contract with Qualcomm, that contract does not extend to "post-employment activities."  Rather, it creates a rebuttable presumption that patent applications filed within one year of employment were conceived *during* employment.  *See* R&R at 2; Ex. 4 ¶ 1.4.

SUMF No. 8:  Undisputed.

SUMF No. 9:  Partially disputed.  While Samsung is not aware of Qualcomm filing any action to allege ownership of the asserted patents, it did claim ownership.  *E.g.*, Ex. 8

(HW_00104069).  Qualcomm has also shown support for Samsung in this case, as indicated by Headwater.  *See* Dkt. 177 at 12.

## III.    ADDITIONAL MATERIAL FACTS

These facts are repeated from Samsung's own motion to dismiss (Dkt. 177) because the Local Rules require briefs to be self-contained.  Samsung does not understand why Headwater chose to file its own standing motion after being informed Samsung would file a motion to dismiss for lack of standing.  Nonetheless, by choosing to file its own motion, Headwater appears to agree the issue of standing can be resolved now.  Headwater's motion also confirms Headwater does not have sufficient evidence to prove its standing.  Samsung's motion to dismiss should be granted.

### A.  Dr. Raleigh Signed a Broad Patent Assignment with His Employer Qualcomm

All patents asserted in this case name one inventor, Dr. Greg Raleigh.  *See* Exs. 1-3 (asserted patents).  The Court accurately described the background facts in the R&R.  Dr. Raleigh was previously employed by Qualcomm and in the course of that employment signed an assignment agreement.  R&R at 1.  The Assignment Agreement provides all Inventions are assigned to Qualcomm and defines "Inventions" as:

> All inventions, discoveries, developments, formulae, processes, improvements, ideas and innovations, whether patentable or not … made, conceived, reduced to practice, authored, or fixed in a tangible medium of expression by me, … whether or not made, conceived, reduced to practice, authored, or fixed in a tangible medium of expression during working hours, which results from my work or association with the Company, or which results from or is aided by the use of the Company's equipment, supplies, facilities or trade secret information, or which is related to or coming within the scope of the Company's business, or related to the Company's products or any research, design, experimental or production work carried on by the Company.

*Id.* at 2; *see also* Ex. 4 ¶ 1.1.  The Assignment Agreement additionally provides:

> I agree that an Invention disclosed by me to a third person or described in a patent application filed by me or in my behalf within one year following termination of my employment with the Company shall be presumed to be an Invention subject to

3

the terms of this Agreement unless proved by me to have been conceived and first reduced to practice by me following the termination of my employment with the Company.

R&R at 2; *see also* Ex. 4 ¶ 1.4. The Court rejected Headwater's challenges to the validity of this agreement, R&R at 4-6, and concluded "it is on Headwater to show either the disclosed invention is not 'within the scope of the company's business,' and thus not an 'Invention' under the agreement, or that the invention was conceived and reduced to practice after Dr. Raleigh's employment." *Id.* at 6. Headwater did not file any objections to the R&R.

## B. The Asserted Patents Fall Within the Scope of Dr. Raleigh's Assignment to Qualcomm

### 1. The Invention Is Within the Scope of Qualcomm's Business

In the R&R, the Court found "the invention is within the scope of Qualcomm's business." R&R at 7. The same is true in this case. Here, Dr. Raleigh stated that the asserted patents relate to the problem of aggregating messages from smartphone apps because these apps may otherwise overwhelm the network. He testified "[t]hese patents solved critical problems that literally brought down the Cingular network when the first iPhones and Androids were attached to the network." Ex. 5 at 45:20-46:21. He explained that "[t]he world that existed when I was looking at this problem set was a world where applications connected to their own servers and as I described earlier that created an unwield[y] amount of network chatter and that amount of network chatter caused the difficulties that I described." *Id.* at 66:11-16.

