**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | |
| v. | Case No. 2:23-CV-00103-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants*. | |

**SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF
<u>INVALIDITY FOR LACK OF WRITTEN DESCRIPTION BASED ON 35 U.S.C. § 112</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF ISSUES .................................................................................... 1

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 1

IV.     LEGAL STANDARD ............................................................................................ 5

V.      ARGUMENT .......................................................................................................... 6

        A.      Claim 1 of the '117 patent requires "map[ping]" an "application identifier"
                to a "software process." ............................................................................ 6

        B.      The '117 patent specification lacks written description support for the
                "map[ping]" limitation ............................................................................. 7

VI.     CONCLUSION ...................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*A. Research Mktg. Sys., Inc. v. Troy*,
  659 F.3d 1345 (Fed. Cir. 2011)................................................................................7

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
  567 F.3d 1366 (Fed. Cir. 2009)................................................................................5

*Ariad Pharm., Inc. v. Eli Lilly and Co.*,
  598 F.3d 1336 (Fed. Cir. 2010)................................................................................5

*Capon v. Eshhar*,
  418 F.3d 1349 (Fed. Cir. 2005)............................................................................5, 12

*Flash-Control, LLC v. Intel Corp.*,
  No. 2020-2141, 2021 WL 2944592 (Fed. Cir. July 14, 2021)............................5, 14

*Impact Engine, Inc. v. Google LLC*,
  No. 2022-2291, 2024 WL 3287126 (Fed. Cir. July 3, 2024)................................5

*In re Katz Interactive Call Processing Pat. Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011)................................................................................8

*Purdue Pharma L.P. v. Faulding Inc.*,
  230 F.3d 1320 (Fed. Cir. 2000)................................................................................12

*Quake v. Lo*,
  928 F.3d 1365 (Fed. Cir. 2019)................................................................................5

*Realtime Data, LLC v. Morgan Stanley*,
  554 F. App'x 923 (Fed. Cir. 2014) (unpublished) ............................................7, 8

*Rivera v. Intl. Trade Comm'n*,
  857 F.3d 1315 (Fed. Cir. 2017)............................................................................6, 14

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
  665 F.3d 1269 (Fed. Cir. 2012)................................................................................12

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
  822 F. Supp. 2d 1020 (N.D. Cal. 2011) ................................................................8

*In re Wright*,
  866 F.2d 422 (Fed.Cir.1989)................................................................................12

**Statutes**

35 U.S.C. § 112................................................................................1, 4, 7, 8

### EXHIBIT INDEX AND NOTES

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent 9,198,117 |
| B | Excerpts from Plaintiff Headwater Research LLC's Fifth (Sixth) Supplemental Objections and Responses to Defendants' First Set of Interrogatories (Nos. 1-14), dated September 24, 2024 |
| C | Excerpts from the U.S. Patent 9,198,117 File History |
| D | Excerpts from the Expert Report of Erik de la Iglesia, dated September 26, 2024 |
| E | Excerpts from the Opening Expert Report of Ian Foster, Ph.D., dated September 26, 2024 |
| F | Excerpts from the Deposition of Gregory Raleigh, taken Sept. 10, 2024 |
| G | Excerpts from the July 11, 2024 Hearing Transcript |

\* Emphasis added unless otherwise noted.

\*\* Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\* In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

Abbreviations/Definitions

- Headwater:  Headwater Research LLC

## I.    INTRODUCTION

The asserted '117 patent is invalid under 35 U.S.C. § 112 ¶ 1 because its specification fails to convey with reasonable clarity to those skilled in the art that the inventor possessed the claimed invention, specifically with respect to the claim requirement to "***map the application identifier in the message to a software process corresponding to the application identifier***."  The fundamental bargain underlying the patent system is that in exchange for an exclusive right to a claimed invention, an inventor must describe and define that invention in the patent's written description in a manner demonstrating the inventor actually possessed the invention.  Here, the '117 patent is a descendant in a line of applications and claims priority to applications filed six years prior to its filing date.  And despite having no meaningful changes in its written description disclosure from those parent applications, the '117 patent—in a clear case of inventor overreach attempting to cover later-developed products—impermissibly introduces claims with undisclosed new matter. Inventor overreach of this type is the very problem the written description requirement serves to protect against.  Because no disputes of material fact exist and the specification fails to provide written description support, Samsung is entitled to summary judgment of invalidity.

