# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:23-CV-00103-JRG-RSP |

**SAMSUNG'S OPPOSITION TO HEADWATER'S MOTION (DKT. 173) TO EXCLUDE OR STRIKE CERTAIN REBUTTAL EXPERT OPINIONS OF PHILIP W. KLINE**

**TABLE OF CONTENTS**

I.     LEGAL STANDARD ................................................................................................... 1

II.    ARGUMENT ................................................................................................................ 2

       A.    Mr. Kline is Qualified to Critique Dr. Groehn's Survey as It Affects Overall
             Economic Reliability of Dr. Groehn's Opinions ..................................................... 2

       B.    Mr. Kline's Econometric Opinions Are Distinct From, and Consistent With,
             Dr. Simonson and Dr. Perryman's Opinions. .......................................................... 6

III.   CONCLUSION ............................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases** ........................................................................................................................... **Page(s)**

*Brown v. Progressive Mountain Insurance Co.*,
  No. 3:21-cv-175-TCB, 2024 WL 3565314 (N.D. Ga July 26, 2024) ........................................5

*Convolve, Inc. v. Dell, Inc.*,
  No. 2:08-CV-244-CE, 2011 WL 13091767 (E.D. Tex. July 8, 2011) ......................................6

*Droplets, Inc. v. Yahoo! Inc.*,
  No. 12-CV-03733-JST, 2021 WL 9038355 (N.D. Cal. Aug. 9, 2021) ......................................5

*Marquette Transportation Co. Gulf-Inland, LLC v. Navigation Mar. Bulgarea*,
  No. CV 19-10927, 2022 WL 158681 (E.D. La. Jan. 18, 2022) ...............................................8

*Metaswitch Networks Ltd. v. Genband US LLC*,
  No. 2:14-CV-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ...............................2

*Niblock v. Univ. of Kentucky*,
  No. CV 5:19-394-KKC, 2023 WL 4842315 (E.D. Ky. July 28, 2023) ....................................5

*Senne v. Kansas City Royals Baseball Corp.*,
  591 F. Supp. 3d 453 (N.D. Cal. 2022) ......................................................................................5

*State of New York v. United Parcel Serv., Inc.*,
  No. 15-CV-1136 (KBF), 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) .................................5

*Thomas v. T.K. Stanley, Inc.*,
  No. 9-12-CV-158, 2014 WL 12814614 (E.D. Tex. Oct. 28, 2014) ......................................8, 9

*Williams v. Manitowoc Cranes, L.L.C.*,
  898 F.3d 607 (5th Cir. 2018) ....................................................................................................1

**Other Authorities**

Federal Rule of Evidence 403 ...........................................................................................8, 9

Federal Rule of Evidence 702 ........................................................................................1, 6, 8

## EXHIBIT INDEX AND NOTES

| Exhibit | Description |
|---|---|
| 1 | Excerpts from the Report of Dr. Andreas Groehn, dated Sept. 26, 2024 |
| 2 | Excerpts from the Deposition of Philip Kline, taken May 10, 2024 |
| 3 | Excerpts from the Deposition of Dr. Andreas Groehn, taken May 13, 2024 |
| 4 | Excerpts from the Deposition of Philip Kline, taken Oct. 17, 2024 |
| 5 | Excerpts from the Expert Report of M. Ray Perryman, Ph.D., dated Oct. 14, 2024 |

\* Emphasis added unless otherwise noted.

\*\* Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\* In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

Headwater voices no complaints with either the robustness or legitimacy of Mr. Kline's opinions. Instead, Headwater seeks to preclude Mr. Kline from discussing his legitimate criticisms of Headwater's expert, Dr. Groehn, by attacking Mr. Kline's qualifications. Mr. Kline's rebuttal opinions to Dr. Groehn are thoroughly supported by his 17 years of experience providing economic analysis of intellectual property, including ample experience using data from surveys and other similar modeling in his economic analysis. Headwater also argues that Mr. Kline's opinions are duplicative of Samsung's other experts, but a comparison reveals that Headwater is wrong. Samsung's experts provide separate opinions. Accordingly, none of Headwater's requests require exclusion of Mr. Kline's opinions under Fed. R. Evid. 702, but instead can all be properly tested on cross-examination.

