# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Case No. 2:23-CV-00103-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

### SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION
### TO STRIKE EXPERT REPORT OF STEPHEN E. DELL (DKT. NO. 186)

## EXHIBIT INDEX AND NOTES

| Exhibit | Description |
|---|---|
| 15 | Excerpts of the deposition transcript of Erik de la Iglesia, taken October 29, 2024 |
| 16 | Excerpts of the deposition transcript of Dr. Andreas Groehn, taken October 18, 2024 |
| 17 | Excerpts of the deposition transcript of Gregory Raleigh, Ph.D., taken June 14, 2024 |

\* Emphasis added unless otherwise noted.

Abbreviations/Definitions

| | |
|---|---|
| FCM | Firebase Cloud Messaging |
| MADA | Mobile Application Distribution Agreement |
| WADA | Watch Application Distribution Agreement |
| RSA | Revenue Sharing Agreement |
| ROIC | Return on Invested Capital |
| EMVR | Entire Market Value Rule |

Headwater, as "the proponent" of Mr. Dell's testimony, has not "demonstrate[d] to the court that it is more likely than not that" his testimony is reliable and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

### A. Mr. Dell's Apportionment Does Not Isolate the Incremental Benefit

Nothing in the combination of Mr. Dell's separate apportionment steps suffices to properly apportion to the incremental benefit of the asserted patents. Headwater's opposition argues all of Mr. Dell's apportionment steps add up to adequate apportionment, but tries to hide the key failure in his analysis: Mr. Dell relies on Mr. de la Iglesia's calculations that are not tailored to centralized push servers that "provided this combination of security, timeliness, application-specific communication, and battery savings." Dkt. 206 at 3. Instead, Headwater's experts have cherry picked only one portion of this alleged benefit ("battery savings"). Battery savings of a centralized push notification server does not represent the actual isolated footprint of the asserted patents because centralized push servers existed before the asserted patents and those earlier servers provided some degree of battery savings. Dkt. 211-2 (Foster Opening Rpt.) ¶¶75-78; *see also* Ex. 15 (de la Iglesia Dep.) Vol. 1 at 251:15-252:5 (agreeing "it was known that applications could be deployed in a -- in a push configuration or to utilize -- to utilize application server pushes with a -- with a kept-alive control connection"). Therefore, despite acknowledging that the proper footprint of the asserted patents' invention should be much more narrowly limited to only centralized push servers "provid[ing] this **combination** of security, timeliness, application-specific communication, and battery savings," Dkt. 206 at 3 (emphasis added), Headwater admits that Mr. de la Iglesia's calculations ignore many aspects of the alleged invention's benefits. Headwater does not dispute that Mr. de la Iglesia's analysis was only "able to determine the specific battery savings" as compared to a non-centralized push/pull approach, Dkt. 206 at 3, and that Dr. Groehn

1

likewise only "estimate[s] the dollar value to Samsung of this battery savings." *Id.*[1] Therefore, Mr. Dell's apportionment, which relies primarily on Mr. de la Iglesia to apportion to the incremental benefit of the asserted patents, only adjusts for general battery savings irrespective of security, timeliness, and application-specific communications. This is not "evidence tending to separate or apportion ... the patentee's damages between the patented feature and the unpatented features," *Finjan LLC v. SonicWall, Inc.,* 84 F.4th 963, 976 (Fed. Cir. 2023), nor "carefully tie[d] proof of damages to the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1327 (Fed. Cir. 2014).

Headwater waves its hands at a second "extensive separate analysis" by Mr. Dell arguing that this "separate analysis" is what accounts for these other specific benefits of the asserted patents ("security, timeliness, and application-specific communications"). But, Mr. Dell discusses only Samsung's use of push notifications in its marketing efforts, conflating push notifications generally with the specific incremental benefits of the asserted patents. Dkt. 206 at 3 (citing Dell Rpt. ¶¶ 250-260). Push notifications are not "the features and functionalities enabled by the Patents at Issue" as Mr. Dell states. Dkt. 186-1 (Dell Rep.) ¶ 252. Dr. Raleigh admitted he did not invent push notifications, and Mr. de la Iglesia agrees push notifications were known prior art. Ex. 17 (Raleigh Dep. 6/14/24) at 31:5-22; Ex. 15 (de la Iglesia Dep.) Vol. 1 at 241:20-25. Mr. Dell also appears to concede that the incremental benefits of the asserted patents are different from, and smaller than, his discussion of push notifications, saying that the "economic benefits discussed are driven by the push notification feature which is ***facilitated by*** the Patents at Issue." Dkt. 186-1 ¶ 260 (emphasis added). Nothing in Mr. Dell's discussion of Samsung marketing use of push

---

[1] Dr. Groehn admits his analysis was conducted for another case, Ex. 16 (Groehn Dep.) at 49:5-17, and was not tailored to benefits offered by the asserted patents here, contrary to Headwater's argument. Dkt. 206 at 3-4. Dr. Groehn's analysis (if admissible) only relates to battery savings divorced from all other aspects of the alleged benefits.

2

notifications explains whether or how such push notifications were specifically providing Samsung with any of the additional alleged incremental benefits otherwise missing from Mr. Dell's analysis, "security, timeliness, and application-specific communications." Therefore, Mr. Dell's analysis of Samsung's marketing materials mentioning push notifications (Dkt. 186-1 ¶¶ 250-260) does not attempt to isolate the value of any benefits of the allegedly infringing system that were not previously available in centralized push prior art systems.

