**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

HEADWATER RESEARCH LLC,

        *Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD and
SAMSUNG ELECTRONICS AMERICA, INC.,

        *Defendants*.

Case No. 2:23-CV-00103-JRG-RSP

**SAMSUNG'S OPPOSITION TO HEADWATER'S MOTION (DKT. 176) TO EXCLUDE
<u>CERTAIN REBUTTAL EXPERT OPINIONS OF IAN FOSTER, PH.D.</u>**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 1

    A.  Dr. Foster's Opinions Regarding the July 2001 WAP Overview Are Based on Disclosures in Samsung's Invalidity Contentions................................... 1

    B.  Dr. Foster's Obviousness Combinations Were Disclosed in Samsung's Invalidity Contentions................................................................................. 3

    C.  Dr. Foster's Non-Infringing Alternatives Opinions Should Not Be Stricken......... 6

        1.  Dr. Foster's Non-Infringing Alternatives Were Properly Disclosed .......... 6

        2.  The Factfinder May Conclude that Dr. Foster's Non-Infringing Alternatives Were Commercially Available ................................................ 11

        3.  The Factfinder May Conclude that Dr. Foster's Non-Infringing Alternatives Were Commercially Acceptable. ......................................... 14

III.  CONCLUSION.................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Allergan, Inc. v. Teva Pharms. USA, Inc.*,
 Case No. 2:15-CV-1455-WCB, 2017 U.S. Dist. LEXIS 225041
 (E.D. Tex. Aug. 3, 2017) ............................................................................. 2

*ART+COM Innovationpool GmbH v. Google Inc.*,
 155 F.Supp.3d 489 (D. Del. Apr. 28, 2016) ...................................................... 9

*Astrazeneca AB v. Apotex Corp.*,
 782 F.3d 1324 (Fed. Cir. 2015) ..................................................................... 14

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
 Case No. 2:22-cv-00343-JRG-RSP, Dkt. 247 (E.D. Tex. Mar. 26, 2024) ...................... 14, 15

*Daubert v. Merrell Dow Pharms.*,
 509 U.S. 579 (1993) ..................................................................................... 12

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*,
 Case No. 2:15-CV-00037-RWS-RSP, 2017 U.S. Dist. LEXIS 94495
 (E.D. Tex. June 20, 2017) ............................................................................. 12

*Fractus, S.A. v. ADT LLC*,
 Case No. 2:22-CV-00412-JRG, Dkt. 211-1 (E.D. Tex. June 17, 2024) .................... 9

*Genband US LLC v. Metaswitch Networks Corp.*,
 Case No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 2652
 (E.D. Tex. Jan. 8, 2016) ............................................................................. 6, 9

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
 185 F.3d 1341 (Fed. Cir. 1999) ..................................................................... 12

*Gree, Inc. v. Supercell Oy*,
 Case No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 220421
 (E.D. Tex. Aug. 14, 2020) ............................................................................. 2

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
 Case No. 2:15-CV-01366-JRG, 2021 U.S. Dist. LEXIS 16909
 (E.D. Tex. Jan. 29, 2021) ............................................................................. 6

*Realtime Data LLC v. EchoStar Corp.*,
 Case No. 6:17-CV-00084-JDL, 2018 U.S. Dist. LEXIS 202523
 (E.D. Tex. Nov. 15, 2018) ............................................................................. 9

*Realtime Data, LLC v. Packeteer, Inc.*,
No. 6:08-CV-144-LED-JDL, 2009 U.S. Dist. LEXIS 114207
(E.D. Tex. Dec. 8, 2009) ............................................................................................5

*Riles v. Shell Exploration & Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002) ..............................................................................14

*Scrum All., Inc. v. Scrum Inc.*,
Case No. 4:20-cv-227, 2021 U.S. Dist. LEXIS 82677 ............................................11

*SSL Servs., LLC v. Citrix Sys., Inc.*,
Case No. 2:08-CV-158-JRG, 2012 U.S. Dist. LEXIS 76965
(E.D. Tex. June 4, 2012) ..........................................................................................13

*Tinnus Enters., LLC v. Telebrands Corp.*,
Case No. 6:17-CV-00170-RWS, Dkt. 462 (E.D. Tex. Oct. 31, 2018).......................6

*White Oak Glob. Advisors LLC v. Weder*,
Case No. CIV-17-0756-J, 2020 U.S. Dist. LEXIS 251277
(W.D. Okla. Apr. 10, 2020) .....................................................................................11

**Other Authorities**

Fed. R. Civ. Proc. 26(e)(1)......................................................................................7

