# Exhibit A



# Transcript of David Wise

**Date:** January 31, 2025
**Case:** Headwater Research LLC -v- AT&T Services, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767 **| Email:** transcripts@planetdepos.com
**www.planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

HEADWATER RESEARCH LLC, )
)
    Plaintiff, )
) CASE NO.:
VS. ) 2:23-cv-00397-JRG-RSP
)
AT&T SERVICES, INC., ) Lead Case
AT&T MOBILITY, LLC, AND )
AT&T CORP., )
)
    Defendants. )


HEADWATER RESEARCH LLC, )
)
    Plaintiff, )
) CASE NO.:
VS. ) 2:23-cv-00398-JRG-RSP
)
AT&T SERVICES, INC., )
AT&T MOBILITY, LLC, AND )
AT&T CORP., )
)
    Defendants. )


-----------------------------------

ORAL, REALTIMED, VIDEOTAPED DEPOSITION OF

DAVID WISE

JANUARY 31, 2025

-----------------------------------


JOB NO.: 570073

PAGES: 1 - 77

REPORTED BY: ANNETTE PELTIER

1        ORAL, REALTIMED, VIDEOTAPED DEPOSITION OF

2    DAVID WISE, produced as a witness at the instance

3    of the Defendants, and duly sworn, was taken in

4    the above-styled and numbered cause on

5    January 31, 2025, from 12:03 p.m. to 1:54 p.m.,

6    before Annette Peltier, CSR, Texas Certified

7    Realtime Reporter, in and for the State of Texas,

8    reported by machine shorthand pursuant to the

9    Federal Rules of Civil Procedure and the

10   provisions stated on the record or attached

11   hereto.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              A P P E A R A N C E S

2      (ALL APPEARING VIA ZOOM VIDEOCONFERENCE)

3

   ON BEHALF OF THE PLAINTIFFS:
4
         KRIS DAVIS, ESQUIRE
5        Russ, August & Kabat, LLP
         8080 N. Central Expressway
6        Dallas, Texas 75206
         310.826.7474
7

8  ON BEHALF OF THE DEFENDANTS:

9        SCOTT HEJNY, ESQUIRE
         McKool Smith
10       303 Colorado Street
         Suite 2100
11       Austin, Texas 78701
         512.692.8700
12

13
   ON BEHALF OF THE WITNESS:
14
         DAVID KAYS, ESQUIRE
15       Morgan, Franich, Fredkin Siamas &
         Kays LLP
16       333 W. San Carlos Street
         Suite 1050
17       San Jose, CA 95110
         408.288.8288
18

