**PUBLIC VERSION**

███████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | Case No. 2:23-cv-00103-JRG-RSP |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | ████████████████ |
| *Defendants*. | |

**PLAINTIFF HEADWATER RESEARCH LLC'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO DEFENDANT SAMSUNG'S STANDING DEFENSE**

PUBLIC VERSION

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................... 1

IV.   LEGAL STANDARD ............................................................................................ 3

V.    ARGUMENT ......................................................................................................... 4

      A.     Headwater Has Legal Title to the Asserted Patents.................................. 4

      B.     Dr. Raleigh Conceived of the Claimed Inventions Months After He
           Left Qualcomm ......................................................................................... 4

      C.     Qualcomm's Conduct Further Demonstrates Headwater Has
           Standing ................................................................................................. 11

      D.     Any Differences Between This Case and the 422 Action Do Not
           Change the Fact That Headwater Has Standing and Samsung Has
           No Relevant Evidence to the Contrary .................................................. 15

VI.   CONCLUSION.................................................................................................... 15

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bio-Rad Labs., Inc. v. Int'l Trade Comm'n,*
   996 F.3d 1302 (Fed. Cir. 2021)...............................................................................9, 10

*Gellhaus v. Wal-Mart Stores, Inc.,*
   769 F. Supp. 2d 1071 (E.D. Tex. March 10, 2011) ...................................................3

*MHL Tek, LLC v. Nissan Motor Co.,*
   655 F.3d 1266 (Fed. Cir. 2011)...............................................................................3

*Mobile Equity Corp. v. Walmart Inc.,*
   No. 2:21-cv-0126-JRG-RSP, 2022 WL 4111857 (E.D. Tex. Sept. 8, 2022)............4

*Mobile Equity Corp. v. Walmart Inc.,*
   No. 2:21-cv-0126-JRG-RSP, 2022 WL 4112237 (E.D. Tex. Aug. 23, 2022)...........4

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
   601 F.3d 1319 (Fed. Cir. 2010)...............................................................................4

*Vita-Mix Corp. v. Basic Holding, Inc.,*
   581 F.3d 1317 (Fed. Cir. 2009)...............................................................................3

*Whitewater W. Indus., Ltd. v. Alleshouse,*
   981 F.3d 1045 (Fed. Cir. 2020)...............................................................................4

**Statutes**

35 U.S.C. § 281 .................................................................................................................3

**Rules**

Fed. R. Civ. P. 56(a) .........................................................................................................3

\* All emphasis in quoted material has been added unless otherwise noted.

PUBLIC VERSION

## TABLE OF EXHIBITS & ABBREVIATIONS

All exhibits referenced herein are attached to the concurrently filed Declaration of Kristopher Davis in Support of Headwater's Motions for Summary Judgment.

| Ex. | Document Description | Abbreviation |
|---|---|---|
| 1 | Report and Recommendation on Standing in *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP, Dkt. 399 (E.D. Tex. Aug. 2, 2024) | 422 Standing R&R |
| 2 | Transcript of Evidentiary Hearing in *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP (E.D. Tex. July 25, 2024) | 422 Evid. Hearing Tr. |
| 3 | Assignment record for '117 patent | '117 Assignments |
| 4 | Assignment record for '192 patent | '192 Assignments |
| 5 | Assignment record for '733 patent | '733 Assignments |
| 6 | Excerpts from Opening Report of Samsung's technical expert, Dr. Ian Foster, dated September 26, 2024 | Foster Op. Rpt. |
| 7 | Invention Disclosure, Confidentiality & Proprietary Rights Agreement, signed by Dr. Gregory Raleigh, dated December 18, 2006 | Qualcomm Agreement |
| 8 | Qualcomm employment record of Dr. Gregory Raleigh, dated February 21, 2024 | Raleigh Employment Record |
| 9 | Qualcomm's objections and responses to Samsung's subpoena in *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP, dated January 23, 2024 | 422 Qualcomm Subpoena Resp. |
| 10 | Qualcomm's objections and responses to Samsung's subpoena in this action, dated February 19, 2024 | 103 Qualcomm Subpoena Resp. |
| 11 | Transcript from deposition of Dr. Gregory Raleigh, dated September 10, 2024 | 9/10/24 Raleigh Tr. |
| 12 | Excerpts from the Initial Determination in ITC Inv. No. 337-TA-1100, dated July 12, 2019 | *Bio-Rad* Init. Det. |

