███████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | Case No. 2:23-cv-00103-JRG-RSP |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants*. | |

**PLAINTIFF HEADWATER RESEARCH LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING (Dkt. 177)**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    Relevant Facts............................................................................................ 2

    B.    Exemplary Factual Mischaracterizations by Samsung ............................. 3

III.   ARGUMENT ...................................................................................................... 4

    A.    Headwater Has Legal Title to the Asserted Patents.................................... 4

    B.    Headwater Has Met Any Burden It Is Required to Meet ........................... 5

        1.    Dr. Raleigh's Invention Timeline Is Corroborated and Credible..................... 6

        2.    Qualcomm's Conduct Only Further Corroborates Dr. Raleigh ...................... 10

        3.    Samsung Continues to Impose Burdens on Headwater that Defy Logic, Disregard This Court's Prior Findings, and Are Unsupported by Case Law .. 14

    C.    Samsung's Baseless Attorney Argument that Dr. Raleigh's Conception Date Is "Simply Not Credible" Cannot Support Any Finding for Samsung......................... 16

IV.    CONCLUSION ................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apator Miitors ApS v. Kamstrup A/S*,
   887 F.3d 1293 (Fed. Cir. 2018) .................................................. 15

*Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*,
   996 F.3d 1302 (Fed. Cir. 2021) ............................................. 15, 16

*FilmTec Corp. v Hydranautics*,
   982 F.2d 1546 (Fed. Cir. 1992) ................................................ 15

*Headwater Research LLC v. Samsung Electronics Co. Ltd.*,
   No. 2:22-cv-00422-JRG-RSP ....................... 1, 2, 4, 5, 10, 11, 14, 17, 18

*In re Costello*,
   717 F.2d 1346, 1350 (Fed. Cir. 1983) ......................................... 6

*iRobot Corp. v. SharkNinja Operating LLC*,
   2024 WL 3687981 (Fed. Cir. Aug. 7, 2024).................................... 14

*Mobile Equity Corp. v. Walmart Inc.*,
   No. 2:21-cv-0126-JRG-RSP, 2022 WL 4111857 (E.D. Tex. Sept. 8, 2022)........... 5

*Mobile Equity Corp. v. Walmart Inc.*,
   No. 2:21-cv-0126-JRG-RSP, 2022 WL 4112237 (E.D. Tex. Aug. 23, 2022).......... 5

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ................................................ 5

\* All emphasis in quoted material has been added unless otherwise noted.

## TABLE OF EXHIBITS & ABBREVIATIONS

Exhibits 1-14 listed below were previously filed on October 25, 2024 in conjunction with Headwater's Motion for Partial Summary Judgment as to Samsung's Standing Defense (Dkt. 174). Exhibit 15 is attached to the concurrently filed Declaration of Kristopher Davis.

| Ex. | Document Description | Abbreviation | Dkt. No. |
|---|---|---|---|
| 1 | Report and Recommendation on Standing in *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP, Dkt. 399 (E.D. Tex. Aug. 2, 2024) | 422 Standing R&R | 175-1 |
| 2 | Transcript of Evidentiary Hearing in *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP (E.D. Tex. July 25, 2024) | 422 Evid. Hearing Tr. | 175-2 |
| 3 | Assignment record for '117 patent | '117 Assignments | 175-3 |
| 4 | Assignment record for '192 patent | '192 Assignments | 175-4 |
| 5 | Assignment record for '733 patent | '733 Assignments | 175-5 |
| 6 | Excerpts from Opening Report of Samsung's technical expert, Dr. Ian Foster, dated September 26, 2024 | Foster Op. Rpt. | 174-1 |
| 7 | Invention Disclosure, Confidentiality & Proprietary Rights Agreement, signed by Dr. Gregory Raleigh, dated December 18, 2006 | Qualcomm Agreement | 174-2 |
| 8 | Qualcomm employment record of Dr. Gregory Raleigh, dated February 21, 2024 | Raleigh Employment Record | 174-3 |
| 9 | Qualcomm's objections and responses to Samsung's subpoena in *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP, dated January 23, 2024 | 422 Qualcomm Subpoena Resp. | 175-6 |
| 10 | Qualcomm's objections and responses to Samsung's subpoena in this action, dated February 19, 2024 | 103 Qualcomm Subpoena Resp. | 175-7 |
| 11 | Transcript from deposition of Dr. Gregory Raleigh, dated September 10, 2024 | 9/10/24 Raleigh Tr. | 174-4 |

| Ex. | Document Description | Abbreviation | Dkt. No. |
|---|---|---|---|
| 12 | Excerpts from the Initial Determination in ITC Inv. No. 337-TA-1100, dated July 12, 2019 | *Bio-Rab* Init. Det. | 175-8 |
| 13 | Letter from Qualcomm to Dr. Gregory Raleigh, dated April 4, 2022 | 2022 Qualcomm Offer | 174-5 |
| 14 | Samsung's Amended Second Supplemental Objections and Responses to Headwater Research LLC's First Set of Interrogatories (Nos. 1-17) | - | 174-6 |
| 15 | Best Buy Presentation titled "Rewiring the Mobile Internet," dated October 23, 2008 | 10/23/08 Best Buy Presentation | - |

