# Exhibit 7



12424 Wilshire Blvd.
Twelfth Floor
Los Angeles
California
90025

Tel 310.826.7474
Fax 310.826.6991
www.raklaw.com

Jason Wietholter
jwietholter@raklaw.com

November 14, 2023

Thad C. Kodish
Fish & Richardson P.C.
1180 Peachtree Street, NE
21st Floor
tkodish@fr.com

Re: *Headwater Research, LLC v. Samsung Elecs. Am., Inc. and Samsung Elecs. Co. Ltd.*, Case No. 2:23-cv-00103-JRG (E.D. Tex.)

Dear Samsung Counsel:

I write with respect to the above-captioned patent litigation matter between Headwater Research, LLC ("Headwater") and Samsung Electronics America, Inc. and Samsung Electronics, Co., Ltd. ("Samsung").

The parties jointly proposed Discovery Order requires the parties to produce documents relevant to the pleaded claims and defenses in this action without first awaiting a discovery request. *See* Dkt. 57-1, ¶ 3. While we trust the parties will comply with their discovery obligations in good faith and without undue delay, in order to further clarify the issues for discovery, I have attached as Exhibit A a non-exhaustive list of document categories which we expect the Samsung parties to collect and produce in this matter.

If Samsung objects to any of the enclosed document categories or intends to either withhold non-privileged documents or otherwise refuse to search for and collect documents within a given category, we request that Samsung advise us as such in writing. This will allow the parties to efficiently schedule a time at which the parties can meet and confer as appropriate.

Sincerely,

*/s/ Jason Wietholter*

Jason Wietholter

Enclosure: Exhibit A

## **EXHIBIT A – Document Categories**

### **Definitions**

1. The term "document" includes "originals" and "duplicates" and has the same meaning as the terms "writings and recordings" and "photographs" as defined in Rules 1001(1) and (2) of the Federal Rules of Evidence, whether or not claimed to be privileged against discovery on any ground, and specifically includes, but is not limited to, correspondence, agreements, and communications; dealer-customer, inter-company, and intra-company communications; studies, surveys, reports, analyses, or projections; announcements, declarations, notices, releases, and publicity; telegrams; notes and memoranda; summaries; minutes and records of telephone conversations, meetings, and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews; financial records including bills, receipts, ledgers, invoices, bank statements, and canceled checks; books, manuals, and publications; telexes or cables prepared, drafted, received, and/or sent; calendars or diaries; charts, plans, sketches, and drawings; photographs, reports, and/or summaries of investigations and/or surveys; opinions, notes, and reports of consultants; opinions of counsel; reports and summaries of negotiations; any other reports or summaries; agreements, contracts, memoranda of understanding, letters of intent, licenses and assignments; brochures, pamphlets, catalogs, catalog sheets, advertisements (including promotional materials), fliers, announcements, posters, signs, story boards, and scripts; audio and video recordings of radio, television, and Internet commercials; circulars and trade letters; electronic mail, Internet communications, social media messages, or electronic messages; SMS or MMS messages; tape recordings or digital recordings; information contained in any computer tape, card, disc, or program; and any other paper, writing, or physical thing which contains the requested information.  Any document that contains any

comment, notation, addition, deletion, insertion, or marking of any kind, which is not part of another document, is a separate document.

2. The terms "original" and "duplicate" are defined in Rules 1001(3) and (4) of the Federal Rules of Evidence, as follows: "Original" means the writing itself or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print therefrom. If data is stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original." A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photographs, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques, that accurately reproduces the original.

3. The term "communication" refers to and includes any contact whatsoever and any transmission or exchange of words, numbers, graphic material, or other information, either orally, electronically, or in writing, whether made, received, or participated in, and includes without limitation any conversation, correspondence, letter, notes, memorandum, inter-office or intra-office correspondence, telephone call, facsimile, electronic mail, Internet communication, social media message, electronic message, SMS or MMS message, tape recording, digital recording, discussion, face-to-face meeting, conference, or meeting of any kind (whether in person, by telephone, Internet phone or videoconference, or in any other form).

4. The terms "relate," "relates to," "related to" or "relating to" shall mean all documents and things having any logical or factual connection, directly or indirectly, with the matter discussed and shall mean any one or more of the following: evidencing, referring to,

discussing, describing, concerning, mentioning, reflecting, depicting, summarizing, involving, regarding, embodying, containing, pertaining to, arising out of, or in connection with.

