IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, § § § *Plaintiff*, § § v. § CIVIL ACTION NO. 2:23-CV-00103-JRG-RSP § SAMSUNG ELECTRONICS CO., LTD., § and SAMSUNG ELECTRONICS § AMERICA, INC., § § *Defendants*. § | |

## MEMORANDUM ORDER

Before the Court is Samsung's Motion to Strike Expert Reports of Mr. Erik de la Iglesia ("Mr. DLI"). **Dkt. No. 185**. For the reasons discussed below, the Court **GRANTS** the Motion in Part.

**I.    LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. ANALYSIS

### A. UNDISCLOSED THEORIES

First, Samsung moves to exclude from Mr. DLI's report opinions that it claims were not disclosed in Headwater's infringement contentions. Dkt. No. 185 at 1.

#### 1. FCM FOR THE '192 PATENT

First, Samsung argues that Mr. DLI presents a theory that Google's Firebase Cloud Messaging ("FCM") constitutes the claimed server of the '192 patent, but Headwater never disclosed this theory in its infringement contentions. *Id.* Samsung asserts that Headwater did not chart FCM in its supplemental infringement contentions. *Id.* at 2. Furthermore, Samsung maintains that it proactively reached out to Headwater to clarify whether it was accusing FCM and got no response. *Id.* at 2–3. More specifically, Samsung argues that Mr. DLI introduces new theories for how limitations 1[c], 1[d], 1[e], and 1[f] are met with the FCM theory. *Id.* at 3. According to Samsung, Headwater's contentions did not even mention Firebase or FCM with respect to those limitations. *Id.* Samsung demonstrates that it suffered prejudice from this lack of disclosure because it did not have the opportunity to conduct discovery on these theories. *Id.* at 6.

Headwater responds that it did accuse Firebase servers in its First Amended Complaint. Dkt. No. 207 at 1 (citing Dkt. No. 31-6 at 11, 17–18). Headwater also argues that early in this case, Samsung moved to dismiss the FAC based on the Firebase server theory and the Court denied that motion. *Id.* at 3; Dkt. No. 40 at 9 (Samsung's Motion to Dismiss); Dkt. No. 78 at 5–7 (R&R denying Samsung's Motion); Dkt. No. 80 (Order Adopting R&R). Next, Headwater argues that its September 28, 2023, infringement contentions "explicitly accuse 'Google's Firebase Cloud Messaging service' of infringing each of the Asserted Claims of the '192 patent." Dkt. No. 207 at

3

3 (quoting Dkt. No. 185-3 at 8–9). Headwater represents that in response to Samsung's email it "promptly served replacement charts that matched the claim charts for the independent claim attached to Headwater's amended (and operative) complaint that included the FCM theory for '192 patent." *Id.* at 4. Headwater further contends that Dr. Raleigh, its corporate representative, testified in a deposition that he believes that FCM infringes. *Id.* at 5 (citing Dkt. No. 207-2). Headwater finally argues that Samsung does not suffer prejudice because these theories were charted based on public documents and Samsung has had the opportunity to coordinate with Google. *Id.*

The Court finds that Headwater adequately disclosed its FCM theory as to limitations 1[a] and 1[b], but not 1[c–e]. Headwater's claim chart that it attached to its FAC specifically accuses Firebase Messaging servers as the claimed message link server. Dkt. No. 31-6 at 11. Headwater's infringement contentions also accuse FCM for the '192 patent generally. Dkt. No. 185-3 at 8–9. However, the contentions do not mention FCM or "Firebase" at all in the charts regarding limitations 1[c], [d], and [e]. Moreover, nowhere in Headwater's response does it identify how its contentions conceivably could have accused FCM for these limitations. The Court agrees that Samsung was not sufficiently on notice of Headwater's reliance on FCM to satisfy these limitations and that Samsung was prejudiced by this. The Court does not comment on best practices for emails between counsel. Additionally, the Court does not find persuasive Headwater's argument that the Court's denial of Samsung's motion to dismiss has any bearing on this issue. Accordingly, the Court **STRIKES** Paragraphs 1100–1103, 1113–1123, and 1131–1139 of Mr. DLI's Opening Expert Report.

