1

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                FOR THE EASTERN DISTRICT OF TEXAS

 3                        MARSHALL DIVISION

 4   HEADWATER RESEARCH, LLC,      )(

 5        PLAINTIFF,               )(    CIVIL ACTION NO.

 6                                 )(    2:23-CV-103-JRG-RSP

 7   VS.                           )(    MARSHALL, TEXAS

 8                                 )(

 9   SAMSUNG ELECTRONICS AMERICA, )(     MARCH 24, 2025

10   INC., ET AL.,                 )(

11        DEFENDANTS.              )(    10:32 A.M.

12                  REDACTED PRETRIAL HEARING

13            BEFORE THE HONORABLE ROY S. PAYNE

14             UNITED STATES MAGISTRATE JUDGE

15

16   FOR THE PLAINTIFF:     Mr. Marc Fenster
                            Mr. Reza Mirzaie
17                          Mr. Kristopher R. Davis
                            Mr. Jason Wietholter
18                          Mr. Paul A. Kroeger
                            Mr. James S. Tsuei
19                          Russ August & Kabat
                            12424 Wilshire Boulevard
20                          12th Floor
                            Los Angeles, CA 90025
21
                            Mr. James N. Pickens
22                          Attorney at Law
                            1104 NW 88th Way
23                          Plantation, FL 33322

24                          Ms. Andrea L. Fair
                            Miller Fair Henry PLLC
25                          1507 Bill Owens Parkway
                            Longview, TX 75604
```

```
 1   FOR THE DEFENDANTS:        Mr. Thad C. Kodish
                                Ms. Sara C. Fish
 2                              Mr. Jonathan B. Bright
                                Fish & Richardson PC
 3                              1180 Peachtree Street NE
                                21st Floor
 4                              Atlanta, GA 30309

 5                              Mr. John W. Thornburgh
                                Fish & Richardson PC
 6                              12860 El Camino Real
                                Suite 400
 7                              San Diego, CA 92130

 8                              Mr. Kyle J. Fleming
                                Fish & Richardson
 9                              7 Times Square
                                20th Floor
10                              New York, NY 10036

11                              Mr. Lance L. Yang
                                Quinn Emanuel Urquhart & Sullivan
12                              865 S. Figueroa Street
                                10th Floor
13                              Los Angeles, CA 90017

14                              Mr. Leonard Davis
                                Fish & Richardson PC
15                              1717 Main Street
                                Suite 5000
16                              Dallas, TX 75201

17                              Ms. Melissa Smith
                                Gillam & Smith, LLP
18                              303 South Washington Avenue
                                Marshall, TX 75670
19

20   COURT REPORTER:           Ms. Shelly Holmes, CSR, TCRR
                                Official Court Reporter
21                              Honorable Robert W. Schroeder III
                                United States District Judge
22                              Eastern District of Texas
                                Texarkana Division
23                              500 North State Line Avenue
                                Texarkana, Texas 75501
24                              shelly_holmes@txed.uscourts.gov