Dr. Raleigh addressed this problem with "a single communication channel" between each device and the network. *Id.* at 67:3. He further explained "[y]ou then have all the app servers connecting through the network messaging server and then on any one device you have all the apps connecting through the messaging agent and you have now one channel that you can manage rather than all these point to point connections." *Id.* at 67:12-17. Though Dr. Raleigh was careful

not to read words into his claims, he allowed that the term "aggregated messaging" is "one way to describe" the inventive concept in this case.  *Id.* at 68:1-9; *see also id.* at 54:20-21 (Dr. Raleigh referring to "aggregated messaging channel such as patented inventions here"); Ex. 6 at 48:18-51:1.

Dr. Raleigh's testimony is also consistent with the claims and disclosures of the asserted patents.  For example, the '177 patent is entitled "***NETWORK*** SYSTEM WITH ***COMMON*** SECURE WIRELESS MESSAGE SERVICE SERVING MULTIPLE APPLICATIONS ON MULTIPLE WIRELESS DEVICES," and its Abstract states "[t]he ***network*** message server delivers messages to the device messaging agent ***on behalf of a plurality*** of network application servers."  Ex. 2 ('117 patent); *see also* Exs. 1, 3 (other asserted patents); Ex. 17 (de la Iglesia Rpt.) at ¶¶ 49, 1229 (Headwater expert describing invention in a similar way).

As in HW1, Dr. Raleigh admitted that the technology in this case is related to Qualcomm's business, and he admittedly offered it to Qualcomm.  For example, after the evidentiary hearing in HW1, Headwater produced the following email in this case:



Ex. 7.  Notably, in this email Dr. Raleigh told Qualcomm CEO Dr. Paul Jacobs that ▮▮▮▮▮

███████████████████████████████████████████████████████████

██████████████████████ *Id.*

When shown this email at deposition, Dr. Raleigh also testified ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ Ex. 5 at 130:12-16.  The "issues" that came up were Qualcomm's

assertions of ownership.  Dr. Jacobs referred Dr. Raleigh's email to Qualcomm Vice President

David Wise, *see* Ex. 7, who told Dr. Raleigh after months of negotiations that ████████████

████████████████████████████ *See* Ex. 8 (HW_00104069).

As the Court knows, Dr. Raleigh also asked Mr. Wise for a Release of Qualcomm's

ownership claims ████████████████████████████ Ex. 9 at HW_00104071-

72.  In this case, Headwater also produced a redlined copy of the proposed Release in which

Qualcomm's lawyers expressly deleted Headwater's proposed language that "████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████" Ex. 5 at 134:22-136:11; Exs. 10-11.  In addition, Mr. Wise stated that

Qualcomm would resolve the "█████████████████" for "█████████████████████████." Ex.

8 (HW_00104069).  However, Dr. Raleigh declined, and no release was signed.  Ex. 5 at 136:13-

137:6.

Finally, Dr. Raleigh agreed that the iPhone network problems that led to his conception of

the invention in this case occurred while he was still at Qualcomm, and that Qualcomm was subject

to these problems.  He testified "I think the problem began to develop while I was working at

Qualcomm. The first iPhones began to go on the network during that time, yeah. And the first

Androids that had this multiple app chatter problem began to go on the network in that time frame." Ex. 5 at 122:2-15. He also agreed that Qualcomm was affected by the problem: "Everybody in wireless, users, carriers, everybody was affected by that." *Id.* at 121:10-17.

### 2. The Asserted Patents Fall Within the One-Year Presumption of Qualcomm Ownership

There is no question the one-year presumption of Qualcomm ownership applies in this case. Dr. Raleigh left Qualcomm on September 19, 2008 and filed the '354 provisional application on January 28, 2009, within one year of his departure. R&R at 2; *see* Ex. 12; Ex. 13. Unlike HW1, Headwater alleges all asserted patents benefit from this January 28, 2009 priority date. Ex. 14 at 8-9.

### 3. Headwater Has Not Rebutted the Presumption of Qualcomm Ownership

In this case, Dr. Raleigh asserts that he conceived the claimed invention after he left Qualcomm (and after he conceived the invention in HW1). However, he has absolutely no corroboration for this assertion.