## II.    STATEMENT OF ISSUES

Whether the claims of the '117 patent are invalid for lacking written description support.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    On March 24, 2015, Headwater filed Application No. 14/667,516, which matured into U.S. Patent No. 9,198,117 ("the '117 patent"). Ex. A ('117 Pat.).

2.    Headwater contends the '117 patent is entitled to claim priority to Provisional Application No. 61/206,354 (filed on January 28, 2009), Provisional Application No. 61/206,944 (filed on February 4, 2009), Provisional Application No. 61/207,393 (filed on February 10, 2009), and/or Provisional Application No. 61/207,739 (filed on February 13, 2009).  Ex. B at 12.

3.       The provisional applications to which Headwater contends the '117 patent is entitled to claim priority do not contain any relevant, unique written description support beyond what is provided in the four corners of the '117 patent specification.  *See id.* at 12 ("Each of the claims of the asserted claims of the Asserted Patents are supported by adequate written description in those applications.").

4.       The originally filed application for the '117 patent contained only one claim which was thereafter cancelled.  Ex. C at HW103-00001312.  The now-issued claims were introduced later via amendment during prosecution.  *Id.* at HW103-00001429-32.  The originally filed abstract was similarly replaced later via amendment.  *Id.* at HW103-00001313, HW103-00001428.

5.       Headwater asserts claims 1, 4, 6, 10, 12, 13, 16, 17, and 18 from the '117 patent. Claim 1 is the only independent claim of the patent.  *See generally* Ex. A.

6.       Headwater contends "[t]he inventions claimed in the '117 Patent are directed to secure communications[.]"  Ex. D ¶ 52.

7.       Claim 1 of the '117 patent requires "each device messaging agent, when executing, . . . to, for each received message, ***map the application identifier in the message to a software process corresponding to the application identifier***[.]"  Ex. A at claim 1.

8.       The patent specification (outside of the claims and abstract) never uses the phrase "software process."  *See generally id.*  The phrase "software process" was added to the claims and abstract via amendment to the application leading to the '117 patent only after the original application was filed.  Ex. C at HW103-00001429-32, HW103-00001428.

9.       The patent specification (outside of the claims and abstract) never uses the word "map" and uses the words "mapped" or "mapping" only 5 times, each instance shown below:

- "Traffic inspection can be accomplished in several ways, including, for example, implementing a T-buffer at each socket connection and feeding the side traffic into

2

a traffic flow analyzer, which in combination with a ***mapping*** of application to socket provides much of the information listed above." Ex. A at 53:53-58.

- "After obtaining one or more of the network apparatus settings, a ***mapping*** (e.g., an association) of the network apparatus settings to the appropriate device 100 (service processor 115) settings can be determined to advantageously support the service usage monitoring, service usage control, service usage billing or service usage verification objectives being addressed." *Id.* at 79:2-8.

- "For example, service usage limits contained in the billing system 123 service plan can be either directly ***mapped*** to usage limit settings on the device service processor 115 (e.g., service usage stops when the limit is hit or the user is notified or the user is billed), or the usage limits can be ***mapped*** to a number of service profiles the user may select from (e.g., as discussed herein, the user can select from options involving various actual usage versus usage limit notification policies and/or service usage control, limitations or throttling policies)." *Id.* at 79:12-21.