## I. LEGAL STANDARD

"The district court has wide latitude when navigating the expert-qualification process," and the Fifth Circuit "will reverse only 'manifestly erroneous' determinations." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). "[N]o Fifth Circuit case [has] held that a district court abused its discretion by qualifying someone as an expert on the basis of an imprecise match between the expert's qualifications and the issue she planned to testify about. [Defendant's] conception of expertise could turn the expert-qualification process into a 'battle of labels' where expertise is defined so narrowly that qualified experts are irrationally excluded from testifying. . . . . We decline to adopt this approach. As long as there are 'sufficient indicia' that an individual will 'provide a reliable opinion' on a subject, a district court may qualify that individual as an expert." *Id.* (admitting opinion from "a mechanical engineer with a background in warnings and small-crane design" and allowing testimony "about warnings for a crawler crane" noting that "quibbles about qualifications are better characterized as arguments about the weight . . . not about

its admissibility"). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 874775, at *1 (E.D. Tex. Mar. 7, 2016) (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)).

## II. ARGUMENT

### A. Mr. Kline is Qualified to Critique Dr. Groehn's Survey as It Affects Overall Economic Reliability of Dr. Groehn's Opinions

Mr. Kline offers only rebuttal opinions to Dr. Groehn. Mr. Kline's opinions are well within the scope for which Mr. Kline's extensive academic and professional experience qualifies him. Dr. Groehn designed and conducted a conjoint survey, then provided a conjoint analysis using the survey data together with other tools such as regressions to calculate purported incremental values. Ex. 1 (Groehn Rep.) ¶¶ 21-25. Samsung offers Dr. Itamar Simonson's opinions to respond to Dr. Groehn's survey specifically, and further offers Mr. Kline's opinions to respond to Dr. Groehn's larger economic conjoint analysis, including the underlying survey data on which the conjoint analysis relies.[1] Headwater's motion does not identify any issue on which Mr. Kline is not qualified to opine or has gone beyond his qualifications.

At the outset, Mr. Kline is qualified. Mr. Kline has experience performing and using econometric analyses such as conjoint analysis and regressions in the intellectual property context, of which he has substantial experience. Dkt. 173-3 at Appen. A (CV). Based on this experience, Mr. Kline explains that the economic calculations output from Dr. Groehn's conjoint analysis is rendered unreliable by his underlying survey choices. As an economist who regularly uses survey

---

[1] Mr. Kline also provides opinions in response to some of Mr. Dell's opinions, which Headwater does not seek to exclude.

2

and other modeling data, Mr. Kline understands what attributes such data must have in order to be reliable for use in econometric analysis, such as conjoint analysis. As his deposition testimony and reports make readily clear, Mr. Kline has more than sufficient experience, evidence, and analysis to permit him to provide his opinions to the jury on issues of survey design that alter the reliability of Dr. Groehn's survey.

Mr. Kline has a degree in economics and is a certified public accountant. Dkt. 173-3 at Appendix A (CV). Mr. Kline has been working in the field of "intellectual property (IP) valuation, licensing support, litigation consulting, strategy,and transactional services" for "over 17 years." Dkt. 173-3 at ¶¶ 1-2; *see also* Ex. 2 (Kline 5/10/2024 Dep.) at 17:14-22. Mr. Kline studied "statistical sampling techniques – of which surveys are an example – in the course work for [his] degree in Economics" at University of Southern California. Dkt. 173-3 at ¶ 4; *see also* Ex. 4 (Kline 10/17/2024 Dep.) at 8:19-23; Ex. 2 (Kline 5/10/2024 Dep.) at 9:25-11:2; *see also* Ex. 3 (Groehn 5/13/2024 Dep.) at 211:9-24 (confirming Ph.D. not required to design or conduct surveys). During Mr. Kline's career working at different economic consulting firms focusing on intellectual property licensing, valuation, and IP damages, he has worked on projects where he "was involved with projects in which surveys were performed" and "advis[ed] as to the nature of the issues which we were interested in understanding in relation to valuing the IP and . . . ensuring that the data that would come out of the survey would be useful to the application to which it was to be applied." Ex. 4 (Kline 10/17/2024 Dep.) at 10:2-14; *see also* Ex. 2 (Kline 5/10/2024 Dep.) at 13:4-14:1. He has also advised clients on the appropriate use of consumer surveys. Ex. 4 (Kline 10/17/2024 Dep.) at 10:2-14, 11:18-25, 12:10-16; Ex. 2 (Kline 5/10/2024 Dep.) at 15:14-25. Mr. Kline was clear that, in several instances, he has "worked with others to develop consumer surveys," Ex. 2 (Kline 5/10/2024 Dep.) at 18:3-8, including advising on survey design "as someone who would be