The remaining steps of Mr. Dell's apportionment are independently flawed, as described in Samsung's opening brief. In particular, Mr. Dell's use of Samsung's ROIC remains unreliable and unhelpful because Mr. Dell used public information to estimate Samsung's ROIC, without confirming with any actual Samsung-produced data, let alone financials tailored to any relevant subsidiary or business unit within Samsung. Dkt. 186-1, Dell Rpt., Attach. 12 (citing https://www.gurufocus.com/term/roic/SSNLF). He offers no authentication or corroboration of the calculations he took from www.gurufocus.com. Nor does Headwater have any evidence indicating Samsung had previously used or was likely to use ROIC measurements during patent license negotiations or that use was customary in this industry for patent licenses. Dkt. 206-7, *WAPP Tech Ltd.*, Dkt. 399, at * 10 (E.D. Tex. Feb. 8, 2021) ("The Federal Circuit has upheld profit splits based ***on custom in the industry*** and ***history*** of prior licenses, both of which seem analogous to ROIC, which is a customary rate of return on investments. *Finjan*, 626 F.3d at 1210."). Mr. Dell has not apportioned his damages calculations to the footprint of the asserted patent. Mr. Dell then fails to apply any further reasonably tailored apportionment to accused smartwatches.

### B.   Opinions About the Non Arms-Length ▓▓▓ Agreements Should Be Excluded

The ▓▓▓ Agreement was never an arms-length transaction, thus it is not appropriate for use for the hypothetical negotiation, which "is an ***arms-length*** negotiation between a willing licensor and a willing licensee." *Vectura Ltd. v. GlaxoSmithKline LLC*, No. CV 16-638-RGA,

3

2019 WL 1352767, at *3 (D. Del. Mar. 26, 2019) (emphasis added). The Court has held ▮▮▮ *Headwater Research LLC v. Samsung Elecs. Co., Ltd.,* No. 2:22-cv-00422-JRG-RSP, 2024 WL 1808601 at *2 (E.D. Tex. Apr. 25, 2024)). Headwater's attempt to distinguish ▮▮▮ who the Court has likewise already found shared a close working relationship. *Id.* ▮▮▮").

In addition to not being arms-length, Mr. Dell does not use the ▮ Agreement. Headwater argues Mr. Dell "does rely on," D.I. 206 at 10, the licenses because he observes in one paragraph that "Headwater would enter the hypothetical negotiation informed by these royalty rates." Dkt. 186-1 (Dell Rep) at ¶338. Nowhere does Mr. Dell use the ▮ or ▮ royalty rates from these ▮▮▮ agreements in his calculations. Permitting Mr. Dell to tell the jury about ▮▮▮ would only be unduly prejudicial and not tied to this case. *See Albritton v. Acclarent, Inc.*, No. 3:16-CV-03340-M, 2020 WL 11627275, at *20 (N.D. Tex. Feb. 28, 2020) (excluding prejudicial evidence of company-wide purchase price, full portfolio that included single patent in suit, noting "there is only a tenuous connection between … purchase price and the value of the '412 Patent's technology…. The risk of unfair prejudice from this evidence substantially outweighs any probative value" (citing *LaserDynamics*, 694 F.3d 51, 78 (Fed. Cir. 2012)).

    **C.**    **Mr. Dell Does Not Connect The ▮▮▮ Agreements to The Accused Features**

As noted, Samsung moves to exclude all opinions from Mr. Dell regarding the Samsung-▮▮▮, and ▮s, in both his opening and supplemental reports. Despite having

4

two opportunities to opine on these agreements and substantial additional (irrelevant) discovery, Mr. Dell still fails to connect these agreements in any admissible way to the alleged infringement ███████████████████. Headwater claims these agreements become relevant because Mr. Dell meaninglessly jammed discussion of them into various *Georgia-Pacific* factors. Labeling his discussion as relevant to certain *GP* factors does not make it so. Nothing in these agreements, payments, or negotiations relates directly to any discussed or perceived value of the accused feature. ████ ████████████████████████████████████████. Dkt. 186-12 at 83:2-24. Headwater pursued extensive discovery on these agreements, yet now that Samsung has provided it, Headwater wants to ignore the proof that they were irrelevant all along.

Headwater's brief now tries to present the ██████ agreements effectively as an improper form of the EMVR that will prejudicially skew the damages horizon. Headwater admits the agreements (which themselves cover ████████████████████████████████████████ ████████████████████████) cover a ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████." Dkt. 206 at 13. But, Headwater goes on to claim that all of the revenue exchanged in relation to ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████. Or, at least, Headwater plainly hopes the jury will make this incorrect assumption. Headwater's attempt to mislead and prejudice the jury with large dollar figures relating to these agreements should be struck for the same reasons this Court excluded evidence in *Finesse Wireless, LLC v. AT&T Mobility, LLC*. No. 2:21-cv-00316-JRG-RSP, 2022 WL 17875791, at *9 (E.D. Tex. Dec. 21, 2022) (granting motion strike references to total revenues "skews the damages horizon for the jury." (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)).

5

Dated: November 12, 2024                Respectfully submitted,

By: */s/Thomas H. Reger II*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Jonathan B. Bright
GA Bar No. 256953
jbright@fr.com
Christopher O. Green
GA Bar No. 037617
cgreen@fr.com
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
Nicholas A. Gallo
GA Bar No. 546590
gallo@fr.com
Vivian C. Keller (*pro hac vice*)
GA Bar No. 651500
keller@fr.com
**FISH & RICHARDSON P.C.**

6

1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)
NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036

Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.**

9



### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 12, 2024. As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

                                          */s/ Sara C. Fish*
                                          Sara C. Fish