## EXHIBIT INDEX AND NOTES

| Exhibit | Description |
|---------|-------------|
| 1 | Exhibit B-18 to Defendants' Invalidity Contentions U.S. Patent No. 9,198,117 |
| 2 | Exhibit C-18 to Defendants' Invalidity Contentions U.S. Patent No. 9,615,192 |
| 3 | Excerpts from the Expert Report of Erik de la Iglesia, dated September 26, 2024 |
| 4 | IPR2024-00003 Petition for *Inter Partes* Review |
| 5 | Excerpts from the Rebuttal Expert Report of Erik de la Iglesia, dated Oct. 14, 2024 |
| 6 | Dkt. 211-1, *Fractus, S.A. v. ADT LLC*, 2:22-CV-00412-JRG (E.D. Tex. June 17, 2024) |
| 7 | Excerpts from Plaintiff Headwater Research LLC's Fifth (Sixth) Supplemental Objections and Responses to Defendants' First Set of Interrogatories (Nos. 1-14), dated September 24, 2024 |
| 8 | Excerpts from the Deposition of Erik de la Iglesia, taken Oct. 30, 2024 |
| 9 | Excerpts from the Expert Report of M. Ray Perryman, Ph.D., dated Oct. 14, 2024 |
| 10 | Excerpts from the Opening Expert Report of Ian Foster, Ph.D., dated September 26, 2024 |

\* Emphasis added unless otherwise noted.

\*\* Form objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\* In this brief, "Headwater" refers to Plaintiff and its purported predecessors.

## I.     INTRODUCTION

Headwater's motion to strike certain opinions within Dr. Foster's expert reports should be denied.  First, Headwater's assertion that the "Wireless Application Protocol Push Architecture Overview" constitutes a "new theory of invalidity" is incorrect.  Headwater complains only that Dr. Foster cites a 2001 version of this document rather than the 1999 version.  Yet, invalidity contentions are about disclosing theories—and Samsung's invalidity contentions did just that. Samsung charted the entire "WAP" standard—as well as another prior art system based on WAP. Second, Headwater's assertion that Samsung did not disclose particular "combinations of prior art references" is also incorrect and ignores where the invalidity contentions specifically called out each challenged reference as combinable with other references.

Third, Samsung's non-infringing alternatives were disclosed before the close of fact discovery.  Headwater's main complaint is that, on the last day of discovery, Samsung supplemented its interrogatory responses to add more detail to them.  This was not gamesmanship, as much of Samsung's supplement was driven by insights about how Headwater intended to interpret its patents for purposes of infringement.  The rest of Headwater's attacks regarding Dr. Foster's non-infringing alternatives go to weight, not admissibility.  In sum, nothing in Headwater's motion requires exclusion of any of Dr. Foster's opinions.

## II.     ARGUMENT

### A.     Dr. Foster's Opinions Regarding the July 2001 WAP Overview Are Based on Disclosures in Samsung's Invalidity Contentions

Headwater has been aware of Samsung's obviousness theories involving the WAP standard since the November 2023 invalidity contentions were served.  Headwater acknowledges these contentions provided entire claim charts based on the WAP technical standard as well as the specific WAP Push Architectural Overview portion of this standard.  *See* Dkt. 176 at 4; Dkt. 176-

5 at 1; Dkt. 176-6 at 1.  Headwater complains only that Dr. Foster's report cited the July 2001 version of this document, whereas the invalidity contentions cited to the November 1999 version.[1] *See* Dkt. 176 at 4.  The only distinction Headwater identifies as relevant between these two documents is that the July 2001 version provides a specific reference to "device identifiers," whereas the November 1999 version does not.  *See id.*

Dr. Foster's citations to the July 2001 WAP Overview to describe "device addresses" present no new theory of invalidity.  *See Allergan, Inc. v. Teva Pharms. USA, Inc.*, Case No. 2:15-CV-1455-WCB, 2017 U.S. Dist. LEXIS 225041, at *17-20 (E.D. Tex. Aug. 3, 2017) ("[P]atent local rules require disclosure of specific invalidity ***theories***, but do not compel disclosure of all evidence relevant to proof of those theories.") (emphasis added) (citing N.D. Cal. authority). Samsung's WAP-based ground is based on the WAP standard, including as it existed after July 2001.  *See* Dkt. 176-5; Dkt. 176-6.  The contentions disclosed numerous WAP documents postdating this date, including "WAP Wireless Telephony Application," "WAP Service Indication," and "WAP 2.0 Technical White Paper."  Dkt. 176-5 at 1-2; Dkt. 176-6 at 1-2.  The July 2001 WAP Overview merely provides implementation detail regarding how WAP enabled the routing of messages to particular devices, and thus forms part of Samsung's already-disclosed theory.  Thus, even if the "device identifier" feature was not introduced until July 2001, it still forms a part of the ground already disclosed, in chart form, to Headwater.  *See also Gree, Inc. v. Supercell Oy*, Case No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 220421, at *5 (E.D. Tex. Aug. 14, 2020) ("[T]hose items are mere evidence supporting his opinions, as opposed to being