19 ALSO PRESENT:

20       Lawrence Wallace, Videographer
         Charlie McGrath, Video Tech
21

22

23

24

25
```

1                          Index
                                              Page
2
    Appearances............................   3
3
    Examination by Mr. Hejny.................   8
4
    Examination by Mr. Davis................   71
5
    Adjournment............................   73
6
    Signature Page.........................   74
7
    Court Reporter's Certificate............   75
8
                         Exhibits
9   Number    Description                    Page

10  Exhibit 1  Deposition Notice............  11

11  Exhibit 2  David Wise LinkedIn..........  13

12  Exhibit 3  Raleigh Invention Disclosure,
               Confidentiality & Proprietary
13             Rights Agreement
               (HW397-00094026-31)..........  20
14
    Exhibit 4  January 2009 Raleigh and Paul
15             Jacobs E-Mails
               (HW397-00102740-41)..........  24
16
    Exhibit 5  2009.01.22 QC-HW Partners NDA
17             (HW397-00102740-41)..........  29

18  Exhibit 6  3.4.2009 E-Mail
               (HW397-00051416).............  34
19
    Exhibit 7  2.25.2009 ItsOn PowerPoint
20             To QC on Best Buy E2E
               (HW397-00018717-31)..........  40
21
    Exhibit 8  2009.04.21 re:  ItsOn
22             (HW397-00051418-20)..........  44

23  Exhibit 9  2009.05.06 Patent Application
               (HW397-00051421).............  53
24
    Exhibit 10 2009.05.07 Moving Forward
25             (HW397-00051422).............  56

1    Exhibit 11 2009.05.19 Release
               (HW397-00051424-27).........  60
2

3    Exhibit 12 June 24, 2009 Qualcomm E-Mail
               On Release Redlines
               (HW397-00102742)...........  66
4

5    Exhibit 13 2009.09.03 Qualcomm's
               Proposal
               (HW397-00051423)...........  68
6

7                    * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      EXHIBIT TECH:  Thank you to

2  everyone for attending this proceeding remotely,

3  which we anticipate will run smoothly.

4      Please remember to speak slowly

5  and do your best not to talk over one another.

6      Please be aware that we are

7  recording this proceeding for backup purposes.

8      Any off-the-record discussions

9  should be had away from the computer.

10      Please remember to mute your mic

11  for those conversations.

12      Please have your video enabled to

13  help the reporter identify who is speaking.  If

14  you are unable to connect with video and are

15  connecting via phone, please identify yourself

16  each time before speaking.

17      I apologize in advance for any

18  technical-related interruptions.

19      Thank you.

20      THE VIDEOGRAPHER:  All right.          12:03:24

21  Everyone please stand by to be read onto the       12:03:27

22  video record.                                      12:03:30

23      Here begins media number one in       12:03:31

24  the videotaped deposition of David Wise in the     12:03:34

25  matter of Headwater Research, LLC, versus AT&T     12:03:36

| | | |
|---|---|---|
| 1 | Services, Inc., et al, in the United States | 12:03:42 |
| 2 | District Court for the Eastern District of Texas, | 12:03:42 |
| 3 | Marshall Division, Case Number | 12:03:52 |
| 4 | 2:23-cv-397-JRG-RSP. | 12:04:04 |
| 5 | Today's date is January 31st, | 12:04:05 |
| 6 | 2025.  The time on the video monitor is | 12:04:08 |
| 7 | 2:04 [sic] p.m. Central time. | 12:04:11 |
| 8 | The remote videographer today is | 12:04:14 |
| 9 | Lawrence Wallace, representing Planet Depos. | 12:04:16 |
| 10 | All parties of this video | 12:04:18 |
| 11 | deposition are attending remotely. | 12:04:21 |
| 12 | Would counsel please | 12:04:22 |
| 13 | voice-identify themselves and state whom they | 12:04:24 |
| 14 | represent. | 12:04:27 |
| 15 | MR. HEJNY:  Scott Hejny from | 12:04:30 |
| 16 | McKool Smith on behalf of AT&T. | 12:04:32 |
| 17 | MR. DAVIS:  Kris Davis from Russ, | 12:04:34 |
| 18 | August & Kabat on behalf of Headwater Research, | 12:04:37 |
| 19 | LLC. | 12:04:39 |
| 20 | MR. KAYS:  David Kays on behalf of | 12:04:40 |
| 21 | the witness, David Wise. | 12:04:42 |
| 22 | THE VIDEOGRAPHER:  All right.  The | 12:04:46 |
| 23 | court reporter today is Annette Peltier, | 12:04:49 |
| 24 | representing Planet Depos. | 12:04:51 |
| 25 | The witness will now be sworn. | 12:04:51 |

| | | |
|---|---|---|
| 1 | DAVID WISE, | 12:04:54 |
| 2 | Having been first duly sworn, testified upon his | 12:04:54 |
| 3 | oath as follows: | 12:05:01 |
| 4 | EXAMINATION | 12:05:01 |
| 5 | BY MR. HEJNY: | 12:05:02 |
| 6 | Q.  Good morning, Mr. Wise. | 12:05:02 |
| 7 | A.  Good morning. | 12:05:18 |
| 8 | Q.  So you -- you mentioned before we started | 12:05:18 |
| 9 | that you'd been deposed before, correct? | 12:05:22 |
| 10 | A.  Yes. | 12:05:25 |
| 11 | Q.  Okay.  So I'll walk through some | 12:05:25 |
| 12 | guidelines here in a minute, but obviously this | 12:05:28 |
| 13 | is your first remote depo. | 12:05:30 |
| 14 | Are you alone in the room where you're | 12:05:32 |
| 15 | being deposed now? | 12:05:34 |
| 16 | A.  Yes. | 12:05:35 |
| 17 | Q.  Do you have any documents in front of you | 12:05:35 |
| 18 | or pulled up on your computer screen? | 12:05:38 |
| 19 | A.  No. | 12:05:41 |
| 20 | Q.  Great. | 12:05:41 |
| 21 | How many times have you been deposed | 12:05:43 |
| 22 | before? | 12:05:47 |
| 23 | A.  Three. | 12:05:49 |
| 24 | Q.  When was the last time you were deposed -- | 12:05:50 |
| 25 | I guess the most recent deposition? | 12:05:55 |

| | | |
|---|---|---|
| 1 | A.  Not sure.  A few years ago. | 12:05:57 |
| 2 | Q.  Have you ever been deposed in an | 12:06:02 |
| 3 | intellectual property case before? | 12:06:07 |
| 4 | A.  Cases involving intellectual property, | 12:06:09 |
| 5 | among other things, I think, yeah. | 12:06:12 |
| 6 | Q.  Okay.  Have you ever been deposed in a | 12:06:15 |
| 7 | case involving patent infringement? | 12:06:18 |
| 8 | A.  Not to my knowledge, no. | 12:06:21 |
| 9 | Q.  Have you ever been deposed in a case | 12:06:25 |
| 10 | involving a dispute over IP ownership? | 12:06:29 |
| 11 | A.  No, not to my knowledge. | 12:06:35 |
| 12 | Q.  Have you ever testified before in a case | 12:06:38 |
| 13 | involving Greg Raleigh or Headwater? | 12:06:43 |
| 14 | A.  No. | 12:06:47 |
| 15 | Q.  Have you ever testified at trial before? | 12:06:47 |
| 16 | A.  Yes. | 12:06:52 |
| 17 | Q.  And do you recall what case that was in? | 12:06:54 |
| 18 | A.  FTC case with Qualcomm. | 12:06:59 |
| 19 | Q.  And what did that case relate to, | 12:07:03 |
| 20 | generally? | 12:07:10 |
| 21 | A.  Antitrust action from the FTC against | 12:07:11 |
| 22 | Qualcomm. | 12:07:21 |
| 23 | Q.  Got it. | 12:07:21 |
| 24 | You understand that you're under oath | 12:07:23 |
| 25 | today? | 12:07:24 |

1     A.  Yes.                                          12:07:24

2     Q.  Is there any reason that you can't provide   12:07:25

3  full and accurate testimony in your deposition      12:07:28

4  today?                                               12:07:32

5     A.  No.                                           12:07:32

6     Q.  Okay.  So like the court reporter said,       12:07:32

7  I'll ask you some questions; and unless your        12:07:37

8  attorney, Mr. Kays, instructs you not to answer,     12:07:39

9  I'll expect you to answer the question.              12:07:42

10          Is that fair?                                12:07:43

11     A.  Yes.                                          12:07:45

12     Q.  And if you don't understand a question,       12:07:45

13  please ask, and I'll try and clarify; but if you    12:07:49

14  don't ask for clarification, I'll assume that you   12:07:52

15  understand my question.                             12:07:55

16          Is that fair?                                12:07:56

17     A.  Yes.                                          12:07:56

18     Q.  And we'll try to take a break about every     12:07:57

19  hour, but be sure to let me know if you need a      12:08:01

20  break before then and we'll try to take that        12:08:04

21  break unless there's a question pending on the      12:08:06

22  table.                                               12:08:09

23          Does that make sense?                        12:08:09

24     A.  Yes.                                          12:08:10

25     Q.  Okay.  Do you understand why you're here     12:08:11

| | | |
|---|---|---|
| 1 | today? | 12:08:15 |
| 2 | A.  Not completely, no. | 12:08:15 |
| 3 | Q.  Sure. | 12:08:17 |
| 4 | MR. HEJNY:  Can we pull up | 12:08:20 |
| 5 | Exhibit 1?  It's marked as tab 1 in the exhibits | 12:08:21 |
| 6 | I uploaded this morning. | 12:08:25 |
| 7 | EXHIBIT TECH:  Not a problem. | 12:08:35 |
| 8 | MR. KAYS:  And, Counsel, I'll | 12:08:35 |
| 9 | represent for the record that he's here because | 12:08:37 |
| 10 | of your subpoena, or in compliance with your | 12:08:39 |
| 11 | subpoena. | 12:08:40 |
| 12 | MR. HEJNY:  Sure.  That's what I'm | 12:08:40 |
| 13 | about to show him. | 12:08:42 |
| 14 | (Whereupon Exhibit Number 1 was | 12:08:45 |
| 15 | marked for identification.) | 12:08:52 |
| 16 | THE WITNESS:  Sorry, do I click on | 12:08:52 |
| 17 | this or something?  Oh, no, got you. | 12:08:54 |
| 18 | Q.  (BY MR. HEJNY)  So the technician has | 12:08:56 |
| 19 | pulled up the subpoena as Exhibit 1 on the -- on | 12:08:59 |
| 20 | the screen.  There's also a copy of the subpoena | 12:09:01 |
| 21 | that's in the chat box that's in PDF form; and, | 12:09:03 |
| 22 | you know, we can -- we can navigate through the | 12:09:07 |
| 23 | one on the screen.  There may be some exhibits | 12:09:10 |
| 24 | later where it might be easier for you to access | 12:09:13 |
| 25 | the exhibit in the chat box, but we can work | 12:09:15 |

1   through that on an exhibit-by-exhibit basis, if        12:09:17

2   that makes sense.                                      12:09:20

3       A.  Okay.                                          12:09:21

4       Q.  Okay.  So Exhibit 1 is a subpoena that was     12:09:21

5   issued to you by AT&T.                                 12:09:24

6           Have you seen this document before?            12:09:25

7       A.  Yes.                                           12:09:28

8       Q.  Okay.  So obviously, you're here to            12:09:28

9   testify in response to the subpoena that was           12:09:34

10  served by AT&T, correct?                               12:09:35

11      A.  Yes.                                            12:09:37

12      Q.  Are you familiar with Headwater Research,      12:09:37

13  LLC?                                                   12:09:45

14      A.  The name didn't ring a bell.                   12:09:46

15      Q.  Are you more familiar with an entity           12:09:48

16  called Headwater Partners?                             12:09:52

17      A.  No.                                            12:09:54

18      Q.  Okay.  Do you remember a gentleman named       12:09:55

19  Dr. Greg Raleigh or Raleigh that used to work for      12:09:59

20  Qualcomm with whom you've had interaction in the       12:10:03

21  past?                                                  12:10:05

22      A.  Yes.                                           12:10:06

23      Q.  Okay.                                          12:10:06

24           MR. HEJNY:  We can take that down             12:10:11

25  now.                                                   12:10:12

| | | |
|---|---|---|
| 1 | Q. (BY MR. HEJNY) Are you -- are you | 12:10:15 |
| 2 | currently employed, Mr. Wise? | 12:10:16 |
| 3 | A. No. I'm an advisor for some private | 12:10:18 |
| 4 | companies, but no full-time employment. | 12:10:22 |
| 5 | Q. Have you had any full-time employment | 12:10:26 |
| 6 | since you left Qualcomm? | 12:10:28 |
| 7 | A. No. | 12:10:30 |
| 8 | MR. HEJNY: And let's pull up | 12:10:34 |
| 9 | Exhibit 2, please. | 12:10:36 |
| 10 | (Whereupon Exhibit Number 2 was | 12:10:37 |
| 11 | marked for identification.) | 12:10:37 |
| 12 | MR. HEJNY: And for the record, | 12:10:48 |
| 13 | Exhibit 2 is going to be your LinkedIn profile. | 12:10:49 |
| 14 | MR. KAYS: I knew it. Call me | 12:10:52 |
| 15 | Nostradamus. | 12:11:04 |
| 16 | MR. DAVIS: I don't actually see | 12:11:04 |
| 17 | Exhibit 2 in the chat. | 12:11:06 |
| 18 | MR. HEJNY: I don't think it's | 12:11:08 |
| 19 | been uploaded yet. | 12:11:09 |
| 20 | MR. DAVIS: Oh, okay, I'm sorry. | 12:11:10 |
| 21 | MR. HEJNY: Yeah. | 12:11:12 |
| 22 | EXHIBIT TECH: Sorry, Counsel, | 12:11:12 |
| 23 | it's just taking me a moment to mark it and save | 12:11:12 |
| 24 | it here. | 12:11:12 |
| 25 | MR. HEJNY: No problem. | 12:11:38 |

1    Q.  (BY MR. HEJNY)  Okay.  So Exhibit 2 is          12:11:38

2  your LinkedIn profile.                               12:11:41

3          Have you seen this, Dr. Wise --             12:11:42

4  Dr. Wise -- Mr. Wise?                                12:11:44

5    A.  Yes.                                           12:11:46

6    Q.  And have you updated this document            12:11:46

7  recently?                                            12:11:51

8    A.  Not recently, no.                              12:11:53

9    Q.  And on the first page, it lists some of       12:11:54

10  your activities since you left Qualcomm, correct?   12:11:59

11    A.  Yes.                                          12:12:03

12    Q.  And are these entities, including            12:12:03

13  Cloudbeds, Chain Reaction Limited, and Jaws         12:12:07

14  Juggernaut Acquisition Corp, are those entities     12:12:12

15  with -- with whom you've been consulting since      12:12:15

16  you left Qualcomm?                                  12:12:17

17    A.  Yes, several dates that are given there,      12:12:20

18  yeah.                                               12:12:24

19          MR. HEJNY:  Can we move down to            12:12:24

20  Page 2 of the exhibit?                              12:12:25

21    Q.  (BY MR. HEJNY)  Okay.  So here begins your    12:12:28

22  Qualcomm resumé.                                    12:12:31

23          And so you were at Qualcomm for            12:12:32

24  roughly 24 and a half years?                        12:12:35

25    A.  Correct.                                      12:12:38

| | | |
|---|---|---|
| 1 | Q.  And let's scroll down to Page 3 because | 12:12:40 |
| 2 | the time frame that I'm interested in discussing | 12:12:44 |
| 3 | with you today is the 2007 to 2008 and 2009 time | 12:12:45 |
| 4 | frames when you were Senior Vice President of | 12:12:50 |
| 5 | Finance and Strategy at Qualcomm. | 12:12:53 |
| 6 | Do you see that on your resumé? | 12:12:55 |
| 7 | A.  Yes. | 12:12:58 |
| 8 | Q.  And what was your role with Qualcomm in | 12:12:58 |
| 9 | the -- in the 2008 to 2009 time frame, generally | 12:13:02 |
| 10 | speaking? | 12:13:05 |
| 11 | A.  With our corporate financial planning | 12:13:06 |
| 12 | function at the company, which is responsible for | 12:13:12 |
| 13 | all of the budgeting, forecasting, quarterly | 12:13:15 |
| 14 | forecast process at the company, to roll out the | 12:13:22 |
| 15 | financials and help provide guidance for earnings | 12:13:27 |
| 16 | and -- but on the forecast side and was also | 12:13:31 |
| 17 | involved in various strategic projects. | 12:13:36 |
| 18 | Q.  Now, I'm going to show you some documents | 12:13:42 |
| 19 | later that relate to some interactions that you | 12:13:44 |
| 20 | had with the gentleman that I named earlier, Greg | 12:13:46 |
| 21 | Raleigh. | 12:13:46 |
| 22 | And you said you remember -- or you | 12:13:50 |
| 23 | recall his name, correct? | 12:13:52 |
| 24 | A.  I recall his name, yes. | 12:13:53 |
| 25 | Q.  And how did you get involved with | 12:13:54 |

1      discussions with Greg Raleigh back in the 2008,          12:13:58

2      2009 time frame?                                          12:14:02

3          A.  Honestly, I don't recall exactly how.            12:14:05

4          Q.  Do you recall what was discussed with --         12:14:08

5      with Mr. Raleigh or Dr. Raleigh back in that time         12:14:13

6      frame, in 2008, 2009?                                     12:14:16

7          A.  No.                                               12:14:19

8          Q.  So you don't recall any -- any prior             12:14:22

9      discussions you had with Dr. Raleigh regarding           12:14:26

10     intellectual property that -- that he developed          12:14:29

11     and was wanting to partner with Qualcomm on?             12:14:31

12         A.  I remember vaguely, yeah.  You know, he          12:14:36

13     was -- I remember vaguely having interactions            12:14:39

14     with him, but I don't remember any details at            12:14:42

15     this point.                                               12:14:45

16         Q.  Was it common for you in the 2008, 2009          12:14:45

17     time frame to be involved in discussions with --         12:14:49

18     with other entities regarding technology that            12:14:52

19     they might want to bring and partner with with           12:14:55

20     Qualcomm?                                                 12:14:59

21              MR. KAYS:  Objection, form.                     12:15:03

22         A.  Yeah, I was -- I would be involved               12:15:04

23     periodically in acquisitions of technology, IP,          12:15:06

24     businesses.                                               12:15:12

25         Q.  (BY MR. HEJNY)  So that was -- that was          12:15:15

| | | |
|---|---|---|
| 1 | common for you, then, to be involved in | 12:15:16 |
| 2 | discussions with third parties that might want to | 12:15:19 |
| 3 | partner with Qualcomm? | 12:15:23 |
| 4 | A. Yeah, not uncommon. | 12:15:25 |
| 5 | Q. And the reason I ask is you were Senior | 12:15:27 |
| 6 | Vice President For Finance and Strategy, and I | 12:15:32 |
| 7 | didn't see anything in your resumé about, you | 12:15:35 |
| 8 | know, technology issues. | 12:15:37 |
| 9 | Were you involved in technology issues | 12:15:38 |
| 10 | and bringing in new technology while you were at | 12:15:41 |
| 11 | Qualcomm? | 12:15:44 |
| 12 | MR. KAYS: Objection, form. | 12:15:46 |
| 13 | A. So my role was -- would -- I would | 12:15:49 |
| 14 | characterize it as on the business side. So if | 12:15:52 |
| 15 | we were interested in technology or acquiring a | 12:15:55 |
| 16 | business, I would be involved from a business | 12:15:58 |
| 17 | perspective on negotiating those deals and | 12:16:01 |
| 18 | determining whether it made sense or not, you | 12:16:08 |
| 19 | know, from a business perspective. | 12:16:10 |
| 20 | Q. (BY MR. HEJNY) So more on the business | 12:16:12 |
| 21 | side than the technology front? | 12:16:13 |
| 22 | A. Yes. | 12:16:15 |
| 23 | Q. When did you first learn about this | 12:16:17 |
| 24 | current lawsuit that was filed by Headwater | 12:16:21 |
| 25 | Partners -- or sorry, between Headwater Research | 12:16:25 |

| | | |
|---|---|---|
| 1 | against AT&T? | 12:16:30 |
| 2 | A.   From the subpoena. | 12:16:30 |
| 3 | Q.   You had not heard about it before you were | 12:16:31 |
| 4 | served with the subpoena? | 12:16:33 |
| 5 | A.   No. | 12:16:34 |
| 6 | Q.   Do you understand the nature of the | 12:16:35 |
| 7 | lawsuit? | 12:16:39 |
| 8 | MR. KAYS:  I'm going to just | 12:16:42 |
| 9 | object to the extent that would require Mr. Wise | 12:16:43 |
| 10 | to disclose privileged communications. | 12:16:48 |
| 11 | If you have a -- if you have a -- | 12:16:52 |
| 12 | you know, an understanding separate and apart | 12:16:54 |
| 13 | from any discussions you've had with me, you can | 12:16:56 |
| 14 | provide it; otherwise, I would instruct you not | 12:16:59 |
| 15 | to answer. | 12:17:02 |
| 16 | A.   Yeah, I have no answer. | 12:17:05 |
| 17 | Q.   (BY MR. HEJNY)  So you learned about the | 12:17:07 |
| 18 | lawsuit -- this is a "yes" or "no" question:  You | 12:17:09 |
| 19 | learned about the lawsuit through conversations | 12:17:12 |
| 20 | with your attorney? | 12:17:15 |
| 21 | A.   Yes. | 12:17:15 |
| 22 | MR. KAYS:  I -- | 12:17:15 |
| 23 | THE WITNESS:  Sorry, David. | 12:17:20 |
| 24 | MR. KAYS:  That's okay. | 12:17:21 |
| 25 | Q.   (BY MR. HEJNY)  What did you do to prepare | 12:17:22 |

| 1 | for your deposition today? | 12:17:24 |
| 2 | A.  Nothing, other than a brief conversation | 12:17:27 |
| 3 | with David. | 12:17:30 |
| 4 | Q.  Did you review any documents or -- or | 12:17:32 |
| 5 | e-mails to refresh your recollection? | 12:17:35 |
| 6 | A.  No. | 12:17:38 |
| 7 | Q.  Have you spoken with Dr. Raleigh | 12:17:39 |
| 8 | concerning the lawsuit or concerning your | 12:17:44 |
| 9 | deposition? | 12:17:46 |
| 10 | A.  No. | 12:17:48 |
| 11 | Q.  Have you spoken with anyone at Headwater | 12:17:48 |
| 12 | concerning your deposition or the lawsuit? | 12:17:53 |
| 13 | A.  No. | 12:17:56 |
| 14 | Q.  Have you spoken with -- with Mr. Davis or | 12:17:58 |
| 15 | anyone at Russ, August & Kabat regarding your | 12:18:03 |
| 16 | deposition or the lawsuit? | 12:18:06 |
| 17 | A.  No. | 12:18:08 |
| 18 | Q.  Are you familiar with IP ownership | 12:18:08 |
| 19 | documents that each Qualcomm document -- sorry, | 12:18:38 |
| 20 | strike that. | 12:18:42 |
| 21 | Are you aware of IP ownership | 12:18:42 |
| 22 | documents that each Qualcomm employee signs when | 12:18:45 |
| 23 | they come on and join the Qualcomm organization? | 12:18:50 |
| 24 | A.  Yes. | 12:18:54 |
| 25 | MR. HEJNY:  Can we pull up | 12:19:01 |

| | | |
|---|---|---|
| 1 | Exhibit 3, please? | 12:19:02 |
| 2 | (Whereupon Exhibit Number 3 was | 12:19:04 |
| 3 | marked for identification.) | 12:19:48 |
| 4 | Q.  (BY MR. HEJNY)  The technician has pulled | 12:19:48 |
| 5 | up what's been marked as Exhibit 3, and the first | 12:19:49 |
| 6 | two pages just relate to -- reflect to the fact | 12:19:52 |
| 7 | that this was an exhibit to another document that | 12:19:56 |
| 8 | was filed under seal, so we can skip to the third | 12:19:58 |
| 9 | page. | 12:20:00 |
| 10 | And the -- the page that we're looking | 12:20:02 |
| 11 | at has a number at the bottom right-hand corner, | 12:20:06 |
| 12 | which is HW397-0094028. | 12:20:08 |
| 13 | And at the top of the page, it's | 12:20:14 |
| 14 | titled, "Invention Disclosure, Confidentiality, | 12:20:18 |
| 15 | and Proprietary Rights Agreement." | 12:20:22 |
| 16 | Have you seen documents like this | 12:20:24 |
| 17 | before and -- during your time at Qualcomm? | 12:20:25 |
| 18 | A.  I don't recall seeing it, but I was aware | 12:20:30 |
| 19 | Qualcomm had -- has employees sign these. | 12:20:34 |
| 20 | Q.  Did you have to complete one of these | 12:20:37 |
| 21 | documents in -- in connection with your | 12:20:39 |
| 22 | employment at Qualcomm? | 12:20:41 |
| 23 | A.  I assume I did, yes. | 12:20:43 |
| 24 | Q.  As you can see at the top of the document, | 12:20:45 |
| 25 | this says this is a submission for Gregory | 12:20:49 |

| | | |
|---|---|---|
| 1 | Raleigh that was recorded on December 18th, 2006. | 12:20:54 |
| 2 | Do you see that? | 12:20:58 |
| 3 | A. Yes. | 12:20:58 |
| 4 | Q. And there are a couple of paragraphs I | 12:20:59 |
| 5 | want to focus on; the first is paragraph 1.2 | 12:21:01 |
| 6 | where it states that: "I hereby assign, | 12:21:08 |
| 7 | transfer, and convey to the company all my entire | 12:21:10 |
| 8 | right, title, and interest in and to any and all | 12:21:13 |
| 9 | inventions and works which I now or hereafter own | 12:21:16 |
| 10 | or have an ownership interest in except those I | 12:21:21 |
| 11 | have specifically described in my statement of | 12:21:24 |
| 12 | excepted inventions and works which is Attachment | 12:21:28 |
| 13 | 1 to this agreement." | 12:21:31 |
| 14 | Do you see this? | 12:21:32 |
| 15 | A. Yes. | 12:21:34 |
| 16 | Q. And was it common or mandatory for | 12:21:35 |
| 17 | Qualcomm employees to assign rights to | 12:21:40 |
| 18 | intellectual property that they developed at | 12:21:44 |
| 19 | Qualcomm to the company? | 12:21:46 |
| 20 | A. Yes, to my knowledge. | 12:21:49 |
| 21 | Q. And similarly, paragraph 1.4 below, which | 12:21:51 |
| 22 | is slightly further down the screen, it states | 12:21:57 |
| 23 | that, "I agree that an invention disclosed" to | 12:22:01 |
| 24 | me -- "by me to a third person or described in a | 12:22:04 |
| 25 | patent application filed by me or in my behalf | 12:22:08 |

1   within one year following termination of my            12:22:10

2   employment with the company shall be presumed to       12:22:15

3   be an invention subject to the terms of this           12:22:17

4   agreement unless proved" to me -- "proved by me        12:22:18

5   to have been conceived and first reduced to            12:22:22

6   practice by me following the termination of my         12:22:25

7   employment with the company."                          12:22:27

8           Do you see that?                               12:22:28

9     A.  Yes.                                             12:22:29

10    Q.  And I'm showing you this document and            12:22:30

11  these -- the terms of this document because it's       12:22:33

12  going to be important to some of our later             12:22:35

13  discussions; but again, to your understanding,         12:22:37

14  this was a common agreement that was signed by         12:22:39

15  Qualcomm employees, particularly employees that        12:22:41

16  were involved in technical development, correct?       12:22:44

17    A.  Yes.                                             12:22:48

18          MR. DAVIS:  Objection, form.                   12:22:49

19          Go ahead, I'm sorry.                           12:22:50

20    A.  To the best of my understanding, yes.            12:22:50

21    Q.  (BY MR. HEJNY)  And do you understand that       12:23:01

22  the purpose of this document was to ensure that        12:23:02

23  Qualcomm retain intellectual property rights to        12:23:05

24  inventions that were developed both while at           12:23:09

25  Qualcomm and within one year of termination at         12:23:16

1  Qualcomm?                                                    12:23:16

2              MR. KAYS:  Object --                             12:23:21

3              MR. DAVIS:  Objection, form.                     12:23:21

4              MR. KAYS:  Yeah.  I'm going to                   12:23:22

5  object to the extent it requires you to disclose            12:23:23

6  privileged communications.  If you have an                  12:23:25

7  understanding about the purpose of that paragraph           12:23:26

8  separate and apart from communications with                 12:23:28

9  attorneys, you can answer.  If not, I would                 12:23:32

10 instruct you not to answer.                                 12:23:35

11   A.  Just a general understanding of, like, the            12:23:40

12 ownership for Qualcomm.                                     12:23:44

13   Q.  (BY MR. HEJNY)  Did you ever have                     12:23:45

14 discussion with Qualcomm attorneys regarding the            12:23:46

15 meanings of these agreements, and specifically              12:23:50

16 these two paragraphs of these agreements, in                12:23:52

17 connection with Dr. Raleigh?                                12:23:55

18              MR. KAYS:  I think he's answered               12:24:13

19 and said "no," maybe.                                        12:24:15

20              MR. HEJNY:  I may have not heard                12:24:18

21 it.                                                          12:24:19

22   Q.  (BY MR. HEJNY)  Did you --                            12:24:19

23   A.  I answered "no," yeah.                                12:24:19

24   Q.  Okay.  I apologize, sorry.                            12:24:21

25              MR. HEJNY:  Thanks, David.  If I                12:24:21

| 1  | sit there looking like I'm -- | 12:24:23 |
| 2  | MR. KAYS:  No, no, no.  I -- it | 12:24:25 |
| 3  | was -- the international sign of "I didn't hear | 12:24:27 |
| 4  | you" was -- | 12:24:29 |
| 5  | MR. HEJNY:  Thank you, Mr. Wise. | 12:24:33 |
| 6  | Q.  (BY MR. HEJNY)  So I mentioned to you, you | 12:24:35 |
| 7  | know, whether you were familiar with past | 12:24:39 |
| 8  | conversations you've had with -- with | 12:24:42 |
| 9  | Dr. Raleigh; and you answered "yes," correct? | 12:24:44 |
| 10 | A.  I remember interfacing with him. | 12:24:49 |
| 11 | Q.  And did you interface with Dr. Raleigh at | 12:24:52 |
| 12 | the request of Paul Jacobs? | 12:24:55 |
| 13 | A.  I don't recall. | 12:25:00 |
| 14 | Q.  Who was Paul Jacobs? | 12:25:02 |
| 15 | A.  In this time frame, I don't recall what | 12:25:06 |
| 16 | level he was, but at one point he was CEO of the | 12:25:09 |
| 17 | company. | 12:25:14 |
| 18 | Q.  Is he still at Qualcomm? | 12:25:15 |
| 19 | A.  No. | 12:25:19 |
| 20 | MR. HEJNY:  Let's pull up | 12:25:22 |
| 21 | Exhibit 4, please. | 12:25:24 |
| 22 | (Whereupon Exhibit Number 4 was | 12:25:33 |
| 23 | marked for identification.) | 12:25:34 |
| 24 | Q.  (BY MR. HEJNY)  Mr. Wise, I understand | 12:25:36 |
| 25 | that this was some time ago, so I'm going to show | 12:25:56 |

1    you some documents and -- and see if we can                12:25:58

2    refresh your recollection regarding interactions           12:26:01

3    with Dr. Raleigh.                                           12:26:04

4            And this is the first document that                12:26:04

5    I'm going to show you.  It's been marked as                12:26:06

6    Exhibit 4, and the Bates number on the first page         12:26:09

7    at the bottom right is HW397-00102740 and it runs         12:26:19

8    through one more page, with the ending three              12:26:25

9    numbers of 741.                                            12:26:28

10           MR. HEJNY:  And let's go back to                   12:26:31

11   the first page.  Perfect.                                  12:26:34

12     Q.  (BY MR. HEJNY)  The first e-mail in this             12:26:36

13   thread is a January 7th, 2009, e-mail from Greg           12:26:39

14   Raleigh to -- to Paul Jacobs.                              12:26:44

15           You see that?                                      12:26:45

16     A.  Yes.                                                 12:26:48

17     Q.  And in that e-mail, Dr. Raleigh indicates           12:26:49

18   that, "I have been working on improved wireless           12:26:53

19   Internet with some colleagues, including two you          12:26:58

20   know, Charlie Giancarlo and Jim Straight."                12:27:01

21           Do you see that?                                   12:27:05

22     A.  Yes.                                                 12:27:28

23     Q.  And who is Charlie Giancarlo?                        12:27:29

24     A.  I don't know.                                        12:27:38

25     Q.  And who is Jim Straight; do you know?               12:27:40

| | | |
|---|---|---|
| 1 | I apologize if I missed your answer | 12:28:22 |
| 2 | again.  Do you know who Mr. Straight is? | 12:28:24 |
| 3 | A.  No. | 12:28:26 |
| 4 | Q.  Okay.  Scrolling down to the second page | 12:28:27 |
| 5 | and the first full sentence on that page, | 12:28:35 |
| 6 | Dr. Raleigh says, "We plan to partner with a | 12:28:38 |
| 7 | global chipset leader and we would" -- "and we | 12:28:41 |
| 8 | would this to be QC for many reasons, top of the | 12:28:44 |
| 9 | list being our positive relationships and history | 12:28:47 |
| 10 | with you and the QC team." | 12:28:50 |
| 11 | Do you see that? | 12:28:51 |
| 12 | A.  Yes. | 12:28:56 |
| 13 | Q.  Okay.  So in this e-mail, we have | 12:28:57 |
| 14 | Dr. Raleigh e-mailing Paul Jacobs at Qualcomm, | 12:29:00 |
| 15 | indicating an interest in -- interest in | 12:29:04 |
| 16 | partnering with -- with Qualcomm. | 12:29:08 |
| 17 | Do you recall then being involved in | 12:29:09 |
| 18 | discussions with Dr. Raleigh at Mr. Jacobs' | 12:29:12 |
| 19 | request? | 12:29:16 |
| 20 | A.  Yes, but vaguely. | 12:29:18 |
| 21 | Q.  Okay. | 12:29:21 |
| 22 | MR. HEJNY:  Let's scroll back to | 12:29:22 |
| 23 | the top. | 12:29:23 |
| 24 | Q.  (BY MR. HEJNY)  And again, the reason I | 12:29:25 |
| 25 | bring this up is because at the top of the page | 12:29:27 |

1    you can see that we see a January 14th, 2009,                    12:29:29

2    e-mail from Dr. Raleigh to Mr. Jacobs again,                    12:29:34

3    saying, "Thanks again for the chat.  Would you                    12:29:38

4    like me to wait to hear from Dave Wise, or do you                    12:29:40

5    want me to give him a call?"                    12:29:44

6              And I'm assuming the Dave Wise                    12:29:45

7    mentioned in this e-mail is you?                    12:29:48

8      A.  Yes.                    12:29:50

9              MR. KAYS:  Objection, form.                    12:29:50

10     Q.  (BY MR. HEJNY)  And Mr. Jacobs indicates                    12:29:52

11   that you would call Dr. Raleigh.                    12:29:54

12              Do you recall reaching out to                    12:29:56

13   Dr. Raleigh in response to a conversation that                    12:29:58

14   you had with Mr. Jacobs?                    12:30:00

15     A.  I don't recall specifically, but I -- I'm                    12:30:05

16   sure I followed up.                    12:30:08

17     Q.  Do you recall the substance of any                    12:30:09

18   conversation that you had with Dr. Raleigh during                    12:30:14

19   this time frame where you contacted him at the                    12:30:16

20   request of Paul Jacobs?                    12:30:19

21     A.  At this point, no.                    12:30:25

22     Q.  Do you remember talking to Mr. Jacobs                    12:30:25

23   about this potential opportunity that Dr. Raleigh                    12:30:29

24   was bringing to Qualcomm?                    12:30:32

25     A.  Not at this point, no.                    12:30:37

| | | |
|---|---|---|
| 1 | Q.  Okay.  So you mentioned that during this | 12:30:39 |
| 2 | time, during your tenure at Qualcomm, during this | 12:30:41 |
| 3 | time, that you were involved in the business side | 12:30:45 |
| 4 | of potential acquisitions, correct? | 12:30:47 |
| 5 | A.  Correct. | 12:30:50 |
| 6 | Q.  And is that why Mr. Jacobs would have | 12:30:50 |
| 7 | asked you to get involved at this point in time? | 12:30:54 |
| 8 | MR. KAYS:  Objection, form. | 12:30:58 |
| 9 | A.  Yeah.  I mean, judging from this e-mail | 12:31:02 |
| 10 | alone, it could have been for acquisition, could | 12:31:05 |
| 11 | have been for -- they're looking for an | 12:31:09 |
| 12 | investment.  It could have -- it could have been | 12:31:11 |
| 13 | for a lot of reasons, bus- -- you know, different | 12:31:12 |
| 14 | business-related reasons. | 12:31:17 |
| 15 | Q.  (BY MR. HEJNY)  As you sit here today, you | 12:31:18 |
| 16 | don't recall any details about conversations with | 12:31:19 |
| 17 | Mr. Jacobs about the initial conversations with | 12:31:21 |
| 18 | Dr. Raleigh and his interest in partnering with | 12:31:24 |
| 19 | Qualcomm? | 12:31:29 |
| 20 | A.  Yeah, I don't recall. | 12:31:29 |
| 21 | Q.  Do you have any recollection as to whether | 12:31:31 |
| 22 | or not Qualcomm was interested in partnering with | 12:31:37 |
| 23 | Dr. Raleigh at this point in time, in January | 12:31:40 |
| 24 | of 2009? | 12:31:47 |
| 25 | A.  No, no recollection beyond this e-mail. | 12:31:47 |

1    Q.  And -- and this e-mail's dated January,          12:31:50

2    2009.                                                12:31:55

3            Do you recall any conversations that         12:31:56

4    you had with Mr. Jacobs prior to this e-mail         12:31:57

5    related to Dr. Raleigh and -- and the work that      12:32:00

6    he did at Qualcomm and potential partnerships        12:32:04

7    with Dr. Raleigh going forward?                      12:32:07

8            MR. KAYS:  Two objections:  One,             12:32:11

9    form; and then also the admonition that, to the      12:32:13

10   extent you recall, communications that were only     12:32:16

11   with Mr. Jacobs where a lawyer was not involved,     12:32:19

12   you could -- you can answer.  If there was a         12:32:24

13   lawyer involved, obviously that would be             12:32:27

14   privileged, and I would instruct you not to          12:32:29

15   answer.                                              12:32:31

16   A.  I don't recall anything, no.                     12:32:34

17   Q.  (BY MR. HEJNY)  So you don't recall any          12:32:36

18   conversations with just Mr. Jacobs or with          12:32:38

19   Mr. Jacobs and an attorney involved, correct?        12:32:42

20   A.  No.                                              12:32:47

21           MR. HEJNY:  Let's pull up                    12:33:00

22   Exhibit 5, please.                                   12:33:02

23           (Whereupon Exhibit Number 5 was              12:33:04

24            marked for identification.)                 12:33:32

25   Q.  (BY MR. HEJNY)  Mr. Wise, I'm taking you         12:33:32

1   through a series of documents chronologically          12:33:33

2   because I know this was a long time ago, and I         12:33:36

3   want to share these with you kind of in a time         12:33:38

4   frame order to kind of help you frame these            12:33:40

5   issues.                                                12:33:44

6            Does that make sense?                         12:33:44

7   A.  Yes.                                               12:33:47

8   Q.  So Exhibit 5, which is up on the screen,           12:33:48

9   is a Mutual Nondisclosure Agreement that is dated      12:33:52

10  January 22nd, 2009.                                    12:34:02

11           Do you see that?                              12:34:03

12  A.  Yes.                                               12:34:03

13           MR. HEJNY:  And just for the                  12:34:05

14  record, the Bates number at the bottom right-hand      12:34:06

15  side of the -- of the page is HW397-0046232            12:34:08

16  continuing through 236.                                12:34:17

17  Q.  (BY MR. HEJNY)  Now, the -- the agreement          12:34:22

18  indicates that it's between Qualcomm and               12:34:23

19  Headwater Partners I, LLC.                             12:34:28

20           Do you see that?                              12:34:30

21  A.  Yes.                                               12:34:32

22  Q.  Does the Headwater Partners I, LLC, ring a         12:34:33

23  bell with you?                                         12:34:38

24  A.  Not beyond what's on the page here.                12:34:42

25  Q.  Okay.  Well, we're not going to read               12:34:46

| | | |
|---|---|---|
| 1 | through the entire nondisclosure agreement; but | 12:34:50 |
| 2 | you understand the intent of a nondisclosure | 12:34:54 |
| 3 | agreement, correct? | 12:34:57 |
| 4 | A. Yes. | 12:34:58 |
| 5 | Q. And on the last page of the document -- | 12:34:58 |
| 6 | MR. HEJNY: If we can flip down -- | 12:35:04 |
| 7 | Q. (BY MR. HEJNY) -- you'll see that it's | 12:35:07 |
| 8 | signed for Headwater Partners I by Greg Raleigh | 12:35:09 |
| 9 | as chief executive. | 12:35:12 |
| 10 | Do you see that? | 12:35:13 |
| 11 | A. Yes. | 12:35:15 |
| 12 | Q. And it's executed on behalf of Qualcomm, | 12:35:15 |
| 13 | Incorporated, by Donald J. Sullivan, correct? | 12:35:20 |
| 14 | A. Yes. | 12:35:24 |
| 15 | Q. And this appears to be a Qualcomm | 12:35:24 |
| 16 | nondisclosure agreement. At the very bottom of | 12:35:32 |
| 17 | the page, it says, "Qualcomm proprietary." | 12:35:34 |
| 18 | Have you -- have you worked with | 12:35:38 |
| 19 | nondisclosure agreements like this in the past | 12:35:39 |
| 20 | during your employment at Qualcomm? | 12:35:41 |
| 21 | MR. KAYS: Objection, form. | 12:35:45 |
| 22 | A. Yeah, I've worked with nondisclosure | 12:35:49 |
| 23 | agreements over my time at Qualcomm, yes. | 12:35:53 |
| 24 | Q. (BY MR. HEJNY) And do you know why | 12:35:56 |
| 25 | Qualcomm entered into this nondisclosure | 12:35:57 |

1   agreement with Headwater?                              12:36:01

2            MR. KAYS:  Again, I'll -- and to              12:36:03

3   the extent you have an understanding separate and      12:36:04

4   apart from communications with lawyers, like           12:36:06

5   Mr. Sullivan who signed this document, you can         12:36:09

6   answer; if not, I would instruct you not to            12:36:12

7   answer.                                                12:36:16

8      A.  Standard practice for strategic                 12:36:20

9   engagements.                                           12:36:23

10     Q.  (BY MR. HEJNY)  And presumably it's to          12:36:25

11  protect confidential information that would be         12:36:28

12  disclosed between the parties, correct?                12:36:29

13     A.  Yeah, I believe that's the purpose.             12:36:33

14     Q.  Did Headwater and Dr. Raleigh disclose          12:36:35

15  confidential information to Qualcomm in                12:36:41

16  connection with this nondisclosure agreement?          12:36:43

17            MR. KAYS:  Objection, form.                  12:36:48

18     A.  I don't know.  I don't recall.                  12:36:51

19     Q.  (BY MR. HEJNY)  You don't recall what, if       12:36:54

20  any, information was actually disclosed?               12:36:55

21     A.  No.                                             12:36:59

22     Q.  Do you recall anything about the nature of      12:36:59

23  the potential partnership between Headwater and        12:37:03

24  Qualcomm?                                              12:37:06

25     A.  No.  I mean, that -- honestly, that's 16        12:37:12

1   years ago, so I don't, sorry.                          12:37:17

2       Q.  Understood.                                     12:37:19

3           Do you recall any conversations                 12:37:22

4   with -- with Dr. Raleigh or Headwater following        12:37:42

5   the entry of this nondisclosure agreement              12:37:45

6   regarding the potential partnership between            12:37:47

7   Headwater and Qualcomm?                                12:37:50

8       A.  No.                                             12:37:54

9       Q.  Do you recall any meetings with Headwater      12:37:54

10  or Dr. Raleigh?                                         12:38:01

11      A.  I don't recall any, no.                         12:38:07

12      Q.  Do you recall any discussions as to            12:38:10

13  whether Dr. Raleigh had filed or intended to file      12:38:13

14  a patent application in January 2009 that would        12:38:16

15  impact the relationship between Headwater and          12:38:20

16  Qualcomm?                                               12:38:23

17          MR. KAYS:  And just point of                    12:38:25

18  clarification, Counsel, your -- discussions with       12:38:27

19  Mr. Raleigh?  Is that -- is that the intent of         12:38:30

20  the question?                                           12:38:31

21          MR. HEJNY:  Yes.  Do you recall                 12:38:33

22  any --                                                  12:38:34

23          MR. KAYS:  Okay.                                12:38:34

24          MR. HEJNY:  I'll restate the                    12:38:35

25  question.                                               12:38:37

| | | |
|---|---|---|
| 1 | MR. KAYS:  Thank you. | 12:38:37 |
| 2 | Q.  (BY MR. HEJNY)  Do you recall any | 12:38:37 |
| 3 | conversations with Headwater or Dr. Raleigh | 12:38:39 |
| 4 | regarding the filing of a patent application in | 12:38:42 |
| 5 | January of 2009 that may have had some bearing on | 12:38:44 |
| 6 | the relationship between Headwater, Dr. Raleigh, | 12:38:47 |
| 7 | and Qualcomm? | 12:38:50 |
| 8 | A.  I don't recall. | 12:38:53 |
| 9 | Q.  Do you recall a potential intellectual | 12:38:55 |
| 10 | property ownership dispute between Dr. Raleigh | 12:39:01 |
| 11 | and Qualcomm? | 12:39:04 |
| 12 | A.  No. | 12:39:11 |
| 13 | Q.  Do you know anything at all about patent | 12:39:18 |
| 14 | applications that were filed by Dr. Raleigh? | 12:39:21 |
| 15 | A.  No. | 12:39:27 |
| 16 | Q.  Okay.  Let's move on to Exhibit 6, please. | 12:39:27 |
| 17 | (Whereupon Exhibit Number 6 was | 12:39:35 |
| 18 | marked for identification.) | 12:40:09 |
| 19 | Q.  (BY MR. HEJNY)  Okay.  Exhibit 6 is a | 12:40:09 |
| 20 | March 4, 2009, e-mail from Gina Lombardi to Greg | 12:40:12 |
| 21 | Raleigh and Jim Straight and you are copied in | 12:40:19 |
| 22 | that e-mail. | 12:40:23 |
| 23 | Do you see that, Mr. Wise? | 12:40:24 |
| 24 | A.  Yes. | 12:40:27 |
| 25 | MR. HEJNY:  And for the record, | 12:40:29 |

1    the Bates number on this document is          12:40:31

2    HW397-0051416.                                 12:40:35

3        Q.  (BY MR. HEJNY)  And just for your      12:40:41

4    edification, mimoguy@mac.com, that e-mail address  12:40:42

5    is the e-mail address for Greg Raleigh.  Okay?  12:40:47

6        A.  Okay.                                   12:40:53

7        Q.  Who was Gina Lombardi?                  12:40:54

8        A.  She was a senior executive at the company,  12:41:00

9    at Qualcomm, at the time.                       12:41:03

10       Q.  And what was her role at the company?   12:41:05

11       A.  I honestly don't recall.                12:41:08

12       Q.  Do you recall why you and Ms. Lombardi  12:41:15

13   were teamed to work on this discussion with     12:41:19

14   Dr. Raleigh and Jim Straight?                   12:41:22

15       A.  Yeah.  Let me just read this real quick.  12:41:26

16       Q.  Yeah, please.  Any -- and just for the  12:41:29

17   record, Mr. Wise, any time I put a document in   12:41:31

18   front of you, you know, take your time and read  12:41:34

19   through it; and I should have instructed you on  12:41:36

20   that earlier.  So please take a look, read       12:41:38

21   through the e-mail, and then we can ask          12:41:40

22   questions.                                       12:41:42

23       A.  Okay.  I'm sorry, can you repeat the     12:42:10

24   question?                                        12:42:12

25       Q.  Sure.  Let me step back and ask you a    12:42:12

| | | |
|---|---|---|
| 1 | different question. | 12:42:15 |
| 2 | The subject says, "ItsOn Next Steps." | 12:42:15 |
| 3 | Are you familiar with an entity or a | 12:42:20 |
| 4 | company called "ItsOn"? | 12:42:23 |
| 5 | A.  I recall the name, yes. | 12:42:24 |
| 6 | Q.  Were you aware that Dr. Raleigh formed | 12:42:25 |
| 7 | ItsOn before he left Qualcomm in September | 12:42:31 |
| 8 | of 2008? | 12:42:42 |
| 9 | A.  No. | 12:42:42 |
| 10 | Q.  Are you -- were you aware that ItsOn was a | 12:42:44 |
| 11 | company that was owned by Dr. Raleigh? | 12:42:47 |
| 12 | A.  Yes. | 12:42:48 |
| 13 | Q.  And my first question was, do you recall | 12:42:49 |
| 14 | why you and Ms. Lombardi were teamed together to | 12:42:58 |
| 15 | work on this discussion with Dr. Raleigh and | 12:43:01 |
| 16 | Mr. Straight? | 12:43:07 |
| 17 | A.  Only that I assume it's -- based on this | 12:43:11 |
| 18 | e-mail, it's a follow-up to the -- you know, | 12:43:13 |
| 19 | evaluating whether there was anything to be -- | 12:43:17 |
| 20 | (garbled audio). | 12:43:17 |
| 21 | THE COURT REPORTER:  I'm sorry, | 12:43:17 |
| 22 | sir.  Anything to be what? | 12:43:25 |
| 23 | THE WITNESS:  Anything to be done | 12:43:26 |
| 24 | evaluating a partnership with the company, with | 12:43:26 |
| 25 | ItsOn. | 12:43:30 |

| | | |
|---|---|---|
| 1 | THE COURT REPORTER:  Thank you. | 12:43:32 |
| 2 | Q.  (BY MR. HEJNY)  So looks like there was a | 12:43:32 |
| 3 | meeting.  This is dated March 4th.  And the | 12:43:34 |
| 4 | e-mail from Ms. Lombardi says, "Thanks so much | 12:43:37 |
| 5 | for hosting us yesterday." | 12:43:41 |
| 6 | Do you recall a meeting with | 12:43:42 |
| 7 | Dr. Raleigh and Mr. Straight during this time | 12:43:43 |
| 8 | period? | 12:43:49 |
| 9 | A.  I don't. | 12:43:49 |
| 10 | Q.  And the e-mail says, "We achieved what we | 12:43:51 |
| 11 | wanted to with regard to the technology in IP | 12:43:57 |
| 12 | areas.  We will need to do some patent searches | 12:44:00 |
| 13 | and investigations, which will take several | 12:44:03 |
| 14 | weeks, but have grown to understand the value of | 12:44:06 |
| 15 | ItsOn." | 12:44:08 |
| 16 | Do you have any recollection of what | 12:44:09 |
| 17 | was meant with respect to "patent searches and | 12:44:11 |
| 18 | investigations"? | 12:44:15 |
| 19 | A.  Not beyond the words in the e-mail. | 12:44:18 |
| 20 | Q.  In your capacity at Qualcomm in the 2009 | 12:44:23 |
| 21 | time period, when you were looking at business | 12:44:26 |
| 22 | relationships with other entities, did you | 12:44:30 |
| 23 | typically do patent searches and investigations | 12:44:32 |
| 24 | before entering into an agreement? | 12:44:37 |
| 25 | A.  No. | 12:44:40 |

1    Q.  Okay.  But you don't have any specific          12:44:43

2    recollection as to the patent searches referenced   12:44:48

3    in this e-mail?                                      12:44:50

4    A.  I don't, sorry.                                  12:44:52

5    Q.  It says, "Our next step is to have a             12:44:54

6    discussion about what is the right relationship      12:45:01

7    between us to bring this technology to market."      12:45:03

8        Do you see that?                                 12:45:05

9    A.  Yes.                                             12:45:06

10   Q.  Do you recall any discussions that you and       12:45:07

11   Ms. Lombardi had at this time period regarding       12:45:11

12   next steps and the relationships with ItsOn and      12:45:15

13   Dr. Raleigh -- Dr. Raleigh?                          12:45:20

14   A.  No.                                              12:45:21

15   Q.  So you don't have any recollection at all        12:45:36

16   as to why Dr. Raleigh and ItsOn wanted to partner    12:45:38

17   with Qualcomm; is that correct?                      12:45:41

18   A.  No recollection other than these e-mails.        12:45:47

19   Q.  Why would Ms. Lombardi have become               12:45:50

20   involved in the process at this point?               12:46:04

21        MR. KAYS:  Objection, form.                     12:46:09

22   A.  I don't know.  I'm not sure.                     12:46:13

23   Q.  (BY MR. HEJNY)  Did you typically work           12:46:14

24   with Ms. Lombardi on projects like this?             12:46:15

25   A.  Not typically.  Might have been an area          12:46:23

1     that she was focusing on.                              12:46:27

2        Q.  The e-mail notes that, "We would like to       12:46:31

3     host you in SD."                                        12:46:33

4           I'm assuming that's "San Diego"?                 12:46:34

5        A.  Yeah, correct.                                  12:46:38

6        Q.  Do you recall any later meetings with          12:46:40

7     Dr. Raleigh or Mr. Straight in San Diego?              12:46:44

8        A.  I recall there was -- there was a process,      12:46:51

9     I'm sure, that we went through and there was           12:46:53

10    probably meetings, but I don't recall anything         12:46:55

11    specific.                                              12:46:57

12       Q.  And Ms. Lombardi's title at the bottom of      12:47:02

13    the page, it says, "Senior Vice President,             12:47:06

14    Special Projects."                                     12:47:09

15          What is "special projects" within the           12:47:09

16    context of the Qualcomm organization?                  12:47:11

17       A.  You know, I don't -- I don't know -- I         12:47:16

18    don't think that was a specific title that --          12:47:18

19    what -- I would know what it was referring to,         12:47:21

20    but -- other than special projects.                    12:47:26

21       Q.  Got it, thank you.                              12:47:28

22          MR. KAYS:  Perhaps projects that                12:47:30

23    were special, Counsel.                                 12:47:33

24          MR. HEJNY:  That's too easy an                  12:47:34

25    answer.                                                12:47:36

| | | |
|---|---|---|
| 1 | Q.  (BY MR. HEJNY)  Okay.  Let's -- let's move | 12:47:43 |
| 2 | on to Exhibit 7, please. | 12:47:45 |
| 3 | (Whereupon Exhibit Number 7 was | 12:47:48 |
| 4 | marked for identification.) | 12:47:53 |
| 5 | Q.  (BY MR. HEJNY)  And as that exhibit's | 12:47:53 |
| 6 | being loaded, Mr. Wise, do you recall any | 12:47:55 |
| 7 | potential partnerships between Qualcomm and Best | 12:47:57 |
| 8 | Buy? | 12:48:02 |
| 9 | A.  No. | 12:48:02 |
| 10 | Q.  You don't recall any potential | 12:48:08 |
| 11 | partnerships whereby Qualcomm would partner with | 12:48:11 |
| 12 | Best Buy and potentially provide chipsets for | 12:48:14 |
| 13 | handheld phones? | 12:48:17 |
| 14 | A.  I don't recall, no. | 12:48:21 |
| 15 | Q.  Okay.  So the document that's being put in | 12:48:23 |
| 16 | front of you now, Exhibit 7, is a presentation, | 12:48:32 |
| 17 | and the Bates number at the bottom right-hand | 12:48:36 |
| 18 | corner is HW397-00018717 and it's titled "Best | 12:48:39 |
| 19 | Buy E2E Device Strategy, Qualcomm Meeting, | 12:48:46 |
| 20 | 2/25/09." | 12:48:52 |
| 21 | Do you see that? | 12:48:53 |
| 22 | A.  Yes. | 12:48:54 |
| 23 | Q.  Do you recall having a meeting with | 12:48:54 |
| 24 | Dr. Raleigh in February of 2009 regarding this | 12:49:00 |
| 25 | Best Buy E2E device strategy? | 12:49:04 |

1    A.  I don't recall, no.                                    12:49:13

2    Q.  Do you recall any discussions with -- with          12:49:13

3  Mr. Jacobs about this potential partnership with           12:49:16

4  Dr. Raleigh and Best Buy?                                  12:49:20

5              MR. KAYS:  Again, I'd just                      12:49:24

6  admonish you to -- if those discussions were just          12:49:25

7  with Mr. Jacobs, if you recall any, but not with           12:49:29

8  counsel present as well, you can answer.                   12:49:33

9    A.  I don't recall.                                       12:49:38

10   Q.  (BY MR. HEJNY)  And we saw the earlier               12:49:42

11 e-mail, which is Exhibit 6, which is with                   12:49:45

12 Ms. Lombardi's e-mail that said, "Thanks so much           12:49:47

13 for hosting us yesterday."                                  12:49:50

14          Do you -- do you know if this                      12:49:52

15 presentation may have been presented by                     12:49:53

16 Dr. Raleigh at that meeting that included both              12:49:55

17 you and Ms. Lombardi?                                        12:49:57

18   A.  I don't know.                                          12:50:00

19              MR. HEJNY:  If we could turn to                12:50:08

20 the Bates page ending 729.                                   12:50:10

21   Q.  (BY MR. HEJNY)  And here we have a portion           12:50:15

22 of the presentation that relates to a potential            12:50:25

23 partnership with Best Buy that relates to                   12:50:31

24 on-device technology.                                        12:50:35

25          Do you recall any discussions with               12:50:37

1    Dr. Raleigh and his team regarding on-device          12:50:40

2    technology or on-device retail of service and          12:50:44

3    content?                                               12:50:50

4        A.  Let me just read this.                         12:50:50

5        Q.  Sure.                                          12:50:52

6        A.  I don't recall.                                12:51:15

7        Q.  Now, you mentioned that you were mostly on     12:51:17

8    -- on the business side in 2009, correct?              12:51:22

9        A.  Finance and business, yeah.                    12:51:27

10       Q.  Was Ms. Lombardi also on the business          12:51:29

11   side, or was she also on the technical side of         12:51:31

12   the Qualcomm team?                                     12:51:35

13       A.  Business side.                                 12:51:36

14       Q.  If you were having technical meetings with     12:51:37

15   Dr. Raleigh, would it have been common for             12:51:42

16   members of the Qualcomm technical team to have         12:51:44

17   been present, as well?                                 12:51:49

18       A.  If we were getting into technical details,     12:51:50

19   likely.                                                12:51:53

20       Q.  So this document, which relates to, you        12:51:53

21   know, a Best Buy E2E strategy presentation made        12:51:58

22   to Qualcomm, would you have expected Qualcomm          12:52:02

23   technical personnel to have participated in that       12:52:08

24   meeting?                                               12:52:12

25              MR. KAYS:  Object to form.                  12:52:12

1      A.  I don't know.  I -- I -- I'm not sure of          12:52:14

2    the -- I don't know how much depth, technical          12:52:16

3    depth, was gone into in this presentation.             12:52:20

4      Q.  (BY MR. HEJNY)  Did you have team members        12:52:23

5    on your team that were -- had technical capacity       12:52:26

6    to understand the subject matter of these              12:52:30

7    presentations and participate in these types of        12:52:32

8    conversations?                                         12:52:34

9            MR. KAYS:  Object to form.                     12:52:36

10     A.  No, not on my team, but we would involve         12:52:38

11   the people that were necessary.                        12:52:42

12     Q.  (BY MR. HEJNY)  Do you recall any -- any         12:52:44

13   technical meetings in which you and Ms. Lombardi       12:52:46

14   were involved that also involved Qualcomm              12:52:49

15   technical personnel?                                   12:52:52

16     A.  No.                                              12:52:55

17     Q.  Okay.                                            12:53:04

18            MR. HEJNY:  Let's -- this is a                12:53:06

19   good point for a break.  Why don't we take a           12:53:10

20   10-minute break, and then we can come back and         12:53:12

21   jump into the next document, if that makes sense.      12:53:15

22            Is that good with you, David?                 12:53:17

23            MR. KAYS:  Yeah, that's fine with             12:53:20

24   me.  Let's all mute.                                   12:53:23

25            MR. HEJNY:  All right.  We'll be              12:53:25

|   |   |   |
|---|---|---|
| 1 | back at roughly 1:03 Central. | 12:53:27 |
| 2 | THE VIDEOGRAPHER:  The time is | 12:53:29 |
| 3 | 12:53 p.m.  We are going off the record. | 12:53:31 |
| 4 | (Break taken from 12:53 p.m. to | 12:53:33 |
| 5 | 1:02 p.m.) | 13:02:15 |
| 6 | THE VIDEOGRAPHER:  The time is | 13:02:16 |
| 7 | 1:03 p.m.  We are back on the record. | 13:03:05 |
| 8 | MR. HEJNY:  Okay.  Charlie, could | 13:03:09 |
| 9 | you please pull up Exhibit 8, please? | 13:03:10 |
| 10 | EXHIBIT TECH:  No problem. | 13:03:13 |
| 11 | (Whereupon Exhibit Number 8 was | 13:03:14 |
| 12 | marked for identification.) | 13:03:15 |
| 13 | Q.  (BY MR. HEJNY)  Mr. Wise, the technician | 13:03:18 |
| 14 | is currently loading Exhibit 8, which will be an | 13:03:20 |
| 15 | e-mail thread, and the first Bates number at the | 13:03:24 |
| 16 | bottom right-hand page is -- or the page is | 13:03:30 |
| 17 | HW397-00051418 and it runs through 420. | 13:03:33 |
| 18 | And you'll see at the top -- the first | 13:03:44 |
| 19 | e-mail at the top of the page is actually the | 13:03:47 |
| 20 | last e-mail in the sequence, but you see it's | 13:03:50 |
| 21 | from Gina Lombardi to Jim Straight and you are | 13:03:52 |
| 22 | copied, correct? | 13:03:55 |
| 23 | A.  Yes. | 13:03:56 |
| 24 | Q.  I want to start with the -- with the first | 13:03:57 |
| 25 | e-mail in the string, which is a -- the second to | 13:04:00 |

| 1  | last page.  There.                           | 13:04:05 |
| 2  |         Okay.  So this is an April 21st, 2009, | 13:04:06 |
| 3  | e-mail from Gina Lombardi to Jim Straight and | 13:04:13 |
| 4  | Greg Raleigh, and you see that you're -- you are | 13:04:17 |
| 5  | copied on this e-mail, as well, correct?     | 13:04:19 |
| 6  |    A.  Yes.  Let me -- let me just read it.   | 13:04:22 |
| 7  |    Q.  Yeah, sure.                            | 13:04:30 |
| 8  |    A.  Okay.                                  | 13:05:00 |
| 9  |    Q.  Okay.  Can you see that the -- the e-mail, | 13:05:00 |
| 10 | which is -- has the subject of "ItsOn," in the | 13:05:04 |
| 11 | body of the e-mail, there's something called a | 13:05:08 |
| 12 | "Seed Investment."                            | 13:05:10 |
| 13 |         Do you see that?                      | 13:05:11 |
| 14 |    A.  Yes.                                   | 13:05:12 |
| 15 |    Q.  And was this an offer by Qualcomm to   | 13:05:12 |
| 16 | invest in ItsOn?                              | 13:05:16 |
| 17 |    A.  Looks to be, yes.                      | 13:05:22 |
| 18 |    Q.  Do you recall this e-mail or this      | 13:05:23 |
| 19 | potential investment by Qualcomm in ItsOn?   | 13:05:28 |
| 20 |    A.  Beyond the e-mail, no.                 | 13:05:34 |
| 21 |    Q.  But in the e-mail, it looks like Qualcomm | 13:05:36 |
| 22 | was willing to invest $2 million plus a license | 13:05:41 |
| 23 | to the relevant Qualcomm IP for a 20 percent  | 13:05:47 |
| 24 | stake.                                        | 13:05:50 |
| 25 |         Do you see that?                      | 13:05:50 |

1    A.  Yes.                                            13:05:53

2    Q.  And presumably that's a 20 percent stake        13:05:54

3  in ItsOn, correct?                                   13:05:58

4    A.  I believe so.                                   13:06:02

5    Q.  And what is a "1X liquidation preference"?      13:06:04

6    A.  It's a -- a term associated with an             13:06:11

7  investment in a private company.                     13:06:14

8    Q.  And can you explain it to me, how it would      13:06:17

9  relate to this potential agreement with ItsOn?       13:06:19

10    A.  It would be some sort of protection over       13:06:23

11  the two-million-dollar investment in a              13:06:26

12  liquidation.                                         13:06:29

13    Q.  And what is a "full ratchet                    13:06:31

14  anti-dilution"?                                      13:06:35

15    A.  Another term in venture investments,           13:06:38

16  private companies, around protecting the value of   13:06:44

17  our investment going forward as new money comes     13:06:49

18  in.                                                 13:06:54

19    Q.  So it would protect Qualcomm's 20 percent      13:06:54

20  stake?                                              13:06:57

21    A.  Right.                                         13:06:57

22    Q.  And prevent it from being diluted?             13:06:57

23    A.  Yes.                                           13:07:01

24    Q.  And it looks like in this seed investment,     13:07:02

25  Qualcomm would be committing to support             13:07:06