**PUBLIC VERSION**

| Ex. | Document Description | Abbreviation |
|-----|---------------------|--------------|
| 13 | Letter from Qualcomm to Dr. Gregory Raleigh, dated April 4, 2022 | 2022 Qualcomm Ltr. |
| 14 | Samsung's Amended Second Supplemental Objections and Responses to Headwater Research LLC's First Set of Interrogatories (Nos. 1-17) | - |

**PUBLIC VERSION**

## I.    INTRODUCTION

This Court should grant partial summary judgment in favor of Plaintiff Headwater Research LLC ("Headwater") on the meritless standing defense raised by Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung").

Samsung has already burdened this Court and Headwater with extensive briefing and multiple hearings on the issue of standing. And while that occurred in another litigation between the parties, the nature of the relevant facts and the nature of this Court's prior decision that "Headwater **HAS** standing" make clear that Samsung's standing defense fares no better here.

As before, all available evidence demonstrates that the claimed inventions were conceived and reduced to practice after Dr. Raleigh left Qualcomm. That ends the inquiry. Samsung has no relevant contrary evidence and nothing beyond what it presented to the Court before. Samsung continues to offer nothing that even remotely suggests Dr. Raleigh conceived of any claimed invention while at Qualcomm, despite having ample opportunity to pursue discovery from Qualcomm or anyone else. Samsung's standing defense is baseless and should be disposed of on summary judgment, as in the parties' earlier litigation.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Headwater, as owner of the asserted patents, has standing to sue here.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

SUMF No. 1:  On August 2, 2024, this Court issued a Report and Recommendation in *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP ("the 422 Action"), Dkt. 399 ("422 Standing R&R"), in response to the parties' cross-motions on standing. The 422 Standing R&R "finds that Headwater **HAS** standing," "recommends that Headwater's motion be **GRANTED**," and "recommends that … Samsung's motion be **DENIED**." 422 Standing R&R at 1, 14 (emphasis in original).

SUMF No. 2:  This Court issued the 422 Standing R&R following a July 25, 2024 evidentiary hearing ("422 Evidentiary Hearing"), during which Dr. Raleigh provided several hours of testimony regarding standing, including about his work at Qualcomm, his departure from Qualcomm, and his post-Qualcomm activities that led to Headwater's earliest patent applications. *See generally* 422 Evid. Hearing Tr. In addition to Dr. Raleigh's direct testimony, the 422 Evidentiary Hearing included multiple hours of cross-examination by Samsung and the Court. *Id.*

SUMF No. 3:  Each asserted patent is assigned to Plaintiff Headwater Research LLC, giving Headwater legal title to each asserted patent. *See* '117 Assignments; '192 Assignments; '733 Assignments.

SUMF No. 4:  Other than Samsung, no person or entity has ever brought any legal action or claim against Headwater or named inventor Dr. Greg Raleigh challenging the assignments of the asserted patents. Most notably, Qualcomm has never brought any such action or claim.

SUMF No. 5:  All three asserted patents claim priority to several earlier patent applications, with the earliest being Provisional Application No. 61/206,354 ("'354 application"). The '354 application was filed on January 28, 2009, and is the first patent application filed by Headwater. Both parties' experts apply January 28, 2009 as the priority date for all asserted claims in this action. *E.g.*, Foster Opening Rpt. ¶ 92 (applying January 28, 2009 in prior art analysis).

SUMF No. 6:  The sole named inventor of each asserted patent, Dr. Raleigh, previously worked at Qualcomm and signed an Invention Disclosure, Confidentiality & Proprietary Rights Agreement ("Qualcomm Agreement"). *See* Qualcomm Agreement.