## I.    INTRODUCTION

As in the 422 Action, all available evidence demonstrates that the claimed inventions were conceived and reduced to practice after Dr. Raleigh left Qualcomm. That ends the standing inquiry. Samsung has no relevant contrary evidence and nothing beyond what it presented to the Court before. Indeed, Samsung continues to offer nothing that even remotely suggests Dr. Raleigh conceived of any claimed invention while at Qualcomm, despite having ample opportunity to pursue discovery from Qualcomm or anyone else. Samsung's standing defense is baseless and, as detailed in Headwater's motion for partial summary judgment (Dkt. 174), should be disposed of on summary judgment, as in the 422 Action.

Samsung's motion boils down to two main arguments. Both are meritless. *First*, Samsung argues that Headwater lacks corroboration for Dr. Raleigh's conception date. This is factually wrong and based on a misapplication of law and logic. As the Court found in the 422 Action, Dr. Raleigh's testimony is "corroborated and credible." 422 Standing R&R at 12. *Second*, Samsung argues that Dr. Raleigh's conception date is "simply not credible" because network congestion problems that eventually were addressed by the claimed inventions began while Dr. Raleigh was still at Qualcomm. Of course, knowing about a problem is quite different from having a solution to help address that problem; Samsung's argument is nothing more than pure speculation.

Ultimately, this Court is again faced with a total imbalance of evidence that cannot support Samsung's standing defense. On Headwater's side, there is Dr. Raleigh's testimony, his employment record at Qualcomm, the patent application describing his invention, documentary evidence consistent with his invention timeline, and years of conduct by Qualcomm recognizing that Headwater owns the asserted patents. On Samsung's side, there is attorney argument and mischaracterizations of fact and law—nothing more. As before, Samsung's motion to dismiss should be denied, and Headwater's motion for summary judgment (Dkt. 174) should be granted.

## II.    FACTUAL BACKGROUND

### A.    Relevant Facts

In *Headwater Research LLC v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00422-JRG-RSP ("the 422 Action"), this Court rejected Samsung's argument that Dr. Raleigh conceived of inventions described in Headwater patents while he was working at Qualcomm. *See* 422 Action, Dkt. 399 at 1, 14 ("422 Standing R&R") (the Court "finds that Headwater **HAS** standing," "recommends that Headwater's motion be **GRANTED**," and "recommends that … Samsung's motion be **DENIED**" (emphasis in original)). At the July 25, 2024 evidentiary hearing leading to this decision, Dr. Raleigh provided several hours of testimony regarding standing, including about his work at Qualcomm, his departure from Qualcomm, and his post-Qualcomm activities that led to Headwater's earliest patent applications. *See generally* 422 Evid. Hearing Tr. In addition to Dr. Raleigh's direct testimony, the 422 Evidentiary Hearing included multiple hours of cross-examination by Samsung and the Court. *Id.* The Court found "the broad strokes of Dr. Raleigh's story [to be] corroborated and credible." 422 Standing R&R at 12.

Each asserted patent is assigned to Plaintiff Headwater Research LLC, giving Headwater legal title to each asserted patent. *See* '117 Assignments; '192 Assignments; '733 Assignments. Other than Samsung, no person or entity has ever brought any legal action or claim against Headwater or named inventor Dr. Raleigh challenging the assignments of the asserted patents.

Most notably, Qualcomm—who Samsung argues is the rightful owner of Headwater's patents—is not a party to this action, has not intervened, and has never initiated any legal proceedings relating to ownership of the asserted patents. Samsung subpoenaed Qualcomm for documents both in this action and in the 422 Action. *See* 422 Qualcomm Subpoena Resp.; 103 Qualcomm Subpoena Resp. In response, Qualcomm produced the Qualcomm Agreement signed by Dr. Raleigh, the single-page Raleigh Employment Record showing his dates of employment

and job title, and a small number of emails between Qualcomm employees and Dr. Raleigh from approximately April-September 2009. That employment record shows that, consistent with his testimony, Dr. Raleigh worked on the business side at Qualcomm, not as an engineer inventing new technologies. *See* Raleigh Employment Record. It also shows Dr. Raleigh left Qualcomm on September 19, 2008—more than four months before the undisputed January 28, 2009 priority date of the asserted patents. *Id*.

This priority date stems from each asserted patent's priority claim to Provisional Application No. 61/206,354 ("'354 application"). The '354 application was filed on January 28, 2009, and is the first patent application filed by Headwater. Both parties' experts apply January 28, 2009 as the priority date for all asserted claims in this action. *E.g.*, Foster Opening Rpt. ¶ 92 (applying January 28, 2009 in prior art analysis).