5. The term "evidence" means testimony, writings, material objects, or other things presented to the senses that could be offered to prove the existence or nonexistence of a fact.

6. The term "Defendant(s)" means collectively all persons and/or entities named as defendants in the above-captioned matters, including (i) all of their current and past officers, directors, agents, employees, consultants, attorneys, and others acting or purporting to act on behalf of them, and (ii) all of their predecessors, subsidiaries, parents, affiliates, and successors.

7. The terms "you" and "your" mean the responding party, including any of its present and former agents, officers, directors, employees, affiliates, investigators, trustees, consultants, advisors, accountants, attorneys and all other persons or entities acting or purporting to act on its behalf or on behalf of its predecessors, subsidiaries, parents, affiliates and successors.

8. The term "Samsung" means Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. and its officers, executives, employees, agents, attorneys, representatives. shareholders, predecessors-in-interest, independent contractors, or other persons acting or purporting to act on their behalf.

9. The terms "Plaintiff" and "Headwater" mean Headwater Research LLC and its officers, executives, employees, agents, attorneys, representatives. shareholders, predecessors-in-interest, independent contractors, or other persons acting or purporting to act on their behalf.

10. The term "ItsOn" means ItsOn Inc. and its officers, executives, employees, agents, attorneys, representatives. shareholders, predecessors-in-interest, independent contractors, or other persons acting or purporting to act on their behalf.

11. The term "ItsOn software" means any application, computer code, source code, software, software instructions, or software policies created, authored, developed, demonstrated, provided, supplied, or furnished by ItsOn.

12. The terms "person" or "persons" mean and include natural persons, corporations, companies, limited liability companies, partnerships, limited partnerships, associations, organizations, joint ventures, groups, government bodies or agencies, legal entities or any other cognizable entities.

13. The term "communication" means any oral or written transmission of information between persons, including but not limited to, meetings, discussion, conversations, telephone calls, memoranda, letters, telecopies, telexes, conferences or seminars.

14. The term "Asserted Patents" or "Patent(s)-in-Suit" means U.S. Patent Nos. 8,406,733 ("the '733 patent"), 9,198,117 ("the '117 patent"), and 9,615,192 ("the '192 patent"). The related applications for each respective Asserted Patent are included in the definition of "Asserted Patents." The term "Patent(s)-in-Suit" may be used interchangeably with the term "Asserted Patents" and those terms shall have the same meaning. The following non-limiting descriptions of the patent applications for the Asserted Patents are provided to aid you in identifying discoverable information and do not in any way constitute a representation of fact, limit your discovery obligations or define or identify the full extent of those applications included within the definition of the term "Asserted Patents":

   a. The '733 Patent was filed on May 1, 2012, as U.S. Patent Application Ser. No. 13/461,141.

   b. The '117 Patent was filed on March 24, 2015, as U.S. Patent Application Ser. No. 14/667,516.

c. The '192 Patent was filed on July 15, 2016, as U.S. Patent Application Ser. No. 15/211,430.

15. The terms "Accused Product(s)" or "Accused Instrumentalit(ies)" each refer to all of your mobile electronic devices, including mobile phones and tablets, including but not limited to those products identified by Plaintiff as those alleged to infringe the Asserted Patents, including those described in the Complaint or identified in Plaintiff's Infringement Contentions and/or Preliminary Infringement Disclosures pursuant to Patent Local Rule 3-1 (inclusive of any subsequent amendments thereto) served in this case, that you currently make, use, sell, offer for sale, or import, or that you have you have made, used, sold, offered for sale, or imported, and similar products.

16. When referring to a person, "identify" means give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once you identify a person in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

17. When referring to documents, "to identify" means to provide, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) location(s) where documents is stored; and (v) author(s), addressee(s) and recipient(s).

18. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

19. The terms "all" and "each" when used individually shall be construed as both all and each.

20. The term "including" means "including but not limited to."

5

21. The term "affiliate" means any corporation or entity related through corporate ownership of stock such as a parent, subsidiary or sister company, or through common directors, officers, and employees, either at the present time or at any time in the past.