### 2. "TRANSMISSION TRIGGER" THEORY FOR THE '117 PATENT

Samsung also moves to exclude Mr. DLI's "transmission trigger" theory for the '117 patent. Dkt. No. 185 at 4. Samsung argues that in its contentions Headwater contended that the "transmission trigger" limitation of claim 17 "may be a time period of *inactivity*," but Mr. DLI opines that the transmission trigger is satisfied by "*heartbeat* transmissions." *Id* (emphases in original); *compare* Dkt. No. 185-1 at ¶ 579 (DLI Opening Report) and Dkt. No. 185-7 at 126–127 (Headwater's infringement contentions). Samsung argues that these two theories have nothing to do with each other, and thus Headwater did not disclose its theory, and it should be excluded. Dkt. No. 185 at 4.

Headwater responds that Mr. DLI's theory is fully consistent with its contentions. Dkt. No. 207 at 5. It asserts that Mr. DLI simply "provides supporting evidence that heartbeat transmissions bookend the periods of inactivity between heartbeats." *Id.* at 5–6.

The Court finds that Headwater adequately disclosed this theory. The Court agrees with Headwater that Mr. DLI is providing substance to an already disclosed theory rather than asserting a new theory. The Court thus declines to strike this part of the report.

### 3. WEB OTA DOWNLOADS THEORY FOR THE '733 PATENT

Samsung also moves to exclude Mr. DLI's opinions regarding claims 3, 8, and 9 of the '733 patent for being untimely disclosed. Dkt. No. 185 at 4. Samsung argues that for all those claims, Mr. DLI opines that Web OTA downloads satisfy the claim elements, but Headwater's infringement contentions do not even mention Web OTA downloads. *Id.*

Headwater responds that the "charts accuse the same element, i.e., 'push notifications' that contain such data for download." Dkt. No. 207 at 6 (quoting Dkt. No. 185-8 at 78). Headwater

proceeds to cite various portions of its contentions that reference push messages, and FCM servers. *Id.*

The Court finds that Headwater did not sufficiently disclose Web OTA downloads as satisfying the claim limitations. Headwater's response does not even claim that it disclosed it, but rather cites other parts of their charts without explanation of how those parts rebut Samsung's claim. After review of the charts and the challenged paragraphs of the report, the Court finds that the charts do not adequately disclose what the report opines on. Accordingly, the Court **STRIKES** Paragraphs 869–872, 886–890, and 891–894 of Mr. DLI's opening report.

### B. '117 PATENT CLAIM 6

Samsung next moves to strike Mr. DLI's opinions regarding claim 6 of the '117 patent for being conclusory and unexplained. Dkt. No. 185 at 6. Samsung says that the "entirety of his opinion is a 'see-above' cite." *Id.* But according to Samsung, nowhere does Mr. DLI identify what constitutes the claimed "secure execution environment." *Id.*

Headwater responds that Mr. DLI's claim 6 theory is fully disclosed. Dkt. No. 207 at 6. It argues that his analysis of dependent claim 6 incorporates by reference the analysis of independent claim 1 and his analysis of claim 1[a] shows that the "device messaging agent" also satisfies claim 6. *Id.* Headwater claims that Mr. DLI's analysis of higher-level and lower-level logics shows that claim 6 is satisfied. *Id.*

The Court agrees with Samsung that Mr. DLI's analysis of dependent claim 6 is entirely conclusory and unexplained. The entirety of his opinion on this claim is reproduced below:

> **D. '117 claim 6**
>
> 6. The network system of claim 1, wherein the device messaging agent executes in a secure execution environment on at least one of the devices, and at least one of the applications executes outside of the secure execution environment on that device.