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
```

| | | |
|---|---|---|
| 10:28:52 | 1 | COURT SECURITY OFFICER:  All rise. |
| 10:28:53 | 2 | THE COURT:  Good morning.  Please be seated. |
| 10:28:54 | 3 | For the record, we are here for the completion of |
| 10:32:38 | 4 | the pretrial conference in Headwater Research versus |
| 10:32:42 | 5 | Samsung Electronics, et al., which is Case No. 2:23-103 on |
| 10:32:50 | 6 | our docket. |
| 10:32:50 | 7 | Would counsel state their appearances for the |
| 10:32:53 | 8 | record? |
| 10:32:53 | 9 | MS. FAIR:  Good morning, Your Honor.  Andrea Fair |
| 10:32:56 | 10 | on behalf of the Plaintiff.  I'm joined today by Mr. Marc |
| 10:32:59 | 11 | Fenster, Mr. Reza Mirzaie. |
| 10:33:01 | 12 | MR. MIRZAIE:  Good morning, Your Honor. |
| 10:33:01 | 13 | THE COURT:  Good morning. |
| 10:33:03 | 14 | MS. FAIR:  Mr. James Pickens. |
| 10:33:03 | 15 | MR. PICKENS:  Good morning. |
| 10:33:04 | 16 | MS. FAIR:  Mr. Kris Davis. |
| 10:33:04 | 17 | MR. DAVIS:  Good morning. |
| 10:33:04 | 18 | MS. FAIR:  Mr. Jason Wietholter. |
| 10:33:04 | 19 | MR. WIETHOLTER:  Good morning. |
| 10:33:04 | 20 | THE COURT:  Good morning. |
| 10:33:05 | 21 | MS. FAIR:  Mr. Paul Kroeger, Mr. James Tsuei, and |
| 10:33:12 | 22 | we're ready to proceed. |
| 10:33:14 | 23 | THE COURT:  All right.  Thank you, Ms. Fair. |
| 10:33:16 | 24 | MS. SMITH:  Good morning, Your Honor.  Melissa |
| 10:33:17 | 25 | Smith on behalf of Samsung.  I'm joined by Mr. Thad Kodish. |

| | | |
|---|---|---|
| 10:33:17 | 1 | MR. KODISH:  Good morning, Your Honor. |
| 10:33:21 | 2 | MS. SMITH:  Mr. John Thornburgh, Ms. Sara Fish, |
| 10:33:25 | 3 | Ms. Jonathan Bright, Mr. Kyle Fleming, Judge Leonard Davis, |
| 10:33:33 | 4 | and also from Quinn Emanuel, Mr. Lance Yang.  And we're |
| 10:33:38 | 5 | ready to proceed, Your Honor. |
| 10:33:39 | 6 | THE COURT:  All right.  Thank you, Ms. Smith. |
| 10:33:40 | 7 | The primary issue on the agenda for today is the |
| 10:33:51 | 8 | admission of exhibits.  Another regular matter would be the |
| 10:34:00 | 9 | resolution of any objections to deposition designations |
| 10:34:05 | 10 | that may be used for the first day, and I understand that |
| 10:34:09 | 11 | there are a few of those. |
| 10:34:12 | 12 | The parties have also requested by email that we |
| 10:34:17 | 13 | address amendments to the pretrial order.  I'm not sure |
| 10:34:22 | 14 | what those are, but we'll give an opportunity for that. |
| 10:34:26 | 15 | And the -- there is a motion filed by Headwater |
| 10:34:34 | 16 | that the Court had indicated would be addressed today, |
| 10:34:38 | 17 | which is at Docket No. 332. |
| 10:34:42 | 18 | Does the Plaintiff have other matters that the |
| 10:34:48 | 19 | Plaintiff intends to present? |
| 10:34:52 | 20 | MR. MIRZAIE:  No, Your Honor.  I think that |
| 10:34:53 | 21 | adequately summarizes it. |
| 10:34:54 | 22 | THE COURT:  All right.  Thank you, Mr. Mirzaie. |
| 10:34:56 | 23 | What about the Defendant? |
| 10:34:57 | 24 | MR. KODISH:  No, Your Honor.  You've got it. |
| 10:34:59 | 25 | THE COURT:  All right.  Thank you, Mr. Kodish |

10:35:02  1    then.

10:35:02  2          I will accede to the parties' request that we take

10:35:14  3    these matters up in a certain order, and the first matter

10:35:17  4    on that list was the Headwater's motion for what they refer

10:35:21  5    to as targeted relief.  So I'll hear first from counsel for

10:35:29  6    the Plaintiff on that.

10:35:31  7          Mr. Pickens?

10:35:33  8          MR. PICKENS:  Good morning, Your Honor.  James

10:35:45  9    Pickens for Plaintiff, Headwater.

10:35:46  10         May I proceed?

10:35:50  11         THE COURT:  Yes.

10:35:51  12         MR. PICKENS:  So the first issue in Docket

10:35:57  13   No. 332 I just wanted to preview by saying that some

10:36:05  14   aspects of this may implicate what Samsung may contend is

10:36:13  15   confidential information.  So we can -- it may make -- they

10:36:21  16   may want to go on the confidential record, but --

10:36:27  17         THE COURT:  Well, Mr. Pickens, try to avoid that.

10:36:31  18   And if they want to make that objection, we'll take it up

10:36:36  19   then.

10:36:36  20         MR. PICKENS:  Thank you.

10:36:37  21         So at the December 16 pretrial conference, Samsung

10:36:43  22   was unable to answer the Court's question about what is the

10:36:48  23   status and extent of the Google financial interest or

10:36:58  24   indemnity obligations that may be applicable to this case.

10:37:02  25         The Court, in colloquy with counsel for Samsung,

6

| | | |
|---|---|---|
| 10:37:05 | 1 | pointed out that Google's -- if a Google witness is coming |
| 10:37:09 | 2 | to trial, then it's an important issue to know if |
| 10:37:12 | 3 | there's -- if that witness is representing a party who has |
| 10:37:15 | 4 | a financial interest in this case. |
| 10:37:17 | 5 | And Samsung was unable to say at that time the |
| 10:37:22 | 6 | current status of that.  And since then, there's been no |
| 10:37:27 | 7 | change to that.  We've met and conferred multiple times, |
| 10:37:31 | 8 | but Samsung still has not disclosed the current status and |
| 10:37:36 | 9 | extent of any Google indemnification. |
| 10:37:43 | 10 | And there's a -- you know, the issue is that |
| 10:37:46 | 11 | Samsung did not disclose the agreement that includes a |
| 10:37:51 | 12 | provision like this until after Headwater filed a motion to |
| 10:37:56 | 13 | compel, Docket 122.  And even after that, we're still in |
| 10:38:04 | 14 | the dark. |
| 10:38:04 | 15 | And Samsung still intends to bring the Google |
| 10:38:08 | 16 | witness to testify live at trial, but that witness, |
| 10:38:11 | 17 | Mr. Todd Hansen, at his deposition, he was unaware that |
| 10:38:15 | 18 | Samsung and Google even have an agreement.  He didn't know |
| 10:38:18 | 19 | they have contracts.  He didn't know anything about their |
| 10:38:21 | 20 | relationship. |
| 10:38:24 | 21 | So this creates a significant prejudice to |
| 10:38:28 | 22 | Headwater, and so the first part of our motion is seeking |
| 10:38:33 | 23 | essentially a jury instruction that we think is just |
| 10:38:39 | 24 | stating the simple -- you know, taking it -- since |
| 10:38:45 | 25 | Mr. Hansen can't speak to it, we think it makes sense to |

10:38:48    1    just tell the jury that, you know, since Google provides

10:38:52    2    the FCM software that's accused in this case, Google has an

10:38:59    3    interest in the outcome of the case, and their witness

10:39:02    4    represents a party who is participating in the defense --

10:39:06    5    excuse me, in the defense.

10:39:07    6          And that's kind of the first part of our -- of the

10:39:11    7    relief we're seeking.

10:39:12    8          We're also seeking some other relief, and

10:39:19    9    pertaining more to the contracts themselves.  And then we

10:39:22   10    also raised in this motion some witness disputes relating

10:39:26   11    to the Google witness and the substance of his testimony.

10:39:30   12    But the first part I wanted to address was just this issue

10:39:33   13    of the --

10:39:35   14          THE COURT:  You know, the first part that you've

10:39:37   15    mentioned, I think, ties into the Defendants' Motion in

10:39:42   16    Limine No. 5 about whether and to what extent there can be

10:39:47   17    any discussion of indemnity, among other things.

10:39:53   18          The questions of production of evidence and the

10:39:58   19    like, how is this not far too late for you to be bringing

10:40:07   20    those up now?

10:40:09   21          MR. PICKENS:  So --

10:40:13   22          THE COURT:  I mean, the time for discovery closed

10:40:15   23    months ago.  We've already had a pretrial conference.  But

10:40:19   24    for other scheduling issues, this case already would have

10:40:24   25    been tried.

| | | |
|---|---|---|
| 10:40:25 | 1 | What is the justification for getting into the |
| 10:40:31 | 2 | sufficiency of the disclosures or the discovery now? |
| 10:40:37 | 3 | MR. PICKENS:  So the issue is simply that after a |
| 10:40:42 | 4 | long process of pursuing this discovery, filing our motion |
| 10:40:48 | 5 | to compel, and getting the agreement, Samsung has now |
| 10:40:57 | 6 | taken the position that none of this can come into the |
| 10:41:00 | 7 | trial. |
| 10:41:01 | 8 | So the only reason that -- you know, the main |
| 10:41:04 | 9 | reason that we're getting into these issues now is because |
| 10:41:07 | 10 | we have this dispute about at trial, will Samsung be able |
| 10:41:14 | 11 | to present Google witnesses without the jury ever learning |
| 10:41:18 | 12 | about the Google interest, or can we -- you know, can |
| 10:41:25 | 13 | Headwater fairly contextualize the Google testimony? |
| 10:41:31 | 14 | THE COURT:  That is what you identified as the |
| 10:41:33 | 15 | first issue, and we will reach that issue. |
| 10:41:36 | 16 | Why should we reach any other issue that's |
| 10:41:39 | 17 | presented in your motion? |
| 10:41:42 | 18 | MR. PICKENS:  So I think the -- well, there's -- |
| 10:41:48 | 19 | there's -- some of the issues presented in the motion are |
| 10:41:51 | 20 | unrelated to discovery, per se.  They're about the witness |
| 10:41:55 | 21 | himself who's coming and the substance of his testimony. |
| 10:41:58 | 22 | We have objections about opinion testimony that we believe |
| 10:42:01 | 23 | he's going to offer, and we also have objections under |
| 10:42:04 | 24 | Rule 37 that because of failures to disclose certain source |
| 10:42:10 | 25 | code and evidence like that, that we don't think it's fair |

10:42:13    1    for the witness to now come and give testimony about things

10:42:17    2    that weren't disclosed earlier.  So that -- I don't know if

10:42:20    3    you were asking about that piece, but that's kind of a

10:42:23    4    separate piece from --

10:42:24    5            THE COURT:  This witness, Mr. Hansen, has been

10:42:28    6    disclosed as a potential witness from the first list of

10:42:35    7    witnesses, hasn't he?

10:42:36    8            MR. PICKENS:  He was disclosed as a may call, yes,

10:42:39    9    absolutely.

10:42:40    10           THE COURT:  So why should I take up now issues

10:42:43    11   that should have been raised about his testimony back last

10:42:47    12   year?

10:42:48    13           MR. PICKENS:  So the -- Mr. Hansen's -- I

10:43:03    14   understand that while Mr. Hansen was disclosed as a may

10:43:06    15   call witness, we understood that as a may call witness,

10:43:11    16   that the parties would likely be designating deposition

10:43:14    17   designation testimony from him.

10:43:16    18           And so that's what the -- one of the disputes we

10:43:20    19   have today is just to go through his deposition

10:43:23    20   designations, and we understood that the pretrial

10:43:25    21   conference was the right place to take up the disputes

10:43:28    22   about the -- sort of the substance of those line-by-line

10:43:33    23   disputes about, you know, exactly the contours of the

10:43:37    24   testimony that's --

10:43:38    25           THE COURT:  Well, how is that part of this -- this

10:43:41  1   motion then?  Obviously, if we're going to take it up in

10:43:45  2   connection with deposition designations, we'll do that.  We

10:43:49  3   don't need a separate motion for that.

10:43:53  4        MR. PICKENS:  So this -- so the -- because the --

10:43:57  5   this is -- there are certain aspects of his testimony which

10:44:02  6   are a violation of -- where a party wants to rely on

10:44:09  7   certain evidence, they have to disclose that in

10:44:14  8   discovery -- they have to disclose their intention to do

10:44:17  9   that under Rule 26.  And then if they fail to do that, then

10:44:21  10  the Rule 37 -- we brought this under Rule 37, because while

10:44:28  11  some of the issues can be taken up just, you know, in the

10:44:30  12  course of his -- particular deposition designations and

10:44:36  13  things like that, there's a bigger picture issue here which

10:44:41  14  is that looking at the designations, we believe that he's

10:44:43  15  coming to testify about code that was not produced.

10:44:46  16       And so we thought that we needed to bring -- now

10:44:49  17  that we know that he's coming and planning to give that

10:44:52  18  testimony, we believe it's important to move now to address

10:44:58  19  the fact that while certainly he can come and talk about

10:45:03  20  the code that was produced that we had notice of, he should

10:45:06  21  not be entitled to come and sort of give testimony about

10:45:11  22  things that we didn't have discovery into.

10:45:14  23       THE COURT:  And those things were raised in his

10:45:17  24  deposition?

10:45:17  25       MR. PICKENS:  Partly, yes.  But I think that it

10:45:22    1    wasn't clear to us that the -- that the witness would be

10:45:29    2    Samsung's primary fact witness and a live witness until

10:45:32    3    later in the disclosure process.  It was primarily at the

10:45:37    4    last pretrial conference that Samsung first manifested

10:45:40    5    that he was actually going to be their primary live

10:45:44    6    witness.

10:45:45    7            And then in the course of meeting and conferring,

10:45:47    8    we started to understand that the plan was for him to come

10:45:52    9    and kind of go -- go well outside of the scope of what's

10:45:57   10    been produced in the case for review.

10:45:59   11            THE COURT:  All right.  Well, I don't believe that

10:46:11   12    that is an adequate basis to raise now in, I guess, late

10:46:23   13    February issues that should have been brought up in

10:46:28   14    December at the pretrial conference.

10:46:31   15            And I'm going to take up this issue about how the

10:46:37   16    jury should learn of Google's financial interest in this

10:46:44   17    case in connection with the testimony of Mr. Hansen.  And I

10:46:53   18    will take up any issues about his deposition, as well, but,

10:47:02   19    otherwise, this motion is denied as untimely.

10:47:05   20            MR. PICKENS:  May I make a request, Your Honor?

10:47:10   21            THE COURT:  Sure.

10:47:10   22            MR. PICKENS:  So I understand that -- so our --

10:47:19   23    there's a couple things in the context of the motion

10:47:25   24    that -- where what's happened is after Samsung filed

10:47:31   25    certain motions to strike and Daubert motions, since then,

10:47:36    1    they've changed their position on the -- you know,

10:47:48    2    essentially Samsung filed motions arguing that they didn't

10:47:51    3    know that Google was even relevant to this case.  And on

10:47:57    4    that basis, they asked for certain relief.

10:48:00    5         But since then, in the course of meeting and

10:48:02    6    conferring and then posing this motion, Samsung has taken a

10:48:06    7    different position, which is that the parties have always

10:48:08    8    known that Google's FCM was accused in this case.

10:48:11    9         And so one aspect of the motion we wanted to --

10:48:15   10    the other reason we felt like we wanted to move for leave

10:48:18   11    to bring this now is because given this change in

10:48:22   12    positions, we think that the Court should consider the new

10:48:28   13    position that Samsung has in evaluating the claims of

10:48:31   14    prejudice that it originally made in Docket Nos. 185 and

10:48:36   15    186.

10:48:36   16         THE COURT:  All right.  Well, those motions have

10:48:41   17    yet to be addressed, I believe.  So the Court will take

10:48:49   18    into account the positions that the parties are taking in

10:48:54   19    other related motions, but I'm -- so unless you have some

10:49:02   20    other point that you wanted to make about that...

10:49:06   21         MR. PICKENS:  Just, you know, our position is that

10:49:11   22    given the change in positions in Docket 346, especially at

10:49:20   23    Pages 3 to 4, that that should be recognized in the context

10:49:26   24    of evaluating the claims of prejudice in Dockets 185 and

10:49:30   25    186.  That was another point that we felt like was a new

| | | |
|---|---|---|
| 10:49:35 | 1 | issue that came to light since all the briefing closed on |
| 10:49:38 | 2 | those other motions, and so we wanted to bring this now to |
| 10:49:42 | 3 | address that.  But that was all I wanted to add. |
| 10:49:45 | 4 | THE COURT:  All right.  Thank you, Mr. Pickens. |
| 10:49:54 | 5 | MR. YANG:  Good morning, Your Honor.  Lance Yang |
| 10:50:09 | 6 | for Samsung. |
| 10:50:10 | 7 | THE COURT:  Good morning. |
| 10:50:11 | 8 | MR. YANG:  So I understand the Court has denied |
| 10:50:16 | 9 | the relief related to striking portions of Samsung's other |
| 10:50:19 | 10 | motions.  But I did want to address just the last thing |
| 10:50:24 | 11 | Headwater raised, which was that we somehow changed our |
| 10:50:27 | 12 | position at the last minute that somehow affects those |
| 10:50:31 | 13 | other motions we filed and the motion to strike. |
| 10:50:34 | 14 | Just to be clear, Samsung at no point has ever |
| 10:50:36 | 15 | claimed that we didn't know that FCM was in the case. |
| 10:50:41 | 16 | That's been clear.  We've filed hundreds of pages on |
| 10:50:44 | 17 | expert reports on this very issue.  The only reason Todd |
| 10:50:47 | 18 | Hansen was deposed was because Google's FCM is in this |
| 10:50:50 | 19 | case. |
| 10:50:50 | 20 | What counsel's referring to is we filed a motion |
| 10:50:56 | 21 | to strike some new expert opinions on infringement that |
| 10:50:59 | 22 | their expert raised for the first time after the close of |
| 10:51:01 | 23 | discovery.  And the arguments Samsung made was that, well, |
| 10:51:05 | 24 | look, we haven't had an opportunity to get discovery into |
| 10:51:09 | 25 | these new theories, including discovery from Google. |

10:51:12   1   That's definitely not saying we had no opportunity to get

10:51:15   2   discovery from Google or we didn't know FCM was in the

10:51:18   3   case.  It was merely pointing out that these new theories

10:51:22   4   we had no opportunity to explore from Google or otherwise

10:51:27   5   because they're brand new theories not disclosed during

10:51:32   6   discovery.  So I just wanted to raise that first.

10:51:33   7        Now, Your Honor, I wanted to get to Your Honor's

10:51:35   8   question regarding the jury instruction that Headwater is

10:51:37   9   now seeking, unless you have questions about other things.

10:51:40   10       THE COURT:  No, that is what I'd like to move to.

10:51:43   11       MR. YANG:  Okay.  So, first of all, Your Honor, we

10:51:45   12  don't think it's appropriate that any of this should be

10:51:48   13  raised with Mr. Hansen, the reason being that Mr. Hansen

10:51:51   14  already testified that he has no knowledge of any contracts

10:51:57   15  between Samsung or Google or the specific MADA that they're

10:52:00   16  going to put on the exhibit list in this case, right?  So

10:52:03   17  he has no personal knowledge and no foundation to ask for

10:52:06   18  it.

10:52:06   19       They've argued that he was a corporate

10:52:07   20  representative of Google during that deposition.  Todd

10:52:11   21  Hansen was a corporate representative of Google on

10:52:14   22  functionality related to FCM.

10:52:16   23       We expressly, during meet and confers and again at

10:52:19   24  the deposition, confirmed that he was not going to be a

10:52:22   25  30(b)(6) witness on the MADA or any contract agreements.

| 10:52:26 | 1 | That's why he didn't know anything about them, and that's |
| 10:52:29 | 2 | why he couldn't testify about them either at his deposition |
| 10:52:31 | 3 | or at trial.  So that's the first issue with respect to |
| 10:52:34 | 4 | Mr. Hansen, Your Honor. |
| 10:52:35 | 5 | Then the issue becomes, well, Headwater has argued |
| 10:52:42 | 6 | that they have no other way to raise this issue at trial. |
| 10:52:45 | 7 | Well, they certainly could have asked during the deposition |
| 10:52:46 | 8 | of Samsung's 30(b)(6) witness on the MADA.  They had two |
| 10:52:51 | 9 | depositions of that witness.  They never asked him about |
| 10:52:54 | 10 | anything related to Google's defense obligations under that |
| 10:52:58 | 11 | contract or anything related to any alleged |
| 10:53:01 | 12 | indemnification. |
| 10:53:02 | 13 | THE COURT:  All right.  Mr. Yang, how do you |
| 10:53:06 | 14 | recommend that the jury be informed about the relationship |
| 10:53:10 | 15 | between Google and Samsung with respect to this case? |
| 10:53:14 | 16 | MR. YANG:  So Samsung's recommendation is to |
| 10:53:17 | 17 | follow what the Court did in the Harden case.  So what the |
| 10:53:22 | 18 | Harden case laid out was that the witness, regardless of |
| 10:53:26 | 19 | who it is, whether it's a Samsung witness or Google |
| 10:53:28 | 20 | witness, can be asked about the commercial relationship as |
| 10:53:32 | 21 | far as Samsung being a customer of Google, and at a high |
| 10:53:37 | 22 | level, they can talk about how maybe your employer would |
| 10:53:40 | 23 | like to keep that agreement -- or that relationship on good |
| 10:53:44 | 24 | terms, right?  That's the scope of it.  That's what we |
| 10:53:46 | 25 | would recommend here. |

| | | |
|---|---|---|
| 10:53:47 | 1 | They could do that for Mr. Hansen.  Mr. Hansen |
| 10:53:49 | 2 | testified during his deposition that he's aware that |
| 10:53:53 | 3 | Samsung is a customer that uses FCM.  He's actually |
| 10:53:56 | 4 | interfaced with Samsung engineers on that issue.  So he |
| 10:54:01 | 5 | is -- no information regarding the agreements themselves, |
| 10:54:04 | 6 | but the fact that there's a relationship that exists and a |
| 10:54:07 | 7 | commercial relationship, Mr. Hansen could be cross-examined |
| 10:54:10 | 8 | on, like he was at his deposition. |
| 10:54:12 | 9 | And if they want to ask some other witnesses, |
| 10:54:16 | 10 | Samsung or otherwise, about this relationship, despite the |
| 10:54:19 | 11 | fact that they didn't do so during the depositions they |
| 10:54:22 | 12 | had, they're free to do that, as well. |
| 10:54:25 | 13 | THE COURT:  Do you agree that Google has a |
| 10:54:29 | 14 | financial interest in the outcome of this case based on |
| 10:54:34 | 15 | their relationship with Samsung? |
| 10:54:36 | 16 | MR. YANG:  Well, see, therein lies the problem, |
| 10:54:39 | 17 | Your Honor, because that's -- that language is misleading, |
| 10:54:42 | 18 | and, in fact, it's imprecise. |
| 10:54:43 | 19 | So if you look at the agreements that Your Honor |
| 10:54:45 | 20 | asked for earlier this morning, ███████████████████ |
| 10:54:51 | 21 | ████████████████████████████████████████████ |
| 10:54:56 | 22 | ██████████████████████████████  ████████ |
| 10:55:01 | 23 | █████████████████████  depending on how you view that and |
| 10:55:04 | 24 | depending on how someone may interpret a financial |
| 10:55:08 | 25 | interest, may fall within that, and it may not, right? |

| | | |
|---|---|---|
| 10:55:11 | 1 | So the issue and what we want to make sure we get |
| 10:55:15 | 2 | clear of, Your Honor, is trying to suggest that there's |
| 10:55:16 | 3 | some other financial interest beyond what the agreement |
| 10:55:17 | 4 | itself says, and the agreement is simply ████████████ |
| 10:55:20 | 5 | ████████████ -- |
| 10:55:24 | 6 | THE COURT:  You know, that's not an accurate |
| 10:55:28 | 7 | statement. ████████████ |
| 10:55:35 | 8 | MR. YANG:  So, Your Honor, just to be clear -- and |
| 10:55:38 | 9 | we didn't want to get into this before in the previous |
| 10:55:42 | 10 | pretrial conference.  We would -- it was covered by common |
| 10:55:45 | 11 | interest privilege. |
| 10:55:46 | 12 | ████████████ |
| 10:55:48 | 13 | ████████████ |
| 10:55:50 | 14 | ████████████ |
| 10:55:54 | 15 | ████████████ |
| 10:55:56 | 16 | THE COURT:  And, well, I don't think that's a fair |
| 10:55:58 | 17 | statement.  The agreement itself constitutes a discussion |
| 10:56:04 | 18 | of that. |
| 10:56:05 | 19 | MR. YANG:  But the agreement is based on the facts |
| 10:56:07 | 20 | of the case.  If you look -- of the particular case that's |
| 10:56:10 | 21 | addressed.  If you look at the agreement, there are many |
| 10:56:12 | 22 | caveats and things that have to be met before ████████████ |
| 10:56:15 | 23 | ████████████ |
| 10:56:18 | 24 | ████████████ |
| 10:56:21 | 25 | ████████████, right?  And so there's a |

| | | |
|---|---|---|
| 10:56:25 | 1 | dispute -- I shouldn't say dispute because it hasn't been |
| 10:56:28 | 2 | discussed. ███████████████████████████████████ |
| 10:56:30 | 3 | ████████████████████████████████ |
| 10:56:33 | 4 | THE COURT:  And doesn't that open question amount |
| 10:56:36 | 5 | to a financial interest? |
| 10:56:37 | 6 | MR. YANG:  I mean, Your Honor, I think -- the |
| 10:56:47 | 7 | language that's more precise that I think is better suited |
| 10:56:51 | 8 | in this case is Google has agreed to help with the defense |
| 10:56:55 | 9 | of one of the patents in this case related to products with |
| 10:56:59 | 10 | FCM. |
| 10:57:00 | 11 | THE COURT:  I think that's a lot more specific |
| 10:57:02 | 12 | information, but if you think that's what the jury should |
| 10:57:06 | 13 | be told, that Google has agreed to help with the defense. |
| 10:57:11 | 14 | MR. YANG:  Yeah, I think -- I mean -- yeah, Your |
| 10:57:14 | 15 | Honor, I think that's what we'd prefer. |
| 10:57:16 | 16 | Financial interests just opens the door to all |
| 10:57:19 | 17 | sorts of things that we, as you know, in the motions to |
| 10:57:21 | 18 | strike and the limines we're trying to move away from, for |
| 10:57:25 | 19 | example, the revenue shared between Google and Samsung.  We |
| 10:57:28 | 20 | just don't want it to get into a sideshow where we talk |
| 10:57:31 | 21 | about a lot of money or big numbers, right?  So we're |
| 10:57:34 | 22 | trying to avoid that situation. |
| 10:57:36 | 23 | So really the factual accurate statement is that |
| 10:57:38 | 24 | Google has agreed to help with the defense of one of the |
| 10:57:42 | 25 | patents -- in this case it's the '733 patent -- with |

10:57:45  1  respect to Samsung products with FCM.

10:57:49  2       THE COURT:  Well, I don't know that that kind of

10:57:54  3  limitation to one of the patents captures it.  But I think

10:57:58  4  that that comes close.

10:58:01  5       MR. YANG:  Can I take a step back, though, Your

10:58:04  6  Honor?

10:58:04  7       THE COURT:  You may.

10:58:05  8       MR. YANG:  I don't even think we should get to the

10:58:07  9  point where this becomes a jury instruction, because I

10:58:11  10  don't think it warrants that, right?  A jury instruction

10:58:13  11  has the force and the voice of the judge behind it.

10:58:16  12       And in this case, simply there's a Google witness

10:58:19  13  coming to testify on behalf of both parties regarding the

10:58:24  14  accused functionality and the prior art --

10:58:26  15       THE COURT:  You know, and that is exactly the

10:58:28  16  problem, that you want the jury to think that this Google

10:58:32  17  witness is here on behalf of both the parties to present

10:58:36  18  unbiased testimony.  And the truth is that his employer has

10:58:43  19  a very definite interest in one of the parties and is

10:58:49  20  opposed to the other.

10:58:50  21       MR. YANG:  I completely agree, Your Honor, which

10:58:53  22  is why I think the guidance in Harden is the right path,

10:58:56  23  right?

10:58:57  24       There the Court stated -- and this is a quote --

10:59:00  25  witnesses can be cross-examined about the fact that he

10:59:03    1    understands, as an employee of Google, his employer has a

10:59:06    2    relationship -- a business relationship with Samsung and

10:59:10    3    his employer would, all other things being equal, to prefer

10:59:14    4    to keep that good relationship with Samsung.

10:59:16    5        THE COURT:  And the record in Harden was not

10:59:20    6    anywhere near what the record is here in terms of the

10:59:24    7    interest that Google has in the outcome.

10:59:26    8        MR. YANG:  Your Honor, maybe you could be more

10:59:30    9    clear, because I think it's actually very analogous.  So in

10:59:34   10    the argument in that case --

10:59:35   11        THE COURT:  There was no indemnification agreement

10:59:39   12    in evidence in that case.

10:59:40   13        MR. YANG:  Well, I don't think that's right, Your

10:59:42   14    Honor.

10:59:42   15        THE COURT:  I do.

10:59:43   16        MR. YANG:  Well, the Plaintiff argued that there's

10:59:45   17    an indemnification agreement in the very pages for this MIL

10:59:49   18    which is what they're trying to get away from.

10:59:49   19        THE COURT:  The Plaintiff made an argument about

10:59:51   20    that, but it was at that point unresolved.

10:59:55   21        MR. YANG:  I'm not sure that's what the decision

10:59:59   22    turned on, Your Honor.  And I don't know that that's a

11:00:02   23    distinction that matters here, although I take it

11:00:06   24    Your Honor does, so I want to make sure I get the right

11:00:09   25    response here that Your Honor is looking for.

11:00:11  1          The agreements between Samsung and Google in this

11:00:15  2  case should have no relevance to the outcome of this case,

11:00:18  3  just like they would have in Harden if there was an

11:00:20  4  agreement in evidence.

11:00:22  5          Now, the interest here is bias, right, bias of the

11:00:26  6  witness.  And we're trying to get the bias.

11:00:26  7          THE COURT:  Yes, we --

11:00:30  8          MR. YANG:  And the bias here, like the Court said

11:00:32  9  in Harden, should not go to the point where you talk about

11:00:35  10  a case-specific, dispute-specific indemnification contract

11:00:40  11  or enforceable agreement between the parties in the case,

11:00:44  12  right?

11:00:44  13          THE COURT:  And I obviously agree with that.  And

11:00:47  14  I am not suggesting that the indemnification agreement

11:00:52  15  needs to go before the jury.  But I am also not going to

11:00:56  16  allow your side to give the impression that Google is a

11:01:02  17  disinterested bystander.

11:01:04  18          MR. YANG:  I don't think that's going to happen,

11:01:08  19  Your Honor.  When --

11:01:10  20          THE COURT:  I don't agree with that.

11:01:14  21          MR. YANG:  Google and Samsung, in this case, the

11:01:16  22  jury will know from the outset that Samsung's phone --

11:01:20  23  phones use Google FCM, and they're partners in that.  In

11:01:24  24  fact, Samsung's phone uses Android, which is also provided

11:01:28  25  by Google.  So there -- from the outset of the case, the

| | | |
|---|---|---|
| 11:01:30 | 1 | jurors will know they're partners in this, right? |
| 11:01:33 | 2 | So I don't think a reasonable juror would think |
| 11:01:36 | 3 | that anyone speaking on behalf of a witness being called by |
| 11:01:40 | 4 | Samsung would necessarily be unbiased, especially someone |
| 11:01:44 | 5 | from Google.  I just don't think we need to go to the extra |
| 11:01:46 | 6 | step of having a jury instruction which no other -- no |
| 11:01:49 | 7 | other witness will have, right?  You don't have -- you |
| 11:01:51 | 8 | don't have the jury instruction saying experts being paid |
| 11:01:54 | 9 | X number of -- you know, XYZ times, or they've been hired |
| 11:01:58 | 10 | by the counsel XYZ times, so you have to, you know, |
| 11:02:02 | 11 | discount their credibility. |
| 11:02:04 | 12 | THE COURT:  Part of the problem is you have |
| 11:02:05 | 13 | produced a witness who testifies that he has no knowledge |
| 11:02:08 | 14 | of any relationship between his employer and your client. |
| 11:02:14 | 15 | MR. YANG:  Well, Your Honor, that's where I think |
| 11:02:17 | 16 | the -- we disagree, and I think that's the crux of the |
| 11:02:20 | 17 | matter. |
| 11:02:20 | 18 | He has not testified to that.  Mr. Hansen has not |
| 11:02:23 | 19 | testified to that.  If you look at the transcripts we cite, |
| 11:02:28 | 20 | what he says is -- and I can show you that if you -- you |
| 11:02:31 | 21 | like, Your Honor, but in summary -- and we cite this in our |
| 11:02:34 | 22 | brief -- what he says is, is that he's aware that Samsung |
| 11:02:37 | 23 | is an OEM customer for FCM.  And, in fact, he's had |
| 11:02:42 | 24 | meetings with Samsung to troubleshoot FCM.  So he certainly |
| 11:02:45 | 25 | knows there's a relationship between the two. |

|         |    |                                                                        |
|---------|----|------------------------------------------------------------------------|
| 11:02:47 | 1  | What he doesn't know about is the contracts.                          |
| 11:02:49 | 2  | That's what he doesn't know about.  And we -- Google never            |
| 11:02:54 | 3  | offered a 30(b)(6) witness on the contracts and Headwater              |
| 11:02:58 | 4  | knew that and they never pushed it.                                    |
| 11:03:00 | 5  | Headwater, instead, chose to push that side of                        |
| 11:03:02 | 6  | their discovery through Samsung, and they had a 30(b)(6)               |
| 11:03:06 | 7  | witness twice on the MADA.  And they never asked once about            |
| 11:03:10 | 8  | these provisions.  That's how we got here, Your Honor.                 |
| 11:03:13 | 9  | THE COURT:  Okay.  Well, this is your opportunity                      |
| 11:03:20 | 10 | to have input into the ruling on this, which is going to               |
| 11:03:25 | 11 | require that the jury be informed something about the                  |
| 11:03:31 | 12 | relationship.                                                          |
| 11:03:34 | 13 | MR. YANG:  Yes.  And, Your Honor, I think what I                       |
| 11:03:38 | 14 | would offer is what I provided earlier, which is that if               |
| 11:03:41 | 15 | we're going down the route of a jury instruction, then we             |
| 11:03:44 | 16 | limit it to Google has agreed to help with a part of                   |
| 11:03:48 | 17 | Samsung's defense in this case related to Headwater's                   |
| 11:03:50 | 18 | allegations against FCM on Samsung's products for the '733             |
| 11:03:55 | 19 | patent.                                                                 |
| 11:04:23 | 20 | THE COURT:  All right.  Now, Mr. Yang, tell me, is                     |
| 11:04:27 | 21 | Samsung taking the position that Mr. Hansen will definitely            |
| 11:04:32 | 22 | appear live at the trial of this matter?                               |
| 11:04:34 | 23 | MR. YANG:  Yes.  Absent exigent circumstances,                        |
| 11:04:39 | 24 | Your Honor, that is the plan, which is what we indicated               |
| 11:04:43 | 25 | during the December 16th pretrial conference, as well.                 |

| | | |
|---|---|---|
| 11:04:46 | 1 | THE COURT:  And the exigent circumstances you're |
| 11:04:49 | 2 | referring to would be something beyond Samsung's control? |
| 11:04:54 | 3 | MR. YANG:  I'm sorry, Your Honor.  Can you repeat |
| 11:04:56 | 4 | that? |
| 11:04:57 | 5 | THE COURT:  I say when you say exigent |
| 11:04:59 | 6 | circumstances, are you saying it would have to be something |
| 11:05:02 | 7 | beyond Samsung's control? |
| 11:05:04 | 8 | MR. YANG:  Yes, Your Honor. |
| 11:05:06 | 9 | For example, if he's somehow unable to come.  But |
| 11:05:08 | 10 | the plan is for us to call him live, and that's how we're |
| 11:05:12 | 11 | preparing. |
| 11:05:12 | 12 | THE COURT:  All right.  Thank you, Mr. Yang. |
| 11:05:15 | 13 | MR. YANG:  Your Honor -- oh, yes, Your Honor, and |
| 11:05:31 | 14 | just so the record is clear, I think I mentioned this |
| 11:05:34 | 15 | earlier, we're not waiving any common interest privilege |
| 11:05:38 | 16 | here, Your Honor, by providing the proposed construction. |
| 11:05:41 | 17 | I just want to be clear on that record so it's not -- |
| 11:05:44 | 18 | THE COURT:  I don't consider that to be a waiver. |
| 11:05:46 | 19 | MR. YANG:  Fair enough, Your Honor.  That's all I |
| 11:05:49 | 20 | wanted to confirm.  Thank you. |
| 11:05:51 | 21 | THE COURT:  Okay.  Thank you, Mr. Yang. |
| 11:05:54 | 22 | Mr. Pickens? |
| 11:05:56 | 23 | MR. PICKENS:  Yes, Your Honor. |
| 11:06:06 | 24 | THE COURT:  Two things, Mr. Pickens.  One, I want |
| 11:06:08 | 25 | to give you an opportunity to comment on the proposal that |

| | | |
|---|---|---|
| 11:06:13 | 1 | Mr. Yang put forth about a jury instruction. |
| 11:06:19 | 2 | And the second thing is I want to say that I don't |
| 11:06:26 | 3 | believe that the deposition of Mr. Hansen should be used at |
| 11:06:30 | 4 | all if -- other than for possible impeachment if Mr. Hansen |
| 11:06:36 | 5 | is going to appear live.  And so I'm giving you an |
| 11:06:43 | 6 | opportunity to comment on that, as well. |
| 11:06:47 | 7 | MR. PICKENS:  Thank you very much, Your Honor. |
| 11:06:48 | 8 | So, first of all, we just learned during |
| 11:06:56 | 9 | Mr. Yang's discussion more information than has been |
| 11:06:59 | 10 | disclosed to Headwater for the entirety of this litigation. |
| 11:07:05 | 11 | This is -- after sort of trickling out this |
| 11:07:08 | 12 | agreement toward the very, very tail end of discovery, you |
| 11:07:12 | 13 | know, we had never been informed before that -- any of |
| 11:07:17 | 14 | those details that Mr. Yang just offered about the defense |
| 11:07:22 | 15 | collaboration, let alone that there's some sort of |
| 11:07:27 | 16 | patent-specific aspects to this, and so we're trying to |
| 11:07:30 | 17 | digest that. |
| 11:07:33 | 18 | But the -- I'm really concerned about it because |
| 11:07:36 | 19 | among other reasons, Samsung and Google are bringing |
| 11:07:41 | 20 | Mr. Hansen to invalidate all three patents, not just one. |
| 11:07:47 | 21 | And their relationship and interest in doing that, I don't |
| 11:07:53 | 22 | see how the line drawing is being made there. |
| 11:07:59 | 23 | And particularly as -- we don't -- you know, this |
| 11:08:03 | 24 | is the first we're hearing of that, but we don't under -- |
| 11:08:07 | 25 | given our infringement allegations, it just surprises me |

11:08:10    1    also that there would be a division like that and just

11:08:14    2    given their prior art theories.

11:08:16    3           So on the proposal that Mr. Yang had, I think --

11:08:24    4    we think that -- I think it would make more sense to

11:08:33    5    just -- at the very least, just talk about how they are

11:08:36    6    collaborating and not limit it to, like, a particular

11:08:40    7    patent, given that they're going to elicit testimony from

11:08:44    8    Mr. Hansen to invalidate all of them and on

11:08:47    9    non-infringement on all of them.

11:08:47   10           A second issue is I think that the reason why

11:08:56   11    they're working together, it's not out of the goodness of

11:09:00   12    Google's heart.  It is because there's a financial interest

11:09:03   13    here.

11:09:03   14           So I think it makes sense to also let the jury

11:09:07   15    know not only that they're working together to defend but,

11:09:12   16    you know, why.  It's because there is an actual financial

11:09:16   17    interest of some kind and an exposure for Google

11:09:22   18    monetarily.

11:09:22   19           It's not -- and I wanted to briefly also

11:09:26   20    distinguish the Harden case.  I totally agreed with

11:09:30   21    Your Honor's understanding.  I went back and read through

11:09:33   22    the pleadings in that case, and what I also saw in that

11:09:36   23    case was that I think a lot of the functionality at issue

11:09:40   24    there was Android functionality.  That's just different

11:09:43   25    from this.

| | | |
|---|---|---|
| 11:09:44 | 1 | This is -- so there are Google -- Google provides |
| 11:09:48 | 2 | a lot of things, but the technology at issue in this case |
| 11:09:52 | 3 | is different in kind from Android because it's actually |
| 11:09:56 | 4 | part of the Google Mobile Services that they have these |
| 11:10:01 | 5 | very specific detailed contracts with this -- ███████ |
| 11:10:05 | 6 | ████████████████████████████████████████████████ |
| 11:10:09 | 7 | ██████ and other things that are implicated here that |
| 11:10:13 | 8 | are totally different from a case where you're just |
| 11:10:15 | 9 | talking about someone who happens to have an Android |
| 11:10:18 | 10 | device. |
| 11:10:18 | 11 | THE COURT:  You know, the -- I understand that |
| 11:10:22 | 12 | argument, but what we're dealing with here is simply the |
| 11:10:29 | 13 | need for the jury to know that the witness is not |
| 11:10:31 | 14 | disinterested.  And it -- I don't think it matters what the |
| 11:10:36 | 15 | details of the contractual relationship between the parties |
| 11:10:39 | 16 | is. |
| 11:10:44 | 17 | And I agree with you that I don't think that the |
| 11:10:45 | 18 | instructions should be limited to a particular patent in |
| 11:10:49 | 19 | this case, but -- so what I am really considering is the |
| 11:10:59 | 20 | request that it be framed in terms of ████████████████ |
| 11:11:03 | 21 | ██████████████████████████████ or a statement of |
| 11:11:09 | 22 | Google having a financial interest in the outcome of the |
| 11:11:14 | 23 | case. |
| 11:11:17 | 24 | And I think I understand the positions of both |
| 11:11:21 | 25 | sides on that, and I'll take those into account in figuring |

| | | |
|---|---|---|
| 11:11:25 | 1 | out what my ruling will be. |
| 11:11:34 | 2 | But talk to me about how you would intend to use |
| 11:11:39 | 3 | the deposition of Mr. Hansen in view of the assurance that |
| 11:11:47 | 4 | he'll appear live. |
| 11:11:48 | 5 | MR. PICKENS:  Yes, Your Honor. |
| 11:12:04 | 6 | Apologies for the pause there. |
| 11:12:06 | 7 | So generally speaking, we support the goal of |
| 11:12:12 | 8 | efficiency, and so I -- just speaking personally, I've done |
| 11:12:19 | 9 | trials in the past where when a witness is coming live to |
| 11:12:22 | 10 | testify, the parties agree that -- and they use the live |
| 11:12:28 | 11 | testimony rather than additionally play the deposition |
| 11:12:32 | 12 | designations. |
| 11:12:33 | 13 | However -- so generally speaking, we're -- we're |
| 11:12:39 | 14 | very much interested in the efficiency benefit of sticking |
| 11:12:43 | 15 | to, you know, one or the other, for example. |
| 11:12:46 | 16 | But the problem is that in this court, our |
| 11:12:55 | 17 | understanding is that the expert witnesses have already |
| 11:12:59 | 18 | given their opinions relying on the deposition testimony. |
| 11:13:05 | 19 | And the prejudice that can result is that if an expert |
| 11:13:11 | 20 | witness gets up and says, you know, I relied on this |
| 11:13:15 | 21 | deposition designation -- on this deposition testimony to |
| 11:13:18 | 22 | form my opinion, here's what the witness said, and then |
| 11:13:20 | 23 | they publish that testimony that they relied on to the |
| 11:13:25 | 24 | jury, what we've encountered in this court is that the |
| 11:13:29 | 25 | Court doesn't want the jury to see the deposition testimony |

11:13:32  1  that the experts relied on and doesn't allow that testimony

11:13:36  2  to be published to the jury as supporting of the expert's

11:13:40  3  opinion, and then you get into a really problematic

11:13:43  4  situation where the expert is sort of unable to tell the

11:13:49  5  jury about the evidence that he considered to support his

11:13:53  6  opinion.

11:13:53  7       And so the only concern that we have with not

11:13:58  8  having any of the deposition designations being used is --

11:14:05  9  our concern would be that it would restrict the expert

11:14:08  10  witnesses from having a full and complete explanation to

11:14:15  11  the jury about what they actually had when they wrote their

11:14:17  12  reports and they formed their opinions.

11:14:20  13       And so what we would ask is that if the deposition

11:14:24  14  designations are not going to be played, then we would like

11:14:28  15  the permission to display the deposition testimony that the

11:14:33  16  expert cited in their report and relied on in the context

11:14:38  17  of the expert's examination so that they can give a full

11:14:42  18  picture to the jury about how they came to their

11:14:44  19  conclusions and what the state of play was at the time they

11:14:48  20  wrote their reports.

11:14:48  21       We would be -- we understood that we had to

11:14:52  22  designate the deposition testimony and play it regardless

11:14:56  23  of whether a witness is coming or not.  This was just our

11:15:00  24  understanding from the last trial that we had to designate

11:15:02  25  it and play it before the expert got up, or we can't show

| | | |
|---|---|---|
| 11:15:05 | 1 | any of that testimony.  That was our understanding of the |
| 11:15:07 | 2 | rulings in that case, and we stuck by those in that case. |
| 11:15:11 | 3 | But in this case, we would ask that, you know, if |
| 11:15:14 | 4 | we're going to just go with just the live testimony, then |
| 11:15:16 | 5 | our expert -- if we're calling our expert in our case |
| 11:15:20 | 6 | because they're going to call this witness in theirs, then |
| 11:15:23 | 7 | our expert should at least be able to publish the |
| 11:15:27 | 8 | deposition testimony that he considered. |
| 11:15:29 | 9 | THE COURT:  You know, is your argument about when |
| 11:15:31 | 10 | the witness, in this case, Mr. Hansen, will testify?  I |
| 11:15:38 | 11 | mean, because certainly if you need that witness in your |
| 11:15:44 | 12 | case-in-chief, that's something that we can figure out how |
| 11:15:49 | 13 | to accommodate.  But if you're just talking about the words |
| 11:15:57 | 14 | he used in his deposition versus the words he's going to |
| 11:16:01 | 15 | use at trial, is that -- |
| 11:16:03 | 16 | MR. PICKENS:  They're both -- both are relevant |