In HW1, the Court relied on a Headwater slide deck dated October 23, 2008 to corroborate Dr. Raleigh's shift "from a network side solution to a device side solution." R&R at 12. However, that evidence is inapplicable to this case, as Dr. Raleigh admitted. First, Dr. Raleigh says he conceived the invention in this case *after* the October 23 meeting with Best Buy—so it is not reflected in that slide deck. Ex. 5 at 146:7-8 ("I didn't have any aha moment about messaging services for months after this."); *see also id.* at 115:4-116:15. Second, he agreed the asserted patents require "servers," which are not "devices" in the parlance of this case. *Id.* at 117:4-118:23. Thus, the conception evidence cited by the R&R does not apply to this case.

Moreover, while Headwater's interrogatory responses in this case cite other slide decks as supposed evidence of conception, none of these documents even hint at aggregated messaging.

8

FILED UNDER SEAL

The words "aggregated" or "aggregate" do not appear at all, and "message" or "messaging" appears only three times and in a different context (which does not involve aggregation). There is also no mention of the iPhone or its impact on networks. *See* Ex. 14 at 8-11 (listing documents).

In addition, Dr. Raleigh admitted that the event which inspired the present invention—the iPhone bringing down the network—happened while he was still at Qualcomm, as quoted above. Ex. 5 at 122:2-15.

Finally, the evidence presented in HW1 is again relevant. As the Court knows, Dr. Raleigh started working with Best Buy on behalf of himself by September 9-11, 2008—before he left Qualcomm on September 19, 2008. Ex. 15. He also incorporated ItsOn on September 17, 2008, again before leaving. Ex. 16. And in 2021, he publicly admitted that "***At Qualcomm***, you know, one of the most innovative companies in the world, ***I had this idea*** that hey, um, the MIMO revolution will take place now, and it's in full swing, so the next step is operating systems technology to manage the way applications connect on these new smartphones, because without that ***there's going to be a disaster on the network***. I took it to the then CEO of Qualcomm, again too far afield, Qualcomm is a chipset company, too risky, too disruptive, here's another idea for you, go run this new group that we're going to create for you over here that is closer to the technology that we do now. ***So I left Qualcomm to start Headwater,*** we developed that operating system technology, we distributed it to carriers, pitched it to OEMs***, and it's now in every smartphone on the planet***." HW1 Dkt. 236-1 at 46:00-46:51.

While the Court did not find Dr. Raleigh's panel admission dispositive in HW1, it fits the facts of this case even more closely with its reference to a "disaster on the network." Moreover, the Court should question Dr. Raleigh's credibility. In this case, Samsung asked Dr. Raleigh "Is there an idea that you disclosed to Dr. Jacobs that you believe is now in every smartphone?" He

answered "No." Ex. 5 at 112:14-18. That means he is either being untruthful in this case or was being untruthful on a panel that included former PTO Director Andrei Iancu. While the Court characterized Dr. Raleigh's panel remark as "bluster," R&R at 13, Dr. Raleigh's subsequent testimony reveals a glaring inconsistency that should affect the Court's evaluation of his testimony.

## IV.  LEGAL STANDARD

35 U.S.C. § 281 gives "the patentee…remedy by civil action for infringement of his patent." Status as a "patentee" thus gives a party constitutional standing under Article III. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001). Standing is an issue for the Court to decide and is not tried to a jury. *DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291-92 (Fed. Cir. 2008). As the party invoking federal jurisdiction, plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021).

## V.  ARGUMENT

### A.  Headwater Does Not  Own the Asserted Patents

#### 1.  Dr. Raleigh Filed the Relevant Application Within One Year of Leaving Qualcomm, Triggering the Presumption Qualcomm Owns the Asserted Patents

In its motion, Headwater does not dispute that Qualcomm presumptively owns the asserted patents.

Dr. Raleigh left Qualcomm on September 19, 2008 and filed the '354 provisional application on January 28, 2009, within one year of his departure. R&R at 2. Unlike HW1, Headwater alleges all asserted patents benefit from this January 28, 2009 priority date. Ex. 14 at 8-9. Thus, "it is on Headwater to show either the disclosed invention is not 'within the scope of the company's business,' and thus not an 'Invention' under the agreement, or that the invention was conceived and reduced to practice after Dr. Raleigh's employment." R&R at 6; *see also* Ex.

4 ¶¶ 1.1, 1.4.