- "Accordingly, the association between service profile and/or service policy that is implemented on the device 100 (e.g., service processor 115) and the service profile and/or policy usage limits recorded in network apparatus can be associated with one another by one or more of the following: (A) implementing a function to read from the network database (e.g., the billing 123 data base, AAA 121 data base, service controller 122 data base, etc.) and ***mapping*** the network profiles and/or policies to device 100 (e.g., service processor 115) profiles and/or policies; (B) implementing a function that simultaneously sets the device profile and/or policy and the network equipment profile and/or policy recorded in the appropriate data base records; and (C) implementing a function that reads the profile and/or policy on the device 100 (e.g., service processor 115) or the service controller 122 and then sets the network equipment profile and/or policy recorded in the appropriate data base records." *Id.* at 80:47-63.

10.     None of the above-identified passages describe specifically the "map[ping]" of an "application identifier" to a "software process corresponding to the application identifier." *See* Ex. E ¶ 1136.

11.     According to Dr. Raleigh, sole named inventor of the '117 patent and Headwater CEO, the concept of mapping an application identifier to a software process, as used in the context of claim 1 of the '117 patent, was "***absolutely not***" known in the field:

Q.  Was the concept of mapping an application identifier in a message to a software process something that was known in the field before you filed this patent?

3

A. That's an important limitation in this claim.

Q. And was it known?

A. All by itself I don't know. We don't look at things that way.

Q. Whether you previously had looked at it that way or not do you know if it was known?

A. . . . In this context it was not. In the context of this entire claim to my best knowledge no, absolutely not.

Ex. F at 244:14-245:18 (objections omitted).

12.     Samsung served an interrogatory on Headwater seeking, *inter alia*, "…the identity of each patent application to which any Asserted Patent claims priority and on an element-by-element basis, how each patent application provides §112 support for such claims of priority." Ex. B at 11.  Headwater did not cite any specific portion of any application or patent specification as constituting written description support in response to this interrogatory.  *id.* at 12.

13.     Samsung's technical expert opined that the '117 patent lacked written support for "map[ping] the application identifier in the message to a software process corresponding to the application identifier." Ex. E ¶¶ 1127–39.

14.     Headwater represented to the Court that it is not equating agents and applications:

THE COURT:  Well Mr. Wang, are you reading 'device agent' to cover what is ordinarily understood as an application . . . ?

MR. WANG:  I don't believe we are, Your Honor.

Ex. G at 33:12-23.

15.     The Court's claim construction order recognized that "device agents" and "apps" "clearly have different meanings." Dkt. 118 at 13.

16.     Nevertheless, the '117 patent also has no specific disclosure of mapping a "device agent" to a "software process."

## IV.    LEGAL STANDARD

"The 'written description' requirement implements the principle that a patent must describe the technology that is sought to be patented; the requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed." *Capon v. Eshhar*, 418 F.3d 1349, 1357 (Fed. Cir. 2005). As the Federal Circuit has recently explained, "possession of *the invention*" is shown "by describing *the invention*, with all its claimed limitations." *Impact Engine, Inc. v. Google LLC*, No. 2022-2291, 2024 WL 3287126, at *9 (Fed. Cir. July 3, 2024) (emphasis in original). In other words, "[t]he written description requirement is satisfied if the inventor conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrates that by disclosure in the specification of the patent." *Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019). Functionally, "[t]he written description doctrine prohibits new matter from entering into claim amendments, particularly during the continuation process," *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1379 (Fed. Cir. 2009), and acts as a check against the inventor overreaching, *see, e.g., Capon*, 418 F.3d at 1357 ("[T]he requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed.").

"While the written description requirement does not require that the specification recite the claimed invention in any particular way, pointing to an 'amalgam of disclosures' from which an artisan could have created the claimed invention does not satisfy this requirement." *Flash-Control, LLC v. Intel Corp.*, No. 2020-2141, 2021 WL 2944592, at *3 (Fed. Cir. July 14, 2021) (unreported). In practice, the written description analysis is confined to an "objective inquiry" into the "four corners" of the specification. *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336,

1351 (Fed. Cir. 2010). While the knowledge of a POSITA "may be used to inform what is actually in the specification," it may "not [] teach limitations that are not in the specification, even if those limitations would be rendered obvious by the disclosure in the specification." *Rivera v. Intl. Trade Comm'n*, 857 F.3d 1315, 1322 (Fed. Cir. 2017).