using the survey data" that was output from the survey. *Id.* at 18:9-22. In fact, when Headwater specifically asked Mr. Kline about his qualifications during deposition, Mr. Kline confirmed "I have both academic and professional experience in the use of survey data and the limitations that come into play" with use of such data. *Id.* at 20:18-21:1. Mr. Kline also added that he has "worked with a lot of sampling techniques and sample data in the past," similar to the sample data sets generated by a conjoint survey. *Id.* at 46:5-12. Headwater appears unaware that econometrics regularly uses survey data because Headwater implies an academic background in economics would not have any relation to surveys. Not so, and Mr. Kline confirmed working with survey data was included even in his undergraduate course work. Dkt. 173 at 3-4; Ex. 2 (Kline 5/10/2024 Dep.) at 9:25-11:1. Moreover, Mr. Kline was readily able to answer all questions posed to him during deposition regarding requirements, use of, and attributes of conjoint survey and conjoint analysis. *See, e.g., id.* at 25:21-26:19, 31:6-33:15, 36:6-37:10, 47:10-49:5, 96:14-98:17, 121:20-123:11.

Mr. Kline does not go beyond these qualifications by critiquing aspects of Dr. Groehn's underlying survey and conjoint analysis that relies on the data from that survey. Mr. Kline has "both academic and professional experience in the use of survey data and the limitations that come into play" with use of such data. Ex. 2 (Kline 5/10/2024 Dep.) at 20:18-21:1. He opines on the "use" and "limitations" of Dr. Groehn's survey and conjoint analysis by critiquing the design aspects of the survey that impact the economic reliability, usability, and applicability of the data output from the survey and conjoint analysis.

For example, in Mr. Kline's critique of Dr. Groehn's failure to include key control variables from the conjoint survey, Mr. Kline observes that "many of the variables omitted from Dr. Groehn's data are known to **impact consumer demand**." Dkt. 173-3 at ¶ 59; *see also id.* ¶ 68

4

(discussing how "econometric techniques may be employed to adjust for the [population] data being skewed"). These underlying design errors by Dr. Groehn are relevant to Dr. Groehn's economic calculations based on the survey results, and therefore is appropriate for inclusion in Mr. Kline's opinions critiquing the economic/econometric reliability of Dr. Groehn's report.

Mr. Kline is distinguishable from the expert excluded in the class action matter of *Senne v. Kansas City Royals Baseball Corp.,* 591 F. Supp. 3d 453, 487 (N.D. Cal. 2022), where the offered expert directly "concedes that she is not an expert in 'survey design' or 'fielding' surveys," she could not "provide[ ] any details" as to her coursework on surveys, and she did not appear to be further supported by any other survey expert offered by defendants. *See also Droplets, Inc. v. Yahoo! Inc.,* No. 12-CV-03733-JST, 2021 WL 9038355, at *12 (N.D. Cal. Aug. 9, 2021) (excluding expert who opined on survey and human perception abilities "[b]ecause Dr. Mody specifically disclaims any expertise in these areas, the opinions are not admissible"); *Niblock v. Univ. of Kentucky*, No. CV 5:19-394-KKC, 2023 WL 4842315, at *4 (E.D. Ky. July 28, 2023) ("Lopiano's expertise in other areas of Title IX does not render her an expert on survey methodology—a fact she admitted.")  Headwater's citation to *State of New York v. United Parcel Serv., Inc.*, No. 15-CV-1136 (KBF), 2016 WL 4735368, at *4 (S.D.N.Y. Sept. 10, 2016), is similarly not applicable as the excluded expert "designed a consumer survey" and offered his own affirmative survey despite that he had "never before designed a consumer survey," which Mr. Kline does not do. *See also Brown v. Progressive Mountain Insurance Co.,* No. 3:21-cv-175-TCB, 2024 WL 3565314, at *8 (N.D. Ga July 26, 2024) (excluding surveys conducted by an expert who was "not sufficiently qualified in survey design or execution.")