---

[1] Notably, a day before its infringement report, Headwater produced thousands of documents that were not produced with its infringement contentions.  Bright Decl. ¶ 2.

invalidating prior art references themselves").[2]  Likewise, the "device identifier" feature was disclosed as part Samsung's OpenWave prior art ground.  OpenWave—a prior art system that Headwater does not challenge as undisclosed—is based on WAP and operated after 2001.  *See e.g.*, Ex. 1 at 4 (stating that the OpenWave MAG Push Proxy Gateway "[p]owers Sprint WAP 2.0 service"); *id.* at 47-51 (disclosing how the OpenWave system disclosed requests "indicating a corresponding one of the mobile end-user devices"); *see also* Ex. 2 at 5, 28-32.  "[D]evice IP address[es]" were explicitly disclosed as part of a push message flow in a WAP-compliant OpenWave system to push a message to an end-user device.  *See* Ex. 1 at 13-14; Ex. 2 at 13-14. Samsung's invalidity contentions also include citations to OpenWave "manag[ing] the pushing of a notification to the WAP browser/Mobile Terminal" and a "WAP Gateway" "manag[ing] the resulting 'pull' transaction."  Ex. 1 at 8; *see id.* at 13-15; *see also* Ex. 2 at 8, 13-15.

In any event, Headwater's motion is predicated on the incorrect assumption that the November 8, 1999 "WAP Architectural Overview" "contains no disclosure about addressing clients, addressing clients with 'device addresses,' or addressing clients with 'device identifiers.'" Dkt. 176 at 4 (citing to Dkt. 176-7).  However, this document explains that addressing a Push transaction can be done on ***a device level***, a user level, and an application level.  *See* Dkt. 176-7 at 21.  Thus, Headwater was on notice of the WAP "device identifier" feature as an invalidity theory.

### B. Dr. Foster's Obviousness Combinations Were Disclosed in Samsung's Invalidity Contentions

Headwater challenges five obviousness combinations as to the '117 and/or '192 Patents as allegedly nondisclosed in Samsung's invalidity contentions: (1) GTalkService combined with

---

[2] Headwater's expert, Mr. de la Iglesia, has also confirmed that "device identifiers" were known in the prior art.  *See* Ex. 3 at ¶ 35 (acknowledging that ██████████████████████████ ███████████████████████████████████████████████████████████████").

WAP, (2) GTalkService combined with Kalibjian, (3) OpenWave combined with Kalibjian, (4) OpenWave combined with WAP, and (5) OpenWave combined with Houghton).  Dkt. 176 at 5-6. Headwater complains that because each of these references were designated as "primary" references (i.e., by being charted for many limitations), it had no adequate notice that Samsung intended to combine one primary reference with another.  *See id.* at 6 (discussing "grouping" approach).  However, Samsung's contentions provided particularized notice of each of these combinations in compliance with the Local Patent Rules by calling out each of WAP, Kalibjian, and Houghton as a reference that a POSITA would combine with other primary references, including GTalkService and/or OpenWave.

**Challenged Grounds (2) and (3) Were Disclosed:** Samsung's invalidity contentions explicitly called out Kalibjian as a reference that could be combined with any of the identified "primary references," including GTalkService or OpenWave, to achieve certain security benefits.

> data usage when communicating over a network.  Accordingly, a POSITA would seek to combine or modify the disclosure of any given primary and secondary references to achieve those goals, and would have readily understood that doing so could increase device/network performance, improve user interactions and/or satisfaction, and reduce cost.  *See, e.g.,* Houghton at Abstract ("This mobile-initiated permanent connection allows the server to pass or push messages from outside the operator's firewall to the mobile terminal at any time."); TS-23.140 at 17 ("Figure 2 shows that multimedia messaging may encompass many different network types. . . . This approach enables messaging in 2G and 3G wireless networks to be compatible with messaging systems found on the Internet."); Chickering at Abstract; Herzog at Abstract (disclosing facilitation of client-server communications through gateway); Kalibjian at [0001]-[0004] (disclosing improvements in security); Lee at [0008] (providing integrated push service); Munson at 2:3-9;

*See* Dkt. 176-4 at 37.[3]

---

[3] Kalibjian was also cited in combination with other references in Samsung's IPR petition (IPR2024-00003), filed November 17, 2023. Ex. 4.