```
 1   commercialization of ItsOn software on Qualcomm     13:07:08
 2   chips?                                              13:07:12
 3      A.  Yes.                                         13:07:14
 4      Q.  And the last item in that list is           13:07:15
 5   "resolution of IP ownership issue."                 13:07:21
 6           Do you see that?                            13:07:23
 7      A.  Yes.                                         13:07:24
 8      Q.  And I asked you before if you recalled a    13:07:24
 9   dispute between Dr. Raleigh and Qualcomm            13:07:29
10   regarding an IP ownership issue.                    13:07:31
11           Does this refresh your recollection?       13:07:33
12      A.  No.                                          13:07:38
13      Q.  So as you sit here today, you have no       13:07:41
14   recollection whatsoever of the ownership interest  13:07:44
15   dispute between Dr. Raleigh and Qualcomm?           13:07:48
16      A.  Honestly, I don't.                           13:07:54
17           MR. HEJNY:  Let's move up to the           13:08:03
18   next e-mail in the chain, please.                   13:08:05
19      Q.  (BY MR. HEJNY)  And this e-mail begins at   13:08:06
20   the bottom of Bates 418.                            13:08:08
21           And so this is an e-mail from Jim          13:08:10
22   Straight, who is at Headwater, to Gina Lombardi     13:08:13
23   and Greg Raleigh and you are copied.                13:08:18
24           Do you see that?                            13:08:19
25      A.  Yes.                                         13:08:21
```

1    Q.  And it looks like in this portion of -- of          13:08:22

2    the process, there is a due diligence going on.         13:08:26

3           Do you see that?                                 13:08:29

4    A.  Can I just read the e-mail?                         13:08:31

5    Q.  Yeah, please.  Please take your time and            13:08:32

6    read the e-mail.                                        13:08:35

7           THE WITNESS:  And can you just                   13:08:36

8    scroll up a little bit on it, so we can... yeah,        13:08:38

9    that's good.  Thanks.                                   13:08:44

10          Okay.  Can you scroll back up a                  13:09:41

11   little bit now?  Okay.                                  13:09:44

12   Q.  (BY MR. HEJNY)  So in this e-mail,                   13:09:57

13   Mr. Straight from Headwater identifies                  13:09:59

14   diligence -- a diligence items action list.             13:10:02

15          Do you see that?                                 13:10:05

16   A.  Yes.                                                13:10:06

17   Q.  And do you recall any meetings with                 13:10:06

18   Headwater or Dr. Raleigh in which the seed              13:10:11

19   investment from the first e-mail was discussed in       13:10:16

20   detail?                                                 13:10:21

21   A.  I don't.                                            13:10:21

22   Q.  And item (1) on the diligence items action          13:10:23

23   list states that, "This week Qualcomm will              13:10:27

24   transmit to ItsOn/HPI the potential prior art           13:10:30

25   search results that Qualcomm believes to be             13:10:35

| | |
|---|---|
| 1  relevant." | 13:10:37 |
| 2        You see that? | 13:10:38 |
| 3    A.  Yes. | 13:10:39 |
| 4    Q.  Do you know what "prior art" is, Mr. Wise? | 13:10:40 |
| 5    A.  Not [sic] familiar with the term. | 13:10:46 |
| 6    Q.  So you don't understand the term "prior | 13:10:48 |
| 7  art" from a -- from a patent or an IP standpoint? | 13:10:51 |
| 8    A.  No.  I said I'm familiar with the term. | 13:10:55 |
| 9    Q.  Oh, I'm sorry.  I misunderstood you. | 13:10:58 |
| 10        Do you know whether Qualcomm ever sent | 13:11:01 |
| 11  ItsOn or Headwaters the results of any prior art | 13:11:06 |
| 12  search that was conducted as part of this | 13:11:09 |
| 13  process? | 13:11:11 |
| 14    A.  Not beyond what we -- what's said here in | 13:11:14 |
| 15  the e-mail. | 13:11:17 |
| 16        MR. HEJNY:  And let's scroll down | 13:11:19 |
| 17  to item (4).  Maybe scroll up to item four, | 13:11:21 |
| 18  sorry.  It's on the next page. | 13:11:34 |
| 19    Q.  (BY MR. HEJNY)  Item (4) says, the "Next | 13:11:36 |
| 20  week, Qualcomm and ItsOn/HPI will have a | 13:11:38 |
| 21  face-to-face meeting same day or next morning | 13:11:43 |
| 22  immediately after meetings listed in diligence | 13:11:45 |
| 23  items (2) and (3) for Qualcomm to disclose to | 13:11:49 |
| 24  ItsOn/HPI the facts, documents, and any other | 13:11:52 |
| 25  information that Qualcomm possesses that Qualcomm | 13:11:55 |

| | | |
|---|---|---|
| 1 | believes support the Qualcomm claim that it may | 13:11:59 |
| 2 | own some" or -- "some portion of ItsOn's IP." | 13:12:03 |
| 3 | Do you see that? | 13:12:08 |
| 4 | A.  Yes. | 13:12:08 |
| 5 | Q.  Do you recall discussions with Dr. Raleigh | 13:12:08 |
| 6 | or Ms. Lombardi regarding this ownership issue, | 13:12:11 |
| 7 | Mr. Wise? | 13:12:17 |
| 8 | A.  I don't. | 13:12:19 |
| 9 | Q.  Do you recall the facts, documents, and | 13:12:20 |
| 10 | any other information that Qualcomm possessed | 13:12:26 |
| 11 | suggesting that it may own some portion of | 13:12:30 |
| 12 | ItsOn's IP? | 13:12:33 |
| 13 | A.  I don't recall, beyond this e-mail. | 13:12:35 |
| 14 | Q.  Do you know if this meeting ever took | 13:12:38 |
| 15 | place, this face-to-face meeting? | 13:12:41 |
| 16 | A.  I don't know.  No reason to assume it | 13:12:43 |
| 17 | didn't, but I don't know. | 13:12:49 |
| 18 | Q.  Do you recall, regardless of whether this | 13:12:52 |
| 19 | meeting took place, any -- any other evidence or | 13:12:56 |
| 20 | information that Qualcomm had that led it to | 13:12:58 |
| 21 | believe that it owned some portion of ItsOn's IP? | 13:13:01 |
| 22 | MR. KAYS:  Again, I'll advise the | 13:13:05 |
| 23 | witness that to the extent such evidence or | 13:13:06 |
| 24 | knowledge was communicated to Headwater, that's | 13:13:09 |
| 25 | fair game, but as -- as framed, it -- the | 13:13:13 |