SUMF No. 7:  The Qualcomm Agreement is governed by California law (*see id.* ¶ 5.9) and includes an invention assignment provision, as well as language purporting to extend that obligation to post-employment activities (¶ 1.4):

PUBLIC VERSION

**1.4** I agree that an Invention disclosed by me to a third person or described in a patent application filed by me or in my behalf within one year following termination of my employment with the Company shall be presumed to be an Invention subject to the terms of this Agreement unless proved by me to have been conceived and first reduced to practice by me following the termination of my employment with the Company. …

SUMF No. 8: Dr. Raleigh left Qualcomm on September 19, 2008—more than four months before the January 28, 2009 priority date of the asserted patents. *See* Raleigh Employment Record.

SUMF No. 9: Qualcomm is not a party to this action, has not intervened, and has never initiated any legal proceedings relating to ownership of the asserted patents. Samsung subpoenaed Qualcomm for documents both in this action and in the 422 Action. *See* 422 Qualcomm Subpoena Resp.; 103 Qualcomm Subpoena Resp. In response, Qualcomm produced the Qualcomm Agreement signed by Dr. Raleigh, the single-page Raleigh Employment Record showing his dates of employment and job title, and a small number of emails between Qualcomm employees and Dr. Raleigh from approximately April-September 2009.

## IV.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To defeat summary judgment, the evidence as properly construed must be sufficient for a reasonable jury to find for the nonmoving party; a mere scintilla of evidence will not suffice." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1323 (Fed. Cir. 2009). "Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case on which [it] bears the burden of proof at trial." *Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1076 (E.D. Tex. March 10, 2011).

The owner of a patent has standing to sue for patent infringement. 35 U.S.C. § 281; *see also MHL Tek, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1273-74 (Fed. Cir. 2011) ("whether a

party has standing to sue is a question of law"). Where an employment agreement containing a patent assignment provision specifies which state's laws govern the agreement, a court interpreting the agreement will apply that governing state law, which in this case is California law. *See, e.g.*, *Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1047 (Fed. Cir. 2020).

## V.    ARGUMENT

Headwater has clear legal title to all three asserted patents, and there is zero evidence Dr. Raleigh conceived of anything—much less the claimed inventions—while working at Qualcomm. Samsung cannot baselessly speculate (again) that Headwater's patented inventions were conceived while Dr. Raleigh worked at Qualcomm and then force Headwater to prove a negative. All available evidence indicates the claimed inventions were conceived after Dr. Raleigh left Qualcomm, and that is more than enough to satisfy any burden Headwater has on standing.

### A.    Headwater Has Legal Title to the Asserted Patents

It is undisputed that Headwater has legal title to the asserted patents via assignments recorded with the Patent Office. SUMF No. 2. Dr. Raleigh is the sole named inventor on each patent, and he assigned his interest in each patent to Headwater Partners I, LLC, which became Plaintiff Headwater Research LLC following a merger—thus presumptively establishing Headwater's standing in this action. *See, e.g.*, 422 Standing R&R at 6 (citing *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-0126-JRG-RSP, 2022 WL 4112237, at *2 (E.D. Tex. Aug. 23, 2022), *Report and Recommendation adopted*, 2022 WL 4111857 (E.D. Tex. Sept. 8, 2022); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1328 (Fed. Cir. 2010)).

### B.    Dr. Raleigh Conceived of the Claimed Inventions Months After He Left Qualcomm

Because Dr. Raleigh did not conceive of any of the claimed inventions while working at Qualcomm, Samsung's standing defense necessarily fails even if the one-year rebuttable

PUBLIC VERSION

presumption of the Qualcomm Agreement applies. *See, e.g.*, Qualcomm Agreement ¶ 1.4 ("unless proved by me to have been conceived and first reduced to practice by me following the termination of my employment with the Company"); 422 Standing R&R at 11 ("The Court finds that the operative question is whether Dr. Raleigh conceived of the invention underlying the patents while at Qualcomm.").