## B.    Exemplary Factual Mischaracterizations by Samsung

Samsung's "Factual Background" not only omits certain relevant facts discussed above but also includes certain mischaracterizations. For example, Samsung's focus on the term "aggregated messaging" (e.g., Dkt. 177 at 3) is misplaced, in that Dr. Raleigh clearly stated that he was not describing any claimed invention here as "aggregated messaging" but was instead describing a higher-level concept as relevant context. *See, e.g.*, 9/10/24 Raleigh Tr. at 64:14-67:25 ("If you want me to talk about a specific invention defined by a claim I need to use the words in the claim. I can talk to you about concepts like aggregated messaging but that would be separate from any specific invention. … Those words do not appear in claim 1. But I can talk to you separate from the claim, separate from the patent, I can explain what I meant by that concept but I can't read word [into] claims. … I'm not saying it's what these inventions are. I think that there are similar descriptions in my specifications but not exactly the same. These are just off the top of my head as a concept.").

3

As another select example, Samsung mischaracterizes the release referenced in emails produced by Headwater, arguing that Headwater offered equity in ItsOn in exchange for a release of Qualcomm's patent ownership claim. Dkt. 177 at 5. Samsung ignores that the equity interest was being negotiated before any "insinuation" about ownership was even made. *See* 422 Evid. Hearing Tr. at 179:22-180:1 (this Court noting the transaction's consideration "wasn't an exchange of ownership for the release"). The release only came up when Qualcomm asked for an additional 5%, and Dr. Raleigh flatly refused any additional equity and demanded a release or Headwater would walk away—which Headwater did. *Id.* at 43:7-45:25.

As another select example, Samsung continues to misinterpret Dr. Raleigh's 2021 panel remarks in whatever way suits its purposes for a given case, just as it did in the 422 Action. This time, Samsung seizes upon the phrase "disaster on the network" and mischaracterizes Dr. Raleigh as "untruthful." Dkt. 177 at 7-8. As detailed further below, this Court fully considered Dr. Raleigh's panel remarks and the context in which they should be understood, ultimately finding Dr. Raleigh's explanation for them "credible." 422 Standing R&R at 13-14.

## III.    ARGUMENT

All available evidence supports the conclusion that Dr. Raleigh conceived of the claimed inventions ***after*** he left Qualcomm, and no relevant evidence suggests otherwise. Because this answers the operative question on standing in Headwater's favor, Samsung's motion must be denied. *See* 422 Standing R&R at 11 ("The Court finds that the operative question is whether Dr. Raleigh conceived of the invention underlying the patents while at Qualcomm."). As the Court previously found, Dr. Raleigh's testimony is corroborated and credible.

### A.    Headwater Has Legal Title to the Asserted Patents

It is undisputed that Headwater has legal title to the asserted patents via assignments recorded with the Patent Office. *See* '117 Assignments; '192 Assignments; '733 Assignments. Dr.

4

Raleigh is the sole named inventor on each patent, and he assigned his interest in each to Headwater Partners I, LLC, which became Plaintiff Headwater Research LLC following a merger—thus presumptively establishing Headwater's standing in this action. *See, e.g.*, 422 Standing R&R at 6 (citing *Mobile Equity Corp. v. Walmart Inc*., No. 2:21-cv-0126-JRG-RSP, 2022 WL 4112237, at *2 (E.D. Tex. Aug. 23, 2022), *Report and Recommendation adopted*, 2022 WL 4111857 (E.D. Tex. Sept. 8, 2022); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1328 (Fed. Cir. 2010)).

### B.    Headwater Has Met Any Burden It Is Required to Meet

To the extent the one-year presumption of the Qualcomm Agreement places any burden on Headwater, that presumption is overcome here. Samsung's characterization of what Headwater must show is contrary to logic, case law, and this Court's findings in the 422 Action. And while Samsung tries to dismiss the Court's prior finding that Dr. Raleigh's testimony was "corroborated and credible" (422 Standing R&R at 12), that finding is highly relevant here because the bulk of the invention timeline in this case is exactly what Dr. Raleigh described in the 422 Action .

Headwater cannot be expected to corroborate what was ***not*** in Dr. Raleigh's mind before he left Qualcomm. That would be wrong as a matter of law and logic, as this Court explained:

> The corroboration requirement simply does not mechanically work in the situation where the party without the burden is the one trying to prove an earlier conception date. Here, **Headwater has no need to corroborate its latest conception date, the one supported by prosecution history filing, as it relies on no testimony**. What Samsung wants Headwater to provide corroboration for is the <u>**lack**</u> of conception. Headwater would have to provide documentation that something novel was expressly not conceived of while Dr. Raleigh worked at Qualcomm. This is impractical, and the Court will not hold Headwater to such a standard.

422 Standing R&R at 12; *see also* 422 Evid. Hearing Tr. at 173:2-5 (the Court stating to Samsung's counsel: "[W]ouldn't corroborating evidence be something you need to get an earlier date? I mean, surely there is no requirement that you can't have conceived an idea if you don't have corroborating evidence.").