22. The term "prior art" shall have the same meaning as the phrase is generally understood in proceeding before the United States Patent and Trademark Office and used in the Manual of Patent Examining Procedure. The term "prior art" includes at least the subject matter described in 35 U.S.C. §§ 102 and 103 and includes publications, patents, physical devices, products, prototypes, uses, sales, offers for sale, and any documents evidencing the foregoing.

23. The terms "foreign patent" and "foreign patent application" include foreign patents and patent applications filed in countries outside the United States, and include, but are not limited to, divisions, continuations, continuations-in-part, appeals, reissues, patents-of-improvement, inventor's certificates, and foreign utility models.

24. The term "related application" means any application, filed anywhere in the world, that: (a) is a parent, child, or other ancestral application related in any way to a given patent; (b) is a continuation application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, provisional application, or abandoned application of such patent or the application that led to such patent; (c) claims priority in whole or in part from such patent or the application that led to such patent; (d) is the basis for a claim of priority in whole or in part (including claims of benefits under 35 U.S.C. §§ 119(e) or 120) for a given patent; or (e) shares subject matter with a given patent.

25. The term "related patent" means any patent that issued from any related application.

26. The term "system(s)" refers to all hardware and/or software necessary to perform a function, including the hardware and/or software for all components, modules, subsystems, and related systems thereof.

27. The term "products" refers to, without limitation, all products, devices, components, interfaces, systems, modules, tools, methods, functionalities, processes, and/or services (including software) that are or were under development or planned to be developed.

**28.** The term "Asserted Claims" refers to any of the claims identified by Plaintiff as allegedly infringed by Defendants, including as set forth in or described in the Complaint or identified in Plaintiff's Infringement Contentions and/or Preliminary Infringement Disclosures pursuant to Patent Local Rule 3-1 (inclusive of any subsequent amendments thereto) served in this case.

## Documents Requested

1. Produce all documents and things related to the Asserted Patents, and any related patent, application or proceeding (including divisionals, continuations, continuations-in-part, reissue proceedings, reexamination proceedings, and IPR proceedings).

2. Produce all documents and things relating to or reflecting your knowledge or awareness of any of the Asserted Patents or any related patent or application, including patent prosecution files and/or patent searches naming or discussing the Asserted Patents.

3. Produce all documents relating to the date on which you became aware of any of the Asserted Patents or any related patent or application.

4. Produce all documents and things relating to Defendants' knowledge of alleged infringement of any claims of any of the Asserted Patents.

5. Produce all documents relating to the date on which you became aware of any of ItsOn, ItsOn software, Headwater, and/or any inventor of the Asserted Patents.

6. Produce all documents and things relating to or reflecting your knowledge or awareness of ItsOn, ItsOn software, Headwater, and/or any inventor of the Asserted Patents.

7. Produce all documents and things relating to the scope of the Asserted Claims or any other claims of the Asserted Patents, including but not limited to documents and things relating to the construction or interpretation of such claims.

7

8. Produce all documents and things relating to patents or patent applications filed by or on behalf of Defendants that mention, cite, or refer to the Asserted Patents, including the prosecution histories for any such patents or patent applications.

9. Produce all documents and things related to ItsOn, ItsOn software, Headwater, and any named inventor of any of the Asserted Patents, including but not limited to any communications, interactions, studies, analyses, evaluations, testing, reports, or investigations conducted by or on behalf of Defendants.

10. Produce all documents and things relating to the naming convention, designation, branding, labeling, or other identification of the Accused Products and/or features or components of the Accused Products, including but not limited to the format and meaning of internal and external names, numbers, product names, product numbers, and/or other identifiers.

11. Produce documents and things sufficient to identify each business entity that is or has been involved in the creation, research, design, development, and/or manufacture of the Accused Products.

12. Produce all documents and things relating to the conception, research, design, development, testing, manufacture, quality control, operation, or function of the Accused Products, including, but not limited to, design notes; design guides; memoranda; checklists; product brochures; pamphlets; reports; analyses; materials or test results; engineering or product specifications; process specifications; datasheets; product requirements documents; laboratory or engineering notebooks; schematics; drawings; technical, service, or operational manuals; product manuals; product guides; installation guides; installation manuals; internet publications; and/or all correspondence relating thereto.

13. For each Accused Product, produce documents sufficient to identify and describe each version, including any differences between each version of the Accused Products.