6

> 543. The Samsung Accused Products include the network system of claim 1, where "wherein the device messaging agent executes in a secure execution environment on at least one of the devices, and at least one of the applications executes outside of the secure execution environment on that device." I understand that Samsung does not dispute that it infringes this claim beyond its arguments that it does not infringe claim 1.
>
> 544. See analysis for claim 1, including all evidence cited for 1[a]-1[h].
>
> 545. Thus, the Samsung Accused Products meet claim 6

Dkt. No. 185-1 at ¶¶ 543–545. Headwater's contention that somewhere in the more than 300 paragraphs of Mr. DLI's analysis regarding claim 1 he discusses higher and lower-level logics does not explain how the "secure execution environment" of claim 6 is satisfied. Mr. DLI presents no analysis and offers no helpful opinion for the jury. The Court thus **STRIKES** Paragraphs 543–545 of Mr. DLI's Opening Report.

### C. MR. DLI'S ALLEGATIONS THAT THE ASSERTED PATENTS SOLVED THE PROBLEM OF MOBILE NETWORK CONGESTION

Next, Samsung moves to exclude Mr. DLI's opinions that the Asserted Patents solved mobile network congestion because they are unsubstantiated. Dkt. No. 185 at 7. Samsung argues that Mr. DLI does not present any evidence from Apple, any wireless carrier, or anyone other than Dr. Raleigh. *Id.*

Headwater responds that Samsung is attacking a strawman as Mr. DLI never opines that the inventions "solved" the entire problem of network congestion. Dkt. No. 185 at 7. Headwater explains that Mr. DLI opines that the claimed invention "addresses" the problem of network congestion, but not that it eliminated it. *Id.* Headwater also argues that Mr. DLI's reliance on Dr. Raleigh presents no problem because both can testify at trial and have been deposed. *Id.*

The Court does not find that these opinions warrant striking. Any disagreements Samsung has with them should be addressed with cross examination and contrary opinions. This portion of the Motion is thus **DENIED**.

### D. INCREMENTAL TECHNICAL BENEFITS

Next, Samsung moves to strike Mr. DLI's opinions regarding the incremental technical benefits of the patent as being unreliable. Dkt. No. 185 at 7–8. First, Samsung argues that Mr. DLI fails to account only for the incremental value provided by Headwater's patents over the known prior art. *Id.* at 8 (citing *Commonwealth Sci. & Indus. Rsch. Organization v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Circ. 2015)). Samsung also argues that Mr. DLI relies on outdated data about battery usage and combines that battery usage data with more current data about the frequency of customers receiving push notifications. *Id.* at 9. Samsung argues that this methodology is unreliable. *Id.* at 10. Samsung also argues that Mr. DLI only relies on smartphone data but applies it to other accused devices like tablets without analysis or explanation. *Id.* at 10.

Headwater responds that Mr. DLI analyzes the improvement of the claimed inventions over Samsung's proposed NIAs. Dkt. No. 207 at 7–8. Headwater justifies Mr. DLI's usage of the contested data by saying that it came from Google, the source of the accused functionality. *Id.* at 9. Headwater then argues that Google suggested the methodology that Mr. DLI employed. *Id.* at 11. Headwater concludes that Samsung's arguments are subjects of cross-examination, not exclusion. *Id.*

The Court finds that Mr. DLI's contested opinions are sufficiently reliable and should not be excluded. First, Mr. DLI explains the incremental value of the inventions over Samsung's proposed NIAs, which here are all from the prior art. The Court does not find Mr. DLI's

8

comparisons of different data sources to be inherently arbitrary or unreliable. Any disagreements Samsung may have with the methodology should be explored on cross-examination. The Court thus **DENIES** this portion of the Motion.

### E. INFRINGEMENT BY MAKING, OFFERING, SELLING, OR IMPORTING

Next, Samsung moves to strike Mr. DLI's allegations that Samsung directly infringes by "making, offering for sale and selling the claimed system." Dkt. No. 185 at 11. Samsung argues that it does not make, sell, or offer to sell any system that Mr. DLI accuses of infringing the '117. *Id.* Thus, according to Samsung, they cannot infringe. *Id.* Samsung propounds a similar argument for the '192 patent.