| 11:16:07 | 17 | here.  I mean, certainly -- so on the first issue, I think |
| 11:16:14 | 18 | that calling him out of turn, it can be very confusing for |
| 11:16:20 | 19 | the jury because it suggests that he's some sort of neutral |
| 11:16:24 | 20 | or that he's here to help us, when, in fact, he's really |
| 11:16:29 | 21 | here for Samsung and Google and not to defend against |
| 11:16:33 | 22 | Headwater's allegations. |
| 11:16:34 | 23 | But I think some of that can be addressed through |
| 11:16:37 | 24 | an appropriate instruction if we're permitted to call the |
| 11:16:40 | 25 | witness in our case, even though he's adverse. |

| | | |
|---|---|---|
| 11:16:45 | 1 | But I do think the other issue -- I do have a |
| 11:16:48 | 2 | concern about that because if the witness -- I just think |
| 11:16:52 | 3 | that the expert should be free to explain, you know, this |
| 11:16:56 | 4 | is the testimony I relied on.  And I'm afraid that having |
| 11:17:01 | 5 | the witness -- that, like, basically excluding all the |
| 11:17:06 | 6 | deposition testimony just because the witness is coming |
| 11:17:10 | 7 | live, I feel like that unfairly prejudices the party who's |
| 11:17:16 | 8 | presenting an expert who's going to say this is what I |
| 11:17:19 | 9 | considered in forming my opinion, I relied on this, this |
| 11:17:22 | 10 | was what the testimony was.  And, like, not allowing them |
| 11:17:25 | 11 | to do that, I do think is prejudicial to the presentation |
| 11:17:29 | 12 | of that expert and the facts that they relied on to form |
| 11:17:33 | 13 | their opinion. |
| 11:17:34 | 14 | THE COURT:  All right. |
| 11:17:46 | 15 | MR. PICKENS:  And apologies, Your Honor, if I may. |
| 11:17:53 | 16 | So just going back to the instruction issue, I think that |
| 11:18:02 | 17 | the -- another way to potentially address the issue about |
| 11:18:12 | 18 | the financial interest versus the defense is that in this |
| 11:18:18 | 19 | case, Google and Samsung have not only this Mobile |
| 11:18:26 | 20 | Application Distribution Agreement, but it incorporates by |
| 11:18:30 | 21 | reference a revenue share that covers the technologies in |
| 11:18:33 | 22 | this case. |
| 11:18:34 | 23 | And so if the Court wants to -- if the Court feels |
| 11:18:38 | 24 | like that is a more straightforward way to -- you know, |
| 11:18:43 | 25 | Mr. Yang had some concerns that that financial interest is |

| | | |
|---|---|---|
| 11:18:47 | 1 | vague or something like that.  And so it would -- it could |
| 11:18:49 | 2 | be a solution to give a more concrete explanation that |
| 11:18:52 | 3 | Google and Samsung have a revenue sharing that covers the |
| 11:18:55 | 4 | technologies at issue in this case.  Google's agreed that |
| 11:18:57 | 5 | it can help Samsung defend the litigation, and ▮▮▮▮▮▮ |
| 11:19:01 | 6 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 11:19:06 | 7 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 11:19:07 | 8 |           THE COURT:  All right.  And I understand that |
| 11:19:10 | 9 | request. |
| 11:19:17 | 10 |           MR. PICKENS:  Thank you, Your Honor. |
| 11:19:18 | 11 |           THE COURT:  All right.  Mr. Yang, let me hear from |
| 11:19:25 | 12 | you about whether Samsung objects to the calling of |
| 11:19:33 | 13 | Mr. Hansen during the Plaintiff's case-in-chief to |
| 11:19:37 | 14 | accommodate their need for his testimony. |
| 11:19:40 | 15 |           MR. YANG:  Your Honor, I'll have to check with my |
| 11:19:43 | 16 | client on that particular point.  I do agree with |
| 11:19:46 | 17 | Your Honor, though, that if a witness is coming live, they |
| 11:19:50 | 18 | shouldn't -- their deposition testimony shouldn't be |
| 11:19:54 | 19 | played.  They should just be examined live.  But I will |
| 11:19:58 | 20 | check, Your Honor, with my client on whether or not |
| 11:20:00 | 21 | Mr. Hansen will be testifying in their case-in-chief. |
| 11:20:06 | 22 |           THE COURT:  All right.  Well, I will consider |
| 11:20:08 | 23 | making that a part of the ruling that he be provided during |
| 11:20:15 | 24 | their case-in-chief if they make that request but -- and if |
| 11:20:24 | 25 | you have further argument on the issue of the jury |

11:20:26    1    instruction, go ahead and tell me.

11:20:27    2        MR. YANG:  Yes, Your Honor.

11:20:28    3        Just on -- briefly on the point regarding whether

11:20:32    4    or not Google's agreement to help is limited to one patent,

11:20:35    5    Your Honor, without waiving common interest privilege here,

11:20:40    6    I'm willing -- I think Samsung would be willing to show you

11:20:43    7    the correspondence in camera between Samsung and Google

11:20:46    8    that addresses that very point.  I just don't -- the reason

11:20:50    9    I'm offering this is, Your Honor, I don't want whatever

11:20:54   10    instruction that comes to be inaccurate.  So I was

11:20:57   11    proposing that Your Honor has at least that piece of

11:20:59   12    information to review in camera.

11:21:01   13        THE COURT:  The statement would not be inaccurate

11:21:07   14    to say that Samsung has agreed to help -- I mean, that

11:21:11   15    Google has agreed to help Samsung with the defense of this

11:21:14   16    case whether their agreement is, by your view, limited to

11:21:20   17    one patent or not.

11:21:21   18        Do you dispute that the testimony of Mr. Hansen

11:21:25   19    relates to validity of all three patents?

11:21:31   20        MR. YANG:  It does, Your Honor.  I don't dispute

11:21:34   21    that.

11:21:34   22        THE COURT:  All right.  So how is that not

11:21:35   23    offering help as to all three patents?

11:21:40   24        MR. YANG:  Oh, I guess, Your Honor, we have a -- I

11:21:44   25    was taking the more legal definition of what it means to

| | | |
|---|---|---|
| 11:21:47 | 1 | help in the defense.  And Google has agreed to help in the |
| 11:21:51 | 2 | defense under the agreement for one patent. |
| 11:21:53 | 3 | I see what Your Honor is saying as the broader |
| 11:21:56 | 4 | point that Mr. Hansen is there to talk about prior art |
| 11:21:59 | 5 | that's invalid to all three patents.  I just don't know |
| 11:22:02 | 6 | that -- Your Honor, that interpretation is going to be what |
| 11:22:04 | 7 | the jury walks away with, if they hear that language. |
| 11:22:08 | 8 | If the jury hears that language and it's not |
| 11:22:10 | 9 | limited to one patent, they may walk away with the |
| 11:22:12 | 10 | impression that Google has agreed to help defend all three |
| 11:22:15 | 11 | patents. |
| 11:22:16 | 12 | THE COURT:  And you're saying there have been |
| 11:22:22 | 13 | specific conversations between Google and Samsung about one |
| 11:22:24 | 14 | of the patents? |
| 11:22:25 | 15 | MR. YANG:  Yes, on the issue of whether or not |
| 11:22:28 | 16 | it's one, two, or three, or whatever it may be.  There -- |
| 11:22:33 | 17 | there's documentation I can show you, Your Honor, in camera |
| 11:22:35 | 18 | if you would like to see it. |
| 11:22:36 | 19 | THE COURT:  No, I just -- my recollection was that |
| 11:22:40 | 20 | you indicated that there had not been discussions. |
| 11:22:43 | 21 | MR. YANG:  What I was saying is ███████████████ |
| 11:22:46 | 22 | ████████████████████████████████████████████ |
| 11:22:49 | 23 | ████████████████████ |
| 11:22:52 | 24 | THE COURT:  All right.  I think I understand where |
| 11:22:59 | 25 | the parties are. |

11:22:59   1          MR. YANG:  Okay.  Your Honor, thank you.

11:23:01   2          THE COURT:  Thank you.

11:23:01   3          The next topic was the amendments to the pretrial

11:23:08   4  order.

11:23:11   5          Does either side have amendments they want to

11:23:14   6  offer.

11:23:18   7          MR. MIRZAIE:  Thank you, Your Honor.

11:23:21   8          Yes, Your Honor, Headwater has some stipulations

11:23:25   9  and amendments to add to the pretrial order and to

11:23:29  10  represent to the Court which should help significantly

11:23:33  11  streamline some issues before this Court and for the jury

11:23:35  12  trial.

11:23:36  13          We thought it's best to raise these in the context

11:23:40  14  of the JPTO because these stipulations are not ones that

11:23:47  15  should go to the jury, but, instead, are ones that should

11:23:49  16  inform sort of the scope of the jury trial and also motions

11:23:52  17  before this Court.

11:23:53  18          Admittedly, our email to the Court was

11:23:55  19  non-specific.  That was only because there was a dispute

11:23:59  20  between the parties as to what specificity could be added

11:24:03  21  of Headwater's potential stipulations.

11:24:06  22          THE COURT:  Well --

11:24:07  23          MR. MIRZAIE:  So the first --

11:24:08  24          THE COURT:  -- Mr. Mirzaie, to me, a stipulation

11:24:11  25  is by definition something agreed to by both sides?

| | | |
|---|---|---|
| 11:24:15 | 1 | MR. MIRZAIE:  Yes, Your Honor.  But in this case, |
| 11:24:17 | 2 | several of the stipulations, as you'll see, are just |
| 11:24:19 | 3 | allegations and even positive action that Headwater has in |
| 11:24:23 | 4 | the case. |
| 11:24:25 | 5 | So maybe I could -- |
| 11:24:27 | 6 | THE COURT:  How is that a stipulation? |
| 11:24:29 | 7 | MR. MIRZAIE:  So the first one is that |
| 11:24:32 | 8 | Headwater -- this is actually the one that I think Samsung |
| 11:24:35 | 9 | raised, as well.  Samsung would like Headwater to agree |
| 11:24:40 | 10 | that, quote, it does not contend that Samsung copied any |
| 11:24:45 | 11 | Headwater or ItsOn product, and neither party contends that |
| 11:24:49 | 12 | copying or lack -- or a lack of copying is relevant to any |
| 11:24:54 | 13 | issues in this case, end quote. |
| 11:24:57 | 14 | I think I quoted our email to you correctly. |
| 11:25:00 | 15 | MR. KODISH:  You quoted what you asked for.  That |
| 11:25:02 | 16 | was not at all our quote.  We do not agree to it. |
| 11:25:07 | 17 | MR. MIRZAIE:  We may still be able to reach a |
| 11:25:09 | 18 | resolution on that.  I think we could reach a resolution on |
| 11:25:12 | 19 | the copying issue in the pretrial order, and I do think we |
| 11:25:15 | 20 | might be able to reach a resolution or agree to Samsung's |
| 11:25:18 | 21 | language in your email from a week ago from Mr. -- two |
| 11:25:22 | 22 | weeks ago. |
| 11:25:22 | 23 | So that's -- that's the first item. |
| 11:25:24 | 24 | The second -- |
| 11:25:26 | 25 | THE COURT:  No, don't move off the first item yet. |

| | |
|---|---|
| 11:25:29 | 1 |
| 11:25:40 | 2 |
| 11:25:44 | 3 |
| 11:25:47 | 4 |
| 11:25:50 | 5 |
| 11:25:56 | 6 |
| 11:26:00 | 7 |
| 11:26:05 | 8 |
| 11:26:08 | 9 |
| 11:26:13 | 10 |
| 11:26:16 | 11 |
| 11:26:19 | 12 |
| 11:26:23 | 13 |
| 11:26:26 | 14 |
| 11:26:32 | 15 |
| 11:26:35 | 16 |
| 11:26:40 | 17 |
| 11:26:43 | 18 |
| 11:26:44 | 19 |
| 11:26:47 | 20 |
| 11:26:53 | 21 |
| 11:26:57 | 22 |
| 11:26:58 | 23 |
| 11:27:01 | 24 |
| 11:27:04 | 25 |

That is basically what we left open in December on Defendants' Motion in Limine No. 2, which was to be agreed to between the parties thereafter and about which we have not heard.

So is there a stipulation on that?

MR. KODISH:  Your Honor, I think we can coordinate here and clarify.  I have the express written proposed stipulation from two weeks ago.  This is a proposed stipulation in furtherance to Your Honor's suggestion that the parties come to an agreement on language.

However, as you may recall, the suggestion was that we come to an agreement on a jury instruction.  We did attempt that.  We did not reach agreement.  And so two weeks ago, Samsung sent a proposed stipulation for language that would be simply put in the joint pretrial order.  And I have that, and I can provide that to Your Honor to have some sort of hook as to where we are headed.

The other language that Mr. Mirzaie is referencing is a proposed set of language that was sent to us last night at 8:00 p.m., so -- which is not our chosen language. So I'm happy to give you -- if I may approach, and you can have at least a starting point for the language that is on the table that I think I heard from Mr. Mirzaie they don't really have a problem with.  They've never voiced a specific problem with it to us.

| | | |
|---|---|---|
| 11:27:07 | 1 | THE COURT:  All right. |
| 11:27:08 | 2 | MR. MIRZAIE:  And, Your Honor -- |
| 11:27:09 | 3 | THE COURT:  You may pass that up. |
| 11:27:11 | 4 | MR. KODISH:  Sure.  Thank you. |
| 11:27:23 | 5 | Your Honor, the language is just in the form of a |
| 11:27:25 | 6 | slide reflecting -- you can see the context.  It was |
| 11:27:31 | 7 | proposed in an email by our -- by Mr. Hartzman on March |
| 11:27:40 | 8 | 12th, and specifically for the joint pretrial order. |
| 11:27:44 | 9 | MR. MIRZAIE:  Your Honor, if I may? |
| 11:27:45 | 10 | THE COURT:  And so is it your intention that this |
| 11:27:53 | 11 | be a stipulation that is provided to the jury? |
| 11:27:55 | 12 | MR. MIRZAIE:  I don't believe that's either side's |
| 11:27:58 | 13 | intention, Your Honor. |
| 11:28:00 | 14 | THE COURT:  All right. |
| 11:28:00 | 15 | MR. MIRZAIE:  Is that correct? |
| 11:28:01 | 16 | MR. KODISH:  That's correct. |
| 11:28:02 | 17 | We did attempt a jury instruction but then pulled |
| 11:28:07 | 18 | back.  And when it's my time to speak, I'm happy to |
| 11:28:10 | 19 | elaborate on that further.  But all we're proposing is |
| 11:28:13 | 20 | something more simple -- a statement in the joint pretrial |
| 11:28:16 | 21 | order, and that is Samsung's proffer. |
| 11:28:18 | 22 | THE COURT:  So are both sides satisfied that |
| 11:28:22 | 23 | putting this in the record resolves Defendants' Motion in |
| 11:28:29 | 24 | Limine No. 2? |
| 11:28:30 | 25 | MR. MIRZAIE:  I believe so, Your Honor, as long as |

| | |
|---|---|
| 11:28:33 | 1 |
| 11:28:37 | 2 |
| 11:28:41 | 3 |
| 11:28:47 | 4 |
| 11:28:53 | 5 |
| 11:28:57 | 6 |
| 11:28:59 | 7 |
| 11:29:01 | 8 |
| 11:29:03 | 9 |
| 11:29:06 | 10 |
| 11:29:10 | 11 |
| 11:29:10 | 12 |
| 11:29:13 | 13 |
| 11:29:17 | 14 |
| 11:29:21 | 15 |
| 11:29:25 | 16 |
| 11:29:25 | 17 |
| 11:29:27 | 18 |
| 11:29:28 | 19 |
| 11:29:29 | 20 |
| 11:29:33 | 21 |
| 11:29:36 | 22 |
| 11:29:40 | 23 |
| 11:29:45 | 24 |
| 11:29:50 | 25 |

1  it doesn't go to the jury.  And I can speak to the delta
2  between Samsung's proposal, which we agree with, but we
3  just had a few additional words, if I may.
4       THE COURT:  This is supposed to be a stipulation.
5  So either you agree to it or you don't.
6       MR. MIRZAIE:  Maybe we could check one last time
7  if there could be agreement to --
8       MR. KODISH:  Samsung does not agree to the
9  additional language that you have proposed, but it sounds
10  like we are on the same page with the language that we
11  proposed.
12       THE COURT:  All right.  I'll get back to this at
13  the end of the conference, and we'll see if during the
14  interim, the parties have spoken further.  If not, I'll
15  take it up based on where things stand at the end of the
16  conference.
17       MR. MIRZAIE:  Okay.
18       THE COURT:  What else about the pretrial order?
19       MR. MIRZAIE:  Yes, Your Honor.
20       So the second -- the second statement in the
21  pretrial order was that Headwater stipulates that it is no
22  longer alleging any post-suit willfulness in this
23  litigation.  We already dropped pre-suit willfulness, and
24  so now willfulness, which is our allegation, should be out
25  of the case.  And this would moot the Defendants' motion

| | | |
|---|---|---|
| 11:29:55 | 1 | for summary judgment at Document 172. |
| 11:30:03 | 2 | THE COURT:  I assume Samsung does not object to |
| 11:30:06 | 3 | that? |
| 11:30:08 | 4 | MR. KODISH:  Samsung does not object to Headwater |
| 11:30:13 | 5 | dropping pre-suit willfulness -- excuse me, post-suit |
| 11:30:19 | 6 | willfulness.  However, the proposal that was sent to us |
| 11:30:22 | 7 | last night was suggested as a package deal of that |
| 11:30:26 | 8 | sentence, as well as a number of others that are |
| 11:30:29 | 9 | objectionable. |
| 11:30:30 | 10 | THE COURT:  Well, that has not been indicated to |
| 11:30:34 | 11 | me as part of a package. |
| 11:30:36 | 12 | MR. KODISH:  So if they are simply rescinding |
| 11:30:41 | 13 | their -- dropping their post-suit willfulness claim, we |
| 11:30:44 | 14 | accept post-suit willfulness is out of the case. |
| 11:30:49 | 15 | THE COURT:  All right.  Mr. Mirzaie, what is the |
| 11:30:54 | 16 | docket number of the motion for partial summary judgment |
| 11:30:57 | 17 | that you referred to? |
| 11:30:58 | 18 | MR. MIRZAIE:  I believe it's 172, Your Honor. |
| 11:31:02 | 19 | THE COURT:  All right.  Anything else about the |
| 11:31:11 | 20 | pretrial order? |
| 11:31:12 | 21 | MR. MIRZAIE:  Yes, Your Honor. |
| 11:31:13 | 22 | And my colleague for Samsung is correct that at |
| 11:31:17 | 23 | one point last night, we presented a few of these proposals |
| 11:31:20 | 24 | as a package deal, but now we are unilaterally stating them |
| 11:31:26 | 25 | one-by-one. |

| | | |
|---|---|---|
| 11:31:27 | 1 | And so as to the third one, which I don't believe |
| 11:31:29 | 2 | we should have a disagreement over, this is something that |
| 11:31:34 | 3 | Samsung moved on in limine and has argued since then about |
| 11:31:42 | 4 | pre-suit discussions.  And this -- hopefully we could reach |
| 11:31:45 | 5 | a stipulation on it because it's not part of a package |
| 11:31:48 | 6 | deal, would read, quote, the parties will offer no evidence |
| 11:31:52 | 7 | or argument at trial regarding Headwater and Samsung |
| 11:31:58 | 8 | pre-suit discussions, meetings, or correspondence, or a |
| 11:32:02 | 9 | lack of Headwater and Samsung pre-suit discussions, |
| 11:32:07 | 10 | meetings, or correspondence. |
| 11:32:14 | 11 | THE COURT:  So are you offering that to me as part |
| 11:32:17 | 12 | of a negotiation with Samsung? |
| 11:32:18 | 13 | MR. MIRZAIE:  I guess at this point, we'd like -- |
| 11:32:23 | 14 | I guess we're checking to see if -- because it's no longer |
| 11:32:26 | 15 | part of any type of package deal if we have an agreement on |
| 11:32:29 | 16 | this. |
| 11:32:31 | 17 | MR. KODISH:  Thank you, Your Honor. |
| 11:32:32 | 18 | That's a fair amount to process.  It's the first |
| 11:32:36 | 19 | time that it's been proposed to us as a non-package deal. |
| 11:32:40 | 20 | But Samsung is not inclined to agree to that suggested |
| 11:32:45 | 21 | stipulation. |
| 11:32:49 | 22 | THE COURT:  All right.  Mr. Mirzaie, why don't you |
| 11:32:51 | 23 | tell me if you have any other issues about the pretrial |
| 11:32:57 | 24 | order that are agreed to.  And if not, you can, over the |
| 11:33:06 | 25 | lunch break, talk to Samsung about it. |

11:33:14  1          MR. MIRZAIE:  Perhaps there's just one more, Your

11:33:18  2  Honor, and then we'll -- we will discuss these items with

11:33:22  3  Samsung during the lunch break.

11:33:23  4          I'm not sure if this is a JPTO item, but it

11:33:26  5  does -- I believe, it could resolve a motion, you know,

11:33:29  6  before this Court, and that is we are withdrawing our

11:33:34  7  reliance on the ItsOn/Headwater license agreements.

11:33:40  8  Samsung had previously moved to strike our damages expert,

11:33:47  9  Mr. Dell's, opinions on that document and the document

11:33:49  10 itself.  That's at Document -- Docket No. 186, Pages 9

11:33:53  11 through 12.

11:33:56  12         So because we removed that from our exhibit list

11:34:00  13 and we're no longer relying on it, I believe that that

11:34:04  14 portion of the pending motion is also moot.  That's perhaps

11:34:08  15 not a classic JPTO item, but I just wanted to alert the

11:34:12  16 Court to that, as well.

11:34:16  17         THE COURT:  All right.  Thank you, Mr. Mirzaie.

11:34:23  18         MS. FISH:  Your Honor, may I respond briefly?

11:34:25  19         THE COURT:  To which part?

11:34:26  20         MS. FISH:  The last proposal regarding the moot

11:34:30  21 Dell Daubert.

11:34:32  22         THE COURT:  All right.  You can --

11:34:33  23         MS. FISH:  I believe, Your Honor -- Sara Fish on

11:34:36  24 behalf of Samsung.

11:34:37  25         I believe we will get into objections to the

| | |
|---|---|
| 11:34:42 | 1 |

Headwater/ItsOn licenses with exhibit objections, but I do

11:34:48  2  not believe their withdrawal of it addresses our Daubert

11:34:50  3  motion.

11:34:51  4        As we know, experts may present information via

11:34:55  5  demonstratives, whether the exhibits or the documents are

11:34:59  6  on the exhibit list.  So I disagree that it moots any

11:35:03  7  portion of the Dell Daubert.

11:35:06  8        MR. MIRZAIE:  I can clarify, Your Honor.

11:35:07  9        THE COURT:  All right.  Go ahead, Mr. Mirzaie.

11:35:10  10        MR. MIRZAIE:  We won't be using it as a

11:35:13  11  demonstrative with Dell, and we can withdraw the opinions,

11:35:16  12  as well.

11:35:17  13        THE COURT:  All right.

11:35:19  14        MR. MIRZAIE:  So I think that should technically

11:35:22  15  certainly moot Pages 9 through 12 of that motion -- that

11:35:25  16  argument.

11:35:26  17        MS. FISH:  Yes.  Thank you.  With that

11:35:28  18  clarification, Samsung agrees.

11:35:29  19        THE COURT:  All right.  Thank you, Ms. Fish.

11:35:36  20        All right.  In that case, I think we can move on

11:35:42  21  to the exhibit objections, and counsel have provided bucket

11:35:55  22  lists.

11:36:08  23        So let's take up the Defendants' objections to the

11:36:13  24  Plaintiff's exhibits.

11:36:32  25        MS. FISH:  Yes, Your Honor.  Sara Fish on behalf

11:36:36    1    of Samsung.

11:36:36    2        So this is Bucket 1 of the parties' exhibit bucket

11:36:43    3    objections that was provided yesterday.

11:36:45    4        Samsung objects to Plaintiff's Exhibits PTX-1000

11:36:53    5    and PTX- -- sorry, PTX-100 and PTX-102.

11:37:02    6        PTX-100 is a copy of the amendment to the

11:37:07    7    Google/Samsung MADA, which we were discussing this morning.

11:37:10    8    And PTX-102 is a Google Mobile Revenue Share Agreement from

11:37:15    9    2020.

11:37:17    10        I do understand with correspondence with counsel

11:37:22    11    this morning that Plaintiffs propose to change PTX-100 and

11:37:30    12    to combine two different documents into one trial exhibit.

11:37:34    13    They were the two trial exhibits or the two documents that

11:37:35    14    were sent to the Court this morning.  So now PTX-100 should

11:37:40    15    include the 2017 MADA agreement, as well as the 2020

11:37:47    16    amendment to that agreement.

11:37:50    17        Samsung doesn't have any objection to the

11:37:52    18    combination, but I think our discussion this morning,

11:37:57    19    Samsung maintains it's more larger, big picture objections

11:38:02    20    to the relevance than applicability of these documents to

11:38:05    21    this case.

11:38:06    22        THE COURT:  Is there an exhibit number on the

11:38:11    23    amendment that is proposed to be added to PTX-100?

11:38:17    24        MS. FISH:  There was not an exhibit number.  I

11:38:21    25    believe the attachment to Mr. Davis's email may have had

11:38:24   1   both documents already combined in one document.  So if

11:38:30   2   you're looking at the attachment for Mr. Davis's email,

11:38:33   3   it's already all in one.

11:38:35   4            THE COURT:  All right.

11:38:36   5            MS. FISH:  PTX-100.

11:38:38   6            THE COURT:  And give me a short statement of your

11:38:41   7   objection to these two documents.

11:38:43   8            MS. FISH:  Yes, Your Honor.

11:38:44   9            As we discussed this morning, the jury does not

11:38:49  10   need to see the terms of any Google defense or alleged

11:38:54  11   indemnity obligation, which is one reason why Headwater

11:38:58  12   seeks to cite and rely on this document.

11:39:01  13            As we heard, the Google witness, Mr. Hansen, does

11:39:04  14   not have knowledge or familiarity with the contract terms

11:39:08  15   and so does not need to speak -- cannot speak to them.  And

11:39:11  16   so there will be no relevant presentation or foundation for

11:39:16  17   these at trial through Mr. Hansen.

11:39:18  18            Additionally, the Google MADA agreement does not

11:39:26  19   state in its plain language anything about the accused

11:39:30  20   products in this case, which is Google's FCM.  Nowhere on

11:39:35  21   the face of the document does it mention FCM.  Therefore,

11:39:37  22   the jury doesn't need to look to the language of this

11:39:41  23   otherwise large complex contract to consider the evidence

11:39:45  24   in this case.

11:39:47  25            THE COURT:  So your objections are relevance and

| | | |
|---|---|---|
| 11:39:53 | 1 | Rule 403 unfair prejudice? |
| 11:39:56 | 2 | MS. FISH:  That's correct, Your Honor. |
| 11:39:57 | 3 | And I will just add, should these agreements be |
| 11:40:01 | 4 | admitted, we do also believe there should at the very least |
| 11:40:07 | 5 | be redactions applied in the ███████████████████ |
| 11:40:12 | 6 | ████████████████████████████████████████████ |
| 11:40:16 | 7 | ████████████████████████████████. |
| 11:40:19 | 8 | THE COURT:  All right.  Thank you, Ms. Fish. |
| 11:40:27 | 9 | Let me hear the response. |
| 11:40:29 | 10 | MR. KRIS DAVIS:  Thank you, Your Honor.  Kris |
| 11:40:33 | 11 | Davis for Plaintiff, Headwater. |
| 11:40:34 | 12 | Your Honor, these agreements are just relevant. |
| 11:40:39 | 13 | They're relevant to a number of issues.  I can give you at |
| 11:40:42 | 14 | least four right away:  Infringement, non-infringing |
| 11:40:47 | 15 | alternatives, damages, and credibility and bias of the |
| 11:40:53 | 16 | Google witness, Mr. Hansen. |
| 11:40:54 | 17 | To clarify, as well, these documents are discussed |
| 11:41:00 | 18 | by Headwater's experts, their technical -- our technical |
| 11:41:05 | 19 | experts and our damages experts. |
| 11:41:07 | 20 | With respect to infringement, they show how all of |
| 11:41:10 | 21 | the accused Samsung devices include the accused FCM push |
| 11:41:15 | 22 | messaging technology. |
| 11:41:17 | 23 | Samsung also argues that there is divided |
| 11:41:19 | 24 | infringement here between Samsung and Google, and, |
| 11:41:23 | 25 | therefore, that Headwater cannot prove direct infringement. |

11:41:26   1   This directly undercuts that, Your Honor, because it shows

11:41:28   2   that Samsung benefits tremendously from these agreements,

11:41:33   3   and those benefits relating to the accused FCM

11:41:38   4   functionality directly support direct infringement.

11:41:43   5        With respect to non-infringing alternatives, the

11:41:46   6   benefits that Samsung receives under these agreements are

11:41:49   7   significant.  And what Samsung has argued, Your Honor, is

11:41:52   8   that they could simply walk away from their relationship

11:41:56   9   with Google and the accused FCM technology, and that is not

11:41:59  10   the case at all.

11:42:00  11        If they walk away from it, Your Honor, what these

11:42:03  12   agreements indicate is that they would be violating these

11:42:06  13   agreements, and, therefore, foregoing their revenue share,

11:42:10  14   which amounts to a large sum of money.

11:42:13  15        This directly undermines their arguments about

11:42:18  16   non-infringing alternatives.

11:42:20  17        THE COURT:  So how is -- let's take the MADA, the

11:42:25  18   Mobile Application Distribution Agreement first.

11:42:27  19        How is that relevant to infringement?

11:42:30  20        MR. KRIS DAVIS:  So the way this works, Your

11:42:32  21   Honor, is the MADA is the agreement that permits Samsung to

11:42:37  22   install all of the Google Mobile Services software on their

11:42:43  23   devices.

11:42:43  24        And one thing I want to clarify is that this is a

11:42:46  25   package deal.  It's a bundle of sticks, and it's not an

11:42:50    1    a la carte menu where Samsung gets to pick and choose which

11:42:54    2    pieces they want to install or not.

11:42:55    3         FCM is a part of this package under Google Mobile

11:43:02    4    Services.  And so if Samsung were to simply walk away from

11:43:10    5    FCM as a non-infringing alternative, like they suggest,

11:43:12    6    they would be in violation of the MADA, which, therefore,

11:43:15    7    under the terms of the RSA, means they don't get to share

11:43:19    8    in the revenue.

11:43:19    9         I also just wanted to clarify, Your Honor, that

11:43:26    10    the agreements, also relevant to damages and extent of use.

11:43:30    11    As I said, our damages expert, Mr. Dell, considered these

11:43:34    12    agreements in his damages analysis.  They support his

11:43:37    13    conclusions.

11:43:37    14         And fourth, Your Honor, and I won't belabor the

11:43:40    15    point because we've talked about it a bit already, the

11:43:44    16    testimony of Samsung's primary trial witness on both

11:43:48    17    infringement and validity is Google representative Todd

11:43:52    18    Hansen.

11:43:53    19         And he's the lead witness on the technical

11:43:56    20    operation of the accused products.  Everyone agrees, he's a

11:44:01    21    very important witness in this case, and the jury is

11:44:04    22    entitled to know if he has any credibility or potential

11:44:08    23    bias concerns.  And so the jury is entitled to know that

11:44:13    24    about the close relationship between Samsung and Google and

11:44:16    25    the degree of that relationship that is very, very

11:44:20  1  significant.

11:44:24  2      Samsung doesn't have a reasonable basis for

11:44:25  3  excluding these agreements.  They can't be permitted to

11:44:31  4  mislead the jury into thinking that Samsung can simply walk

11:44:34  5  away from FCM or that FCM is unimportant or not valuable

11:44:38  6  because these agreements show exactly the opposite, Your

11:44:44  7  Honor.

11:44:44  8      I also just want to clarify that, you know, we'll

11:44:48  9  talk about it in terms of deposition designations, as well,

11:44:51  10  but the specific dollar amounts, if that is a concern of

11:44:55  11  Samsung, as well.  You know, the issue with the dollar

11:44:59  12  amounts is it shows the degree of interest that Google and

11:45:03  13  Samsung have in this collaborative relationship.

11:45:07  14      It's not enough, like in another case, perhaps

11:45:11  15  Harden or others, to say, well, there's a business

11:45:14  16  relationship.  It's not just a business relationship.  This

11:45:18  17  is to the tune of billions of dollars, and Samsung is

11:45:21  18  suggesting that it's just not valuable technology that it

11:45:27  19  can walk away from, and that is just absolutely not the

11:45:30  20  case.

11:45:30  21      So those are really the primary reasons, Your

11:45:33  22  Honor, why this is so highly relevant and there's no basis

11:45:36  23  for excluding them.

11:45:37  24      And happy to answer any questions you may have.

11:45:39  25      THE COURT:  All right.  And your argument would be

| | | |
|---|---|---|
| 11:45:49 | 1 | similar on the Revenue Share Agreement, the RSA? |
| 11:45:53 | 2 | MR. KRIS DAVIS:  That's right, Your Honor. |
| 11:45:54 | 3 | I think Your Honor is clear on it, the |
| 11:45:59 | 4 | interrelationship between those agreements. |
| 11:46:00 | 5 | The RSA is what sets forth how Samsung gets a |
| 11:46:06 | 6 | share of the revenue.  And the Revenue Share Agreement |
| 11:46:11 | 7 | provides that there needs to be in place a MADA in good |
| 11:46:17 | 8 | standing, and so that's kind of the relationship between |
| 11:46:19 | 9 | those two. |
| 11:46:19 | 10 | I also just wanted to clarify, Your Honor, that in |
| 11:46:24 | 11 | terms of damages, our damages expert is not opining that, |
| 11:46:32 | 12 | well, there's this certain amount of dollars that Samsung |
| 11:46:35 | 13 | gets annually as part of this Revenue Share Agreement, and, |
| 11:46:41 | 14 | therefore -- therefore, we, Headwater, should be entitled |
| 11:46:45 | 15 | to X percent of those revenues. |
| 11:46:47 | 16 | And so I think that helps address the concern that |
| 11:46:51 | 17 | Samsung may have that having these high dollar amounts in |
| 11:46:57 | 18 | the case would confuse the jury and make them think that |
| 11:47:00 | 19 | they need to award those dollar amounts. |
| 11:47:03 | 20 | Truly, Your Honor, this is to combat Samsung's |
| 11:47:06 | 21 | arguments about non-infringement, damages, extent of use, |
| 11:47:11 | 22 | non-infringing alternatives.  That's the reason why we need |
| 11:47:14 | 23 | this in the case. |
| 11:47:15 | 24 | THE COURT:  All right.  Thank you, Mr. Davis. |
| 11:47:20 | 25 | MS. FISH:  Your Honor, may I respond? |

11:47:25    1          THE COURT:  Yes.

11:47:25    2          MS. FISH:  I hear my colleague saying kind of two

11:47:31    3    larger buckets of alleged relevance to the MADA and the

11:47:36    4    RSA.

11:47:36    5          First I heard, you know, non-infringement, NIAs,

11:47:41    6    more substantive points that they would like to point to

11:47:44    7    the existence of the MADA or the RSA in order to, you know,

11:47:49    8    relate to their arguments.

11:47:50    9          They do not need the document itself, right?

11:47:55    10   We're here on exhibit objections is what we're discussing.

11:47:59    11   I don't believe the prejudice that would be shown by giving

11:48:02    12   the jury a copy of this complicated contract, which does

11:48:07    13   have prejudicial terms in it, I don't believe the prejudice

11:48:09    14   is outweighed by a need to refer to the existence of a MADA

11:48:16    15   or a Revenue Share Agreement.

11:48:17    16         Separately, as to the Revenue Share Agreement

11:48:22    17   itself, Mr. Davis was talking about dollar figures.  The

11:48:28    18   Revenue Share Agreement itself, again, talking about the

11:48:31    19   document that we're proposing to put on the exhibit list

11:48:34    20   and admit before the jury, does not have the dollar numbers

11:48:38    21   that we understand Headwater to be planning to present at

11:48:44    22   trial in them.  They do not come from the RSA.

11:48:47    23         The RSA is the controlling provision, but Mr. Song

11:48:53    24   provided via deposition testimony the dollar figure we

11:48:57    25   understand Headwater wants to say.

11:48:58    1          So, again, you don't need the RSA document to be

11:49:01    2    the vehicle of evidence that's put before the jury, and we

11:49:04    3    think the prejudice that comes from the MADA and the RSA,

11:49:10    4    when provided to the jury, you should keep them out.

11:49:13    5          And, again, the other kind of bucket of reason

11:49:19    6    Headwater articulated was, again, to go to bias -- to test

11:49:24    7    the bias and demonstrate the bias of Google in this case.

11:49:26    8    And as we discussed already this morning, Mr. Hansen is not

11:49:28    9    the witness to use these documents with in order to test

11:49:32    10   that bias.  We've made a plan for another way to do that.

11:49:41    11         MR. KRIS DAVIS:  If I may, Your Honor, just

11:49:43    12   briefly.  Or, I'm sorry.

11:49:44    13         MS. FISH:  And just one last point.  Both of these

11:49:47    14   agreements -- you know, stepping back, both the MADA and

11:49:51    15   the RSA, right, the MADA does pass the -- a big set of

11:49:56    16   software to Samsung from Google, but it is things like

11:50:00    17   Gmail, Google Maps, YouTube.  It is massive, you know,

11:50:07    18   value-add software that goes on an end-user phone.  It is

11:50:10    19   not key to or focused on FCM.  FCM is an ancillary part of

11:50:15    20   the services that are provided with these larger focus of

11:50:19    21   these agreements, right?  The parties were negotiating for

11:50:23    22   YouTube, for Gmail, for Google Maps.  It does not say FCM.

11:50:29    23         THE COURT:  All right.

11:50:30    24         MS. FISH:  And I did also want to offer, you know,

11:50:34    25   to the extent -- that's it.  Thank you, Your Honor.

| | | |
|---|---|---|
| 11:50:46 | 1 | MR. KRIS DAVIS:  Just briefly, Your Honor. |
| 11:50:46 | 2 | THE COURT:  All right. |
| 11:50:48 | 3 | MR. KRIS DAVIS:  Your Honor, to the last point we |
| 11:50:49 | 4 | heard about, the bundle of Google Mobile Services, |
| 11:50:54 | 5 | including a number of different applications, I understand |
| 11:50:56 | 6 | that's the case.  A required stick in that bundle is FCM |
| 11:51:01 | 7 | push messaging.  You haven't heard that denied, and it |
| 11:51:05 | 8 | cannot be denied. |
| 11:51:05 | 9 | To the extent that Samsung wants to bring out the |
| 11:51:09 | 10 | fact on cross-examination that other software is included |
| 11:51:13 | 11 | in the bundle, we think that makes sense to raise on |
| 11:51:16 | 12 | cross-examination, and they can do so.  It will be clear |
| 11:51:19 | 13 | from our expert's testimony that the revenues are not used |
| 11:51:25 | 14 | to calculate the royalty, but this is still a factor, |
| 11:51:30 | 15 | according to our damages expert, at the hypothetical |
| 11:51:34 | 16 | negotiation regarding, for example, non-infringing |
| 11:51:37 | 17 | alternatives. |
| 11:51:37 | 18 | Why we need the documents themselves, Your Honor, |
| 11:51:40 | 19 | is because you've already heard it this morning, their |
| 11:51:43 | 20 | witnesses aren't going to admit anything about these |
| 11:51:47 | 21 | documents.  And to give you a preview of Samsung's |
| 11:51:50 | 22 | objections to the deposition designations of Mr. Song, |
| 11:51:54 | 23 | Samsung objects to literally every single word designated |
| 11:52:00 | 24 | in Mr. Song's deposition. |
| 11:52:01 | 25 | And so to the extent Ms. Fish is suggesting that, |

54

| | |
|---|---|
| 11:52:05 | 1 |
| 11:52:08 | 2 |
| 11:52:11 | 3 |
| 11:52:14 | 4 |
| 11:52:18 | 5 |
| 11:52:22 | 6 |
| 11:52:24 | 7 |
| 11:52:27 | 8 |
| 11:52:32 | 9 |
| 11:52:37 | 10 |
| 11:52:40 | 11 |
| 11:52:42 | 12 |
| 11:52:46 | 13 |
| 11:52:52 | 14 |
| 11:52:53 | 15 |
| 11:52:55 | 16 |
| 11:53:01 | 17 |
| 11:53:03 | 18 |
| 11:53:08 | 19 |
| 11:53:16 | 20 |
| 11:53:20 | 21 |
| 11:53:26 | 22 |
| 11:53:29 | 23 |
| 11:53:31 | 24 |
| 11:53:35 | 25 |

1  well, you can just get it in through Mr. Song rather than

2  admitting the documents, well, that's news to me, Your

3  Honor.  If that's something that Samsung is offering to

4  allow Mr. Song's testimony, we can certainly consider that.

5       But what we're currently faced with is Samsung

6  doesn't want the fact of the agreements in, doesn't want

7  the agreements themselves in, doesn't want Mr. Song's

8  testimony about the agreements.  They want Mr. Hansen to

9  testify, who can't speak to the agreements at all.  And so

10  I'm not sure what Samsung is offering that we're supposed

11  to be able to do with that, Your Honor.

12       And so with that, I think we do need the

13  agreements.

14       Thank you, Your Honor.

15       THE COURT:  All right.  Thank you, Mr. Davis.

16       Ms. Fish, why can't we handle your objections by

17  redaction?

18       MS. FISH:  There is not a specific item to be

19  redacted in these agreements.  I'll set aside my request to

20  redact the ████████████████████████████████████.  I'll

21  clarify, that ████████████████████████████████████████

22  ████████ that Headwater intends to use at trial, right?

23  Neither party intends to use the --

24       THE COURT:  The entire Section 11 could be

25  redacted.

| | | |
|---|---|---|
| 11:53:37 | 1 | MS. FISH:  Yes, Your Honor, we would request that. |
| 11:53:39 | 2 | THE COURT:  And is -- what else? |
| 11:53:43 | 3 | MS. FISH:  Aside from the request to redact the |
| 11:53:50 | 4 | ███████████████, I don't know that there is anything else |
| 11:53:53 | 5 | to redact to address the concerns. |
| 11:53:56 | 6 | The concern is that at base, the MADA agreement |
| 11:54:01 | 7 | and the related Revenue Share Agreement are not focused on, |
| 11:54:05 | 8 | based on, ████████████████████████████████████ |
| 11:54:10 | 9 | And Headwater is going to use the RSA agreement to say a |
| 11:54:17 | 10 | large ██████████████████████████████████████ |
| 11:54:23 | 11 | ███████████████ before the jury, right?  That is the -- |
| 11:54:27 | 12 | THE COURT:  I haven't seen the RSA. |
| 11:54:29 | 13 | MS. FISH:  It is PTX-102. |
| 11:54:33 | 14 | THE COURT:  I understand that.  But that's not in |
| 11:54:38 | 15 | the record. |
| 11:54:38 | 16 | MS. FISH:  Okay. |
| 11:54:42 | 17 | THE COURT:  So if you have objections to |
| 11:54:44 | 18 | particular parts of the RSA, either provide me with a copy |
| 11:54:51 | 19 | of it or show it to me. |
| 11:54:53 | 20 | MS. FISH:  Okay.  I believe I can present it from |
| 11:54:58 | 21 | up here.  But, again, Your Honor, it is not an objection as |
| 11:55:01 | 22 | to a specific portion but rather to the document as a whole |
| 11:55:06 | 23 | lacking relevance to the issues in this case. |
| 11:55:10 | 24 | THE COURT:  Well, do you dispute that their expert |
| 11:55:11 | 25 | relies upon it? |

11:55:13    1          MS. FISH:  I do not, but we have filed pending

11:55:16    2    Dauberts seeking to exclude those discussions of Mr. Dell

11:55:19    3    and Mr. de la Iglesia, and so our pending Dauberts remain.

11:55:27    4          THE COURT:  Well, if a motion to strike or a

11:55:30    5    Daubert motion is granted as to the section discussing some

11:55:34    6    of these documents, that'd be a good reason to revisit

11:55:37    7    their admission, but I still need to address it.

11:55:43    8          MS. FISH:  I'm not sure how to -- this is the

11:56:07    9    Google Mobile Revenue Share Agreement, proposed PTX-102.

11:56:11    10          And this agreement discusses sharing ad revenues,

11:56:33    11    ad revenues which are generated based on ██████████████████

11:56:37    12    ████████████████████████████████    ████████████████████

11:56:42    13    ███████████████████████████████████████████████

11:56:48    14    This is not revenue that ███████████████.  And, again, ██████

11:56:54    15    ████████████████████████████ either.

11:57:00    16          I'm scrolling, but please stop me if you'd like.

11:57:04    17          THE COURT:  It's okay.

11:57:20    18          All right.  I tell you what, I'm going to ask that

11:57:23    19    you provide me a paper copy of this if you have it, or

11:57:29    20    email it to the Court through Mr. Gershengorin.  And I'll

11:57:35    21    take a look at it over the lunch break, and we will come

11:57:41    22    back at 1:15.

11:57:44    23          MS. FISH:  Thank you, Your Honor.

11:57:44    24          THE COURT:  Thank you.

01:16:27    25          (Recess.)

| | | |
|---|---|---|
| 01:16:28 | 1 | COURT SECURITY OFFICER:  All rise. |
| 01:16:35 | 2 | THE COURT:  Good afternoon.  Please be seated. |
| 01:16:56 | 3 | We had left off with the objections to the first |
| 01:17:08 | 4 | bucket. |
| 01:17:22 | 5 | MS. FISH:  Yes, Your Honor.  Sara Fish for |
| 01:17:24 | 6 | Samsung. |
| 01:17:24 | 7 | If there was nothing further -- no further |
| 01:17:30 | 8 | questions on the MADA and the RSA, we can move to the |
| 01:17:33 | 9 | Defendants' second bucket of exhibit objections. |
| 01:17:38 | 10 | THE COURT:  I hate to do this, but I'm going to |
| 01:17:41 | 11 | have to take a brief break to go back to the office and get |
| 01:17:44 | 12 | what I left there. |
| 01:17:45 | 13 | MS. FISH:  Certainly. |
| 01:17:46 | 14 | THE COURT:  Sorry about that.  Please, don't get |
| 01:17:50 | 15 | up.  I'll be right back. |
| 01:19:14 | 16 | (Recess.) |
| 01:19:14 | 17 | COURT SECURITY OFFICER:  All rise. |
| 01:19:14 | 18 | THE COURT:  Thank you. |
| 01:19:15 | 19 | All right.  Ms. Fish, go ahead. |
| 01:19:16 | 20 | MS. FISH:  I was just asking Your Honor if there |
| 01:19:18 | 21 | were any further questions on the MADA and the RSA issues |
| 01:19:21 | 22 | we discussed with Bucket 1. |
| 01:19:24 | 23 | THE COURT:  No.  And I have examined them over the |
| 01:19:28 | 24 | lunch break.  And given the fact that the Plaintiff has |
| 01:19:33 | 25 | articulated a basis for relevance and that any prejudice, I |

01:19:41     1    think, can be cured by selective redaction, as necessary,

01:19:45     2    I'm going to overrule the objection to PTX-100 and 102 and

01:19:55     3    direct counsel to confer about any necessary redactions.

01:20:03     4          In the event there is a dispute about the

01:20:06     5    redactions, we'll take that up at a hearing that we'll

01:20:10     6    schedule at the close of this to take up any such issues a

01:20:15     7    few days before the current trial date of April 21.

01:20:18     8          And obviously, to the extent that there are

01:20:26     9    rulings on the motions to strike and Daubert motions that

01:20:31    10    impact the admissibility of these exhibits, we'll consider

01:20:37    11    those at the same time, as well.

01:20:41    12          So are you ready for the next bucket?

01:20:44    13          MS. FISH:  Yes, Your Honor.  Thank you.

01:20:47    14          THE COURT:  Go ahead.

01:20:47    15          MS. FISH:  All right.  Defendants object to a set

01:20:52    16    of hearsay expert demonstratives in Bucket No. 2.  They

01:20:58    17    include PTX-362, PTX-364, and PTX-399.

01:21:02    18          And hopefully this should be brief.

01:21:05    19          Samsung's objection is primarily the pending

01:21:10    20    Daubert motions that are addressed at the expert opinions

01:21:12    21    which are shown.

01:21:14    22          THE COURT:  I don't see 399 as being listed in

01:21:19    23    that bucket.  Do you show it there?

01:21:24    24          MS. FISH:  I do have it.  I believe PTX-399 was a

01:21:28    25    recent addition by Plaintiffs.  It is a Dell exhibit

01:21:34    1    attachment, Dell Exhibit Attachment 11, and I can show you

01:21:42    2    that.

01:21:42    3         THE COURT:  All right.  And so you have listed

01:21:44    4    these as demonstratives on this bucket, but they're being