## 2.    The Invention Is Within the Scope of Qualcomm's Business

In its motion, Headwater does not dispute that the asserted patents are within the scope of Qualcomm's business.

"Inventions" covered by Dr. Raleigh's agreement with Qualcomm include "ideas and innovations, whether patentable or not" that are "related to or coming within the scope of the Company's business, or related to the Company's products or any research, design, experimental or production work carried on by the Company." Ex. 4 ¶ 1.1.[3]

In the R&R, the Court found "the invention is within the scope of Qualcomm's business." R&R at 7. The Court observed that "Dr. Raleigh as an inventor and prior employee of Qualcomm is well positioned to understand Qualcomm's business and compare it to the invention" and that "Dr. Raleigh seemed to believe at the time that an idea at least related to his invention was sufficiently related to Qualcomm's business to pitch it to the CEO. While this was apparently unsuccessful, it demonstrates that Qualcomm's business is not unrelated." *Id.*

The same is true in this case. As detailed above, Dr. Raleigh says his invention in this case was inspired by network problems caused by the launch of the iPhone, which occurred while he was at Qualcomm. He testified "[t]hese patents solved critical problems that literally brought down the Cingular network when the first iPhones and Androids were attached to the network." Ex. 5 (9-10-24 Raleigh depo) at 45:20-46:21. He further testified "I think the problem began to

---

[3] As in HW1, this language also means ideas are covered even if not yet ready for patenting. The Federal Circuit has held such language can result in an employer owning a patent. *See FilmTec Corp. v Hydranautics*, 982 F.2d 1546, 1553 (Fed. Cir. 1992) ("Cadotte may well have refined the invention when he went to FilmTec . . . . The record is clear, however, that his work in February 1978 was on the same invention that he conceived in November 1977. Were we to find that inclusion of narrow performance limitations in the claims could serve to expel the claimed invention from operation of the Contract under which the invention was made, we would be defeating the intentions of the parties to the Contract . . . .").

develop while I was working at Qualcomm. The first iPhones began to go on the network during that time, yeah. And the first Androids that had this multiple app chatter problem began to go on the network in that time frame." Ex. 5 at 122:2-15.  He also agreed that Qualcomm was affected by the problem: "Everybody in wireless, users, carriers, everybody was affected by that." *Id.* at 121:10-17.

In addition, Dr. Raleigh again pitched his invention to Qualcomm's CEO—first before he left Qualcomm, as reflected in his panel remarks (*see* HW1 Dkt. 236-1), and again in early 2009, as reflected in the newly produced email, where he told Qualcomm CEO Jacobs that his invention was "███████████████████████████████." Ex. 7.  Dr. Raleigh also testified ███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████." Ex. 5 at 130:12-16.

As in HW1, the Court should find the invention in this case to be within the scope of Qualcomm's business.

### 3.    Headwater Has Failed to Rebut the Presumption of Qualcomm's Ownership

Headwater has failed to rebut the presumption of Qualcomm's ownership for two primary reasons.  First, Headwater has no corroboration for Dr. Raleigh's alleged conception date.  In its motion, Headwater does not point to any allegedly corroborating documents other than its patent application.  Second, Dr. Raleigh's alleged conception date is simply not credible.

***First***, as to corroboration, the evidence cited in the R&R does not apply to this case.  In HW1, the Court relied on a Headwater slide deck dated October 23, 2008 to corroborate Dr. Raleigh's shift "from a network side solution to a device side solution." R&R at 12.  However, that evidence is inapplicable to this case because Dr. Raleigh says he conceived the invention in

this case *after* the October 23 meeting with Best Buy—so it is not reflected in that slide deck.  Ex. 5 at 146:7-8.  Second, he agreed the asserted patents require "servers," which are not "devices" in the parlance of this case.  *Id.* at 117:4-118:23.  Thus, this case does not involve a shift "from a network side solution to a device side solution."  *Compare* R&R at 12.