## V.    ARGUMENT

### A.    Claim 1 of the '117 patent requires "map[ping]" an "application identifier" to a "software process."

Claim 1 of the '117 patent, shown below, requires "map[ping] the application identifier in the message to a software process corresponding to the application identifier." Ex. A at claim 1.

> 1. A network system comprising:
> a plurality of device messaging agents, each executable on a respective one of a plurality of mobile end-user devices configured to exchange Internet data via a data connection to a wireless network; and
> a network message server
>    supporting a plurality of secure Internet data connections, each secure Internet data connection between the network message server and a respective one of the mobile end-user devices via a device data connection to a wireless network,
>    the network message server configured to receive, from each of a plurality of network application servers, multiple requests to transmit application data, each such request indicating a corresponding one of the mobile end-user devices and one of a plurality of applications,
>    the network message server to generate corresponding Internet data messages based on the requests, each such message containing at least one application identifier for an indicated application and application data corresponding to one of the requests, and
>    the network message server to transmit each of the generated Internet data messages to the device messaging agent located on the device indicated in the corresponding request, using the corresponding secure Internet data connection for the device indicated in the corresponding request;
> each device messaging agent, when executing,
>    to receive the Internet data messages from the secure Internet data connection corresponding to the device executing the device messaging agent, and
>    to, for each received message, map the application identifier in the message to a software process corresponding to the application identifier, and forward the application data in the message to the software process via a secure interprocess communication service.

*Id.* Claim 1 is generally directed to a "network system" for secure communications that comprises "device messaging agents" on devices and a network message server, wherein the network message server receives messages from other servers (i.e., network application servers) that are intended for transmission to the device and thereafter transmits those messages to the device messaging agent. *Id.* Each message transmitted from the message server to device contains an application identifier and application data. *Id.* After the messages are received at the device messaging agent, the agent must, for each received message, "map the application identifier in the message to a software process corresponding to the application identifier." *Id.*

## B. The '117 patent specification lacks written description support for the "map[ping]" limitation

The '117 patent is invalid under 35 U.S.C. § 112 for lack of written description because it claims undisclosed subject matter: the requirement that "for each received message, ***map the application identifier in the message to a software process corresponding to the application identifier***[.]" *Id.* Indeed, the specification contains no trace of this "mapping" concept, which appears solely in claim 1.

The Federal Circuit has found claims invalid for lack of written description where a limitation appears only in the claims with no corresponding specification description. *See Realtime Data, LLC v. Morgan Stanley*, 554 F. App'x 923, 936 (Fed. Cir. 2014) (unpublished) ("[T]he term 'content dependent data decompression' only appears in the claims themselves, which contain limited language and no descriptive content and hence fail to show that Realtime invented or had possession of content-based or content-dependent data decompression."); *see also A. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1355 (Fed. Cir. 2011) (holding claims directed to a handguard assembly for a firearm only supported at a single point, the barrel nut, were invalid for lack of a written description because the specification only described handguards supported at

7

both the barrel nut and receiver sleeve or at only the receiver sleeve).  In *Realtime*, the Federal Circuit upheld the district court's finding of invalidity under § 112 based on the patents' failure to "contain any definition" of "content dependent data decompression" and only mention of the claim term being in the claims themselves. *Realtime*, 554 F. App'x at 936–37.  Here, as in *Realtime*, the specification does not disclose or describe any "map[ping] the application identifier in the message to a software process corresponding to the application identifier" and the only mention of such a requirement is in claim 1.  Ex. A at claim 1.  Similarly, claim 1 of the '117 patent contains "limited language" and offers no "descriptive content" sufficient to demonstrate that the '117 patent inventor had possession of the invention as claimed.  *Realtime*, 554 F. App'x at 937.