Here, Mr. Kline certainly did not admit that he is not a survey expert, and he did not concede he is not qualified to offer the survey-related opinions in his report. In fact, this Court has

5

previously confirmed that econometric experts may similarly rely on and offer parallel survey-related opinions if supported by an additional survey expert. *See Convolve, Inc. v. Dell, Inc.*, No. 2:08-CV-244-CE, 2011 WL 13091767, at *1 (E.D. Tex. July 8, 2011) (limiting challenged econometrics expert Dr. Kaplan to survey opinions "identified by Convolve's survey expert, Dr. Gelb," but holding "Dr. Kaplan is not, however, precluded from relying on deficiencies identified by Dr. Gelb to opine that the alleged deficiencies render Dr. Leonard's econometric analysis unreliable or invalid.")

Accordingly, Headwater has not identified any issue on which Mr. Kline is not qualified or has gone beyond his area expertise. Thus, all of Mr. Kline's opinions should be permitted to be provided to the jury as "specialized knowledge [that] will help the trier of fact to understand the evidence." Fed. R. Evid. 702.

### B. Mr. Kline's Econometric Opinions Are Distinct From, and Consistent With, Dr. Simonson and Dr. Perryman's Opinions.

Headwater further complains that Mr. Kline's opinions are duplicative of Dr. Simonson's and Dr. Perryman's opinions. However, Headwater conflates each expert's opinion, noting only at a high level that they discuss related topics and glosses over the details.

Regarding Dr. Simonson, whom Headwater does not move to exclude on any basis, Headwater ignores that the experts are responding to different aspects of Dr. Groehn's multi-part conjoint report. Dr. Simonson and Mr. Kline each respond to aspects of Dr. Groehn's report based on their areas of expertise. Dr. Simonson opines on the survey from a surveyor's perspective. Mr. Kline opines on the flaws in the survey that impact the economic analysis (e.g., the regression analysis) that relies on the survey data from an econometrics-based perspective.

Tellingly, Headwater's motion only lists high-level aspects of Dr. Groehn's survey that both Mr. Kline and Dr. Simonson discuss, Dkt. 173 at 4—Headwater does not list the many

different survey-based or econometrics-based conclusions that Dr. Simonson and Mr. Kline each separately drew from these high-level aspects. For example, Headwater alleges Dr. Simonson and Mr. Kline proffer "duplicative and cumulative" opinions regarding the "control variables" or "decoy attributes" noted in Dr. Groehn's conjoint survey. Dkt. 173 at 4. Not so. Dr. Simonson's conclusion relates to survey design—that the failure to account for important attributes generates "focalism bias" or the artificial inflation of the importance of certain attributes that the survey sponsor emphasizes. Dkt. 173-5 at ¶ 38. Mr. Kline's opinions, however, relate to the econometric impact of Dr. Groehn's omission of key attributes—the "impact [on] consumer demand." Dkt. 173-3 at ¶ 59.