**Challenged Grounds (1), (4), and (5) Were Disclosed:** Samsung's invalidity contentions explicitly called out WAP and Houghton as references that could be combined with any of the identified "primary references," including GTalkService or OpenWave, to achieve benefits related to encryption. The contentions literally identified "Google Push" (i.e., GTalkService) right next to the WAP reference (Challenged Combination 1 is GTalkService combined with WAP):

> **b.    '117 patent**
>
> To the extent that any primary reference is deemed not to anticipate a claim for failing to teach a secure Internet data connections, it would have been obvious to a POSITA at the time of the invention to combine the primary reference with any of the prior art that discloses encryption protocols. For example, as demonstrated with respect to limitations [1a], [1b], [1c], [1d], [1e], [1f], [1g], [4] in the attached exhibits, several prior art references, including at least TS-23.140, Houghton, WAP, Google Push, Ogawa, Cohen, Tyhurst, Lu, Herzog, Lonnfors, TLS, SSL, and OMA, disclose this limitation. *See* Exs. B-B at. It would have been obvious to a person skilled in the art to incorporate such functionality, components, and/or features. For example, a POSITA would understand that each of these references generally relates to networking and/or client-server

Dkt. 176-4 at 48 ('117 Patent); *id.* at 55-56 (similar disclosure for '192 Patent). The invalidity contentions further called out Houghton as a reference to combine with the primary references because it provides the benefits of conserving power, reducing network congestion, providing timely updates, and reducing data usage. *See* Dkt. 176-4 at 37-38.

**Samsung's Invalidity Contentions Satisfied the Notice Requirement:**  Unlike the defendant in *Realtime Data*, Samsung's contentions did more than merely reserve "the right to combine any charted prior art reference[]" with another. *See Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-CV-144-LED-JDL, 2009 U.S. Dist. LEXIS 114207, at *22 (E.D. Tex. Dec. 8, 2009). As demonstrated above, the contentions specifically called out each of WAP, Kalibjian, and Houghton as a reference appropriate to be combined with another primary reference, including

GTalkService and OpenWave.  Headwater apparently ignored these particularized disclosures.[4] Even if Samsung's contentions resulted in "a vast number of possible combinations" that does not mean Headwater lacked notice of these combinations.  *See Personalized Media Commc'ns, LLC v. Apple, Inc.*, Case No. 2:15-CV-01366-JRG, 2021 U.S. Dist. LEXIS 16909, at *12-13 (E.D. Tex. Jan. 29, 2021).

### C.  Dr. Foster's Non-Infringing Alternatives Opinions Should Not Be Stricken

Each of Headwater's arguments to strike Dr. Foster's opinions and preclude him from offering testimony related to non-infringing alternatives ("NIAs") fails.

### 1.    Dr. Foster's Non-Infringing Alternatives Were Properly Disclosed

The Court should deny Headwater's motion to strike Dr. Foster's opening report opinions regarding NIAs because these NIAs were disclosed in discovery.  *See* Dkt. 176 at 9-12. Interrogatory responses need not include the full content of expert opinions, but rather provide notice of them, which Samsung's NIA interrogatory responses achieved.  *See Genband US LLC v. Metaswitch Networks Corp.*, Case No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 2652, at *10 (E.D. Tex. Jan. 8, 2016) (plaintiff "was not entitled to the detailed analyses of [defendant's] experts prior to the expert disclosure deadline"); *Tinnus Enters., LLC v. Telebrands Corp.*, Case No. 6:17-CV-00170-RWS, Dkt. 462, at 5-6 (E.D. Tex. Oct. 31, 2018) (refusing to strike opinions regarding NIAs based on an alternative product where the alternative product was disclosed during fact

---

[4] Headwater's claim that there "is no time for Headwater to reopen discovery to address Samsung's new invalidity theories" only indicates its own failure to make use of the extended discovery period. Dkt. 176 at 8.  Further, Headwater's technical expert already addressed these grounds in his rebuttal expert report, and Headwater is scheduled to depose Dr. Foster this week, where Dr. Foster can be questioned on these specific grounds.  Ex. 5 at i-xi (addressing these grounds in §§ 3, 5); Bright Decl. ¶ 3.

discovery).  With trivial exceptions,[5] Headwater does not dispute **whether** each NIA was disclosed during fact discovery (they were).  Headwater challenges only the **timing** of those disclosures as allegedly being provided only on the last day of discovery.  However, Samsung has long put Headwater on notice of its NIAs, and Headwater provides inadequate justification for how the timing of Samsung's disclosures requires any relief from the Court.