```
1   question potentially invades the attorney/client        13:13:17
2   privilege, so...                                        13:13:20
3      A.  I don't recall anything.                         13:13:23
4      Q.  (BY MR. HEJNY)  Do you recall when               13:13:35
5   Qualcomm first informed Dr. Raleigh that it             13:13:37
6   believed it owned some portion of ItsOn's IP?           13:13:40
7      A.  No.                                               13:13:48
8      Q.  Do you understand that Qualcomm                   13:13:48
9   consistently maintained that it had an ownership         13:13:57
10  interest in ItsOn's IP?                                  13:14:00
11              MR. DAVIS:  Objection, form.                 13:14:03
12     A.  I don't recall beyond what we're seeing in        13:14:08
13  some of these e-mails.                                   13:14:13
14     Q.  (BY MR. HEJNY)  Do you recall any                 13:14:15
15  discussions internally at Qualcomm as to when            13:14:20
16  Dr. Raleigh first invented the IP in question?           13:14:23
17     A.  No.                                               13:14:31
18     Q.  And going to the very first e-mail on the         13:14:41
19  first page --                                            13:14:43
20     A.  Can you hang on one second?                       13:14:45
21     Q.  Yes, please.  Take your time.                     13:14:47
22     A.  I'm sorry, can you repeat the question?           13:15:05
23              MR. HEJNY:  Can you read back the            13:15:10
24  question, please?                                        13:15:11
25              (Discussion with the court                   13:15:12
```

1    reporter, clarifying read-back.)                    13:15:12

2              MR. KAYS:  I don't think you'd            13:15:12

3    asked a question.                                   13:15:12

4              THE COURT REPORTER:  Right.               13:15:12

5              MR. HEJNY:  Let's just go back --         13:15:22

6    I just want to make sure.                           13:15:23

7              THE WITNESS:  Okay.                       13:15:23

8              MR. HEJNY:  Let's go back to --           13:15:25

9              THE WITNESS:  I'm sorry about             13:15:25

10   that.                                               13:15:25

11             MR. HEJNY:  I just want to make           13:15:26

12   sure that I didn't leave something hanging.         13:15:28

13              (Whereupon the requested testimony       13:15:40

14               was read back as follows:               13:15:40

15              "Do you recall any discussions           13:14:19

16              internally at Qualcomm as to when        13:14:20

17              Dr. Raleigh first invented the IP        13:14:23

18              in question?                             13:14:27

19              A.  No.")                                13:14:31

20      Q.  (BY MR. HEJNY)  And going to the very        13:15:42

21   first e-mail on the first page of this string...    13:15:43

22             MR. HEJNY:  Can you scroll up just        13:15:51

23   a little bit?  There we go.                         13:15:52

24      Q.  (BY MR. HEJNY)  And so this is the first     13:15:54

25   e-mail in the string, April 24th, 2009, from Gina   13:15:55

| | | |
|---|---|---|
| 1 | Lombardi to Jim Straight at Headwater, and you | 13:16:00 |
| 2 | were copied. | 13:16:03 |
| 3 | Do you see that? | 13:16:03 |
| 4 | A. Yes. | 13:16:04 |
| 5 | Q. Ms. Lombardi says, "At this time, further | 13:16:04 |
| 6 | discussion of the IP ownership issue needs to | 13:16:06 |
| 7 | take place first, thanks." | 13:16:10 |
| 8 | Do you recall any further discussion | 13:16:11 |
| 9 | of the IP ownership issue? | 13:16:12 |
| 10 | A. I don't recall. | 13:16:17 |
| 11 | MR. HEJNY: You can take that | 13:16:29 |
| 12 | down. Let's bring up Exhibit 9, please. | 13:16:30 |
| 13 | (Whereupon Exhibit Number 9 was | 13:16:33 |
| 14 | marked for identification.) | 13:16:54 |
| 15 | Q. (BY MR. HEJNY) Exhibit 9 is an e-mail | 13:16:54 |
| 16 | dated May 6th, 2009, from Gina Lombardi to Jim | 13:16:56 |
| 17 | Straight and Greg Raleigh; and you are copied | 13:17:01 |
| 18 | again, Mr. Wise. | 13:17:04 |
| 19 | Do you see that? | 13:17:06 |
| 20 | A. Yes. | 13:17:07 |
| 21 | Can I just read this quick? | 13:17:09 |
| 22 | Q. Sure. | 13:17:12 |
| 23 | MR. HEJNY: And while you read it, | 13:17:12 |
| 24 | I'm going to note that the Bates number at the | 13:17:13 |
| 25 | bottom right-hand corner of the page is | 13:17:16 |

1   HW397-0051421.                                      13:17:19

2      A.  Okay.                                        13:17:32

3      Q.  (BY MR. HEJNY)  And in this e-mail from      13:17:33

4   Ms. Lombardi, she asked for access to a patent     13:17:36

5   application.                                        13:17:43

6            Do you see that?                           13:17:43

7      A.  Yes.                                         13:17:45

8      Q.  Do you know why Ms. Lombardi asked for       13:17:46

9   access to the patent application?                   13:17:49

10     A.  I don't know specifically, no.               13:17:55

11     Q.  And someone else is copied on the e-mail,    13:17:56

12  Micky Minhas.                                       13:18:02

13           Do you see that?                           13:18:03

14     A.  Yes.                                         13:18:05

15     Q.  And who is Micky Minhas?                      13:18:05

16     A.  Internal IP counsel, I believe, at          13:18:10

17  Qualcomm.                                           13:18:15

18     Q.  And so this e-mail is asking that            13:18:15

19  Mr. Straight and Dr. Raleigh forward the patent    13:18:21

20  application to in-house IP counsel at Qualcomm?     13:18:24

21     A.  Yes.                                         13:18:27

22     Q.  Do you know if that patent application was   13:18:27

23  ever provided to in-house counsel at Qualcomm?     13:18:30

24     A.  I don't recall.  No -- no reason to know     13:18:36

25  if it's -- (audio garbled) fully yes or no, but I   13:18:45

1   just don't recall.                                    13:18:46

2             THE COURT REPORTER:  I'm sorry,             13:18:46

3   sir.  No reason what?                                 13:18:46

4             THE WITNESS:  No reason to know,            13:18:39

5   yes or no; I just don't recall.                       13:18:45

6             THE COURT REPORTER:  Thank you.             13:18:52

7      Q.  (BY MR. HEJNY)  And it says, "After we         13:18:52

8   review these, then we can get together to discuss     13:18:54

9   prior art and business model in the coming            13:18:57

10  weeks."                                               13:18:59

11            Do you see that?                            13:19:00

12     A.  Yes.                                           13:19:00

13     Q.  And by "business model," was that              13:19:01

14  referring to Qualcomm's potential investment in       13:19:03

15  ItsOn?                                                13:19:06

16     A.  Yes.                                           13:19:08

17     Q.  Do you recall any details about how the        13:19:09

18  negotiation between Qualcomm and ItsOn evolved        13:19:18

19  over time?                                            13:19:21

20     A.  I don't.                                       13:19:25

21     Q.  No specific details?                           13:19:27

22     A.  No.                                            13:19:29

23     Q.  Okay.                                          13:19:29

24            MR. HEJNY:  Let's pull up                   13:19:40

25  Exhibit 10, please.                                   13:19:41

| | | |
|---|---|---|
| 1 | (Whereupon Exhibit Number 10 was | 13:19:42 |
| 2 | marked for identification.) | 13:19:43 |
| 3 | Q.  (BY MR. HEJNY)  Okay.  The court | 13:20:04 |
| 4 | technician has pulled up what is shown as | 13:20:06 |
| 5 | Exhibit 10 to this deposition.  It is a May 7th, | 13:20:09 |
| 6 | 2009, e-mail from -- from you, Mr. Wise, to Greg | 13:20:13 |
| 7 | Raleigh, copying Gina Lombardi; and the subject | 13:20:17 |
| 8 | is, "Moving Forward." | 13:20:20 |
| 9 | Do you see that? | 13:20:21 |
| 10 | A.  Yes, let me just read this real quick. | 13:20:22 |
| 11 | Q.  Yeah.  Please take a chance and read | 13:20:26 |
| 12 | through the e-mail.  Let me know when you're | 13:20:29 |
| 13 | done. | 13:20:31 |
| 14 | A.  Okay. | 13:21:01 |
| 15 | Q.  And does this refresh your recollection at | 13:21:01 |
| 16 | all regarding negotiation between Qualcomm and | 13:21:06 |
| 17 | ItsOn? | 13:21:08 |
| 18 | A.  Not -- not beyond the e-mails. | 13:21:10 |
| 19 | Q.  But it looks like Qualcomm was willing to | 13:21:13 |
| 20 | invest in ItsOn, right, but there were still | 13:21:18 |
| 21 | concerns over IP ownership, correct? | 13:21:21 |
| 22 | A.  That's what's stated in the e-mail, yes. | 13:21:24 |
| 23 | Q.  And to resolve the IP concerns, Qualcomm | 13:21:27 |
| 24 | proposed an additional 5 percent ownership stake | 13:21:31 |
| 25 | in ItsOn? | 13:21:34 |

1        A.  Yes.                                        13:21:36

2        Q.  And so we saw in the earlier e-mail         13:21:37

3   related to the seed investment the initial          13:21:41

4   ownership stake was to be 20 percent.  So this       13:21:43

5   would have increased that ownership stake to         13:21:46

6   25 percent, correct?                                 13:21:49

7        A.  I believe so.                               13:21:52

8        Q.  Do you recall any other discussions         13:21:54

9   regarding an ownership stake in ItsOn during this    13:21:57

10  time period, and -- and the reason I ask you that    13:22:00

11  is because it's unclear whether we have all of       13:22:03

12  the e-mails back and forth regarding this            13:22:06

13  negotiation.                                         13:22:08

14       A.  I don't recall.                             13:22:12

15       Q.  But clearly, this is an e-mail from you to  13:22:19

16  Greg Raleigh expressing that there were still        13:22:23

17  concerns over IP ownership, correct?                 13:22:26

18       A.  Yes, that's what it says, yes.              13:22:29

19       Q.  And as of May 7th, 2009?                    13:22:31

20       A.  Correct.                                    13:22:34

21       Q.  Did Qualcomm believe it had a legitimate    13:22:35

22  ownership interest in these patents?                 13:22:42

23            MR. KAYS:  I'm going to object to          13:22:44

24  the extent it invades the attorney/client           13:22:46

25  privilege; and unless such beliefs were expressed    13:22:49

1    to ItsOn or Greg Raleigh or anybody on that side          13:22:56

2    of the table, you can answer if -- as framed.  It         13:22:59

3    potentially invades the attorney/client privilege         13:23:05

4    and any communications that Mr. Wise would have           13:23:07

5    with Qualcomm's counsel on the issue, and so I            13:23:10

6    would advise the witness to be careful.                   13:23:14

7                MR. DAVIS:  And I'll object to the            13:23:18

8    form.                                                     13:23:19

9                MR. KAYS:  That, too.                         13:23:20

10   A.  Well, I don't really have an answer to it.            13:23:25

11   Q.  (BY MR. HEJNY)  Well, the e-mail                      13:23:27

12   explicitly states -- and the e-mail is from you,          13:23:30

13   and it explicitly states that there was a concern         13:23:33

14   over the IP issue, correct?                               13:23:36

15               MR. KAYS:  Counsel, that's asked              13:23:38

16   and answered.  He said -- obviously, the words            13:23:40

17   are on the page; he says he sees them.  We've             13:23:41

18   confirmed that point.                                     13:23:45

19   Q.  (BY MR. HEJNY)  You can answer, Mr. Wise.             13:23:46

20   A.  Yeah, that's what it says on the e-mail,              13:23:49

21   yes.                                                      13:23:51

22   Q.  Would you have put this in an e-mail to               13:23:51

23   Dr. Raleigh if you didn't believe you had a               13:23:55

24   legitimate concern over IP ownership?                     13:23:57

25   A.  We would have -- we would have said it if             13:24:03

| | | |
|---|---|---|
| 1 | we believed we had our -- if we had a concern, | 13:24:07 |
| 2 | which would have come from our lawyers. | 13:24:10 |
| 3 | Q.  So by putting this in an e-mail to | 13:24:12 |
| 4 | Dr. Raleigh, Qualcomm, through you, was | 13:24:15 |
| 5 | communicating a legitimate concern about IP | 13:24:18 |
| 6 | ownership, correct? | 13:24:21 |
| 7 | MR. DAVIS:  Objection, form. | 13:24:23 |
| 8 | MR. KAYS:  Same. | 13:24:25 |
| 9 | A.  Yeah, I think what it says in the e-mail, | 13:24:27 |
| 10 | the -- the words in the e-mail is -- that's all I | 13:24:30 |
| 11 | can speak to. | 13:24:33 |
| 12 | Q.  (BY MR. HEJNY)  But you wouldn't have put | 13:24:34 |
| 13 | this in an e-mail to Dr. Raleigh if you didn't | 13:24:35 |
| 14 | think there was an IP ownership issue, correct? | 13:24:38 |
| 15 | MR. KAYS:  Objection, form. | 13:24:40 |
| 16 | A.  No. | 13:24:42 |
| 17 | Q.  (BY MR. HEJNY)  And it looks like towards | 13:24:52 |
| 18 | the bottom of the e-mail, "If this is agreeable, | 13:24:54 |
| 19 | we would like to, as a next step, have Micky get | 13:24:56 |
| 20 | access to the patent applications." | 13:25:00 |
| 21 | Do you see that? | 13:25:01 |
| 22 | A.  Yes. | 13:25:03 |
| 23 | Q.  So it's apparent that as of May 7th, 2009, | 13:25:04 |
| 24 | Dr. Raleigh has still not provided Qualcomm | 13:25:10 |
| 25 | in-house IP counsel with the patent applications | 13:25:13 |

| | | |
|---|---|---|
| 1 | in question, correct? | 13:25:16 |
| 2 | MR. DAVIS:  Objection, form. | 13:25:18 |
| 3 | A.  It appears that way from the e-mail. | 13:25:20 |
| 4 | Q.  (BY MR. HEJNY)  And the e-mail says, | 13:25:24 |
| 5 | "Please give me a call at 8:30 a.m. tomorrow to | 13:25:25 |
| 6 | discuss." | 13:25:28 |
| 7 | Do you recall if that phone call ever | 13:25:28 |
| 8 | took place? | 13:25:31 |
| 9 | A.  I don't recall. | 13:25:32 |
| 10 | Q.  Okay. | 13:25:33 |
| 11 | MR. HEJNY:  We can take that down. | 13:25:41 |
| 12 | Let's pull up Exhibit 11. | 13:25:50 |
| 13 | (Whereupon Exhibit Number 11 was | 13:25:52 |
| 14 | marked for identification.) | 13:25:53 |
| 15 | Q.  (BY MR. HEJNY)  So Exhibit 11 is an e-mail | 13:26:09 |
| 16 | from Greg Raleigh to you dated May 19th, 2009, | 13:26:11 |
| 17 | "Subject:  Release." | 13:26:15 |
| 18 | Do you see that? | 13:26:16 |
| 19 | A.  Yes. | 13:26:19 |
| 20 | Q.  And as part of that e-mail, over the next | 13:26:20 |
| 21 | several pages is a release document. | 13:26:25 |
| 22 | And this might -- this one might be | 13:26:32 |
| 23 | easier if you download it in the chat, Mr. Wise, | 13:26:34 |
| 24 | since it's a fairly lengthy document, or we can | 13:26:38 |
| 25 | scroll through it on the screen and you can read | 13:26:41 |

| | | |
|---|---|---|
| 1 | through it, whichever's -- | 13:26:43 |
| 2 | A.  How do I -- how do I download it? | 13:26:45 |
| 3 | EXHIBIT TECH:  As well, I can pass | 13:26:49 |
| 4 | control.  There's all three options.  I just | 13:26:50 |
| 5 | wanted to put that out there. | 13:26:53 |
| 6 | THE WITNESS:  Yeah.  If you want | 13:26:55 |
| 7 | to guide me through it, that's fine. | 13:26:56 |
| 8 | MR. HEJNY:  Yeah, why don't you -- | 13:26:58 |
| 9 | Charlie, why don't you scroll down to the first | 13:26:59 |
| 10 | page -- to the next page.  The first page is | 13:27:01 |
| 11 | Bates number HW397-0051424.  If you can scroll | 13:27:04 |
| 12 | down to the -- yeah, perfect. | 13:27:11 |
| 13 | Q.  (BY MR. HEJNY)  And this is the release | 13:27:13 |
| 14 | document, Mr. Wise.  I just want to give you a | 13:27:17 |
| 15 | chance to look through it before I ask you a | 13:27:19 |
| 16 | bunch of questions. | 13:27:21 |
| 17 | A.  Okay. | 13:27:22 |
| 18 | Q.  So I'll let you take control, and you can | 13:27:27 |
| 19 | let the tech know when you want to scroll down. | 13:27:30 |
| 20 | A.  Okay. | 13:27:36 |
| 21 | THE WITNESS:  You can scroll down | 13:30:38 |
| 22 | a little bit. | 13:30:40 |
| 23 | EXHIBIT TECH:  As well, do you | 13:30:43 |
| 24 | want me to zoom in any more than this, or is this | 13:30:44 |
| 25 | good? | 13:30:47 |

| | | |
|---|---|---|
| 1 | THE WITNESS:  That's okay.  Yeah, | 13:30:47 |
| 2 | a little more zoom would be good, thank you. | 13:30:49 |
| 3 | Thank you, yeah.  And scroll down a little more. | 13:30:52 |
| 4 | Down a little more.  You can go further.  Okay. | 13:31:19 |
| 5 | Can you go back up to that first | 13:31:27 |
| 6 | paragraph?  Okay. | 13:31:30 |
| 7 | Q.  (BY MR. HEJNY)  Sorry for making you read | 13:31:42 |
| 8 | that.  I just wanted to give you a chance to look | 13:31:44 |
| 9 | through it so you'd know what we were talking | 13:31:46 |
| 10 | about. | 13:31:48 |
| 11 | A.  Yeah, appreciate it. | 13:31:49 |
| 12 | Q.  So at the very top -- | 13:31:50 |
| 13 | MR. HEJNY:  If we could scroll up | 13:31:51 |
| 14 | just a little bit... | 13:31:53 |
| 15 | Q.  (BY MR. HEJNY)  So this release was sent | 13:31:54 |
| 16 | by Dr. Raleigh to you, correct, Mr. Wise? | 13:31:56 |
| 17 | A.  Yes. | 13:32:02 |
| 18 | Q.  And the release itself would be between | 13:32:05 |
| 19 | Qualcomm, Dr. Raleigh, ItsOn and Headwater | 13:32:09 |
| 20 | Partners, correct? | 13:32:15 |
| 21 | A.  Looks to be, yes. | 13:32:22 |
| 22 | Q.  And that first paragraph defines | 13:32:24 |
| 23 | Dr. Raleigh, ItsOn, Headwater Partners, and | 13:32:27 |
| 24 | together with Dr. Raleigh and ItsOn, as the | 13:32:30 |
| 25 | "releasees." | 13:32:32 |

1          Do you see that?                              13:32:34

2     A.  Yes.                                            13:32:34

3     Q.  And paragraph C below, under "Background,"     13:32:35

4  states that, "Qualcomm now agrees to release          13:32:40

5  releasees from certain claims that it may have         13:32:45

6  had concerning the ownership of the technology         13:32:47

7  used by the releasees or otherwise."                   13:32:49

8          Do you see that?                              13:32:52

9     A.  Yes.                                            13:32:54

10    Q.  So this is, in essence, Dr. Raleigh,            13:32:54

11 ItsOn, and Headwater asking for Qualcomm to grant      13:33:02

12 a release to any prior ownership claims that           13:33:05

13 Qualcomm had in Dr. Raleigh's IP, correct?            13:33:10

14          MR. DAVIS:  Objection, form.                 13:33:13

15    A.  Yeah, I don't -- I don't know who               13:33:19

16 originally drafted this, but it...                     13:33:22

17    Q.  (BY MR. HEJNY)  So Dr. Raleigh sent --          13:33:24

18 Dr. Raleigh sent this to you in an e-mail,             13:33:25

19 correct?                                               13:33:27

20    A.  He sent it to me in an e-mail, yes.             13:33:28

21    Q.  But that first e-mail does say, "Dave,          13:33:30

22 here is the release we discussed," correct?            13:33:34

23    A.  Yeah, I think that's what it said.              13:33:38

24    Q.  Do you recall discussing the -- this            13:33:40

25 release with Dr. Raleigh or any representatives        13:33:43

1    of ItsOn or Headwater Partners?                        13:33:46

2        A.  I don't recall any conversations about it,     13:33:50

3    no.                                                    13:33:52

4                MR. HEJNY:  Now, if we could               13:33:54

5    scroll down just a little bit so we could see the      13:33:55

6    full release of claims paragraph...                    13:33:58

7        Q.  (BY MR. HEJNY)  Obviously a lot of             13:33:59

8    legalese here, but the release of claims states        13:34:01

9    that, "Qualcomm, on behalf of itself and the           13:34:03

10   past, present and future officers" of the              13:34:07

11   company, and it's releasing Dr. Raleigh from any       13:34:11

12   ownership claims that Qualcomm might have in any        13:34:19

13   inventions that were "conceived of, fixed,             13:34:24

14   invented, or reduced to practice by Dr. Raleigh,       13:34:26

15   whether or not such inventions were conceived of,      13:34:30

16   fixed, invented or reduced to practice by              13:34:33

17   Dr. Raleigh while he was an employee of                13:34:36

18   Qualcomm."                                             13:34:40

19                Do you see that language?                 13:34:40

20       A.  Yeah.                                          13:34:43

21       Q.  Do you recall the details of the               13:34:44

22   negotiation of this release with Dr. Raleigh?          13:34:50

23       A.  I don't.                                       13:34:55

24       Q.  But he's clearly asking for a release of       13:34:56

25   any Qualcomm ownership interest in any inventions      13:35:01

1    that he invented, fixed, or reduced to practice          13:35:03

2    while an employee of Qualcomm.                           13:35:07

3              Do you see that?                               13:35:09

4              MR. DAVIS:  Objection, form.                   13:35:11

5    A.  Yeah, I -- I see what's written, yes.                13:35:12

6    Q.  (BY MR. HEJNY)  But you don't have any               13:35:15

7    recollection of the negotiations of this release         13:35:18

8    document?                                                13:35:21

9    A.  I don't.                                             13:35:24

10   Q.  Would Qualcomm have even considered                  13:35:44

11   entering into this type of release document if it        13:35:47

12   didn't have a good faith belief that it owned            13:35:49

13   some or all of the IP developed by Dr. Raleigh?          13:35:54

14             MR. KAYS:  Objection, form.                    13:35:58

15             MR. DAVIS:  Objection, form.                   13:35:59

16   A.  You know, I don't know the extent of                 13:36:04

17   the -- the belief or not, but there's clearly,           13:36:07

18   from the -- from doing something like this, some         13:36:11

19   uncertainty.                                             13:36:13

20   Q.  (BY MR. HEJNY)  Do you recall discussing             13:36:20

21   this release with Ms. Lombardi?                          13:36:21

22             MR. KAYS:  Again, if that's with               13:36:26

23   Ms. Lombardi outside the presence of counsel, you        13:36:29

24   can answer; otherwise, I would instruct you not          13:36:33

25   to answer.                                               13:36:35

| | | |
|---|---|---|
| 1 | A.  I don't recall. | 13:36:39 |
| 2 | Q.  (BY MR. HEJNY)  And this is a "yes" or | 13:36:40 |
| 3 | "no" question.  Do you recall discussing this | 13:36:41 |
| 4 | release with in-house IP counsel at Qualcomm? | 13:36:43 |
| 5 | A.  I don't recall. | 13:36:49 |
| 6 | MR. KAYS:  You can answer -- yeah, | 13:36:50 |
| 7 | you can answer that. | 13:36:51 |
| 8 | MR. HEJNY:  Okay.  We can take | 13:36:54 |
| 9 | this down. | 13:36:55 |
| 10 | Q.  (BY MR. HEJNY)  Mr. Wise, do you recall a | 13:37:20 |
| 11 | Qualcomm employee named Mark Snyder? | 13:37:22 |
| 12 | A.  Yes. | 13:37:25 |
| 13 | Q.  And who was Mark Snyder? | 13:37:26 |
| 14 | A.  A lawyer at Qualcomm. | 13:37:30 |
| 15 | Q.  Was he an IP lawyer or a business lawyer? | 13:37:31 |
| 16 | A.  A business lawyer, I believe. | 13:37:38 |
| 17 | MR. HEJNY:  Let's pull up | 13:37:47 |
| 18 | Exhibit 12, please. | 13:37:48 |
| 19 | (Whereupon Exhibit Number 12 was | 13:37:50 |
| 20 | marked for identification.) | 13:37:50 |
| 21 | Q.  (BY MR. HEJNY)  And Exhibit 12 is an | 13:38:01 |
| 22 | e-mail dated June 24th, 2009, from Mark Snyder to | 13:38:03 |
| 23 | SGoldberg@WSGR.com, and you're copied, Mr. Wise. | 13:38:07 |
| 24 | Do you see that? | 13:38:11 |
| 25 | A.  Yes.  Let me just read this real quick. | 13:38:14 |