The contents of the '354 application (filed January 28, 2009) demonstrate that Dr. Raleigh conceived the claimed inventions months after leaving Qualcomm. Samsung has no evidence to the contrary. As he explained at the 422 Evidentiary Hearing, Dr. Raleigh did not work at Qualcomm as an engineer but instead was tasked with "business strategy and various business roles relying more on [his] entrepreneurial background as opposed to [his] inventor/engineering background." 422 Evid. Hearing Tr. at 13:4-10. In fact, he "did not invent anything," much less the specific claimed inventions here, while he was at Qualcomm. *Id.*

After Dr. Raleigh left Qualcomm on September 19, 2008 (*see* Raleigh Employment Record), he attended a meeting with Best Buy representatives that ended on September 25, 2008, during which various vendors presented about network-side solutions they believed would support Best Buy's plan to introduce an MVNO. *See* 422 Standing R&R at 7-8; 422 Evid. Hearing Tr. at 20:4-23:16. While traveling back home from the Best Buy meeting, Dr. Raleigh had what he described as an "ah-ha" moment: while the vendors had all been pitching network-side solutions to MVNO issues, Dr. Raleigh thought that "if you could find a way to move technology onto the device and try to solve the problem there, it would open up a whole new world of opportunity for products, inventions, et cetera." 422 Evid. Hearing Tr. at 22:11-21. To be clear, this "ah-ha" moment was not itself the conception of any claimed invention; it was simply the "spark" that prompted Dr. Raleigh to explore certain device-side technologies, which then ***eventually*** led to

**PUBLIC VERSION**

conception of the claimed inventions months later. *See, e.g.*, 422 Evid. Hearing Tr. at 7:17-20 ("that spark" "was not in and of itself an invention" but instead "led to an entirely new field for me"); *see also id.* at 22:11-23:1, 182:18-183:3.

As Dr. Raleigh explained in deposition, the claimed inventions at issue here were conceived well after his initial notion of investigating device-side technologies. In fact, what prompted Dr. Raleigh to conceive of the claimed inventions here was his realization that moving toward device-side technology presented new problems that needed to be solved. This ultimately led to Dr. Raleigh conceiving the claimed inventions, which generally relate to messaging systems. For example, Dr. Raleigh testified:

> Q. Do the asserted patents in the present case relate to a shift from a network side solution to a device side solution? …
>
> A. **The patents in this case didn't even get thought about until after several iterations going from this inkling of maybe I can put things on a device** and then trying to develop things around that and eventually realizing wait a minute, all these agents are going to create chatter, I have to do something about that.
>
> So this stuff didn't even come up until very late in the game **just prior to the filing of the provisionals**. It **wasn't even relevant until I figured out there was a problem**. …
>
> Q. And when you say the provisional you mean the first provisional that Headwater filed in January of 2009? …
>
> A. Yes, **January of '09**. …
>
> Q. So claim 1 of the 117 patent has an element, quote, a network message server, end quote?
>
> A. Yes.
>
> Q. So that wouldn't be an example of a device side solution; right? …
>
> A. Again, this was something required after I tried to reduce this notion of a device side solution to practice. I had **no idea about this until I discovered that I had created a problem by moving -- trying to move things onto the device**. So this came later to resolve -- often when you do inventions you solve a problem and you create another problem and then you have to solve that problem in order for the first solution to become viable and that's exactly what happened here.

So I had **no idea about any kind of messaging system requirement until I tried to move agents onto the device that performed functions that used to be in the network**. And then when I did that I had all these agents that were communicating with their servers and I realized that was actually going to aggravate the problem, not solve the problem.

So then it was actually a requirement that I come up with something else in order for the notion of device-assisted services to become viable. I had absolutely no inkling or motivation whatsoever to work on message servers until that moment. So that happened **many months into the -- after the aha moment when I realize I had created this problem in trying to implement the inkling of device-assisted services**.

9/10/24 Raleigh Tr. at 115:4-118:10. Indeed, Dr. Raleigh testified that he "**didn't have any aha moment about messaging services for months after**" the Best Buy meeting and the initial "ah-ha" moment about pursuing device-side technology that he had while returning home from the Best Buy meeting:

Q. … You said you **did not have an aha moment for the messaging service until later**?

A. Yeah. I'll just very carefully explain. The aha moment was an inkling, not an invention, not an idea that someone could own but it was an idea that, hey, wait a minute, if I can do some of these traffic control things, inspection, control, things that people were trying to do to control traffic to solve some of the problems that I've testified to, if I can do that on a device that might be a lot better. That was like, hey, there's a direction to go.