5

The asserted patents here claim priority to the '354 application filed on January 28, 2009. Samsung does not dispute that they are entitled to this priority date. *E.g.*, Foster Opening Rpt. ¶ 92 (applying January 28, 2009 in prior art analysis). Thus, there is "no need to corroborate" conception as of January 28, 2009 because that priority claim "relies on no testimony." 422 Standing R&R at 12. Put another way, if there were a need for documentary corroboration that Dr. Raleigh conceived of the claimed inventions as of January 28, 2009, then the '354 application itself is evidence of conception, as the Federal Circuit has long recognized. *E.g.*, *In re Costello*, 717 F.2d 1346, 1350 (Fed. Cir. 1983) ("The filing of the original application is, however, evidence of conception to the invention."). Certainly, there is no evidence that the '354 application or any portion of it was generated more than four months earlier while Dr. Raleigh was at Qualcomm. And as discussed further below, Qualcomm's conduct and other evidence only further corroborate Dr. Raleigh's testimony that the claimed inventions were conceived after he left Qualcomm.

### 1.    Dr. Raleigh's Invention Timeline Is Corroborated and Credible

Besides the '354 application itself, other record evidence further corroborates Dr. Raleigh's testimony. For example, Dr. Raleigh testified that he did not work at Qualcomm as an engineer but instead was tasked with "business strategy and various business roles relying more on [his] entrepreneurial background as opposed to [his] inventor/engineering background." 422 Evid. Hearing Tr. at 13:4-10. In fact, he "did not invent anything" while he was at Qualcomm, much less the specific claimed inventions here. *Id.* This testimony is not contradicted by any evidence and is corroborated by the record of Dr. Raleigh's employment produced by Qualcomm, which indicates his title was "VP, Product Management." *See* Raleigh Employment Record.

After Dr. Raleigh left Qualcomm on September 19, 2008 (*see id.*), he attended a meeting with Best Buy representatives that ended on September 25, 2008, during which various vendors presented about network-side solutions they believed would support Best Buy's plan to introduce

an MVNO. *See* 422 Standing R&R at 7-8; 422 Evid. Hearing Tr. at 20:4-23:16. While traveling back home from the meeting, Dr. Raleigh had what he described as an "ah-ha" moment:  while the vendors had all been pitching network-side solutions to MVNO issues, Dr. Raleigh thought that "if you could find a way to move technology onto the device and try to solve the problem there, it would open up a whole new world of opportunity for products, inventions, et cetera." 422 Evid. Hearing Tr. at 22:11-21. To be clear, this "ah-ha" moment was not itself the conception of any claimed invention; it was simply the "spark" that prompted Dr. Raleigh to explore certain device-side technologies, which then ***eventually*** led to conception of the claimed inventions months later. *See, e.g.*, 422 Evid. Hearing Tr. at 7:17-20 ("that spark" "was not in and of itself an invention" but instead "led to an entirely new field for me"); *see also id.* at 22:11-23:1, 182:18-183:3.

After considering Dr. Raleigh's testimony and other evidence (*see, e.g.*, 10/23/08 Best Buy Presentation), the Court found "the broad strokes of Dr. Raleigh's story [to be] ***corroborated and credible***." 422 Standing R&R at 12. Samsung dismisses those findings and the evidence supporting them as "inapplicable to this case" merely because Dr. Raleigh did not conceive the claimed inventions here until after his initial "ah-ha" about exploring device-side technologies. Dkt. 177 at 7, 11. But that same testimony from Dr. Raleigh is relevant here and is no less corroborated and credible now. The only difference is that another step in the invention timeline led to the claimed inventions here, so Samsung is wrong to suggest that the earlier part of Dr. Raleigh's invention timeline (indeed, the part closer in time to his leaving Qualcomm) has no relevance to this case.

As Dr. Raleigh explained in deposition, the claimed inventions at issue here were conceived well after his initial notion of investigating device-side technologies. In fact, what prompted Dr. Raleigh to conceive of the claimed inventions here was his realization that moving toward device-side technology presented new problems that needed to be solved. This ultimately

led to Dr. Raleigh conceiving the claimed inventions, which generally relate to messaging systems.