14. Produce documents and things sufficient to identify the date of each version, including each variation of each version, of the Accused Products was:

- first conceived;
- first reduced to practice;
- first manufactured;
- first tested;
- first used;
- first advertised;
- first offered for sale;
- first sold; and

8

- first imported into the United States.

15. Produce documents and things sufficient to identify the manufacturer(s), distributor(s), retailer(s), and importer(s) of each version of each of the Accused Products, the component(s) of each version of each of the Accused Products manufactured by each manufacturer, and the number of Accused Products and/or components by year manufactured by each manufacturer.

16. For each Accused Product, produce documents sufficient to identify each component of the Accused Product.

17. Produce all source code for the Accused Products that relates to push messaging servers (e.g., Samsung's Knox and Tizen servers), and/or push messaging functionality in Samsung's mobile electronic devices (e.g., Galaxy phones and tablets, as well as Samsung devices which include Samsung Knox functionality), and Samsung Tizen devices (e.g., TVs and wearables).

18. Produce all documents and things relating to each integration, enhancement, fix, change, addition, deletion, update, or modification to the Android operating system or Tizen software, performed by Samsung related to push messaging servers (e.g., Samsung's Knox and Tizen servers), and/or push messaging functionality in Samsung's mobile electronic devices (e.g., Galaxy phones and tablets, as well as Samsung devices which include Samsung Knox functionality), and Samsung Tizen devices (e.g., TVs and wearables).

19. Produce all documents and things relating to the origination, conception, creation, formation, or development of functionalities in the Accused Products relating to push messaging servers (e.g., Samsung's Knox and Tizen servers), and/or push messaging functionality in Samsung's mobile electronic devices (e.g., Galaxy phones and tablets, as well as Samsung devices which include Samsung Knox functionality), and Samsung Tizen devices (e.g., TVs and wearables).

20. Produce all documents and things relating to Carrier-provided requirements, prerequisites, proposals, and expectations to add, develop, implement, include, or otherwise support in any of the Accused Products functionality related to push messaging servers (e.g., Samsung's Knox and Tizen servers), and/or push messaging functionality in Samsung's mobile electronic devices (e.g., Galaxy phones and tablets, as well as Samsung devices which include Samsung Knox functionality), and Samsung Tizen devices (e.g., TVs and wearables). Your answer should include the Bates numbers of documents illustrating your reasons (if any), and all persons that possess related knowledge about your reasoning.

21. Produce all documents and things relating to each known or planned variation and/or version of Accused Product(s), including but not limited to design or materials change orders or notices thereof, any actual or proposed production model, prototype or other pre-production embodiment, whether or not plans are complete or finalized, that Defendant intends to import into the United States, sell for importation into the United States, and/or sell within the United States after importation (including but not limited to new iterations of the Accused Products) for any purpose.

9

22. Produce representative all documents and things concerning advertising, promotion, or marketing of the Accused Products, including:

- descriptive or promotional materials concerning the Accused Products, such as sales literature and packaging;

- press releases and trade journal articles concerning the Accused Products;

- advertisements, advertising campaigns, catalogs, solicitations, pamphlets, brochures, internet postings and publications, videos, trade show packets, materials prepared for use in trade meetings, trade shows, and conventions, package inserts, sell sheets, technical data sheets, specifications, price lists, product demonstrations, product training, and sales presentations, for use either internally by Defendant's employees or its sales representatives, distributors, or other sales agents, or for use externally in marketing Accused Product to customers or potential customers; and

- any other materials used in promoting or distributed in connection with the manufacture, sale, offer for sale, or transfer of any of the Accused Products and/or features or components of the Accused Products.

23. Produce all documents and things relating to the research, design, development, testing, manufacture, quality control, operation, or function of the Accused Products, including, but not limited to, product brochures; memoranda; checklists; pamphlets; reports; analyses; materials or test results; engineering or product specifications; process specifications; product requirements documents; laboratory or engineering notebooks; schematics; drawings; technical, service, or operational manuals; product manuals; internet publications; and/or all correspondence relating thereto.

24. Produce documents sufficient to identify each third party involved in the research, design, development, testing, manufacture, operation, and/or function of the Accused Products.

25. Produce all documents and things related to any prior art that you contend is relevant to this action.

26. Produce all documents and things relating to your contention regarding the level of knowledge, schooling, experience, expertise, or relevant technical skill held by a person of ordinary skill in the art as of the priority date(s) of the Asserted Patents.