Headwater responds that Samsung is making a disguised motion for summary judgment. Dkt. No. 207 at 12. Headwater argues that Samsung did move for summary judgment regarding the "use" prong of direct infringement, but not for these other prongs. *Id*; *see* Dkt. No. 187.[1] Headwater also disputes the factual bases for Headwater's arguments. Dkt. No. 207 at 12–14.

The Court agrees with Headwater that Samsung's motion to strike is an improper attempt to move for summary judgment. Samsung attempts to remove an entire issue from the case—the quintessential province of a summary judgment motion. Samsung offers no authority to strike on this basis. The Court has rules and procedures for summary judgment motions, including page limits that Samsung cannot escape by squeezing it into a motion to strike. The Court this **DENIES** this portion of the Motion.

### F. DISCUSSION OF COMMERCIAL CONTRACTS AND UNRELATED CASE PROCEEDINGS

---

[1] The Court recommended denying Samsung's motion. Dkt. No. 373.

Next, Samsung moves to strike Mr. DLI's discussion of commercial contracts between Samsung and Google. Dkt. No. 185 at 12. Samsung argues that Mr. DLI is unqualified to opine on these contracts, the opinions he offers are irrelevant, and they are highly prejudicial. *Id.* Samsung accuses Mr. DLI of interpreting rights and obligations under a complex set of contracts, such as the MADA and revenue sharing agreements, without being an expert on licensing, contract or damages. *Id.* Samsung argues that Mr. DLI uses the contracts to support his infringement position by saying that the contracts give Samsung the rights to make, use, sell, etc. the infringing products, but the right to do something is different from actually performing an infringing act. *Id.* at 13. Samsung also argues that the contracts are irrelevant to the issue of inducement. *Id.* Likewise, Samsung argues that the contracts are irrelevant to NIAs and secondary considerations. *Id.* at 14. Samsung contends that all of this is merely camouflage to allow Mr. DLI to wave large dollar figure around. *Id.*

Headwater responds that Mr. DLI does not interpret the contracts but summarizes evidence that Samsung contracts with Google "to preload accused software on Samsung products." Dkt. No. 207 at 14. Headwater further contends that the agreements provide the basis for Samsung having the accused functionalities on its phones and are what precludes it from removing them. *Id.* at 15.

The Court does not find Mr. DLI's reliance on these contracts to be inappropriate. Mr. DLI's opinions do not amount to contract interpretation. While Samsung contends that these contracts do not matter, it is clear that their existence supports at least Headwater's theories of infringement by allowing Samsung to have these features on their devices in the first place. The contracts also support Headwater's theory about the potential difficulty of moving away from the accused features to support its NIA opinions. Further, the Court has preadmitted the MADA. The

Court can address any misuse of large figures through its *limine* orders and contemporaneous objections. This portion of the Motion is **DENIED.**

### G.  SECONDARY CONSIDERATIONS

Finally, Samsung moves to exclude opinions about secondary considerations of non-obviousness that rely on the success of the accused products. Dkt. No. 185 at 15. Samsung argues that Mr. DLI's opinions are improper and unreliable because he does not show that the accused products are successful because of the claimed features. *Id.*

Headwater responds that the secondary considerations analysis establishes the required nexus between the commercial success of the accused products and the claimed inventions. Dkt. No. 207 at 15. Headwater contends that the secondary considerations analysis incorporates Mr. DLI's opening report which apportions incremental battery savings from the inventions, and also incorporates the opinions of Dr. Groehn and Mr. Dell on how these battery savings benefit the consumer and contribute to the value of the product. *Id.*

The Court finds that Mr. DLI provides sufficient evidence that the patented features drive at least part of the success of the accused products. The Court thus finds that Samsung's complaints go to weight, not admissibility. The Court thus **DENIES** this portion of the Motion.

### III.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion in part as provided above.

**SIGNED this 11th day of April, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

11