01:21:51    5    offered as exhibits?

01:21:52    6         MS. FISH:  Yes, Your Honor.

01:21:53    7         The bucket is called demonstratives because we

01:21:55    8    believe these are more fairly -- should be more fairly used

01:21:58    9    or classified as demonstratives, rather than exhibits on

01:22:04    10   the trial list, as they are expert tables and expert

01:22:08    11   witness appendices from their reports, some from

01:22:14    12   Dr. Groehn's graphs and surveys data, and one from Mr. Dell

01:22:18    13   where he's aggregating some of Mr. de la Iglesia's battery

01:22:23    14   testing data.

01:22:24    15        THE COURT:  All right.

01:22:25    16        MS. FISH:  The primary objection is based on the

01:22:27    17   issues raised in our Daubert motions.

01:22:30    18        THE COURT:  Looks like I do have an updated bucket

01:22:34    19   list that shows 399.

01:22:35    20        All right.  So the primary objection is hearsay?

01:22:38    21        MS. FISH:  Yes, as well -- hearsay, as well as the

01:22:41    22   basis raised in our Daubert motion.

01:22:47    23        Hearsay is directed specifically to the two

01:22:48    24   exhibit -- exhibits for Dr. Groehn.  Again, based on our

01:22:52    25   concern and past experience where perhaps Dr. Groehn does

01:22:55    1  not come live to trial to provide his own opinions, we

01:22:57    2  would maintain a hearsay objection to use of his expert

01:23:04    3  demonstratives with any other witness other than himself.

01:23:05    4          THE COURT:  I assume even if he does appear live

01:23:08    5  at trial, that the exhibits themselves would be said to be

01:23:16    6  hearsay.

01:23:16    7          MS. FISH:  Yes.

01:23:17    8          THE COURT:  But I don't want to supply objections

01:23:19    9  that you're not making.

01:23:19   10          MS. FISH:  Yes, they will still be hearsay even if

01:23:21   11  he does appear at trial.

01:23:22   12          THE COURT:  All right.

01:23:23   13          MS. FISH:  Thus, they should rightly only be

01:23:27   14  demonstratives.

01:23:28   15          THE COURT:  All right.  Thank you, then, Ms. Fish.

01:23:32   16          Let me hear the response to the hearsay objection.

01:23:36   17          MR. KROEGER:  Thank you, Your Honor.

01:23:38   18          PTX-362 and 364 summarize the results of

01:23:44   19  Dr. Groehn's survey analysis, so we don't believe them to

01:23:47   20  be hearsay.  We note similar versions of them were admitted

01:23:49   21  as evidence in the recent 422 trial.

01:23:52   22          THE COURT:  And they may not have been objected to

01:23:54   23  then, but what is the reason that they wouldn't be hearsay?

01:23:59   24          MR. KROEGER:  They're -- they're -- they're

01:24:02   25  summarizing the results of his survey, and they're records,

01:24:06    1    but they're actual work that he did, and we're -- and

01:24:09    2    showing the results of his survey analysis that was

01:24:12    3    performed.

01:24:13    4            THE COURT:  All right.

01:24:13    5            MR. KROEGER:  They summarize the various summary

01:24:17    6    results.  They'd at least be FRE 1006 summaries, because,

01:24:19    7    you know, a survey, you get results in and you sort of

01:24:20    8    tabulate them and show that.  So at the very least, they'd

01:24:24    9    be admissible 1006 summaries of the results of the survey.

01:24:27    10           THE COURT:  So are the underlying documents

01:24:30    11   admissible business records?  If it's just a summary of his

01:24:38    12   own underlying work, that sounds like hearsay.

01:24:41    13           MR. KROEGER:  They contain screenshots of the

01:24:44    14   survey he showed to the Respondents, Your Honor.

01:24:44    15           THE COURT:  All right.

01:24:47    16           MR. KROEGER:  So that is the survey that was

01:24:48    17   actually used by the Respondents.

01:24:51    18           THE COURT:  So there are -- there's a difference

01:24:53    19   between showing the survey and showing the results of the

01:24:56    20   survey.

01:24:58    21           MR. KROEGER:  We're -- I believe we're showing --

01:25:00    22   we're showing the -- for these, they're screenshots of the

01:25:02    23   survey.  So we're showing the actual survey itself.

01:25:05    24           THE COURT:  Okay.  And that's all that's in 362

01:25:09    25   and 364?

01:25:10    1           MR. KROEGER:  They also contain the results, Your

01:25:20    2    Honor.

01:25:20    3           THE COURT:  All right.

01:25:24    4           MR. KROEGER:  Your Honor, we met and conferred

01:25:26    5    last night.  The only basis they gave us for hearsay was

01:25:30    6    simply that Dr. Groehn was not going to show up, and we

01:25:36    7    confirmed that Dr. Groehn will be there to testify.

01:25:38    8           THE COURT:  Well, that's a variation on the

01:25:40    9    hearsay rule.  It's not what's in the federal rules, but if

01:25:44   10    it's what the parties agree to --

01:25:46   11           MR. KROEGER:  That was what we understood from our

01:25:48   12    meet and confer last night is that the only basis for the

01:25:50   13    hearsay was simply on the fact that Dr. Groehn was not

01:25:53   14    going to be there to testify and sort of authenticate and

01:25:56   15    verify them, and we've confirmed he will.

01:25:59   16           THE COURT:  All right.  And what about 399?

01:26:04   17           MR. KROEGER:  Under our meet and confer, the only

01:26:06   18    basis for the objection was simply coextensive with the

01:26:09   19    Daubert and the MIL.

01:26:10   20           But to answer your question, those are FRE 1006

01:26:15   21    summaries that summarize Samsung documents as well as their

01:26:18   22    battery testing.  So we believe they're admissible.  And

01:26:20   23    the underlying documents are available for inspection for

01:26:24   24    the jury.

01:26:24   25           THE COURT:  All right.  So you're saying all the

01:26:26 1 underlying documents on 399 are Samsung documents?

01:26:30 2      MR. KROEGER:  Some of them are, and some of them

01:26:33 3 also relate to battery testing performed by one of our

01:26:36 4 experts.

01:26:37 5      THE COURT:  Okay.  Let me -- thank you,

01:26:47 6 Mr. Kroeger.

01:26:47 7      Let me hear from Ms. Fish about whether that's an

01:26:51 8 accurate statement of the agreements reached during the

01:26:54 9 meet and confer.

01:26:55 10      MS. FISH:  Yes, Your Honor.

01:26:57 11      That if Dr. Groehn appears live to testify, we

01:26:59 12 would agree to add PTX-362 -- or withdraw our objections,

01:27:05 13 except for the Daubert objections to 362 and 364 but not as

01:27:12 14 to 399.

01:27:22 15      THE COURT:  All right.  Then I will overrule the

01:27:24 16 objection to 362 and 364.  It's based upon the

01:27:29 17 understanding that Dr. Groehn will appear live.  And if he

01:27:36 18 does not, then you can reurge your objection.

01:27:45 19      As to 399, the part that summarizes Samsung

01:27:50 20 documents could qualify as a summary under 1006.  I'm not

01:27:57 21 sure about what the other part is.

01:28:01 22      Ms. Fish, can you elaborate on what your objection

01:28:06 23 to 399 is?

01:28:08 24      MS. FISH:  Yes, Your Honor.  I will try and screen

01:28:11 25 share if I can get this to work for me.  There it goes.

01:28:14    1        I am uncertain as to what Samsung document is

01:28:22    2   being summarized here, but what I do see summarized in

01:28:28    3   Dell 11 is Mr. de la Iglesia's battery capacity testing.

01:28:35    4   And these are the calculations of Mr. Dell's battery

01:28:41    5   capacity alleged savings or life improvement.

01:28:45    6        So none of this purports to be summarizing an

01:28:49    7   existing record or existing Samsung data.  This is

01:28:55    8   Mr. de la Iglesia's calculations that are provided to

01:28:58    9   Mr. Dell that he uses to calculate his reasonable royalty

01:29:00   10   in this case.

01:29:02   11        THE COURT:  Is Mr. de la Iglesia expected to

01:29:07   12   appear to testify?

01:29:08   13        MS. FISH:  I believe so, Your Honor, yes.

01:29:11   14        THE COURT:  All right.

01:29:19   15        MS. FISH:  And so as I said, we do also have a

01:29:22   16   pending Daubert on the substance of this analysis from

01:29:26   17   Mr. de la Iglesia, but we also believe this is more

01:29:29   18   properly simply an expert demonstrative.

01:29:32   19        THE COURT:  All right.  Thank you, Ms. Fish.

01:29:34   20        MR. KROEGER:  Ms. Fish, if you'd leave that up for

01:29:39   21   a second.

01:29:39   22        MS. FISH:  Yeah, sure.

01:29:40   23        MR. KROEGER:  Your Honor, so -- I don't want to

01:29:41   24   touch her computer, but just looking at the notes, it says,

01:29:44   25   see Attachment 11B on this first page.  If we go to 11B,

| | | |
|---|---|---|
| 01:29:45 | 1 | which the next page, which they've also objected to, this |
| 01:29:49 | 2 | is sum -- this is all Samsung data that summarizes part of |
| 01:29:53 | 3 | that sheet.  And if you go down to the bottom, you can't |
| 01:29:57 | 4 | see it, but those are -- those are Bates stamped numbers of |
| 01:30:00 | 5 | Samsung documents that are being summarized by 11B. |
| 01:30:10 | 6 | THE COURT:  Well, you could put the Samsung |
| 01:30:11 | 7 | document summary in a separate exhibit, but combining it |
| 01:30:15 | 8 | with the work of Mr. de la Iglesia takes it outside of |
| 01:30:24 | 9 | 1006. |
| 01:30:24 | 10 | Do you have a fix for that? |
| 01:30:29 | 11 | MR. KROEGER:  We'll prepare a redacted version |
| 01:30:42 | 12 | that just shows the Samsung data, Your Honor. |
| 01:30:44 | 13 | THE COURT:  All right.  Well, I will overrule the |
| 01:30:47 | 14 | objection subject to that redaction. |
| 01:30:52 | 15 | MS. FISH:  Thank you, Your Honor. |
| 01:30:53 | 16 | THE COURT:  Thank you, Ms. Fish. |
| 01:31:33 | 17 | That takes us to the third bucket. |
| 01:31:35 | 18 | MR. FLEMING:  Yes, Your Honor.  Kyle Fleming on |
| 01:31:39 | 19 | behalf of Samsung. |
| 01:31:41 | 20 | I'm going to present several slides.  Would |
| 01:31:43 | 21 | Your Honor like a courtesy copy? |
| 01:31:46 | 22 | THE COURT:  I would appreciate one.  Thank you. |
| 01:31:51 | 23 | MR. FLEMING:  May I approach? |
| 01:32:05 | 24 | THE COURT:  Yes.  Thank you. |
| 01:32:27 | 25 | MR. FLEMING:  I'll begin with Bucket 3, which is |

01:32:30  1  titled Hearsay Characterization of Unauthenticated Market

01:32:37  2  Data.

01:32:37  3      Bucket 3 is an objection specifically to PTX-392.

01:32:43  4  That exhibit is an Internet article entitled Push

01:32:50  5  Notification Statistics on a website called

01:32:56  6  businessofapps.com.

01:32:56  7      Headwater's damages expert, Mr. Dell, uses this

01:33:01  8  article for his apportionment.  He applies an 80 percent

01:33:05  9  apportionment.  Specifically, he uses from this article the

01:33:09  10  first underline in red, middle of the slide, that Android's

01:33:17  11  operating systems median opt-in rates is 81 percent.

01:33:24  12      THE COURT:  Do you know what hearsay exception the

01:33:27  13  Plaintiff relies upon?

01:33:30  14      MR. FLEMING:  I don't believe there is a hearsay

01:33:32  15  exception applicable here.

01:33:38  16      THE COURT:  All right.

01:33:39  17      MR. FLEMING:  But further, Your Honor, it's --

01:33:41  18  beyond the fact that the article itself is hearsay, the

01:33:44  19  more troubling part is the second layer of hearsay.

01:33:47  20      That figure, 81 percent, that's not a statement by

01:33:50  21  businessofapps.com.  That's a figure pulled from -- if you

01:33:54  22  read the clause introducing that sentence, according to

01:33:59  23  Airship's 2021 push notification benchmark.  So really

01:34:03  24  there's a second layer of hearsay here, where that figure

01:34:07  25  actually comes from another entity called Airship.

01:34:10    1        Now, I've clicked into that link, and I can't

01:34:13    2   access that report.  I think it's behind a paywall.  And as

01:34:13    3   far as I'm aware, it has not been produced in this case.

01:34:17    4   And my friends across the aisle will correct me if it has

01:34:23    5   been, but I've not seen it.  So there's a double layer of

01:34:26    6   hearsay here.

01:34:27    7        THE COURT:  All right.  Mr. Fleming, I'm going to

01:34:30    8   interrupt you and ask the Plaintiff to respond to that

01:34:33    9   objection, and perhaps I'll get you back up.

01:34:36   10        MR. KROEGER:  Thank you, Your Honor.

01:34:37   11        The hearsay objection we are relying on is

01:34:43   12   803(17), market reports and similar commercial

01:34:49   13   publications.  I'll admit this is a narrow exception, but

01:34:52   14   taking this Court's opinion in Bianco versus Globus Med,

01:34:53   15   what we're looking at is essentially -- is to make sure

01:34:59   16   it's a complication -- it's a compilation of data, not

01:35:02   17   subjective assessments.

01:35:02   18        And the kinds of publications contemplated by the

01:35:06   19   rule are those which deal with complications of relatively

01:35:07   20   straightforward objective facts.  That is what we submit

01:35:12   21   this article is, Your Honor.

01:35:13   22        It summarizes -- and I can put it on the ELMO --

01:35:18   23   if I can have the ELMO.

01:35:18   24        But it summarizes 600 billion push notifications

01:35:24   25   sent to 2 billion users in 2021.  And the kinds of data

| | | |
|---|---|---|
| 01:35:30 | 1 | summarized on here -- here's that 81 percent number, medium |
| 01:35:43 | 2 | opt-in rates for Android devices. |
| 01:35:45 | 3 | Other things we see in this market report are |
| 01:35:49 | 4 | graphs showing the types of push notifications.  There's |
| 01:35:55 | 5 | also the results of surveys of push notification users. |
| 01:36:02 | 6 | This is, you know, a rare thing, a study of push |
| 01:36:06 | 7 | notifications.  It is the kind of thing that those in the |
| 01:36:08 | 8 | mobile and cell phone industry would rely on, and it's been |
| 01:36:09 | 9 | relied on by our expert for that purpose.  And the primary |
| 01:36:12 | 10 | purpose that he does rely on it for is for that 81-percent |
| 01:36:16 | 11 | number.  So we think it would be exempted from hearsay |
| 01:36:20 | 12 | under 803(17). |
| 01:36:23 | 13 | THE COURT:  All right.  Mr. Fleming? |
| 01:36:33 | 14 | MR. FLEMING:  Yes, Your Honor. |
| 01:36:34 | 15 | At best, that argument would cure one level of |
| 01:36:37 | 16 | hearsay, that the Airship 2021 push notification benchmark |
| 01:36:44 | 17 | would be a market report.  We don't concede that that's to |
| 01:36:47 | 18 | be true, but at best, they've only addressed the first |
| 01:36:48 | 19 | layer of hearsay. |
| 01:36:49 | 20 | They haven't offered the Airship benchmark into |
| 01:36:52 | 21 | evidence today.  What they've offered is an article |
| 01:36:57 | 22 | summarizing and more importantly characterizing certain |
| 01:37:01 | 23 | findings found in that report and many others and made |
| 01:37:03 | 24 | certain conclusions.  So this goes far beyond the hearsay |
| 01:37:07 | 25 | exception for market reports.  This is an article loaded |

01:37:11    1  with characterizations and conclusions.

01:37:15    2          THE COURT:  All right.  Thank you, Mr. Fleming.

01:37:18    3          MR. KROEGER:  One -- furthermore, Your Honor, if

01:37:21    4  Your Honor does not agree with us that it's an admissible

01:37:24    5  learned -- it's an admissible market report under 803(17),

01:37:26    6  we would also offer it as something that can be shown or

01:37:30    7  published to the jury as a learned treatise under 703 or as

01:37:34    8  a demonstrative.

01:37:35    9          THE COURT:  Of course, you understand that a

01:37:36   10  learned treatise cannot be shown to the jury.  It's simply

01:37:40   11  read by your expert once he identifies it as such.

01:37:45   12          MR. KROEGER:  But we'd also offer to publish it

01:37:47   13  under 703 or as a demonstrative.

01:37:49   14          THE COURT:  Under the -- all right.  I'm going to

01:37:50   15  sustain the hearsay objection to PTX-392.  I do think that

01:37:59   16  it has a double hearsay issue.  And I also don't think that

01:38:04   17  it's simply a compilation of market statistics.  I think

01:38:09   18  it's a study with a conclusion.

01:38:15   19          But that doesn't mean that your expert can't rely

01:38:18   20  upon it.  And if you think you can qualify it as a learned

01:38:23   21  treatise, it doesn't need to be on your exhibit list for

01:38:26   22  that.

01:38:26   23          But I'll sustain the objection.

01:38:28   24          MR. FLEMING:  Your Honor, I'll move on to

01:38:31   25  Bucket 4.

| | | |
|---|---|---|
| 01:38:31 | 1 | THE COURT:  All right. |
| 01:38:32 | 2 | MR. FLEMING:  May I proceed? |
| 01:38:34 | 3 | THE COURT:  Yes. |
| 01:38:35 | 4 | MR. FLEMING:  Bucket 4 is titled Hearsay |
| 01:38:40 | 5 | Characterization of Unauthenticated Technical Data Subject |
| 01:38:44 | 6 | to Daubert of DLI, and that stands for de la Iglesia. |
| 01:38:50 | 7 | Bucket 4 is an objection to Exhibit PTX-91. |
| 01:38:57 | 8 | PTX-91 is a Google PowerPoint presentation titled Building |
| 01:39:03 | 9 | Push Applications for Android.  It's dated 2010.  And what |
| 01:39:09 | 10 | I want to highlight for you, and it's hard to see, but in |
| 01:39:11 | 11 | the bottom right is the Bates stamp, and it bears a |
| 01:39:15 | 12 | Headwater Bates stamp.  I flag that for you for the |
| 01:39:22 | 13 | understanding that this did not come from Google.  This |
| 01:39:24 | 14 | came from Headwater, presumably found on the Internet |
| 01:39:28 | 15 | somewhere.  I actually don't have the answer for that |
| 01:39:30 | 16 | question. |
| 01:39:30 | 17 | THE COURT:  It looks like it was created by |
| 01:39:34 | 18 | Google.  Do you have reason to suggest it's not? |
| 01:39:36 | 19 | MR. FLEMING:  I don't have a reason to suggest |
| 01:39:39 | 20 | it's not.  I also have not lodged an objection to |
| 01:39:43 | 21 | authenticity here.  I just highlight that this isn't |
| 01:39:46 | 22 | something that was produced in this case by Google.  I |
| 01:39:49 | 23 | don't know what the source originally for this is. |
| 01:39:52 | 24 | THE COURT:  Isn't 901 an objection to |
| 01:39:55 | 25 | authenticity? |

01:39:56   1          MR. FLEMING:  901 is inadvertently on this slide.

01:40:01   2   I apologize for that.  I believe it has been withdrawn from

01:40:04   3   the bucket list that we submitted to Your Honor.

01:40:06   4          THE COURT:  All right.

01:40:06   5          MR. FLEMING:  And to the extent it hasn't or

01:40:08   6   there's any ambiguity in the record, we formally withdraw

01:40:12   7   it.

01:40:13   8          THE COURT:  All right.  So what is your objection?

01:40:18   9          MR. FLEMING:  I have several, and I will begin

01:40:19  10   with hearsay.

01:40:20  11          As background, this PowerPoint presentation is

01:40:25  12   used by Headwater's technical expert, Mr. de la Iglesia.

01:40:31  13   And specifically what he's using from this PowerPoint

01:40:34  14   presentation is what you see in the fourth bullet point

01:40:37  15   down.  It says:  About .5 milliamp hours for a short poll.

01:40:47  16   That's a measure of energy consumed by the device in order

01:40:50  17   to do this action called a poll.

01:40:52  18          Mr. de la Iglesia uses that figure to calculate a

01:40:55  19   total battery savings, and then Headwater's damages expert

01:41:01  20   puts an amount of money on that figure.

01:41:06  21          So I'll begin with hearsay.  First off, it's

01:41:12  22   hearsay without exception.  But I raise this specific

01:41:17  23   exhibit because it's particularly troubling hearsay.  And

01:41:21  24   I'll use the 807 residual exception as sort of a guide.

01:41:26  25          The 807 residual exception requires two things,

01:41:32    1    right, guarantees of trustworthiness and that the evidence

01:41:34    2    is more probative than other evidence on the fact that it's

01:41:38    3    asserted.

01:41:38    4         Now, starting with those guarantees of

01:41:40    5    trustworthiness, there are none in this exhibit.

01:41:43    6         THE COURT:  I can tell you that to the extent that

01:41:46    7    the hearsay rule applies, I would think that the relevant

01:41:52    8    issue would be is this being offered for the truth or for

01:41:55    9    the fact that Google describes its technology as based on

01:41:59   10    it?

01:42:01   11         MR. FLEMING:  It's being offered for the truth

01:42:03   12    that it asserts, right?  It's being offered to prove that a

01:42:06   13    poll requires .5 milliamps hours of energy.  That is what

01:42:12   14    it's being offered, and that is how Dr. De la Iglesia uses

01:42:15   15    this exhibit.

01:42:19   16         Now, the problem is, we have no guarantees of

01:42:24   17    trustworthiness presented in this exhibit as to that

01:42:27   18    calculation.  For starters, we don't know the source.  We

01:42:31   19    don't know where this document --

01:42:32   20         THE COURT:  How is it we don't know the source?

01:42:35   21    The source is Google, right?

01:42:37   22         MR. FLEMING:  The source is Google, it appears.

01:42:39   23    This was not produced by Google, but it does appear that

01:42:42   24    the source is Google.

01:42:44   25         But in terms -- what I mean is, you know, it

01:42:49    1    appears to be a presentation, but we don't know, for

01:42:52    2    example, if this is a draft or if this was the final

01:42:54    3    version of the presentation that was ultimately presented

01:42:58    4    at a conference.  We have no background on where this

01:43:01    5    document comes from.

01:43:03    6        And what that leads to is not understanding how

01:43:06    7    they reached that conclusion that a poll requires .5

01:43:10    8    milliamp hours, right?  We don't know the kind of testing

01:43:13    9    that went into finding that number.  We don't know if they

01:43:15   10    conducted a study.  We don't know what level of rigor went

01:43:20   11    into that.

01:43:21   12        And more importantly, we don't the tolerance or

01:43:25   13    margin of error on that, right?  I don't know if the

01:43:28   14    tolerance on that number is plus or minus 5 percent or if

01:43:31   15    the tolerance for a poll is anything from .5 microamp hours

01:43:36   16    to .5 milliamp hours, and the author decided to take the

01:43:41   17    high end to be conservative, as engineers do.  We don't

01:43:47   18    know anything about that because we don't have any sort of

01:43:50   19    description of how they reached this number.

01:43:52   20        THE COURT:  Is Google in this describing its --

01:43:54   21    the operation and development of its own products?

01:43:58   22        MR. FLEMING:  I think it's fair to characterize it

01:44:05   23    as yes and no.  Yes, it would be fair to characterize this

01:44:08   24    as the operation of its products.  I'm not sure it speaks

01:44:11   25    to the development of its products.  But what that makes me

01:44:17   1   think of is the second prong under the residual exception,

01:44:23   2   right, which is what is the most probative source of this

01:44:26   3   information?

01:44:27   4       If you're an engineer developing a WiFi radio and

01:44:31   5   you need to know what the amount of energy consumed by a

01:44:34   6   poll is, you're not going to just trust blindly a single

01:44:39   7   bullet point in an arbitrary PowerPoint presentation.

01:44:41   8   You're going to look for a technical data specification.

01:44:44   9   You're going to conduct testing.  You're going to conduct

01:44:47  10   studies.  So this is the least reliable source for this

01:44:50  11   information.

01:44:50  12       THE COURT:  I mean, it appears to me to be a

01:44:53  13   technical -- technical documentation of Google's product.

01:45:02  14   And maybe if you show me more of it, I'll understand it to

01:45:05  15   be something else.  But technical manuals are generally not

01:45:10  16   considered hearsay.  They're -- it's the fact that the

01:45:15  17   manufacturer says those things that makes them relevant.

01:45:28  18       MR. FLEMING:  Yeah, I don't think -- my response,

01:45:42  19   Your Honor, is that, one, you know, we cannot concede that

01:45:45  20   this is a Google document.  This was not produced by

01:45:48  21   Google.

01:45:48  22       But more importantly, this is not related to a

01:45:50  23   Google product, right?  This is talking generally, as an

01:45:54  24   academic matter, about the theory of polling.  This is not

01:45:59  25   tied to --

| | | |
|---|---|---|
| 01:46:00 | 1 | THE COURT:  Are you withdrawing what you said |
| 01:46:01 | 2 | initially about not contesting the authenticity of this? |
| 01:46:06 | 3 | MR. FLEMING:  I'm not lodging an objection to |
| 01:46:08 | 4 | authenticity, meanwhile I'm also not conceding that this is |
| 01:46:13 | 5 | a Google doc.  I mean, the fact is that it's not a document |
| 01:46:17 | 6 | produced by Google, regardless of what I think. |
| 01:46:22 | 7 | THE COURT:  All right.  Is there more in this |
| 01:46:28 | 8 | document that you are objecting to than we have on the |
| 01:46:31 | 9 | screen on Slide 7? |
| 01:46:33 | 10 | MR. FLEMING:  Yes, Your Honor, but the objection |
| 01:46:36 | 11 | is to the entire document.  But the problematic aspect of |
| 01:46:40 | 12 | this document is what is shown on the screen, right?  And |
| 01:46:44 | 13 | so I believe the entire exhibit can't come in under the |
| 01:46:48 | 14 | hearsay rule for what I've already argued.  However, the |
| 01:46:52 | 15 | specific technical data point that matters here is that .5 |
| 01:46:56 | 16 | milliamp hours. |
| 01:46:57 | 17 | THE COURT:  All right. |
| 01:46:58 | 18 | MR. FLEMING:  And I'd just like to add one thing, |
| 01:47:01 | 19 | Your Honor. |
| 01:47:01 | 20 | THE COURT:  Go ahead. |
| 01:47:02 | 21 | MR. FLEMING:  Related to the hearsay objection is |
| 01:47:03 | 22 | the lack of foundation, right?  And they're prejudicial to |
| 01:47:06 | 23 | Samsung for the same reason.  We have this conclusory value |
| 01:47:10 | 24 | of .5 milliamp hours that we don't know how we got there. |
| 01:47:15 | 25 | We don't know what went into calculating that number.  And |

01:47:15  1    the reason we don't know is because Headwater has not

01:47:20  2    produced in this case a witness who can lay foundation for

01:47:22  3    this document.

01:47:23  4         There is a Google representative in this case,

01:47:26  5    Mr. Todd Hansen, and they did ask Mr. Todd Hansen at his

01:47:30  6    deposition about this document.  He had never seen this

01:47:32  7    document.  He had never been to this presentation.  He had

01:47:35  8    no knowledge of how they collected this technical data.

01:47:37  9    There's no information to be gathered.

01:47:40  10        Now, this puts us in a position where they want

01:47:43  11   the jury to accept as true that a poll costs .5 milliamp

01:47:49  12   hours with no indication of veracity to that.  And Samsung

01:47:54  13   now has no opportunity to cross-examine that conclusion and

01:47:59  14   to know if that is a conservative measurement, an accurate

01:48:04  15   measurement, or anything.

01:48:05  16        THE COURT:  When was this document provided to

01:48:07  17   you?

01:48:07  18        MR. FLEMING:  I don't have the specific date on

01:48:11  19   hand.  I imagine during discovery.

01:48:14  20        THE COURT:  All right.  So why have you not had

01:48:20  21   the opportunity to explore it?

01:48:22  22        MR. FLEMING:  Because it's inadmissible under the

01:48:24  23   Rules of Evidence, and so, you know, there's a lot of

01:48:27  24   documents produced in this case, and we have to -- we have

01:48:32  25   to choose where to invest the resources.  And this is an

01:48:35    1    inadmissible exhibit.

01:48:35    2         THE COURT:  Well, we'll see --

01:48:39    3         MR. FLEMING:  And, Your Honor, I'll just add, I

01:48:41    4    think that's a burden shift, right?  I think they have the

01:48:43    5    burden to establish the foundation for this document, and

01:48:46    6    then we get to challenge that.  It shouldn't be our burden

01:48:49    7    to take every random document they hand over to us,

01:48:52    8    establish the foundation, and then question the -- and then

01:48:56    9    question that foundation.

01:48:57    10        THE COURT:  All right.  Thank you, Mr. Fleming.

01:49:01    11        MR. PICKENS:  James Pickens for Headwater.  I need

01:49:14    12   to correct a couple of things.

01:49:16    13        So Samsung produced this document to us as

01:49:20    14   SAMSUNG_PRIORART2_7087.  They produced this document to

01:49:28    15   Headwater at least as early as November 30, 2023 as part

01:49:33    16   their prior art contentions.

01:49:35    17        They told us they were relying on this document

01:49:38    18   not only, you know, as prior art.  They said this is our

01:49:42    19   prior art production.  They found this.  They gave this to

01:49:45    20   us.  And then they told us in discovery that polling is the

01:49:49    21   non-infringing alternative that they contend is relevant to

01:49:52    22   this case.

01:49:52    23        So they gave us this document, and they told us

01:49:56    24   here's this document.  This is what we're using to show

01:49:59    25   that polling is the non-infringing alternative.

01:50:03   1          And so I completely disagree that this is a case

01:50:07   2   where Headwater produced something to them.  Samsung, the

01:50:11   3   company, produced this to us, and then -- so they've had it

01:50:18   4   for the entire lawsuit.  They can't be prejudiced from a

01:50:22   5   document that they brought into the case.  They subpoenaed

01:50:25   6   Google on this document, and they had every opportunity to

01:50:27   7   investigate the document and its contents.

01:50:30   8          THE COURT:  What do you mean they subpoenaed

01:50:32   9   Google on this document?

01:50:33  10          MR. PICKENS:  So they issued a subpoena to Google

01:50:38  11   on their prior art production that they had given us.  So

01:50:42  12   when they subpoenaed Google, they said we want to talk

01:50:45  13   about the prior art production that we -- that they made to

01:50:48  14   Headwater in this case.  So I think that they actually --

01:50:51  15   you know, the subpoena to Google covered this.

01:50:55  16          And then I wanted to go through the Hansen -- when

01:51:00  17   Google produced a witness designated on this document, we

01:51:04  18   went through it and established the business record

01:51:06  19   exception applies because this is a Google business record.

01:51:09  20          THE COURT:  So how did you refer to this document

01:51:13  21   with Mr. Hansen?

01:51:17  22          MR. PICKENS:  May I have the document camera,

01:51:19  23   please?

01:51:19  24          So there's a number of things that we covered with

01:51:31  25   Mr. Hansen about this.  So this is at Hansen Transcript

01:51:35    1    180, Line 16, and we introduced this as Exhibit 14 to his

01:51:42    2    deposition.  And he testified that he's familiar with this

01:51:47    3    Google I/O presentation as a general concept, and he

01:51:51    4    admitted he knows the author, Debajit Ghosh, G-h-o-s-h.

01:51:57    5    And he said that the author of this document was one of the

01:52:00    6    earlier developers of what is now FCM, the accused

01:52:04    7    technology.

01:52:05    8         We then confirmed with him that this is a Google

01:52:08    9    presentation that Google made in 2010 to the world, that

01:52:12    10   Mr. Ghosh actually gave this presentation.

01:52:21    11        So turning to Page 185 of Mr. Hansen's deposition,

01:52:25    12   we asked him, you know, what -- exactly what kind of

01:52:28    13   document is this, and he said at Line 13:  Google I/O is

01:52:35    14   about Google products and engineers getting a chance to

01:52:38    15   talk about what developers need to know outside of the

01:52:40    16   company.  So this is a public forum where third-party

01:52:44    17   developers come and listen to our presentations, learn

01:52:47    18   about the products, and get the most helpful information in

01:52:49    19   building their services.

01:52:50    20        So confirming that this was authored by Mr. Ghosh,

01:52:58    21   who also Mr. Hansen said is still at Google, Google

01:53:02    22   presented this in 2010.  This was the presentation they

01:53:04    23   gave.  This is what Samsung produced to us as the prior art

01:53:08    24   production.  And I think Mr. Hansen's testimony establishes

01:53:10    25   that this is intended to be accurate.  It's made at the

01:53:14    1    time of -- when the development team made this software.

01:53:20    2         The other thing I wanted to show Your Honor while

01:53:25    3    we were looking at the deposition --

01:53:25    4         THE COURT:  Mr. Pickens, before you move on --

01:53:28    5         MR. PICKENS:  Yes.

01:53:29    6         THE COURT:  -- is there something in that

01:53:32    7    transcript that connects PTX-91 with Deposition Exhibit 14?

01:53:36    8         MR. PICKENS:  I can do that.  No problem.

01:53:38    9         The only difference between PTX-91 and the version

01:53:43    10   Samsung produced is Samsung produced the black and white

01:53:45    11   version, and this is just the color version.  But I can

01:53:48    12   show you that right now.

01:54:02    13        So Exhibit 14 is the document entitled Google I/O

01:54:12    14   Bates SAMSUNG_PRIORART2_0007087.

01:54:16    15        Samsung actually attached this presentation to

01:54:19    16   their October 27, 2023 subpoena to Google.  So this was

01:54:23    17   actually in the actual subpoena package delivered to

01:54:25    18   Google.  And PTX-91 is identical in all respects except

01:54:30    19   it's a color version.

01:54:39    20        THE COURT:  All right.  Thank you, Mr. Pickens.

01:54:40    21        MR. PICKENS:  I also just wanted to add that at

01:54:43    22   Page 182, we actually asked him about this specific slide

01:54:47    23   on the polling.  And we asked him, you know, what -- what

01:54:54    24   was this?

01:54:54    25        And he said -- Slide 7, we asked him, quote, Slide

01:55:02  1    7 describes the impact of polling on battery.  And then we

01:55:05  2    asked:  Do you have any reason to doubt the information on

01:55:07  3    the page?

01:55:08  4          And he said:  I mean, it shows the impact of

01:55:11  5    polling as was measured in their tests.

01:55:13  6          And turning back to the document itself, it says

01:55:18  7    the source is the Android development team at Google.  So

01:55:22  8    they -- and it also says later in the presentation they

01:55:26  9    tested a Nexus One to show what this effect was of

01:55:30  10   introducing this technology relative to the past.

01:55:37  11          THE COURT:  All right.  Thank you, Mr. Pickens.

01:55:39  12          Mr. Fleming, do you disagree with that?

01:55:42  13          MR. FLEMING:  Yes, Your Honor.

01:55:52  14          First off, to correct the record, my understanding

01:55:54  15   is Hansen was not designated on this document.  They could

01:55:58  16   have -- Headwater could have, perhaps should have

01:56:01  17   subpoenaed the author of the document, Mr. Ghosh.

01:56:08  18          Headwater now attempts to, through Mr. Hansen, who

01:56:11  19   admits to having no personal knowledge and is just reading

01:56:14  20   the words on the page and speculating as to what they could

01:56:18  21   mean...

01:56:18  22          THE COURT:  Thank you, Mr. Fleming.

01:56:20  23          I'll overrule the objection and pre-admit PTX-91.

01:56:25  24          Let's go to PTX-285.

01:56:40  25          MR. FLEMING:  Bucket 5 is titled Irrelevant

01:56:45    1    Market.

01:56:45    2              This objection is to PTX-285.

01:56:51    3              PTX-285 is a Samsung presentation -- PowerPoint

01:56:58    4    titled 3rd Private Push Channel.

01:57:03    5              The background for this document appears to be

01:57:06    6    what we see in the top leftmost bullet point, and it's

01:57:11    7    talking about how the Chinese market cannot use Google FCM,

01:57:18    8    and a few -- it says:  A few China market apps use SPP.

01:57:22    9              It seems to be dealing -- grappling with this

01:57:26   10    problem that Google's FCM is not able to be used within the

01:57:30   11    Chinese market.

01:57:30   12              In the second bullet point, we see sort of the

01:57:33   13    objective of this presentation, which is the author trying

01:57:36   14    to come up with a solution for that problem.  They propose

01:57:39   15    one -- what we see on the right side of this presentation

01:57:43   16    in Stage 1 and Stage 2 bullets, Stage 1 suggesting that

01:57:49   17    they might start with using a third-party alternative, and

01:57:54   18    then Stage 2 building out some sort of Samsung in-house

01:57:59   19    alternative to be used for Google's FCM.

01:58:01   20              This presentation is used by Headwater's damages

01:58:08   21    expert to speculate that because Google's FCM is disallowed

01:58:12   22    in the Chinese market, that Samsung sought to develop a

01:58:17   23    replacement push technology in the Chinese market.

01:58:19   24              Your Honor, the objection here is it's just not

01:58:22   25    relevant at all.  Everything contained in this presentation

01:58:25    1    is dealing with a specific issue in the Chinese market.

01:58:29    2    There's nothing in this presentation that ties to Samsung's

01:58:34    3    U.S. activities or the products accused of infringement in

01:58:37    4    this case.

01:58:39    5          And more importantly, Mr. Dell, nor Headwater have

01:58:42    6    offered any evidence or testimony to connect these

01:58:47    7    statements to any of Samsung's U.S. activities.

01:58:50    8          So the objection is simply relevance.

01:58:52    9          THE COURT:  Thank you, Mr. Fleming.

01:58:57    10         MR. KROEGER:  Thank you, Your Honor.  Paul

01:59:00    11   Kroeger.

01:59:00    12         The objection is simply 402/403, and they admit

01:59:06    13   this was relied on by our expert in his expert report and

01:59:09    14   is not subject to a Daubert motion.  We think for that

01:59:12    15   reason alone, the objection should be overruled.

01:59:15    16         But more importantly, Your Honor, this is a

01:59:17    17   Samsung-produced document.  It's a party admission.  And

01:59:22    18   what Mr. Dell uses this for -- where it says China market

01:59:27    19   cannot use Google FCM, but they need to have some push

01:59:32    20   solution, Mr. Dell uses this to show that without FCM,

01:59:36    21   Samsung would have to find another push channel because it

01:59:39    22   wants the benefits shown on this page.  So we think we've

01:59:43    23   clearly met the relevance standard, and it's not unduly

01:59:47    24   prejudicial.

01:59:47    25         THE COURT:  All right.  Thank you, Mr. Kroeger.

01:59:51    1          Mr. Fleming, that sounds like a sufficient basis

01:59:55    2    for relevance, and I haven't heard any unfair prejudice.

02:00:02    3          Is there something you want to point out?

02:00:04    4          MR. FLEMING:  Yes, Your Honor.

02:00:05    5          It's simply the fact that because this document

02:00:07    6    only speaks to activities happening in the Chinese market,

02:00:10    7    the jury's going to be confused in thinking that that bears

02:00:13    8    some relevance to what's happening in the U.S. or what's

02:00:16    9    happening with the accused products.

02:00:18    10         It almost bears a propensity argument that because

02:00:23    11   Samsung is doing this in the Chinese market, it suggests

02:00:25    12   that maybe they're also doing it in the U.S. market, and

02:00:28    13   there's just no link there at all.  So frankly, the

02:00:31    14   prejudice is just confusion to the jury.

02:00:32    15         THE COURT:  All right.  I think that

02:00:36    16   cross-examination can address that.

02:00:39    17         I'll overrule the objection and pre-admit PTX-285.

02:00:45    18         MR. FLEMING:  Yes, Your Honor.

02:00:46    19         THE COURT:  That takes us to 477.

02:00:58    20         MR. BRIGHT:  Good morning (sic), Your Honor.

02:01:27    21   Jonathan Bright for Samsung.

02:01:28    22         So I'm trying to -- I apologize, Your Honor.

02:01:28    23   There it goes.

02:01:41    24         So 477 is a website from

02:01:48    25   developer.android.google.com.  It's entitled Security

02:01:48  1  Checklist.  Our primary objection to this one, it's

02:01:49  2  untimely.  It was produced to us last week, March 17th.

02:01:53  3  I'm not aware of it ever being cited in an expert report or

02:01:57  4  in infringement contentions.  So at least for that reason,

02:02:01  5  we think it's just way too late to be added to the exhibit

02:02:04  6  list now.

02:02:04  7         If you'd like to hear more, I'm happy to explain.

02:02:09  8         THE COURT:  Let's let me hear from them as to

02:02:11  9  whether they can get past that.

02:02:22  10         MR. KRIS DAVIS:  Thank you, Your Honor.  Kris

02:02:24  11  Davis for Plaintiff, Headwater.

02:02:25  12         Your Honor, on the timeliness point, Samsung was

02:02:30  13  obligated at the outset of this case to produce documents

02:02:34  14  showing how the accused functionality works.  That's

02:02:37  15  exactly what this document is.

02:02:39  16         Samsung specifically pointed to

02:02:44  17  developer.android.com web pages as a reliable source of

02:02:46  18  information on the accused functionality.  Their

02:02:50  19  interrogatory responses, including to our Interrogatories 4

02:02:53  20  and 5, specifically about technical operation of the

02:02:56  21  accused products, they point to developer.android.com as

02:03:01  22  the relevant source.

02:03:03  23         Their non-infringement contentions, Your Honor,

02:03:06  24  point to developer.android.com specifically as a source of

02:03:10  25  information about how the accused products work.

02:03:12   1        Google witness, Todd Hansen, who we've heard will

02:03:16   2   be Samsung's primary witness at trial, testified that the

02:03:20   3   Android developer web pages are accurate and that they're

02:03:23   4   intended for a technical audience of software developers.

02:03:26   5   That's what he said.

02:03:27   6        And, Your Honor, Headwater's technical expert,

02:03:31   7   Mr. de la Iglesia, cites extensively to Android developer

02:03:36   8   web pages in his report, including pages that are

02:03:39   9   related --

02:03:39  10        THE COURT:  Mr. Davis?

02:03:41  11        MR. KRIS DAVIS:  -- specifically --

02:03:43  12        THE COURT:  Mr. Davis, why was this not produced

02:03:47  13   until last week?

02:03:51  14        MR. KRIS DAVIS:  Your Honor, the honest truth is

02:03:53  15   that's when we found it.  We think this should have been

02:03:56  16   produced from the outset by Samsung, and we should not be

02:04:00  17   punished for that.  That's Samsung's fault for not having

02:04:03  18   to produce this information.  They produced numerous other

02:04:08  19   Android developer web pages, but they skipped over this one

02:04:11  20   for whatever reason, intentionally or accidentally,

02:04:14  21   whatever it may be.

02:04:15  22        But the simple fact is we didn't have the

02:04:17  23   opportunity to use this during discovery, but at the very

02:04:22  24   least, we should be permitted to have the jury read and

02:04:25  25   consider it.  It's clearly very, very relevant, the word

02:04:30    1    matching with the specification --

02:04:33    2          THE COURT:  Does this come --

02:04:34    3          MR. KRIS DAVIS:  I'm sorry, go ahead.

02:04:36    4          THE COURT:  Does this come from a public website?

02:04:38    5          MR. KRIS DAVIS:  Yes, it does, Your Honor.

02:04:40    6    Developer.android.com is a public website.

02:04:44    7          THE COURT:  And that's a website that you were

02:04:46    8    referred to early on in discovery?

02:04:47    9          MR. KRIS DAVIS:  Yes, Your Honor.

02:04:47   10          We were referred to -- of course,

02:04:51   11    developer.android.com is a number of different web pages

02:04:53   12    and subpages, and so we found some, Samsung found some and

02:04:56   13    produced some of those to us.  They did not find or they

02:05:01   14    did not produce this particular subpage.  We did not either

02:05:06   15    until last week.  We think it should have been produced.

02:05:10   16    It's very clearly relevant.  It refers to things like

02:05:14   17    interprocess communication that are explicitly relevant to

02:05:18   18    patents like the '117 patent asserted here.  There's no

02:05:24   19    dispute about reliability, authenticity.

02:05:28   20          Any issues can be dealt with on cross-examination.

02:05:31   21    We think it's just fundamentally unfair that, you know,

02:05:35   22    yes, we're adding this at a late stage, Your Honor.  But

02:05:38   23    it's not our fault that it wasn't produced to us as

02:05:41   24    evidence of how the accused features work.

02:05:51   25          THE COURT:  All right.  Thank you, Mr. Davis.

| | | |
|---|---|---|