Moreover, while Headwater cites other slide decks in its interrogatory responses in this case as supposed evidence of conception, it has not identified *where* in these numerous documents the invention is disclosed.  Moreover, none of these documents even hint at aggregated messaging, which is how Dr. Raleigh characterizes the invention in this case.  *E.g.*, Ex. 5 at 68:1-9.  The words "aggregated" or "aggregate" do not appear at all in the slides Headwater cites, and "message" or "messaging" appears only three times and in a different context (which does not involve aggregation).  *See* Ex. 14 at 8-11 (listing documents).  As another example, for the '733 patent, the documents cited in Headwater's interrogatory responses (Ex. 14) cannot corroborate that Dr. Raleigh conceived of, among other things, a "service control link," "securing of the service control link with an encryption protocol," and "service control device link agent."  Thus, these documents cannot corroborate Dr. Raleigh's invention date.  *See iRobot Corp. v. SharkNinja Operating LLC*, 2024 WL 3687981, *3-4 (Fed. Cir. Aug. 7, 2024) (rejecting corroboration not linked to claim elements); *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000) ("A conception must encompass all limitations of the claimed invention.").[4]

The law requires corroboration of an alleged conception date because conception is a "mental act," subject to self-serving recollection of events long past. *Dawson v. Dawson*, 710 F.3d 1347, 1352 and n.1 (Fed. Cir. 2013) (ruling against party with burden on conception, like so many

---

[4] The Court also agreed that Headwater's patent applications cannot themselves serve as corroboration. *See* HW1 Dkt. 386 at 173:24-174:20 (evidentiary hearing).

conception cases).  The Federal Circuit elaborated on this requirement in *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293 (Fed. Cir. 2018).  There it explained:

> It is well established . . . that when a party seeks to prove conception through an inventor's testimony the party must proffer evidence, "in addition to [the inventor's] own statements and documents," corroborating the inventor's testimony. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989).  While the requirement of corroboration exists to prevent an inventor from "describ[ing] his actions in an unjustifiably self-serving manner," *Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003), "*[e]ven the most credible inventor testimony is a fortiori required to be corroborated by independent evidence*," *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171-72 (Fed. Cir. 2006).
>
> The sufficiency of the proffered corroboration is determined by a "rule of reason" analysis in which all pertinent evidence is examined.  *In re NTP, Inc.*, 654 F.3d 1279, 1291 (Fed. Cir. 2011).  Even under the "rule of reason" analysis, however, *the "evidence of corroboration must not depend solely on the inventor himself.*" *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998); *see also Hahn*, 892 F.2d at 1033 (corroborating evidence must be "independent of information received from the inventor").

*Id.* at 1295 (affirming finding of insufficient corroboration).

Headwater itself has admitted that the burden of proving conception is "exacting."  HW1 Dkt. 287 at 2.  However, Headwater has argued that the *Apator* rule is applicable only when an alleged inventor seeks to establish conception *before* employment rather than *after*.  *See* R&R at 12 (In *Preston v. Marathon Oil Co.,* 684 F.3d 1276 (Fed. Cir. 2012), "the employee sought to demonstrate that he conceived of his invention *prior* to his employment, not after as here.  *See id.* The corroboration requirement simply does not mechanically work in the situation where the party without the burden is the one trying to prove an earlier conception date").  To be clear, Samsung does not seek to impose the burden of proving a negative on Headwater.  That is, Headwater is not required to prove that Dr. Raleigh *did not* conceive at Qualcomm.  Rather, it is required to prove *when* he did conceive to rebut the presumption of Qualcomm's ownership.  *See* R&R at 2; Ex. 4 ¶ 1.4.

14

Thus, what must be corroborated is *the date* of conception.  Whether it is before or after some other event is a secondary question.  As explained in the seminal conception case of *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, the question of whether an invention was conceived "before" a particular date is "more properly" analyzed as "***when*** the claimed invention was conceived."  802 F.2d 1367, 1376 (Fed. Cir. 1986); *see also Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1356 (Fed. Cir. 2010) ("all of the evidence of record must be collectively evaluated in determining ***when*** the invention was conceived"); *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993) (requiring corroboration "where an inventor is proffering oral testimony attempting to remember specifically what was conceived and ***when*** it was conceived, a situation where, over time, honest witnesses can convince themselves that they conceived the invention of a valuable patent."  This means Headwater must have corroborating evidence to prevail.