Headwater may try to obfuscate the specification's written description deficiencies by pointing to the '117 patent's passing references to the general concept of "mapping," but a thorough inspection of the 163-column patent specification shows those references have nothing to do with the claimed "map[ping]" of an "application identifier" to a "corresponding software process."  Ex. E ¶ 1136; *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011) (upholding district court's finding that the "specification fails to describe the step of 'visually displaying customer number data' because the only descriptions of visual display in the specification involve information that was not entered by customers"); *see also Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 822 F. Supp. 2d 1020, 1027 (N.D. Cal. 2011), *subsequent determination*, 278 F.R.D. 505 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012) ("In evaluating whether the written description requirement has been satisfied, a court does not simply look to see whether the specification contains descriptions of the individual elements of the claim. Rather, a court must look to see whether there is a written description for the entirety of the claimed invention.").

First, the patent discloses "a mapping of **application** to **socket**" for purposes of "[t]raffic inspection." *See* Ex. A at 53:53-58. Headwater concedes this "mapping" disclosure is "different from what is in the claims." Ex. F at 245:19-249:9 ("I've also told you I think this is -- it discusses implementing a T-buffer at each socket connection and feeding the side traffic into a traffic flow analyzer which in combination with a mapping of application to socket provides much of the information listed above. ***That is a different aspect than what's in this claim***."). Indeed, this unrelated disclosure concerns mapping an "application," not an "application identifier," to a network "socket," which is not a "software process corresponding to the application identifier." Ex. E ¶ 1136 ("Also, the patent's disclosure of 'mapping of application to socket' does not pertain to the 'map[ping]' recited in the asserted claims. . . . Such a disclosure is wholly unrelated to mapping an application identifier to a software process, as the claim recites." (internal citation omitted)). A network socket is, instead, a connection used to facilitate network communications. *See* Ex. A at 94:6-9 ("The session layer resides above the transport layer, which is shown as a socket assignment and session management (e.g., basic TCP setup, TLS/SSL) layer."). Further, the specification explains that the type of "[t]raffic inspection" described in this excerpt, while involving network communications, is not for "secure communications"—i.e. Headwater's stated purpose of the asserted claims—but is instead for "service usage monitoring." *Compare id.* at 53:46-58 ("In some embodiments, some or all of the service usage monitoring occurs at the application layer. In some embodiments, the service monitor agent 1696 implements traffic inspection points between the applications and the networking stack application interface, such as the sockets API.") *with* Ex. D ¶ 52 ("The inventions claimed in the '117 Patent are directed to secure communications[.]").

Second, the patent references another type of mapping that is unrelated to the claimed

mapping: "a <u>mapping</u> (e.g., an association) of the **network apparatus settings** to the appropriate **device** 100 (service processor 115) **settings** can be determined to advantageously support the service usage monitoring, service usage control, service usage billing or service usage verification objectives being addressed." Ex. A at 79:2-8. This disclosed "mapping" is far afield from the claimed mapping of an "application identifier" to a "software process corresponding to the application identifier" because it is instead a mapping between network settings—not an application identifier—to device settings—not a software process—for purposes entirely unrelated to secure communications, the purported crux of the '117 patent. *See* Ex. E ¶ 1136 ("This disclosure of mapping merely concerns relating network apparatus settings to a device, not a mapping of an application identifier to a software process (which is what the claims recite).").

<u>Third</u>, the patent discloses that "**service usage limits**" may be "<u>mapped</u> to **usage limit settings** on the device service processor" or "to a number of **service profiles**." Ex. A at 79:12-21. Dr. Raleigh admitted this disclosure does not support the claimed "map[ping]" limitation. Indeed, when asked during his 30(b)(6) deposition whether this disclosure related to claim 1's recited "map[ping]," Dr. Raleigh stated "I'm not sure this [disclosure] is the best place to support this." Ex. F at 249:22-250:17. Indeed, this is not mapping an application identifier to a software process corresponding to the application identifier because (1) service usage limits are entirely unrelated to application identifiers; (2) neither usage limit settings nor service profiles constitute a software process corresponding to the application identifier; and (3) the disclosed mapping is in the context of limiting, billing for, and/or throttling network usage, which has nothing to do with the purported invention of the patent, i.e. "secure communications." *Compare* Ex. A at 79:15-21 (explaining that mapping service usage limits to usage limit settings allows for the "service usage [to] stop[] when the limit is hit or the user [to be] notified or the user [to be] billed" and mapping to service

profiles allows for "usage limit notification policies and/or service usage control, limitations or throttling policies") *with* Ex. D ¶ 52 ("The inventions claimed in the '117 Patent are directed to secure communications . . . .").