Similarly, Headwater further alleges cumulative opinions regarding "the way 'battery life' is defined and presented in the survey." Dkt. 173 at 4. However, Dr. Simonson explains from a survey perspective that Dr. Groehn's failure to clearly define 'battery life' and the relating levels creates two primary problems. First, it forces respondents to deal with the burdensome task of independently defining a subjective concept because battery life varies across different users and depends on the individual's usage patterns. Dkt. 173-5 at ¶¶ 22-28. Second, Dr. Simonson explains that when consumers are presented with meaningless, ill-defined levels like those used in Dr. Groehn's survey, respondents tend to replace the levels with mental shortcuts like 'low,' 'medium,' and 'high,' to simplify the task of the survey, undermining the reliability of the responses.

Mr. Kline, however, separately critiques Dr. Groehn's presentation of battery life from an economic and market perspective emphasizing that Dr. Groehn's survey does not present battery life in such a way as actual purchasers would encounter in the smartphone marketplace. Dkt. 173-3 at ¶¶ 75-91. Mr. Kline's opinion rests on several conjoint analysis articles (cited by Dr. Groehn

7

himself) and real-world marketing materials from smartphone manufacturers, including Samsung. *See, e.g., id.* at ¶¶ 82-83. These are not cumulative or duplicative opinions critiquing Dr. Groehn and each opinion is offered from their respective area of expertise to provide the jury with helpful information to weigh the credibility of Dr. Groehn's opinions.

Regarding Dr. Perryman, Headwater makes largely the same argument. However, Dr. Perryman's discussion of Mr. Kline and Dr. Simonson is simply to disclose his reliance on each of these experts respectively as part of the basis for his own opinions, as required by Federal Rule of Evidence 702. Ex. 5 (Perryman Report) ¶ 293 ("In my analysis of the opinions of Mr. Dell and Dr. Groehn, which are described below, I also relied upon the analysis by Professor Simonson and Mr. Kline."). Dr. Perryman does not intend to offer at trial any opinions duplicative of those of Mr. Kline or Dr. Simonson.

Headwater also claims that Mr. Kline's allegedly duplicative opinions violate Federal Rule of Evidence 403. Dkt. 173 at 5. "The Fifth Circuit instructs that '[t]he exclusion of evidence under Rule 403 should occur only sparingly' [and] a decision to reject 'expert testimony is the exception rather than the rule.'" *Marquette Transportation Co. Gulf-Inland, LLC v. Navigation Mar. Bulgarea*, No. CV 19-10927, 2022 WL 158681, at *4 (E.D. La. Jan. 18, 2022) (declining to exclude "overlapping" experts as cumulative, holding any concerns about cumulative evidence "can be addressed at trial"). Headwater cites to *Thomas v. T.K. Stanley, Inc.,* No. 9-12-CV-158, 2014 WL 12814614, at *2 (E.D. Tex. Oct. 28, 2014), which does not support its requested relief. In *Thomas*, a car accident case, the court excluded one of two different damages experts where each offered differing "alternative forecasts of the future" for some of the exact same sets of damages ("medical damages and household services"). The court excluded the second cumulative expert because "the methods that Stevens applied are inaccurate and unreliable," in addition to

8

finding his testimony unnecessarily cumulative and confusing under Fed. R. Evid. 403. *Id.* at *2. Here, Headwater does not dispute that no such conflict exists between the opinions of Samsung's experts, thus there is no risk of presenting unreliable expert opinion and no risk of confusion as was present in *Thomas*.

### III. CONCLUSION

For the foregoing reasons, Samsung respectfully submits the Court should deny Headwater's motion to exclude or strike portions of Mr. Kline's expert opinions.

Dated: November 4, 2024

Respectfully submitted,

By: */s/ Thomas H. Reger*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Jonathan B. Bright
GA Bar No. 256953
jbright@fr.com
Christopher O. Green
GA Bar No. 037617
cgreen@fr.com
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
Nicholas A. Gallo
GA Bar No. 546590
gallo@fr.com

Vivian C. Keller (*pro hac vice*)
GA Bar No. 651500
keller@fr.com
**FISH & RICHARDSON P.C.**

1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)
NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036

11

Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111

Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.**



**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 4, 2024. As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

                                            */s/ Thomas H. Reger*
                                            Thomas H. Reger