Most of the challenged NIAs are push or pull systems disclosed early in discovery.  Headwater does not dispute that Samsung timely disclosed (1) prior art "push" systems (including those charted or cited in Samsung's invalidity contentions like Google [GTalkServices], OpenWave [Mobile Access Gateway], and Microsoft [ActiveSync]) and (2) "'pull' systems in which a mobile device requested data from a server" in its August 19, 2024 interrogatory responses.  Dkt. 176 at 10; Dkt. 176-8 at 78 ("Such prior art systems [including those cited in Samsung's invalidity contentions] would constitute noninfringing alternatives.").  Not once did Headwater complain about the sufficiency of Samsung's disclosure or seek more information about these NIAs.  As best as Samsung understood Headwater's vague infringement contentions (the sufficiency of which Samsung has repeatedly complained about), the purported "benefit" of

---

[5] The September 21, 2024 **corrected** supplemental response that Headwater complains about was served at about 1:12 AM CT—barely an hour after fact discovery closed—and added merely a sentence inadvertently omitted from the interrogatory responses served the day before.  *See* Bright Decl. ¶ 4; Dkt. 176 at 11; Dkt. 176-10; Fed. R. Civ. Proc. 26(e)(1) ("A party who has…responded to an interrogatory…must supplement or correct its disclosure or response…in a timely manner if the party learns that…the disclosure or response is incomplete or incorrect.").  Headwater points to no authority striking an NIA based on such circumstances.  Headwater also omits that it similarly served a corrected version of its technical expert report 14 minutes after the deadline and that it served its entire damages expert report almost two hours after the deadline.  Bright Decl. ¶ 5.

Headwater also briefly characterizes Dr. Foster's opinion about modifying the Google, OpenWave, and Microsoft systems as "new," but Headwater's own motion contradicts this assertion.  *See* Dkt. 176 at 11.  A mere few lines before this characterization, the motion acknowledges that these exact modifications were provided, almost verbatim, in Samsung's responses to Interrogatory No. 17.  *See id.*, lines 4-7; Dkt. 176-9 at 79-80; Dkt. 176-10 at 79.

Headwater's Asserted Patents was simply providing application server information to mobile devices.  Prior art push and pull systems do that.

Samsung's final supplemental response to Headwater's First Set of Interrogatories provide additional detail and examples of push and pull systems that constitute NIAs.  As explained both in that supplement and Dr. Foster's opening report—Colligan, non-federalized push notification systems, MQTT/MQTT-S, Knox Polling, Google's GTalkService Platform, OpenWave, and Microsoft all constitute alternative techniques for providing information from application servers to mobile devices through push or pull techniques.  *See* Ex. 10 at ¶¶ 1156-1182.  These specific examples were provided based on educated guesses about what Headwater would contend are the Asserted Patents' benefits—i.e., marketing, network congestion, battery consumption, or policy updates—since it was not at all evident from the patents themselves or their claims.  *See id.*

The NIAs that are modifications to the existing push notification systems—i.e., unencrypted communications (*id.* ¶ 1175), security adjustments (*id.* ¶ 1176), no end-to-end encryption (*id.* ¶ 1177), and pulling rather than forwarding messages within the device (*id.* ¶ 1179)—were provided in response to uncertainty about how Headwater was applying the claim language to the accused products.  Not once did Headwater seek to supplement its infringement contentions over the scope of the case to, for example, cite specific technical documents produced in discovery.  Samsung had to glean what Headwater would ultimately map to the Asserted Claims based on Headwater's questioning of technical witnesses at depositions that did not conclude until September 10, 2024 with the deposition of ██████████████ .

But even assuming *arguendo*, that any of the NIAs were not disclosed until the last day of fact discovery, Dr. Foster's report should not be stricken.  Headwater cites zero authority granting relief under the same or even similar circumstances or imposing a requirement that defendants

must disclose NIAs within a particular period within fact discovery.  In fact, this Court recently denied a plaintiff's motion to strike NIAs disclosed in interrogatory responses on "the final day of fact discovery."  *See* Ex. 6 (*Fractus, S.A. v. ADT LLC*, Case No. 2:22-CV-00412-JRG, Dkt. 211-1, at 2-4 (E.D. Tex. June 17, 2024)).  While this Court appreciated "that Defendant may have disclosed its non-infringing alternatives later than Plaintiff would have liked . . . any prejudice Plaintiff may have suffered is mitigated by its own failure to diligently pursue discovery of non-infringing alternatives during fact discovery."  *See id.* at 4; *see also Genband US LLC*, 2016 U.S. Dist. LEXIS 2652, at *5 (refusing to strike an interrogatory response served day before fact discovery closed).  Here, Headwater made no attempt to pursue discovery about Samsung's NIAs following Samsung's disclosures of them on August 19, 2024.