```
1      Q.  Sure.                                        13:38:16

2           And while you're reading it, I'll note      13:38:17

3  for the record that the Bates number at the          13:38:19

4  bottom right-hand side of the page is                13:38:21

5  HW397-00102742.                                      13:38:27

6      A.  Okay.                                        13:38:54

7      Q.  Do you recall who Selwyn Goldberg is?  He    13:38:54

8  was the addressee of this e-mail.                    13:39:02

9      A.  I don't.                                     13:39:06

10     Q.  Do you recall discussions with Mr. Snyder    13:39:12

11 related to this e-mail and a potential redline to    13:39:15

12 the Qualcomm release?                                13:39:20

13     A.  I don't.                                     13:39:26

14     Q.  Do you understand what is meant by item      13:39:27

15 (2), "That there is some standard to identify        13:39:31

16 which patent claims fall within the scope of the     13:39:35

17 release"?                                            13:39:37

18     A.  I don't.                                     13:39:40

19     Q.  Do you recall whether Qualcomm ever agreed   13:39:43

20 to sign this or any other release of ownership       13:39:47

21 with Dr. Raleigh?                                    13:39:53

22     A.  Sorry, can you repeat that?                  13:39:58

23     Q.  Sure.                                        13:39:59

24           Do you recall whether Qualcomm ever        13:40:00

25 agreed to sign a release or any sort of release      13:40:02
```

| | | |
|---|---|---|
| 1 | document related to Qualcomm's ownership interest | 13:40:06 |
| 2 | in Dr. Raleigh's IP? | 13:40:10 |
| 3 | A. I don't recall. | 13:40:13 |
| 4 | Q. Do you know whether -- do you recall -- | 13:40:15 |
| 5 | strike that. | 13:40:21 |
| 6 | Do you recall whether Qualcomm ever | 13:40:22 |
| 7 | agreed to enter into a business relationship with | 13:40:24 |
| 8 | Dr. Raleigh or ItsOn? | 13:40:26 |
| 9 | A. I don't recall. I know, you know, from | 13:40:32 |
| 10 | all this, that we had a lot of conversations, but | 13:40:34 |
| 11 | I don't recall what happened. | 13:40:37 |
| 12 | MR. HEJNY: Okay. We can take | 13:41:04 |
| 13 | this down, and let's pull up -- it's marked as | 13:41:05 |
| 14 | "14" in my uploads, but let's mark it as | 13:41:08 |
| 15 | Exhibit 13 for purposes of the deposition. | 13:41:12 |
| 16 | EXHIBIT TECH: Not a problem. | 13:41:14 |
| 17 | (Whereupon Exhibit Number 13 was | 13:41:15 |
| 18 | marked for identification.) | 13:41:25 |
| 19 | MR. HEJNY: And this would be an | 13:41:25 |
| 20 | e-mail with a Bates stamp of Headwater | 13:41:26 |
| 21 | 397-0051423 [sic]. | 13:41:30 |
| 22 | Q. (BY MR. HEJNY) So take a second to look | 13:42:02 |
| 23 | over this e-mail, Mr. Wise, and I'll ask you some | 13:42:04 |
| 24 | questions. | 13:42:07 |
| 25 | A. Okay. | 13:42:52 |

1    Q.  Do you recall ever seeing this e-mail,          13:42:52

2  Mr. Wise?                                             13:42:58

3    A.  No.                                             13:43:01

4    Q.  So it's dated August 3rd, 2009, and it is       13:43:04

5  from Mark Snyder to Greg Raleigh and you are          13:43:08

6  copied, correct?                                      13:43:13

7    A.  Yes.                                            13:43:14

8    Q.  And based on the contents of this e-mail,       13:43:15

9  it looks like Dr. Raleigh and ItsOn have declined     13:43:22

10  Qualcomm's most recent business proposal?            13:43:26

11    A.  Yes, that's what it says.                      13:43:28

12    Q.  Does this refresh your recollection as to      13:43:30

13  whether or not any -- any sort of investment         13:43:32

14  agreement was ever signed between Qualcomm,          13:43:36

15  Dr. Raleigh, and ItsOn?                              13:43:39

16    A.  Doesn't refresh -- reflect my                  13:43:44

17  recollection, but that's what it says.               13:43:47

18    Q.  And in that e-mail in the second               13:43:54

19  paragraph, it makes "clear that Qualcomm             13:43:55

20  continues to reserve all of its rights, and does     13:43:58

21  not waive any rights to Qualcomm's intellectual      13:44:00

22  property, including any Qualcomm intellectual        13:44:03

23  property incorporated in patent applications         13:44:06

24  filed by Greg, ItsOn or Headwater Partners,"         13:44:08

25  correct?                                             13:44:11

1    A.  That's what it says, yes.                      13:44:12

2    Q.  So this negotiation process that began in     13:44:14

3  January of 2009 appears to have concluded in         13:44:21

4  August 2009, correct?                                13:44:24

5    A.  Looks to have.                                 13:44:29

6    Q.  And it appears that Qualcomm never waived      13:44:31

7  its claim of ownership in intellectual property      13:44:34

8  incorporated in patent applications filed by         13:44:38

9  Dr. Raleigh, correct?                                13:44:42

10           MR. DAVIS:  Objection, form.               13:44:42

11    A.  Yeah, as of this date, yes.                   13:44:45

12    Q.  (BY MR. HEJNY)  Do you recall any further     13:44:47

13  discussions related to the ownership issue, the     13:44:49

14  IP ownership issue between Qualcomm and             13:44:54

15  Dr. Raleigh?                                         13:44:58

16    A.  I don't recall.                               13:44:58

17    Q.  Have any of the exhibits that we've          13:44:59

18  discussed today refreshed your recollections        13:45:18

19  regarding discussions or negotiations with          13:45:22

20  Dr. Raleigh?                                         13:45:24

21    A.  No, beyond -- beyond what's on the            13:45:24

22  e-mails.  Sorry, 16 years.                          13:45:26

23           MR. HEJNY:  Why don't we take a            13:45:33

24  quick break?  I think I'm getting really close to   13:45:34

25  wrapping up, and maybe we can finish this.          13:45:37

```
1   Five-minute break okay?                          13:45:39

2             MR. KAYS:  That's fine, thanks.        13:45:42

3             THE WITNESS:  Thank you.               13:45:43

4             THE VIDEOGRAPHER:  Time is             13:45:45

5   1:45 p.m.  We're going off the record.           13:45:47

6             (Break taken from 1:45 p.m. to         13:45:48

7              1:50 p.m.)                            13:50:38

8             THE VIDEOGRAPHER:  The time is         13:50:39

9   1:50 p.m.  We are back on the record.            13:50:46

10     Q.  (BY MR. HEJNY)  Mr. Wise, thank you for   13:50:48

11  your time today.  Those are all the questions I  13:50:50

12  have.                                            13:50:50

13             MR. HEJNY:  So I'll pass the          13:50:53

14  witness.                                         13:50:55

15             MR. DAVIS:  Thank you.                13:50:56

16                  EXAMINATION                      13:50:56

17  BY MR. DAVIS:                                    13:50:57

18     Q.  So, Mr. Wise, I have just a few questions 13:50:57

19  for you.                                         13:50:59

20             And again, my name is Kris Davis.  I  13:51:00

21  represent plaintiff, Headwater, in this case.    13:51:04

22             Mr. Wise, when were you first         13:51:08

23  contacted by anyone about litigation involving   13:51:16

24  Headwater?  Was it the subpoena in this case?    13:51:19

25     A.  Yes.                                      13:51:23
```

| | | |
|---|---|---|
| 1 | Q.  And so have you been contacted by anyone | 13:51:24 |
| 2 | besides AT&T about any litigation involving | 13:51:29 |
| 3 | Headwater or ItsOn or Dr. Raleigh? | 13:51:34 |
| 4 | A.  Nothing other than the subpoena. | 13:51:38 |
| 5 | Q.  Okay.  Nothing other than the -- this | 13:51:40 |
| 6 | subpoena that we're here for the deposition for? | 13:51:45 |
| 7 | A.  Correct. | 13:51:48 |
| 8 | Q.  Okay.  And did you receive any contact | 13:51:48 |
| 9 | from AT&T prior to receiving the subpoena? | 13:51:59 |
| 10 | A.  No. | 13:52:05 |
| 11 | Q.  Okay.  And as far as you know, has | 13:52:05 |
| 12 | Qualcomm ever brought any lawsuit or other legal | 13:52:18 |
| 13 | claim against Dr. Raleigh or Headwater or ItsOn | 13:52:20 |
| 14 | relating to IP or patent ownership? | 13:52:25 |
| 15 | A.  I'm not aware. | 13:52:35 |
| 16 | Q.  All right. | 13:52:40 |
| 17 | MR. DAVIS:  No further questions | 13:52:43 |
| 18 | from me.  I'll pass the witness. | 13:52:44 |
| 19 | MR. HEJNY:  Nothing further from | 13:52:48 |
| 20 | me.  We can go off the record. | 13:52:50 |
| 21 | MR. KAYS:  Great. | 13:52:52 |
| 22 | THE VIDEOGRAPHER:  All right. | 13:52:52 |
| 23 | This ends the deposition of Mr. Wise.  The time | 13:53:03 |
| 24 | on the video monitor is 1:53 p.m. | 13:53:06 |
| 25 | THE COURT REPORTER:  Scott, do you | 13:53:37 |

1    need a rough?                                    13:53:39

2              MR. HEJNY:  Yes, please.              13:53:40

3              MR. KAYS:  I just need the            13:54:14

4    transcript, thank you.                          13:54:16

5              THE COURT REPORTER:  Mr. Kays, did    13:54:23

6    you need a rough?                               13:54:25

7              MR. KAYS:  No, I don't.               13:54:33

8              THE COURT REPORTER:  Okay, thank      13:54:33

9    you.                                            13:54:37

10             MR. DAVIS:  Annette, I'm not sure     13:54:37

11   what you have for us on the final transcript.  I  13:54:39

12   think I've been doing something like two business  13:54:46

13   days, if that's possible.                       13:54:49

14   THE COURT REPORTER:  Yes, sir.

15             (Deposition concluded.)

16                   *  *  *  *  *

17

18

19

20

21

22

23

24

25

1      I, DAVID WISE, have read the foregoing
deposition and hereby affix my signature that
2  same is true and correct, except as noted above.

3

4            _____
          DAVID WISE
5

6  THE STATE OF _____)

7  COUNTY OF _____)

8

9     Before me, _____, on

10  this day personally appeared DAVID WISE, known to

11  me (or proved to me under oath or through

12  _____) (description of

13  identity card or other document) to be the person

14  whose name is subscribed to the foregoing

15  instrument and acknowledged to me that they

16  executed the same for the purposes and

17  consideration therein expressed.

18     Given under my hand and seal of office this

19  _____ day of _____,

20  _____.

21

22            _____
          NOTARY PUBLIC IN AND FOR
23          THE STATE OF _____
          COMMISSION EXPIRES: _____
24

25

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                     MARSHALL DIVISION

 3    HEADWATER RESEARCH LLC,   )
                                )
 4        Plaintiff,            )
                                ) CASE NO.:
 5    VS.                       ) 2:23-cv-00397-JRG-RSP
                                )
 6    AT&T SERVICES, INC.,      ) Lead Case
      AT&T MOBILITY, LLC, AND   )
 7    AT&T CORP.,               )
                                )
 8        Defendants.           )

 9
      HEADWATER RESEARCH LLC,   )
10                              )
          Plaintiff,            )
11                              ) CASE NO.:
      VS.                       ) 2:23-cv-00398-JRG-RSP
12                              )
      AT&T SERVICES, INC.,      )
13    AT&T MOBILITY, LLC, AND   )
      AT&T CORP.,               )
14                              )
          Defendants.           )

15

16              REPORTER'S CERTIFICATION
                DEPOSITION OF DAVID WISE
17                 JANUARY 31, 2025

18

19       I, Annette Peltier, Certified Shorthand

20    Reporter in and for the State of Texas, hereby

21    certify to the following:

22       That the witness, DAVID WISE, was duly sworn

23    by the officer and that the transcript of the

24    oral deposition is a true record of the testimony

25    given by the witness;
```

1     That the original deposition was delivered to

2  Mr. Scott Hejny, Custodial Attorney.

3     That a copy of this certificate was served on

4  all parties shown herein on _____.

5     I further certify that pursuant to FRCP Rule

6  30(e)(1) that the signature of the deponent:

7     XXX was requested by the deponent or a party

8  before the completion of the deposition and that

9  signature is to be returned within 33 days from

10  the date of receipt of the transcript.  If

11  returned, the attached changes and signature page

12  contains any changes and the reasons therefore.

13     ____ was not requested by the deponent or

14  party before the completion of the deposition.

15     I further certify that I am neither counsel

16  for, related to, nor employed by any of the

17  parties or attorneys in the action in which this

18  testimony was taken.  Further, I am not a

19  relative or employee of any attorney of record in

20  this cause, nor am I financially or otherwise

21  interested in the outcome of the action.

22

23

24

25

1        Certified to by me this 2nd day of February,

2   2025.

3

4        _____

5        Annette Peltier, Texas CSR 3253
         Expiration Date:  10/31/25

6        Firm Registration No. 686
         451 Hungerford Drive

7        Suite 400
         Rockville, MD 20850

8        Phone: 888.433.3767
         Fax: 888.503.3767

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**about**
10:18, 11:13,
17:7, 17:23,
18:3, 18:17,
18:19, 23:7,
27:23, 28:16,
28:17, 32:22,
34:13, 38:6,
41:3, 52:9,
55:17, 59:5,
62:10, 64:2,
71:23, 72:2
**above**
74:3
**above-styled**
2:4
**access**
11:24, 54:4,
54:9, 59:20
**accurate**
10:3
**achieved**
37:10
**acknowledged**
74:17
**acquiring**
17:15
**acquisition**
14:14, 28:10
**acquisitions**
16:23, 28:4
**action**
9:21, 48:14,
48:22, 76:17,
76:21
**activities**
14:10
**actually**
13:16, 32:20,
44:19
**additional**
56:24
**address**
35:4, 35:5
**addressee**
67:8

**adjournment**
4:10
**admonish**
41:6
**admonition**
29:9
**advance**
6:17
**advise**
50:22, 58:6
**advisor**
13:3
**affix**
74:2
**after**
49:22, 55:7
**again**
22:13, 26:2,
26:24, 27:2,
27:3, 32:2,
41:5, 50:22,
53:18, 65:22,
71:20
**against**
9:21, 18:1,
72:13
**ago**
9:1, 24:25,
30:2, 33:1
**agree**
21:23
**agreeable**
59:18
**agreed**
67:19, 67:25,
68:7
**agreement**
4:22, 20:15,
21:13, 22:4,
22:14, 30:9,
30:17, 31:1,
31:3, 31:16,
32:1, 32:16,
33:5, 37:24,
46:9, 69:14
**agreements**
23:15, 23:16,
31:19, 31:23

**agrees**
63:4
**ahead**
22:19
**al**
7:1
**all**
3:2, 6:20,
7:10, 7:22,
15:13, 21:7,
21:8, 34:13,
38:15, 43:24,
43:25, 56:16,
57:11, 59:10,
61:4, 65:13,
68:10, 69:20,
71:11, 72:16,
72:22, 76:4
**alone**
8:14, 28:10
**also**
3:31, 11:20,
15:16, 29:9,
42:10, 42:11,
43:14
**among**
9:5
**annette**
1:36, 2:6,
7:23, 73:10,
75:32, 77:5
**another**
6:5, 20:7,
46:15
**answer**
10:8, 10:9,
18:15, 18:16,
23:9, 23:10,
26:1, 29:12,
29:15, 32:6,
32:7, 39:25,
41:8, 58:2,
58:10, 58:19,
65:24, 65:25,
66:6, 66:7
**answered**
23:18, 23:23,
24:9, 58:16

**anti-dilution**
46:14
**anticipate**
6:3
**antitrust**
9:21
**any**
6:8, 6:17,
8:17, 10:2,
13:5, 16:8,
16:14, 18:13,
19:4, 21:8,
27:17, 28:16,
28:21, 29:3,
29:17, 32:20,
33:3, 33:9,
33:11, 33:12,
33:22, 34:2,
35:16, 35:17,
37:16, 38:1,
38:10, 38:15,
39:6, 40:6,
40:10, 41:2,
41:7, 41:25,
43:12, 48:17,
49:11, 49:24,
50:10, 50:19,
51:14, 52:15,
53:8, 55:17,
57:8, 58:4,
61:24, 63:12,
63:25, 64:2,
64:11, 64:12,
64:25, 65:6,
67:20, 67:25,
69:13, 69:21,
69:22, 70:12,
70:17, 72:2,
72:8, 72:12,
76:12, 76:16,
76:19
**anybody**
58:1
**anyone**
19:11, 19:15,
71:23, 72:1
**anything**
17:7, 29:16,

32:22, 34:13,
36:19, 36:22,
36:23, 39:10,
51:3
**apart**
18:12, 23:8,
32:4
**apologize**
6:17, 23:24,
26:1
**apparent**
59:23
**appearances**
4:4
**appeared**
74:12
**appearing**
3:2
**appears**
31:15, 60:3,
70:3, 70:6
**application**
4:40, 21:25,
33:14, 34:4,
54:5, 54:9,
54:20, 54:22
**applications**
34:14, 59:20,
59:25, 69:23,
70:8
**appreciate**
62:11
**april**
45:2, 52:25
**area**
38:25
**areas**
37:12
**around**
46:16
**art**
48:24, 49:4,
49:7, 49:11,
55:9
**asked**
28:7, 47:8,
52:3, 54:4,
54:8, 58:15