That then precursed a series of attempts to reduce to practice things that might be inventions along that vein that would be useful for the world. After so many months of attempting to reduce those things to practice I had some rudimentary embodiments …. But those rudimentary embodiments were the first attempts at how would I control traffic on the device rather than the network.

At that point I looked at what I was creating and I had all these applications/agents that you could see in the spec that had to communicate with their servers. They had a counterpart server. So I started looking at it and I realized there's too many of them and they're going to have the same problem that was occurring with apps communicating with their servers?

So I was actually exaggerating the problem because the core operating system was going to have these agents that were keeping the connection open, wasting battery, wasting network resources, et cetera. So then I said I have to fix that.

> **So then I set my mind to the question of how would I go about fixing the problem that I just created**. And then over a **period of months** that eventually evolved into the embodiments in the specification, the deal with the network application messaging -- sorry. I should just call it the thing I called it before, the messaging server in the network, that would aggregate the traffic for these other application servers that I had to have and the device messaging agent that would aggregate the traffic and, you know, take care of the traffic for all the different agents on the device, the applications on the device.

> And **so that is how this invention came to be. It was a solution to a problem that I created in the first attempts to implement something along the lines of the inkling that is referred to [as] the aha in [the 422 Standing R&R]**.

9/10/24 Raleigh Tr. at 146:9-148:14; *see also id.* at 150:17-152:19 (again describing how his initial "inkling of a new direction" after the Best Buy meeting that focused on device-side technology and how the claimed inventions here were part of "a second wave" that was "necessary to make the first wave work" once Dr. Raleigh realized that the device-side focus raised new challenges that needed to be solved).

To the extent Samsung argues here—as it did in the 422 Action—that Headwater somehow must corroborate what was ***not*** in Dr. Raleigh's mind before he left Qualcomm, that is wrong as a matter of law and logic. As this Court rightly explained:

> The corroboration requirement simply does not mechanically work in the situation where the party without the burden is the one trying to prove an earlier conception date. Here, **Headwater has no need to corroborate its latest conception date, the one supported by prosecution history filing, as it relies on no testimony**. What Samsung wants Headwater to provide corroboration for is the **lack** of conception. Headwater would have to provide documentation that something novel was expressly not conceived of while Dr. Raleigh worked at Qualcomm. This is impractical, and the Court will not hold Headwater to such a standard.

422 Standing R&R at 12. Here, the asserted patents claim priority to the '354 application filed on January 28, 2009, and Samsung does not dispute that the asserted patents are entitled to that priority date. SUMF No. 5. As a result, there is "no need to corroborate" conception as of January 28, 2009 because that priority claim "relies on no testimony." 422 Standing R&R at 12. Put another way, if there were a need for documentary corroboration that Dr. Raleigh conceived of the claimed

PUBLIC VERSION

inventions as of January 28, 2009, then the '354 application itself is such corroborating evidence. Certainly, there is no evidence that the '354 application or any portion of it was generated more than four months earlier while Dr. Raleigh was at Qualcomm. And as discussed further below, Qualcomm's conduct only further corroborates Dr. Raleigh's testimony that the claimed inventions were not conceived until after he left Qualcomm.

The Federal Circuit has also emphasized that an accused infringer alleging that conception occurred earlier than the filing date of a patent application has burdens that Samsung cannot meet here. For example, in *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 996 F.3d 1302 (Fed. Cir. 2021) , the Federal Circuit affirmed the rejection of an ownership/standing defense, finding that accused infringer Bio-Rad failed to meet ***its burden*** to show it was "more likely than not that conception of the inventive idea in the asserted patents occurred before [the two co-inventors'] departure" from Bio-Rad and noting that what ***Bio-Rad*** needed to show conception of was "the specific arrangement of elements claimed in the asserted patents," rather than "generic" "ideas" worked on while at Bio-Rad:

> As an affirmative defense, Bio-Rad argued that it co-owns the three 10X patents asserted against it because Drs. Hindson and Saxonov conceived of the ideas embodied in the patents while they were still employed by Bio-Rad (or its predecessor QuantaLife), with which Drs. Hindson and Saxonov had signed assignment agreements. The ALJ rejected the defense. J.A. 282–92. The ALJ concluded that **<u>Bio-Rad</u> had not shown that the "inventive concept" of the asserted patents was conceived before the inventors left Bio-Rad**. J.A. 282–83. That was decisive, the ALJ concluded, because "[n]o provision of any of the applicable contracts governs future inventions" merely because the future inventions "are based on or developed from work done during employment." J.A. 285–86. Based on the record, the ALJ found that it was not "more likely than not that conception of the inventive idea in the asserted patents occurred before [the two co-inventors'] departure" from Bio-Rad. J.A. 292.
>
> On review, the Commission agreed with the ALJ that Bio-Rad does not co-own the asserted patents. J.A. 104–08. The Commission stated that Bio-Rad's identified "ideas" that Drs. Hindson and Saxonov worked on while at QuantaLife and Bio-Rad were too "generic"; they did not include the specifics required by the 10X patent claims at issue. J.A. 104–05. The Commission added that Bio-Rad's own

evidence showed that the inventors, while at Bio-Rad and QuantaLife, worked chiefly on droplet-in-droplet architecture, which is different from the gel-bead architecture to which Drs. Hindson and Saxonov later shifted their focus to make the inventions now at issue. J.A. 105. … . Finally, the Commission clarified the ALJ's use of the term "'inventive concept'" to mean "'**the specific arrangement of elements claimed in the asserted patents**.'" J.A. 107–08 (quoting J.A. 283). The Commission reasoned that the inventive concept here was the combining of several elements resulting in gel beads that deliver barcodes into the droplets with nucleic acid samples, in which the barcodes are releasably attached to the gel beads. J.A. 108. For those reasons, the Commission concluded, Bio-Rad had not shown it was entitled to an ownership interest in any of the asserted patents. …

Bio-Rad has not cited any decision that held a significant contribution to post-employment inventions to come within an assignment provision that was limited to intellectual property developed during the term of employment.

*Bio-Rad*, 996 F.3d at 1309-10, 1317 (footnote removed). Like the Qualcomm Agreement at issue here, the agreement in *Bio-Rad* included "ideas" in the definition of "IP" that was assigned under the agreement, and was further limited to IP that was "conceive[d]" during the term of employment. *See, e.g.*, *Bio-Rad*, 996 F.3d at 1317; Qualcomm Agreement ¶ 1.4 (noting even in the one-year presumption provision of the Qualcomm Agreement that the presumption is overcome if the invention is conceived and reduced to practice after departure from Qualcomm). Like here, the agreement at issue in *Bio-Rad* was also governed by California law, with the Federal Circuit noting that "California law recognizes significant policy constraints on employer agreements that restrain former employees in the practice of their profession, including agreements that require assignment of rights in post-employment inventions." *Bio-Rad*, 996 F.3d at 1319. And notably, the ALJ rejected Bio-Rad's argument that the "temporal proximity" of four months between the inventors' departure and the filing of their first patent application showed the inventions were conceived while employed at the company, further demonstrating that the Court should reject any such argument here. *Bio-Rad* Init. Det. at 145-46.

### C.   Qualcomm's Conduct Further Demonstrates Headwater Has Standing

As further evidence corroborating Dr. Raleigh's testimony that the claimed inventions were conceived after he left Qualcomm, the conduct of Qualcomm over the years plainly shows that even Qualcomm does not believe it owns any Headwater patents. Samsung's standing defense is premised upon Qualcomm owning Headwater's patents, but Qualcomm has acted as a buyer—not an owner—and has produced zero evidence contradicting Dr. Raleigh's invention timeline.