For example, Dr. Raleigh testified:

> Q. Do the asserted patents in the present case relate to a shift from a network side solution to a device side solution? …
>
> A. **The patents in this case didn't even get thought about until after several iterations going from this inkling of maybe I can put things on a device** and then trying to develop things around that and eventually realizing wait a minute, all these agents are going to create chatter, I have to do something about that.
>
> So this stuff didn't even come up until very late in the game **just prior to the filing of the provisionals**. It **wasn't even relevant until I figured out there was a problem**. …
>
> Q. And when you say the provisional you mean the first provisional that Headwater filed in January of 2009? …
>
> A. Yes, **January of '09**. …
>
> Q. So claim 1 of the 117 patent has an element, quote, a network message server, end quote?
>
> A. Yes.
>
> Q. So that wouldn't be an example of a device side solution; right? …
>
> A. Again, this was something required after I tried to reduce this notion of a device side solution to practice. I had **no idea about this until I discovered that I had created a problem by moving -- trying to move things onto the device**. So this came later to resolve -- often when you do inventions you solve a problem and you create another problem and then you have to solve that problem in order for the first solution to become viable and that's exactly what happened here.
>
> So I had **no idea about any kind of messaging system requirement until I tried to move agents onto the device that performed functions that used to be in the network**. And then when I did that I had all these agents that were communicating with their servers and I realized that was actually going to aggravate the problem, not solve the problem.
>
> So then it was actually a requirement that I come up with something else in order for the notion of device-assisted services to become viable. I had absolutely no inkling or motivation whatsoever to work on message servers until that moment. So that happened **many months into the -- after the aha moment when I realize I had created this problem in trying to implement the inkling of device-assisted services**.

9/10/24 Raleigh Tr. at 115:4-118:10. Indeed, Dr. Raleigh testified that he "**didn't have any aha moment about messaging services for months after**" the Best Buy meeting and the initial "ah-ha" moment about pursuing device-side technology that he had while returning home from the Best Buy meeting:

> Q. … You said you **did not have an aha moment for the messaging service until later**?
>
> A. Yeah. I'll just very carefully explain. The aha moment was an inkling, not an invention, not an idea that someone could own but it was an idea that, hey, wait a minute, if I can do some of these traffic control things, inspection, control, things that people were trying to do to control traffic to solve some of the problems that I've testified to, if I can do that on a device that might be a lot better. That was like, hey, there's a direction to go.
>
> That then precursed a series of attempts to reduce to practice things that might be inventions along that vein that would be useful for the world. After so many months of attempting to reduce those things to practice I had some rudimentary embodiments …. But those rudimentary embodiments were the first attempts at how would I control traffic on the device rather than the network.
>
> At that point I looked at what I was creating and I had all these applications/agents that you could see in the spec that had to communicate with their servers. They had a counterpart server. So I started looking at it and I realized there's too many of them and they're going to have the same problem that was occurring with apps communicating with their servers?
>
> So I was actually exaggerating the problem because the core operating system was going to have these agents that were keeping the connection open, wasting battery, wasting network resources, et cetera. So then I said I have to fix that.
>
> **So then I set my mind to the question of how would I go about fixing the problem that I just created**. And then over a **period of months** that eventually evolved into the embodiments in the specification, the deal with the network application messaging -- sorry. I should just call it the thing I called it before, the messaging server in the network, that would aggregate the traffic for these other application servers that I had to have and the device messaging agent that would aggregate the traffic and, you know, take care of the traffic for all the different agents on the device, the applications on the device.
>
> And **so that is how this invention came to be. It was a solution to a problem that I created in the first attempts to implement something along the lines of the inkling that is referred to [as] the aha in [the 422 Standing R&R]**.

9

9/10/24 Raleigh Tr. at 146:9-148:14; *see also id.* at 150:17-152:19 (again describing how his initial "inkling of a new direction" focused on device-side technology and how the claimed inventions here were part of "a second wave" that was "necessary to make the first wave work" once Dr. Raleigh realized that the device-side focus raised new challenges that needed to be solved).

Dr. Raleigh's deposition testimony above is entirely consistent with the earlier portion of his invention timeline (e.g., Best Buy meeting after he left Qualcomm, "ah-ha" about exploring device-side technologies after the Best Buy meeting), which this Court already found "corroborated and credible." 422 Standing R&R at 12. It is this same early part of the invention timeline that prompted Dr. Raleigh to conceive of the claimed inventions here, in an effort to address new problems created by moving toward device-side technologies. The Court should likewise find Dr. Raleigh's invention timeline here corroborated and credible, including for the same reasons as in the 422 Action.

### 2.    Qualcomm's Conduct Only Further Corroborates Dr. Raleigh

As further evidence corroborating Dr. Raleigh's testimony that the claimed inventions were conceived after he left Qualcomm, the conduct of Qualcomm over the years plainly shows that even Qualcomm does not believe it owns any Headwater patents. Samsung's standing defense is premised upon Qualcomm owning Headwater's patents, but Qualcomm has acted as a buyer—not an owner—and has produced zero evidence contradicting Dr. Raleigh's invention timeline.

While someone within Qualcomm made a vague insinuation in 2009 about Dr. Raleigh previously being employed there, nothing ever came of that insinuation. Qualcomm has never brought any claim that it owns any Headwater patent. Dr. Raleigh explained to Qualcomm at that time the technical details of his inventions and his invention timeline—including how even his first "ah-ha moment" about focusing on device-side technology (which again was itself not the conception of any invention) occurred after he left Qualcomm and after his Best Buy meeting.