27. Produce all documents and things relating to searches, analyses, tests, investigations, or evaluations performed by or on behalf of any Defendant to assess infringement of the Asserted Patents by any of the Accused Products.

28. Produce all documents and things relating to any alleged non-infringing alternatives to any Asserted Claim of the Asserted Patents.

29. Produce all documents and things relating to any defense or contention by Defendant regarding the Asserted Claims, including but not limited to any search, analyses,

tests, investigations, or evaluations performed by or on behalf of Defendant to assess or evaluate prior art, infringement, invalidity, obviousness, anticipation, and unenforceability.

30. Produce documents and things sufficient to show Defendant's policies, practices, and/or procedures relating to avoidance of patent infringement.

31. Produce documents and things sufficient show Defendant's policies, practices, and/or procedures relating to reviewing, gathering information, or analyzing patents owned by a third party.

32. Produce all documents and things relating to efforts undertaken by or on behalf of any Defendant to design around or otherwise avoid infringement of the Asserted Patents, including, but not limited to, the identification of all features and structures modified or considered for modification.

33. Produce all documents and things relating to any planned, potential, or implemented design-around, alternative process, and/or alternative technology or method that you contend could be used as a commercially acceptable non-infringing alternative to any claim of the Asserted Patents.

34. Produce all documents and things referring or relating to the establishment and/or determination of prices of each model, and each variation of each model, of the Accused Products at all levels of trade, including but not limited to wholesale, retail, distributor, and end-user sales.

35. Produce all documents and things sufficient to show your monthly, quarterly, and annual sales, in units and in U.S. Dollars, of each Accused Product from six years prior to the filing of the Complaint to present.

36. Produce all documents and things sufficient to show your monthly, quarterly, and annual profits attributable, in whole or in part, to each Accused Product from six years prior to the filing of the Complaint to present.

37. Produce all documents and things sufficient to show your monthly, quarterly, and annual revenues attributable, in whole or in part, to each Accused Product from six years prior to the filing of the Complaint to present, including but not limited to sales, licensing, partnerships, and other sources of revenue.

38. Produce all documents and things sufficient to show your monthly, quarterly, and annual itemized costs and expenditures attributable, in whole or in part, to each Accused Product from six years prior to the filing of the Complaint to present.

39. Produce all documents and things referring or relating to pricing, discounts, rebates, or promotions provided to customers, distributors, suppliers, or retailers, including but not limited to pricing sheets or other documents instructing personnel or customers regarding pricing and/or discounts for the Accused Products from six years prior to the filing of the Complaint to present.

40. Produce all documents and communications relating to the Accused Products, including without limitation studies, reports, market surveys, consumer surveys, focus groups, market analyses, and forecasts of customer demand, competition, or market shares; changes in overall market size over time; the need for, demand for, or desirability of Accused Products or any functionality or feature thereof; and the product features that are relevant to whether customers purchase the Accused Products.

41. Produce all documents and things that you contend are relevant to the determination of damages in this action, including but not limited to any license agreements and/or related agreements.

42. Produce all documents and things relating to the benefits and/or advantages of any Accused Product, including but not limited to the benefits and/or advantages of any of the following functionalities in the Accused Products: push messaging servers (e.g., Samsung's Knox and Tizen servers), and/or push messaging functionality in Samsung's mobile electronic devices (e.g., Galaxy phones and tablets, as well as Samsung devices which include Samsung Knox functionality), and Samsung Tizen devices (e.g., TVs and wearables).

43. Produce all documents and things relating to agreements, contracts, or licenses involving the Accused Products, including, but not limited to, any agreement, contract, or license concerning the design, development, manufacture, assembly, testing, sale, distribution, importation, and/or service of any of the Accused Products or components thereof.

44. Produce all documents and things relating to any of your policies, practices, customs, guidelines, or procedures for licensing your own patents, intellectual property, and/or technology to actual or potential licensees.

45. Produce all documents and things relating to any of your policies, practices, customs, guidelines, or procedures for licensing patents, intellectual property, and/or technology from actual or potential licensors.