| 02:05:52 | 1 | Mr. Bright, tell me why this is not something that |
| 02:06:00 | 2 | was produced to the Plaintiff by Samsung during discovery. |
| 02:06:04 | 3 | MR. BRIGHT:  Your Honor, my first response to that |
| 02:06:08 | 4 | is it's not actually a Samsung document.  It's a Google |
| 02:06:11 | 5 | document. |
| 02:06:11 | 6 | Perhaps my second point is that this document |
| 02:06:15 | 7 | actually doesn't have anything to do with the technology |
| 02:06:19 | 8 | that's accused in the case. |
| 02:06:21 | 9 | There it goes. |
| 02:06:22 | 10 | I'll point out something else, too.  So, first, my |
| 02:06:27 | 11 | colleague was referring to developer.android.com.  That is |
| 02:06:31 | 12 | a massive website with a lot of subpages, and this is but |
| 02:06:34 | 13 | just one of many, many.  It describes the entire Android |
| 02:06:38 | 14 | operating system, right, Your Honor?  So this is a lot of |
| 02:06:42 | 15 | technology that goes in the phone, and I don't believe |
| 02:06:44 | 16 | there's any references in here to Firebase Cloud Messaging. |
| 02:06:49 | 17 | I don't think -- just because this is Android |
| 02:06:52 | 18 | documentation, I don't think Headwater gets, you know, free |
| 02:06:55 | 19 | reign to inject whatever they want to about the Android |
| 02:06:58 | 20 | operating system into the case.  No experts have talked |
| 02:07:02 | 21 | about it, no fact witnesses have talked about it.  I really |
| 02:07:04 | 22 | have no idea how they're going to be using this. |
| 02:07:07 | 23 | And just to emphasize that point, too, that it |
| 02:07:09 | 24 | doesn't have anything to do with the technology in this |
| 02:07:11 | 25 | case, I think you heard from Mr. Pickens at the outset that |

02:07:14    1    the technology that's accused here, FCM, is different from

02:07:16    2    Android.  They're not synonyms.  They happen to coexist on

02:07:20    3    a Samsung phone, but they're different functionalities.

02:07:23    4    And we just don't think that this -- A, we think this --

02:07:27    5    this evidence is untimely; but, B, we don't think Samsung

02:07:31    6    is under any obligation to hunt down and find anything --

02:07:37    7    anything and everything in Android that Headwater could

02:07:40    8    potentially try to use to meet the claim language.

02:07:43    9              THE COURT:  All right.

02:07:45    10             MR. KRIS DAVIS:  Your Honor, just briefly, if I

02:07:47    11   may?

02:07:47    12             THE COURT:  All right.  Mr. Bright -- Mr. Davis.

02:07:52    13             MR. KRIS DAVIS:  Your Honor, Samsung -- we didn't

02:08:00    14   know this until late in the discovery, but Samsung built

02:08:03    15   its non-infringement case around this issue of we do not do

02:08:08    16   secure communication, secure interprocess communication.

02:08:12    17   From the outset, we accused interprocess communication in

02:08:15    18   our infringement contentions.  That phrase is explicitly on

02:08:20    19   the web page that we just saw, PTX-477.

02:08:22    20             That material should have been produced to us.

02:08:27    21   It's really just as simple as that, Your Honor.  They

02:08:29    22   produced numerous web pages.  I heard Mr. Bright say that,

02:08:34    23   well, it's a Google web page.  Why would we be producing

02:08:37    24   it?  Well, why did Samsung produce numerous other Android

02:08:42    25   developer web pages?

02:08:43    1          THE COURT:  What evidence do you have that Samsung

02:08:46    2    had this document to produce?

02:08:48    3          MR. KRIS DAVIS:  I don't have evidence, Your

02:08:52    4    Honor, that Samsung's counsel had this particular subpage

02:08:56    5    to produce to us.

02:08:59    6          THE COURT:  Well, I mean --

02:09:00    7          MR. KRIS DAVIS:  And so that's why, Your Honor,

02:09:01    8    we're not -- we're not seeking any sort of sanction or

02:09:04    9    accusing that it was, you know, improperly withheld or what

02:09:07   10    have you.  We just think that at this stage, at the least,

02:09:11   11    we should be able to simply present it to the jury, and the

02:09:15   12    jury can read it for themselves.  And if they don't think

02:09:17   13    that that's relevant, then they won't find it relevant.

02:09:22   14          THE COURT:  All right.  I'll sustain the objection

02:09:24   15    to 477.  I think it arises too late in the case.

02:09:33   16          That takes us to the Plaintiff's objections.

02:09:40   17          MR. TSUEI:  Good afternoon, Your Honor.  James

02:09:45   18    Tsuei for the Plaintiff, Headwater.

02:09:48   19          Before I begin, just to give the Court a roadmap,

02:09:52   20    I'll be addressing the Buckets 1 and 2 on the list.  So

02:09:56   21    that's the Bucket 1, Microsoft Source Code; and Bucket 2,

02:10:01   22    Unauthenticated Hearsay Documents.

02:10:02   23          I've got copies of the relevant papers for the

02:10:06   24    Court, and so I'll ask the Court's permission to approach

02:10:09   25    and hand them up?

02:10:10  1          THE COURT:  All right.

02:10:35  2          MR. TSUEI:  Okay.  Starting with Bucket 1.  So

02:10:38  3  Bucket 1, Your Honor, refers to roughly 407 pages of source

02:10:42  4  code produced by a third party in this case, Microsoft, as

02:10:46  5  well as a non-source code page, which is the declaration of

02:10:50  6  a custodian attesting for Microsoft, which I've handed up a

02:10:55  7  copy -- which I've handed up a copy.

02:10:58  8          So the reason why that Headwater is objecting to

02:11:02  9  PTX- -- or DTX-1 is because that the prior art invalidity

02:11:06  10  grounds on which Samsung had their technical expert offer

02:11:11  11  opinions for invalidity have since been withdrawn from the

02:11:15  12  case, or rather, unelected per the usual required narrowing

02:11:19  13  in advance of trial.

02:11:21  14          And so, in other words, in plain English, the

02:11:24  15  Microsoft prior art system that was formerly at issue in

02:11:27  16  the case is no longer at issue in the case.

02:11:29  17          And so for that reason, there's substantially, I

02:11:34  18  think, a great deal of unfair prejudice at risk here

02:11:37  19  because if the jury were to be handed 400 pages of source

02:11:41  20  code for a prior art system --

02:11:43  21          THE COURT:  Mr. Tsuei, what did the Defendant say

02:11:49  22  their response to your objection was when you discussed it

02:11:51  23  with them?

02:11:53  24          MR. TSUEI:  Yes, Your Honor.

02:11:55  25          So Samsung counsel articulated several reasons for

02:11:57    1    why they thought this source code should be in the case.

02:12:00    2    First, because they have their technical expert

02:12:03    3    alluding to some theory of non-infringing alternatives

02:12:07    4    that involves a modification to this Microsoft prior art

02:12:12    5    writ large.  But as we informed Samsung counsel during the

02:12:16    6    meet and confer, we don't see any opinions preserved on the

02:12:18    7    record where their technical expert made such opinions

02:12:21    8    relying on any analysis of Microsoft's source code.

02:12:24    9    And so for that reason, we told them we disagreed

02:12:27    10   with them and thought that it would be significantly more

02:12:30    11   prejudicial to just show these pages to the jury without

02:12:32    12   the proper context.

02:12:36    13   THE COURT:  All right.

02:12:37    14   MR. TSUEI:  So in addition to the unfair prejudice

02:12:40    15   risk, Your Honor, we also have additional objections, which

02:12:42    16   I'll just address briefly.

02:12:44    17   There's a hearsay objection, Your Honor, as to the

02:12:46    18   source code and also authenticity.

02:12:50    19   Now, as to the hearsay objection, the parties did,

02:12:52    20   of course, confer about the substance of the objection, and

02:12:55    21   Samsung counsel identified the declaration, a copy of which

02:12:59    22   I've handed up.

02:13:00    23   So I take it to mean that Samsung's position was

02:13:03    24   and continues to be that the source code in its entirety is

02:13:07    25   a business record under 803(6), and so to test that

| | |
|---|---|
| 02:13:11 | 1 |
| 02:13:15 | 2 |
| 02:13:18 | 3 |
| 02:13:20 | 4 |
| 02:13:25 | 5 |
| 02:13:27 | 6 |
| 02:13:30 | 7 |
| 02:13:38 | 8 |
| 02:13:39 | 9 |
| 02:13:40 | 10 |
| 02:13:43 | 11 |
| 02:13:46 | 12 |
| 02:13:46 | 13 |
| 02:13:49 | 14 |
| 02:13:54 | 15 |
| 02:13:56 | 16 |
| 02:14:00 | 17 |
| 02:14:02 | 18 |
| 02:14:06 | 19 |
| 02:14:09 | 20 |
| 02:14:12 | 21 |
| 02:14:17 | 22 |
| 02:14:18 | 23 |
| 02:14:21 | 24 |
| 02:14:24 | 25 |

1  assertion, we would, of course, look to 803(6) which

2  requires specific things to be established by the testimony

3  of a qualified custodian.

4         You'll see, Your Honor -- just matching the

5  averments in the declaration to the requirements of the

6  rule, you'll see that the declaration does not satisfy

7  803(6)(a), and 803(6)(c).  So respectfully that means --

8         THE COURT:  Mr. Tsuei --

9         MR. TSUEI:  Yes.

10        THE COURT:  -- I don't see how source code could

11 be hearsay.  It's not an assertion that the jury can

12 understand.

13        MR. TSUEI:  You're right, Your Honor.  There's

14 a -- there's, like, first the character of the code being

15 available at the time.  We understand that there may be no

16 assertions as to source code generally.  But within the

17 source code, there are additional statements about the

18 functionality of the code.

19        I don't have any examples off the top of my head,

20 Your Honor, but there are comments in the Microsoft source

21 code describing how this or that operation works and what

22 the intent of the code is supposed to be.  And so at

23 minimum, there are at least some degrees of hearsay

24 contained within the source code in that respect.

25        So the third objection, Your Honor, and I don't

02:14:26    1    want to forget it, is authenticity.

02:14:30    2            Now, we've maintained this objection not because

02:14:32    3    we disagree that this is Microsoft source code, but because

02:14:35    4    we disagree that there's been foundation laid to establish

02:14:38    5    that this is Microsoft source code that was from the

02:14:40    6    relevant time period which would need to be proven in order

02:14:44    7    for their technical expert to rely on it to opine about

02:14:50    8    non-infringing alternatives.

02:14:50    9            And so to answer that question, we, again, would

02:14:52   10    look to the declaration, which provides no such detail.

02:14:56   11    And at least as of today, our understanding is Samsung does

02:14:59   12    not intend to call a custodian of Microsoft for trial to

02:15:05   13    testify as to those facts.

02:15:06   14            THE COURT:  All right.  Thank you, Mr. Tsuei.

02:15:34   15            Mr. Bright, how would you intend to establish when

02:15:37   16    this source code was in use?

02:15:41   17            MR. BRIGHT:  Glad you asked, Your Honor.

02:15:43   18            Allow me to share a screen, which should be in

02:15:47   19    your binder, as well.

02:15:48   20            So Dr. Foster personally analyzed this source

02:15:57   21    code, and he discusses it at detail in his expert report,

02:16:01   22    albeit mostly in the context of prior art.  And I'll

02:16:04   23    revisit that in a moment.

02:16:05   24            But as far as establishing when it was actually

02:16:07   25    used, he -- it's source code for the Windows Mobile 6.0

02:16:15    1    operating system.  I'll return to this slide in a second.

02:16:17    2          As you can see, the code produced by Microsoft,

02:16:20    3    right in the file name, it describes it as Windows Mobile

02:16:25    4    6.0 code.  And Dr. Foster relies on the publicly available

02:16:29    5    source of information to establish that, you know, as early

02:16:32    6    as 2008, this source code was actually used in Windows

02:16:40    7    Mobile devices.

02:16:46    8          THE COURT:  All right.  And your expert relies --

02:16:48    9    your technical expert relies upon this as a potential

02:16:51    10   non-infringing alternative?

02:16:52    11         MR. BRIGHT:  Yes, Your Honor.

02:16:54    12         And just to give you some context for this, this

02:16:57    13   is a snippet from the non-infringing alternatives section

02:16:59    14   of his report.  And among the -- it refers to the prior art

02:17:03    15   as constituting non-infringing alternatives, and the

02:17:07    16   Microsoft system is among them.

02:17:09    17         And granted, his source code analysis is primarily

02:17:12    18   in the context of the prior art discussion.  You know, we

02:17:15    19   think it's germane to non-infringing alternatives, as well.

02:17:21    20         THE COURT:  Does he discuss it as a non-infringing

02:17:24    21   alternative?

02:17:24    22         MR. BRIGHT:  Yes, Your Honor.

02:17:26    23         This is at least one snippet where he references

02:17:28    24   it.  To the extent that Headwater argues that any of the

02:17:35    25   prior art discussed above does not invalidate, there would

02:17:39    1    be adequate alternatives, dot, dot, dot, the Microsoft

02:17:40    2    system already implemented and thus available and --

02:17:43    3    adequate and available.

02:17:50    4                THE COURT:  All right.  What do you say to the

02:17:51    5    argument that there are hearsay textual statements within

02:17:55    6    the source code?

02:17:57    7                MR. BRIGHT:  I agree with your first instinct,

02:18:00    8    Your Honor.  I don't also -- I also do not see this as

02:18:03    9    falling within -- as hearsay because, you know, the way

02:18:06    10    source code is written, it's an "if" statement, right?  If

02:18:09    11    X, then Y.  That's -- that statement is neither true nor

02:18:14    12    untrue.  It's just a condition.  It's more of a physical

02:18:17    13    object than a statement offered for the truth of the matter

02:18:24    14    asserted.

02:18:24    15                THE COURT:  All right.  Thank you, Mr. Bright.

02:18:35    16                Mr. Tsuei, I don't believe that this is hearsay.

02:18:38    17    I think that source code is used for a non-hearsay use.

02:18:47    18                Why shouldn't I accept what's been shown as an

02:18:52    19    expert declaration that this has relevance as a

02:18:56    20    non-infringing alternative?

02:18:57    21                MR. TSUEI:  Well, Your Honor, the short answer is

02:19:01    22    it's because the source code is not used by Samsung's

02:19:03    23    technical expert to support opinions about Microsoft prior

02:19:07    24    art as being a non-infringing alternative.

02:19:08    25                Now, I'll invite my colleague, Mr. Bright, to come

02:19:13  1  up here or anyone else from their team, point to source

02:19:18  2  code-based analysis in their expert report that they've

02:19:20  3  preserved opinions on where source code is used to support

02:19:22  4  or even give context to opinions about non-infringing

02:19:25  5  alternatives.  I'll submit to Your Honor and I'll proffer

02:19:28  6  for Your Honor that there is no such analysis.

02:19:30  7       And so in our view, when we first saw this on

02:19:34  8  their exhibit list most recently, we understood this to be

02:19:37  9  an intent to backdoor source code -- prior art source code

02:19:40  10  into the case, which we believe, as I stated earlier,

02:19:43  11  would, I think, irreparably prejudice Headwater.

02:19:49  12       THE COURT:  Other than through his opinion that

02:19:55  13  it's a non-infringing alternative, how would it prejudice

02:20:00  14  Headwater?

02:20:00  15       MR. TSUEI:  Well, Your Honor, if, for example,

02:20:05  16  despite the requirements of Rule 26, Samsung's expert is

02:20:08  17  allowed to opine as to particular limitations that are met

02:20:13  18  by the source code as a part of an NIA theory, I think that

02:20:17  19  would confuse the jury as to the probative weight of what

02:20:21  20  this source code actually should be used for.

02:20:22  21       I think in that context, such an opinion from

02:20:24  22  Samsung's expert would inform the jury and imply to the

02:20:28  23  jury that that code should be considered in the context of

02:20:30  24  invalidity.  And that's the risk that we are concerned

02:20:33  25  with.

02:20:35   1         THE COURT: All right. Thank you, Mr. Tsuei.

02:20:39   2         Mr. Bright, does the expert have any further

02:20:48   3  discussion of this particular Microsoft source code as a

02:20:52   4  non-infringing alternative other than the simple statement

02:20:57   5  that if it doesn't qualify as prior art or invalidating

02:21:04   6  art, that it could be a non-infringing alternative?

02:21:08   7         MR. BRIGHT: Yes, Your Honor. If I understand the

02:21:13   8  question -- allow me to share my screen again.

02:21:19   9         So first off, I will admit that the bulk of

02:21:24  10  Dr. Foster's source code analysis, it's all referring --

02:21:28  11  it's all in a section labeled prior art. But then, again,

02:21:33  12  here for non-infringing alternative, he refers to his

02:21:34  13  analysis above.

02:21:38  14         And to just maybe clarify a little bit more about

02:21:41  15  what this -- well, first, I'll address the prejudice -- the

02:21:44  16  prejudice comment for a second.

02:21:45  17         Headwater also had the opportunity to analyze the

02:21:48  18  source code. They also had an opportunity to have their

02:21:51  19  expert address it.

02:21:53  20         THE COURT: Is there any further discussion of

02:21:55  21  this source code in your technical expert's report?

02:21:59  22         MR. BRIGHT: Yes, Your Honor.

02:22:02  23         It's definitely all throughout the section

02:22:03  24  regarding prior art. That much -- it's incorporated by

02:22:18  25  reference as a non-infringing alternative, Your Honor.

02:22:22  1          THE COURT:  Is there some statement other than the

02:22:25  2  one that you've pointed out to me that frankly I would say

02:22:29  3  is a fairly boilerplate statement?

02:22:33  4          MR. BRIGHT:  There's more discussions of -- in the

02:22:37  5  opening report.  And we can scan it for a moment if you'd

02:22:40  6  like.  That was one of the better ones that came to mind

02:22:44  7  immediately.

02:22:46  8          THE COURT:  And I'm understanding that this source

02:22:51  9  code is talked about as prior art.

02:22:55  10          What I'm talking about is how it would qualify as

02:22:59  11  a non-infringing alternative.

02:23:01  12          MR. BRIGHT:  It's a non-infringing alternative

02:23:02  13  because it's an alternative push system that was available

02:23:07  14  at the time.  And to provide a little bit more gloss on how

02:23:10  15  this comes up, in some ways, this source code is meant to

02:23:14  16  be a bit of a prophylactic measure.  You know, it's our

02:23:17  17  position that the aggregated push messaging system

02:23:20  18  technique was extremely well known.  Dr. Raleigh actually

02:23:28  19  admitted that recently in a standing hearing.

02:23:29  20          THE COURT:  Mr. Bright, I appreciate that.

02:23:31  21          I have a very specific question.  I'm asking if

02:23:33  22  this expert had any other discussion of the Microsoft

02:23:36  23  source code as a non-infringing alternative, which as you

02:23:42  24  know, requires more than that it just be prior.  It has to

02:23:49  25  be a suitable, acceptable, adequate alternative.

02:23:54    1          MR. BRIGHT:  Yes, Your Honor -- well, the specific

02:23:57    2    source code itself is not necessarily described in

02:24:02    3    non-infringing alternative -- in the non-infringing

02:24:06    4    alternative section, but the Microsoft system itself is.

02:24:08    5          THE COURT:  All right.  So it's the system that's

02:24:10    6    embodied in this source code?

02:24:12    7          MR. BRIGHT:  That's correct, Your Honor.  That's

02:24:13    8    sort of -- that's perhaps the more cogent way to say

02:24:18    9    things, is that our expert contends that the Microsoft

02:24:20   10    system was an available alternative.  He identifies it as

02:24:23   11    such in his non-infringing alternative section.

02:24:26   12          And the actual source code is describing how that

02:24:29   13    system works.  And admittedly, the bulk of that source code

02:24:32   14    analysis is done in his prior art section.

02:24:39   15          THE COURT:  All right.  Thank you, Mr. Bright.

02:24:42   16          Mr. Tsuei, why isn't it sufficient if he discusses

02:24:47   17    the Microsoft system as an adequate non-infringing

02:24:55   18    alternative and elsewhere in the report discusses this

02:24:58   19    source code as embodying that system?  Why isn't that

02:25:04   20    adequate?

02:25:05   21          MR. TSUEI:  Well, my understanding is Samsung's

02:25:07   22    technical expert is not saying that the system by itself

02:25:13   23    and unmodified is a non-infringing alternative.  But I'm

02:25:15   24    sure my colleagues will correct me if I'm wrong.

02:25:18   25          What they're saying is that the system could be

02:25:20    1    modified to do other things to achieve the benefits of the

02:25:23    2    asserted patents.

02:25:23    3         Now, I take it Your Honor understood the point

02:25:27    4    that I was making earlier, which was there is no source

02:25:31    5    code base analysis to support his opinions about

02:25:35    6    non-infringing alternatives.

02:25:35    7         And I think to answer Your Honor's most current

02:25:39    8    question, why isn't it sufficient, I think the answer is

02:25:42    9    there has to be a balancing test or a balancing act made in

02:25:46   10    order to minimize unfair prejudice to Headwater and still

02:25:49   11    allow Samsung's expert to say the things that they want him

02:25:52   12    to say.

02:25:53   13         And so we take it, and, you know, we'll concede

02:25:55   14    that the documents that Samsung's expert cited in his

02:25:59   15    discussion about Microsoft prior art, for example, the

02:26:02   16    manuals, the websites, that Mr. Bright showed you,

02:26:05   17    et cetera, are probably fair game in terms of not being too

02:26:09   18    overly prejudicial to Headwater.

02:26:10   19         But the source code, meaning the 407 pages of

02:26:16   20    source code that Samsung wants to show to the jury and say

02:26:18   21    that this was a system that predated the asserted patents,

02:26:21   22    we believe is just by itself an act that would not yield

02:26:26   23    much probative value for the jury to consider and also at

02:26:31   24    the same time truly irreparably prejudice Headwater in

02:26:35   25    inferring -- in implying to the jury that this 407-page set

| | | |
|---|---|---|
| 02:26:41 | 1 | of source code is prior art that invalidates the asserted |
| 02:26:44 | 2 | patents. |
| 02:26:44 | 3 | And so, again, to answer your question in summary, |
| 02:26:47 | 4 | I think there has to be a balancing test. And we'd submit, |
| 02:26:51 | 5 | Your Honor, that the balancing test, I think, can't fairly |
| 02:26:53 | 6 | be concluded in a way that would unfairly prejudice |
| 02:26:58 | 7 | Headwater, and I think that means the source code should be |
| 02:27:01 | 8 | excluded, at least from the evidence -- evidentiary record. |
| 02:27:05 | 9 | THE COURT: All right. I'm going to overrule the |
| 02:27:07 | 10 | objection to DTX-1. I think an adequate foundation has |
| 02:27:15 | 11 | been laid and that the expert can discuss it in his |
| 02:27:19 | 12 | testimony. |
| 02:27:21 | 13 | So that takes us to DTX-19. |
| 02:27:26 | 14 | MR. TSUEI: Yes, Your Honor. |
| 02:27:27 | 15 | DTX-19 is an Elsevier article, I think, grabbed |
| 02:27:34 | 16 | from a website. It's dated on its face to 2016, and this |
| 02:27:39 | 17 | article is one which is cited by the technical expert from |
| 02:27:44 | 18 | Samsung, particularly in the context of rebutting |
| 02:27:47 | 19 | Headwater's expert's opinions about the technical benefits |
| 02:27:50 | 20 | of the asserted patents. |
| 02:27:51 | 21 | And so we see the attempt to introduce PTX- -- or, |
| 02:27:57 | 22 | sorry, DTX-19 into evidence as in violation for a basic |
| 02:28:02 | 23 | reason. It's just hearsay that their expert relies on. We |
| 02:28:07 | 24 | don't believe that there is an exception to the hearsay |
| 02:28:10 | 25 | rule that would apply here, and certainly none were |

| | | |
|---|---|---|
| 02:28:14 | 1 | articulated to us during meet and confer. |
| 02:28:19 | 2 | THE COURT:  All right. |
| 02:28:20 | 3 | MR. BRIGHT:  Thank you, Your Honor. |
| 02:28:34 | 4 | This particular document, it in some ways bears |
| 02:28:38 | 5 | some similarities to its twin brother.  This is DTX-19, and |
| 02:28:42 | 6 | you heard arguments this morning about DTX-91 (sic). |
| 02:28:45 | 7 | DTX-91 (sic) is a document that's the Google |
| 02:28:49 | 8 | presentation that refers to .5 milliamp hours.  This one is |
| 02:28:55 | 9 | somehow ironically 19, instead of 91, and it's being shown |
| 02:28:59 | 10 | for the sort of -- it has sort of the same relevance here. |
| 02:29:03 | 11 | The difference with this document, though, is that |
| 02:29:05 | 12 | it's an actual peer-reviewed article by the Journal of |
| 02:29:10 | 13 | Pervasive and Mobile Computing.  It has quite a lot of |
| 02:29:14 | 14 | detail in here about how the experiments were run, what |
| 02:29:14 | 15 | devices were tested, what software they use, and we think |
| 02:29:19 | 16 | at a minimum this falls under -- as a learned treatise |
| 02:29:24 | 17 | exception, an exception to hearsay. |
| 02:29:25 | 18 | THE COURT:  Which, as you know, means it cannot be |
| 02:29:29 | 19 | admitted. |
| 02:29:29 | 20 | MR. BRIGHT:  Yes, Your Honor.  I appreciate that. |
| 02:29:34 | 21 | With that in mind, our other basis would be as a |
| 02:29:37 | 22 | residual exception.  This is, you know, squarely within the |
| 02:29:41 | 23 | expert's expertise, right?  These are the exact sort of |
| 02:29:44 | 24 | materials that an expert would rely upon.  But I |
| 02:29:47 | 25 | understand, Your Honor, if you consider this more of a |

02:29:49    1    learned treatise exception.

02:29:50    2         THE COURT:  I think it's in the heartland of the

02:29:53    3    learned treatise exception, and so I'll sustain the

02:29:58    4    objection, but certainly if your expert can establish that

02:30:02    5    it's a learned treaties, then you can use it in that

02:30:09    6    manner.

02:30:10    7         MR. BRIGHT:  Thank you, Your Honor.

02:30:30    8         THE COURT:  Go ahead.

02:30:31    9         MR. WIETHOLTER:  Your Honor, Jason Wietholter for

02:30:33   10    Plaintiff, Headwater.

02:30:33   11         With respect to Headwater's Bucket No. 3, two

02:30:38   12    hearsay documents.  The issues here are pretty simple.

02:30:41   13    These two documents have never been testified about with --

02:30:44   14    by any fact witness in this case.  They're relied on by

02:30:48   15    Defendants' expert for the date on which a prior art system

02:30:52   16    was available to the public.  So they're obviously used for

02:30:57   17    the truth.  They are hearsay because there are no

02:31:00   18    exceptions that apply.

02:31:01   19         And, moreover, they were also untimely.  One of

02:31:05   20    the documents, DTX-5 in particular, was produced for the

02:31:09   21    first time with Defendants' expert report when they

02:31:12   22    produced that expert report.

02:31:14   23         And DTX-8 is a document that they -- that

02:31:19   24    Defendants have never identified or relied upon in any of

02:31:23   25    their rog responses, both of which are relied upon in their

02:31:27   1   expert report for the first time.

02:31:28   2        THE COURT:  All right.  And so your objection is

02:31:33   3   hearsay and timeliness.

02:31:40   4        What is the relevance objection?

02:31:43   5        MR. WIETHOLTER:  The relevance objection is that

02:31:45   6   there are some portions of these documents.  For example,

02:31:49   7   there are portions of these documents that have nothing to

02:31:51   8   do with the functionality at issue here.

02:31:54   9        The DTX-5, in particular, is a press release that

02:31:58  10   has a number of statements attributable to other people, so

02:32:03  11   there's also a hearsay within hearsay issue with this

02:32:06  12   document, and also with respect to functionality that isn't

02:32:09  13   at issue in this case.

02:32:10  14        THE COURT:  All right.  Thank you, Mr. Wietholter.

02:32:52  15        If you would address the hearsay issue first, I'd

02:32:55  16   appreciate it.

02:32:56  17        MR. BRIGHT:  Certainly, Your Honor.

02:32:57  18        So as far as hearsay, it's our contention that

02:32:59  19   this -- well, let's talk about that particular document.

02:33:03  20        So DTX-5, this is a press release from T-Mobile.

02:33:06  21   It's our position that this is a business record.  You

02:33:12  22   know, for a Fortune 500 company like T-Mobile, these

02:33:17  23   companies release press releases as a matter of general

02:33:19  24   practice once every couple of days, once every month.

02:33:23  25   T-Mobile still continues to do this to this day.

| | | |
|---|---|---|
| 02:33:25 | 1 | THE COURT:  Their TV ads would fall in the same |
| 02:33:28 | 2 | category. |
| 02:33:28 | 3 | MR. BRIGHT:  Yes, Your Honor, but I think there's |
| 02:33:30 | 4 | something about these press releases that -- you know, |
| 02:33:33 | 5 | they're sanctioned by the company, they're the official |
| 02:33:36 | 6 | voice of the company, and I have some authority where -- |
| 02:33:41 | 7 | where, you know, other courts have found that press |
| 02:33:46 | 8 | releases can be a form of business records exception.  I |
| 02:33:50 | 9 | can provide you with the Bates if you'd like. |
| 02:33:53 | 10 | I think one from this Court that bears on this |
| 02:33:56 | 11 | issue is Freeny versus Murphy Oil from June 2015.  I |
| 02:34:02 | 12 | believe you might have been on that case, Your Honor. |
| 02:34:04 | 13 | THE COURT:  I was. |
| 02:34:05 | 14 | MR. BRIGHT:  But I -- but either way, my point is, |
| 02:34:08 | 15 | is that I've seen some courts, you know, recognize press |
| 02:34:12 | 16 | releases as a business record. |
| 02:34:24 | 17 | THE COURT:  All right.  What about this press |
| 02:34:27 | 18 | release indicates that it is something that should be |
| 02:34:31 | 19 | relied upon? |
| 02:34:34 | 20 | MR. BRIGHT:  In the sense -- Your Honor, to |
| 02:34:38 | 21 | clarify, it should be relied upon in the sense of is it |
| 02:34:42 | 22 | relevant to this case, or is it authoritative? |
| 02:34:45 | 23 | THE COURT:  Business records are exceptions to the |
| 02:34:47 | 24 | hearsay rule because the business has to rely upon them. |
| 02:34:57 | 25 | MR. BRIGHT:  I would submit that T-Mobile relies |

02:34:59   1  on these records to communicate to the public about its

02:35:01   2  products, Your Honor.

02:35:03   3        THE COURT:  Okay.  That's not really the kind of

02:35:09   4  reliance that the business -- that gives the business

02:35:12   5  records a sense of trustworthiness.

02:35:15   6        What is it in this business record that you're

02:35:17   7  seeking to prove?

02:35:19   8        MR. BRIGHT:  Your Honor, this corroborates the

02:35:22   9  public -- well, first, to address the relevance point, I

02:35:25  10  think there was a relevance objection, this document is

02:35:28  11  highly relevant to corroborate the public availability of

02:35:32  12  the T-Mobile G1, which is an Android device that offered

02:35:38  13  the prior art gTalk service system.

02:35:44  14        THE COURT:  So if you're just offering this to

02:35:47  15  prove when a certain product became available on the

02:35:51  16  market, is that what it's being offered for?

02:35:57  17        MR. BRIGHT:  That's one of its primary functions.

02:35:59  18  We have other evidence to corroborate that, as well, but it

02:36:02  19  also describes how this product worked, right?  It

02:36:05  20  describes the sort of applications that came with this

02:36:08  21  device, the date of the device, things of that nature.

02:36:14  22        THE COURT:  All right.  That part seems like clear

02:36:19  23  hearsay.  They're just quoting certain employees making

02:36:25  24  unsworn statements about the product.

02:36:33  25        MR. BRIGHT:  I'll just point out, Your Honor, that

02:36:35  1   not all of this -- these statements are mere quotes.  Some

02:36:38  2   of these are -- they're affirmative representations of the

02:36:41  3   company.  For example, the T-Mobile G1 with Google delivers

02:36:47  4   premium easy to use mobile ad, et cetera, et cetera.

02:36:48  5        So I'll just point out that not all of it -- to

02:36:51  6   the extent you find there's a potential double hearsay

02:36:54  7   problem, I would submit that it doesn't apply to the

02:36:57  8   entirety of the document.

02:36:57  9        THE COURT:  What about DTX-8?

02:37:01  10       MR. BRIGHT:  DTX-8 is actually simpler, in my

02:37:04  11  opinion.  Apologies, Your Honor, I thought I had it on the

02:37:09  12  screen.  Here it is.

02:37:10  13       Our simple response to this is this is a document

02:37:15  14  authored by Todd Hansen, who as you heard this morning,

02:37:19  15  absent some exigent circumstance, will be coming to trial,

02:37:23  16  so he can lay the foundation for this document.

02:37:35  17       THE COURT:  All right.  Thank you.

02:37:36  18       MR. WIETHOLTER:  Your Honor, if I may respond

02:37:38  19  briefly?

02:37:38  20       THE COURT:  Yes.

02:37:39  21       MR. WIETHOLTER:  Your Honor, with respect to

02:37:46  22  DTX-5, I think you hit it on the head how this should be

02:37:51  23  relied upon.  The issue is Samsung never -- Samsung did not

02:37:57  24  obtain this document from T-Mobile in the sense that

02:37:59  25  T-Mobile did not produce this document.  We have no

02:38:02   1   testimony about how T-Mobile arrived at what's in this

02:38:06   2   document, when they contemplated publishing it.  There's

02:38:09   3   just no information at all from T-Mobile about what

02:38:14   4   T-Mobile would have relied upon this document for.

02:38:16   5          In fact, the document has a Bates number from

02:38:19   6   Samsung, not T-Mobile.  Samsung did not subpoena T-Mobile

02:38:22   7   in this case.  So there is no testimony, no -- and no

02:38:25   8   record of this document ever coming from T-Mobile.

02:38:27   9          So there is no -- so it is hearsay.  You didn't

02:38:32   10  hear them say that someone would testify about it or could

02:38:34   11  testify about it or had testified about it.

02:38:36   12         And furthermore, the exact question that you were

02:38:39   13  asking, how do we know it's reliable by T-Mobile to meet

02:38:42   14  the business record exception, we don't, because there is

02:38:45   15  no testimony or evidence on this.

02:38:48   16         With respect to DTX-8, they contend that this is a

02:38:53   17  business record that Mr. Hansen authored.  There's a

02:38:58   18  co-author on this, and we don't know this is a Google

02:39:03   19  business record.  They had this document when Mr. Hansen

02:39:06   20  was deposed.  Samsung did not ask Mr. Hansen about this

02:39:11   21  document.  They've laid no foundation or business record

02:39:14   22  exception for this document either.  And to the extent that

02:39:16   23  they can cure this objection at trial, that may be so.  But

02:39:20   24  we're here to deal with the pre-admission of exhibits as we

02:39:23   25  stand here today, and there's nothing that overcomes the

02:39:26    1    hearsay exception to this document here.

02:39:29    2            THE COURT:  All right.  Well, I'm going to

02:39:31    3    sustain the hearsay objection to DTX-5, the T-Mobile press

02:39:39    4    release.

02:39:39    5            But I will allow DTX-8 to stay on the exhibit list

02:39:46    6    with an asterisk indicating that it's not to be used until

02:39:52    7    after it has been admitted through Mr. Hansen.

02:40:09    8            And we will take the afternoon recess and then

02:40:12    9    come back and finish this.

02:40:13    10           COURT SECURITY OFFICER:  All rise.

02:40:14    11           (Recess.)

02:40:14    12           COURT SECURITY OFFICER:  All rise.

02:40:15    13           THE COURT:  Thank you.  Please be seated.

02:57:07    14           We're ready for Bucket 4, PTX-20.

02:57:20    15           MR. KROEGER:  Thank you, Your Honor.  Paul

02:57:21    16   Kroeger.

02:57:21    17           This goes to PTX-20, 21, 22, and 23.  These are

02:57:25    18   all license agreements relied on by Defendants' damages

02:57:28    19   expert.  We've agreed that our objections here rise and

02:57:31    20   fall with the pending Daubert challenges, and we don't have

02:57:34    21   any additional argument besides that.

02:57:36    22           THE COURT:  All right.

02:57:37    23           Well, what I'll say is that the objections are

02:57:43    24   overruled and that the Plaintiff should reurge them if

02:57:50    25   after the Daubert ruling they would lead to a different

02:57:57  1    result.

02:57:58  2            MR. KROEGER:  Thank you, Your Honor.

02:58:20  3            THE COURT:  Mr. Mirzaie.

02:58:21  4            MR. MIRZAIE:  Yes.  Thank you, Your Honor.

02:58:22  5        So I'll be arguing for Headwater on Bucket 5, and

02:58:27  6    this is irrelevant ItsOn documents.

02:58:32  7            And ItsOn, Your Honor, is just not relevant to any

02:58:34  8    issue in this case.  The documents can only introduce

02:58:38  9    confusion and prejudice under 403, as well, without helping

02:58:41  10   the jury answer any question posed to them in the

02:58:44  11   instructions or the verdict form.

02:58:45  12           Now, the parties have long agreed that there's no

02:58:50  13   contention by either side that ItsOn practices any of the

02:58:53  14   patents in this case.  And beyond that, to summarize some

02:58:57  15   of the more recent developments as set forth today,

02:59:01  16   Headwater, as we stated this morning, will not present any

02:59:05  17   willfulness case based on ItsOn or otherwise.

02:59:08  18           Headwater has removed the ItsOn license agreement.

02:59:12  19   It won't offer it into evidence.  And Defendants' expert

02:59:16  20   has opined that it's irrelevant and not comparable.

02:59:20  21           Headwater will further not contend that Samsung

02:59:23  22   copied any Headwater or ItsOn product or patent.  That's

02:59:28  23   the stipulation that we put on the record this morning.

02:59:31  24           Headwater also -- and this is a new representation

02:59:35  25   by Headwater to the Court, Your Honor -- will not offer any

02:59:38    1    argument that any of the patents have been adopted by the

02:59:42    2    entire mobile industry.  You'll recall that that was

02:59:45    3    Defendants' MIL No. 3.

02:59:49    4           Further, Your Honor, Headwater will agree that the

02:59:50    5    parties may not reference any pre-suit discussions between

02:59:58    6    Samsung and Google on the one hand and any of Headwater or

03:00:01    7    ItsOn or Dr. Raleigh on the other hand.  Your Honor will

03:00:06    8    recall that's Defendants' MIL No. 4.

03:00:08    9           So Headwater is also prepared to now agree that

03:00:10    10   the parties won't discuss ItsOn at all, even in the context

03:00:14    11   of Dr. Raleigh's background, as Samsung has previously

03:00:19    12   suggested the parties do in its brief.

03:00:22    13          So objectively, there can be no dispute that ItsOn

03:00:26    14   is entirely relevant to the present case.  And, of course,

03:00:33    15   the documents, and we'll get to them in a moment, are

03:00:35    16   prejudicial and confusing.

03:00:36    17          And the fact that ItsOn is irrelevant to any issue

03:00:40    18   in this case is not just our representation to the Court

03:00:43    19   today.  I think it's objectively true.  It's also Samsung's

03:00:46    20   representation to the Court multiple times in the past

03:00:51    21   several months.

03:00:51    22          If I can have the document camera, please.

03:00:53    23          So, Your Honor, this is, you may recall, Samsung's

03:01:05    24   opposition to our MILs.  This was filed by Samsung in

03:01:11    25   November, about four months ago.

03:01:14   1          On Page 1, Samsung represented:  To be clear,

03:01:17   2   Samsung does not believe that ItsOn is relevant to the

03:01:19   3   present case -- Headwater II, the 103 case.  It's a long

03:01:26   4   defunct third party whose technology, the ItsOn solution,

03:01:30   5   never practiced the asserted patents.

03:01:32   6          And both parties agree on that.

03:01:33   7          Samsung's issue during those briefs and also

03:01:36   8   during the pretrial conference that followed the briefs was

03:01:40   9   that they didn't want Headwater to, quote, unquote, have it

03:01:43   10  both ways, to be able to also talk about ItsOn background

03:01:48   11  on the one hand or, as they stated here, plan to introduce

03:01:52   12  evidence or argument that ItsOn -- to provide the jury with

03:01:58   13  context about ItsOn as a matter of providing the jury with

03:02:05   14  evidence about Headwater's background as a company, its

03:02:09   15  efforts to license the patented technology, and

03:02:12   16  Dr. Raleigh's experience in the industry.

03:02:13   17         As we've stated today, we affirmatively will

03:02:17   18  represent that we will not do that.  So we're clearly not

03:02:22   19  trying to have it both ways.

03:02:23   20         You'll also recall that in the pretrial

03:02:25   21  conference -- this is now December, and this is Samsung

03:02:33   22  telling the Court:  We would agree that ItsOn should be

03:02:37   23  excluded altogether.

03:02:41   24         And at the time Samsung was proposing that there

03:02:43   25  should be a ruling on its MILs 2 and 3, along with our MIL

03:02:47    1    No. 2, and they -- they represented to the Court that it's

03:02:51    2    their position that ItsOn is actually not relevant to the

03:02:55    3    case because it did not practice the patents, as both

03:02:58    4    parties agree.

03:03:00    5          And, again, their issue was that they didn't want

03:03:05    6    Headwater to, quote, unquote, have it both ways.  So if

03:03:07    7    they get to tell the story that they want to tell, that

03:03:11    8    ItsOn had a license from Headwater and that it was somehow

03:03:14    9    successful and that Samsung -- you know, they want to imply

03:03:18    10   that Samsung somehow copied them, then we need to be able

03:03:21    11   to rebut that, and you can't have it both ways.

03:03:24    12         And Your Honor ultimately denied the motion,

03:03:29    13   saying that it's too difficult to draw the line given

03:03:33    14   Headwater's positions at the time and that there wasn't an

03:03:38    15   effective way to draw the line, and it's a question of

03:03:41    16   relevance given that Headwater did want to discuss ItsOn

03:03:44    17   background, and the agreement between ItsOn and Headwater

03:03:48    18   at the time was on our exhibit list.  So it's just a

03:03:51    19   question of whether the relevance is outweighed by the

03:03:54    20   confusion.

03:03:58    21         So I don't think there could really be a debate

03:04:01    22   that there's confusion.  Now it's clear that now that

03:04:04    23   Headwater has affirmatively represented it will not rely on

03:04:08    24   the license agreement or contend that there is copying or

03:04:12    25   discuss even background, all the stated reasons for why

03:04:17  1   they should be able to discuss ItsOn at all are gone.  And

03:04:24  2   what we're left with is just their representation to the

03:04:26  3   Court, which we echoed today, Your Honor, that ItsOn should

03:04:30  4   be excluded altogether because it's irrelevant.

03:04:34  5         Now, we're not sure what could have possibly

03:04:37  6   changed in the last two months for Samsung to take an

03:04:41  7   opposite position, but we are surprised that once we

03:04:45  8   withdrew our license agreement from the exhibit list,

03:04:51  9   Samsung then added it back on.

03:04:54  10        So we've been trying to streamline the case, tried

03:04:58  11  to reach agreement on various issues.  In addition to the

03:05:01  12  ones outlined this morning and just a few minutes ago, we

03:05:05  13  removed our reliance on the ItsOn agreement.  Samsung has

03:05:08  14  added it to their exhibit list, and I think that's the main

03:05:11  15  focal point of this particular bucket right now.

03:05:15  16        But there's no longer a line to draw, and we're

03:05:19  17  not even arguably trying to have it both ways.  Every last

03:05:23  18  suggestion that Samsung has made in representations to the

03:05:27  19  Court that we are is now moot.

03:05:32  20        And so we think that with respect to the license

03:05:36  21  agreement and the specific exhibits in this case -- to get

03:05:39  22  to the representative exhibits and also the full list of

03:05:43  23  exhibits in the bucket, I should note that Samsung's

03:05:47  24  counsel just a few minutes ago did come talk to us and

03:05:51  25  represent that they will withdraw DTX-27 from their list.