Regardless, the R&R required *some* corroboration in HW1—the slides in that case—and here Headwater has none.  In addition, unlike HW1, Dr. Raleigh is the sole inventor, so there is no issue of whether he began collaborating with others within one year of leaving Qualcomm.  The Court should therefore find that Headwater has failed to rebut the presumption that Qualcomm owns the asserted patents in this case.

***Second***, even apart from the lack of corroboration, Dr. Raleigh's alleged conception date is simply not credible.  Dr. Raleigh admitted that the iPhone network problems that led to his conception of the invention in this case occurred while he was still at Qualcomm.  Ex. 5 at 122:2-15; *see also id.* at 45:20-46:21 (testifying that the iPhone "brought down the Cingular network").  This strongly suggests conception before he left Qualcomm.

In addition, he started working with Best Buy on behalf of himself by September 9-11, 2008—before he left Qualcomm on September 19, 2008.  Ex. 15.  He incorporated ItsOn on

September 17, 2008, again before leaving.  Ex. 16.  And in 2021, he publicly admitted he had an idea about "technology to manage the way applications connect" to avoid a "disaster on the network" while at Qualcomm.  HW1 Dkt. 236-1 at 46:00-46:51.  He further stated that he disclosed this idea to Qualcomm CEO Dr. Jacobs and then took it to Headwater, where "it's now in every smartphone on the planet."  *Id.*  Yet he has now testified he disclosed ***no*** idea to Dr. Jacobs that is in every smartphone.  Ex. 5 at 112:14-18.  This glaring inconsistency undermines his credibility.

Based on the totality of the evidence, the Court should find that Headwater has *not* carried its burden to rebut the presumption that Qualcomm owns the asserted patents.

## B.  Headwater's Arguments in its Motion Do Not Change the Result

### 1.  Dr. Raleigh's Uncorroborated Testimony Is Insufficient to Establish Conception

Headwater quotes extensively from Dr. Raleigh's deposition in this case.  *See* Dkt. 174 at 6-8.  However, the law is clear that "[e]ven the most credible inventor testimony is *a fortiori* required to be corroborated by independent evidence" and "evidence of corroboration must not depend solely on the inventor himself."  *Apator*, 887 F.3d at 1295.  Without documents to corroborate Dr. Raleigh's alleged date of conception, Headwater simply cannot prevail.  Indeed, contemporaneous evidence undermines Dr. Raleigh's uncorroborated testimony.  As discussed above, Dr. Raleigh's panel remarks and the statement he made to Qualcomm CEO Jacobs suggests the alleged inventions were conceived before, not after, Dr. Raleigh left Qualcomm.  Dr. Raleigh's contemporaneous statements—made during Dr. Raleigh's employment at Qualcomm and when Dr. Raleigh had no motive to assert ownership over the alleged invention—should be given far more weight than Dr. Raleigh's testimony in litigation.  A contrary interpretation would turn the requirement for corroboration on its head.  *See Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003) (the requirement for corroboration "addresses the concern that a party claiming

inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent").

Moreover, as discussed above, Samsung is not suggesting that Headwater must prove a negative, but it must provide corroborating evidence of *when* Dr. Raleigh conceived. *Hybritech*, 802 F.2d at 1376.

### 2.    Dr. Raleigh's Provisional Patent Application Cannot Serve as Corroborating Evidence

Headwater suggests that Dr. Raleigh's January 2009 provisional patent application is itself corroborating evidence. As discussed above, the Court has already rejected this argument. *See* HW1 Dkt. 386 at 173:24-174:20 (evidentiary hearing). The Court was correct. First, the patent application is not evidence of when Dr. Raleigh *first* conceived the claimed invention. Second, as a matter of contractual interpretation, it would make no sense if the very patent application that *triggers* the presumption of ownership also *overcomes* it. Such an argument would apply in every case where a patent application is filed within a year of employment, and it would make the contract meaningless.