<u>Fourth</u>, the patent discloses "<u>mapping</u> the ***network profiles and/or policies*** to ***device*** 100 (e.g., service processor 115) ***profiles and/or policies***[.]" Ex. A at 80:47-63. Similarly, this disclosure is unrelated entirely to mapping an application identifier to a software process corresponding to that identifier. For starters, "network profiles and/or policies" are not application identifiers because they are used to control network access, not identify applications. Ex. E ¶ 1136; *see also* Ex. A at 163:15-17 (explaining that "network policies can require re-authorization every time a end point device attempts access"). Next, "device . . . profiles and/or policies" are not software processes corresponding to the application identifier but instead are device-wide settings such as "user privacy preferences/settings." Ex. A at 76:17-21 (explaining that a user may "configure the device policy for user privacy preferences/settings so that, for example, sensitive information (e.g., geo-location data, website history) is not communicated to the network without the user's approval"); *see also* Ex. E ¶ 1136 ("Second, 'device . . . profiles and/or policies' would not be understood by a POSITA to be a 'software process' let alone one 'corresponding to [an] application identifier.'"). Further, the specification shows that such mapping is not for "secure communications" but instead "for a simplified but coordinated response to monitoring, controlling and billing for service usage . . . ." *Compare* Ex. A at 80:47-81:3 *with* Ex. D ¶ 52 ("The inventions claimed in the '117 Patent are directed to secure communications . . . .").

Another indication that the patent specification lacks sufficient disclosure of "mapping" an application identifier to a "software process" is the fact that the specification (outside of the amended claims and abstract) never once uses the phrase "software process" in any context, much

11

less in a way that would indicate the inventor was in possession of the claimed subject matter. *See generally* Ex. A; *see Capon*, 418 F.3d at 1357 ("[T]he requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed.").

Further dooming the '117 patent is the fact both the claims and Abstract were introduced via amendment. Ex. C at HW103-00001429-32, HW103-00001428. Because "amended claims define the invention, . . . support for the invention must be found in the specification *as filed*, and [] the amended claims c[an]not be used to provide that support." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1329 (Fed. Cir. 2000); *see also In re Wright*, 866 F.2d 422, 424 (Fed.Cir.1989) ("When the scope of a claim has been changed by amendment in such a way as to justify an assertion that it is directed to a different invention than was the original claim, it is proper to inquire whether the newly claimed subject matter was described in the patent application when filed as the invention of the applicant. That is the essence of the so-called 'description requirement' of § 112, first paragraph."). Thus, Headwater may not point to either of the claims or Abstract as offering written description support because neither is part of the original specification.

While "in some instances, a patentee can rely on information that is 'well-known in the art' to satisfy written description," this is not such an instance. *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012). Headwater cannot credibly argue it believes the claimed mapping was sufficiently well-known in the art to avoid sufficient corresponding written description disclosure, because '117 inventor and Headwater executive, Dr. Raleigh, a POSITA himself, testified the claimed mapping was "an important limitation" and "absolutely not" well-known. Ex. F at 244:14-245:18.