Moreover, if the timing of Samsung's disclosure truly prevented Headwater from taking critical discovery, it could have sought leave to take additional discovery out of time.  *See Realtime Data LLC v. EchoStar Corp.*, Case No. 6:17-CV-00084-JDL, 2018 U.S. Dist. LEXIS 202523, at *18-19 (E.D. Tex. Nov. 15, 2018).  Headwater availed itself of this option to pursue additional discovery regarding the SMP and certain contracts, and the Court accommodated these requests.  *See* Dkt. 146; Dkt. 170-1.  But Headwater chose not to pursue discovery as to the allegedly late-disclosed NIAs.  Headwater's alleged prejudice is further mitigated because the case schedule provided six days between the close of fact discovery and service of opening expert reports, providing Headwater adequate time to respond.  *See* Dkt. 131 at 4.  And Mr. de la Iglesia did, in fact, respond to these NIAs.  *See* Ex. 3 at ¶¶ 1263-1287; Ex. 5 at ¶¶ 753-765; *see also ART+COM Innovationpool GmbH v. Google Inc.*, 155 F.Supp.3d 489, 511 (D. Del. Apr. 28, 2016).  If Headwater believed that additional information about NIAs was prejudicial, the time to complain

about it was before service of expert reports—not now. Headwater will also have a full opportunity to ask Dr. Foster about these NIAs at his upcoming deposition. Bright Decl. ¶ 3.

The non-infringing alternatives discussed in Dr. Foster's rebuttal report were also disclosed in Samsung's interrogatory responses. The NIAs identified in Samsung's August 19, 2024 response—which Headwater does not challenge—included "push" systems. *See* Dkt. 176 at 10, lines 5-6; *see also* Dkt. 176-9 at 78 (September 20, 2024 response). Dr. Foster identified a sampling of such push systems available as of the alleged hypothetical negotiation date, after Headwater disclosed that date for the first time in its damages expert report[6] (Dkt. 176-11 ¶ 491; Ex. 7 at 37-53 (failing to identify any hypothetical negotiation date to Samsung's damages interrogatory)) and in response to Headwater's expert's opinion that the primary value attributed "to the Asserted Patents is the ability to send messages over a central point." Dkt. 176-11 at ¶ 490. Samsung's August 19, 2024 interrogatory response likewise identified "pull" systems as NIAs, which Headwater does not challenge. *See* Dkt. 176-8 at 46. As Dr. Foster explains, "batching" is simply the technical term for how such pulling (also known as "polling") was implemented in prior art Android devices. *See* Dkt. 176-11 at ¶ 489 ("Regarding 'pull' systems . . . the ability to batch such polls together was supported by Android devices at least as early as April 2009"). Headwater's expert opined that the pull system NIA was not acceptable because it would be "tremendously inefficient," and Dr. Foster merely responded that the NIA is not inefficient because pulled messages could be batched together. *See id*. Accordingly, the term "batch poll" merely referred to the previously disclosed "pull" systems. Thus, like Dr. Foster's opening report, Dr. Foster's rebuttal report features NIAs that were disclosed during discovery.

---

[6] If the Court strikes any of Samsung's NIAs on the basis that they were served after fact discovery, Samsung requests that the Court also strike Mr. de la Iglesia's corrected infringement report and Mr. Dell's damages report since they were served after the opening report deadline.

## 2. The Factfinder May Conclude that Dr. Foster's Non-Infringing Alternatives Were Commercially Available

As a preliminary matter, Headwater generally fails to identify which "certain alleged non-infringing alternatives" it seeks to strike based on alleged "unavailability." Headwater only identifies paragraphs 1173-1181 of Dr. Foster's opening report, which address Apple Push Notifications (APNs) and certain minor modifications to the accused push notification systems, as having objectional subject matter and baldly characterizes Dr. Foster as failing to show that services "like" APNs were available. *See* Dkt. 176 at 12-14. For example, Headwater does not appear to request striking GTalkService—a service that ran on Android devices like Samsung products that Dr. Foster describes as "adequate and available." *See, e.g.*, Ex. 10 at ¶ 1156. Thus, Headwater appears to be challenging only APNs, MQTT, and the NIA discussed in paragraphs 1176-1179 on the basis of unavailability.

This aspect of Headwater's motion to strike is an improper Daubert challenge, as it goes to the "weight to be assigned [to Dr. Foster's opinion] rather than its admissibility." *See Scrum All., Inc. v. Scrum Inc.*, Case No. 4:20-cv-227, 2021 U.S. Dist. LEXIS 82677, at *6-7 (citing *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019)); *White Oak Glob. Advisors LLC v. Weder*, Case No. CIV-17-0756-J, 2020 U.S. Dist. LEXIS 251277, at *7 (W.D. Okla. Apr. 10, 2020) ("An expert's testimony is not unreliable just because he fails to reference a specific methodology, as if the term methodology is a talismanic magic word. Rather, the reliability of such a non-scientific expert opinion 'depends heavily on the knowledge and experience of the expert, rather than on the methodology or theory behind it.'") (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)). Should Headwater believe there are deficiencies in Dr. Foster's offered opinion, it should resort to "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," rather than challenge its admissibility.