**asking**
54:18, 63:11,
64:24
**assign**
21:6, 21:17
**associated**
46:6
**assume**
10:14, 20:23,
36:17, 50:16
**assuming**
27:6, 39:4
**at&t**
1:10, 1:11,
1:12, 1:22,
1:23, 1:24,
6:25, 7:16,
12:5, 12:10,
18:1, 72:2,
72:9, 75:10,
75:11, 75:12,
75:22, 75:23,
75:24
**attached**
2:10, 76:11
**attachment**
21:12
**attending**
6:2, 7:11
**attorney**
10:8, 18:20,
29:19, 51:1,
57:24, 58:3,
76:2, 76:19
**attorneys**
23:9, 23:14,
76:17
**audio**
36:20, 54:25
**august**
3:7, 7:18,
19:15, 69:4,
70:4
**austin**
3:17
**aware**
6:6, 19:21,
20:18, 36:6,

36:10, 72:15
**away**
6:9

**B**

**back**
16:1, 16:5,
25:10, 26:22,
35:25, 43:20,
44:1, 44:7,
48:10, 51:23,
52:5, 52:8,
52:14, 57:12,
62:5, 71:9
**background**
63:3
**backup**
6:7
**based**
36:17, 69:8
**basis**
12:1
**bates**
25:6, 30:14,
35:1, 40:17,
41:20, 44:15,
47:20, 53:24,
61:11, 67:3,
68:20
**bearing**
34:5
**because**
11:9, 15:1,
22:11, 26:25,
30:2, 57:11
**become**
38:19
**been**
8:2, 8:9, 8:21,
9:2, 9:6, 9:9,
13:19, 14:15,
20:5, 22:5,
25:5, 25:18,
28:10, 28:11,
28:12, 38:25,
41:15, 42:15,
42:17, 72:1,
73:12

**before**
2:6, 6:16, 8:8,
8:9, 8:22, 9:3,
9:12, 9:15,
10:20, 12:6,
18:3, 20:17,
36:7, 37:24,
47:8, 61:15,
74:11, 76:8,
76:14
**began**
70:2
**begins**
6:23, 14:21,
47:19
**behalf**
3:4, 3:12,
3:21, 7:16,
7:18, 7:20,
21:25, 31:12,
64:9
**being**
8:15, 26:9,
26:17, 40:6,
40:15, 46:22
**belief**
65:12, 65:17
**beliefs**
57:25
**believe**
32:13, 46:4,
50:21, 54:16,
57:7, 57:21,
58:23, 66:16
**believed**
51:6, 59:1
**believes**
48:25, 50:1
**bell**
12:14, 30:23
**below**
21:21, 63:3
**besides**
72:2
**best**
4:35, 6:5,
22:20, 40:7,
40:12, 40:18,

40:25, 41:4,
41:23, 42:21
**between**
17:25, 30:18,
32:12, 32:23,
33:6, 33:15,
34:6, 34:10,
38:7, 40:7,
47:9, 47:15,
55:18, 56:16,
62:18, 69:14,
70:14
**beyond**
28:25, 30:24,
37:19, 45:20,
49:14, 50:13,
51:12, 56:18,
70:21
**bit**
48:8, 48:11,
52:23, 61:22,
62:14, 64:5
**body**
45:11
**both**
22:24, 41:16
**bottom**
20:11, 25:7,
30:14, 31:16,
39:12, 40:17,
44:16, 47:20,
53:25, 59:18,
67:4
**box**
11:21, 11:25
**break**
10:18, 10:20,
10:21, 43:19,
43:20, 44:4,
70:24, 71:1,
71:6
**brief**
19:2
**bring**
16:19, 26:25,
38:7, 53:12
**bringing**
17:10, 27:24

**brought**
72:12
**budgeting**
15:13
**bunch**
61:16
**bus**
28:13
**business**
17:14, 17:16,
17:19, 17:20,
28:3, 37:21,
42:8, 42:9,
42:10, 42:13,
55:9, 55:13,
66:15, 66:16,
68:7, 69:10,
73:12
**business-related**
28:14
**businesses**
16:24
**buy**
4:35, 40:8,
40:12, 40:19,
40:25, 41:4,
41:23, 42:21

## C

**ca**
3:28
**call**
13:14, 27:5,
27:11, 60:5,
60:7
**called**
12:16, 36:4,
45:11
**can't**
10:2
**capacity**
37:20, 43:5
**card**
74:15
**careful**
58:6
**carlos**
3:26

**case**
1:7, 1:10,
1:19, 7:3, 9:3,
9:7, 9:9, 9:12,
9:17, 9:18,
9:19, 71:21,
71:24, 75:7,
75:10, 75:19
**cases**
9:4
**cause**
2:4, 76:20
**central**
3:8, 7:7, 44:1
**ceo**
24:16
**certain**
63:5
**certificate**
4:14, 76:3
**certification**
75:28
**certified**
2:6, 75:32,
77:1
**certify**
75:34, 76:5,
76:15
**chain**
14:13, 47:18
**chance**
56:11, 61:15,
62:8
**changes**
76:11, 76:12
**characterize**
17:14
**charlie**
3:33, 25:20,
25:23, 44:8,
61:9
**chat**
11:21, 11:25,
13:17, 27:3,
60:23
**chief**
31:9
**chips**
47:2

**chipset**
26:7
**chipsets**
40:12
**chronologically**
30:1
**civil**
2:9
**claim**
50:1, 70:7,
72:13
**claims**
63:5, 63:12,
64:6, 64:8,
64:12, 67:16
**clarification**
10:14, 33:18
**clarify**
10:13
**clarifying**
52:1
**clear**
69:19
**clearly**
57:15, 64:24,
65:17
**click**
11:16
**client**
51:1, 57:24,
58:3
**close**
70:24
**cloudbeds**
14:13
**colleagues**
25:19
**colorado**
3:15
**com**
35:4, 66:23
**come**
19:23, 43:20,
59:2
**comes**
46:17
**coming**
55:9

commercialization
47:1
commission
74:27
committing
46:25
common
16:16, 17:1,
21:16, 22:14,
42:15
communicated
50:24
communicating
59:5
communications
18:10, 23:6,
23:8, 29:10,
32:4, 58:4
companies
13:4, 46:16
company
15:12, 15:14,
21:7, 21:19,
22:2, 22:7,
24:17, 35:8,
35:10, 36:4,
36:11, 36:24,
46:7, 64:11
complete
20:20
completely
11:2
completion
76:8, 76:14
compliance
11:10
computer
6:9, 8:18
conceived
22:5, 64:13,
64:15
concern
58:13, 58:24,
59:1, 59:5
concerning
19:8, 19:12,
63:6
concerns
56:21, 56:23,

57:17
concluded
70:3, 73:15
conducted
49:12
confidential
32:11, 32:15
confidentiality
4:21, 20:14
confirmed
58:18
connect
6:14
connecting
6:15
connection
20:21, 23:17,
32:16
consideration
74:19
considered
65:10
consistently
51:9
consulting
14:15
contact
72:8
contacted
27:19, 71:23,
72:1
contains
76:12
content
42:3
contents
69:8
context
39:16
continues
69:20
continuing
30:16
control
61:4, 61:18
conversation
19:2, 27:13,
27:18

conversations
6:11, 18:19,
24:8, 28:16,
28:17, 29:3,
29:18, 33:3,
34:3, 43:8,
64:2, 68:10
convey
21:7
copied
34:21, 44:22,
45:5, 47:23,
53:2, 53:17,
54:11, 66:23,
69:6
copy
11:20, 76:3
copying
56:7
corner
20:11, 40:18,
53:25
corp
1:12, 1:24,
14:14, 75:12,
75:24
corporate
15:11
correct
8:9, 12:10,
14:10, 14:25,
15:23, 22:16,
24:9, 28:4,
28:5, 29:19,
31:3, 31:13,
32:12, 38:17,
39:5, 42:8,
44:22, 45:5,
46:3, 56:21,
57:6, 57:17,
57:20, 58:14,
59:6, 59:14,
60:1, 62:16,
62:20, 63:13,
63:19, 63:22,
69:6, 69:25,
70:4, 70:9,
72:7, 74:3

could
28:10, 28:12,
29:12, 41:19,
44:8, 62:13,
64:4, 64:5
counsel
7:12, 11:8,
13:22, 33:18,
39:23, 41:8,
54:16, 54:20,
54:23, 58:5,
58:15, 59:25,
65:23, 66:4,
76:15
county
74:9
couple
21:4
court
1:1, 4:14, 7:2,
7:23, 10:6,
36:21, 37:1,
51:25, 52:4,
55:2, 55:6,
56:3, 72:25,
73:5, 73:8,
73:14, 75:1
csr
2:6, 77:5
current
17:24
currently
13:2, 44:14
custodial
76:2

**D**

dallas
3:9
date
7:5, 70:11,
76:10, 77:6
dated
29:1, 30:9,
37:3, 53:16,
60:16, 66:22,
69:4
dates
14:17

| | | | |
|---|---|---|---|
| **dave** | **depos** | **disclose** | 35:17, 40:15, |
| 27:4, 27:6, | 7:9, 7:24 | 18:10, 23:5, | 42:20, 43:21, |
| 63:21 | **deposed** | 32:14, 49:23 | 60:21, 60:24, |
| **david** | 8:9, 8:15, | **disclosed** | 61:14, 65:8, |
| 1:30, 2:2, | 8:21, 8:24, 9:2, | 21:23, 32:12, | 65:11, 68:1, |
| 3:23, 4:19, | 9:6, 9:9 | 32:20 | 74:15 |
| 6:24, 7:20, | **deposition** | **disclosure** | **documents** |
| 7:21, 8:1, | 1:29, 2:1, | 4:20, 20:14 | 8:17, 15:18, |
| 18:23, 19:3, | 4:18, 6:24, | **discuss** | 19:4, 19:19, |
| 23:25, 43:22, | 7:11, 8:25, | 55:8, 60:6 | 19:22, 20:16, |
| 74:1, 74:6, | 10:3, 19:1, | **discussed** | 20:21, 25:1, |
| 74:12, 75:29, | 19:9, 19:12, | 16:4, 48:19, | 30:1, 49:24, |
| 75:35 | 19:16, 56:5, | 63:22, 70:18 | 50:9 |
| **davis** | 68:15, 72:6, | **discussing** | **doing** |
| 3:6, 4:8, 7:17, | 72:23, 73:15, | 15:2, 63:24, | 65:18, 73:12 |
| 13:16, 13:20, | 74:2, 75:29, | 65:20, 66:3 | **donald** |
| 19:14, 22:18, | 75:37, 76:1, | **discussion** | 31:13 |
| 23:3, 51:11, | 76:8, 76:14 | 23:14, 35:13, | **done** |
| 58:7, 59:7, | **depth** | 36:15, 38:6, | 36:23, 56:13 |
| 60:2, 63:14, | 43:2, 43:3 | 51:25, 53:6, | **down** |
| 65:4, 65:15, | **described** | 53:8 | 12:24, 14:19, |
| 70:10, 71:15, | 21:11, 21:24 | **discussions** | 15:1, 21:22, |
| 71:17, 71:20, | **description** | 6:8, 16:1, | 26:4, 31:6, |
| 72:17, 73:10 | 4:17, 74:14 | 16:9, 16:17, | 49:16, 53:12, |
| **day** | **detail** | 17:2, 18:13, | 60:11, 61:9, |
| 49:21, 74:12, | 48:20 | 22:13, 26:18, | 61:12, 61:19, |
| 74:21, 77:1 | **details** | 33:12, 33:18, | 61:21, 62:3, |
| **days** | 16:14, 28:16, | 38:10, 41:2, | 62:4, 64:5, |
| 73:13, 76:9 | 42:18, 55:17, | 41:6, 41:25, | 66:9, 68:13 |
| **deals** | 55:21, 64:21 | 50:5, 51:15, | **download** |
| 17:17 | **determining** | 52:15, 57:8, | 60:23, 61:2 |
| **december** | 17:18 | 67:10, 70:13, | **dr** |
| 21:1 | **developed** | 70:19 | 12:19, 14:3, |
| **declined** | 16:10, 21:18, | **dispute** | 14:4, 16:5, |
| 69:9 | 22:24, 65:13 | 9:10, 34:10, | 16:9, 19:7, |
| **defendants** | **development** | 47:9, 47:15 | 23:17, 24:9, |
| 1:14, 1:26, | 22:16 | **district** | 24:11, 25:3, |
| 2:3, 3:12, | **device** | 1:1, 1:2, 7:2, | 25:17, 26:6, |
| 75:14, 75:26 | 40:19, 40:25 | 75:1, 75:2 | 26:14, 26:18, |
| **defines** | **diego** | **division** | 27:2, 27:11, |
| 62:22 | 39:4, 39:7 | 1:3, 7:3, 75:3 | 27:13, 27:18, |
| **delivered** | **different** | **document** | 27:23, 28:18, |
| 76:1 | 28:13, 36:1 | 12:6, 14:6, | 28:23, 29:5, |
| **depo** | **diligence** | 19:19, 20:7, | 29:7, 32:14, |
| 8:13 | 48:2, 48:14, | 20:24, 22:10, | 33:4, 33:10, |
| **deponent** | 48:22, 49:22 | 22:11, 22:22, | 33:13, 34:3, |
| 76:6, 76:7, | **diluted** | 25:4, 31:5, | 34:6, 34:10, |
| 76:13 | 46:22 | 32:5, 35:1, | 34:14, 35:14, |

36:6, 36:11,
36:15, 37:7,
38:13, 38:16,
39:7, 40:24,
41:4, 41:16,
42:1, 42:15,
47:9, 47:15,
48:18, 50:5,
51:5, 51:16,
52:17, 54:19,
58:23, 59:4,
59:13, 59:24,
62:16, 62:19,
62:23, 62:24,
63:10, 63:13,
63:17, 63:18,
63:25, 64:11,
64:14, 64:17,
64:22, 65:13,
67:21, 68:2,
68:8, 69:9,
69:15, 70:9,
70:15, 70:20,
72:3, 72:13
**drafted**
63:16
**drive**
77:8
**due**
48:2
**duly**
2:3, 8:2, 75:35
**during**
20:17, 27:18,
28:1, 28:2,
31:20, 37:7,
57:9

**E**

**e) (1**
76:6
**e-mail**
4:31, 5:4,
25:12, 25:13,
25:17, 26:13,
27:2, 27:7,
28:9, 28:25,
29:4, 34:20,

19:22
**earlier**
15:20, 35:20,
41:10, 57:2
**earnings**
15:15
**easier**
11:24, 60:23
**eastern**
1:2, 7:2, 75:2
**easy**
39:24
**edification**
35:4
**else**
54:11
**employed**
13:2, 76:16
**employee**
19:22, 64:17,
65:2, 66:11,
76:19
**employees**
20:19, 21:17,
22:15
**employment**
13:4, 13:5,
20:22, 22:2,
22:7, 31:20
**enabled**
6:12
**ending**
25:8, 41:20
**ends**
72:23
**engagements**
32:9
**ensure**
22:22
**enter**
68:7
**entered**
31:25
**entering**
37:24, 65:11
**entire**
21:7, 31:1
**entities**
14:12, 14:14,

34:22, 35:4,
35:5, 35:21,
36:18, 37:4,
37:10, 37:19,
38:3, 39:2,
41:11, 41:12,
44:15, 44:19,
44:20, 44:25,
45:3, 45:5,
45:9, 45:11,
45:18, 45:20,
45:21, 47:18,
47:19, 47:21,
48:4, 48:6,
48:12, 48:19,
49:15, 50:13,
51:18, 52:21,
52:25, 53:15,
54:3, 54:11,
54:18, 56:6,
56:12, 56:22,
57:2, 57:15,
58:11, 58:12,
58:20, 58:22,
59:3, 59:9,
59:10, 59:13,
59:18, 60:3,
60:4, 60:15,
60:20, 63:18,
63:20, 63:21,
66:22, 67:8,
67:11, 68:20,
68:23, 69:1,
69:8, 69:18
**e-mail's**
29:1
**e-mailing**
26:14
**e-mails**
4:26, 19:5,
38:18, 51:13,
56:18, 57:12,
70:22
**e2e**
4:35, 40:19,
40:25, 42:21
**each**
6:16, 19:19,

16:18, 37:22
**entity**
12:15, 36:3
**entry**
33:5
**esquire**
3:6, 3:13, 3:23
**essence**
63:10
**et**
7:1
**evaluating**
36:19, 36:24
**even**
65:10
**ever**
9:2, 9:6, 9:9,
9:12, 9:15,
23:13, 49:10,
50:14, 54:23,
60:7, 67:19,
67:24, 68:6,
69:1, 69:14,
72:12
**every**
10:18
**everyone**
6:2, 6:21
**evidence**
50:19, 50:23
**evolved**
55:18
**exactly**
16:3
**examination**
4:6, 4:8, 8:4,
71:16
**except**
21:10, 74:3
**excepted**
21:12
**executed**
31:12, 74:18
**executive**
31:9, 35:8
**exhibit**
4:18, 4:19,
4:20, 4:25,

4:29, 4:31,
4:34, 4:38,
4:40, 4:43, 5:1,
5:4, 5:8, 6:1,
11:5, 11:7,
11:14, 11:19,
11:25, 12:4,
13:9, 13:10,
13:13, 13:17,
13:22, 14:1,
14:20, 20:1,
20:2, 20:5,
20:7, 24:21,
24:22, 25:6,
29:22, 29:23,
30:8, 34:16,
34:17, 34:19,
40:2, 40:3,
40:16, 41:11,
44:9, 44:10,
44:11, 44:14,
53:12, 53:13,
53:15, 55:25,
56:1, 56:5,
60:12, 60:13,
60:15, 61:3,
61:23, 66:18,
66:19, 66:21,
68:15, 68:16,
68:17
**exhibit's**
40:5
**exhibit-by-exhib-
it**
12:1
**exhibits**
4:16, 11:5,
11:23, 70:17
**expect**
10:9
**expected**
42:22
**expiration**
77:6
**expires**
74:27
**explain**
46:8

**explicitly**
58:12, 58:13
**expressed**
57:25, 74:19
**expressing**
57:16
**expressway**
3:8
**extent**
18:9, 23:5,
29:10, 32:3,
50:23, 57:24,
65:16

### F

**face-to-face**
49:21, 50:15
**fact**
20:6
**facts**
49:24, 50:9
**fair**
10:10, 10:16,
50:25
**fairly**
60:24
**faith**
65:12
**fall**
67:16
**familiar**
12:12, 12:15,
19:18, 24:7,
36:3, 49:5, 49:8
**far**
72:11
**fax**
77:12
**february**
40:24, 77:1
**federal**
2:9
**few**
9:1, 71:18
**file**
33:13
**filed**
17:24, 20:8,

21:25, 33:13,
34:14, 69:24,
70:8
**filing**
34:4
**final**
73:11
**finance**
15:5, 17:6,
42:9
**financial**
15:11
**financially**
76:20
**financials**
15:15
**fine**
43:23, 61:7,
71:2
**finish**
70:25
**firm**
77:7
**first**
8:2, 8:13,
14:9, 17:23,
20:5, 21:5,
22:5, 25:4,
25:6, 25:11,
25:12, 26:5,
36:13, 44:15,
44:18, 44:24,
48:19, 51:5,
51:16, 51:18,
51:19, 52:17,
52:21, 52:24,
53:7, 61:9,
61:10, 62:5,
62:22, 63:21,
71:22
**five-minute**
71:1
**fixed**
64:13, 64:16,
65:1
**flip**
31:6
**focus**
21:5

**focusing**
39:1
**follow-up**
36:18
**followed**
27:16
**following**
22:1, 22:6,
33:4, 75:34
**follows**
8:3, 52:14
**forecast**
15:14, 15:16
**forecasting**
15:13
**foregoing**
74:1, 74:16
**form**
11:21, 16:21,
17:12, 22:18,
23:3, 27:9,
28:8, 29:9,
31:21, 32:17,
38:21, 42:25,
43:9, 51:11,
58:8, 59:7,
59:15, 60:2,
63:14, 65:4,
65:14, 65:15,
70:10
**formed**
36:6
**forth**
57:12
**forward**
4:43, 29:7,
46:17, 54:19,
56:8
**four**
49:17
**frame**
15:2, 15:9,
16:2, 16:6,
16:17, 24:15,
27:19, 30:4
**framed**
50:25, 58:2
**frames**
15:4

| | | | |
|---|---|---|---|
| franich | 53:16, 56:7 | grown | heard |
| 3:24 | **give** | 37:14 | 18:3, 23:20 |
| **frcp** | 27:5, 60:5, | **guess** | **help** |
| 76:5 | 61:14, 62:8 | 8:25 | 6:13, 15:15, |
| **fredkin** | **given** | **guidance** | 30:4 |
| 3:24 | 14:17, 74:20, | 15:15 | **here** |
| **front** | 75:38 | **guide** | 6:23, 8:12, |
| 8:17, 17:21, | **global** | 61:7 | 10:25, 11:9, |
| 35:18, 40:16 | 26:7 | **guidelines** | 12:8, 13:24, |
| **ftc** | **go** | 8:12 | 14:21, 28:15, |
| 9:18, 9:21 | 22:19, 25:10, | **H** | 30:24, 41:21, |
| **full** | 52:5, 52:8, | | 47:13, 49:14, |
| 10:3, 26:5, | 52:23, 62:4, | **half** | 63:22, 64:8, |
| 46:13, 64:6 | 62:5, 72:20 | 14:24 | 72:6 |
| **full-time** | **going** | **hand** | **hereafter** |
| 13:4, 13:5 | 13:13, 15:18, | 74:20 | 21:9 |
| **fully** | 18:8, 22:12, | **handheld** | **hereby** |
| 54:25 | 23:4, 24:25, | 40:13 | 21:6, 74:2, |
| **function** | 25:5, 29:7, | **hang** | 75:33 |
| 15:12 | 30:25, 44:3, | 51:20 | **herein** |
| **further** | 46:17, 48:2, | **hanging** | 76:4 |
| 21:22, 53:5, | 51:18, 52:20, | 52:12 | **hereto** |
| 53:8, 62:4, | 53:24, 57:23, | **happened** | 2:11 |
| 70:12, 72:17, | 71:5 | 68:11 | **history** |
| 72:19, 76:5, | **goldberg** | **headwater** | 26:9 |
| 76:15, 76:18 | 67:7 | 1:4, 1:16, | **honestly** |
| **future** | **gone** | 6:25, 7:18, | 16:3, 32:25, |
| 64:10 | 43:3 | 9:13, 12:12, | 35:11, 47:16 |
| **G** | **good** | 12:16, 17:24, | **host** |
| | 8:6, 8:7, | 17:25, 19:11, | 39:3 |
| **game** | 43:19, 43:22, | 30:19, 30:22, | **hosting** |
| 50:25 | 48:9, 61:25, | 31:8, 32:1, | 37:5, 41:13 |
| **garbled** | 62:2, 65:12 | 32:14, 32:23, | **hour** |
| 36:20, 54:25 | **grant** | 33:4, 33:7, | 10:19 |
| **general** | 63:11 | 33:9, 33:15, | **hpi** |
| 23:11 | **great** | 34:3, 34:6, | 48:24, 49:20, |
| **generally** | 8:20, 72:21 | 47:22, 48:13, | 49:24 |
| 9:20, 15:9 | **greg** | 48:18, 50:24, | **hungerford** |
| **gentleman** | 9:13, 12:19, | 53:1, 62:19, | 77:8 |
| 12:18, 15:20 | 15:20, 16:1, | 62:23, 63:11, | **hw** |
| **getting** | 25:13, 31:8, | 64:1, 68:20, | 4:32, 4:41, |
| 42:18, 70:24 | 34:20, 35:5, | 69:24, 71:21, | 4:44, 5:6, 5:10, |
| **giancarlo** | 45:4, 47:23, | 71:24, 72:3, | 20:12, 25:7, |
| 25:20, 25:23 | 53:17, 56:6, | 72:13, 75:4, | 30:15, 35:2, |
| **gina** | 57:16, 58:1, | 75:16 | 40:18, 44:17, |
| 34:20, 35:7, | 60:16, 69:5, | **headwaters** | 54:1, 61:11, |
| 44:21, 45:3, | 69:24 | 49:11 | 67:5 |
| 47:22, 52:25, | **gregory** | **hear** | **hw-** |
| | 20:25 | 24:3, 27:4 | 4:23, 4:27, |