While someone within Qualcomm made a vague insinuation in 2009 about Dr. Raleigh previously being employed there, nothing ever came of that insinuation. Qualcomm has never brought any claim that it owns any Headwater patent. Dr. Raleigh explained to Qualcomm at that time the technical details of his inventions and his invention timeline—including how even his first "ah-ha moment" about focusing on device-side technology (which again was itself not the conception of any invention) occurred after he left Qualcomm and after his Best Buy meeting. *E.g.*, 422 Evid. Hearing Tr. at 8:8-21, 30:13-31:1, 33:22-34:13. And as explained in the deposition excerpts above, new problems created by that move toward device-side technology are what later prompted Dr. Raleigh to conceive the claimed inventions as potential solutions to such problems. *E.g.*, 9/10/24 Raleigh Tr. at 115:4-118:10, 146:9-148:14, 150:17-152:19. In addition, Dr. Raleigh and his team repeatedly asked Qualcomm for details about the insinuation someone made and whatever evidence supposedly supported it. *E.g.*, 422 Evid. Hearing Tr. at 41:23-42:21. Headwater even tried to arrange a face-to-face meeting for Qualcomm to lay out any assertions or supposed evidence it had, once and for all. *E.g.*, *id*. But Qualcomm never agreed to the meeting and never produced any alleged evidence. *E.g.*, *id*.

In fact, not only did Qualcomm produce no evidence of conception at Qualcomm back in 2009 when the insinuation was made, it also produced no such evidence in response to the broad subpoenas Samsung served in this case and the 422 Action. SUMF No. 9. This is despite

**PUBLIC VERSION**

Qualcomm even attending the 422 Evidentiary Hearing and despite Qualcomm allegedly having a common interest privilege with Samsung surrounding the issue of Headwater's patents (which Samsung has used to shield from discovery its communications with Qualcomm about the Headwater cases). 422 Evid. Hearing Tr. at 3:20-21; 422 Action, Dkt. 398 at 2-3. In short, Samsung has tried, multiple times and in multiple ways over a year's time, to get evidence from Qualcomm to support its standing defense—but there was no evidence to be had.[1]

Moreover, Qualcomm has repeatedly offered millions of dollars to buy Headwater's patents. Nobody offers to pay millions of dollars for something they already own, much less a sophisticated and powerful company like Qualcomm. As one example, Qualcomm sent a letter to Headwater in 2022 offering millions of dollars to buy, in Qualcomm's own words, "**Headwater's** Patents," including the asserted patents. Qualcomm's offer letter does not refer to them as Qualcomm's patents or patents over which ownership is disputed. Instead, the letter calls them "Headwater's Patents" because that is what they are:

---

[1] Notably, Samsung argued to this Court in the 422 Action that it was supposedly prevented from obtaining relevant discovery from Qualcomm because of when Headwater produced certain emails between Dr. Raleigh and Qualcomm. *See* 422 Action, Dkt. 378. But despite having several months to do so, Samsung never subpoenaed any of those individuals, and the only additional discovery Qualcomm provided here that was not produced in the 422 Action were a small number of emails from 2009 about the proposed release that was already discussed extensively with the Court. *See, e.g.*, 422 Evid. Hearing Tr. at 43:24-46:18. Of course, none of the parties' discussions about a potential release provides any evidence that Dr. Raleigh conceived of any claimed invention while working at Qualcomm.

**PUBLIC VERSION**



2022 Qualcomm Offer (highlighting added). As another example, Dr. Raleigh explained that, in 2017, Qualcomm expressed interest in buying Headwater's patent portfolio and made a verbal offer of $25 million, with some indication that Qualcomm might be willing to offer as much as $75 million. *E.g.*, 422 Evid. Hearing Tr. at 46:23-47:6, 48:9-50:3. It would make no sense for Qualcomm to repeatedly offer millions of dollars to buy what it explicitly referred to as "Headwater's Patents" that are "owned by Headwater" if Qualcomm believed it was the rightful owner of those patents.