10

*E.g.*, 422 Evid. Hearing Tr. at 8:8-21, 30:13-31:1, 33:22-34:13. And as explained in the deposition excerpts above, new problems created by that move toward device-side technology are what later prompted Dr. Raleigh to conceive the claimed inventions as potential solutions to such problems. *E.g.*, 9/10/24 Raleigh Tr. at 115:4-118:10, 146:9-148:14, 150:17-152:19.

In addition, Dr. Raleigh and his team repeatedly asked Qualcomm for details about the insinuation someone made and whatever evidence supposedly supported it. *E.g.*, 422 Evid. Hearing Tr. at 41:23-42:21. Headwater even tried to arrange a face-to-face meeting for Qualcomm to lay out any assertions or supposed evidence it had, once and for all. *E.g.*, *id*. But Qualcomm never agreed to the meeting and never produced any alleged evidence. *E.g.*, *id*.

In fact, not only did Qualcomm produce no evidence of conception at Qualcomm back in 2009 when the insinuation was made, it also produced no such evidence in response to the broad subpoenas Samsung served in this case and the 422 Action. *See* 422 Qualcomm Subpoena Resp.; 103 Qualcomm Subpoena Resp. This is despite Qualcomm even attending the 422 Evidentiary Hearing and despite Qualcomm allegedly having a common interest privilege with Samsung surrounding the issue of Headwater's patents (which Samsung has used to shield from discovery its communications with Qualcomm about the Headwater cases). 422 Evid. Hearing Tr. at 3:20-21; 422 Action, Dkt. 398 at 2-3. Samsung has tried, multiple times and in multiple ways over a year's time, to get evidence from Qualcomm to support its standing defense—but there is none.[1]

---

[1] Notably, Samsung argued to this Court in the 422 Action that it was supposedly prevented from obtaining relevant discovery from Qualcomm because of when Headwater produced certain emails between Dr. Raleigh and Qualcomm. *E.g.*, 422 Action, Dkt. 378. But despite having several months to do so, Samsung never subpoenaed any of those individuals, and the only additional discovery Qualcomm provided here that was not produced in the 422 Action were a small number of emails from 2009 about the proposed release, which was already discussed extensively with the Court. *See, e.g.*, 422 Evid. Hearing Tr. at 43:24-46:18. Of course, none of the parties' discussions about a potential release provides any evidence that Dr. Raleigh conceived of any claimed invention while working at Qualcomm.

Moreover, Qualcomm has repeatedly offered millions of dollars to buy Headwater's patents. Nobody offers to pay millions of dollars for something they already own, much less a sophisticated and powerful company like Qualcomm. As one example, Qualcomm sent a letter to Headwater in 2022 offering millions of dollars to buy, in Qualcomm's own words, "**<u>Headwater</u>** Patents," including the asserted patents. Qualcomm's offer letter does not refer to them as Qualcomm's patents or patents over which ownership is disputed. Instead, the letter calls them "Headwater Patents" that "are owned by [Headwater]" because that is what they are:



12

2022 Qualcomm Offer (highlighting added). As another example, Dr. Raleigh explained that, in 2017, Qualcomm expressed interest in buying Headwater's patent portfolio and made a verbal offer of $25 million, with some indication that Qualcomm might be willing to offer as much as $75 million. *E.g.*, 422 Evid. Hearing Tr. at 46:23-47:6, 48:9-50:3. It would make no sense for Qualcomm to repeatedly offer millions of dollars to buy what it explicitly referred to as "Headwater Patents" that are "owned by [Headwater]" if Qualcomm believed it was the rightful owner of those patents.

Nor would it have made any sense for Dr. Raleigh to negotiate with Qualcomm about potential offers if Qualcomm might again raise the insinuation someone within Qualcomm made back in 2009. Dr. Raleigh explained how Qualcomm assuaged any concerns about that when the parties began discussing a potential deal in 2017, including by confirming that Qualcomm "had consciously allowed the statute of limitations to expire, and that because the statute of limitations had expired, they had full knowledge that they could not make a claim" of any ownership over Headwater's patents. 422 Evid. Hearing Tr. at 9:4-14. Dr. Raleigh further explained that this "gave us comfort to engage two more times with Qualcomm while Qualcomm considered purchasing the patents and/or the company." *Id.*; *see also id.* at 48:16-49:16 (further explaining how Qualcomm assured him that it had "consciously allowed the statute of limitations to expire" and understood it "had no recourse whatsoever to file any sort of claim against Headwater's patents"). Dr. Raleigh obviously would not have re-engaged in negotiations with Qualcomm in 2017 or 2022 if there were a chance someone might raise again the baseless insinuation made back in 2009.

While Samsung asserts that Qualcomm owns the Headwater patents, Qualcomm itself (i) never pursued any claim of patent ownership or intervened in this action, (ii) assured Dr. Raleigh in business negotiations that it knowingly let the statute of limitations expire on any possible claim

of ownership, (iii) repeatedly offered Headwater millions of dollars to buy—in Qualcomm's written words—the patents "that are owned by" Headwater, and (iv) produced no substantive documents in response to multiple broad subpoenas from Samsung seeking anything that could show conception of a Headwater invention while Dr. Raleigh was at Qualcomm. That is not the conduct of someone who owns Headwater's patents. Instead, Qualcomm's conduct only further corroborates Dr. Raleigh's testimony and supports the conclusion that Headwater has standing.