46. Produce all documents and organizational charts sufficient to identify and describe your organizational structure, including the organizational structure for any business unit, product team, group, subdivision, or similar unit that is in any way involved in or responsible for researching, engineering, conceiving, designing, developing, operating, testing, implementing, manufacturing, assembling, distributing, marketing, and/or selling any Accused Product; including, by way of example and without limitation, documents or organizational charts sufficient to identify each business unit, product team, group, subdivision, or similar unit involved in the research, development, maintenance, operations, improvement, marketing, or sales of each Accused Product.

47. Produce documents and things sufficient to identify each Defendant's officers, directors, and managing agents from six years prior to the filing of the Complaint through the present.

48. Produce all meeting minutes, notes, documents, and communications related to any meeting, whether in person and/or telephonic, held by your board of directors, officers, and/or managing agents relating in any way to this matter, ItsOn, Headwater, or any named

12

inventor of the Asserted Patents.

49.  Produce documents and things sufficient to identify all lawsuits and legal claims relating to any of the Accused Products.

50.  Produce all documents and things that refer or relate to any agreement concerning this action, the Asserted Patents, or any Accused Product, including, but not limited to, indemnification agreements, joint defense agreements, and/or any other agreements, all communications relating to such agreements, and all demands for indemnification pursuant to such agreements.

51.  Produce all documents and things provided to, reviewed by, or prepared for or by any person whom any Defendant may call as an expert witness at any hearing, or on whose oral or written testimony any Defendant may rely at any other stage of this lawsuit, including, but not limited to, all documents such person plans to use, rely on, or refer to in connection with such testimony.

52.  Produce all documents and things relating to any Defendant's policies, practices, or procedures currently in place or previously in effect with respect to the retention or destruction of hard copy and/or electronic materials.

53.  Produce all documents and things relating to any Defendant's policies, practices, or procedures currently in place or previously in effect with respect to the treatment or protection of confidential information.

54.  Produce all documents and things used, considered, consulted, referred to, or relied upon in the preparation of any response or supplemental response to any interrogatory served in this matter.

55.  Produce all documents and things that any deponent used, considered, consulted, reviewed, referred to, or relied upon in connection with a deposition in this matter.

56.  Produce all documents and things used, considered, consulted, reviewed, referred to, identified in, or relied upon in the preparation of any document filed or served by you in this matter, including, without limitation, any Answer served by you and any affirmative defenses or counterclaims raised therein.

57.  Produce all transcripts (including printed transcripts, electronic transcripts, audiotapes, and videotapes), affidavits, declarations, or oaths of any sworn testimony related in any way to any of the following functionalities in the Accused Products: push messaging servers (e.g., Samsung's Knox and Tizen servers), and/or push messaging functionality in Samsung's mobile electronic devices (e.g., Galaxy phones and tablets, as well as Samsung devices which include Samsung Knox functionality), and Samsung Tizen devices (e.g., TVs and wearables).

58.  Produce all transcripts (including printed transcripts, electronic transcripts, audiotapes, and videotapes) of any sworn testimony ever given in any proceeding by any person you expect to call as a witness at any hearing or at trial in connection with this matter.

59. Produce all documents and things related to any affidavit or declaration ever given in any proceeding by any person you expect to call as a witness at any hearing or at trial in connection with this matter.

60. Produce all documents and things constituting or relating to non-privileged communications relating to this lawsuit, including without limitation communications with third parties and witnesses or potential witnesses.

61. Produce all documents and things relating to a claim, defense, or allegation made by Defendants in this lawsuit or that Defendants intend to rely upon to support any claim made in this litigation.

62. Produce all documents and things relating to this litigation, including but not limited to all documents and things that Defendants intend to or may rely upon at a hearing or trial in this lawsuit.

63. Produce all documents and things relating to a relief requested by Defendants.

64. Produce all documents and things constituting or relating to a person, document, or thing referred to in Defendants' initial disclosure under Fed. R. Civ. P. 26(a)(1) or considered by Defendants in preparing its disclosures.

65. Produce all documents and things relating to any of Defendants' responses to Plaintiff's discovery requests in this litigation, including without limitation to all documents referred to in its responses or considered by Defendants in preparing its responses.

66. Produce all documents and things produced to Defendants by a third party in connection with this litigation, whether or not in response to a subpoena or formal discovery request.

67. Produce all agreements between Defendants and any fact witness identified in this litigation, including without limitation witnesses identified in any party's initial disclosures, witnesses subpoenaed by any party, witnesses noticed for deposition by any party, or witnesses identified in any witness list by any party.