```
03:05:58   1   That was one of the representative exhibits that we wanted
03:06:01   2   to discuss today but no longer need to in light of that
03:06:05   3   representation.
03:06:08   4         So the remaining representative exhibit is the
03:06:11   5   ItsOn license agreement, and because the -- ItsOn is
03:06:18   6   entirely irrelevant to the case, to begin with, the license
03:06:22   7   agreement can't possibly be relevant in any way.  And
03:06:25   8   Headwater's made the affirmative representation it will not
03:06:28   9   rely on that agreement.
03:06:31  10         Samsung and its experts have already said that
03:06:33  11   it's not comparable and irrelevant to a reasonable royalty
03:06:37  12   determination.  So that document should also come off of
03:06:41  13   Samsung's late attempt to just switch it over to its list.
03:06:47  14         THE COURT:  And what is Exhibit 6?
03:06:49  15         MR. MIRZAIE:  So 4 and 6 are two different
03:06:52  16   versions of the agreement, I believe.  As you'll recall,
03:06:56  17   Your Honor, there were -- there were amendments to the
03:06:59  18   agreement and additional agreements over time.  So they're
03:07:03  19   the ItsOn license agreement with Headwater but in two
03:07:07  20   different years with the relevant types of agreements.
03:07:11  21         THE COURT:  All right.  Thank you, Mr. Mirzaie.
03:07:16  22         MR. MIRZAIE:  Excuse me?
03:07:18  23         THE COURT:  No, I said, thank you.
03:07:20  24         MR. MIRZAIE:  Oh.
03:07:21  25         MR. KODISH:  Thad Kodish for Samsung, Your Honor.
```