### 3.    The *Bio-Rad* Case Is Distinguishable

As plaintiff, Headwater "bear[s] the burden of demonstrating that [it has] standing." *TransUnion*, 594 U.S. at 430–31; *see also MHL Tek, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1273-74 (Fed. Cir. 2011) (same). Headwater attempts to shift the burden onto Samsung by citing *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 996 F.3d 1302 (Fed. Cir. 2021). But *Bio-Rad* is distinguishable. As an initial matter, *Bio-Rad* did not involve a contract that created a presumption of ownership. Here, because Dr. Raleigh's agreement with Qualcomm makes Qualcomm the presumed owner of the asserted patents, as discussed in Section V.A above, Headwater must rebut the presumption to be able to demonstrate standing.

17

Further, *Bio-Rad* did not even involve standing. Instead, at issue in *Bio-Rad* was an affirmative defense of co-ownership, which the accused infringer had the burden to prove. Specifically, Bio-Rad, the accused infringer, argued it had co-ownership of the asserted patents because the inventors (Bio-Rad's former employees) had ideas that contributed to the post-employment inventions while employed at Bio-Rad. *Id.* at 1316. In *Bio-Rad*, the Federal Circuit thus did not mention standing once. By contrast, the issue here is whether Headwater has standing to bring an action with respect to the asserted patents, not merely whether Qualcomm is a co-owner of the asserted patents. The burden to establish standing remains firmly seated with Headwater. *See TransUnion*, 594 at 430–31; *MHL Tek*, 655 F.3d at 1273–74.

In sum, Bio-Rad does not apply here because (1) *Bio-Rad* did not involve a contract, such as Qualcomm's, that made someone other than the plaintiff a presumed owner of the asserted patents, and (2) the defense at issue in *Bio-Rad* was not standing but co-ownership, which the accused infringer undisputedly had the burden to prove.

### 4. Qualcomm's Behavior Is Consistent with Its Ownership of the Asserted Patents

Headwater makes much of Qualcomm's behavior in 2017-2022, ignoring Qualcomm's behavior closer to the events in question in 2009. In 2009, as demonstrated above, Qualcomm asserted ownership, and Headwater took this assertion very seriously. Most revealingly, Headwater requested a release " ███████████████████████████████ Ex. 9 at HW_00104071-72. Moreover, even if Qualcomm chose not to expend resources on litigation at that time, Headwater likewise did not file a declaratory judgment to resolve the dispute. *See* Ex. 18 at HW_00013720 (███████████████████████████).

By 2017-2022, there is no evidence the same people at Qualcomm were even involved. The ███████ that Headwater cites (Dkt. 174-5) was signed by Alex Rogers, who does not appear

████████

in the 2009 correspondence, and there is no evidence he was aware of the previous ownership dispute. Moreover, Dr. Raleigh's testimony that Qualcomm deliberately let the statute of limitations pass is self-serving hearsay, and the Court should disregard it. Regardless, ████████

████████████████████████████████████████

████████ Thus, even if the 2017-2022 interactions related to Qualcomm's previous ownership claim, the parties' behavior has all the hallmarks of an attempted compromise, not a surrender.

Finally, Headwater has the burden to prove standing and the burden to overcome the presumption of Qualcomm's ownership. Qualcomm was not required to expend resources or intervene in a distant forum since Qualcomm does not have the burden to disprove standing.

### C.    The Court Should Dismiss for Lack of Standing

Status as a "patentee" gives a party standing under Article III of the Constitution. *Intellectual Prop. Dev.*, 248 F.3d at 1345. Because Qualcomm and not Headwater owns the asserted patents, Headwater lacks standing. The Court should dismiss the case.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny Headwater's motion for summary judgment and instead dismiss this case for lack of standing because Qualcomm owns the asserted patents.

19

Dated:  November 4, 2024

Respectfully submitted,

By:  */s/ John W. Thornburgh*

Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman
DC Bar No. 1034255
hartzman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Jonathan B. Bright
GA Bar No. 256953
jbright@fr.com
Christopher O. Green
GA Bar No. 037617
cgreen@fr.com
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
Nicholas A. Gallo
GA Bar No. 546590
gallo@fr.com
Vivian C. Keller (*pro hac vice*)
GA Bar No. 651500
keller@fr.com
FISH & RICHARDSON P.C.

20

1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)
NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036

21

Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111

Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**



**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 4, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

/s/ John W. Thornburgh
John W. Thornburgh