Nor can Headwater salvage the '117 patent by equating the claimed "application" to an

12

"agent" (e.g., by claiming that an "application identifier" or "application ID" is the same as an "agent identifier" and is disclosed in the specification as being "map[ped]" to a "software process"). For starters, the patent does not disclose "mapping" an "agent identifier" to a software process and Headwater has never argued to the contrary. Second, both Headwater and this Court recognize that "device agents" and "apps" have different meanings. *See* Ex. G at 33:12-23; Dkt. 118 at 3. This is because the specification consistently distinguishes between applications, which are general-purpose applications on a device, and agents, which are used for facilitating the communication of messages. *See, e.g.*, Ex. A at 103:48-51 ("[T]he application interface agent 1693 is in communication with various applications, including a TCP application 1604, an IP application 1605, and a voice application 1602"); *see also id.* at 37:59-38:8; 38:65-19; Ex. E ¶ 1137 ("The patent's written description deficiencies cannot be remedied by equating 'applications' to 'agents.' The patent consistently distinguishes between those two distinct concepts, describing agents as software dedicated to implementing 'service control' and 'applications' as merely being general-purpose applications."). Figures in the specification also highlight the distinction between applications and agents:



FIG. 16

Ex. A at Fig. 16 (annotated); *see also id.* at Figs. 30-37.

Finally, even assuming, *arguendo*, that the specification separately disclosed an "application identifier" and "software process[es] corresponding to the application identifier" in addition to its unrelated disclosures of "map[ping],"—which it does not—the patent still lacks written description support because the specification never combines these disparate concepts. Indeed, "[a] patent owner cannot show written description support by picking and choosing claim elements from different embodiments that are never linked together in the specification." *Flash-Control,* 2021 WL 2944592, at *4. In upholding the district court's determination that no reasonable juror could find written description, the *Flash-Control* court explained "[t]he written description requirement is not met when, as here, the specification provides at best disparate disclosures that an artisan might have been able to combine in order to make the claimed invention." *Id.*; *see also Rivera*, 857 F.3d at 1322 ("The specification here does not teach a container with an integrated filter, and so, does not provide written description support for such a

14

container, even if that type of container might be rendered obvious by the specification."). Thus, even if Headwater were able to point the Court to distinct disclosures of "mapping," an "application identifier," and a "software process corresponding to the application identifier,"[1] such disclosures would not satisfy the written description requirement.

## VI.    CONCLUSION

Headwater introduced the claimed concept of "map[ping]" an "application identifier" to a "corresponding software process" many years after the filing of the alleged priority applications—in a transparent attempt to cover later-developed technology which it did not invent. The written description requirement exists, in part, to police such malfeasance.

Samsung respectfully requests that the Court grant its motion for summary judgment of invalidity.

---

[1] Notably, Headwater failed to point Samsung to any specific disclosures constituting written description support in its interrogatory responses.

Dated:  October 25, 2024                    Respectfully submitted,

                                    By:   */s/ Benjamin K. Thompson*
                                          Ruffin B. Cordell
                                          TX Bar No. 04820550
                                          Michael J. McKeon
                                          DC Bar No. 459780
                                          mckeon@fr.com
                                          Jared Hartzman
                                          DC Bar No. 1034255
                                          hartzman@fr.com
                                          **FISH & RICHARDSON P.C.**
                                          1000 Maine Avenue, SW, Ste 1000
                                          Washington, D.C. 20024
                                          Telephone: (202) 783-5070
                                          Facsimile: (202) 783-2331

                                          Thad C. Kodish
                                          GA Bar No. 427603
                                          tkodish@fr.com
                                          Benjamin K. Thompson
                                          GA Bar No. 633211
                                          bthompson@fr.com
                                          Jonathan B. Bright
                                          GA Bar No. 256953
                                          jbright@fr.com
                                          Christopher O. Green
                                          GA Bar No. 037617
                                          cgreen@fr.com
                                          Noah C. Graubart
                                          GA Bar No. 141862
                                          graubart@fr.com
                                          Sara C. Fish
                                          GA Bar No. 873853
                                          sfish@fr.com
                                          Katherine H. Reardon
                                          NY Bar No. 5196910
                                          reardon@fr.com
                                          Nicholas A. Gallo
                                          GA Bar No. 546590
                                          gallo@fr.com
                                          Vivian C. Keller (*pro hac vice*)
                                          GA Bar No. 651500
                                          keller@fr.com
                                          **FISH & RICHARDSON P.C.**

1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)
NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036

17

Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111

18

Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on October 25, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Benjamin K. Thompson*
Benjamin K. Thompson