Daubert v. Merrell Dow Pharms., 509 U.S. 579, 596 (1993); see Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC, Case No. 2:15-CV-00037-RWS-RSP, 2017 U.S. Dist. LEXIS 94495, at *54-55 (E.D. Tex. June 20, 2017) (the dispute over NIAs "is one that will be resolved by the jury when they determine which alternatives, if any, are adequate noninfringing substitutes, and what affect that may have on any damages award").

With respect to APNs and MQTT, Headwater disagrees with Dr. Foster's opinions that these NIA were technically available to Samsung. But Headwater's disagreement is not a ground of exclusion as it goes to the weight of Dr. Foster's opinions and not their admissibility. See Dkt. 176 at 13-14. For example, with respect to the Apple Push Notification system, Headwater provides only attorney arguments that Samsung and Apple are "bitter rivals" and their services are "incompatible." Id. at 13. While Headwater seems to insist that such an alternative must have been actually "on the market" or "for sale," the law does not support such a requirement. See Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999). Additionally, Dr. Foster amply discusses that such a system ██████████████████████ ████████████████████████████████████████████████████████████████ ████████ thus providing the factfinder with a basis to conclude that this system was "available" to Samsung. Ex. 10 at ¶¶ 1162, 1173-1174. Likewise, as to MQTT, Dr. Foster explains how MQTT-S was designed to operate on "battery-operated devices" and cites to evidence explaining how that system was implemented. Ex. 10 at ¶ 1180.

With respect to paragraphs 1176-1179, Headwater contends that the NIA in these paragraphs are "made-up systems supported by no evidence." Dkt. 176 at 13. Again, Headwater's disagreement goes to weight and not admissibility. The NIA in these paragraphs are mere minor alterations to the existing push notification systems that would circumvent Headwater's claims of

infringement (e.g., removing the already existing functionality of "encryption"). Ex. 10 at ¶¶ 1176-1179.  Dr. Foster explains that such alterations could be implemented in software, which for a mobile device manufacturer like Samsung, would be easy to do because they only have to do with removing accused features.  *Id.*  Such NIAs are permissible, even if they are not commercially available products.  *See SSL Servs., LLC v. Citrix Sys., Inc.,* Case No. 2:08-CV-158-JRG, 2012 U.S. Dist. LEXIS 76965, at *7 (E.D. Tex. June 4, 2012) ("[E]very (successful) design around is a non-infringing alternative").  Headwater also claims Dr. Foster does not explain "the impacts to Samsung from such a substitution" (Dkt. 176 at 14) but ignores where Dr. Foster does exactly that. Ex. 10 at ¶ 1175 ("encryption other than on the service control link could still be used for security, such as end-to-end encryption"); ¶ 1177 ("transport-layer encryption could still be used for security"); ¶ 1178 ("push notifications would still work as intended and can be tailored from application to application, and any additional overhead compared to a federalized push notification system would be minimal"); ¶ 1179 ("push notifications would still work in mostly the same way, except, rather than having the service control device link agent deliver messages to device agents, device agents can simply retrieve them periodically").[7]

Finally, the Court should disregard Headwater's allegation that any "contractual obligations" to Google precludes Samsung from using or replacing the accused functionality.  *See*

---

[7] Headwater also argues in its motion, without citing any support, that "'Samsung is contractually obligated' with Google to incorporate the accused push notification software into its products." Dkt. 176 at 14.  But Headwater cites no authority showing contractual obligations are relevant in evaluating an NIA, especially here for a ***technical*** expert's analysis.  Headwater also claims, incorrectly, that Dr. Foster acknowledged this contractual obligation, but Dr. Foster was merely quoting Headwater's expert.  Dkt. 176-11 ¶ 485 (" █████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ (emphasis added).

Dkt. 176 at 14.  Headwater cites no authority stating that such a contract is relevant to assessing whether an alternative is "available."  Moreover, as explained in Samsung's motion to strike Mr. de la Iglesia's reports, Headwater's assertions that the MADA—or any other contract—would have impacted how Samsung's ability to switch to an alternative during a hypothetical negotiation are fueled by rampant speculation.  *See* Dkt. 185 at 12-14 (noting that Mr. de la Iglesia is unqualified to analyze whether Samsung may have opted not to enter or renew the MADA at the time of any hypothetical negotiation).