4:30, 4:36,
4:39, 5:2

**I**

**identification**
11:15, 13:11,
20:3, 24:23,
29:24, 34:18,
40:4, 44:12,
53:14, 56:2,
60:14, 66:20,
68:18
**identifies**
48:13
**identify**
6:13, 6:15,
67:15
**identity**
74:15
**immediately**
49:22
**impact**
33:15
**important**
22:12
**improved**
25:18
**in-house**
54:20, 54:23,
59:25, 66:4
**inc**
1:10, 1:22,
7:1, 75:10,
75:22
**included**
41:16
**including**
14:12, 25:19,
69:22
**incorporated**
31:13, 69:23,
70:8
**increased**
57:5
**index**
4:1
**indicates**
25:17, 27:10,

30:18
**indicating**
26:15
**information**
32:11, 32:15,
32:20, 49:25,
50:10, 50:20
**informed**
51:5
**infringement**
9:7
**initial**
28:17, 57:3
**instance**
2:2
**instruct**
18:14, 23:10,
29:14, 32:6,
65:24
**instructed**
35:19
**instructs**
10:8
**instrument**
74:17
**intellectual**
9:3, 9:4,
16:10, 21:18,
22:23, 34:9,
69:21, 69:22,
70:7
**intended**
33:13
**intent**
31:2, 33:19
**interaction**
12:20
**interactions**
15:19, 16:13,
25:2
**interest**
21:8, 21:10,
26:15, 28:18,
47:14, 51:10,
57:22, 64:25,
68:1
**interested**
15:2, 17:15,

28:22, 76:21
**interface**
24:11
**interfacing**
24:10
**internal**
54:16
**internally**
51:15, 52:16
**international**
24:3
**internet**
25:19
**interruptions**
6:18
**invades**
51:1, 57:24,
58:3
**invented**
51:16, 52:17,
64:14, 64:16,
65:1
**invention**
4:20, 20:14,
21:23, 22:3
**inventions**
21:9, 21:12,
22:24, 64:13,
64:15, 64:25
**invest**
45:16, 45:22,
56:20
**investigations**
37:13, 37:18,
37:23
**investment**
28:12, 45:12,
45:19, 46:7,
46:11, 46:17,
46:24, 48:19,
55:14, 57:3,
69:13
**investments**
46:15
**involve**
43:10
**involved**
15:17, 15:25,

16:17, 16:22,
17:1, 17:9,
17:16, 22:16,
26:17, 28:3,
28:7, 29:11,
29:13, 29:19,
38:20, 43:14
**involving**
9:4, 9:7, 9:10,
9:13, 71:23,
72:2
**ip**
9:10, 16:23,
19:18, 19:21,
37:11, 45:23,
47:5, 47:10,
49:7, 50:2,
50:12, 50:21,
51:6, 51:10,
51:16, 52:17,
53:6, 53:9,
54:16, 54:20,
56:21, 56:23,
57:17, 58:14,
58:24, 59:5,
59:14, 59:25,
63:13, 65:13,
66:4, 66:15,
68:2, 70:14,
72:14
**issue**
47:5, 47:10,
50:6, 53:6,
53:9, 58:5,
58:14, 59:14,
70:13, 70:14
**issued**
12:5
**issues**
17:8, 17:9,
30:5
**item**
47:4, 48:22,
49:17, 49:19,
67:14
**items**
48:14, 48:22,
49:23

**itself**
62:18, 64:9
**itson**
4:34, 4:38,
36:2, 36:4,
36:7, 36:10,
36:25, 37:15,
38:12, 38:16,
45:10, 45:16,
45:19, 46:3,
46:9, 47:1,
48:24, 49:11,
49:20, 49:24,
55:15, 55:18,
56:17, 56:20,
56:25, 57:9,
58:1, 62:19,
62:23, 62:24,
63:11, 64:1,
68:8, 69:9,
69:15, 69:24,
72:3, 72:13
**itson's**
50:2, 50:12,
50:21, 51:6,
51:10

---

**J**

**jacobs**
4:26, 24:12,
24:14, 25:14,
26:14, 26:18,
27:2, 27:10,
27:14, 27:20,
27:22, 28:6,
28:17, 29:4,
29:11, 29:18,
29:19, 41:3,
41:7
**january**
1:31, 2:5,
4:25, 7:5,
25:13, 27:1,
28:23, 29:1,
30:10, 33:14,
34:5, 70:3,
75:30
**jaws**
14:13

**jim**
25:20, 25:25,
34:21, 35:14,
44:21, 45:3,
47:21, 53:1,
53:16
**job**
1:34
**join**
19:23
**jose**
3:28
**judging**
28:9
**juggernaut**
14:14
**jump**
43:21
**june**
5:4, 66:22

---

**K**

**kabat**
3:7, 7:18,
19:15
**kays**
3:23, 3:25,
7:20, 10:8,
11:8, 13:14,
16:21, 17:12,
18:8, 18:22,
18:24, 23:2,
23:4, 23:18,
24:2, 27:9,
28:8, 29:8,
31:21, 32:2,
32:17, 33:17,
33:23, 34:1,
38:21, 39:22,
41:5, 42:25,
43:9, 43:23,
50:22, 52:2,
57:23, 58:9,
58:15, 59:8,
59:15, 65:14,
65:22, 66:6,
71:2, 72:21,
73:3, 73:5, 73:7

**kind**
30:3, 30:4
**knew**
13:14
**know**
10:19, 11:22,
16:12, 17:8,
17:19, 18:12,
24:7, 25:20,
25:24, 25:25,
26:2, 28:13,
30:2, 31:24,
32:18, 34:13,
35:18, 36:18,
38:22, 39:17,
39:19, 41:14,
41:18, 42:21,
43:1, 43:2,
49:4, 49:10,
50:14, 50:16,
50:17, 54:8,
54:10, 54:22,
54:24, 55:4,
56:12, 61:19,
62:9, 63:15,
65:16, 68:4,
68:9, 72:11
**knowledge**
9:8, 9:11,
21:20, 50:24
**known**
74:12
**kris**
3:6, 7:17,
71:20

---

**L**

**language**
64:19
**last**
8:24, 31:5,
44:20, 45:1,
47:4
**later**
11:24, 15:19,
22:12, 39:6
**lawrence**
3:32, 7:9

**lawsuit**
17:24, 18:7,
18:18, 18:19,
19:8, 19:12,
19:16, 72:12
**lawyer**
29:11, 29:13,
66:14, 66:15,
66:16
**lawyers**
32:4, 59:2
**lead**
1:10, 75:10
**leader**
26:7
**learn**
17:23
**learned**
18:17, 18:19
**leave**
52:12
**led**
50:20
**left**
13:6, 14:10,
14:16, 36:7
**legal**
72:12
**legalese**
64:8
**legitimate**
57:21, 58:24,
59:5
**lengthy**
60:24
**let's**
13:8, 15:1,
24:20, 25:10,
26:22, 29:21,
34:16, 40:1,
43:18, 43:24,
47:17, 49:16,
52:5, 52:8,
53:12, 55:24,
60:12, 66:17,
68:13, 68:14
**level**
24:16

license
45:22
likely
42:19
limited
14:13
linkedin
4:19, 13:13,
14:2
liquidation
46:5, 46:12
list
26:9, 47:4,
48:14, 48:23
listed
49:22
lists
14:9
litigation
71:23, 72:2
little
48:8, 48:11,
52:23, 61:22,
62:2, 62:3,
62:4, 62:14,
64:5
llc
1:4, 1:11,
1:16, 1:23,
6:25, 7:19,
12:13, 30:19,
30:22, 75:4,
75:11, 75:16,
75:23
llp
3:7, 3:25
loaded
40:6
loading
44:14
lombardi
34:20, 35:7,
35:12, 36:14,
37:4, 38:11,
38:19, 38:24,
41:17, 42:10,
43:13, 44:21,
45:3, 47:22,

50:6, 53:1,
53:5, 53:16,
54:4, 54:8,
56:7, 65:21,
65:23
lombardi's
39:12, 41:12
long
30:2
look
35:20, 61:15,
62:8, 68:22
looking
20:10, 24:1,
28:11, 37:21
looks
37:2, 45:17,
45:21, 46:24,
48:1, 56:19,
59:17, 62:21,
69:9, 70:5
lot
28:13, 64:7,
68:10

**M**

machine
2:8
made
17:18, 42:21
maintained
51:9
make
10:23, 30:6,
52:6, 52:11
makes
12:2, 43:21,
69:19
making
62:7
mandatory
21:16
many
8:21, 26:8
march
34:20, 37:3
mark
13:23, 66:11,

66:13, 66:22,
68:14, 69:5
marked
11:5, 11:15,
13:11, 20:3,
20:5, 24:23,
25:5, 29:24,
34:18, 40:4,
44:12, 53:14,
56:2, 60:14,
66:20, 68:13,
68:18
market
38:7
marshall
1:3, 7:3, 75:3
matter
6:25, 43:6
maybe
23:19, 49:17,
70:25
mcgrath
3:33
mckool
3:14, 7:16
md
77:10
mean
28:9, 32:25
meanings
23:15
meant
37:17, 67:14
media
6:23
meeting
37:3, 37:6,
40:19, 40:23,
41:16, 42:24,
49:21, 50:14,
50:15, 50:19
meetings
33:9, 39:6,
39:10, 42:14,
43:13, 48:17,
49:22
members
42:16, 43:4

mentioned
8:8, 24:6,
27:7, 28:1, 42:7
mic
6:10
micky
54:12, 54:15,
59:19
might
11:24, 16:19,
17:2, 38:25,
60:22, 64:12
million
45:22
mimoguy@mac
35:4
minhas
54:12, 54:15
minute
8:12, 43:20
missed
26:1
misunderstood
49:9
mobility
1:11, 1:23,
75:11, 75:23
model
55:9, 55:13
moment
13:23
money
46:17
monitor
7:6, 72:24
more
12:15, 17:20,
25:8, 61:24,
62:2, 62:3, 62:4
morgan
3:24
morning
8:6, 8:7, 11:6,
49:21
most
8:25, 69:10
mostly
42:7

move
14:19, 34:16,
40:1, 47:17
moving
4:43, 56:8
much
37:4, 41:12,
43:2
mute
6:10, 43:24
mutual
30:9

**N**

name
12:14, 15:23,
15:24, 36:5,
71:20, 74:16
named
12:18, 15:20,
66:11
nature
18:6, 32:22
navigate
11:22
nd
30:10
nda
4:29
necessary
43:11
need
10:19, 37:12,
73:1, 73:3, 73:6
needs
53:6
negotiating
17:17
negotiation
55:18, 56:16,
57:13, 64:22,
70:2
negotiations
65:7, 70:19
neither
76:15
never
70:6

new
17:10, 46:17
next
36:2, 38:5,
38:12, 43:21,
47:18, 49:18,
49:19, 49:21,
59:19, 60:20,
61:10
nondisclosure
30:9, 31:1,
31:2, 31:16,
31:19, 31:22,
31:25, 32:16,
33:5
nostradamus
13:15
notary
74:25
note
53:24, 67:2
noted
74:3
notes
39:2
nothing
19:2, 72:4,
72:5, 72:19
notice
4:18
number
4:17, 6:23,
7:3, 11:14,
13:10, 20:2,
20:11, 24:22,
25:6, 29:23,
30:14, 34:17,
35:1, 40:3,
40:17, 44:11,
44:15, 53:13,
53:24, 56:1,
60:13, 61:11,
66:19, 67:3,
68:17
numbered
2:4
numbers
25:9

**O**

oath
8:3, 9:24,
74:13
object
18:9, 23:2,
23:5, 42:25,
43:9, 57:23,
58:7
objection
16:21, 17:12,
22:18, 23:3,
27:9, 28:8,
31:21, 32:17,
38:21, 51:11,
59:7, 59:15,
60:2, 63:14,
65:4, 65:14,
65:15, 70:10
objections
29:8
obviously
8:12, 12:8,
29:13, 58:16,
64:7
off-the-record
6:8
offer
45:15
office
74:20
officer
75:36
officers
64:10
oh
11:17, 13:20,
49:9
okay
8:11, 9:6,
10:6, 10:25,
12:3, 12:4,
12:8, 12:18,
12:23, 13:20,
14:1, 14:21,
18:24, 23:24,
26:4, 26:13,

26:21, 28:1,
30:25, 33:23,
34:16, 34:19,
35:5, 35:6,
35:23, 38:1,
40:1, 40:15,
43:17, 44:8,
45:2, 45:8,
45:9, 48:10,
48:11, 52:7,
54:2, 55:23,
56:3, 56:14,
60:10, 61:17,
61:20, 62:1,
62:4, 62:6,
66:8, 67:6,
68:12, 68:25,
71:1, 72:5,
72:8, 72:11,
73:8
on-device
41:24, 42:1,
42:2
one
6:5, 6:23,
11:23, 20:20,
22:1, 22:25,
24:16, 25:8,
29:8, 51:20,
60:22
only
29:10, 36:17
opportunity
27:23
options
61:4
oral
1:29, 2:1,
75:37
order
30:4
organization
19:23, 39:16
original
76:1
originally
63:16
other
9:5, 16:18,

19:2, 37:22,
38:18, 39:20,
49:24, 50:10,
50:19, 57:8,
67:20, 72:4,
72:5, 72:12,
74:15
**otherwise**
18:14, 63:7,
65:24, 76:20
**out**
15:14, 27:12,
61:5
**outcome**
76:21
**outside**
65:23
**over**
6:5, 9:10,
31:23, 46:10,
55:19, 56:21,
57:17, 58:14,
58:24, 60:20,
68:23
**own**
21:9, 50:2,
50:11
**owned**
36:11, 50:21,
51:6, 65:12
**ownership**
9:10, 19:18,
19:21, 21:10,
23:12, 34:10,
47:5, 47:10,
47:14, 50:6,
51:9, 53:6,
53:9, 56:21,
56:24, 57:4,
57:5, 57:9,
57:17, 57:22,
58:24, 59:6,
59:14, 63:6,
63:12, 64:12,
64:25, 67:20,
68:1, 70:7,
70:13, 70:14,
72:14

**P**
**page**
4:2, 4:12,
4:17, 14:9,
14:20, 15:1,
20:9, 20:10,
20:13, 25:6,
25:8, 25:11,
26:4, 26:5,
26:25, 30:15,
30:24, 31:5,
31:17, 39:13,
41:20, 44:16,
44:19, 45:1,
49:18, 51:19,
52:21, 53:25,
58:17, 61:10,
67:4, 76:11
**pages**
1:35, 20:6,
60:21
**paragraph**
21:5, 21:21,
23:7, 62:6,
62:22, 63:3,
64:6, 69:19
**paragraphs**
21:4, 23:16
**part**
49:12, 60:20
**participate**
43:7
**participated**
42:23
**particularly**
22:15
**parties**
7:10, 17:2,
32:12, 76:4,
76:17
**partner**
16:11, 16:19,
17:3, 26:6,
38:16, 40:11
**partnering**
26:16, 28:18,
28:22

**partners**
4:29, 12:16,
17:25, 30:19,
30:22, 31:8,
62:20, 62:23,
64:1, 69:24
**partnership**
32:23, 33:6,
36:24, 41:3,
41:23
**partnerships**
29:6, 40:7,
40:11
**party**
76:7, 76:14
**pass**
61:3, 71:13,
72:18
**past**
12:21, 24:7,
31:19, 64:10
**patent**
4:40, 9:7,
21:25, 33:14,
34:4, 34:13,
37:12, 37:17,
37:23, 38:2,
49:7, 54:4,
54:9, 54:19,
54:22, 59:20,
59:25, 67:16,
69:23, 70:8,
72:14
**patents**
57:22
**paul**
4:25, 24:12,
24:14, 25:14,
26:14, 27:20
**pdf**
11:21
**peltier**
1:36, 2:6,
7:23, 75:32,
77:5
**pending**
10:21
**people**
43:11

**percent**
45:23, 46:2,
46:19, 56:24,
57:4, 57:6
**perfect**
25:11, 61:12
**perhaps**
39:22
**period**
37:8, 37:21,
38:11, 57:10
**periodically**
16:23
**person**
21:24, 74:15
**personally**
74:12
**personnel**
42:23, 43:15
**perspective**
17:17, 17:19
**phone**
6:15, 60:7,
77:11
**phones**
40:13
**place**
50:15, 50:19,
53:7, 60:8
**plaintiff**
1:6, 1:18,
71:21, 75:6,
75:18
**plaintiffs**
3:4
**plan**
26:6
**planet**
7:9, 7:24
**planning**
15:11
**please**
6:4, 6:6, 6:10,
6:12, 6:15,
6:21, 7:12,
10:13, 13:9,
20:1, 24:21,
29:22, 34:16,

35:16, 35:20,
40:2, 44:9,
47:18, 48:5,
51:21, 51:24,
53:12, 55:25,
56:11, 60:5,
66:18, 73:2
**plus**
45:22
**point**
16:15, 24:16,
27:21, 27:25,
28:7, 28:23,
33:17, 38:20,
43:19, 58:18
**portion**
41:21, 48:1,
50:2, 50:11,
50:21, 51:6
**positive**
26:9
**possessed**
50:10
**possesses**
49:25
**possible**
73:13
**potential**
27:23, 28:4,
29:6, 32:23,
33:6, 34:9,
40:7, 40:10,
41:3, 41:22,
45:19, 46:9,
48:24, 55:14,
67:11
**potentially**
40:12, 51:1,
58:3
**powerpoint**
4:34
**practice**
22:6, 32:8,
64:14, 64:16,
65:1
**preference**
46:5
**prepare**
18:25

**presence**
65:23
**present**
3:31, 41:8,
42:17, 64:10
**presentation**
40:16, 41:15,
41:22, 42:21,
43:3
**presentations**
43:7
**presented**
41:15
**president**
15:4, 17:6,
39:13
**presumably**
32:10, 46:2
**presumed**
22:2
**prevent**
46:22
**prior**
16:8, 29:4,
48:24, 49:4,
49:6, 49:11,
55:9, 63:12,
72:9
**private**
13:3, 46:7,
46:16
**privilege**
51:2, 57:25,
58:3
**privileged**
18:10, 23:6,
29:14
**probably**
39:10
**problem**
11:7, 13:25,
44:10, 68:16
**procedure**
2:9
**proceeding**
6:2, 6:7
**process**
15:14, 38:20,

39:8, 48:2,
49:13, 70:2
**produced**
2:2
**profile**
13:13, 14:2
**projects**
15:17, 38:24,
39:14, 39:15,
39:20, 39:22
**property**
9:3, 9:4,
16:10, 21:18,
22:23, 34:10,
69:22, 69:23,
70:7
**proposal**
5:9, 69:10
**proposed**
56:24
**proprietary**
4:21, 20:15,
31:17
**protect**
32:11, 46:19
**protecting**
46:16
**protection**
46:10
**proved**
22:4, 74:13
**provide**
10:2, 15:15,
18:14, 40:12
**provided**
54:23, 59:24
**provisions**
2:10
**public**
74:25
**pull**
11:4, 13:8,
19:25, 24:20,
29:21, 44:9,
55:24, 60:12,
66:17, 68:13
**pulled**
8:18, 11:19,

20:4, 56:4
**purpose**
22:22, 23:7,
32:13
**purposes**
6:7, 68:15,
74:18
**pursuant**
2:8, 76:5
**put**
35:17, 40:15,
58:22, 59:12,
61:5
**putting**
59:3

**Q**

**qc**
4:35, 26:8,
26:10
**qc-hw**
4:29
**qualcomm's**
5:8, 46:19,
55:14, 58:5,
68:1, 69:10,
69:21
**quarterly**
15:13
**question**
10:9, 10:12,
10:15, 10:21,
18:18, 33:20,
33:25, 35:24,
36:1, 36:13,
51:1, 51:16,
51:22, 51:24,
52:3, 52:18,
60:1, 66:3
**questions**
10:7, 35:22,
61:16, 68:24,
71:11, 71:18,
72:17
**quick**
35:15, 53:21,
56:10, 66:25,
70:24

**R**

**raleigh**
4:20, 4:25,
9:13, 12:19,
15:21, 16:1,
16:5, 16:9,
19:7, 21:1,
23:17, 24:9,
24:11, 25:3,
25:14, 25:17,
26:6, 26:14,
26:18, 27:2,
27:11, 27:13,
27:18, 27:23,
28:18, 28:23,
29:5, 29:7,
31:8, 32:14,
33:4, 33:10,
33:13, 33:19,
34:3, 34:6,
34:10, 34:14,
34:21, 35:5,
35:14, 36:6,
36:11, 36:15,
37:7, 38:13,
38:16, 39:7,
40:24, 41:4,
41:16, 42:1,
42:15, 45:4,
47:9, 47:15,
47:23, 48:18,
50:5, 51:5,
51:16, 52:17,
53:17, 54:19,
56:7, 57:16,
58:1, 58:23,
59:4, 59:13,
59:24, 60:16,
62:16, 62:19,
62:23, 62:24,
63:10, 63:17,
63:18, 63:25,
64:11, 64:14,
64:17, 64:22,
65:13, 67:21,
68:8, 69:5,
69:9, 69:15,

70:9, 70:15,
70:20, 72:3,
72:13
**raleigh's**
63:13, 68:2
**ratchet**
46:13
**reaching**
27:12
**reaction**
14:13
**read**
6:21, 30:25,
35:15, 35:18,
35:20, 42:4,
45:6, 48:4,
48:6, 51:23,
52:14, 53:21,
53:23, 56:10,
56:11, 60:25,
62:7, 66:25,
74:1
**read-back**
52:1
**reading**
67:2
**real**
35:15, 56:10,
66:25
**really**
58:10, 70:24
**realtime**
2:7
**realtimed**
1:29, 2:1
**reason**
10:2, 17:5,
26:24, 50:16,
54:24, 55:3,
55:4, 57:10
**reasons**
26:8, 28:13,
28:14, 76:12
**recall**
9:17, 15:23,
15:24, 16:3,
16:4, 16:8,
20:18, 24:13,

24:15, 26:17,
27:12, 27:15,
27:17, 28:16,
28:20, 29:3,
29:10, 29:16,
29:17, 32:18,
32:19, 32:22,
33:3, 33:9,
33:11, 33:12,
33:21, 34:2,
34:8, 34:9,
35:11, 35:12,
36:5, 36:13,
37:6, 38:10,
39:6, 39:8,
39:10, 40:6,
40:10, 40:14,
40:23, 41:1,
41:2, 41:7,
41:9, 41:25,
42:6, 43:12,
45:18, 48:17,
50:5, 50:9,
50:13, 50:18,
51:3, 51:4,
51:12, 51:14,
52:15, 53:8,
53:10, 54:24,
55:1, 55:5,
55:17, 57:8,
57:14, 60:7,
60:9, 63:24,
64:2, 64:21,
65:20, 66:1,
66:3, 66:5,
66:10, 67:7,
67:10, 67:19,
67:24, 68:3,
68:4, 68:6,
68:9, 68:11,
69:1, 70:12,
70:16
**recalled**
47:8
**receipt**
76:10
**receive**
72:8