**PUBLIC VERSION**

Nor would it have made any sense for Dr. Raleigh to negotiate with Qualcomm about potential offers if Qualcomm might again raise the insinuation someone within Qualcomm made back in 2009. Dr. Raleigh explained how Qualcomm assuaged any concerns about that when the parties began discussing a potential deal in 2017, including by confirming that Qualcomm "had consciously allowed the statute of limitations to expire, and that because the statute of limitations had expired, they had full knowledge that they could not make a claim" of any ownership over Headwater's patents. 422 Evid. Hearing Tr. at 9:4-14. Dr. Raleigh further explained that this "gave us comfort to engage two more times with Qualcomm while Qualcomm considered purchasing the patents and/or the company." *Id.*; *see also id.* at 48:16-49:16 (further explaining how Qualcomm assured him that it had "consciously allowed the statute of limitations to expire" and understood it "had no recourse whatsoever to file any sort of claim against Headwater's patents"). Dr. Raleigh obviously would not have re-engaged in negotiations with Qualcomm in 2017 or 2022 if there were a chance someone might raise again the baseless insinuation made back in 2009.

While Samsung asserts that Qualcomm owns the Headwater patents, Qualcomm itself (i) never pursued any claim of patent ownership or intervened in this action, (ii) assured Dr. Raleigh in business negotiations that it knowingly let the statute of limitations expire on any possible claim of ownership, (iii) repeatedly offered Headwater millions of dollars to buy—in Qualcomm's written words—patents "that are owned by" Headwater, and (iv) produced no substantive documents in response to multiple broad subpoenas from Samsung seeking anything that could show conception of a Headwater invention while Dr. Raleigh was at Qualcomm. That is not the conduct of someone who owns Headwater's patents. Instead, Qualcomm's conduct only further corroborates Dr. Raleigh's testimony and supports the conclusion that Headwater has standing.

D.     **Any Differences Between This Case and the 422 Action Do Not Change the Fact That Headwater Has Standing and Samsung Has No Relevant Evidence to the Contrary**

Samsung asserts that this Court's prior decision on standing in the 422 Action is irrelevant here because there are differences between the two cases. Of course, there are different patents and claims at issue here, as well as a different priority date and no co-inventors. But none of the differences between the two cases matter to the standing question. The fact remains that Dr. Raleigh left Qualcomm on September 19, 2008 and began thinking about pursuing device-side technology after leaving the Best Buy meeting on September 25, 2008. As explained above, Dr. Raleigh's early work on that device-side approach revealed new problems, and he conceived of the claimed inventions to address such problems—again, after leaving Qualcomm and after the Best Buy meeting. As in the 422 Action, there is no evidence contradicting Dr. Raleigh's invention timeline or indicating that Qualcomm is the rightful owner of Headwater's patents. Indeed, as in the 422 Action, Qualcomm's conduct demonstrates that even it does not believe it owns Headwater's patents. There is no reason for this Court to credit Samsung's standing defense here, given these circumstances.

## VI.     CONCLUSION

This Court has already considered extensive evidence and submissions on the issue of standing issue. In the 422 Action, this included a dozen briefs, several hours of oral argument, and a full evidentiary hearing with multiple hours of cross-examination of Dr. Raleigh, including by the Court. The Court considered the record evidence, made credibility determinations, and found that summary judgment should be granted in Headwater's favor on Samsung's standing defense. Headwater respectfully requests that the Court likewise grant summary judgment here, terminating Samsung's Ninth Affirmative Defense (Standing) from this case.

**PUBLIC VERSION**

Dated: October 25, 2024

Respectfully submitted,

/s/ Reza Mirzaie

Marc Fenster
CA State Bar No. 181067
mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
bwang@raklaw.com
Adam Hoffman
CA State Bar No. 218740
Email: ahoffman@raklaw.com
Dale Chang
CA State Bar No. 248657
dchang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
pwang@raklaw.com
Amy Hayden
CA State Bar No. 287026
ahayden@raklaw.com
James Milkey
CA State Bar No. 281283
Email: jmilkey@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139

**PUBLIC VERSION**

jwietholter@raklaw.com
James Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
Qi (Peter) Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Fl.
Los Angeles, CA 90025
Telephone: 310-826-7474

Andrea L. Fair
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com

*Attorneys for Plaintiff,*
*Headwater Research LLC*

**PUBLIC VERSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas under seal, and served counsel of record with a copy via electronic email.

/s/ *Reza Mirzaie*
Reza Mirzaie

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ *Reza Mirzaie*
Reza Mirzaie