### 3. Samsung Continues to Impose Burdens on Headwater that Defy Logic, Disregard This Court's Prior Findings, and Are Unsupported by Case Law

Samsung recognizes that "Headwater is not required to prove that Dr. Raleigh *did not* conceive at Qualcomm" but asserts that Headwater "is required to prove *when* he did conceive." Dkt. 177 at 12-13 (emphasis in original). These are just word games. This Court appropriately recognized that "[t]he corroboration requirement simply does not mechanically work in the situation where [Samsung] is the one trying to prove an earlier conception date." 422 Standing R&R at 12. Samsung is disregarding this direction from the Court. In the 422 Action, the Court "require[d] Dr. Raleigh's testimony regarding his 'ah-ha moment' to be corroborated" and did "not expect this corroboration to demonstrate his exact moment of conception or a lack of prior conception." *Id.* That same initial "ah-ha" moment about exploring device-side technologies is just as corroborated now as it was in the 422 Action. The only difference is that, as Dr. Raleigh explained in the testimony quoted above, that move toward device-side technology created new problems that prompted him to conceive of the claimed inventions to address those new problems. Samsung's reliance upon generic case law about corroboration[2] ignores (i) that the Court already

---

[2] For example, Samsung points to two IPR cases involving a *patentee's* attempt to swear behind prior art by establishing a conception date earlier than the application filing date. *See* Dkt. 177 (citing *iRobot Corp. v. SharkNinja Operating LLC*, 2024 WL 3687981 (Fed. Cir. Aug. 7, 2024);

found the bulk of the invention timeline here to be corroborated and credible, and (ii) that the normal corroboration requirement "simply does not mechanically work in the situation" here.

Notably, Samsung offers no case law involving a situation like this one that supports its position. In the *FilmTec* case Samsung cites, for example, "[t]he claimed invention [wa]s a composition, claimed by its structure, the key limitations of the claims being the chemical reactants, and [the inventor] conceived that invention while at" his employer's company. *FilmTec Corp. v Hydranautics*, 982 F.2d 1546, 1552 (Fed. Cir. 1992). After leaving to form what it called a "spin-off" of the prior employer, the inventor added "narrow performance limitations in the claims," which were "refine[ments]" that imposed "require[ments] for commercial use." *Id.* at 1549, 1553. Critically, though, **laboratory notebooks** from the inventor's time at his former company (the analog to Qualcomm here) showed that he performed the same experiment there that he repeated after founding the "spin-off" company, which then filed the patent application based on this experiment. *Id.* Those facts are not remotely like those here. As another example, in *Bio-Rad*, the accused infringer produced evidence of **multiple slide presentations and emails** from the inventor's time at his former employer's company, which described aspects of the claimed inventions. *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 996 F.3d 1302, 1320 (Fed. Cir. 2021). Even still, such contemporaneous evidence was not enough to support the type of finding that Samsung seeks here—for which it has no evidence (contemporaneous or otherwise) about technical work performed by Dr. Raleigh while at Qualcomm, much less anything that suggests conception of any claimed invention. And of course, neither *FilmTec* nor *Bio-Rad*—or any other case—involved a situation where the alleged owner (here, Qualcomm) repeatedly offered millions of dollars to buy

---

*Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293 (Fed. Cir. 2018)). The facts here are completely different, including because it is Samsung—not patentee Headwater—who is trying to establish a pre-application conception date.

what it explicitly said were the patents "owned by" the assignee (here, Headwater) and stated that it knowingly let the statute of limitations expire on any purported claim of ownership. There is simply no precedent for the relief Samsung seeks here.

It also bears noting that the Federal Circuit has imposed meaningful burdens (which Samsung cannot meet) *on the accused infringer* alleging that conception occurred earlier than the filing date of a patent application—as Samsung does here. For example, in *Bio-Rad*, the Federal Circuit affirmed the rejection of an ownership/standing defense involving a California invention assignment agreement, finding that accused infringer Bio-Rad failed to meet *its burden* to show it was "more likely than not that conception of the inventive idea in the asserted patents occurred before [the two co-inventors'] departure" from Bio-Rad and noting that what *Bio-Rad* needed to show conception of was "the specific arrangement of elements claimed in the asserted patents." *Bio-Rad* 996 F.3d at 1309-10, 1317. The Court should similarly require Samsung to support its allegations of conception at Qualcomm with substantive evidence (again, even contemporaneous slide decks and emails with relevant technical details were insufficient in *Bio-Rad*).