```
03:07:34    1    Thank you.

03:07:35    2         That was a lot.  I thought we were going to talk

03:07:39    3    about some discrete exhibits.  What we've seen here is a

03:07:44    4    last-minute attempt at filing a verbal motion to strike or

03:07:50    5    motion in limine for all mention of ItsOn in this case.

03:07:53    6         We certainly object to that, and let me explain

03:07:58    7    why.

03:07:59    8         THE COURT:  Well, no, I take what we're doing here

03:08:02    9    is just dealing with these three exhibits.  So if you're

03:08:08   10    thinking that it is grander than that, I don't think that

03:08:14   11    request has been made.

03:08:15   12         MR. KODISH:  I appreciate that, Your Honor.

03:08:17   13         So I just want to make sure.  I thought I heard

03:08:23   14    Mr. Mirzaie essentially appeal to the Court to remove all

03:08:26   15    reference of ItsOn in this case.  And I know that those

03:08:30   16    motions that actually concerned ItsOn have already been

03:08:33   17    ruled on at the last pretrial conference, a few of which

03:08:37   18    said, no, that's explicitly in the case.  Your Honor has

03:08:40   19    already declared it relevant.  You already talked about the

03:08:42   20    difficulty of drawing some line about keeping this entity

03:08:46   21    that is relevant to Dr. Raleigh's background, to the

03:08:49   22    parties' lengthy relationship, to damages, and that I can

03:08:53   23    show gobs of support for all of that.