### 3.    The Factfinder May Conclude that Dr. Foster's Non-Infringing Alternatives Were Commercially Acceptable.

Headwater argues that because Dr. Foster did not quantify the precise cost to implement the proposed non-infringing alternatives or their impact on the damages analysis, his NIA opinions are irrelevant.  *See* Dkt. 176 at 15 ("Neither Dr. Foster nor Dr. Perryman calculates the economic cost to Samsung of implementing each alternative. . . . And they each ignore and assume that there would be no economic consequences from removing the accused features.").  The law imposes no such obligation, however, and Headwater cites to no authority showing otherwise.

Unlike the experts in Headwater's cited authority, Dr. Foster's report provides opinions regarding the resources required to implement alternative push systems, and Dr. Perryman relies on Dr. Foster's opinions in conducting his analysis of the *Georgia-Pacific* factors.  *See Correct Transmission, LLC v. Nokia of Am. Corp.*, Case No. 2:22-cv-00343-JRG-RSP, Dkt. 247, at 7 (E.D. Tex. Mar. 26, 2024)[8]; *see also Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015) ("When an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low."); *Riles v. Shell*

---

[8] *Correction Transmission I* is further inapposite because the proposed NIAs in that case were first raised in the technical expert's rebuttal report, whereas here, Dr. Foster provided non-infringing alternative analysis in his opening report.

*Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002).  The crux of what Headwater purports to have invented is a "centralized server . . . that provides sort of a unified connection" and allows push notifications to be transmitted from application servers to particular devices.  *See* Ex. 8 at 316:23-317:17.  At this level of abstraction, any one of Dr. Foster's NIA push systems provided exactly that (at least based on Headwater's interpretation of the Asserted Patents).  Dr. Foster opined on the rough cost of such a system by ███████████████████████████████████████████████████████████████████████████████████████████.  Dkt. 176-11 ¶ 492 ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ From this evidence and opinion, the factfinder may find the proposed NIAs were commercially acceptable.

Here, after comparing the NIAs against the patented technology and accused features and relying on Dr. Foster's technical expertise, Dr. Perryman opined that the non-infringing alternatives would have "a negative impact on the reasonable royalty" Samsung would otherwise pay for a license to the asserted patents.  Ex. 9 at ¶¶ 249-260; *see also id.* ¶¶ 321, 323, 371, 378, 416.  Accordingly, unlike in *Correct Transmission v. Nokia*, Dr. Perryman has offered "opinions regarding how the non-infringing alternatives should factor into the hypothetical negotiation." *Correct Transmission, LLC*, Case No. 2:22-cv-00343-JRG-RSP, Dkt. 247, at 7.s

## III.    CONCLUSION

For the foregoing reasons, Samsung respectfully submits the Court should deny Headwater's motion to exclude Dr. Foster's expert opinions.

Dated:  November 5, 2024

Respectfully submitted,

By:  */s/ Jonathan B. Bright*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
Jonathan B. Bright
GA Bar No. 256953
jbright@fr.com
Christopher O. Green
GA Bar No. 037617
cgreen@fr.com
Noah C. Graubart
GA Bar No. 141862
graubart@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
Katherine H. Reardon
NY Bar No. 5196910
reardon@fr.com
Nicholas A. Gallo
GA Bar No. 546590
gallo@fr.com

Vivian C. Keller (*pro hac vice*)
GA Bar No. 651500
keller@fr.com
**FISH & RICHARDSON P.C.**

16

1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Leonard E. Davis
TX Bar No. 05521600
ldavis@fr.com
Andria Rae Crisler
TX Bar No. 24093792
crisler@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214)747-5070
Facsimile: (214) 747-2091

John-Paul R. Fryckman (*pro hac vice*)
CA Bar No. 317591
John W. Thornburgh
CA Bar No. 154627
thornburgh@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine D. Prescott (*pro hac vice*)
CA Bar No. 215496
prescott@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street
Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5180
Facsimile: (650) 839-5071

Kyle J. Fleming (*pro hac vice*)
NY Bar No. 5855499
kfleming@fr.com
**FISH & RICHARDSON P.C.**
7 Times Square, 20th Floor,
New York, NY 10036

17

Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Shaun W. Hassett
State Bar No. 24074372
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 N. College Ave., Suite 900
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Lance Lin Yang
CA. Bar No. 260705
Lanceyang@quinnemanuel.com
Kevin (Gyushik) Jang
CA Bar No. 337747
kevinjang@quinnemanuel.com
Sean S. Pak
CA Bar No. 219032
seanpak@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111

18

Telephone: (415) 875-6600

Brady Huynh (admitted *pro hac vice*)
CA Bar No. 339441
bradyhuynh@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Jon Bentley Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.**

19



**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 5, 2024.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Jonathan B. Bright*
Jonathan B. Bright