**receiving**
72:9
**recent**
8:25, 69:10
**recently**
14:7, 14:8
**recollection**
19:5, 25:2,
28:21, 28:25,
37:16, 38:2,
38:15, 38:18,
47:11, 47:14,
56:15, 65:7,
69:12, 69:17
**recollections**
70:18
**record**
2:10, 6:22,
11:9, 13:12,
30:14, 34:25,
35:17, 44:3,
44:7, 67:3,
71:5, 71:9,
72:20, 75:37,
76:19
**recorded**
21:1
**recording**
6:7
**redline**
67:11
**redlines**
5:5
**reduced**
22:5, 64:14,
64:16, 65:1
**referenced**
38:2
**referring**
39:19, 55:14
**reflect**
20:6, 69:16
**refresh**
19:5, 25:2,
47:11, 56:15,
69:12, 69:16
**refreshed**
70:18

| | | | |
|---|---|---|---|
| **regard** | **releasees** | **requires** | 69:20, 69:21 |
| 37:11 | 62:25, 63:5, | 23:5 | **ring** |
| **regarding** | 63:7 | **research** | 12:14, 30:22 |
| 16:9, 16:18, | **releasing** | 1:4, 1:16, | **rockville** |
| 19:15, 23:14, | 64:11 | 6:25, 7:18, | 77:10 |
| 25:2, 33:6, | **relevant** | 12:12, 17:25, | **role** |
| 34:4, 38:11, | 45:23, 49:1 | 75:4, 75:16 | 15:8, 17:13, |
| 40:24, 42:1, | **remember** | **reserve** | 35:10 |
| 47:10, 50:6, | 6:4, 6:10, | 69:20 | **roll** |
| 56:16, 57:9, | 12:18, 15:22, | **resolution** | 15:14 |
| 57:12, 70:19 | 16:12, 16:13, | 47:5 | **room** |
| **regardless** | 16:14, 24:10, | **resolve** | 8:14 |
| 50:18 | 27:22 | 56:23 | **rough** |
| **registration** | **remote** | **respect** | 73:1, 73:6 |
| 77:7 | 7:8, 8:13 | 37:17 | **roughly** |
| **relate** | **remotely** | **response** | 14:24, 44:1 |
| 9:19, 15:19, | 6:2, 7:11 | 12:9, 27:13 | **rule** |
| 20:6, 46:9 | **repeat** | **responsible** | 76:5 |
| **related** | 35:23, 51:22, | 15:12 | **rules** |
| 29:5, 57:3, | 67:22 | **restate** | 2:9 |
| 67:11, 68:1, | **reported** | 33:24 | **run** |
| 70:13, 76:16 | 1:36, 2:8 | **results** | 6:3 |
| **relates** | **reporter** | 48:25, 49:11 | **runs** |
| 41:22, 41:23, | 2:7, 6:13, | **resumé** | 25:7, 44:17 |
| 42:20 | 7:23, 10:6, | 14:22, 15:6, | **russ** |
| **relating** | 36:21, 37:1, | 17:7 | 3:7, 7:17, |
| 72:14 | 52:1, 52:4, | **retail** | 19:15 |
| **relationship** | 55:2, 55:6, | 42:2 | **S** |
| 33:15, 34:6, | 72:25, 73:5, | **retain** | |
| 38:6, 68:7 | 73:8, 73:14, | 22:23 | **said** |
| **relationships** | 75:33 | **returned** | 10:6, 15:22, |
| 26:9, 37:22, | **reporter's** | 76:9, 76:11 | 23:19, 41:12, |
| 38:12 | 4:14, 75:28 | **review** | 49:8, 49:14, |
| **relative** | **represent** | 19:4, 55:8 | 58:16, 58:25, |
| 76:19 | 7:14, 11:9, | **right** | 63:23 |
| **release** | 71:21 | 6:20, 7:22, | **same** |
| 5:1, 5:5, | **representatives** | 21:8, 25:7, | 49:21, 59:8, |
| 60:17, 60:21, | 63:25 | 38:6, 43:25, | 74:3, 74:18 |
| 61:13, 62:15, | **representing** | 46:21, 52:4, | **san** |
| 62:18, 63:4, | 7:9, 7:24 | 56:20, 72:16, | 3:26, 3:28, |
| 63:12, 63:22, | **request** | 72:22 | 39:4, 39:7 |
| 63:25, 64:6, | 24:12, 26:19, | **right-hand** | **save** |
| 64:8, 64:22, | 27:20 | 20:11, 30:14, | 13:23 |
| 64:24, 65:7, | **requested** | 40:17, 44:16, | **saw** |
| 65:11, 65:21, | 52:13, 76:7, | 53:25, 67:4 | 41:10, 57:2 |
| 66:4, 67:12, | 76:13 | **rights** | **say** |
| 67:17, 67:20, | **require** | 4:22, 20:15, | 63:21 |
| 67:25 | 18:9 | 21:17, 22:23, | **saying** |
| | | | 27:3 |

says
20:25, 26:6,
31:17, 36:2,
37:4, 37:10,
38:5, 39:13,
49:19, 53:5,
55:7, 57:18,
58:17, 58:20,
59:9, 60:4,
69:11, 69:17,
70:1
**scope**
67:16
**scott**
3:13, 7:15,
72:25, 76:2
**screen**
8:18, 11:20,
11:23, 21:22,
30:8, 60:25
**scroll**
15:1, 26:22,
48:8, 48:10,
49:16, 49:17,
52:22, 60:25,
61:9, 61:11,
61:19, 61:21,
62:3, 62:13,
64:5
**scrolling**
26:4
**sd**
39:3
**seal**
20:8, 74:20
**search**
48:25, 49:12
**searches**
37:12, 37:17,
37:23, 38:2
**second**
26:4, 44:25,
51:20, 68:22,
69:18
**see**
13:16, 15:6,
17:7, 20:24,
21:2, 21:14,

22:8, 25:1,
25:15, 25:21,
26:11, 27:1,
30:11, 30:20,
31:7, 31:10,
34:23, 38:8,
40:21, 44:18,
44:20, 45:4,
45:9, 45:13,
45:25, 47:6,
47:24, 48:3,
48:15, 49:2,
50:3, 53:3,
53:19, 54:6,
54:13, 55:11,
56:9, 59:21,
60:18, 63:1,
63:8, 64:5,
64:19, 65:3,
65:5, 66:24
**seed**
45:12, 46:24,
48:18, 57:3
**seeing**
20:18, 51:12,
69:1
**seen**
12:6, 14:3,
20:16
**sees**
58:17
**selwyn**
67:7
**senior**
15:4, 17:5,
35:8, 39:13
**sense**
10:23, 12:2,
17:18, 30:6,
43:21
**sent**
49:10, 62:15,
63:17, 63:18,
63:20
**sentence**
26:5
**separate**
18:12, 23:8,

32:3
**september**
36:7
**sequence**
44:20
**series**
30:1
**served**
12:10, 18:4,
76:3
**service**
42:2
**services**
1:10, 1:22,
7:1, 75:10,
75:22
**several**
14:17, 37:13,
60:21
**sgoldberg@wsgr**
66:23
**shall**
22:2
**share**
30:3
**shorthand**
2:8, 75:32
**should**
6:9, 35:19
**show**
11:13, 15:18,
24:25, 25:5
**showing**
22:10
**shown**
56:4, 76:4
**siamas**
3:24
**sic**
7:7, 49:5,
68:21
**side**
15:16, 17:14,
17:21, 28:3,
30:15, 42:8,
42:11, 42:13,
58:1, 67:4
**sign**
20:19, 24:3,

67:20, 67:25
**signature**
4:12, 74:2,
76:6, 76:9,
76:11
**signature-p1kal**
77:3
**signed**
22:14, 31:8,
32:5, 69:14
**signs**
19:22
**similarly**
21:21
**since**
13:6, 14:10,
14:15, 60:24
**sir**
36:22, 55:3,
73:14
**sit**
24:1, 28:15,
47:13
**skip**
20:8
**slightly**
21:22
**slowly**
6:4
**smith**
3:14, 7:16
**smoothly**
6:3
**snyder**
66:11, 66:13,
66:22, 67:10,
69:5
**software**
47:1
**some**
8:11, 10:7,
11:23, 13:3,
14:9, 15:18,
15:19, 22:12,
24:25, 25:1,
25:19, 34:5,
37:12, 46:10,
50:2, 50:11,

50:21, 51:6,
51:13, 65:13,
65:18, 67:15,
68:23
**someone**
54:11
**something**
11:17, 45:11,
52:12, 65:18,
73:12
**sorry**
11:16, 13:20,
13:22, 17:25,
18:23, 19:19,
22:19, 23:24,
33:1, 35:23,
36:21, 38:4,
49:9, 49:18,
51:22, 52:9,
55:2, 62:7,
67:22, 70:22
**sort**
46:10, 67:25,
69:13
**speak**
6:4, 59:11
**speaking**
6:13, 6:16,
15:10
**special**
39:14, 39:15,
39:20, 39:23
**specific**
38:1, 39:11,
39:18, 55:21
**specifically**
21:11, 23:15,
27:15, 54:10
**spoken**
19:7, 19:11,
19:14
**st**
7:5, 45:2
**stake**
45:24, 46:2,
46:20, 56:24,
57:4, 57:5, 57:9
**stamp**
68:20

**stand**
6:21
**standard**
32:8, 67:15
**standpoint**
49:7
**start**
44:24
**started**
8:8
**state**
2:7, 7:13,
74:8, 74:26,
75:33
**stated**
2:10, 56:22
**statement**
21:11
**states**
1:1, 7:1, 21:6,
21:22, 48:23,
58:12, 58:13,
63:4, 64:8, 75:1
**step**
35:25, 38:5,
59:19
**steps**
36:2, 38:12
**still**
24:18, 56:20,
57:16, 59:24
**straight**
25:20, 25:25,
26:2, 34:21,
35:14, 36:16,
37:7, 39:7,
44:21, 45:3,
47:22, 48:13,
53:1, 53:17,
54:19
**strategic**
15:17, 32:8
**strategy**
15:5, 17:6,
40:19, 40:25,
42:21
**street**
3:15, 3:26

**strike**
19:20, 68:5
**string**
44:25, 52:21,
52:25
**subject**
22:3, 36:2,
43:6, 45:10,
56:7, 60:17
**submission**
20:25
**subpoena**
11:10, 11:11,
11:19, 11:20,
12:4, 12:9,
18:2, 18:4,
71:24, 72:4,
72:6, 72:9
**subscribed**
74:16
**substance**
27:17
**suggesting**
50:11
**suite**
3:16, 3:27,
77:9
**sullivan**
31:13, 32:5
**support**
46:25, 50:1
**sure**
9:1, 10:19,
11:3, 11:12,
27:16, 35:25,
38:22, 39:9,
42:5, 43:1,
45:7, 52:6,
52:12, 53:22,
67:1, 67:23,
73:10
**sworn**
2:3, 7:25, 8:2,
75:35

| T |
| --- |

**tab**
11:5

**table**
10:22, 58:2
**take**
10:18, 10:20,
12:24, 35:18,
35:20, 37:13,
43:19, 48:5,
51:21, 53:7,
53:11, 56:11,
60:11, 61:18,
66:8, 68:12,
68:22, 70:23
**taken**
2:3, 44:4,
71:6, 76:18
**taking**
13:23, 29:25
**talk**
6:5
**talking**
27:22, 62:9
**team**
26:10, 42:1,
42:12, 42:16,
43:4, 43:5,
43:10
**teamed**
35:13, 36:14
**tech**
3:33, 6:1,
11:7, 13:22,
44:10, 61:3,
61:19, 61:23,
68:16
**technical**
22:16, 42:11,
42:14, 42:16,
42:18, 42:23,
43:2, 43:5,
43:13, 43:15
**technical-related**
6:18
**technician**
11:18, 20:4,
44:13, 56:4
**technology**
16:18, 16:23,
17:8, 17:9,

17:10, 17:15,
17:21, 37:11,
38:7, 41:24,
42:2, 63:6
**tenure**
28:2
**term**
46:6, 46:15,
49:5, 49:6, 49:8
**termination**
22:1, 22:6,
22:25
**terms**
22:3, 22:11
**testified**
8:2, 9:12, 9:15
**testify**
12:9
**testimony**
10:3, 52:13,
75:37, 76:18
**texas**
1:2, 2:6, 2:7,
3:9, 3:17, 7:2,
75:2, 75:33,
77:5
**th**
21:1, 27:1,
52:25, 60:16,
66:22
**thank**
6:1, 6:19,
24:5, 34:1,
37:1, 39:21,
55:6, 62:2,
62:3, 71:3,
71:10, 71:15,
73:4, 73:8
**thanks**
23:25, 27:3,
37:4, 41:12,
48:9, 53:7, 71:2
**themselves**
7:13
**therefore**
76:12
**therein**
74:19

**things**
9:5
**think**
9:5, 13:18,
23:18, 39:18,
52:2, 59:9,
59:14, 63:23,
70:24, 73:12
**third**
17:2, 20:8,
21:24
**thread**
25:13, 44:15
**three**
8:23, 25:8,
61:4
**through**
8:11, 11:22,
12:1, 18:19,
25:8, 30:1,
30:16, 31:1,
35:19, 35:21,
39:9, 44:17,
56:12, 59:4,
60:25, 61:1,
61:7, 61:15,
62:9, 74:13
**time**
6:16, 7:6, 7:7,
8:24, 15:2,
15:3, 15:9,
16:2, 16:5,
16:17, 20:17,
24:15, 24:25,
27:19, 28:2,
28:3, 28:7,
28:23, 30:2,
30:3, 31:23,
35:9, 35:17,
35:18, 37:7,
37:21, 38:11,
44:2, 44:6,
48:5, 51:21,
53:5, 55:19,
57:10, 71:4,
71:8, 71:11,
72:23
**times**
8:21

**title**
21:8, 39:12,
39:18
**titled**
20:14, 40:18
**today**
7:8, 7:23,
9:25, 10:4,
11:1, 15:3,
19:1, 28:15,
47:13, 70:18,
71:11
**today's**
7:5
**together**
36:14, 55:8,
62:24
**tomorrow**
60:5
**took**
50:14, 50:19,
60:8
**top**
20:13, 20:24,
26:8, 26:23,
26:25, 44:18,
44:19, 62:12
**towards**
59:17
**transcript**
73:4, 73:11,
75:36, 76:10
**transfer**
21:7
**transmit**
48:24
**trial**
9:15
**true**
74:3, 75:37
**try**
10:13, 10:18,
10:20
**turn**
41:19
**two**
20:6, 23:16,
25:19, 29:8,

73:12
**two-million-doll-
ar**
46:11
**type**
65:11
**types**
43:7
**typically**
37:23, 38:23,
38:25

---
                    U
---
**unable**
6:14
**uncertainty**
65:19
**unclear**
57:11
**uncommon**
17:4
**under**
9:24, 20:8,
63:3, 74:13,
74:20
**understand**
9:24, 10:12,
10:15, 10:25,
18:6, 22:21,
24:24, 31:2,
37:14, 43:6,
49:6, 51:8,
67:14
**understanding**
18:12, 22:13,
22:20, 23:7,
23:11, 32:3
**understood**
33:2
**united**
1:1, 7:1, 75:1
**unless**
10:7, 10:21,
22:4, 57:25
**updated**
14:6
**uploaded**
11:6, 13:19

uploads
68:14

**V**

vaguely
16:12, 16:13,
26:20
value
37:14, 46:16
various
15:17
venture
46:15
versus
6:25
via
3:2, 6:15
vice
15:4, 17:6,
39:13
video
3:33, 6:12,
6:14, 6:22, 7:6,
7:10, 72:24
videoconference
3:2
videographer
3:32, 6:20,
7:8, 7:22, 44:2,
44:6, 71:4,
71:8, 72:22
videotaped
1:29, 2:1, 6:24
voice-identify
7:13
vs
1:8, 1:20,
75:8, 75:20

**W**

wait
27:4
waive
69:21
waived
70:6
walk
8:11

wallace
3:32, 7:9
want
16:19, 17:2,
21:5, 27:5,
30:3, 44:24,
52:6, 52:11,
61:6, 61:14,
61:19, 61:24
wanted
37:11, 38:16,
61:5, 62:8
wanting
16:11
way
60:3
we'll
10:18, 10:20,
43:25
we're
20:10, 30:25,
51:12, 71:5,
72:6
we've
58:17, 70:17
week
48:23, 49:20
weeks
37:14, 55:10
went
39:9
whatsoever
47:14
whereby
40:11
whereupon
11:14, 13:10,
20:2, 24:22,
29:23, 34:17,
40:3, 44:11,
52:13, 53:13,
56:1, 60:13,
66:19, 68:17
whether
17:18, 24:7,
28:21, 33:13,
36:19, 49:10,
50:18, 57:11,

64:15, 67:19,
67:24, 68:4,
68:6, 69:13
whichever's
61:1
willing
45:22, 56:19
wireless
25:18
wise
1:30, 2:2,
4:19, 6:24,
7:21, 8:1, 8:6,
13:2, 14:3,
14:4, 18:9,
24:5, 24:24,
27:4, 27:6,
29:25, 34:23,
35:17, 40:6,
44:13, 49:4,
50:7, 53:18,
56:6, 58:4,
58:19, 60:23,
61:14, 62:16,
66:10, 66:23,
68:23, 69:2,
71:10, 71:18,
71:22, 72:23,
74:1, 74:6,
74:12, 75:29,
75:35
within
22:1, 22:25,
39:15, 67:16,
76:9
witness
2:2, 3:21,
7:21, 7:25,
11:16, 18:23,
36:23, 48:7,
50:23, 52:7,
52:9, 55:4,
58:6, 61:6,
61:21, 62:1,
71:3, 71:14,
72:18, 75:35,
75:38
words
37:19, 58:16,

59:10
work
11:25, 12:19,
29:5, 35:13,
36:15, 38:23
worked
31:18, 31:22
working
25:18
works
21:9, 21:12
wouldn't
59:12
wrapping
70:25
written
65:5

**X**

xxx
76:7

**Y**

yeah
9:5, 13:21,
14:18, 16:12,
16:22, 17:4,
18:16, 23:4,
23:23, 28:9,
28:20, 31:22,
32:13, 35:15,
35:16, 39:5,
42:9, 43:23,
45:7, 48:5,
48:8, 56:11,
58:20, 59:9,
61:6, 61:8,
61:12, 62:1,
62:3, 62:11,
63:15, 63:23,
64:20, 65:5,
66:6, 70:11
year
22:1, 22:25
years
9:1, 14:24,
33:1, 70:22
yesterday
37:5, 41:13

**yourself**
6:15

### z

**zoom**
3:2, 61:24, 62:2

### $

**$2**
45:22

### .

**.03**
5:8
**.06**
4:40
**.07**
4:43
**.19**
5:1
**.2009**
4:31, 4:34
**.21**
4:38
**.22**
4:29
**.3767**
77:11, 77:12
**.7474**
3:10
**.8288**
3:29
**.8700**
3:18

### 0

**00018717**
4:36, 40:18
**00051416**
4:32
**00051418**
4:39, 44:17
**00051421**
4:41
**00051422**
4:44
**00051423**
5:10

**00051424**
5:2
**00094026**
4:23
**00102740**
4:27, 4:30, 25:7
**00102742**
5:6, 67:5
**00397**
1:8, 75:8
**00398**
1:20, 75:20
**0046232**
30:15
**0051416**
35:2
**0051421**
54:1
**0051423**
68:21
**0051424**
61:11
**0094028**
20:12
**02**
44:5
**03**
2:5, 44:1, 44:7
**04**
7:7
**09**
40:20

### 1

**1**
2:5, 44:1,
44:5, 44:7,
48:22, 71:5,
71:6, 71:7,
71:9, 72:24
**1.2**
21:5
**1.4**
21:21
**10**
4:43, 43:20,
55:25, 56:1,

56:5, 77:6
**1050**
3:27
**11**
4:18, 5:1,
60:12, 60:13,
60:15
**12**
2:5, 5:4, 44:3,
44:4, 66:18,
66:19, 66:21
**13**
4:19, 5:8,
68:15, 68:17
**14**
27:1, 68:14
**16**
32:25, 70:22
**18**
21:1
**19**
60:16
**1x**
46:5

### 2

**2**
7:7, 49:23,
67:15
**2.25**
4:34
**20**
4:23, 4:39,
45:23, 46:2,
46:19, 57:4
**2006**
21:1
**2007**
15:3
**2008**
15:3, 15:9,
16:1, 16:6,
16:16, 36:8
**2009**
4:25, 5:4,
15:3, 15:9,
16:2, 16:6,
16:16, 25:13,

27:1, 28:24,
29:2, 30:10,
33:14, 34:5,
34:20, 37:20,
40:24, 42:8,
45:2, 52:25,
53:16, 56:6,
57:19, 59:23,
60:16, 66:22,
69:4, 70:3, 70:4
**2009.01**
4:29
**2009.04**
4:38
**2009.05**
4:40, 4:43, 5:1
**2009.09**
5:8
**2025**
1:31, 2:5, 7:6,
75:30, 77:2
**20850**
77:10
**21**
45:2
**2100**
3:16
**22**
30:10
**23**
1:8, 1:20, 7:4,
75:8, 75:20
**236**
30:16
**24**
4:27, 5:4,
14:24, 52:25,
66:22
**25**
40:20, 57:6,
77:6
**27**
5:2
**29**
4:30
**2:-cv--jrg-rsp**
1:8, 1:20, 7:4,
75:8, 75:20

**2nd**
77:1

**3**

**3**
49:23
**3.4**
4:31
**30**
60:5, 76:6
**303**
3:15
**31**
1:31, 2:5,
4:23, 4:36, 7:5,
75:30, 77:6
**310.826**
3:10
**3253**
77:5
**33**
76:9
**333**
3:26
**34**
4:32
**397**
4:23, 4:27,
4:30, 4:32,
4:36, 4:39,
4:41, 4:44, 5:2,
5:6, 5:10, 7:4,
20:12, 25:7,
30:15, 35:2,
40:18, 44:17,
54:1, 61:11,
67:5, 68:21
**3rd**
69:4

**4**

**4**
49:17, 49:19
**40**
4:36
**400**
77:9
**408.288**
3:29

**41**
4:27, 4:30
**418**
47:20
**420**
44:17
**44**
4:39
**45**
71:5, 71:6
**451**
77:8
**4th**
37:3

**5**

**50**
71:7, 71:9
**512.692**
3:18
**53**
4:41, 44:3,
44:4, 72:24
**54**
2:5
**56**
4:44
**570073**
1:34

**6**

**60**
5:2
**66**
5:6
**68**
5:10
**686**
77:7
**6th**
53:16

**7**

**71**
4:8
**729**
41:20
**73**
4:10

**74**
4:12
**741**
25:9
**75**
4:14
**75206**
3:9
**77**
1:35
**78701**
3:17
**7th**
25:13, 56:5,
57:19, 59:23

**8**

**8**
60:5
**8080**
3:8
**888.433**
77:11
**888.503**
77:12

**9**

**95110**
3:28