### C.    Samsung's Baseless Attorney Argument that Dr. Raleigh's Conception Date Is "Simply Not Credible" Cannot Support Any Finding for Samsung

Samsung concludes with a brief and baseless assertion that "Dr. Raleigh's conception date is simply not credible." Dkt. 177 at 13. This is based on Dr. Raleigh explaining at deposition that, while he was still at Qualcomm, technical problems "began to develop" that he *later* helped to address with the claimed inventions. *See* 9/10/24 Raleigh Tr. at 2-15. Samsung wrongly jumps to the conclusion that "[t]his strongly suggests conception before he left Qualcomm," even though Dr. Raleigh never said or suggested anything about even attempting to solve such problems while at Qualcomm. Dkt. 177 at 13-14. That is absurd. The existence of a problem does not imply the existence of any solution to that problem, much less an immediate solution. There is zero evidence

16

suggesting that Dr. Raleigh conceived of the claimed inventions immediately after problems with network chatter arose. Samsung's argument assumes—with no basis whatsoever—that while working full time on Qualcomm business strategy, Dr. Raleigh must have engineered a solution to immediately address network chatter merely because that problem began to develop while he was at Qualcomm. The Court should disregard such specious arguments from Samsung.

Similar, Samsung continues to misinterpret Dr. Raleigh's 2021 panel remarks, as it did in the 422 Action. *See* Dkt. 177 at 14. This time, Samsung seizes upon the phrase "disaster on the network" in those remarks because the claimed inventions help to address network problems, with Samsung declaring Dr. Raleigh must have been "untruthful" in this case or in his panel remarks. Dkt. 177 at 7-8, 14. *Id.* This is not evidence of anything, and this Court has already thoroughly considered Dr. Raleigh's explanation of his panel remarks and how they must be considered in the context of Dr. Raleigh being "given only a minute or two to make his point" about small companies being drivers of innovation. *E.g.*, 422 Standing R&R at 13; *id.* at 10-11; 422 Evid. Hearing Tr. at 31:5-18, 55:23-61:16. The Court rightly found his explanation in the 422 Action "credible." 422 Standing R&R at 13-14. And notably, Qualcomm did not claim any ownership interest in Headwater's patents following the panel, even though it was moderated by a 20-year Qualcomm executive who presumably would have acted if Dr. Raleigh had actually admitted to stealing Qualcomm's IP, as Samsung continues to suggest. 422 Evid. Hearing Tr. at 56:7-13, 59:19-60:2.[3]

---

[3] Samsung also argues there is a "glaring inconsistency" between Dr. Raleigh's deposition testimony and his panel remarks about "every smartphone on the planet." Dkt. 177 at 14. Again, the Court has thoroughly considered his panel remarks and the context in which they were made, and Samsung notably omits from its citation the pages of explanation Dr. Raleigh provided about this supposed inconsistency. *See, e.g.*, 9/10/24 Raleigh Tr. at 108:20-112:18.

IV.    **CONCLUSION**

As in the 422 Action, all available evidence shows that Dr. Raleigh conceived the claimed inventions after he left Qualcomm. There is no evidence to the contrary—just speculation and baseless accusations by Samsung's counsel. Headwater respectfully requests that, as before, the Court deny Samsung's Motion to Dismiss and grant Headwater's Motion for Partial Summary Judgment (Dkt. 174).


Dated: November 4, 2024                    Respectfully submitted,

                                           */s/ Reza Mirzaie*
                                           Marc Fenster
                                           CA State Bar No. 181067
                                           mfenster@raklaw.com
                                           Reza Mirzaie
                                           CA State Bar No. 246953
                                           rmirzaie@raklaw.com
                                           Brian Ledahl
                                           CA State Bar No. 186579
                                           bledahl@raklaw.com
                                           Ben Wang
                                           CA State Bar No. 228712
                                           bwang@raklaw.com
                                           Adam Hoffman
                                           CA State Bar No. 218740
                                           Email: ahoffman@raklaw.com
                                           Dale Chang
                                           CA State Bar No. 248657
                                           dchang@raklaw.com
                                           Paul Kroeger
                                           CA State Bar No. 229074
                                           pkroeger@raklaw.com
                                           Neil A. Rubin
                                           CA State Bar No. 250761
                                           nrubin@raklaw.com
                                           Kristopher Davis
                                           CA State Bar No. 329627
                                           kdavis@raklaw.com
                                           James S. Tsuei
                                           CA State Bar No. 285530

jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
pwang@raklaw.com
Amy Hayden
CA State Bar No. 287026
ahayden@raklaw.com
James Milkey
CA State Bar No. 281283
Email: jmilkey@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
jwietholter@raklaw.com
James Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
Qi (Peter) Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Fl.
Los Angeles, CA 90025
Telephone: 310-826-7474

Andrea L. Fair
TX State Bar No. 24078488
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com


**ATTORNEYS FOR PLAINTIFF,
HEADWATER RESEARCH LLC**

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas under seal, and served counsel of record with a copy via electronic email.

/s/ *Reza Mirzaie*
Reza Mirzaie