03:08:57   24         So if there is no chance that there is going to be

03:09:00   25    a ruling that every mention of ItsOn is out, then -- then I
```

03:09:05    1    don't need to address that.

03:09:06    2         THE COURT:  There's no chance that there'll be

03:09:09    3    that ruling as a result of this hearing.  Now, I can't

03:09:15    4    determine the future.

03:09:16    5         MR. KODISH:  Okay.  Okay.  So you just want to

03:09:17    6    hear a couple things about the exhibits in that box.  And

03:09:21    7    ItsOn -- when I go sit down, I won't be shocked to learn

03:09:24    8    that ItsOn is out of the case, because I have a lot to say

03:09:27    9    about why that is quite a statement.

03:09:29    10        The one thing I do want to mention, though, is

03:09:32    11   Mr. Mirzaie said, gosh, what had happened since?  I just

03:09:37    12   want to pick one example of what has happened since.

03:09:40    13        You may recall six weeks ago, there was a hearing

03:09:45    14   on the motion for standing.

03:09:47    15        THE COURT:  I have read the motions in the other

03:09:49    16   cases --

03:09:50    17        MR. KODISH:  Yeah.

03:09:50    18        THE COURT:  -- that have been filed recently, and

03:09:54    19   I understand there's an issue about whether the ItsOn

03:09:58    20   documentation is --

03:09:58    21        MR. KODISH:  Thank you.  Thank you, Your Honor.

03:10:00    22        THE COURT:  -- accessible.

03:10:01    23        MR. KODISH:  All right.  You're way ahead of me.

03:10:04    24        THE COURT:  Okay.

03:10:05    25        MR. KODISH:  All right.  I'm actually going to

| | | |
|---|---|---|
| 03:10:06 | 1 | defer to my colleague, Ms. Fish, to talk about the isolated |
| 03:10:10 | 2 | issue of the objection on a couple of those exhibits. |
| 03:10:13 | 3 | Thank you. |
| 03:10:13 | 4 | THE COURT:  All right.  Thank you, Mr. Kodish. |
| 03:10:16 | 5 | MS. FISH:  Thank you, Your Honor.  Sara Fish for |
| 03:10:20 | 6 | Samsung. |
| 03:10:21 | 7 | Turning specifically just to DTX Exhibit 4 and 6, |
| 03:10:27 | 8 | Samsung disagrees.  These documents do remain relevant to |
| 03:10:30 | 9 | the case.  And Samsung's experts have not said or declared |
| 03:10:35 | 10 | these license agreements are wholly irrelevant. |
| 03:10:39 | 11 | In fact -- so DTX-4 and DTX-6 are two iterations |
| 03:10:47 | 12 | of a license agreement for the entire Headwater patent |
| 03:10:50 | 13 | portfolio between Headwater and ItsOn, one in 2013, one in |
| 03:10:55 | 14 | 2016. |
| 03:10:56 | 15 | They represent the only patent license for the |
| 03:11:04 | 16 | asserted patents-in-suit.  There has only been one patent |
| 03:11:09 | 17 | license for the asserted patents-in-suit.  And so it most |
| 03:11:14 | 18 | certainly would be considered by the parties at the |
| 03:11:15 | 19 | hypothetical negotiation, and the jury certainly should |
| 03:11:17 | 20 | hear evidence about it. |
| 03:11:18 | 21 | THE COURT:  And did your expert opine on the |
| 03:11:20 | 22 | effect of these licenses? |
| 03:11:22 | 23 | MS. FISH:  Yes.  Dr. Perryman walks through each |
| 03:11:27 | 24 | of the Headwater/ItsOn license agreements in detail in his |
| 03:11:31 | 25 | report.  He concludes they are not comparable licenses, |

03:11:36  1    which was what Headwater's damages expert was initially

03:11:40  2    attempting to cast them as, calling them more -- some more

03:11:45  3    comparable than others.

03:11:47  4          However, the facts stated in the agreements

03:11:50  5    themselves remain relevant that in 2013, which is when the

03:11:55  6    hypothetical negotiation would occur in this case, the

03:11:57  7    parties would know there had been one patent license

03:12:01  8    between Headwater and ItsOn, and that was the only time the

03:12:04  9    patents had been licensed before.

03:12:08  10         THE COURT:  And why should the dollar amount of

03:12:13  11   those licenses be put before the jury?

03:12:16  12         MS. FISH:  We do not think the dollar amount

03:12:19  13   should be put before the jury, and these licenses actually

03:12:21  14   don't contain an express sum total.  They're not, you know,

03:12:25  15   lump-sum licenses, right, like we might be talking about in

03:12:29  16   other contexts.  These are running royalty licenses.

03:12:35  17         And part of our Dell Daubert motion, which we

03:12:37  18   understand to have been stipulated to this morning, was

03:12:40  19   that Mr. Dell may not use the specific dollar figures that

03:12:43  20   appear in these, right?  Some of the royalty rates -- it's

03:12:46  21   a complex structure of royalty rates, but some of them

03:12:50  22   mention 3 to $15 per device unit.  We now understand that

03:12:57  23   that has been stipulated to be out of the case, and we will

03:12:59  24   not likewise use that dollar figure.

03:13:01  25         What is relevant is the existence of the

03:13:03  1  agreement, the timing of the agreement, and ultimately,

03:13:06  2  further, the fact that the licensee under this agreement

03:13:10  3  ultimately, according to Headwater's representation, chose

03:13:13  4  not to embody or use the asserted patents in this case.

03:13:18  5       And so we think those facts are relevant under

03:13:22  6  multiple of the Georgia-Pacific factors for consideration

03:13:25  7  at the hypothetical negotiation.

03:13:28  8       THE COURT:  And you're saying that your expert

03:13:30  9  relies upon those facts in offering his opinion about the

03:13:36  10  hypothetical negotiation?

03:13:36  11       MS. FISH:  That's correct, Your Honor.

03:13:38  12       THE COURT:  All right.  And you do agree that

03:13:47  13  you're withdrawing DTX-27?

03:13:49  14       MS. FISH:  Yes, Your Honor.

03:13:50  15       THE COURT:  Okay.  Thank you, Ms. Fish.

03:13:52  16       Let me hear the response.

03:13:53  17       MR. MIRZAIE:  Thank you, Your Honor.

03:13:54  18       So Dr. Perryman -- I'll just quote his report.  He

03:14:03  19  cites the ItsOn license in Paragraphs 88 through 93.  And I

03:14:09  20  think that when we look at those paragraphs, the Court will

03:14:11  21  see that virtually every sentence, if not every sentence,

03:14:18  22  Your Honor, is Dr. Perryman giving, quote, unquote, a

03:14:20  23  myriad of reasons why it's not comparable, and that's it.

03:14:27  24  So he's not relying on it for any other -- for any purpose.

03:14:32  25  He's concluding that it's not comparable.

03:14:34    1    He says that the agreements and amendments between

03:14:38    2    Headwater and ItsOn cannot be considered comparable in this

03:14:42    3    matter.  Obviously, these were not arm's length

03:14:46    4    transaction.  This is true for a myriad of reasons

03:14:49    5    discussed below.  And he goes through, and we could look at

03:14:53    6    the topic sentence of each of these paragraphs.  You know,

03:14:58    7    the fact that there was overlap in the corporate governance

03:15:03    8    of both parties -- and in Paragraphs 90 and 91, he adds

03:15:10    9    more to that.

03:15:11    10    In Paragraph 91, he makes the point, which, again,

03:15:15    11    is not in dispute, that the -- that ItsOn never practiced

03:15:20    12    any of the claims of the asserted patents in this case, and

03:15:23    13    that's something that the parties have stipulated to

03:15:26    14    long -- or agreed on long ago.

03:15:27    15    And so it cannot be true that any payment that was

03:15:30    16    made under this, quote, unquote, not comparable agreement

03:15:35    17    that was not between -- that was not made in arm's

03:15:40    18    length -- also to quote Dr. Perryman -- was made for any

03:15:44    19    claim of the asserted patents.

03:15:47    20    And so now that Samsung, based on the same

03:15:51    21    reasoning, filed a motion to strike the document and our

03:15:58    22    expert's reliance on it in their Daubert motion on

03:16:02    23    Mr. Dell, we've now streamlined to remove it from our

03:16:06    24    exhibit list.

03:16:08    25    Samsung then added it to theirs, but there's just

| | | |
|---|---|---|
| 03:16:12 | 1 | no proper reason to do that.  There's no statement in here |
| 03:16:16 | 2 | that the license is relevant for all sorts of reasons or |
| 03:16:25 | 3 | any reason.  And it should be excluded where the Plaintiff |
| 03:16:28 | 4 | is not relying on it, and the Defendants' expert, in fact, |
| 03:16:32 | 5 | affirmatively states for a, quote, myriad of reasons it's |
| 03:16:37 | 6 | not comparable. |
| 03:16:37 | 7 | THE COURT:  What is -- |
| 03:16:39 | 8 | MR. MIRZAIE:  So all they could do -- |
| 03:16:40 | 9 | THE COURT:  What is the prejudice that you |
| 03:16:42 | 10 | believe can be drawn from the jury considering these |
| 03:16:46 | 11 | licenses? |
| 03:16:46 | 12 | MR. MIRZAIE:  Well, I think -- we're not totally |
| 03:16:49 | 13 | sure of how Samsung intends to use it, but I think we |
| 03:16:52 | 14 | saw -- we heard a little bit of a suggestion on how they -- |
| 03:16:55 | 15 | they plan to perhaps use it. |
| 03:16:57 | 16 | And we're worried that just by mentioning this |
| 03:17:01 | 17 | non-comparable agreement that didn't cover any products |
| 03:17:06 | 18 | from ItsOn for any patents in this case, there's going to |
| 03:17:09 | 19 | be a suggestion that maybe the patents in this case are |
| 03:17:13 | 20 | just a throw-in, or it's going to be used as a hook, as my |
| 03:17:17 | 21 | colleague just, I think, suggested for other reasons such |
| 03:17:23 | 22 | as a failure by ItsOn to practice this particular patent |
| 03:17:28 | 23 | but they -- while they practice others. |
| 03:17:29 | 24 | So it's just going to be used to open up a number |
| 03:17:34 | 25 | of arguments, we're worried, that do not help the jury |

03:17:40    1  answer any question that's going to be posed to them in

03:17:43    2  this case.

03:17:44    3          I think we just heard that they're going to

03:17:46    4  suggest that this shows that they practice some patents,

03:17:49    5  but not the ones here.  Patents in other cases, not the

03:17:53    6  ones here.  That ItsOn made products but didn't make them

03:17:59    7  for these particular patents.  These particular patents

03:18:02    8  were throw-ins.

03:18:03    9          And all of that now, if we -- I think that the

03:18:06   10  prejudice is particularly heightened if they're allowed to

03:18:09   11  introduce this not comparable license that we're not

03:18:12   12  relying on while removing the financial terms, as well.

03:18:17   13  They sort of get the best of all worlds, to be using it as

03:18:21   14  a hook for these irrelevant questions and make these

03:18:25   15  suggestions to the jury.  The jury shouldn't --

03:18:27   16          THE COURT:  If the licenses are admitted, are you

03:18:29   17  suggesting that the financial terms should be included and

03:18:32   18  not redacted?

03:18:33   19          MR. MIRZAIE:  I think that all of it is not --

03:18:38   20  because we're no longer -- we, as the Plaintiff, are no

03:18:41   21  longer relying on it in any kind of way, none of it is

03:18:44   22  relevant, and all of it could be prejudicial and just be

03:18:49   23  used as a hook for irrelevant suggestions to the jury.

03:18:53   24          THE COURT:  I mean, it's my understanding that

03:18:55   25  these licenses cover the asserted patents.

03:18:57  1        MR. MIRZAIE:  The license is a portfolio license

03:19:00  2   in that sense.  But there's no dispute that ItsOn never

03:19:04  3   practiced these particular patents.  And so for us -- for

03:19:09  4   the Plaintiff to have withdrawn its reliance on the license

03:19:14  5   and not include it and now the Defendant wants to present

03:19:18  6   one that it already admits is not comparable, given that

03:19:22  7   admission, it cannot be used as a data point for damages.

03:19:26  8        We've heard no other reason today why it's

03:19:30  9   relevant to some other issue beyond damages, and it is not.

03:19:34  10  It's not relevant to validity.  It's not relevant to

03:19:36  11  infringement.  All that could happen is that it's used as a

03:19:41  12  sort of hook for other irrelevant suggestions that are

03:19:44  13  prejudicial, Your Honor, that the patents were a throw-in,

03:19:47  14  that ItsOn practiced other patents not asserted here but

03:19:53  15  didn't practice these.  And a number of other issues can

03:19:56  16  arise, none of which help the jury answer the questions

03:20:02  17  before it.

03:20:03  18        THE COURT:  All right.  Thank you, Mr. Mirzaie.

03:20:05  19        Ms. Fish, you represented that you believe these

03:20:10  20  licenses are relevant to certain Georgia-Pacific factors.

03:20:16  21  Can you elaborate on that?

03:20:18  22        MS. FISH:  Yes, absolutely, Your Honor.  That's

03:20:20  23  exactly what I was hoping to do.

03:20:21  24        If I can share my screen.

03:20:24  25        I think first the licenses remain relevant for the

03:20:39  1    facts that they show, right?  We are not offering it as a

03:20:46  2    comparable license, but the fact that it was entered and

03:20:49  3    the fact that Headwater, the licensor, agreed to a certain

03:20:50  4    term at a certain time becomes directly relevant to several

03:20:55  5    GP factors.

03:20:55  6        So this is Dr. Perryman's Factor 15 conclusion

03:21:00  7    analysis, right, and he's summarizing the points at which

03:21:05  8    he's considered all of the factors before.  That's how this

03:21:08  9    goes.  So for --

03:21:09  10        THE COURT:  Well, the 15th factor is the

03:21:12  11   hypothetical negotiation.

03:21:12  12        MS. FISH:  That's right, Your Honor.

03:21:13  13        THE COURT:  So how does he indicate it would play

03:21:15  14   into that?

03:21:16  15        MS. FISH:  Right.  So the existence of one prior

03:21:21  16   license between Headwater and ItsOn is relevant to facts

03:21:24  17   such as there is no established royalty.  There is only one

03:21:28  18   license, right?  That is a fact that needs to be considered

03:21:32  19   in this point.

03:21:33  20        Headwater has not entered into a license

03:21:37  21   agreement -- sorry -- we understand that the license is not

03:21:47  22   informative for the royalty directly, but it's related to

03:21:51  23   other factors, at least Factor 4, Headwater's willingness

03:21:54  24   to license -- to be a licensor.  And it also shows, because

03:22:01  25   there is only one, a lack of an existing licensing program

03:22:06   1    or licensing pattern.

03:22:09   2          Under Factor 8, which relates to the profitability

03:22:12   3    of products under the patent, again, that there was a

03:22:14   4    company who had the ability to make a product that could

03:22:17   5    have used the patents who chose not to goes to this

03:22:21   6    Factor 8 inquiry.

03:22:23   7          As to Factor 11, the extent of use of the patented

03:22:29   8    technology, again, the contract helps illustrate that there

03:22:34   9    is one party who had the ability to use it but ultimately

03:22:36   10   chose not to.

03:22:37   11         So at least Factors 4, 8, and 11, in addition to

03:22:43   12   looking at it under Factor 1 and concluding that it's not a

03:22:49   13   comparable license, but it is key for the jury to

03:22:51   14   understand that one license was entered into, and that is

03:22:53   15   all there is.

03:22:55   16         And those factors, again, inform ultimately

03:23:00   17   several of these other points under Factor 15.

03:23:12   18         MR. MIRZAIE:  Your Honor, if I may?

03:23:13   19         THE COURT:  All right.

03:23:21   20         MR. MIRZAIE:  I think what we just saw was

03:23:24   21   Ms. Fish show the Court the opinions that it is not

03:23:29   22   informative to damages in this case and then not show the

03:23:34   23   Court any other opinions about Factor 8 or any of the other

03:23:40   24   factors, and we didn't find those opinions either in the

03:23:43   25   actual Perryman report.  And these are the things that

03:23:47    1    we're actually worried about.

03:23:49    2         When a license agreement is not comparable, it

03:23:51    3    just doesn't -- it shouldn't be allowed.  We're not talking

03:23:56    4    about it.  They say it's not informative.  It's clear now

03:24:00    5    that they're going to argue things beyond Dr. Perryman's

03:24:04    6    opinion about Factor 8 or Factor 4 that's not in

03:24:09    7    Dr. Perryman's opinion.  We didn't see that right now.

03:24:12    8         There was attorney argument about suggestions why

03:24:19    9    using this agreement through attorney argument -- why the

03:24:21    10   damages should be very low or why we should lose for some

03:24:25    11   reason, and those aren't opinions that Dr. Perryman had,

03:24:28    12   and they're highly prejudicial -- and it's highly

03:24:30    13   prejudicial to use this irrelevant agreement as a vehicle

03:24:35    14   to do all that.

03:24:38    15        And so there's a number of other things that I

03:24:41    16   think Samsung has made clear that they intend to bring out

03:24:46    17   by using this as a hook.  And it just should not come in

03:24:50    18   when Dr. Perryman himself said it's not informative for the

03:24:54    19   damages.  And there's no factor that we saw right now on

03:24:57    20   the screen, and I don't think we'll see it anywhere in the

03:25:00    21   report on Factor 4 or Factor 8, where he mentions it at all

03:25:05    22   in that way.

03:25:05    23        THE COURT:  Are you suggesting that the bullet

03:25:08    24   points that were shown on that slide are not in Perryman's

03:25:13    25   report?

03:25:13   1          MR. MIRZAIE:  No, that was Perryman's report

03:25:16   2    certainly, but those weren't a Factor 4 analysis or Factor

03:25:22   3    8 analysis.

03:25:24   4          THE COURT:  Well --

03:25:25   5          MR. MIRZAIE:  It's not in 4, 5, 8, or 11 at all.

03:25:28   6    I think that was the suggestion or statement made by my

03:25:31   7    colleague that those are his opinions under those factors.

03:25:34   8    We're not going to find any of those opinions are

03:25:36   9    referenced to the license agreement under any of those

03:25:39  10    factors.

03:25:39  11          THE COURT:  All right.

03:25:40  12          MR. MIRZAIE:  And the reason is clear is because

03:25:43  13    Perryman, in every single paragraph where he talks about

03:25:47  14    it, says that it's not informative to damages, and it

03:25:51  15    certainly is not informative to infringement or validity,

03:25:54  16    so it can't be informative to any point.

03:25:57  17          It's clear now that the use that's going to be

03:25:59  18    made with this as a hook is for prejudice and confusion by

03:26:04  19    talking about these other themes that aren't referenced.

03:26:13  20          THE COURT:  Who will be talking about the other

03:26:15  21    things that aren't referenced in Perryman's report?

03:26:18  22          MR. MIRZAIE:  We expect -- the only people that

03:26:20  23    can is just attorney argument in closing or in opening.  I

03:26:26  24    don't -- we don't think that -- if Mr. Dell is not talking

03:26:29  25    about the agreement and Mr. Perryman is not talking about

03:26:34   1   the agreement, then it's just going to be attorney

03:26:36   2   argument, much like the type that I think we just saw

03:26:40   3   referencing Factor 4 and Factor 8 and Factor 11 where if

03:26:44   4   you go to those sections of his report, it's just not

03:26:46   5   there.

03:26:47   6            THE COURT:  All right.  Thank you, Mr. Mirzaie.

03:26:48   7            I'm going to overrule the objection to DTX-4 and

03:26:55   8   DTX-6.  Those are clearly technically comparable licenses

03:27:01   9   because they include the patents -- the asserted patents.

03:27:08  10   And I think that the Defendants' expert has discussed the

03:27:15  11   impact those could have on his analysis of the negotiation.

03:27:19  12   So I do not believe that any unfair prejudice outweighs the

03:27:27  13   relevance, and I'll overrule those objections.

03:27:33  14            But DTX-27 is withdrawn.

03:27:36  15            And that takes us to the next bucket.

03:27:39  16            MR. TSUEI:  Good afternoon again, Your Honor.

03:27:43  17   James Tsuei for the Plaintiff, Headwater.

03:27:45  18            I'll ask the Court's patience as I plug in my

03:27:48  19   computer.

03:27:49  20            THE COURT:  All right.

03:27:50  21            MR. TSUEI:  All right.  Your Honor, I'll be

03:28:10  22   responsible for providing Headwater's positions on Groups 6

03:28:14  23   and 7.

03:28:15  24            So let's start with Group 6.  Group 6 consists of

03:28:23  25   three DTX exhibits which correspond to prior art material

03:28:26    1  that was used by Samsung's technical expert to provide

03:28:31    2  opinions about invalidity of the asserted patents based on

03:28:37    3  Microsoft system prior art.

03:28:38    4          And so to give the Court context, I'll just

03:28:42    5  briefly scroll through what the exhibits are.  And I

03:28:45    6  apologize, Your Honor, for not having a paper copy

03:28:48    7  convenient to hand to the Court.

03:28:49    8          DTX-10 is a web page printout provided by Samsung

03:28:55    9  as a part of the prior art production in the case, the URL

03:29:00   10  for which is at the bottom left-hand corner of each page.

03:29:04   11          DTX-16 is a diagram whose providence is unknown,

03:29:10   12  but on its face appears to be a document authored by a

03:29:16   13  magazine called TechNet.  I'll zoom in just to give the

03:29:21   14  Court an idea of the information that's shown on this

03:29:23   15  exhibit.

03:29:24   16          And, finally, DTX-17 is a 600-page technical

03:29:31   17  manual relating to architecture of a Microsoft Exchange

03:29:37   18  server circa 2007.

03:29:39   19          So our objection to these three exhibits is that

03:29:45   20  these are references which were previously a part of the

03:29:49   21  invalidity case.  And because we understood that they would

03:29:53   22  be used by Samsung as a part of the invalidity case, that

03:29:57   23  is, to show notice based on the prior art, we did not

03:30:00   24  object to their pre-admission into the trial.

03:30:03   25          But since the parties last discussed exhibits in

03:30:10   1   December, Samsung has withdrawn its Microsoft-based

03:30:12   2   invalidity grounds, but as Your Honor sees here, continues

03:30:17   3   to maintain the pre-admissibility of these

03:30:20   4   Microsoft-related prior art documents.

03:30:23   5       So because the documents are no longer being used

03:30:26   6   for prior art notice purposes, the only other basis for

03:30:33   7   which Samsung is permitted to enter them into evidence is

03:30:36   8   to allow its expert to opine as to the effect of these

03:30:41   9   Microsoft technical documents about the -- on the

03:30:46   10  availability of potential or alleged non-infringing

03:30:49   11  alternatives.

03:30:50   12      That is a purpose that requires proving the truth

03:30:52   13  of the contents of these documents.  And as such, that

03:30:56   14  would be inadmissible hearsay, in our view, and at least

03:31:01   15  with the record available to us, we understand that there

03:31:03   16  is no basis for a hearsay exception to apply.

03:31:07   17      And to the extent that the documents are

03:31:12   18  characterized as prior art, which unfortunately the Bates

03:31:17   19  stamps would tell a jury that they are prior art here, that

03:31:22   20  would be, I believe, a violation of Judge Gilstrap's Court

03:31:26   21  Standard MIL No. 4, as well as No. 1, which prevents the

03:31:30   22  parties from introducing evidence or argument about dropped

03:31:36   23  claims or defenses.

03:31:37   24      THE COURT:  And tell me again about DTX-10.  I did

03:31:41   25  not catch your --

03:31:44    1          MR. TSUEI:  Yes, sir.

03:31:45    2          So DTX-10 is just a website, the URL for which, I

03:31:50    3    believe, is a msdn.microsoft.com URL, which on its face

03:31:56    4    appears to be a Microsoft control domain, but this is, in

03:32:01    5    fact, not a Microsoft website.  This is a -- let's call it

03:32:04    6    an Internet Archive capture of a particular URL at a point

03:32:08    7    in time in the past.

03:32:10    8          And so this contains information that apparently

03:32:13    9    was available at this URL at a distant point in the past.

03:32:18   10    And as I mentioned earlier, it is used -- or it was used by

03:32:23   11    Samsung's technical expert to opine as to the availability

03:32:27   12    of certain limitations in the prior art.

03:32:34   13          THE COURT:  All right.  Thank you, Mr. Tsuei.

03:32:41   14          MR. BRIGHT:  Thank you, Your Honor.

03:33:09   15          Sorry, I'm waiting for the screen to load.

03:33:15   16          The first thing -- the first thing I'd like to

03:33:18   17    point out about these exhibits is we were surprised to

03:33:20   18    receive this bucket very recently.  I think we got it

03:33:24   19    yesterday.  And the reason we were surprised is that we

03:33:26   20    thought this was a resolved issue.

03:33:28   21          As you can see on December 13th, my colleague,

03:33:32   22    Mr. Fleming, memorialized a meet and confer that we had.

03:33:35   23    And as a result of that meet and confer, we had some horse

03:33:38   24    trading.  If you look down at Bullet No. 3, our

03:33:41   25    understanding after that meet and confer is that we were

03:33:44   1   mutually withdrawing our objections to certain of their

03:33:47   2   buckets, and they were withdrawing some of their objections

03:33:49   3   to our buckets.  So we thought this was sort of a done

03:33:52   4   issue.

03:33:52   5       Now, Mr. Tsuei is right that one thing did change

03:33:56   6   which is that we're no longer relying on -- we did not

03:33:59   7   elect these particular prior art references as prior art,

03:34:03   8   but nevertheless our understanding, after this sort of

03:34:06   9   horse trading, is that we weren't going to be having fights

03:34:09   10  about hearsay and authentication and things of that nature.

03:34:12   11  That was just sort of part of the deal.

03:34:14   12      And as far as its relevance to this case goes,

03:34:18   13  our position is that these documents are -- at least the

03:34:22   14  first three, anyway, they describe the Microsoft system

03:34:24   15  that we were talking about earlier in the context of DTX-1.

03:34:31   16      Dr. Foster analyzes that system, the source code,

03:34:33   17  these documents, as well, to describe how they work for

03:34:36   18  prior art, but then he also opines that that same system

03:34:39   19  also constitutes a non-infringing alternative.

03:34:44   20      THE COURT:  It does seem to me that the decision

03:34:47   21  not to continue with the Microsoft system as prior art does

03:34:57   22  change the nature of the hearsay analysis.  And I certainly

03:35:05   23  understand the concerns about the website in DTX-10 and the

03:35:11   24  TechNet article in DTX-16, whereas I think DTX-17, which is

03:35:19   25  a Microsoft technical manual, is certainly -- I think has a

03:35:26   1    strong argument to be non-hearsay.

03:35:28   2           Why should the website and the TechNet article be

03:35:37   3    in as evidence of non-infringing alternatives?

03:35:41   4           MR. BRIGHT:  I'll address the TechNet document

03:35:45   5    first.  Microsoft -- TechNet is Microsoft.  That's -- it's

03:35:50   6    their brochure describing how their products work.

03:35:52   7           We can look at the whole thing if you'd like, but

03:35:55   8    I just wanted to point that out so you're not dissuade by

03:35:59   9    TechNet being some sort of arbitrary party having nothing

03:36:02  10    to do with the case.  It's Microsoft.

03:36:05  11           THE COURT:  That's not the document.  That's just

03:36:09  12    Wikipedia?

03:36:10  13           MR. BRIGHT:  You're right, Your Honor.  This is --

03:36:12  14    I'm just trying to tie TechNet to Microsoft.  But you're

03:36:17  15    right, this document that I'm showing you, this is just

03:36:19  16    Wikipedia.

03:36:19  17           THE COURT:  Okay.  So tell me about the hearsay

03:36:36  18    exception that would cover that TechNet document.

03:36:41  19           MR. BRIGHT:  Your Honor, we would submit it's a

03:36:46  20    business record.  It's their Microsoft -- again, so TechNet

03:36:51  21    being a synonym for Microsoft in this context.  We would

03:36:54  22    consider it their official documentation for how the system

03:36:58  23    works.

03:37:04  24           And, again, Your Honor, we're caught a little

03:37:07  25    flat-footed because we understood that there would not be

136

| | | |
|---|---|---|
| 03:37:13 | 1 | hearsay or authentication-type objections based off the |
| 03:37:16 | 2 | parties' former agreement. |
| 03:37:17 | 3 | THE COURT:  All right.  What about the Wayback |
| 03:37:19 | 4 | Machine website? |
| 03:37:19 | 5 | MR. BRIGHT:  Yes, Your Honor.  This is an article. |
| 03:37:25 | 6 | It should at least qualify as a learned treatise/periodical |
| 03:37:25 | 7 | exception to hearsay, which I understand that that means it |
| 03:37:25 | 8 | can only be read into the record. |
| 03:37:33 | 9 | But beyond that, I mean, it's describing the |
| 03:37:37 | 10 | Windows Mobile 6.0 system and corroborates Dr. Foster's |
| 03:37:42 | 11 | opinions. |
| 03:37:43 | 12 | THE COURT:  And who is the creator of this |
| 03:37:44 | 13 | document? |
| 03:37:45 | 14 | MR. BRIGHT:  It's an individual named Jim Wilson, |
| 03:37:49 | 15 | sir. |
| 03:37:49 | 16 | THE COURT:  All right.  Well, I will sustain the |
| 03:38:00 | 17 | objection to DTX-10, but you can seek to use it as a |
| 03:38:04 | 18 | learned treatise if your expert will provide the foundation |
| 03:38:07 | 19 | for that. |
| 03:38:25 | 20 | And it's your contention that 16 and 17 are relied |
| 03:38:29 | 21 | upon by your expert regarding the non-infringement |
| 03:38:33 | 22 | analysis? |
| 03:38:34 | 23 | MR. BRIGHT:  Yes, Your Honor. |
| 03:38:35 | 24 | So here is the non-infringing -- non-infringing |
| 03:38:39 | 25 | alternative section of Dr. Foster's report.  The heading is |

| | | |
|---|---|---|
| 03:38:43 | 1 | up here.  And he cites back to his opening report down |
| 03:38:47 | 2 | here, and that's where he discusses these materials. |
| 03:39:06 | 3 | THE COURT:  All right.  Thank you, Mr. Bright. |
| 03:39:11 | 4 | Mr. Tsuei, why don't these fall under the same |
| 03:39:15 | 5 | analysis as the earlier conversion from prior art to |
| 03:39:23 | 6 | non-infringing alternative? |
| 03:39:24 | 7 | MR. TSUEI:  Well, it depends on the nature of the |
| 03:39:27 | 8 | documents that are being discussed.  So I think for these |
| 03:39:30 | 9 | three exhibits -- rather now Exhibits 16 and 17, they are |
| 03:39:36 | 10 | being used for a hearsay purpose, and their nature is |
| 03:39:39 | 11 | distinct from that of source code, which as Your Honor did |
| 03:39:43 | 12 | note is often treated as not hearsay. |
| 03:39:47 | 13 | But because it sounds like -- and as confirmed by |
| 03:39:50 | 14 | my good friend, Mr. Bright, that they do intend to have |
| 03:39:53 | 15 | these documents introduced into evidence to argue that |
| 03:39:56 | 16 | Samsung had this technology available at some time as an |
| 03:40:01 | 17 | alleged non-infringing alternative, that's using the |
| 03:40:03 | 18 | documents for a hearsay purpose.  And then we'd submit that |
| 03:40:07 | 19 | then there needs to be an exception to the hearsay rule or |
| 03:40:09 | 20 | an argument for why hearsay rule should not preclude their |
| 03:40:13 | 21 | admission into evidence. |
| 03:40:14 | 22 | And so I heard Mr. Bright say that these are |
| 03:40:17 | 23 | business records, but respectfully, Your Honor, I think |
| 03:40:21 | 24 | what Mr. Bright is saying is you got to take our word for |
| 03:40:24 | 25 | it that these are business records. |

03:40:25    1    So typically, we would expect a custodian

03:40:28    2    declaration establishing that these documents were, for

03:40:31    3    example, maintained in the regular course of business and

03:40:33    4    created by someone with knowledge about their content, in

03:40:37    5    other words, the requirements of 803(6).

03:40:38    6    We have no such declaration or testimony in this

03:40:42    7    case that would allow Samsung to, in fact, make that

03:40:44    8    argument.

03:40:45    9    Your Honor, you know, will note that Samsung did

03:40:50   10    procure a different declaration from Microsoft about the

03:40:53   11    source code, but not about these documents.

03:40:56   12    And so at this point, Your Honor, Headwater is

03:40:59   13    prejudiced insofar as we've never had a chance to examine

03:41:02   14    Samsung's position that these documents are truthful

03:41:06   15    representations of what was available to Samsung as to

03:41:09   16    their stated date, and neither have we been given any

03:41:13   17    opportunity to cross-examine a Microsoft custodian that

03:41:16   18    Samsung theoretically could have hired or retained to

03:41:21   19    provide the testimony on which a hearsay exception could be

03:41:25   20    found.

03:41:25   21    And so for that reason, Your Honor, we'd ask that

03:41:28   22    these exhibits not be pre-admitted.

03:41:30   23    Now, this isn't to say that we're contesting

03:41:33   24    Dr. Foster's or Samsung's ability to put these on the

03:41:37   25    screen.  Of course, they can use these documents as

03:41:39  1  demonstratives, but that means -- that does not mean, Your

03:41:42  2  Honor, that we agree that these can be pre-admitted as

03:41:47  3  evidentiary exhibits.

03:41:48  4      THE COURT:  All right.  Thank you, Mr. Tsuei.

03:41:49  5      I'm going to overrule the objection to DTX-17.  I

03:41:54  6  think that sufficiently appears to be a Microsoft technical

03:42:01  7  manual, which is used in a non-hearsay manner.

03:42:05  8      But I'm going to sustain the objection to DTX-16.

03:42:14  9  That looks to me to be an effort to render a colloquial

03:42:21  10  drawing of the technology, which I don't think is --

03:42:31  11  survives as a non-hearsay document.

03:42:35  12      So 10 and 17, the objection is sustained -- I'm

03:42:38  13  sorry, 10 and 16, the objection is sustained.

03:42:42  14      17, the objection is overruled.

03:42:45  15      MR. BRIGHT:  Thank you, Your Honor.

03:42:45  16      THE COURT:  And that takes us to 18.

03:42:47  17      MR. BRIGHT:  Your Honor, if I could be so rude as

03:42:50  18  to interrupt.  I think I could save us just a little bit of

03:42:53  19  time.

03:42:53  20      Samsung is willing to withdraw Exhibit 18.

03:42:56  21      THE COURT:  All right.

03:42:57  22      MR. TSUEI:  Okay.

03:42:58  23      THE COURT:  Thank you.

03:42:58  24      At the end of the morning, one of the things we

03:43:13  25  left open was the question of whether counsel were able to

| | | |
|---|---|---|
| 03:43:17 | 1 | reach an agreement on this MIL 2 about copying and the |
| 03:43:28 | 2 | like. |
| 03:43:28 | 3 | Have counsel made any progress on that? |
| 03:43:34 | 4 | MR. KODISH:  Your Honor, Thad Kodish. |
| 03:43:36 | 5 | We did not reach any further agreements.  The only |
| 03:43:41 | 6 | joint pretrial statement that has been proffered is the one |
| 03:43:47 | 7 | that I submitted on the slide which I think -- |
| 03:43:49 | 8 | MR. MIRZAIE:  On copying. |
| 03:43:50 | 9 | MR. KODISH:  On copying, right.  So are we agreed |
| 03:43:53 | 10 | on that language? |
| 03:43:54 | 11 | MR. MIRZAIE:  Yeah. |
| 03:43:54 | 12 | MR. KODISH:  Okay.  We are agreed on that |
| 03:43:56 | 13 | language, so says Mr. Mirzaie. |
| 03:44:00 | 14 | THE COURT:  All right.  So this is, I guess, a |
| 03:44:09 | 15 | stipulation, but it's not intended for the jury.  This is |
| 03:44:12 | 16 | just something that I can put in the record as the |
| 03:44:15 | 17 | ruling -- the agreed ruling on MIL 2? |
| 03:44:18 | 18 | MR. KODISH:  That's right.  It resolves MIL 2 such |
| 03:44:22 | 19 | that there's nothing further for you to do, Your Honor. |
| 03:44:27 | 20 | Of course -- for the record, of course, we reserve |
| 03:44:29 | 21 | our right to keep a lookout for an infraction of that |
| 03:44:34 | 22 | statement and be on alert to object to it, but, otherwise, |
| 03:44:37 | 23 | yes. |
| 03:44:38 | 24 | THE COURT:  All right.  What else do we need to |
| 03:44:44 | 25 | take up this afternoon? |

03:44:48    1          MR. MIRZAIE:  Your Honor, there may just be a
03:44:53    2  couple of deposition designations on one particular
03:44:58    3  witness, and that's not to say that we've resolved all the
03:45:01    4  deposition designation disputes for day one, but we've
03:45:06    5  resolved most of them.
03:45:08    6          And there is one witness, Mr. Song, I believe,
03:45:15    7  which Samsung and Headwater have conferred during the break
03:45:19    8  and agreed that it makes sense to use the Court's guidance
03:45:20    9  today to try to resolve all of the remaining disputes on
03:45:24   10  Mr. Song.
03:45:24   11          We don't believe the Court's guidance necessarily
03:45:28   12  helps us resolve maybe one or two -- one or two deposition
03:45:32   13  designations on another witness.  So there's just --
03:45:35   14  there's just a couple of those.
03:45:36   15          THE COURT:  All right.  Let's go ahead and move to
03:45:39   16  the first of those.
03:45:41   17          MS. FISH:  Thank you, Your Honor.
03:45:46   18          Samsung just has two quick objections to a couple
03:45:50   19  of page and lines for ByeongChul Nam designations.  The
03:45:58   20  first set, I'll put it on the screen.
03:46:06   21          The first set of the designations starts at Page
03:46:10   22  39, Line 23.  And as I'm getting it up here, I'll tell you
03:46:13   23  the objection is that this is 611, vague and ambiguous,
03:46:20   24  because it's an incomplete hypothetical.
03:46:23   25          Let me make this larger.

| | | |
|---|---|---|
| 03:46:30 | 1 | THE COURT:  What is your page and line again? |
| 03:46:33 | 2 | MS. FISH:  It is 39, starting at Page 23, and |
| 03:46:37 | 3 | running down Page 40 to Line 7. |
| 03:46:49 | 4 | And here they are asking the witness under 611, |
| 03:46:52 | 5 | vague and ambiguous, hypothetical.  Suppose Samsung, if |
| 03:46:58 | 6 | Samsung, and then asking what Samsung would need to do with |
| 03:47:00 | 7 | respect to Google as a hypothetical. |
| 03:47:25 | 8 | THE COURT:  And show me where you think the |
| 03:47:27 | 9 | hypothetical nature of it is introduced? |
| 03:47:29 | 10 | MS. FISH:  Yes, sorry, it was on the page split. |
| 03:47:44 | 11 | THE COURT:  I will overrule that objection. |
| 03:47:47 | 12 | MS. FISH:  Thank you, Your Honor. |
| 03:47:48 | 13 | The other set of objections is the next three |
| 03:47:54 | 14 | designations Headwater has marked.  They begin on Page 47 |
| 03:47:58 | 15 | at Line 7, and they run through Page 48, Line 21.  The |
| 03:48:09 | 16 | basis here is 602.  It lacks personal knowledge.  The |
| 03:48:14 | 17 | witness, though, he provides some guesses in his answer, |
| 03:48:19 | 18 | repeatedly states:  I cannot really confirm.  That is not |
| 03:48:23 | 19 | something I can -- that is something that I cannot verify. |
| 03:48:31 | 20 | I'm not responsible for this.  Since I'm not the one |
| 03:48:36 | 21 | responsible.  This whole line of questioning, he makes very |
| 03:48:37 | 22 | clear he does not know, he does not have personal |
| 03:48:40 | 23 | knowledge. |
| 03:48:41 | 24 | I'll go back to the top, Your Honor, for you. |
| 03:48:43 | 25 | THE COURT:  All right.  Let me hear what it is the |

| | | |
|---|---|---|
| 03:48:46 | 1 | other side thinks this establishes. |
| 03:48:49 | 2 | MR. TSUEI:  Well, Your Honor, I have a couple of |
| 03:48:58 | 3 | responses. |
| 03:48:58 | 4 | First, the witness whose transcript you're reading |
| 03:49:01 | 5 | was the designee on every single Firebase Cloud Messaging |
| 03:49:06 | 6 | technical topic that was contained in the topics that |
| 03:49:09 | 7 | Headwater served on Samsung in its Rule 30(b)(6) notice. |
| 03:49:12 | 8 | And the questions, I submit, quite clearly test |
| 03:49:18 | 9 | the witness's knowledge about Firebase Cloud Messaging. |
| 03:49:21 | 10 | Now, whether or not the witness was adequately |
| 03:49:24 | 11 | prepared to answer questions about FCM is a different |
| 03:49:27 | 12 | matter, but it doesn't mean that just because he said in |
| 03:49:30 | 13 | the deposition he doesn't remember or he doesn't know for |
| 03:49:34 | 14 | sure means that his testimony is inadmissible. |
| 03:49:36 | 15 | And the second point I'll just make for Your Honor |
| 03:49:40 | 16 | very quickly is that we also served a Rule 30(b)(1) notice |
| 03:49:45 | 17 | on Mr. Nam, in which case -- in which case the testimony -- |
| 03:49:53 | 18 | there's no -- I'm sorry, there's no scope issue, which I |
| 03:49:56 | 19 | understand is at the heart of my good colleague's objection |
| 03:50:01 | 20 | to this testimony. |
| 03:50:02 | 21 | And, finally, Your Honor, this is maybe a pedantic |
| 03:50:08 | 22 | point, but you'll note that there are no objections on the |
| 03:50:11 | 23 | record to any of these questions, either to the questions |
| 03:50:13 | 24 | or the answers in a way that would permit the Court to |
| 03:50:16 | 25 | exclude this testimony on the basis of such objections, and |

03:50:20  1  at least as a formal matter under the local rules, I

03:50:26  2  believe the objections are waived.

03:50:27  3          THE COURT:  All right.  Thank you, Mr. Tsuei.

03:50:30  4          Ms. Fish, particularly with this being a

03:50:38  5  Rule 30(b)(6) deposition, I don't think that the

03:50:43  6  uncertainty expressed is grounds to exclude it.  So I will

03:50:50  7  overrule this objection.

03:50:50  8          MS. FISH:  Understood, Your Honor.

03:50:52  9          I think that is it for today then.  Thank you very

03:50:58  10  much.

03:50:58  11          THE COURT:  All right.  Thank you.

03:50:59  12          MR. PICKENS:  Your Honor, James Pickens for

03:51:09  13  Headwater.

03:51:10  14          We understand, given the guidance earlier today

03:51:13  15  about -- that -- we understand Mr. Hansen is coming live,

03:51:17  16  and as such, we should take a -- we shouldn't take up

03:51:22  17  disputes about his deposition designations now.  So that's

03:51:26  18  the reason we don't feel like -- I think if the parties are

03:51:31  19  on the same page, we're not going to go through those this

03:51:34  20  afternoon.

03:51:34  21          THE COURT:  And have you received assurances that

03:51:37  22  you'll be able to call Mr. Hansen at a time that allows you

03:51:42  23  to carry out your needs?

03:51:47  24          MR. PICKENS:  We haven't finished hearing from --

03:51:53  25  about that from Mr. -- I don't know if there's an update,

| | | |
|---|---|---|
| 03:51:56 | 1 | but we didn't get a chance to talk to them about it yet |
| 03:51:59 | 2 | today, but... |
| 03:52:02 | 3 | MR. YANG:  No, Your Honor, not yet. |
| 03:52:03 | 4 | THE COURT:  All right.  Well, I expect that the |
| 03:52:09 | 5 | Court will want Mr. Hansen, if he's coming live, to be |
| 03:52:14 | 6 | available to be examined during the Plaintiff's |
| 03:52:20 | 7 | case-in-chief, even if that has to be extended or held open |
| 03:52:27 | 8 | in some way, and I think that we have a follow-up date |
| 03:52:37 | 9 | established for the week before. |
| 03:52:44 | 10 | Ms. Asbel, is that -- is that correct? |
| 03:52:50 | 11 | COURTROOM DEPUTY:  April 16th. |
| 03:52:52 | 12 | THE COURT:  16th? |
| 03:52:53 | 13 | COURTROOM DEPUTY:  April 16th at 1:30. |
| 03:52:56 | 14 | MR. PICKENS:  We haven't heard that yet.  Do you |
| 03:52:59 | 15 | have one for us, Your Honor? |
| 03:53:01 | 16 | THE COURT:  We may not have been made it available |
| 03:53:03 | 17 | to you yet, but it was going to be the 16th?  Yes, April 16 |
| 03:53:11 | 18 | at 1:30.  That's, I think, the Wednesday before the current |
| 03:53:16 | 19 | jury selection. |
| 03:53:17 | 20 | MR. PICKENS:  That sounds correct, because jury |
| 03:53:19 | 21 | selection is on the 21st, on Monday. |
| 03:53:22 | 22 | THE COURT:  All right.  And the idea would be that |
| 03:53:24 | 23 | at that time, if there are unresolved deposition |
| 03:53:30 | 24 | objections, we'll take those up.  And if there are |
| 03:53:32 | 25 | redaction issues arising out of this hearing, we'll take |

03:53:36   1   those up, as well.

03:53:38   2        And I am hopeful that the other motions will have

03:53:45   3   been ruled upon by that time, and perhaps that will provide

03:53:50   4   guidance, as well.

03:53:54   5        MR. YANG:  Thank you, Your Honor.

03:53:55   6        MR. PICKENS:  Thank you, Your Honor.

03:53:55   7        THE COURT:  All right.  Thank you.

03:53:56   8        And we're adjourned.

03:53:57   9        COURT SECURITY OFFICER:  All rise.

03:53:58   10        (Hearing concluded at 3:53 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    /S/ Shelly Holmes                    3/27/2025
     SHELLY HOLMES, CSR, TCRR             Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2025

12

13

14

15

16

17

18

19

20

21

22

23

24

25